**Ronald J. Logar --State Bar No. 00303**
**Eric Pulver--State Bar No. 07874**
LAW OFFICE OF LOGAR & PULVER, PC
225 S. Arlington Ave., Ste. A
Reno , NV  89501
Tel:    (775) 786-5040
Fax:   (775) 786-7544

**Michael J. Flynn, Mass. State Bar No. 172780**
**Philip H. Stillman, California State Bar No. 152861**
FLYNN & STILLMAN
224 Birmingham Drive, Suite 1A4
Cardiff, CA 92007
Tel:    (888) 235-4279
Fax:   (888) 235-4279
(*Application for Admission Pro Hac Vice forthcoming*)

Attorneys for Plaintiffs DENNIS MONTGOMERY and MONTGOMERY FAMILY TRUST, a California Trust.

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| DENNIS MONTGOMERY, an individual; and MONTGOMERY FAMILY TRUST, a California Trust,<br><br>           Plaintiffs,<br><br>vs.<br><br>eTREPPID TECHNOLOGIES, LLC., a Nevada Limited Liability Company; WARREN TREPP, an individual; DEPARTMENT OF DEFENSE of the UNITED STATES OF AMERICA; and DOES 1 through 10,<br>           Defendants.<br>_____ | CASE NO.:   3:06-cv-00056-BES-VPC<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>1. COPYRIGHT INFRINGEMENT;<br>2. COPY RIGHT INFRINGEMENT BY DISTRIBUTION;<br>3. DECLARATORY JUDGMENT;<br>4. ACCOUNTING;<br>5. BREACH OF FIDUCIARY DUTY;<br>6. FRAUD;<br>7. BREACH OF CONTRACT;<br>8. MISAPPROPRIATION OF TRADE SECRETS;<br>9. CONVERSION; and<br>10. DECLARATORY RELIEF AGAINST USA |

Plaintiffs, Dennis Montgomery and the Montgomery Family Trust, hereby allege against Defendant, eTreppid Technologies, LLC., Defendant, Warren Trepp, and Defendant, the Department of Defense of the United States of America; and Does 1-10, the following Claims for Relief:

## INTRODUCTION

1. This is an action arising out of the unauthorized use of extremely valuable copyrighted computer software technology by Defendant eTreppid Technologies, LLC., and Defendant, Warren Trepp. Not content to reap millions of dollars on Plaintiffs' technology without a license, the majority member/shareholder of eTreppid Technologies, Defendant Warren Trepp, used his majority position to squeeze out, dilute and misappropriate vast sums of money from the inventor and fellow member/shareholder, Dennis Montgomery, and the Montgomery Family Trust. Moreover, as fully stated below, even those breaches of fiduciary duty did not satisfy Mr. Trepp. He went further by trying to obtain Plaintiff's Montgomery Family Trust's extremely valuable technology through a knowingly false claim that the Montgomery Family Trust's technology was contributed to the company by Mr. Montgomery, then attempting to reverse engineer the software in direct violation of federal copyright laws. Accordingly, in addition to all other remedies, Plaintiffs seek not only a declaration of ownership under the 1976 Copyright Act of the software at issue in this litigation, but injunctive relief against any further use of the technology without a license and an accounting of all profits obtained as a result of the unauthorized exploitation of the copyrights and those derivative works therefrom.

## PARTIES

2. Plaintiff, Dennis Montgomery is an individual who resides in Washoe County, Nevada and is the inventor of all technology that is subject to this action. Montgomery is also a minority member/shareholder in eTreppid Technologies, LLC.

3. Plaintiff, Montgomery Family Trust (the "Trust") is a California irrevocable trust formed and operated under the laws of the State of California and is the owner of the copyrights at issue in this action.

4. Defendant, eTreppid Technologies, LLC., is, upon information and belief, a Nevada limited liability company, with its usual place of business in Washoe County, Nevada. Defendant, Warren Trepp ("Trepp") is, upon information and belief, an individual who resides in Washoe

1 County, Nevada and is the majority member/shareholder in eTreppid Technologies.

2     5.    Defendant, Department of Defense is a Department of the of the United States of
3 America.

4     6.    Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as
5 DOES 1 through 10, inclusive, and therefore sue said Defendants under such fictitious names.
6 Plaintiffs are informed and believe that such fictitious Defendants are responsible in some manner for
7 the events and happenings herein referred to, and proximately caused the damage to Plaintiffs as
8 herein alleged. Plaintiffs will seek leave to amend this Complaint to allege their true names and
9 capacities when the same have been ascertained.

## JURISDICTION AND VENUE

11     7.    Plaintiffs raise claims under the Federal Copyright Act of 1976. Accordingly, this
12 Court has jurisdiction pursuant to 28 U.S.C. §1338(a) and 1338(b). The Court also has jurisdiction
13 pursuant to 28 U.S.C. §1331 (federal question jurisdiction) and over the state law claims pursuant
14 to 28 U.S.C. §1367 (supplemental jurisdiction). Venue is proper pursuant to 28 U.S.C. §1391(b) and
15 28 U.S.C. §1400.

## FACTUAL ALLEGATIONS

17     8.    Dennis Montgomery (Montgomery) is an inventor and software developer. In or
18 about 1982, Montgomery developed certain pattern recognition software for which the U.S.
19 Copyright Office granted a series of copyrights. The Montgomery Family Trust (Trust) is the owner
20 of Copyright Registration Nos. TXu-98-018, TXu-98-699, TXu-98-727, TXu-98-728, TXu-98-731,
21 TXu-117-868, TXu-119-540, TX-1-983-147, TX-1-992-867, TX-2-000-234, TX-2-083-750 and
22 TX-2-095-009 (the "Copyrights").

23     9.    After the registration of these copyrights, Montgomery developed derivative works
24 based on the pattern recognition technology originally copyrighted between 1982 and January 1987
25 (the "Derivative Works"). Those uniquely important derivative works were fully developed prior to
26 1998 and are the exclusive property of the Trust.

27     10.    In or about September 1998, Montgomery and Defendant, Trepp, formed Intrepid
28 Technologies, LLC, a Limited Liability Company. Pursuant to a "Contribution Agreement" dated
September 28, 1998, between Trepp, Montgomery and the Trust, in exchange for a fifty percent

interest in Intrepid Technologies, LLC to Montgomery, the Trust contributed specific technology to Intrepid that is identified in paragraph 1.2.1 of the Contribution Agreement.

11. That Paragraph specifically identifies the contributed technology as "the software compression technology contained on that certain Software Compression Engine Development Program contained on CD No. 1."

12. Significantly, because the Trust owned other technology, Paragraph 1.3 of the Contribution Agreement states that the Trust is expressly not "contributing, transferring or conveying to Intrepid under this agreement or by any other means, nor is Intrepid acquiring from [the Trust] any other tangible and intangible assets of the Trust or Montgomery."

13. Thus, pursuant to the express terms of the Contribution Agreement, Defendant, Intrepid only acquired the software compression technology contained on CD No. 1 and nothing else.

14. In particular, the Derivative Works were *not* part of the software compression technology contained on CD No. 1 that is subject to the Contribution Agreement.

15. Subsequently, Trepp began to dilute Montgomery's share in eTreppid and, used Montgomery's majority interest in eTreppid to obtain favorable treatment for himself as a majority shareholder at the expense of Montgomery.

16. In or about 2003, eTreppid Technologies began sublicensing the Derivative Works to various entities, including the United States government and collecting licensing fees for the sublicenses. eTreppid was never granted a license to the Derivative Works by, and failed to pay royalties to, the Trust.

17. At no time did any of the Defendants have a written license to exploit the Trust's Derivative Works as required by 17 U.S.C. § 204(a). As a result, at best, eTreppid only can claim (if anything) an oral, non-exclusive license to exploit the Derivative Works.

18. Although the Trust denies that it granted any oral nonexclusive license to eTreppid, any such oral license was terminated by the Trust on January 19, 2006, orally and by letter dated January 25, 2006.

19. eTreppid has failed to and refuses to cease exploitation of the Derivative Works and has so far refused to account for any profits obtained as a result of its unlicensed exploitation of the Derivative works.

20.     Moreover, because of the highly confidential and sensitive nature of the Derivative Works, the Derivative Works are protected from reverse engineering and/or tampering by sophisticated safeguards. As a result of eTreppid's improper attempts to obtain and reverse engineer the Derivative Works, Defendants have, upon information and belief, destroyed part of the "source code" of the Derivative Works, further harming Plaintiffs.

**FIRST CLAIM FOR RELIEF**

**(Copyright Infringement against all Defendants)**

21.     Plaintiffs incorporate by reference the foregoing allegations contained in Paragraphs 1 through 20 as though restated herein in full.

22.     The Montgomery Family Trust is the owner of Copyright Registration Nos. TXu-98-018, TXu-98-699, TXu-98-727, TXu-98-728, TXu-98-731, TXu-117-868, and Txu-119-540 and the Derivative Works created therefrom.

23.     Defendants have for approximately the past three years, and continuing to the present, exploited the Trust's Derivative Works without any license therefor and without paying royalties.

24.     Defendant Trepp, as the managing member of eTreppid, knowingly and intentionally directed eTreppid's willful infringement of the Trust's copyrights and Derivative works.

25.     As a direct and proximate result of the Defendants' willful infringement on the Trust's Derivative works, the Trust has suffered and continues to suffer damages in an amount to be determined at trial.

26.     Pursuant to the Copyright Act of 1976, the Trust is entitled to actual damages, statutory damages as provided therein, and its reasonable attorney's fees.

**SECOND CLAIM FOR RELIEF**

**(Copyright Infringement - Unlawful Distribution of Copyrighted Work - Injunction 17 U.SC. §106(3))**

27.     Plaintiffs allege and incorporate by reference each and every allegation in paragraphs 1-26, as if set forth herein.

28.     Plaintiff, Montgomery Family Trust is the owner and author of the Derivative Works

29.     In doing the acts alleged, Defendants violated the Trust's right and interest to distribute copies of the Derivative Works to the public under 17 U.S.C. § 106(3), and said acts were

1 and are infringements of the Trusts' copyrights.

2     30.     Plaintiffs have been and are being substantially damaged by said infringement, particularly, upon information and belief, the unauthorized use of the Derivative Works by Defendants. Further harm and injury to Plaintiffs is imminent, and Plaintiffs are without adequate remedy at law unless Defendants' infringement is enjoined by the court.

### THIRD CLAIM FOR RELIEF

### (Declaratory Relief)

    31.     Plaintiffs allege and incorporate by reference each and every allegation in paragraphs 1 through 30 as if set forth herein.

    32.     An actual controversy has arisen and exists among Plaintiffs and Defendants under the Copyright Act of 1976. The Trust contends that it is the exclusive owner of the Derivative Works at issue in this action. The Defendants dispute this contention.

    33.     Plaintiffs desire a judicial declaration that Plaintiffs are the owners of the Derivative Work and further, that any actual or implied oral nonexclusive license never existed or was terminated.

    34.     Furthermore, as Plaintiffs have never validly assigned any interest in the copyrights or the Derivative Works to Defendants, Plaintiffs are entitled to a declaration that the Trust is entitled to 100% of the license fees obtained by the exploitation and sub-licensing of the Derivative Works as matter of federal copyright law.

    35.     A declaration of rights is necessary and appropriate at this time in order that Plaintiffs may ascertain their rights and duties with respect to Defendants, and with respect to any third parties who may claim an interest in either the Copyrights or the Derivative Works either by license or alleged sub-license.

### FOURTH CLAIM FOR RELIEF

### (Accounting)

    36.     Plaintiffs reallege and incorporate by reference each and every allegation in paragraphs 1 through 35, as if fully set forth herein.

    37.     Plaintiff, Trust, is the exclusive owner of the Copyrights and the Derivative Works.

    38.     Defendants have wrongfully exploited the Copyrights and Derivative Works without

payment to the Trust therefor.

39. As a result, the Trust is entitled to an accounting of all profits derived from Defendants' exploitation of the Copyrights and the Derivative Works.

## FIFTH CAUSE OF ACTION

**(Breach of Fiduciary Duty)**

40. Plaintiffs reallege and incorporate by reference each and every allegation in paragraphs 1 through 39, as if fully set forth herein.

41. As the majority shareholder in eTreppid Technologies, Trepp owed a fiduciary duty of utmost loyalty and good faith to Plaintiff Dennis Montgomery, including within that duty, an obligation not to use his majority interest to the detriment of the minority shareholder, and an obligation not to further his own interests at the expense of the minority shareholder, Dennis Montgomery.

42. In violation of his fiduciary duties to plaintiff, Trepp improperly used his majority interest in order to, among other things, attempt to reduce Montgomery's shares relative to his own, devalue the holdings of Montgomery while at the same time increasing the value of his shares, pay himself exorbitant salary, deduct improper business expenses, and take distributions from the company without paying equal distributions to Plaintiff Montgomery, and to misappropriate millions of dollars at Montgomery's expense from the company accounts.

43. As a direct and proximate result of Trepp's breach of fiduciary duty, Plaintiff, Montgomery has suffered and continues to suffer damages in an amount to be determined at trial but in any event no less than $6 million.

44. Because Trepp's actions were willful, malicious, in bad faith and oppressive, Montgomery requests that punitive damages be awarded against Trepp.

## SIXTH CAUSE OF ACTION

**(Fraud against Trepp)**

45. Plaintiffs reallege and incorporate by reference each and every allegation in paragraphs 1 through 44 as if fully set forth herein.

46. At the time of the formation of Intrepid Technologies and the execution by Plaintiffs of the Contribution Agreement, Trepp orally and in writing promised Plaintiffs that Montgomery

would be a 50% shareholder in Intrepid Technologies with Trepp. He further represented that Montgomery would share equally with Trepp in the profits of the company.

47. At the time that Trepp made the foregoing representations to Montgomery and the Montgomery Family Trust, Trepp knew them to be false. Moreover, he made said representations in order to induce Plaintiffs to contribute valuable software compression technology to the company.

48. In reliance on those representations, Montgomery and the Montgomery Family Trust contributed the "software compression technology" to the company in reliance on Trepp's promise to share the profits therefrom.

49. However, Trepp has failed to share the profits equally and has instead failed to pay equal profits, dividends or royalties.

50. As a direct and proximate result of Trepp's fraud, plaintiffs have suffered and continue to suffer damages in an amount to be determined at trial but in any event no less than $6 million.

51. Because Trepp's actions were willful, malicious, in bad faith and oppressive, Montgomery requests that punitive damages be awarded against Trepp.

## SEVENTH CAUSE OF ACTION

### (Breach of Contract)

52. Plaintiffs reallege and incorporate by reference each and every allegation in paragraphs 1 through 51 as if fully set forth herein.

53. Plaintiffs and Defendant Trepp entered into a written contract titled "Contribution Agreement."

54. In pertinent part, in exchange for Plaintiffs contributing the "software compression" technology to the company, Plaintiff Montgomery was to receive 50% of the company.

55. Plaintiffs performed all obligations under the contract.

56. However, Trepp breached the contract by failing to maintain Montgomery's 50% interest, and instead, attempted to and did reduce Defendants' ownership interest in the company.

57. As a direct and proximate result of Trepp's breach of contract, Plaintiffs have suffered and continue to suffer damages in an amount to be determined at trial but in any event no less than $6 million.

## EIGHTH CAUSE OF ACTION

**(Misappropriation of Trade Secret)**

58. Plaintiffs reallege and incorporate by reference each and every allegation in paragraphs 1 through 57 as if fully set forth herein.

59. The Derivative Works constitute trade secrets of Plaintiffs.

60. By the actions alleged above, Defendants Trepp and eTreppid Technologies have wrongfully attempted to misappropriate and convert Plaintiffs' Derivative Works.

61. As a direct and proximate result of Defendants' misappropriation of Plaintiffs' trade secrets, Plaintiffs have suffered and continue to suffer damages in an amount to be determined at trial.

62. Because Defendants' actions were willful, malicious, in bad faith and oppressive, Montgomery requests that punitive damages be awarded against Trepp.

## NINTH CAUSE OF ACTION

**(Conversion)**

63. Plaintiffs reallege and incorporate by reference each and every allegation in paragraphs 1 through 62 as if fully set forth herein.

64. Plaintiffs own the Derivative Works currently in the possession of Defendants.

65. Defendants converted Plaintiffs' property for their own use and have failed and refused to return it to Plaintiffs or give Plaintiffs access to their property.

66. As a direct and proximate result of Defendants' conversion, Plaintiffs have suffered and continue to suffer damages in an amount to be determined at trial but in any event no less than $500 million.

67. Because Defendants' actions were willful, malicious, in bad faith and oppressive, Plaintiffs request that punitive damages be awarded against Defendants.

## TENTH CLAIM FOR RELIEF

**(Declaratory Relief Against United States)**

68. Plaintiffs incorporate by reference the foregoing allegations contained in Paragraphs 1 through 67 as if fully set forth herein.

69. In or about December 2003, Mr. Montgomery executed a "secrecy oath" with the United Sates of America and its agencies which prevents him from discussing, disclosing or even identifying the subject matter of his work for the United States on penalty of criminal prosecution for

-8-

treason.

70. An actual controversy has arisen and exists among Plaintiffs and Defendants under the Declaratory Judgment Act. The Trust contends that it is the exclusive owner of the Derivative Works at issue in this action. Defendants Trepp and eTreppid dispute this contention.

71. However, in order to defend Trepp's and eTreppid's claims of trade secret misappropriation and prosecute their own claims, Montgomery will be obligated to disclose the nature of the technology, the type of work that he has performed on the government contracts using his technology versus that of eTreppid, and the capabilities of his technology versus that of eTreppid in performing work for certain government agencies. Each of these disclosures violates his secrecy contract with the government, including the Department of Defense and other agencies, and is directly and intimately related to the national defense. Disclosure of this information is likely a violation of the National Espionage Act, 18 U.S.C. § 793(d), which precludes disclosure of classified information to those not authorized to receive it.

72. Moreover, these disclosures go to the very core of Defendants' expected defense of this action, making it virtually, if not literally, impossible to defend without violating Montgomery's secrecy oath and compromising national security. A controversy has therefore arisen over the nature and scope of Montgomery's ability to defend Defendants' expected claims, in light of his secrecy contract with the United States. Montgomery, on the one hand, must make such disclosures in order to establish his ownership interests in the technology. Upon information and belief, the United States contends that such disclosures are absolutely prohibited by the terms of its secrecy agreement with Montgomery.

73. Plaintiffs desire a judicial declaration that a disclosure by Plaintiffs of these matters in order to defend against Defendants' expected defense to this action, will not violate the contract between Montgomery and the United States to maintain those secrets, and/or a declaration of immunity for Montgomery from prosecution by the United States.

74. A declaration of rights is necessary and appropriate at this time in order that Plaintiffs may ascertain their rights and duties with respect to Defendants, and with respect to any third parties who may claim an interest in either the Copyrights or the Derivative Works either by license or alleged sub-license, without violating Montgomery's secrecy contract with the United States.

-9-

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a jury trial on all issues in this First Amended Complaint and Defendants answer and counterclaims so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray to the court for:

1. Temporarily and preliminarily enjoin Defendants during the pendency of this action and permanently thereafter as follows:

    a. Prohibit Defendants from infringing, conspiring to infringe, or contributing to or participating in the infringement by others of Plaintiffs' copyrighted and derivative works;

    b. Prohibit Defendants from possessing any of the copyrighted or Derivative Works owned by Plaintiffs Trust, and any Derivative Works thereof, and in this regard, that Defendants be required to deliver upon oath, to be impounded during the pendency of this action, all such copies in their possession, as are alleged to infringe upon Plaintiffs' copyrights together with all recordings, tapes, cds, dvds, masters, print or digital documents and media, or any other means for recording and storing the Trust's copyrighted and Derivative Works that allow Defendants to make infringing copies, and Writs of Seizure be issued by this court in the manner provided by the Copyright Act and by the rules of the Supreme Court of the United States for Practice and Procedure in Copyright Cases, and that at the conclusion of this action, the court order all such matters be held to be surrendered to Defendants or destroyed under Writs of Destruction, whichever shall seem to the court to be the most just and proper;

    c. Order Defendants to pay Plaintiffs such damages as Plaintiffs have sustained in consequence of Defendants' infringement of the Trust's copyrights and to account for and pay over to the Trust all the profits that Defendants have derived from their willful infringement of Plaintiffs' copyrights;

    d. Order Defendants to pay such damages to Plaintiffs as this court shall consider just and proper within the provisions of the Copyright Act; and

    e. Order Defendants to pay Plaintiffs for Defendants' intentional, willful, and malicious infringement of plaintiff's copyrighted and Derivative Works, such damages as this court shall deem just and proper by the provisions of the Copyright Act, but not less than $150,000 for each

separate infringement of Plaintiffs' copyright;

2. A declaration of rights that a disclosure by Plaintiff of matters of national security in prosecuting this action and defending against Defendants' claims and defenses, would not subject Plaintiff to prosecution for violation of his secrecy contract with the United States, and/or for a declaration of immunity;

3. Award Plaintiffs their attorneys' fees according to proof and/or as required or permitted by the Copyright Act;

4. Award Plaintiffs their costs; and

5. Grant such other and further relief as the court deems just and proper.

DATED: February 21, 2006

LAW OFFICE OF LOGAR & PULVER, PC


By:_____/s/ *RJL*_____
Ronald J. Logar, Esq.
Attorney for Counterclaimant Dennis Montgomery
and Counterclaimant Montgomery Family Trust
Nevada Bar No. 303
225 S. Arlington Ave.  Ste. A
Reno, Nevada 89501

**CERTIFICATE OF SERVICE**

Pursuant to NRCP 5(b), I certify that I am an employee of the LAW OFFICE OF LOGAR & PULVER, PC, and that on the 21st day of February, 2006, I

_____ deposited for mailing in the U.S. Mail, with sufficient postage affixed thereto via Certified Mail, Return Receipt requested.

_____ sent via Federal Express or other overnight delivery service

_____ delivered via facsimile machine to fax number _____

_____ personally delivered

____ caused to be delivered via Reno-Carson Messenger Service

the foregoing document, addressed to:


Via: US Regular Mail to:

    Jerry M. Snyder, Esq.
    Hale Lane Peek Dennison and Howard
    5441 Kietzke Lane
    Second Floor
    Reno, NV 89511

and

    Pillsbury Winthrop Shaw Pittman, L.L.P.
    David A. Jakopin, Esq.
    2475 Hanover Street
    Palo Alto, CA 94304-1114
    Facsimile: 650-233-4545

And    Pillsbury Winthrop Shaw Pittman, L.L.P.
    Jonathan D. Butler, Esq.
    2475 Hanover Street
    Palo Alto, CA 94304-1114
    Facsimile: 650-233-4545

                                        ____/s/LML_____
                                        LEZLIE M. LUCAS
                                        Legal Assistant to the
                                        Law Office of Logar & Pulver, PC