1  PETER D. KEISLER
   Assistant Attorney General
2  DANIEL G. BOGDEN
   United States Attorney
3  District of Nevada
   GREG ADDINGTON
4  Assistant United States Attorney
   Nevada Bar 6875
5  100 West Liberty, Suite 600
   Reno, Nevada 89501
6  VINCENT M. GARVEY
   Deputy Branch Director
7  CARLOTTA P. WELLS
   Senior Trial Counsel
8  Federal Programs Branch
   Civil Division - Room 7150
9  U.S. Department of Justice
   20 Massachusetts Ave., NW/P.O. Box 883
10 Washington, D.C.  20044

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| ETREPPID TECHNOLOGIES, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DENNIS MONTGOMERY, et al., ) <br> ) <br> Defendants. ) | CV-N- 06-00145 (BES)(VPC) |
| DENNIS MONTGOMERY, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> ETREPPID TECHNOLOGIES, INC., ) <br> et al., ) <br> ) <br> Defendants. ) | CV-N-06-00056 (BES)(VPC) |

**NOTICE OF MOTION AND MOTION FOR**
**PROTECTIVE ORDER BY THE UNITED STATES**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: Please take notice that, pursuant to Federal Rule of Civil Procedure 26(c), defendant, the United States Department of Defense (DoD), hereby submits its motion for a protective order to prevent disclosure of information that could harm the national security interests of the United States.  In addition, DoD

moves to stay its discovery obligations during the pendency of its motions to dismiss all claims against the government in these cases. The motion is based on this notice of motion and motion and the following memorandum of points and authorities.

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF UNITED STATES' MOTION FOR PROTECTIVE ORDER**

**INTRODUCTION**

The United States seeks a protective order in these cases pursuant to Rule 26(c)[1] to prevent the disclosure of information relating to (1) the existence or non-existence of any actual or proposed relationship, agreement, connection, contract, transaction, communication, or meeting of any kind between an intelligence agency as defined in 50 U.S.C. § 401(a)(4), which includes intelligence elements of the military services; and (2) any actual or proposed interest in, application, or use by any intelligence agency, or any current or former official, employee, or representative thereof, of any technology, software, or source code owned or claimed by any individuals or entities associated with these lawsuits.  The basis for the protective order is that the information is protected by the military and state secrets privilege.  That privilege, as properly asserted by the United States here, acts as an absolute bar when disclosure of the material would harm national security, regardless of a party's need for the information.  As explained in the declarations accompanying this motion, because the disclosure of information at issue in this litigation reasonably could be expected to cause serious, and in some cases exceptionally grave, damage to national security, see Declaration of John D. Negroponte (Negroponte Dec.), attached

---

[1] The United States Department of Defense (DoD) has been named a party to this litigation, but has moved to dismiss the claims against it on jurisdictional grounds.  Even if DoD is dismissed as a party, the United States' interest in protecting national security information would remain and, if appropriate, the government could file a statement of interest pursuant to 28 U.S.C. § 517.  That statute provides that "any officer of the Department of Justice, may be sent by the Attorney General to any State or District in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States."

hereto as Exhibit 1; see also Classified Declaration to be submitted in camera ex parte,[2] the United States' interest in preserving its state secrets is overriding and must be safeguarded, even if a party is thereby precluded from establishing its legal position in these cases.

The assertion of the privilege does not mean that there is actually a relationship between the intelligence community and any individual or entity involved in these cases. Rather, as Mr. Negroponte explains, in order to protect from disclosure those instances where there is a relationship, the United States must prevent the disclosure of information that would tend to either confirm or deny that any relationship or connection exists even in cases where there is no such relationship. See Negroponte Dec. ¶ 12. To do otherwise would inevitably lead to the compromise of national security information, because if the United States were forced to deny relationships where none existed, the United States' refusal to respond to future allegations in other cases would, as one district court explained, "be tantamount to a confirmation." See Maxwell v. First National Bank of Maryland, 143 F.R.D. 590, 595 (D. Md. 1992). For these reasons, the Court should uphold the United States' assertion of the military and state secrets privilege and enjoin the disclosure of any information that might tend to confirm or deny the existence or non-existence of any relationship (including any communication, meeting or transaction) between the U.S. intelligence community and any individual or entity associated with the underlying events giving rise to these suits, as well as any actual or proposed interest in, application, or use by any intelligence agency other than the United States Air Force of any technology, software, or source code owned or claimed by any individuals or entities associated with these lawsuits.

Further, on June 21, 2006, DoD filed motions to dismiss all of the claims against it as asserted in these cases. Etreppid filed its notices of non-opposition on July 10, 2006.

---

[2] The classified in camera, ex parte declaration can be made available for review by the Court at its convenience. Because of the declaration's classification level, however, it must be stored at all times, except when being reviewed by appropriate personnel, in a Sensitive Compartmented Information Facility (SCIF).

Montgomery's opposition were filed, under seal, on September 15, 2006. Defendant has not yet been served with discovery requests, although the deadline for the parties to produce their initial disclosures was, by stipulation of the parties, August 14, 2006. In its motions to dismiss, DoD argued that the Court should dismiss these actions as to DoD for lack of subject matter jurisdiction. If the Court grants the government's motions, it will dispose of the claims against DoD in their entirety. Therefore, in the interests of judicial economy, the Court should exercise its discretion under Rule 26(c) of the Federal Rules of Civil Procedure and stay all discovery relating to DoD pending its ruling on the government's motions to dismiss.[3]

Counsel for the parties conferred in an attempt to reach agreement on the issues raise in this motion, but were unable to do so.

## BACKGROUND

### A.  Factual Statement

The instant litigation is comprised of two actions, Civil Action No. 06-00056 (hereinafter referred to as the "Federal Case") and Civil Action No. 06-00145 (hereinafter referred to as the "Removed Case"). Dennis Montgomery, et al. (Montgomery) and eTreppid Technologies, Inc. (eTreppid) have filed countersuits relating, *inter alia,* to claims involving copyright infringement, misappropriation of trade secrets, breach of contract, and breach of fiduciary duty. Montgomery also has filed claims against DoD in both suits, seeking declaratory relief in both as well as relief for copyright infringement in the Federal Case. The dispute between the private parties primarily concerns the ownership of source codes and their derivatives, *see* Federal Case Complaint ¶¶ 11-14; Removed Case Complaint ¶¶ 31-33; Removed Case Countercomplaint ¶ 23.

In a complaint originally filed in state court, eTreppid has asserted a claim of entitlement to protect and recover trade secrets from Montgomery. Removed Case Complaint ¶ 35. Montgomery, a former employee, officer, and director of the company, filed a counter-complaint

---

[3] DoD does not take a position with respect to whether discovery between eTreppid and Montgomery should proceed notwithstanding the pendency of the government's motion to dismiss.

as well as a federal court action, alleging that eTreppid had infringed his copyright interests. Montgomery claims that he is an inventor and software developer who developed software for which he was granted copyrights in 1982.  Removed Case Counter-complaint ¶ 8; Federal Case Complaint ¶ 8.  Montgomery asserts that, after registration of the copyrights, he developed derivative works based on the copyrighted technology.  Removed Case Counter-complaint ¶ 9; Federal Case Complaint ¶ 9.  In September 1998, Montgomery and counter-defendant Warren Trepp formed eTreppid.  Removed Case Counter-complaint ¶ 10; Federal Case Complaint ¶ 10. Pursuant to an agreement entered into between Montgomery and Trepp, Montgomery alleges he contributed certain technology in exchange for a 50 percent interest in eTreppid.  *Id.*

The dispute between Montgomery and eTreppid stems from the issue of the extent to which Montgomery retained the sole interest in the derivative works based on the copyrighted technology.  Removed Case Counter-complaint ¶¶ 11-14; Federal Case Complaint ¶¶ 11-14. Montgomery alleges that, in 2003, eTreppid "began sublicensing the Derivative Works to various entities, including the United States government and collecting licensing fees for the sublicenses," without having a license to take such action.  Removed Case Counter-complaint ¶¶ 16-18; Federal Case Complaint ¶¶ 16-18.  Further, Montgomery claims that, to the extent eTreppid had "an oral nonexclusive license to exploit the Derivative Works," such oral license was terminated in January 2006.  Removed Case Counter-complaint ¶¶ 17-18; Federal Case Complaint ¶¶ 17-18.   For its part, eTreppid claims that Montgomery has misappropriated trade secrets, violated the terms of his contracts with eTreppid, and improperly converted confidential information for his own use.  Removed Case Complaint ¶¶ 36, 43, 46.

Montgomery also has asserted a claim against DoD.  Montgomery alleges that he is prevented from fully disclosing the information he needs to present his case because he signed a "secrecy contract" with the United States government relating to the nature of the work that he performed on behalf of the government while associated with eTreppid and that disclosure of such information could subject him to criminal prosecution.  Federal Complaint ¶¶ 69, 71;

-5-

Removed Case Counter-complaint ¶ 24. Montgomery claims that he can neither defend against eTreppid's claims nor prosecute his own without revealing the "nature of the technology, the type of work he has performed on the government contracts using his technology versus that of eTreppid, and the capabilities of his technology . . . in performing work for certain government agencies." Federal Case Complaint ¶¶ 71; Removed Case Counter-complaint ¶¶ 24. *Accord* Federal Case Complaint ¶¶ 72; Removed Case Counter-complaint ¶¶ 25. Montgomery therefore seeks, in both cases, a declaration that disclosure of such information will not constitute a violation of the "the contract between Montgomery and the United States to maintain [] secrets, and/or a declaration of immunity for Montgomery from the United States." Federal Case Complaint ¶ 73; Removed Case Counter-complaint ¶ 26.

Montgomery signed a Classified Information Nondisclosure Agreement (Nondisclosure Agreement), which was executed with the Defense Security Service, an agency within the DoD, on September 16, 2003. Exhibit 2. Pursuant to the terms of the Nondisclosure Agreement, Montgomery *inter alia*: (1) accepted certain obligations in exchange for being granted access to classified information (para. 1); (2) agreed never to divulge classified information to anyone unless authorized under the terms of the agreement and to comply with all laws prohibiting the unauthorized disclosure of classified information (para. 3); (3) stated he had been advised that the unauthorized disclosure of classified information could violate certain criminal statutes (para. 4); (4) stated he understood that the United States government may seek any remedy available to it to enforce the terms of the agreement, including but not limited to seeking a court order to prohibit the unauthorized disclosure of classified information (para. 6); (5) stated he understood that the classified information to which he would have or obtain access to was and would remain the property and under the control of the United States government (para. 7); and (6) agreed that the conditions and obligations imposed upon him under the agreement apply unless and until he is relieved of such obligations in writing by an authorized representative of the United States government (para. 8). *Id.*

B.     Terms of the Proposed Protective Order

The proposed protective order (Exhibit 3) states that certain intelligence information that may or may not be relevant to the claims and defenses of the parties to this litigation is subject to the state secrets privilege, the disclosure of which reasonably could be expected to cause serious, and in some cases exceptionally grave, damage to the national security of the United States (para. 1). The proposed order then defines the categories of information that shall not be discussed, mentioned or otherwise subject to discovery or disclosure during all proceedings in this action:

> 2. The parties to these actions shall not serve or take any discovery relating to or questioning the existence or non-existence of any actual or proposed relationship, agreement, connection, contract, transaction, communication, or meeting of any kind between any entity in the intelligence community as defined by the National Security Act of 1947, 50 U.S.C. § 401(a)(4), which includes intelligence elements of the military services [hereinafter referred to as "any intelligence agency"], or any current or former official, employee, or representative thereof, and any individuals or entities associated with these lawsuits, or any current or former officer or employee thereof.
>
> 3. The parties to these actions shall not serve or take any discovery relating to or questioning any actual or proposed interest in, application, or use by any intelligence agency, or any current or former official, employee, or representative thereof, of any technology, software, or source code owned or claimed by any individuals or entities associated with these lawsuits.

*Accord* paragraphs 5 and 6.

In addition, the proposed order (para. 4) delineates issues relating to the parties' interactions with the government that would not be precluded. The areas in which questions or discovery would not be precluded include:

> a. The existence and nature of the "Big Safari" contract [hereinafter referred to as "the contract"] between eTreppid, Inc. and the United States Air Force, including but not limited to the fact that the contract required eTreppid to perform data analysis and the fact that the data analysis eTreppid performed under the contract involved image identification technology;
>
> b. The fact that the contract required employees and/or officers of eTreppid, Inc. to sign secrecy agreements with the Department of Defense;
>
> c. The technical specifications relating to any technology, owned or claimed by any non-government individual or entity associated with these lawsuits, used under the terms of the contract or any other contract, relationship, agreement, connection, contract, transaction, communication, or meeting of any

kind, unless covered by paras. 2 and 3 above;

  d. Any actual or potential commercial or government applications of any technology owned or claimed by any non-government individual or entity associated with these lawsuits at any time, except to the extent that any application is covered by paragraph 2 and/or 3 above; and

  e. Facts relating to the issue of ownership, by any non-government individual or entity associated with these lawsuite, of any right or interest in the source code, software, or other technology owned or claimed by the parties to these lawsuits, except to the extent that any application is covered by paragraph 2 and/or 3 above.

The proposed order also states that, to the extent information or documents are sought by the private parties that would implicate the information defined in paragraphs 2 and 3 of the proposed order, then such requests shall be deemed, without the need for objection, not to require a response that would include any such information (paras. 7 and 8). The proposed order further sets forth measures by which the United States can ensure that the classified information is protected against disclosure by, for example, requiring service upon attorneys representing the government of all discovery and motions (para. 10), requiring notice to the government's attorneys of all decisions and notices for hearings in this litigation (para 11), authorizing attendance by attorneys for the United States at all depositions and proceedings as well as their right to make objections as necessary to protect national security information (para. 12), and authorizing the participation by attorneys for the United States in any proceeding in this litigation (para. 13).

Finally, as noted above, the proposed protective order also provides that the government is excused from its Rule 26 obligations during the pendency of DoD's motion to dismiss. The obligations that are to be stayed include complying with the obligation to produce initial disclosures as all well as all discovery obligations.

**ARGUMENT**

I.  The Standard Of Review Is A Narrow One, And A Properly Invoked
    Claim Of The State Secrets Privilege Is An Absolute Bar To Disclosure

The military and state secrets privilege is a unique privilege, with constitutional underpinnings,[4] which permits the Government to protect against the unauthorized disclosure in litigation of information that may adversely affect national security interests.  See United States v. Reynolds, 345 U.S. 1, 7-8 (1953); Black v. United States, 62 F.3d 1115, 1118 (8th Cir. 1995), cert. denied, 517 U.S. 1154 (1996); Ellsberg v. Mitchell, 709 F.2d 51, 56 (D.C. Cir. 1983), cert. denied, 465 U.S. 1038 (1984).  The privilege is not limited to military secrets, but is "both expansive and malleable."  Ellsberg, 709 F.2d at 57.  Thus, it includes within its scope information that would result in "'impairment of the nation's defense capabilities, disclosure of intelligence-gathering methods or capabilities, and disruption of diplomatic relations with foreign governments.'"  Black, 62 F.2d at 1118 (quoting Ellsberg, 709 F.2d at 57).[5]

---

[4] National security information is subject to the exclusive control of the President and the Executive Branch of the U.S. Government, pursuant to the President's powers under Article II of the Constitution.  Department of Navy v. Egan, 484 U.S. 518, 527 (1988).  Justice Stewart observed in his concurring opinion in New York Times Co. v. United States, 403 U.S. 713, 728-29 (1971), as follows:

> If the Constitution gives the Executive a large degree of unshared power in the conduct of foreign affairs and the maintenance of our national defense, then under the Constitution the Executive must have the largely unshared duty to determine and preserve the degree of internal security necessary to exercise that power successfully.

[5] See, e.g., Reynolds, 345 U.S. at 5 (Air Force crash investigation report containing national security information was privileged); Fitzgerald v. Penthouse Int'l, Ltd., 776 F.2d 1236, 1242-43 (4th Cir. 1985) (expert testimony on Navy marine mammal research programs was precluded as privileged); Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 400-402 (D.C. Cir. 1984) (Department of Defense documents containing national security information, including communications with foreign governments and intra-government letters, were privileged); Halkin v. Helms, 690 F.2d 977, 990, 993 (D.C. Cir. 1982) (information concerning diplomatic relations with foreign governments and intelligence-gathering methods and capabilities was privileged).

The military and state secrets privilege is invoked when the government makes [1] a "formal claim of privilege, [2] lodged by the head of the department which has control over the matter, after [3] actual personal consideration by that officer." Reynolds, 345 U.S. at 7-8 (footnotes omitted); Black, 62 F.3d at 1118. The privilege is asserted to protect against the unauthorized disclosure of information that may adversely affect national security interests, regardless of how the person who has the information or seeks its disclosure is related to the Government. See generally 2 S. Stone & R. Taylor, Testimonial Privileges § 9.12 at 9-37 (2d ed. 1995). Thus, "the privilege may be invoked only by the government and may be asserted even when the government is not a party to the case." Zuckerbraun v. General Dynamics Corp., 935 F.2d 544, 546 (2d Cir. 1991) (citing Fitzgerald, 776 F.2d 1236 (4th Cir. 1985)).

The standard of review of a military and state secrets privilege claim is a "narrow one," and "[c]ourts should accord the 'utmost deference' to executive assertions of privilege upon grounds of military or diplomatic secrets." Halkin v. Helms, 598 F.2d 1, 9 (D.C. Cir. 1978); see also Reynolds, 345 U.S. at 10; Black, 62 F.3d at 1119. The role of the court is to assess the validity of the claim of privilege, satisfying itself that there is a reasonable danger that disclosure will harm national security. Zuckerbraun, 935 F.2d at 546-47. "[T]he government need not demonstrate that injury to the national interest will inevitably result from disclosure; a showing of 'reasonable danger' that harm will ensue is sufficient." Ellsberg, 709 F.2d at 58 (footnote omitted). In this regard, courts have been "willing[] to credit relatively speculative projections of adverse consequences [of disclosure]." Id. at 58 n.35.

In considering the claim of military and state secrets privilege, the court should not "forc[e] a disclosure of the very thing the privilege is designed to protect," Reynolds, 345 U.S. at 8, although it is appropriate for the court to consider in camera and ex parte declarations or other submissions of the Government explaining why a matter should be protected, Black, 62 F.3d at 1119. See, e.g., Kasza v. Browner, 133 F.3d 1159, 1169 (9th Cir. 1998); Farnsworth Cannon,

-10-

Inc. v. Grimes, 635 F.2d 268, 281 (4th Cir. 1980) (en banc)); Maxwell, 143 F.R.D. at 595.[6] Likewise, a judicial opinion on a claim of military and state secrets privilege "should not strip the veil from state secrets even if ambiguity results in a loss of focus and clarity." Black, 62 F.3d at 1119; see also Ellsberg, 709 F.2d at 59 n.41 (open, detailed discussion by a court of the application of general principles to particular facts is impossible in this area of the law).

A properly invoked claim of privilege is an absolute bar to disclosure, no matter how compelling the need for the information, or relevance thereof, to a proper resolution of the case. Reynolds, 345 U.S. at 11; Black, 62 F.3d at 1119; Fitzgerald, 776 F.2d at 1240; Northrop, 751 F.2d at 399. In other words, if the court determines that there exists a showing of harm which might reasonably flow from disclosure, the privilege cannot be overcome by "even the most compelling necessity." Reynolds, 345 U.S. at 11; In re Under Seal, 945 F.2d at 1288 n.2 ("Upon proper invocation by the head of the affected department, the privilege renders the information unavailable regardless of the other party's need in furtherance of the action"); Halkin, 690 F.2d at

---

[6] In a number of contexts, national security concerns require ex parte, in camera review of classified information, including any classified state secrets declarations submitted by the government, to protect such information from unauthorized disclosure. See e.g., Ellsberg, 709 F.2d at 61 ("It is well settled that a trial judge called upon to assess the legitimacy of a state secrets privilege claim should not permit the requester's counsel to participate in an in camera examination of putatively privileged material. The rationale for this rule is that our nation's security is too important to be entrusted to the good faith and circumspection of a litigant's lawyer (whose sense of obligation to his client is likely to strain his fidelity to his pledge of secrecy) or to the coercive power of a protective order"); In re Eisenberg, 654 F.2d 1107, 1112 (5th Cir. 1981) ("Our adversarial legal system generally does not tolerate ex parte determinations on the merits of a civil case. . . . An exception to this principle is made when countervailing government interests dictate that information sought to be discovered should remain secret. Privilege questions are determined on the basis of in camera, ex parte examinations of the evidence."); In re Under Seal, 945 F.2d 1285 (4th Cir. 1991) (classified in camera affidavit reviewed by both the district court and court of appeals without being disclosed to plaintiff's counsel); Stillman v. CIA, 319 F.3d 546, 549 (D.C. Cir. 2003) (same); Crater Corp. v. Lucent Technologies, Inc., 255 F.3d 1361, 1370 n. 4 (Fed. Cir. 2001)(rejecting claims of improper ex parte communications between the district court and the government in a case between two private parties but involving classified information).

990.

If the consequent unavailability of the information precludes either party from establishing its legal position on the ultimate issues in the case, then the case must be dismissed. See Black, 62 F.3d at 1119 (case was properly dismissed where privileged information was at the core of plaintiff's claims); see also Fitzgerald, 776 F.2d at 1241-42 ("in some circumstances sensitive military secrets will be so central to the subject matter of the litigation that any attempt to proceed will threaten disclosure of the privileged matters"); Farnsworth, 635 F.2d at 281 ("any attempt on the part of the plaintiff to establish a prima facie case would so threaten disclosure of state secrets that the overriding interest of the United States and the preservation of its state secrets precludes any further attempt to pursue this litigation"); Tilden v. Tenet, 140 F. Supp. 2d 623, 627 (E.D. Va. 2000) (case would be dismissed where there was no way in which lawsuit could proceed without disclosing state secrets).[7]

## II. The United States Has Properly Invoked The Privilege, And The Court Should Issue A Protective Order Barring Disclosure Of The Information In Question

The United States has properly asserted the military and state secrets privilege in these cases. The current head of the U.S. Intelligence community, Director of National Intelligence John D. Negroponte, after personal consideration of the matter, has formally invoked the privilege on behalf of the United States with respect to the information described in his declaration. See Reynolds, 345 U.S. at 7-8; Negroponte Dec. ¶¶ 3, 9 (Exhibit 1).[8]  As Mr.

---

[7] Notwithstanding the need to protect certain information from disclosure, the scope of the information that would be protected by the state secrets privilege in these cases is relatively limited in scope. For this reason, the government's proposed protective order specifically identifies issues relating to the parties' interactions with the government that would not be precluded. As a result of the fact that privilege covers only some but not all of the information relating to the government's interactions with eTreppid and Montgomery, it appears at this point that the underlying litigation should be able to proceed in some fashion.

[8] The public declaration is sufficient to establish the United States' military and state secrets privilege claim in this case. See Reynolds, 345 U.S. at 8 (the court should not "forc[e] a disclosure of the very thing the privilege is designed to protect"). Moreover, while "the court should not jeopardize the security which the privilege is meant to protect by insisting upon an

Negroponte explains, the information to be protected from disclosure includes information concerning the existence or non-existence of any actual or proposed relationship involving any U.S. intelligence agency and any individuals and/or companies associated with these lawsuits and any actual or proposed interest in, application of, discussion of, or use by any intelligence agency of any technology owned or claimed by individuals and/or companies associated with these lawsuits. Negroponte Dec. ¶ 11. The disclosure of this information, which may or may not be relevant to the parties' claims and defenses in their lawsuits relating to copyright ownership and trade secrets, could reasonably be expected to damage the national security. Id. at ¶¶ 9, 12; see also Classified Declaration submitted in camera ex parte.

      Based on the assertion by the head of the United States intelligence community that damage to national security could reasonably be expected to result from any disclosure of information that would tend to confirm or deny the existence or non-existence of any relationship between the United States intelligence community and the private parties as well as the application by a member of the U.S. intelligence community of software or technology that the parties claim to own, the United States' claim of privilege is valid. It therefore meets the narrow standard of review to which the state secrets claim is subject, and the Court should accord it the utmost deference. See Halkin v. Helms, 598 F.2d at 9; see also Black, 62 F.3d at 1119. In view of the United States' showing that unauthorized disclosure of the information described in Mr. Negroponte's declaration could reasonably be expected to cause serious, and in some cases exceptionally grave, damage to national security, whether in response to the parties' discovery requests or otherwise, disclosure of that information is completely barred, no matter how

---

examination of the evidence, even by the judge alone, in chambers," id. at 10, a more detailed description of the national security concerns at issue in this case is contained in a classified declaration which the United States has already prepared. Because that declaration is classified, it can only be presented for the Court's ex parte, in camera review. The Department of Justice Security Office can arrange for this Court's ex parte, in camera review of the classified declaration in a secure setting at the Court's convenience.

-13-

compelling any party's alleged need for the information.  Reynolds, 345 U.S. at 11; Northrop, 751 F.2d at 399; Halkin, 690 F.2d at 990.

That the assertion of the military and state secrets privilege might leave a party to litigate "in the dark" is nothing extraordinary or unusual.  Such was the case in Farnsworth, 635 F.2d at 281, where plaintiff's counsel was left unaware of the scope of excluded information, as well as in Maxwell, 143 F.R.D. at 599-600, where plaintiff's counsel was rebuffed in his attempts to discover matters with respect to which the privilege had been asserted.  In such instances, the Government simply has an "overriding interest."  See Farnsworth, 635 F.2d at 281.  Accordingly, the Court should issue a protective order prohibiting the disclosure of the information at issue in these cases.

III.     In the Interest of Judicial Economy, the Court Should Enter a Protective Order Staying Discovery Until Resolution of DoD's Motion to Dismiss.

Courts have broad discretion under the Federal Rules of Civil Procedure to regulate the discovery process, Herbert v. Lando, 441 U.S. 153, 177 (1979), including the discretion to deny discovery.  See Fed. R. Civ. P. 26(c); Jarvis v. Regan, 833 F.2d 149, 155 (9th Cir. 1987) ("A district court's decision to allow or deny discovery is reviewable only for abuse of discretion."); Petrus v. Bowen, 833 F.2d 581, 583 (5th Cir. 1987) ("trial court has broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined"); B.R.S. Land Investors v. United States, 596 F.2d 353, 356 (9th Cir. 1979) ("A district court may properly exercise its discretion to deny discovery where . . . it is convinced that the plaintiff will be unable to state a claim upon which relief can be granted.").

Exercise of the Court's discretion to stay discovery is especially appropriate where a dispositive motion is pending and the discovery sought is not necessary to resolve the issues raised by that motion.  See Alaska Cargo Transport, Inc. v. Alaska R.R. Corp., 5 F.3d 378, 383 (9th Cir. 1993) (stay of discovery was proper where the discovery sought was not relevant to "whether or not the court ha[d] subject matter jurisdiction"); Jarvis v. Regan, 833 F.2d at 155 (district court properly stayed discovery that was not needed to resolve motion to dismiss); Wood

1  v. McEwen, 644 F.2d 797, 801 (9th Cir. 1981) ("A district court may limit discovery 'for good
2  cause' and may continue to stay discovery when it is convinced that the plaintiff will be unable to
3  state a claim for relief.") (citation omitted).  "Indeed, such a procedure is an eminently logical
4  means to prevent wasting the time and effort of all concerned, and to make the most efficient use
5  of judicial resources."  Coastal States Gas Corp. v. Department of Energy, 84 F.R.D. 278, 282
6  (D. Del. 1979).

7  These are just such cases.  Allowing discovery would impose significant and unnecessary
8  burdens on DoD (and potentially the Court, if there are discovery disputes) at a time when
9  significant issues have been raised regarding the Court's jurisdiction over this matter.  Discovery
10 is not needed to resolve those jurisdictional issues and, thus, a stay of discovery is warranted in
11 these circumstances.  See Jarvis, 833 F.2d at 155 ("Discovery is only appropriate where there are
12 factual issues raised by a Rule 12(b) motion."); Rae v. Union Bank, 725 F.2d 478, 481 (9th Cir.
13 1984) (district court properly stayed discovery where plaintiff "failed to point to any specific
14 information obtainable through discovery that would have enabled" plaintiff to withstand motion
15 to dismiss).  Given the dispositive jurisdictional issues DoD has raised, the principle of judicial
16 economy favors a stay of discovery until the Court has ruled on the pending motions to dismiss.

## CONCLUSION

18  For the foregoing reasons, the United States' assertion of the military and state secrets
19 privilege should be upheld, discovery involving the government should be stayed pending the
20 disposition of DoD's motions to dismiss, and the government's motion for a protective order
21 should be granted.

22 DATED: September 25, 2006

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DANIEL G. BOGDEN
United States Attorney
District of Nevada

-15-

|  |  |
|---|---|
|  | GREG ADDINGTON<br>Assistant United States Attorney<br>Nevada Bar 6875<br>100 West Liberty, Suite 600<br>Reno, Nevada 89501 |
|  | VINCENT M. GARVEY<br>Deputy Branch Director |
|  | /s/ Carlotta P. Wells<br>CARLOTTA P. WELLS<br>Senior Trial Counsel<br>Federal Programs Branch<br>Civil Division - Room 7150<br>U.S. Department of Justice<br>20 Massachusetts Ave., NW<br>P.O. Box 883<br>Washington, D.C.  20044 |
|  | Counsel for Counter-Defendant,<br>United States Department of Defense |

<u>IT IS SO ORDERED</u>

Date: _____, 2006          _____
                                       UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee in the office of the United States Department of Justice, Civil Division in Washington DC and I am of such age and discretion as to be competent to serve papers.  On September 25, 2006, I served copies of the United States Notice of Motion and Motion for Protective Order, with the accompanying Memorandum of Points and Authorities, by placing said copies in postpaid envelopes addressed to the persons named below at the places and addresses stated below and by depositing said envelopes and contents in the United States mail at the United States Department of Justice, 20 Massachusetts Avenue, Washington D. C. 20001.

1 | Ronald J. Logar, Esq.
Eric A. Pulver, Esq.
2 | LAW OFFICES OF LOGAR & PULVER, PC
255 S. Arlington Avenue, Suite A
3 | Reno, NV 89501

4 | Michael J. Flynn, Esq.
Philip H. Stillman, Esq.
5 | FLYNN & STILLMAN
224 Birmingham Drive, Suite 1A4
6 | Cardiff, CA 92007

7 | Stephen J. Peek, Esq.
Jerry M. Snyder, Esq.
8 | HALE LANE PEEK DENNISON AND HOWARD
5441 Kietzke Lane, Second Floor
9 | Reno, NV 89511

10

David A. Jakopin, Esq.
11 | Jonathan D. Butler, Esq.
PILLSBURY WINTHROP SHAW PITTMAN, L.L.P.
12 | 2475 Hanover Street
Palo Alto, CA 94304-1114
13

14 |                                                 /s/ Carlotta P. Wells
                                                Carlotta P. Wells
15 |                                                 Senior Trial Counsel
                                                Federal Programs Branch, Civil Division
16 |                                                 United States Department of Justice

-17-