PETER D. KEISLER
Assistant Attorney General
STEVEN W. MYHRE
Acting United States Attorney
District of Nevada
GREG ADDINGTON
Assistant United States Attorney
Nevada Bar 6875
100 West Liberty, Suite 600
Reno, Nevada 89501
VINCENT M. GARVEY
Deputy Branch Director
CARLOTTA P. WELLS
Senior Trial Counsel
Federal Programs Branch
Civil Division - Room 7150
U.S. Department of Justice
20 Massachusetts Ave., NW/P.O. Box 883
Washington, D.C.  20044
Telephone: (202)514-4522
Facsimile:  (202) 616-8470

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| DENNIS MONTGOMERY, et al., | |
| Plaintiffs, | |
| v. | 3:06-CV-00056-PMP-VPC **BASE FILE** |
| ETREPPID TECHNOLOGIES, INC., et al., | 3:06-CV-00145-PMP-VPC |
| Defendants. | |

**REPLY OF THE UNITED STATES IN SUPPORT**
**OF MOTION FOR PROTECTIVE ORDER**

The parties' responses to the United States' motion for protective order clearly acknowledge the fact that information which may be relevant to the claims and defenses in this litigation is classified and that the government has properly asserted the state secrets privilege to protect against the unauthorized disclosure of classified information.  Moreover, the Court has

determined that the government's "assertions of the military and state secrets privilege are valid" with respect to some items contained in the file generated during the course of proceedings pursuant to Federal Rule of Criminal Procedure 41(g).  April 2, 2007 Order at 3.

The only challenge to entry of the government's proposed protective order comes from plaintiff Montgomery, who claims to be confused about the precise scope of the privileged information but nevertheless argues that the scope of the information covered by the state secrets privilege should be so broad as to warrant dismissal of the case.  Representatives of the United States have tried, in many discussions with Montgomery's counsel, to delineate the information covered by the state secrets privilege without revealing the very information that is classified and must be protected.  Any further confusion can be resolved by submission of particular documents, discovery requests, or questions to the United States, under the procedures for litigation outlined in the government's revised proposed protective order.

Only the United States is authorized both to assert the state secrets privilege and to determine what information is classified.  No private litigant has authority to dictate what information may or may not be privileged or classified.  Nor should the Court accede to Montgomery's request that the case be dismissed based upon his view of what information is or should be privileged.  The government has not requested dismissal as a remedy at this juncture of the litigation.  Assertion of the state secrets privilege requires removal from evidence of information within the scope of the privilege as reflected in the government's revised proposed protective order.  Once the protective order is entered and the case proceeds, then the Court can assess, on an ongoing basis, the parties' ability to prove their claims and defenses with non-privileged information.  Therefore, the Court should enter the United States' revised proposed protective order (Exhibit 1).

**BACKGROUND**

In response to an emergency motion by the United States, the Court, on March 23, 2007, ordered the government to conduct a review of the Search Warrant case file for the purpose of determining whether any information contained therein was subject to the state secrets privilege and the government's proposed protective order.  Government officials reviewed the Search Warrant file in the Court's chambers on March 28-29, 2007, and identified those portions of documents that contained information within the scope of the state secrets privilege.  On March 30, 2007, the Court reviewed with these government officials the Search Warrant documents in which privileged information had been identified.  During the course of the review, the Court had access to the classified *ex parte* declaration filed in support of the Declaration of John D. Negroponte (Exhibit 1 to the Motion for Protective Order) (Negroponte Declaration), the former Director of National Intelligence (DNI) who formally asserted the state secrets privilege on behalf of the United States.

Following the in-chambers review, the Court entered the April 2 Order.  Having determined that the United States' assertions of the military and state secrets privilege "are valid with regard to a limited number of items contained within the Search Warrant case file," April 2 Order at 3, the Court directed the United States to redact classified information from the Rule 41(g) case file and substitute appropriately reacted pages.  *Id.* at 4.  The parties were then to review the Rule 41(g) case file and "file with the Court any objections to the unsealing of any portion thereof."  *Id.*  In addition, after noting that there had been inadvertent disclosures of classified information, the Court declared a 30-day hiatus in the filing of motions, unless a filing had previously been ordered by the Court or required by the federal rules of procedure.  *Id.* at 6.  The Court also ordered that the parties "shall meet and confer within the next thirty (30) days to gain a collective understanding of what material is subject to the various assertions of privilege in these related proceedings, and in particular to address the matter of avoiding future disclosures of classified information."  *Id*. at 7.

Pursuant to the April 2 Order, counsel for the United States has met and conferred with counsel for the parties both to explain the underpinnings of the United States' motion for protective order and to discuss the extent to which the parties could agree to the mechanics of a protective order designed to protect the information subject to the government's assertion of the state secrets privilege. As a result of these discussions, the United States has drafted a revised proposed protective order.[1] The revised proposed protective order reduces excess verbiage by defining terms, thereby streamlining the order to render it easier to apply. For example, paragraph one defines the term "Parties;" paragraph 2 re-defines the term "intelligence agency to encompass current or former officials, employees, or representatives thereof; and sub-paragraph 4(c) defines the term "Technology" as the "computer source code, software, programs, or technical specifications relating to any technology owned or claimed by any of the Parties." Further, the revised proposed protective order attempts, to the extent possible, to clarify the nature of the information that is subject to the state secrets privilege by providing more specifics regarding the information that is unclassified. To this end, the following amendments have been made to paragraph 4: as noted above, the term "Technology" has been defined in sub-paragraph 4(c); sub-paragraphs 4(d) and (e) have been clarified by insertion of the term "Technology;" and sub-paragraphs 4(f)-(h) have been added to clarify that, unless covered by paragraphs 2 and 3, which delineate the information covered by the state secrets privilege, the parties can take or serve discovery relating to the issue of ownership of the Technology, the Parties' revenues, income, expenses, profits and losses, and any consideration received by the Parties relating to the Technology.

In addition, the revised proposed protective order combines paragraphs 7 and 8 into a new paragraph 7, which states that "No question and no document request in discovery or at trial shall require a response that would include any information covered by paragraphs 2, 3, 5 or 6 above,

---

[1] The revised proposed protective order is meant merely to clarify the terms of the original proposed protective order and does not alter the scope of the state secrets privilege asserted by the government in this matter.

but if the responding party believes that a full and complete response could implicate information within the scope of the state secrets privilege, the party shall provide notice of such belief to the United States prior to responding, and shall respond only with information that the United States has determined is not subject to the state secrets privilege."  This paragraph has been amended to refer to the paragraphs which delineate the privileged information, rather than to repeat the definitions thereof.  In addition, although the revised paragraph 7, like the original, states that a party shall not provide  privileged information in response to a discovery request or at trial, the new version requires a party who believes that a response may come within the scope of the state secrets privilege to notify the government prior to responding and to respond only with information that the government has determined is not privileged.

Finally, paragraph 9 has been amended to clarify that only unclassified information shall be filed with the Court or otherwise relied upon by the parties during the course of this litigation.  The following language has been added: "All documents filed or sought to be used as evidence in this case shall be unclassified.  This requirement applies to all motions, pleadings, briefs, and any other document, including exhibits, correspondence, or anything appended thereto or filed therewith. "

## DISCUSSION

This Court already has determined that the United States has a valid interest in protecting certain information pertinent to this case as subject to the state secrets privilege.  As explained in the Negroponte Declaration, because the disclosure of information at issue in this litigation reasonably could be expected to cause serious, and in some cases exceptionally grave, damage to national security, the United States' interest in preserving its state secrets is overriding and must be safeguarded, even it a party is thereby precluded from establishing its legal position in these cases.

Both of the private parties to this litigation agree that classified information which is subject to the state secrets privilege should be subject to a protective order.  Montgomery,

however, contends that the extent of information that the government seeks to protect is insufficient.  In both his response to the government's motion for protective order and his opposition to the government's designations of state secrets and classified information in the search warrant file, Montgomery derides the government for jeopardizing national security by revealing information that he believes should come within the parameters of the state secrets privilege as asserted by former DNI Negroponte.   Montgomery also claims that, if a claim of state secrets privilege is upheld, then the only course available to the Court is dismissal of all claims.

I. **COUNSEL FOR A NON-GOVERNMENT PARTY PLAYS NO ROLE IN DETERMINING WHETHER AND TO WHAT EXTENT THE STATE SECRETS PRIVILEGE APPLIES TO CERTAIN INFORMATION**

It is clearly established that the state secrets privilege belongs to the government and can only be asserted by the United States.  The military and state secrets privilege is invoked when the government makes [1] a "formal claim of privilege, [2] lodged by the head of the department which has control over the matter, after [3] actual personal consideration by that officer."  Reynolds v. United States, 345 U.S. 1, 7-8 (1953) (footnotes omitted); Black v. United States, 62 F.3d 1115, 1118 (8th Cir. 1995).  "[T]he privilege may be invoked only by the government and may be asserted even when the government is not a party to the case." Zuckerbraun v. General Dynamics Corp., 935 F.2d 544, 546 (2d Cir. 1991) (citing Fitzgerald v. Penthouse Int'l, Ltd., 776 F.2d 1236, 1242-43 (4th Cir. 1985).  Once the privilege has been asserted, the Court's role is to assess the validity of the claim of privilege, satisfying itself that there is a reasonable danger that disclosure will harm national security.  Zuckerbraun, 935 F.2d at 546-47.  In making this assessment, it is appropriate for the Court, as it has done here, to consider *in camera* and *ex parte* declarations or other submissions of the Government explaining why a matter should be protected, Black, 62 F.3d at 1119.  See, e.g., Kasza v. Browner, 133 F.3d 1159, 1169 (9th Cir. 1998); Farnsworth Cannon, Inc. v. Grimes, 635 F.2d 268, 281 (4th Cir. 1980) (en banc)).

Montgomery objects that his counsel has not played a role in the redaction process. Montgomery's Opposition to the Government's Designations of State Secrets and Classified Information in the Search Warrant File at 3-4. His counsel, however, neither had nor is entitled to have any role in determining which information the Executive Branch of the United States Government should or should not classify or should or should not determine to be subject to the government's claim of state secrets. It is well settled that courts should evaluate the legitimacy of a state secrets claim without the participation of a party's counsel in the review of putatively privileged information. *See, e.g.,* Ellsberg v. Mitchell, 709 F.2d 51, 61 (D.C. Cir. 1983) ("a trial judge called upon to assess the legitimacy of a state secrets privilege claim should not permit the requester's counsel to participate in an in camera examination of putatively privileged material. The rationale for this rule is that our nation's security is too important to be entrusted to the good faith and circumspection of a litigant's lawyer (whose sense of obligation to his client is likely to strain his fidelity to his pledge of secrecy) or to the coercive power of a protective order"), *cert. denied*, 465 U.S. 1038 (1984); In re Eisenberg, 654 F.2d 1107, 1112 (5th Cir. 1981) ("Our adversarial legal system generally does not tolerate ex parte determinations on the merits of a civil case. . . . An exception to this principle is made when countervailing government interests dictate that information sought to be discovered should remain secret. Privilege questions are determined on the basis of in camera, ex parte examinations of the evidence."); In re Under Seal, 945 F.2d 1285 (4th Cir. 1991) (classified in camera affidavit reviewed by both the district court and court of appeals without being disclosed to plaintiff's counsel); Stillman v. CIA, 319 F.3d 546, 549 (D.C. Cir. 2003) (same); Crater Corp. v. Lucent Technologies, Inc., 255 F.3d 1361, 1370 n. 4 (Fed. Cir. 2001) (rejecting claims of improper ex parte communications between the district court and the government in a case between two private parties but involving classified information).

The Ninth Circuit has deemed it to be "unexceptionable" for the government to submit materials *ex parte* and *in camera* for a Court to review for the purpose of determining the validity of a state secrets claim.  Kasza v. Browner, 133 F.3d at 1169.  The Court's assessment of whether the government has properly asserted the state secrets privilege is informed by the *ex parte*, *in camera* review of a classified declaration submitted to elaborate on the government's public claims.  "The Court itself must determine whether the circumstances are appropriate for the claim of privilege, and yet do so without forcing a disclosure of the very thing the privilege is designed to protect."  Reynolds, 345 U.S. at 7-8 (footnote omitted).

As indicated in the April 2 Order, this Court already has conducted an *ex parte*, *in camera* review of the classified declaration, which was submitted for the purpose of elaborating on the public assertion of the state secrets claim by former DNI Negroponte.  Based on its review of this declaration, as well as other information, the Court has acknowledged the validity of the government's privilege claim.  None of Montgomery's claims about the proper scope of the privilege can have any bearing on the Executive Branch's assessment of the information to be protected in this case, as set forth in the declarations already reviewed by this Court.  Therefore, Montgomery's claims about the government's allegedly improper application of the state secrets privilege are without merit.

## II. ENTRY OF THE GOVERNMENT'S REVISED PROPOSED PROTECTIVE ORDER WOULD ENSURE A PROPER BALANCE BETWEEN PROTECTING PRIVILEGED INFORMATION AND PERMITTING THE PARTIES TO SEEK RELIEF IN THE LITIGATION

After an appropriate assertion of the state secrets privilege, the Court should proceed with the least restrictive means available to protect the privileged information without prejudicing the abilities of the parties to litigate.  Ellsberg, 709 F.2d at 61.  Repeatedly in this case, counsel for Montgomery has claimed incorrectly that dismissal is the only remedy available to the government to protect its state secrets from unauthorized disclosure in litigation.  The government neither has sought nor seeks dismissal of this case at this time.

Despite Montgomery's assertions, dismissal is not the exclusive remedy available to protect state secrets. Reynolds, 345 U.S. at 11; Ellsberg, 709 F.2d at 61. If the privilege is invoked over particular evidence, that evidence is removed from the case. The case, however, may go forward on evidence that does not come within the scope of the privilege. Reynolds, 345 U.S. at 11. This approach is in accord with the decision in Kasza, in which the Ninth Circuit indicated that every attempt should be made to "salvage" a claim and, thus, avoid dismissal, notwithstanding the government's assertion of the state secrets privilege. 133 F.3d at 1169-70.

The United States' revised proposed protective order is designed to protect classified national security information from unauthorized disclosure while allowing the parties to seek relief on their copyright and trade secrets claims in this Court. The process defined in the protective order will permit the government to review information as it arises in relation to the case and determine, under the review and oversight authority of the Court, whether the information falls within the scope of the state secrets privilege. Questions about the scope and application of the protective order can be resolved as discovery proceeds. Further public discussion of the scope and application of the privilege, beyond that which has been provided to counsel for the parties in the terms of the proposed protective order and in oral communications with government counsel, would risk disclosing the very information the privilege was designed to protect.

The United States' revised proposed protective order strikes a balance between protecting national security information and permitting the parties to proceed with their claims in this litigation. Even though the result of invoking the privilege is the removal of some information from the case, the parties may proceed to litigate their claims and defenses using non-privileged information. To the extent a claim or defense is compromised or otherwise affected due to the unavailability of the privileged national security information, the Court can assess, on an ongoing basis, whether the absence of that information renders it impossible to prove a claim or defense.

**CONCLUSION**

For the foregoing reasons, as well as for the reasons set forth in the memorandum of points and authorities in support of its motion, the United States' motion for protective order should be granted.

DATED: May 18, 2007

        Respectfully submitted,

        PETER D. KEISLER
        Assistant Attorney General

        STEVEN W. MYRHE
        Acting United States Attorney
        District of Nevada

        GREG ADDINGTON
        Assistant United States Attorney
        Nevada Bar 6875
        100 West Liberty, Suite 600
        Reno, Nevada 89501

        VINCENT M. GARVEY
        Deputy Branch Director


        /s/ Carlotta P. Wells
        CARLOTTA P. WELLS
        Senior Trial Counsel
        Federal Programs Branch
        Civil Division - Room 7150
        U.S. Department of Justice
        20 Massachusetts Ave., NW
        P.O. Box 883
        Washington, D.C.  20044

        Counsel for United States
         Department of Defense

**REPLY OF THE UNITED STATES IN SUPPORT
OF MOTION FOR PROTECTIVE ORDER**

**EXHIBIT 1**

PETER D. KEISLER
Assistant Attorney General
STEVEN W. MYHRE
Acting United States Attorney
District of Nevada
GREG ADDINGTON
Assistant United States Attorney
Nevada Bar 6875
100 West Liberty, Suite 600
Reno, Nevada 89501
VINCENT M. GARVEY
Deputy Branch Director
CARLOTTA P. WELLS
Senior Trial Counsel
Federal Programs Branch
Civil Division - Room 7150
U.S. Department of Justice
20 Massachusetts Ave., NW/P.O. Box 883
Washington, D.C.  20044
Telephone: (202)514-4522
Facsimile:  (202) 616-8470

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| DENNIS MONTGOMERY, et al., | |
| Plaintiffs, | |
| | 3:06-CV-00056-PMP-VPC |
| v. | **BASE FILE** |
| | |
| ETREPPID TECHNOLOGIES, INC., et al., | 3:06-CV-00145-PMP-VPC |
| Defendants. | |

**UNITED STATES' REVISED PROPOSED PROTECTIVE ORDER**

Pursuant to Federal Rule of Civil Procedure 26, in order to protect the classification, confidentiality and the rights to information and documents developed and disclosed in connection with this litigation, and to facilitate discovery by and among the parties to this action and from third parties, the United States hereby proposes entry of the following protective order.

IT IS HEREBY ORDERED as follows:

1. Certain information that may or may not be relevant to the claims and/or defenses of eTreppid Technologies, LLC and its current or former officers or employees (hereinafter collectively referred to as "eTreppid"), Warren Trepp, Dennis Montgomery, the Montgomery Family Trust and/or Dennis Montgomery and Brenda Montgomery as trustees of the Montgomery Family Trust (hereinafter collectively referred to as "the Parties"), as delineated in paragraphs 2 and 3 below, is subject to the state secrets privilege, the disclosure of which reasonably could be expected to cause serious, and in some cases exceptionally grave, damage to the national security of the United States. Such information shall not be subject to discovery or disclosure by any of the Parties during all proceedings in these actions, and shall be excluded from evidence at trial.

2. The Parties shall not serve or take any discovery relating to or questioning the existence or non-existence of any actual or proposed relationship, agreement, connection, contract, transaction, communication or meeting of any kind between any entity in the intelligence community as defined by the National Security Act of 1947, 50 U.S.C. § 401(a)(4), which includes intelligence elements of the military services, or any current or former official, employee or representative thereof (hereinafter collectively referred to as "intelligence agency") and the Parties.

3. The Parties shall not serve or take any discovery relating to or questioning any actual or proposed intelligence agency interest in, application of or use of any technology, software or source code owned or claimed by the Parties.

4. This Order does not preclude the Parties from serving or taking any discovery from other Parties or third parties relating to, or questioning, the following:

  a. The existence and nature of the "Big Safari" contract (hereinafter referred to as "the Big Safari Contract") between eTreppid and the Unites States Air Force, including but not limited to the fact that the Big Safari Contract required eTreppid to perform data analysis and the fact that the data analysis eTreppid performed under the Big Safari Contract involved image identification technology;

  b. The fact that the Big Safari Contract required employees and/or officers of eTreppid to sign secrecy agreements with the Department of Defense;

  c. The computer source code, software, programs, or technical specifications relating to any technology (the "Technology") owned or claimed by any of the Parties;

  d. Any contract, relationship, agreement, connection, transaction, communication or meeting of any kind relating to the Technology, unless covered by paragraphs 2 or 3 above;

  e. Any actual or potential commercial or government applications of the Technology, unless covered by paragraphs 2 or 3 above;

  f. Facts relating to the issue of ownership by the Parties of any right or interest in the Technology, unless covered by paragraphs 2 or 3 above;

  g. The revenue, income, expenses, profits and losses of the Parties, unless covered by paragraphs 2 or 3 above; and

  h. Any consideration received by any of the Parties relating to the Technology, unless covered by paragraphs 2 or 3 above.

  5. The Parties shall not discuss, mention, question or introduce as evidence, either at trial, in any pleading or motion, or in any case-related correspondence, any actual or proposed relationship, agreement, connection, contract, transaction, communication or meeting of any kind between any intelligence agency and any of the Parties.

6.  The Parties shall not discuss, mention, question or introduce as evidence, either at trial, in any pleading or motion, or in any case-related correspondence, any actual or proposed intelligence agency interest in, application of or use of the Technology.

7.  No question and no document request in discovery or at trial shall require a response that would include any information covered by paragraphs 2, 3, 5 or 6 above, but if the responding party believes that a full and complete response could implicate information within the scope of the state secrets privilege, the party shall provide notice of such belief to the United States prior to responding, and shall respond only with information that the United States has determined is not subject to the state secrets privilege.

8.  The military and state secrets privilege, the claim that any discovery is covered by paragraphs 2 or 3 above, and the claim that any evidence is covered by paragraphs 2 or 3 above, can only be invoked by the United States. These claims cannot be asserted by a private individual or entity.

9.  All Parties shall serve the attorneys for the United States with (a) a copy of all notices of depositions, (b) a copy of all requests for discovery and responses thereto, and (c) a copy of all pleadings and motions filed together with supporting memoranda (hereinafter collectively referred to as the "documents"), unless such documents request or relate to information covered by paragraphs 2 or 3 above. If the documents request or relate to information covered by paragraphs 2 or 3 above, the Parties shall submit the documents to the United States for privilege review prior to service or filing. All documents filed or sought to be used as evidence by the Parties in this case shall be unclassified. This requirement applies to all motions, pleadings, briefs, and any other document, including exhibits, correspondence, or anything appended thereto or filed therewith. If the United States determines that a document or discovery response includes information covered by paragraphs 2 or 3 above, the United States shall redact the

information and provide the parties and Court with a redacted copy of the document or discovery response.

10.    The Clerk of the Court shall send attorneys for the United States a copy of all future decisions and notices for hearings in these cases.

11.    As the United States deems necessary, attorneys for the United States may attend all depositions and proceedings in this case and may make objections as necessary to protect national security information.  If attorneys for the United States assert an objection based on the need to protect national security information with respect to either witness testimony or documents introduced or otherwise relied upon during a deposition, then the witness shall be precluded from testifying with respect to the line of inquiry that engendered the objection, and the document shall be withdrawn from the record pending an order of the Court with respect to the scope of the government's national security objection.

12.    To protect the United States' interests, attorneys for the United States may participate in any proceeding in these cases, including but not limited to motions hearings, all pre-trial proceedings, or trial by making and opposing motions, submitting briefs, and participating in arguments.

13.    The United States shall be excepted from all party discovery during the pendency of its motions to dismiss the claims against the Department of Defense.

It is so ordered.

Dated: _____

_____
United States District Judge