J. Stephen Peek, Esq. (NV Bar #1758)
Jerry M. Snyder, Esq. (NV Bar #6830)
Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, NV  89511
Tel: (775) 327-3000
Fax:  (775) 786-6179

PILLSBURY WINTHROP SHAW PITTMAN, L.L.P.
Jeffrey S. Ross, CA Bar No. 67345 (*Admitted Pro Hac Vice Feb. 2, 2007*)
Jonathan D. Butler, CA Bar No. 229638 (*Admitted Pro Hac Vice May 2, 2006*)
2475 Hanover Street
Palo Alto, CA 94304-1114
Telephone: (650) 233-4500
Facsimile: (650) 233-4545

Attorneys for Plaintiff and Cross-Defendant eTreppid Technologies, L.L.C. and Cross-Defendant Warren Trepp

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| ETREPPID TECHNOLOGIES, L.L.C., a Nevada Limited Liability Company<br><br>　　Plaintiff,<br><br>　　vs.<br><br>DENNIS MONTGOMERY, THE MONTGOMERY FAMILY TRUST, DENNIS MONTGOMERY and BRENDA MONTGOMERY as Trustees of The MONTGOMERY FAMILY TRUST; and DOES 1 through 20,<br><br>　　Defendants. | Case No.   3:06-CV-00145 (PMP)(VPC)<br><br>**ETREPPID TECHNOLOGIES, L.L.C.'S SECOND AMENDED COMPLAINT** |
| DENNIS MONTGOMERY; MONTGOMERY FAMILY TRUST,<br><br>　　Counterclaimants and Third-Party Plaintiffs,<br><br>　　vs.<br><br>ETREPPID TECHNOLOGIES, L.L.C.; a Nevada Limited Liability Company, WARREN TREPP; DEPARTMENT OF DEFENSE of the UNITED STATES OF AMERICA; and DOES 1-10,<br><br>　　Counterdefendants and Third-Party Defendants. | |

::ODMA\PCDOCS\HLRNODOCS\638485\1

1

Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

# ETREPPID TECHNOLOGIES, L.L.C.'S SECOND AMENDED COMPLAINT

Plaintiff and Cross-Defendant eTreppid Technologies, L.L.C. ("eTreppid" or "Plaintiff") alleges as follows:

## NATURE OF THE ACTION

1. Dennis Montgomery ("Montgomery"), the Montgomery Family Trust, Dennis and Brenda Montgomery, as trustees for the Montgomery Family Trust, and DOES 1-20 (collectively, "Defendants") have wrongfully misappropriated and/or converted trade secrets and other property, engaged and threatened to blackmail eTreppid by wrongfully converting and withholding eTreppid's sensitive proprietary information and other property, and/or have breached contractual agreements with eTreppid.

2. Certain of eTreppid's employees, including Montgomery, were given access to eTreppid's sensitive proprietary information on specific terms and conditions designed to allow them to perform their duties while protecting eTreppid's proprietary information, including eTreppid technology, Source Code, confidential information, and trade secrets related to eTreppid products (collectively, the "eTreppid Confidential Information").  Prior to January 18, 2006, Defendant Montgomery was employed by eTreppid as its Chief Technology Officer, responsible for all of eTreppid's Source Code.  As such, Montgomery had the ability to access eTreppid Confidential Information.

3. Montgomery, had access to eTreppid Confidential Information, and in or around the period from December 2005 through January 2006, knowingly destroyed or deleted all versions of the eTreppid Source Code, including all back-up copies, which were located at the Company, and also stole a complete and/or nearly complete current version of certain computer source code, which is included in the eTreppid Confidential Information (the "eTreppid Source Code"), for his own personal use and benefit.  Montgomery also copied and then deleted from eTreppid's computers various electronically-stored documents and files, including eTreppid's email.

4. On information and belief, Montgomery claims to own some or all of the eTreppid Source Code and other eTreppid Confidential Information, through his association with and control of the Montgomery Family Trust.

::ODMA\PCDOCS\HLRNODOCS\638485\1

5. Because Montgomery is wrongfully in possession of the only intact current version of the eTreppid Source Code, and Defendants are continuing to misappropriate and convert eTreppid Confidential Information (including, but not limited to, email files and the eTreppid Source Code) to suit their own interests, eTreppid seeks the return of all eTreppid Confidential Information in Defendants' possession or control and seeks to enjoin them from obtaining any commercial advantage or unjust enrichment from their misappropriation. eTreppid also seeks damages for Defendants' wrongful conduct.

## GENERAL FACTUAL ALLEGATIONS

### The Parties

6. eTreppid Technologies, L.L.C. (formerly known as "Intrepid Technologies, L.L.C.") is a privately-held limited liability company organized under the laws of the state of Nevada.

7. eTreppid is in the business of developing software for such applications as data compression, pattern recognition and others. Its corporate headquarters are located in Reno, Nevada.

8. Montgomery was employed by eTreppid as its Chief Technology Officer. Montgomery was also a member of eTreppid's management committee. eTreppid is informed and believes that Montgomery resides in Reno, Nevada.

9. The Montgomery Family Trust transferred all of the then-existing and future rights to certain software compression technology that is incorporated in whole or in part in the eTreppid Source Code to eTreppid pursuant to the Contribution Agreement dated September 28, 1998. This initial software compression technology contributed by the Montgomery Family Trust, was improved and modified by eTreppid over the next eight years.

10. Under the terms of Montgomery's employment that existed from September 28, 1998 until January 1, 1999, set forth in the 1998 Intrepid Operating Agreement, Montgomery agreed to devote "substantially all of his time and attention and efforts to the Business and affairs of the LLC during reasonable business hours."

11. Under the terms of Montgomery's employment that existed from September 28, 1998 until January 1, 1999, set forth in the 1998 Intrepid Operating Agreement, Montgomery agreed not to compete with Intrepid by "(i) developing, licensing, or exploiting in any manner any software

::ODMA\PCDOCS\HLRNODOCS\638485\1

1  programs or other technology which is competitive with the Technology or Business of the LLC, ...or (ii) purchasing or otherwise acquiring, owning, holding, operating, managing, investing, in or otherwise disposing of a like business of the LLC's Business and interests therein of any kind, or (iii) otherwise engaging in any or all aspects of a like business of the LLC's Business."

12. Under the terms of Montgomery's employment that existed from January 1, 1999 until November 1, 2001, set forth in the 1999 Intrepid Operating Agreement, Montgomery agreed to devote "substantially all of his time and attention and efforts to the Business and affairs of the LLC during reasonable business hours."

13. Under the terms of Montgomery's employment that existed from January 1, 1999 until November 1, 2001, set forth in the 1999 Intrepid Operating Agreement, Montgomery agreed not to compete with Intrepid by "(i) developing, licensing, or exploiting in any manner any software programs or other technology which is competitive with the Technology or Business of the LLC, ...or (ii) purchasing or otherwise acquiring, owning, holding, operating, managing, investing, in or otherwise disposing of a like business of the LLC's Business and interests therein of any kind, or (iii) otherwise engaging in any or all aspects of a like business of the LLC's Business.

14. Under the terms of Montgomery's employment that existed after November 1, 2001, set forth in the 2001 eTreppid Operating Agreement, Montgomery agreed to devote "substantially all of his time and attention and efforts to the Business and affairs of the LLC during reasonable business hours."

15. Under the terms of Montgomery's employment that existed after November 1, 2001, set forth in the 2001 eTreppid Operating Agreement, Montgomery agreed not to compete with eTreppid by "(i) developing, licensing, or exploiting in any manner any software programs or other technology which is competitive with the Technology or Business of the LLC, ...or (ii) purchasing or otherwise acquiring, owning, holding, operating, managing, investing, in or otherwise disposing of a like business of the LLC's Business and interests therein of any kind, or (iii) otherwise engaging in any or all aspects of a like business of the LLC's Business."

16. eTreppid is informed and believes and, on that basis, alleges that the Montgomery Family Trust is a California Trust.

Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

::ODMA\PCDOCS\HLRNODOCS\638485\1

17. eTreppid is informed and believes that Dennis Montgomery and Brenda Montgomery, trustees of the Montgomery Family Trust, are residents of the state of Washington.

18. eTreppid is unaware of the true names and capacities, whether individual, corporate or otherwise, of the defendants sued herein as DOES 1 through 20, and therefore sues these defendants by such fictitious names. eTreppid will amend this complaint to state the true names and capacities of such fictitiously named defendants when ascertained. eTreppid is informed and believes, and on that basis alleges, that each of such fictitiously named defendants was acting as the agent, partner, joint venturer or potential business partner or acquirer of eTreppid and is jointly and severally responsible for the acts and omissions alleged herein.

19. eTreppid is informed and believes and, on that basis, alleges that the Defendants and each of them were the agents, servants and employees of their co-defendants and each of them, and in doing the things alleged herein were acting within the course and scope of their authority as such agents, servants and employees and with the permission and consent of their co-defendants, and each of them.

**The Nature of eTreppid's Business**

20. The eTreppid Source Code is the source code used to implement the various functions performed by eTreppid Software, including data compression, pattern recognition, object tracking and anomaly detection and other functions. eTreppid developed and owns the eTreppid Source Code, and all of eTreppid's revenues derive from eTreppid Software.

21. Given the critical importance of the eTreppid Source Code to eTreppid, as Chief Technical Officer Dennis Montgomery was solely responsible for maintaining a current version of the eTreppid Source Code and for backing-up (*i.e.*, saving a copy) the eTreppid Source Code.

22. To protect the valuable eTreppid Source Code, eTreppid controls access to the eTreppid Source Code and other eTreppid Confidential Information to maintain its security and confidentiality. As discussed further below, these controls include limiting access to its facilities, to its computer servers, and to its tangible and intangible intellectual property.

///

///
::ODMA\PCDOCS\HLRNODOCS\638485\1

5

**Security Measures Governing Access to eTreppid Source Code**

23.     The eTreppid Source Code, prior to its deletion, was stored in on-site computer servers, including the SRCSERVER and ISASERVER, and two computer workstations. Associated with each of these servers and workstations was a different RAID (Redundant Array of Independent Disks) storage box, which actually stored the eTreppid Source Code. Access to these servers is controlled by an Administrator password. Only Montgomery and one other eTreppid employee, Sloan Venables, knew the Administrator password in effect prior to and in or around the time period from December 2005 through January 2006.

24.     The eTreppid servers are stored in a server room that is accessible by only a small group of personnel, which included Montgomery.

25.     As of December 2005, the current version of the eTreppid Source Code was stored in the SRCSERVER. Backup copies of the eTreppid Source Code were stored in multiple other locations, including a backup server referred to as ISASERVER, two (2) backup computer workstations, and backup servers located in the warehouse area of eTreppid's facilities. On information and belief, eTreppid alleges that Montgomery stole the backup servers that had been located in the warehouse area of eTreppid's facilities—which, on information and belief, contained a backup copy of some or all of the eTreppid Source Code.

26.     For overall building security of eTreppid, only a few employees have an individual code to access the building and activate or de-activate the alarm system. Activation and de-activation of the alarm system at eTreppid's facilities is electronically monitored and the identity of the employees using the codes is recorded. Only Montgomery's code was used to access the building over the weekend of January 6, 2006.

27.     Further, video cameras monitor the activities, including the access doors to the building and the server room, and the footage recorded from these cameras is stored on computers at eTreppid's facilities as video files. On or soon after January 10, 2006, Mr. Venables discovered that the video files which stored footage recorded from these cameras had been deleted from the computers.

///

///
::ODMA\PCDOCS\HLRNODOCS\638485\1

6

28.     Montgomery regularly provided compact discs, DVD's (digital versatile discs) and/or computer hard disks ("Backup Files") to eTreppid's Chairman, Mr. Warren Trepp ("Mr. Trepp"), which he informed Mr. Trepp contained the most current version of the eTreppid Source Code.

### **Misappropriation of Trade Secrets**

29.     Historically, programmers developing eTreppid Source Code store pieces of the eTreppid Source Code they are working on at their workstations.

30.     eTreppid maintained a network of computers that also allowed these programmers to access a portion of the eTreppid Source Code that was maintained on a shared directory. Montgomery was the only eTreppid employee who had access to the entirety of the eTreppid Source Code.

31.     On or around December 19 or 20, 2005, Montgomery began deleting certain eTreppid Source Code files that were located on the hard drive for certain workstation that had not been recently used. Montgomery told Mr. Barjinder Bal, an eTreppid employee, that he was deleting the files on Mr. Bal's workstation for security reasons, and that there remained copies of these files on the SRCSERVER that Mr. Bal would still be able to access. Also, at that time, the hard drive of Mr. Bal's workstation contained other eTreppid Source Code files, which Mr. Bal was using in the performance of his duties at eTreppid.

32.     When Mr. Bal arrived at work on Monday, January 2, 2006, all of the eTreppid Source Code that he had been recently using and which had been on the hard drive of his computer workstation when he left work the previous Friday, December 30, 2005, had been deleted.

33.     Another programmer/software developer, Mr. Venkata Kalluri, also discovered that the eTreppid Source Code files stored at his workstation had been deleted.

34.     Mr. Kalluri asked Montgomery about the deleted eTreppid Source Code files, as he was concerned about the ability to continuing to work without access to the files. Montgomery responded that he was performing a daily backup so that Mr. Kalluri would have the most recent files, and that he (Montgomery) would provide the eTreppid Source Code Mr. Kalluri required on an as-needed basis.

35.     On December 21, 2005, Mr. Venables participated in a telephone conversation with Montgomery. In the conversation Montgomery suggested to Mr. Venables that he did not need to come to the office. Mr. Venables went to the office anyway. When he arrived he noticed that one of

::ODMA\PCDOCS\HLRNODOCS\638485\1

7

1 the computer workstations used to store a backup copy of the eTreppid Source Code was missing. Mr. Venables asked Montgomery about the missing workstation, and Montgomery told Mr. Venables that he had taken the workstation and the associated RAID storage box to his home.

36. Mr. Venables took a vacation from December 22, 2005 to January 3, 2006.

37. During the time period between Christmas and New Year's Day, Montgomery provided Mr. Kalluri with specific files of the eTreppid Source Code upon demand. To provide the requested files, Montgomery copied the files to a shared drive that Mr. Kalluri could access. After Mr. Kalluri accessed the file and copied it to his workstation, the copy in the shared drive was deleted. When he completed his work on the files, Mr. Kalluri copied them back into the shared drive and informed Montgomery – who would then be responsible for copying that file to the servers that stored the eTreppid Source Code.

38. Upon returning from his vacation on January 3, 2006, Mr. Venables checked the status of the SRCSERVER and the ISASERVER. From this check, he determined that all of the eTreppid Source Code stored on each of these servers had been deleted. He was next informed by another employee, Jesse Anderson, that portions of the eTreppid Source Code previously stored on the programmers' workstations had been deleted as well.

39. On January 3, 2006, Mr. Venables asked Montgomery what was going on, and Mr. Montgomery responded that he was "cleaning stuff up," and that this included deleted files that "weren't needed."

40. As of January 9, 2006, Mr. Trepp and Mr. Venables discovered that substantially all of the eTreppid Source Code was missing. None of the programmers had access to the pieces of the eTreppid Source Code they had been working on at their personal workstations. Mr. Venables looked for the eTreppid Source Code in the building, but could not find it. Mr. Trepp also directed employees to look for a complete copy of the eTreppid Source Code, to no avail. When Mr. Trepp later ordered an examination of the Backup Files provided to him by Montgomery, it was discovered that the Backup Files did not, and never had, contained a complete copy of the eTreppid Source Code for any period of time, contrary to Montgomery's representations. The Backup Files contained no useful data or source code at all, but were, on information and belief, merely a device used by Montgomery to

::ODMA\PCDOCS\HLRNODOCS\638485\1

8

deceive the company into believing there was a complete, updated copy of the eTreppid Source Code maintained off-premises.

41. On the morning of January 10, 2006, when Montgomery was in the building for a brief period of time, Mr. Venables asked Montgomery what happened to the eTreppid Source Code. Montgomery said it was stored on the seven hundred fifty three (753) separate "320 Gigabyte hard Drives" located in the building. Each of the hard drives that could be located were inspected by Mr. Venables and others, but none of the eTreppid Source Code was found.

42. Later on the day of January 10, 2006, Montgomery returned to the building and spoke with the Chairman, Mr. Warren Trepp. After they talked, Montgomery spoke with Mr. Venables, and stated that if Mr. Trepp wants to recover the missing eTreppid Source Code, he "needs to give me big money."

43. eTreppid is informed and believes and, on that basis, alleges that Montgomery has attempted or will attempt to transfer eTreppid's trade secrets and other intellectual property to third parties, including the Montgomery Family Trust.

**Computer Hard Drives Seized From Defendants' Residence and/or Storage Units**

44. On information and belief, on or around March 6, 2006, agents of the Federal Bureau of Investigation (the "FBI") conducted a search, pursuant to a search warrant, of Defendants' residence and of several storage units rented by Defendants. On information and belief, FBI agents seized certain computer hard drives during this search. FBI Special Agent Michael West ("Agent West") then contacted Warren Trepp and Sloan Venables at eTreppid, and provided three lists of serial numbers for twenty-seven computer hard drives (the "Hard Drive Lists") that, according to Agent West, the FBI seized from Defendants and were in the FBI's possession. On information and belief, all of these twenty-seven computer hard drives, which were in the FBI's possession, have been returned to Mr. Montgomery.

45. On eTreppid's behalf, Messrs. Trepp and Venables reviewed the Hard Drive Lists and have located evidence that corroborates eTreppid's ownership of the hard drives by virtue of the serial numbers that appear on the Hard Drive Lists. eTreppid located purchase receipt evidence that corroborates its ownership rights to twenty of the twenty-seven computer hard drives identified on the

::ODMA\PCDOCS\HLRNODOCS\638485\1

9

Hard Drive Lists.  In summary, at this time eTreppid has evidence relating to its ownership of twenty of the twenty-seven hard drives seized by the FBI from Montgomery's residence and/or storage units.  eTreppid can further support its ownership of the hard drives and their contents if it is granted access to the twenty-seven hard drives, which eTreppid believes contain the stolen eTreppid Source Code, or some portion thereof, and can conduct an analysis to establish contents of the stolen hard drives belongs to eTreppid.

### eTreppid is Suffering Irreparable Harm Due to Mr. Montgomery's Misappropriation

46.   Without access to a complete copy of the eTreppid Source Code, the ability of eTreppid's programmers to perform their ordinary duties and to work on customer projects is limited.  As a result, eTreppid is currently losing over $6,000.00 per day on wages and other administrative costs in order to retain key personnel, even though these personnel cannot regularly perform their ordinary duties because the eTreppid Source Code is missing.

47.   eTreppid has also spent significant time and effort to secure additional contracts with customers it has done business with in the past.  At present, eTreppid is unable to obtain contracts with interested customers without the eTreppid Source Code.  eTreppid is also precluded from doing business with certain of its prior customers because they have been brought into this litigation by Montgomery.

### FIRST CAUSE OF ACTION
**(Misappropriation Of Trade Secrets – Nevada Revised Statutes §600A.010 *et seq.*)**
**(Dennis Montgomery, Brenda Montgomery and the Montgomery Family Trust)**

48.   eTreppid re-alleges each and every allegation set forth in Paragraphs 1 through 47, inclusive, and incorporates them herein by reference.

49.   The eTreppid Confidential Information is comprised of trade secret materials, including, but not limited to, eTreppid's Source Code for compression, pattern recognition, object tracking, anomaly detection technology and other applications.  These trade secrets are not generally known to the public or to other persons who can obtain economic value from their disclosure or use.  These trade secrets are the subject of reasonable efforts by eTreppid to maintain their secrecy, and they derive independent economic value from not being generally known.  The information destroyed,

::ODMA\PCDOCS\HLRNODOCS\638485\1

Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

1 deleted and/or taken by Montgomery constitutes eTreppid's "trade secrets" under Nevada Revised
2 Statutes section 600A.030(5).

3    50.  On information and belief, Defendants wrongfully, willfully and/or maliciously
4 misappropriated eTreppid's trade secrets.

5    51.  By reason of the above-alleged acts and conduct of Defendants, eTreppid has been
6 damaged severely, and has and will continue to suffer great and irreparable harm and damage in the
7 future. The precise amount of this irreparable harm is and will be difficult to ascertain, and eTreppid is
8 without an adequate remedy at law to redress its injuries.

9    52.  eTreppid is entitled to an injunction restraining Defendants, their employers, attorneys,
10 agents, employees, and all persons acting in concert with them, from using, copying, publishing,
11 disclosing, transferring, selling or otherwise distributing eTreppid's trade secrets, or any product or
12 services based on or incorporating all or part of eTreppid's trade secrets, and restraining them from
13 obtaining any commercial advantage or unjust enrichment from the misappropriation of eTreppid's
14 trade secrets.

15   53.  eTreppid is further entitled to an order requiring Defendants, their employers, attorneys,
16 agents, employees, and all persons acting in concert with them, to return to eTreppid any and all of its
17 trade secrets and confidential, proprietary materials, including, but not limited to, the eTreppid Source
18 Code and other eTreppid Confidential Information.

19   54.  eTreppid is further entitled to recover from Defendants the actual damages sustained by
20 eTreppid as a result of Defendants' wrongful acts. The amount of such damages cannot be determined
21 precisely at this time.

22   55.  Defendants' acts of misappropriation were knowing, willful and/or malicious, and
23 eTreppid is entitled to an award of punitive damages and attorney's fees against Defendants. N.R.S.
24 600A.050-060. eTreppid is further entitled to recover from Defendants the gains, profits, advantages,
25 and unjust enrichment that they have obtained as a result of their wrongful acts. N.R.S. 600A.050.
26 eTreppid is at present unable to ascertain the full extent of these gains, profits, advantages and unjust
27 enrichment but, on information and belief, avers that they are substantial and in excess of $10,000.00.
28 ///
::ODMA\PCDOCS\HLRNODOCS\638485\1

11

## SECOND CAUSE OF ACTION
### (Breach of Contract)
### (Dennis Montgomery)

56.  eTreppid re-alleges each and every allegation contained in paragraphs 1 through 47, inclusive, and incorporates them herein by reference.

57.  Montgomery breached the terms of his Contribution Agreement by which he assigned to eTreppid any and all of his rights to compression software technology in the eTreppid Source Code.

58.  Montgomery breached the terms of his employment, as memorialized in the Company's operating agreements in effect during his employment with eTreppid,.

59.  As a direct and proximate result of Montgomery's breaches of these agreements, eTreppid has been damaged in an amount and entitled to recover a sum of money according to proof at the time of trial.

## THIRD CAUSE OF ACTION
### (Conversion)
### (Dennis Montgomery)

60.  eTreppid re-alleges each and every allegation contained in paragraphs 1 through 47, inclusive, and incorporates them herein by reference.

61.  eTreppid is informed and believes that Defendants have improperly taken and converted eTreppid Confidential Information (including, but not limited to, email files and the eTreppid Source Code) and other property to their use. The value of the eTreppid Confidential Information is, on information and belief, substantial and in excess of the jurisdictional minimum of this Court.

62.  eTreppid is informed and believes that in committing the acts alleged herein, Defendants are guilty of oppression, fraud or malice in that Defendants wrongfully and unlawfully obtained eTreppid Confidential Information (including, but not limited to, email files and the eTreppid Source Code) and other property in order to benefit themselves at eTreppid's expense. eTreppid is therefore entitled to an award of punitive damages and attorney's fees against Defendants.

///

///
::ODMA\PCDOCS\HLRNODOCS\638485\1

### FOURTH CAUSE OF ACTION
### (Breach of Fiduciary Duty)
### (Dennis Montgomery)

63. eTreppid re-alleges each and every allegation contained in paragraphs 1 through 47, inclusive, and incorporates them herein by reference.

64. Montgomery owed a fiduciary duty to eTreppid, as an officer and a member of eTreppid's management committee.

65. The Montgomery Family Trust, Dennis Montgomery, and Brenda Montgomery, as trustees, owed a fiduciary duty to eTreppid as members of eTreppid.

66. Through the actions set forth above, Defendants have breached their fiduciary duty to eTreppid.

67. As a result of Defendants' breach of fiduciary duty, Plaintiff has suffered damages in an amount to be proven at trial but which exceed $10,000.00.

68. eTreppid is informed and believes that in committing the acts alleged herein, Defendants are guilty of oppression, fraud or malice in that Defendants wrongfully and unlawfully obtained eTreppid Confidential Information (including, but not limited to, email files and the eTreppid Source Code) and other property in order to benefit themselves at eTreppid's expense. eTreppid is therefore entitled to an award of punitive damages and attorney's fees against Defendants.

### FIFTH CAUSE OF ACTION
### (Bad Faith – Tortious and Contractual)
### (Dennis Montgomery)

69. eTreppid re-alleges each and every allegation contained in paragraphs 1 through 47, inclusive, and incorporates them herein by reference.

70. There exists in every contract entered into within the state of Nevada an implied covenant of good faith and fair dealing.

71. As an officer and manager of eTreppid, Montgomery owed eTreppid a fiduciary duty.

72. Through the actions described above, Montgomery breached the implied covenant of good faith and fair dealing.

///
::ODMA\PCDOCS\HLRNODOCS\638485\1

73. As a result of Montgomery's breach of the covenant of good faith and fair dealing, Plaintiff has suffered damages in an amount to be proven at trial but which exceed $10,000.00.

74. eTreppid is informed and believes that in committing the acts alleged herein, Montgomery and the Defendants, and each of them, are guilty of oppression, fraud or malice. eTreppid is therefore entitled to an award of punitive damages and attorney's fees against Montgomery and the Defendants, and each of them.

**SIXTH CAUSE OF ACTION**
**(Declaratory Relief)**
**(Dennis Montgomery, Brenda Montgomery and the Montgomery Family Trust)**

75. eTreppid re-alleges each and every allegation contained in paragraphs 1 through 47, inclusive, and incorporates them herein by reference.

76. An actual dispute exists between eTreppid, on the one hand, and Montgomery and the Montgomery Family Trust, on the other, regarding the ownership of the eTreppid Source Code.

77. Pursuant to N.R.S. 30.040, a judicial determination of the rights, duties and obligations of the parties under the eTreppid operating agreements and/or the state statutes and local ordinances is required with a determination and/or declaration that eTreppid holds all rights to any technology that Montgomery developed while he was an employee of eTreppid.

**SEVENTH CAUSE OF ACTION**
**(Intentional Interference with Contract)**
**(Dennis Montgomery)**

78. eTreppid re-alleges each and every allegation contained in paragraphs 1 through 47, inclusive, and incorporates them herein by reference.

79. Montgomery was aware of certain contracts between eTreppid and a number of third parties, including but not limited to LLH & Associates, a prime governmental contractor.

80. Through the conduct set forth above, Montgomery intended to interfere with and disrupt the contractual relationship between eTreppid and each and every third party with which eTreppid had a contract or with which eTreppid was competing for a contract.

///

///

::ODMA\PCDOCS\HLRNODOCS\638485\1

14

81. Through the conduct as set forth above, Montgomery has in fact disrupted the contractual relationship between eTreppid and each of these third parties by hampering eTreppid's ability to fulfill its contractual obligations.

82. As a result of Montgomery's conduct, eTreppid has incurred damages in an amount to be determined at trial, but which exceeds $10,000.00.

83. eTreppid is informed and believes that in committing the acts alleged herein, Montgomery and Defendants, and each of them, are guilty of oppression, fraud or malice. eTreppid is therefore entitled to an award of punitive damages and attorney's fees against Montgomery and Defendants, and each of them.

**EIGHTH CAUSE OF ACTION**
**(Claim and Delivery)**
**(Dennis Montgomery, Brenda Montgomery and the Montgomery Family Trust)**

84. eTreppid re-alleges each and every allegation contained in paragraphs 1 through 47, inclusive, and incorporates them herein by reference.

85. eTreppid is the owner of certain computer hard drives and other electronic storage media and devices which may contain information that is eTreppid's intellectual property.

86. Montgomery wrongfully took some of the computer hard drives that are eTreppid's property and, on information and belief, copied eTreppid Confidential Information (including, but not limited to, email files and the eTreppid Source Code) on to those hard drives, and wrongfully detained the hard drives and the eTreppid Confidential Information stored thereon.

87. eTreppid is informed and believes that Montgomery detained this property for the purpose of either converting it to his own use or demanding that eTreppid pay him a substantial amount of money for its return.

88. On information and belief, agents of the United States of America seized the hard drives pursuant to a search warrant. Pursuant to this Court's order of March 19, 2007, the hard drives and other seized property have been returned to Mr. Montgomery.

89. The hard drives belong to eTreppid, and should be immediately returned to eTreppid. All of the data that was stored on those hard drives also belongs to eTreppid and should also be

::ODMA\PCDOCS\HLRNODOCS\638485\1

15

immediately returned to eTreppid, including all copies of the data and the original data itself, and including data stored electronically, in hard copy, or in any other manner. Accordingly, eTreppid is entitled to a writ of possession.

WHEREFORE, eTreppid requests judgment against Defendants, and each of them, and all those acting in concert with them as follows:

1. A permanent injunction restraining and enjoining Defendants from continuing the wrongful acts and conduct set forth above;

2. A permanent injunction requiring Defendants to return all eTreppid Confidential Information (including, but not limited to, email files and the eTreppid Source Code) and other eTreppid property;

3. During the pendency of this action, a preliminary injunction enjoining and restraining Defendants from the wrongful acts and conduct set forth above and requiring Defendants to deliver to eTreppid a copy of all Confidential Information (including, but not limited to, email files and the eTreppid Source Code);

4. During the pendency of this action, a writ of possession requiring Defendants to return all eTreppid Confidential Information (including, but not limited to, email files and the eTreppid Source Code) and other eTreppid property;

5. Restitution;

6. Declaratory relief providing that eTreppid holds all rights to any technology developed by Montgomery while he was an employee of eTreppid;

7. A writ of possession entitling eTreppid to take possession of all eTreppid Confidential Information (including, but not limited to, email files and the eTreppid Source Code) and other eTreppid property;

8. Compensatory damages in an amount to be proven at trial, including but not limited to damages recoverable pursuant to N.R.S. 600A.050.1;

9. Punitive damages pursuant to N.R.S. 600A.050.2;

10. Reasonable attorneys' fees;

///
::ODMA\PCDOCS\HLRNODOCS\638485\1

1    11.    All costs of suit herein incurred; and,

2    12.    Such other and further relief as the Court may deem proper.

Dated:  June 11, 2007.

                          /s/
J. Stephen Peek, Esquire
Nevada Bar Number  1758
Jerry M. Snyder, Esquire
Nevada Bar Number 6830
Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada  89511
775-327-3000 (tel.), 775-786-6179 (fax)
*Attorneys for Plaintiff and Cross-Defendant eTreppid Technologies, L.L.C. and Cross-Defendant Warren Trepp*

Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

::ODMA\PCDOCS\HLRNODOCS\638485\1

# PROOF OF SERVICE

I, Gaylene Silva, declare:

I am employed in the **City of Reno, County of Washoe, State of Nevada,** by the law offices of Hale Lane Peek Dennison and Howard.  My business address is: **5441 Kietzke Lane, Second Floor, Reno, Nevada  89511**.  I am over the age of 18 years and not a party to this action

I am readily familiar with Hale Lane Peek Dennison and Howard's practice for collection of mail,  delivery of its hand-deliveries and their process of faxes.

On June 11, 2007, I caused the foregoing **ETREPPID TECHNOLOGIES, L.L.C.'S SECOND AMENDED COMPLAINT** to be:

__X___  filed the document electronically with the U.S. District Court and therefore the court's computer system has electronically delivered a copy of the foregoing document to the following person(s) at the following e-mail addresses:

*Fax No. 786-5044*
Email Lezlie@renofamilylaw.com
Ronald J. Logar, Esq.
Eric A. Pulver, Esq.
The Law Offices of Logar & Pulver
225 S. Arlington Avenue, Suite A
Reno, NV 89501

*Fax No. 858-759-0711*
Email mailto:mjfbb@msn.com
And mailto:cdimare@worldnet.att.net
Michael J. Flynn, Esq.
P.O. Box 690
6125 El Tordo
Rancho Santa Fe, CA  90267

*Fax No. 202/616-8470*
Carlotta.wells@usdoj.gov
Carlotta P. Wells, Esq.
Senior Trial Counsel
Federal Programs Branch
Civil Division – Room 7150
U.S. Department of Justice
20 Massachusetts Ave., NW
P.O. Box 883
Washington, DC  20044

*Fax No. 784-5181*
Greg.addington@usdoj.gov
Greg Addington
Assistant U.S. Attorney
100 W. Liberty Street, Suite 600
Reno, NV  89501

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on June 11, 2007.

/s/ _____
Gaylene Silva

::ODMA\PCDOCS\HLRNODOCS\638485\1