**Michael J. Flynn, Mass. State Bar No.172780**
P.O. Box 690, 6125 El Tordo
Rancho Santa Fe, CA 92067
Tel:    (858) 775-7624;Fax:  (858) 759-0711
*Admitted Pro Hac Vice*
Former Attorney for the Montgomery parties

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA , RENO

| | |
|---|---|
| DENNIS MONTGOMERY, and the MONTGOMERY FAMILY TRUST, ) ) ) | 3:06-CV-00056-PMP-VPC **BASE FILE** |
| Plaintiffs, ) ) | 3:06-CV-00145-PMP-VPC 3:06-CV-0263-PMP-VPC |
| v. ) | |
| ETREPPID TECHNOLOGIES, LLC, WARREN TREPP, and the UNITED STATES DEPARTMENT OF DEFENSE, ) ) ) ) | **NOTICE OF MOTION AND MOTION FOR ATTORNEY FEES AND COSTS** |
| Defendants. ) ) | |
| _____ ) | |
| AND ALL RELATED MATTERS. ) _____ ) | |

TO ALL PARTIES AND ATTORNEY OF RECORD: Attorney Michael Flynn (hereinafter

"counsel"), who was admitted pro hac vice in the above captioned cases, move this Court for an Order

requiring Dennis Montgomery, individually and as Trustee of the Montgomery Family Trust, Brenda

Montgomery, individually and  as Trustee of the Montgomery Family Trust, and the Montgomery

Family Trust (hereinafter collectively "Montgomery"), in the above captioned cases and the related

search warrant matter, 3:06-cv-0263,  to pay all of the outstanding fees and costs currently owed to Mr.

Flynn, and to other attorneys who worked for him, in connection with the underlying actions.  All such

fees and costs were incurred in connection with the actions presently pending before this Court.

Montgomery terminated counsel on August 1, 2007.

    This Motion is based on the attached Memorandum of Points and Authorities, and Declaration

of Michael Flynn, and Amended Notice of Lien, and all papers on file in these three aforementioned

1  cases. This Court must apply Nevada laws, including Nevada Rules of Professional Conduct. to this

2  Motion. See Local Rules of Practice of the United States District of Nevada, LR 1A 10-2 (b) (8-9); LR

3  10-7A.

4          For the above reasons, attorney Michael Flynn respectfully request that this Motion be granted

5  and that Montgomery be required to pay all fees and costs as required by law.  A proposed Order is

6  attached.

7                                        Respectfully submitted,

8

9                                        /S/_____

10  Dated: August 21, 2007                        Michael J. Flynn, Esq.

11

12              **MEMORANDUM OF POINTS AND AUTHORITIES**

13                                          **I.**

14                                  <u>**INTRODUCTION**</u>

15          This Motion for Payment of Unpaid Fees and Costs is based on the work of four attorneys

16  (hereinafter referred to as "counsel") covering a span of over *eighteen* months and involving unpaid

17  fees and costs for a period over six months involving at least three intensely litigated matters all before

18  this Court. This Motion is based  on five theories of recovery including express written promises of

19  payment for the fees and costs actually charged, written and oral promises to pay an hourly fee on an

20  "account stated", implied promises for services rendered,  quantum meruit,[1]  and  fraud.  The fees

21  charged have never been contested or "disputed" by the Montgomerys, or Montgomery's business

22  "partner," Edra Blixseth.

23          In a "meet and confer," conducted on July 31, 2007, and August 13, 2007, one of Montgomery's

24  new counsel, Terri Pham, stated that she did not have "authority" to discuss the fee issues. Thus,

25  although the fees exceeding $625,000.00, and over $10,000 in costs have not been paid, they have

26  never been *disputed*.  Montgomery and Blixseth always praised attorneys Flynn and DiMare's work.

27

28          [1] For all of the reasons set forth herein, this matter is distinguishable from the recent case of
*Ecomares Inc. v Schaefer,* 2007 U.S. dist. LEXIS 50491.

*Motion for Fees & Costs*                    1

1   Instead, Montgomery and his partner, Edra Blixseth, and *her* divorce lawyers in her "billion

2   dollar divorce" currently being litigated in California, Ms. Klar and Ms. Pham, chose to sue counsel

3   in the Los Angeles superior court with a sham complaint seeking injunctive relief to obtain counsel's

4   files and "gag" orders under California law and California Rules of Professional Conduct for matters

5   solely related to what they call the "Nevada disputes." *Their real purpose is to protect Edra Blixseth*

6   *in her billion dollar divorce case.* Their California lawsuit is based on false allegations and driven by

7   Montgomery's and Blixseth's fears that evidence in the "Nevada disputes," which began to emerge

8   following this Court's unsealing of the Michael West declaration on or about April 9, 2007, will

9   substantially and adversely impact Ms. Blixseth's billion dollar divorce. Hence, the filing of a sham

10   complaint in California by Blixseth's divorce lawyers under the pretense of representing Montgomery.

11   Edra Blixseth is very likely paying them and they are working for her in plainly conflicted

12   circumstances with Montgomery.

13   Except for the filing of that baseless law suit, counsel would not be filing this Motion at this

14   time, would not be asserting the facts in the foregoing paragraph, and would not be asserting certain

15   positions herein. But counsel must defend himself here and now, and litigate the issues *in this Court,*

16   *relating to the proper forum to resolve the non-payment of his fees and costs.* That forum is this Court.

17   Montgomery and his lawyers have fabricated allegations to get this case to California. During the

18   hearing on August 17, 2007 the Court inquired why the California Court should not resolve the relief

19   sought in the California complaint. Counsel responded that jurisdiction and venue reside in this Court

20   and that counsel's position on the Court's inquiry would be set forth in this Motion. For that reason,

21   counsel is responding to the Court's inquiry with this written motion taking care not to divulge client

22   confidences or prejudice Montgomery. This Court has the power to stop needless litigation, stop

23   continued delay of these cases, resolve issues, and get to the "truth." If this Court grants this motion,

24   the California case will abruptly end. [2]

25   In sum, the short answer to the Court's question is that the issues underlying this Motion and

26   the California complaint are identical, and these issues should be resolved in Nevada. But

27

28   [2] In California Federal Court, counsel is also filing a Motion to Dismiss or Transfer.

*Motion for Fees & Costs*                    2

1    Montgomery's new lawyers filed the California action on behalf of Edra Blixseth, who is also legally

2    responsible for the fees and costs, because of issues relating to her divorce action.  As this Court has

3    undoubtedly discerned, all of the issues relating to non-payment of the fees and costs sought in this

4    Motion as set forth herein, lie just beneath the surface of the California complaint. Montgomery and

5    Ms. Blixseth now have the option of paying the fees without further litigation by evaluating this

6    Motion and doing the right thing. An unresolved fee dispute here may have grave implications for Ms.

7    Blixseth's divorce action, and attorneys Pham and Klar likely know why.

8       In this Motion, notwithstanding the false allegations now publicly made against him,[3] counsel

9    will only assert the *bare minimum* of facts for this Court to retain jurisdiction and venue and resolve

10   these fee issues. Counsel will not inform the Court at this point of very specific facts impacting both

11   Montgomery and Ms. Blixseth  here and in the California divorce action disclosed to counsel by

12   Montgomery.  Local counsel have been advised of these facts and presumably have advised Ms. Klar

13   and Ms. Pham. Attacking Mr. Flynn will not work.

14      Several of the attorneys routinely worked seven days a week,  twelve plus hours a day to protect

15   the interests of the Montgomery parties. These include Dennis Montgomery, individually and as

16   Trustee of the Montgomery Family Trust, Brenda Montgomery, individually and as Trustee of the

17   Montgomery Family Trust and the Trust itself, (hereinafter the "Montgomery parties").  Not once

18   throughout the *eighteen* months did counsel hear a single murmur about the legitimacy, the amounts,

19   the work performed, or any challenge whatsoever to the fees and costs, until counsel began to question

20   the credibility of Montgomery in May - June, 2007.  In fact, their work was consistently praised and

21   approved by Montgomery and their "partners" with  repeated promises of payment right up though

22   May, 2007.

23      In May-June, 2007, counsel explicitly stated their intentions to withdraw  based primarily on the

24   conduct of Montgomery and his "partners", and secondarily for non-payment of fees and costs.  Then

25   Dennis Montgomery claimed he was unable to pay the fees.  If Montgomery continues to assert this

26   frivolous position in response to this Motion, counsel will respond with detailed facts.  During the

27

28      [3]   The Reno Gazette Journal recently reported Montgomery's allegations as "fraud" against
      counsel.

*Motion for Fees & Costs*                              3

1  same period,  counsel went continually deeper in the hole for unpaid fees and costs; but kept working

2  based on repeated promises of payment, and partial payments made to keep counsel working.

3      Significantly, counsel also kept working based on their *belief* that vital national security interests

4  were at stake in the war on terror; and that the nefarious political clout of Warren Trepp and his

5  henchmen in Washington were actually preventing the use of said technology. Comprehensive

6  documentary, electronic, testimonial and circumstantial evidence *appeared* to support the *belief* that

7  Montgomery's technology was vital to national security. Counsel bought into this *belief*  hook, line

8  and sinker, apparently as did the U.S. Government, its intelligence agencies, various branches of the

9  military, and USSOCOM for over four years preceding April, 2007. Even then, it appeared that at least

10  one agency still believed in the technology, as did counsel, thus falling deeper into debt to "protect"

11  Montgomery and the technology.

12      Additionally, Montgomery's  "partner", Ms. Blixseth, a reputed "billionaire," as well as her

13  company, Opsprings, LLC, repeatedly promised to pay the fees, initially on the expressed altruistic

14  motive to protect national security. It is now public knowledge that she made numerous trips to

15  Washington allegedly to provide the technology and its "output" to high level administration officials.

16  As revealed in the recently unsealed declaration of Montgomery on August 3, 2007, (the same day

17  Montgomery, using Blixseth's lawyers, sued counsel in Los Angeles), this "output" allegedly involved

18  "target coordinates" involving planned  al Qaida attacks. When this Court unsealed Michael West's

19  declaration on or about April 9, 2007 disclosing the alleged al Jazeera decoding,  it became apparent

20  that what counsel then believed and what, in fact, was actually happening in the smoke and mirrors

21  world of "intelligence gathering" might be world's apart. The unsealing did  unleash a tsunami of

22  investigative efforts and inquiries  by counsel, including a trip to Washington, which, in turn

23  broadened into other areas. As circumstances then evolved it became apparent that counsel had to

24  withdraw regardless of the unpaid fees and costs sought in this Motion. In sum, counsel's previous

25  reliance and subsequent fact gathering necessitated withdrawal. The Montgomery parties have never

26  contested the fees or the work performed. Their actions and promises are to the contrary.

27      Counsel's  work was performed by seasoned attorneys with substantial experience and skills

28  at significantly less than market rates because of their belief in the national security "cause." In the

*Motion for Fees & Costs*                    4

context of all of the pleadings in this matter, that factor alone should have great weight in connection with counsel's quantum meruit claims. Great amounts of time, effort, research and legal work was devoted to this problem as reflected in counsel's invoices. This Court need only look at how much time and judicial resources it has devoted to the "national security" problems permeating thee cases.

This Court just recently conducted a hearing on said matters on August 17, 2007. The issues now before the Court in connection with the Motion to Withdraw are intermingled with this Motion for Payment of Fees, *eg* counsel's "retaining lien" intersects with the state secrets issues, which intersect with the transfer of the files, which intersect with payment of the fees. This Motion provides a vehicle for resolution of all such issues. Although the California complaint does not directly challenge the unpaid fees and costs, *the effect of granting injunctive relief in that action will defeat counsel's fees for, inter alia, not transferring the files as required by California law, but subject to a retaining lien under Nevada law, which does not mandate file transfer absent payment.* More importantly, the issues underlying this Motion are the same as those underlying the California complaint.

## II.

## SUMMARY OF ISSUES AND FACTS.

**A.    The underlying issues permeating this motion require resolution if the Montgomery's do not pay the fees and costs.**

The most significant issues and facts, including "partnership" issues between Blixseth and Montgomery, actually precipitating counsel's Motion to Withdraw filed on July 9, 2007, none of which involved the legitimacy of the fees, but which underlie almost all of the work performed, and the current fees outstanding, erupted in connection with facts discovered between April-June, 2007. The unsealing of substantial portions of the search case file on or about April 9, 2007, and issues and facts relating to a Grand Jury subpoena issued in late March, 2007, triggered a sequence of discovery and disclosure, including a trip to Washington D.C. by counsel to meet with Department of Justice attorneys, which, in turn, triggered extensive inquiry relating to the actual efficacy and actual use of the technology in the alleged decoding of al Jazeera satellite transmissions to al Qaida. That is why the fees and costs have not been paid.

This Court's unsealing on August 3, 2007 of the Montgomery declaration cemented counsel's evolving knowledge gained since April, 2007 and caused Montgomery to file his California action that same day. The reason is simple: counsel believed, relied upon, made decisions, *received possession* of Montgomery's "papers and property", and prepared declarations, memos, motions, defended him in the search proceedings etc, all on the fundamental premise that "vital national security interests" were at stake involving Montgomery's software, which he owned and *exclusively possessed*.

All of these issues and facts involve matters before this Court in this Motion *either* if the Montgomerys do not pay their bills *or if* the California case proceeds. They are an integral part not only to the disposition of this Motion, but also to the resolution of the conflicts between this Motion and the California action as hereinafter forth. Both the California court and this Court will be litigating these issues if the California case proceeds. Counsel will then be faced with a maelstrom of Blixseth supported litigation in California with millions of dollars in potential fees and costs, all to protect her in her divorce action under the guise of attorney client issues involving Montgomery. The issues common to both matters are very generally and generically set forth below as follows:[4]

(1) Issues and facts relating to specific "on-going" conduct of Montgomery, which appears to be subject to Rule 3.3 (a) (3) and (b) of the Nevada Rules of Professional Conduct, relating to Edra Blixseth in her divorce; and counsel's obligation to undertake "remedial measures."

(2) Issues and facts relating to conduct, documents, and electronic media, and representations by Montgomery relating to his claims about the technology, and its use in the war on terror by certain agencies of the government.

(3) Issues and facts relating to compliance with the Grand Jury subpoena.

(4) Issues and facts relating to conduct and representations by Montgomery, Ms. Blixseth and their "partner" Michael Sandoval, and their software company, Opsprings LLC made to the U.S. Government.

(5) Issues and facts relating to whether Montgomery's "source codes" and software were "never on

---

[4] Counsel refers to the issues generically without reference to specific facts in order to avoid prejudice to Montgomery. In the event that the fees and costs become *disputed,* then an extensive documentary record in connection with the referenced issues and facts will become critical to the disposition of this Motion.

*Motion for Fees & Costs*                    6

1  the premises of eTreppid"  This is a core representation relied upon by counsel in these cases.

2  (6) Issues and facts relating to the original executed Opsprings documents  making Montgomery an

3  "employee" of Blixseth's company;  purported oral changes to those documents evolving over time

4  and culminating in  March - April, 2007, when Blixseth "terminated" Sandoval, and made allegedly

5  "new arrangements" with Montgomery.

6  (7) Representations made to the Government by Blixseth, Montgomery and Sandoval  between June,

7  2006 and March, 2007 relating to the technology, and when Blixseth and Sandoval  possessed it,

8  before Montgomery became an "employee" at Opsprings, which is to this day a  rapidly evolving

9  "discovery" issue.

10  (8) Issues and facts relating to the "funding" of the "partnership" between Montgomery and Blixseth

11  in May, 2007 in the context of the Blixseth divorce and certain Orders in that divorce matter.

12  (9) Issues and facts relating to agreements, promises, and conduct between Montgomery, Sandoval

13  and Blixseth *before* April, 2006 and *thereafter* relating to  the technology.

14  (10) Issues and facts relating to the procurement of federal contracts for use of the technology in the

15  war on terror.

16  (11) Multiple issues and facts relating to the credibility of Dennis Montgomery in connection with all

17  three matters before this Court and also before the California court.

18       Again, Counsel would not even be raising these issues except for the filing of Montgomery's

19  California suit against him based on patently fabricated allegations. If the California suit proceeds,

20  or if this Motion is contested, the foregoing issues will be litigated. Ms. Blixseth's lawyers are playing

21  Russian Roulette with Montgomery's rights in order     to protect *her* in her divorce action.

22  Montgomery, in turn, has legal claims against Blixseth to make her pay the unpaid fees. But for the

23  filing of the California action by lawyers with overt conflicts of interest, [5] counsel would not be

24  asserting this position at this time. But he will also be required to assert it in the pending Reply to his

25  Motion to Dismiss that action. Thus, it is ripe for adjudication by this Court.

26  **B.       These cases involve issues requiring sophisticated legal skills and experience  and diligent,**

27  

28  _____
[5]  Counsel has notified of Ms. Pham and Klar of the unwaivable conflicts of interest involved, including but not limited to those cited above.

*Motion for Fees & Costs*                    7

1    **constant and consistent commitment of attorney time**.

2    As the Court knows, these cases involve complex issues involving federal court jurisdiction

3    and venue, copyright and intellectual property law, search and seizure, national security, state secrets

4    law, partnership and business relationships, alleged bribery of the Nevada governor, intense media

5    scrutiny initially organized and orchestrated by Edra Blixseth,  a pending Washington D.C. Grand Jury

6    investigation, and  Montgomery's *claims* throughout the 18 months, relied upon by counsel, that

7    extremely sophisticated software technology allegedly critical to  the war on terror,  was being used

8    to decode al Jazeera satellite communications to al Qaida, and related technology used in other aspects

9    of the war on terror.

10    The unsealing of Montgomery's declaration on August 3, 2007 (and the earlier unsealing of

11    Michael West's declaration on April 9, 2007, on the subject of the decoding)  by this Court speaks

12    volumes about the government's position regarding the legitimacy and efficacy of Montgomery's

13    technology.  It also puts into perspective for counsel innumerable facts and evidence relating to

14    Montgomery's and Warren Trepp's and *their* company, eTreppid's  procurement of federal "top

15    secret" military contracts based allegedly on bribes paid to then Congressman James Gibbons,

16    including the infamous "cruise" attended by all three.

17    Montgomery claimed, as recited in innumerable court filings that the "source codes" involving

18    said software were known only to him, owned by him, and were "never on the premises of eTreppid."

19    Mr. Flynn, specifically, and counsel for Montgomery generally, relied upon and believed these core

20    representations, as well as hundreds more. In light of all the "national security" concerns cloaking

21    almost all aspects of these cases involving Montgomery's software and his work for the government,

22    including  *demonstrations*, all of the representations  appeared reliable and accurate at the time they

23    were made. Counsel devoted huge amounts of legal time and efforts to these issues as reflected in his

24    invoices. There are specific facts critical to a quantum meruit analysis of the time and efforts devoted

25    to these issues which counsel will omit from this Motion. In the event that the fees are disputed,

26    counsel will file a supplemental pleading relating to these facts.

27    It appears that the government did pay tens of million of dollars to Montgomery's and Trepp's

28    company; and that the relationship between Trepp, Gibbons and Montgomery, all of whom were on

*Motion for Fees & Costs*                    8

1  the "cruise," is at issue.

2      Counsel herein who represented the comprehensive interests of the Montgomery parties on

3  these complex issues, often under intense pressure and scrutiny from every side,   did so with

4  diligence, professionalism, success, honesty and integrity,  which multiple judges of this Court have

5  wrestled with for over a year and a half and continue to adjudicate.

6  **C.      The Montgomery's California action requires this Court to resolve the**

7       **underlying issues.**

8       Again, but for the filing of Montgomery's California action, counsel herein would not be

9  compelled to put the foregoing issues before this Court.  But Montgomery's attempt to put the same

10  issues, ie, file transfer and a  a "gag" order before two different courts (potentially three courts if

11  counsel was compelled to file a separate  suit for their fees and costs against Edra Blixseth and

12  Opspring) is not only based on  false allegations, as discussed herein, it requires resolution of the

13  underlying issues. Moreover, it will be a colossal waste of judicial time and resources.

14      The complaint in California seeking injunctive relief appears short and simple. It is not. It is a

15  litigation wolf in the Liner Firm's clothing. The complex issues presently confronting this Court, some

16  of which were heard on August 17th, directly impact numerous facts and issues underlying and

17  concealed within the sham pleading brought  by Montgomery and his lawyers in California.  For

18  example, even putting aside  state secrets issues and facts relating to the redaction and transfer of

19  counsel's files, and even putting aside  the issue of counsel's Nevada "retaining lien", all now  under

20  submission with this Court, even if Montgomery paid the fees or posted a bond, and all of the

21  redactions were made in compliance with the government's demands and certification to the Court,

22  any potentially inconsistent ruling relating to the file transfer by the California court, however

23  minimalist, may have a significant impact on evidence from counsel's files, particularly his email files

24  if counsel only has a redacted copy and Montgomery has a full copy.  Montgomery's counsel could

25  then claim that they could not defend this Motion without using redacted material. The California court

26  would be ill equipped to deal with this problem.

27      As the Court knows, issues already abound in connection with allegations that Montgomery

28  has "fabricated" certain emails relating to the bribery of Gibbons by Trepp and the subject of a

*Motion for Fees & Costs*                                9

1   Washington Grand Jury investigation. As those issues evolved in April - May, 2007, in connection

2   with the Grand Jury subpoena, counsel demanded that Montgomery retain Washington counsel.

3   Certain defenses were then raised in Washington inconsistent with counsel's understanding of the

4   facts, which also precipitated withdrawal. The potential for rulings in three different courts,

5   Washington, Nevada and California, in connection with said defenses obliquely referenced above, and

6   going to the heart of several very significant issues before this Court may result in a quagmire of

7   judicial confusion. The California action is superfluous, but the potential for judicial waste,

8   inconsistency and/or error still obtains. Additional problems arise with respect to the requested "gag"

9   order.

10      In order to issue a "gag" order under the Nevada Rules of Professional Conduct or the

11   California Rules - a ridiculous notion given Mr. Flynn's Nevada pro hac vice admission - the *facts*

12   underlying the basis for any "gag" order all relate to the foregoing issues cited above and counsel's

13   rights and duties to prosecute this Motion in this Court under Nevada law. For example, if

14   Montgomery raises issues in the California court relating to *any of* the foregoing issues and facts

15   involved in these cases before this Court, then this Court clearly has both jurisdiction and venue over

16   the parties and the matters at issue. If Montgomery posts a bond and disputes the fees here on some

17   grounds unrelated to the basis for his seeking a "gag" order in California ( a legal and factual

18   impossibility), he will have to make a factual showing in California that counsel has breached his

19   fiduciary duties to Montgomery in connection with counsel's Nevada pro hac vice admission in the

20   Nevada cases, because there is *no pro hac vice admission in California, there is no underlying*

21   *California case, counsel is not a "California lawyer", and the fabricated "holding himself out" theory*

22   *could not be causally related to any conduct except matters involved in the Nevada cases.*

23      Finally and conclusively, many of the issues and facts cited above constitute *defenses* under

24   the Nevada Rules of Professional Conduct, to any conceivable basis for a "gag" order; and they

25   constitute defenses and /or involve relevant evidence to any conceivable theory for defeating counsel's

26   fees in this Motion. Indeed, if this Court GRANTED this Motion, any conceivable basis to issue any

27   relief in California would be subject to the res judicata and/or collateral estoppel effect of this Court's

28   ruling; and possibly subject to the doctrine of judicial estoppel depending on Montgomery's basis for

*Motion for Fees & Costs*                    10

challenging the fees. In other words, any failure to raise facts or evidence in this Court and/or any failure to raise facts or evidence in the California action will estop Montgomery from doing so in the other matter. The effect of the relief Montgomery seeks in one matter directly impacts the relief sought in the other.

Even assuming some manufactured or fabricated basis to claim jurisdiction or venue in California, as Montgomery has already done with his "holding himself out" theory, which involves any alleged breach of a fiduciary duty, it has not been pled in the California complaint which only seeks injunctive relief for the file transfer and a "gag" order in connection with "Nevada disputes." Thus, there is no other basis before either court to supplant Nevada's patently clear jurisdiction and venue. Any new claims by Montgomery will have to be as equally fabricated as his "holding himself out" theory.

Thus, particularly given the serious credibility issues surrounding the Montgomery parties in the California complaint, also at issue in these cases, if the Montgomery's California action is transferred to this Court as appears likely, these issues must be resolved if Montgomery contests this Motion. If he doesn't, then the matter is res judicata.  Moreover, two courts dealing with the same issues will result in a colossal waste of judicial time and resources; and the potential for inconsistent results. The California Court cannot presently resolve the file transfer issue until it resolves the Nevada lien issue which is squarely before this Court in this Motion. The California court cannot resolve the "gag" order issue without creating potentially inconsistent results in this Motion.

Among the numerous, intentionally false allegations in the complaint made to manufacture venue in California are  the following: **"Flynn led the plaintiffs to believe at that time [**when representation commenced in January, 2006**] that he was licensed to practice law in the state of California...." And that:  "Throughout the course of his representation, Flynn held himself out to the Plaintiffs as a California lawyer."** (See complaint, ¶ 7-8, attached hereto as Exhibit 1.  These fabricated allegations were allegedly made to the Montgomerys *in connection with Mr. Flynn's representation* of Montgomery in the Nevada cases based on his pro hac vice admission *before this Court*. Thus, this Court has a compelling interest in resolving these allegations not only to preserve the interests of justice in Nevada, but to regulate the conduct of the lawyers who appear before Nevada

courts, as counsel did here. Additionally, if counsel committed this alleged fraud in these cases, then their entitlement to fees and costs is at issue here. Of course, the record will establish that said allegations are obviously fabricated by Dennis Montgomery and his lawyers, the Liner firm. The allegations are contrary to the established, incontrovertible, documentary record in the cases before this Court. Counsel will provide conclusive documentary proof on this issue to the Court at the appropriate time.

However, the falsity of these allegations raises not only very serious credibility issues about the Montgomery parties, they also raise significant ethical issues about Mr. Flynn's rights and responsibilities in this Motion relating to his challenges to Montgomery's credibility, which should be heard by this Court. Counsel is governed by the explicit language applying Nevada law in his pro hac vice admission. Counsel has herein exercised great restraint in this Motion. If counsel set forth a complete record involving the 18 months of litigation to date, on any of the underlying issues cited above, given the disclosures and revelations in the last several months, Montgomery's most recent "holding himself out" lie would provide perspective to the Court as to how we find ourselves in the situation we are in. Of course, all of this perspective is dependent upon this Courts', Judges Pro and Cooke, maintaining control over these cases. Different Judges in any future proceedings, civil or criminal, may alter a just and efficient result.

The reckless filing of said action premised on false allegations to obtain jurisdiction and venue in California now requires Mr. Flynn *in this Motion* to challenge the credibility of Dennis Montgomery, and to place at issue in this Court the reasons for his withdrawal as generically referenced in the foregoing issues. Otherwise, counsel's Motion here could be adversely impacted by the California action which has just commenced. Mr. Flynn will exercise restraint in this Motion, but there may be *volumes* of potential evidence relative to this issue. If Montgomery plans more fabrications to claim California jurisdiction, he will meet with greater problems than he already faces. Counsel is still conforming to the requirements of the attorney client privilege notwithstanding the Montgomery lies in the California complaint signed by Ms. Pham. This Court is the proper forum in the context of this Motion for Fees and Costs to resolve *all* of these and related issues.

Counsel filed an Amended "Notice" of lien in this Court on August 20, 2007 in connection

1   with this Motion.

2                                **III.**

3                             **ARGUMENT**

4   **A.    Only this Court possesses venue and jurisdiction over the matters and parties involved**

5   **in This Motion.**

6           This Court possesses ancillary and/or supplemental jurisdiction over this Motion. "courts have

7   long recognized that fee disputes arising from litigation pending before a district court fall within that

8   court's ancillary jurisdiction. *Curry v Del Priore*, 941 F,2d 730, 731 (9th Cir., 1991). "Federal courts

9   may exercise supplemental jurisdiction 'to hear fee disputes between litigants and their attorneys when

10  the dispute relates to the main action.'"*Alderman v Pan AmWorld Airways*, 169 F. 3d 1999, 102, (2nd

11  Cir. 1999), citing *Cluett, Peabody &Co. v CPC Acquisition Co.,* 863 F2d 251, 256 (2nd Cir., 1988).

12          Counsel have a "retaining lien" over the "papers and property" of Montgomery. Nevada Rules

13  of Professional Conduct 1.16 (d) relying on Nevada case precedent; *Morse v State of Nevada*, 65 Nev.

14  275; 195 P.2d 199 (1948). This is a common law, non-statutory lien. *Id.* This Motion is made pursuant

15  to the supplemental jurisdiction of the Court recited above, and pursuant to Nevada's common law

16  recognition of a "retaining lien." *Id.*   This Court has possessed exclusive jurisdiction and venue over

17  these matters, the Montgomery parties, and their attorneys, for over *eighteen months.*

18          Nevada law also provides that a court having jurisdiction over an action also has jurisdiction

19  to make orders and enter personal judgment on behalf of an attorney against his client in the underlying

20  action. Nev. Rev.Stat. Ann. § 18.015, and accompanying Notes; *Gordon v Stewart et al*, 74 Nev 115,

21  118, 324 P. 2d 234, 236 (1958). This case is distinguishable from the recent case of *Ecomares Inc. v

22  Schaefer, 2007 LEXIS 50491 (U.S. Dist. NV) (Judges Sandoval and Cooke)*. In that case, the moving

23  law firm sought to convert a "lien" under *N.R.S. 18.015 (1)* into a "judgment" by virtue of a motion.

24  The Court distinguished the *Gordon* case because it was a quantum meruit case and because in

25  *Ecomares*, the client "disputed" the fee. Here, counsel are proceeding on quantum meruit, the fees has

26  not yet been disputed, and counsel is not attempting to convert a lien into a judgment. Counsel simply

27  want a finding and order that the fees are due and payable. If Montgomery contests or "disputes" the

28  fees, then the underlying issues cited in this Memorandum can be resolved *by this Court in the context*

*of this Motion.* Then counsel can proceed to convert the findings and order into a judgment or sue separately if he prevails.  If Montgomery does not dispute the fees, then the *Ecomares* case does not apply.

Counsel has also filed on August 20, 2007 an "Amended Notice" of lien under said statute.

Substantial jurisdictional and venue impediments exist in the California action which will likely result in the transfer of that action to this Court. The Montgomery parties have no nexus to the Central District of California, either by domicile or residence in California. [6]  Mr. Flynn has no domicile in California, or residence in the Central District, and there are extremely limited, if any,  facts relating to these matters involving the Central District.

Allowing the California courts to adjudicate these issues will cause judicial waste,  fuel injustice, slow down these proceedings, and likely create the potential for inconsistent results, as long as the same judges in Nevada continue to hear these matters. This Motion incorporates all of the issues and relief wrongfully sought in California, it recognizes the application of Nevada law to counsel's *pro hac vice admission* under all of the Nevada Rules of Professional Conduct, it protects the Montgomery parties *and former counsel* against inconsistent results and unnecessary fees and costs, and it enables this Court to deal with the complex facts and issues presently confronting this Court involving the state secrets privilege, pending protective orders, the transfer and integrity of counsel's files, and counsel's Nevada "retaining lien."

Most significantly, this Motion gives this Court a vehicle and a process by which to deal with all of the foregoing issues, *while the case proceeds.*

Counsel's  documents at issue in the file transfer process to new counsel can be rapidly dealt with by this Court in this Motion. If the fees and costs are paid as a result of this Motion, or at least adjudicated,  then much of this Court's and counsel's burden in connection with collateral issues involving the attorney client privilege, the "retaining lien", the Nevada Rules of Professional Conduct, and the state secrets privilege can be summarily disposed of in the resolution of this Motion.

---

[6] In the California case Montgomery and his lawyers falsely represented to the Court in the complaint that the Montgomery Family Trust is a citizen of California.  In the related *Friendly Capital Partners v. Montgomery* case just weeks ago in Nevada they said the Trust was a citizen of Washington.

**B.**     **Issues relating to the state secrets privilege require this Court to maintain exclusive jurisdiction and venue.**

As this Court knows, and took under submission on August 17, 2007, The United States Department of Defense,  through Department of Justice attorneys, ("DoJ"), have filed a four part request in connection with the precise issues raised in the Montgomery parties' sham California complaint relating to the disposition of Mr. Flynn's files and what he says and to whom. The DoJ does not want Mr. Flynn (or anyone else) revealing the identity of certain government personnel to anyone, including the public at large, nor certain work performed by Montgomery on behalf of the Government and its intelligence agencies.  Counsel herein have stipulated to all four conditions requested by the government. These issues permeate Mr. Flynn's files, particularly his emails with Montgomery, which are voluminous, and all of which involve  the underlying Nevada cases. Thus, before this Court and the California Court, are the identical issues relating to Mr. Flynn's files, who gets them, (including parts of them that the government wants redacted), whether Mr. Flynn keeps the "papers and property" of Montgomery under Nevada law, the attorney client privilege, national security, software technology Montgomery contends he developed and used effectively in the war on terror; and the assertion of the state secrets privilege now narrowly constrained to the *identity* of certain personnel in a certain agency and work performed for them.

Going forward in two separate jurisdictions while attempting to maintain the integrity of the privilege, particularly given the complex redaction issues performed by this Court, and the possession of unredacted documents by so many different individuals, exponentially enhances the potential for inconsistent results - particularly where Montgomery, Gibbons and Trepp are likely to assert defenses relating to redacted documents in any related civil or criminal proceedings.

**C.**     **The unsealed Montgomery declaration with redactions raises issues and facts that can only be resolved by this Court in connection with this Motion.**

Significantly, plaintiffs and their lawyers  brought the action in the Los Angeles Superior Court, *within hours* after this Court  issued a facially innocuous notice unsealing *the* declaration of Montgomery. But that declaration still contains multiple redactions. This may have consequences in connection with statements made by Montgomery in his declaration involving multiple issues presently

*Motion for Fees & Costs*                                    15

1  confronting this Court, some of which were heard on August 17th, and which are directly related to

2  the injunctive relief sought in his frivolous California complaint. These include the attempted use of

3  the redactions and related state secrets issues as defenses by Montgomery in various matters, *including*

4  *a potential impact on counsel's right to defend himself in the California proceeding*.  In order to avoid

5  any possibility of such manipulation of the justice system, as well as prejudice to Montgomery, this

6  Court should hear all of these matters - perhaps an unwanted burden, but necessary to the

7  administration of justice. Counsel will *not* recount the *underlying* reasons, issues or facts why the

8  redactions in the declaration may seriously impact these cases, and/or potentially foster manipulated

9  defenses, and/or the specific facts  why Ms. Pham and Klar  are attempting to divert these issues to

10  California on behalf of Ms. Blixseth. But the potential for delay, obfuscation and inconsistency is

11  enormous. Ms. Pham and Ms. Klar represent and are being paid by Edra Blixseth.

12      The unsealed, redacted declaration of Montgomery raises  issues and facts which substantially

13  impact issues and facts on the work performed by counsel, decisions made by counsel *throughout the*

14  *18 months* of representation, particularly in the first few months in connection with the search matter,

15  and related issues, particularly with regard to whether *his source codes were "never on the premises*

16  *of eTreppid,"* and whether a certain agency of the government interacted with Montgomery as he

17  represented in his declaration. Given Montgomery's "demonstrations" to counsel in late January, early

18  February, 2006, *before the FBI raid,* and performed  from his lap top, which was subsequently seized

19  by the FBI, and then subsequent demonstrations without the lap top, critical issues abound. Both the

20  redacted material in the declaration and the unredacted material involves substantial work performed

21  by counsel resulting in substantial fees and costs. This work is intertwined with these issues as

22  reflected on counsel's invoices. If there is any challenge to any of those fees and costs, as a practical

23  matter, only this Court is in a position to weave through the evidence, isolate protected material, and

24  resolve the issues without compromising a just result. Otherwise, *someone*  may be able to hide behind

25  the redactions. Moreover, if Ms. Pham and Klar are truly representing Montgomery and not protecting

26  Edra Blixseth, they would NEVER have brought the California action and set up Montgomery with

27  demonstrably false allegations.

28      As of  Friday, August 3rd, as seen in the  unsealed declaration of Montgomery, the efficacy of

*Motion for Fees & Costs*                              16

the technology is apparently now not a state secret, nor any type of secret.  It is, however, relevant to the two civil cases now pending in this Court, it is directly relevant to Mr. Flynn's emails, discussions and dealings with Montgomery, it is relevant to the materials redacted therein and the state secrets privilege, it is relevant to the attorney client privilege,  it is relevant to counsel's unpaid fees and costs and the *accompanying huge amount of time* expended in both civil cases and the search case based on counsel's belief that *dire national security issues were at stake*; and that wide spread corruption was afoot, which seemed eminently plausible given Montgomery's *possession of documents and emails and electronic media* given by him to the media.

**D.    Factual, legal, investigatory, and ethical Issues before this Court**.

Also inextricably involved in the foregoing issues are Mr. Flynn's *potentially conflicting* duties under the Nevada Rules of Professional Conduct relating to the attorney client privilege and his duty to take "remedial measures" under Rule 3.3 (a) (3) (b); his withdrawal (formally opposed by Montgomery for a month while Montgomery delayed bringing in new counsel, and informally opposed for longer than that); and Mr. Flynn's obligations to provide advice and information to Montgomery, his "partners," including Edra Blixseth, and to local Nevada counsel, from approximately May, 2007 to August 1, 2007. These issues involve fees and costs sought here and the "gag" order presently sought in California. The withdrawal issues involve multiple, complex, *ongoing* issues (some of them public) involving the "partners," including Ms. Blixseth, who initiated and prompted Montgomery's very public media blitz.  These issues also all involve Mr. Flynn's unpaid fees and costs.

Mr. Flynn's fees and costs also relate to the Grand Jury proceedings in Washington D.C. before new counsel took over in late May, 2007 at Mr. Flynn's insistence. Substantial time and costs were devoted to said matter and in connection with Mr. Flynn's cooperation with the Washington FBI.

**E.    This Court is the proper venue.**

Venue rules balance the convenience of the parties with other policy factors in selecting an appropriate forum for trial. *Denver & Rio Grande Railroad v. Brotherhood of Railroad Trainmen* (1967) 387 U.S. 556, 560.  Federal venue is governed entirely by statute, *Leroy v. Great Western United Corp.* (1979) 443 U.S. 173, 181, and the venue rules are set forth in 28 U.S.C. § 1391 and 28 U.S.C. §1404, 1406.

*Motion for Fees & Costs*                                    17

1     Venue is only proper in the following judicial districts: a district where all defendants reside,

2 28 U.S.C. §1391(a)(1); OR a district in which a "substantial part of the events or omissions" on which

3 the claim is based occurred, or where is located a "substantial part of the property that is the subject

4 of the action," 28 U.S.C. §1391(a)(2); OR if there is no district in which the action may otherwise be

5 brought, "a district in which the action by otherwise be found, a "district in which any defendant is

6 subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. §1391(a)(3)[so-called

7 residual venue.]. Mr. Flynn has a residence in San Diego County, California, and is domiciled in

8 Massachusetts. He does not have a residence in the District for the Central District of California.

9     Based upon the above law, and the existing complaint, venue is proper in U.S. District Court,

10 Nevada, Reno or even Las Vegas (where Judge Pro is based), not Los Angeles. A "substantial part

11 of the events or omissions" giving rise to Montgomery's allegations occurred in Nevada. 28 U.S.C.

12 §1391(a)(2) and (b)(2). Plaintiffs even admit that the underlying cases in this dispute with their

13 former attorney involve "Nevada actions;" and they have put before the Nevada Court the same relief

14 they seek in their complaint filed in Los Angeles Superior court, so they are not entitled to forum shop

15 and seek duplicate rulings on the same issues.

16     Also, the Montgomerys, presently citizens of Washington have consented to the jurisdiction of

17 U.S. District Court of Nevada, in the related Nevada actions. Therefore, they should be precluded

18 from running to Los Angeles State Court in a disingenuous effort to obtain a different ruling.

19 **F.**    **The fees and costs are recoverable under at least five legal theories**.

20     **1. Express promises to pay the hourly fees charged.** The attached declaration of counsel

21 recites the numerous written promises to pay the hourly fees and costs rendered in counsel's invoices.

22 These promises were made over a period of 16 months in numerous emails from Montgomery, Edra

23 Blixseth and other Opsprings executives including the president, Michael Sandoval. Counsel were

24 told by all parties to perform whatever work was necessary to fully protect their rights. Counsel

25 performed the work pursuant to the written promises and Montgomery has never challenged his written

26 promises to pay. In fact, he has repeatedly endorsed them over a period of 18 months up through June

27 11, 2007. The written promises constitute an agreement to pay for the invoiced services.

28     **2.**   **Implied promises to pay the hourly fees charged.** Where there is an "ongoing

*Motion for Fees & Costs*         18

relationship" in which fees are charged for services and paid without objection, then not paid, also without objection, the law implies a promise to pay the reasonable value of the work. *Checker, Inc. v Zeman*, 86 Nev. 216; 467 P.2d 100 (1970). Here, counsel had an ongoing relationship with Montgomery, who received and approved of the services without objection. The law implies a promise to pay the reasonable value of the services.

**3. Quantum Meruit on a common count**. It is established under Nevada law that an attorney can recover his fees and costs under the legal principle of quantum meruit. *Berrum v Georgetta,* 60 Nev. 1; 93 P.2d 525 (1839). The Ninth Circuit has approved quantum meruit recovery by attorneys under very diverse circumstances involving unsigned agreements, signed agreements, and no agreements whatsoever, all in one case. *Fitzsimmons v St. Paul Title Ins. Co.,* 51 B.R. 600; 1985 Bankr. LEXIS 6464. Unjust enrichment or resulting benefit based on the reasonable value of the services performed are established elements in a claim for quantum meruit. *Id.* An implied contract is also recognized as a basis the basis for a quantum meruit claim: where  services are performed at the request of another and there is no express promise of payment, the law implies a promise to pay the reasonable value of the services. *Whiteman* v *Brandis*, 78 Nev. 320, 321; 372 P.2d 468, 469 (1962).

Here the facts set forth in the attached declaration of counsel mandate a quantum meruit finding *in some amount* based on the reasonable value of the services  as a matter of law.

**4. Counsel have a claim on an "account stated."** Where attorneys render services over a period of time and the clients are informed of their bills, the client is liable under a theory of an "account stated." *Old West Enterprises, Inc. v Reno escrow Co.,* 86 Nev. 727; 476 P.2d 1 (1970); *Nilsson v Louisiana Hydrolec*, 854 F.2d 1538 (9th Cir., 1988). Here, as set forth in the attached declaration, counsel rendered services over a period of 18 months, received partial payments, the clients never objected to the bills, so the amounts billed are due and payable.

**5. Counsel have a claim for Fraud.** Counsel will not recite the facts supporting this claim at this time.

**CONCLUSION**

For all of the above reasons, this Motion should be granted and counsel should be paid the sum of $608,959.59, the total on the last bill as of July 10, 2007, plus additional fees, costs and interest,

since said invoice, all totaling approximately $650,000.00. A final amount will be invoiced to the Montgomery attorneys. If the Montgomery parties dispute it, the final invoice will be submitted to the Court together with all other invoices. Counsel is not submitting them at this time to avoid prejudice to the Montgomerys as recited an the attached declaration of counsel.

Dated: Aug. 21, 2007                              Respectfully submitted,

/S/_____
                              Michael Flynn, Esq.