1   **Michael J. Flynn, Mass. State Bar No.172780**
    mjfbb@msn.com
2   P.O. Box 690, 6125 El Tordo
    Rancho Santa Fe, CA 92067; and
3   One Center Plaza, Suite 240
    Boston, MA. 02108
4   Tel:    (858) 775-7624;Fax:  (858) 759-0711
    *Admitted Pro Hac Vice*
5   FORMER Attorney for MONTGOMERY, THE MONTGOMERY
    FAMILY TRUST, AND THE TRUSTEES OF THE MONTGOMERY FAMILY TRUST.
6

7

8                           **UNITED STATES DISTRICT COURT**

9                                **DISTRICT OF NEVADA**

10

11  DENNIS MONTGOMERY, and the          )        3:06-CV-00056-PMP-VPC
    MONTGOMERY FAMILY TRUST,            )        **BASE FILE**
12                                      )
           Plaintiffs,                  )        3:06-CV-00145-PMP-VPC
13                                      )
    v.                                  )
14                                      )
    ETREPPID TECHNOLOGIES, LLC,         )
15  WARREN TREPP, and the UNITED        )        **REPLY IN SUPPORT OF MOTION FOR**
    STATES DEPARTMENT OF DEFENSE,       )        **ATTORNEYS FEES IN RESPONSE TO**
16                                      )        **THE MONTGOMERY OPPOSITION.**
           Defendants.                  )
17  _____ )
                                        )
18  AND ALL RELATED MATTERS.            )
    _____ )
19

20

21

22

23

24

25

26

27

28

**1.     Montgomery's Opposition is Legally Insufficient, and the Motion for Fees Should be Granted as a Matter of Law.**

The Montgomery Opposition is devoid of facts, demonstrably false, and presented in bad faith. As set forth in the attached sealed declaration of Mr. Flynn, there is no "dispute" over fees, only refusal to pay because of Montgomery's misconduct. This Court should grant the motion for fees without further proceedings. Montgomery has presented no evidence whatsoever to justify any discovery, an evidentiary hearing, or any further briefing in support of any legally cognizable "dispute" over the unpaid fees. The Opposition does not present a *single fact*, or make a single "*specific objection*", as required by law, and the Local Rules, to "dispute" the fees owed. It doesn't even cite a single *example* of an improper fee, any improper billing,  work not done, work improperly performed, over billing, excessive rates, any expert analysis/opinion of the invoices submitted, or even a single *fact*  relating to *any* alleged "*dispute."*  The entire Opposition contains one single conclusory sentence in the Montgomery Declaration  that he disputes the amount of the fees and the" handling" of his cases.

There is no "dispute" before the Court. See *eg: Earthquake Sound Corp. v. Bumper,* 352 F.3d 1210, 1219 (9th Cir., 2003) [affirming fees the court found that the failure to timely challenge the fees constituted a waiver]; *S Indus., Inc. v. Centra 2000, Inc.* 249 F.3d 625, 628 (7th Cir. 2001) [timely "specific objections" were required to contest attorney's fees]; *Shalomi v. Western Techs.,Inc.* 2007 U.S. Dist. NVLEXIS 30232, pg 10-19 [plaintiff did not provide sufficient evidence to oppose defendant Western's motion for summary judgment so the court granted the motion].

The Opposition simply ignores Local Rules of Practice for the District of Nevada, LR 54-16 (e) (May, 2006) which states: "Opposition. If no opposition is filed, the Court may grant the motion. If an opposition is filed, it shall set forth the *specific charges* that are disputed and state with *reasonable particularity* the basis for such opposition. The opposition shall further include *affidavits to support any contested fact*."   (Italics supplied). Montgomery

1

1   provides no sworn affidavits disputing any "specific charges," let alone with "reasonable
2   particularity."  Without any legitimate refuting evidence, the Motion for fees should be
3   granted as a matter of law.

4   **2.      The Opposition ignores the well established jurisdiction of this Court to**
5           **adjudicate the fees; and it misrepresents the irrelevant California proceedings**.

6        The Opposition completely ignores indisputable federal law giving this Court ancillary
7   and/or supplemental  jurisdiction over  an award of attorneys fees in this matter. *Curry v Del*
8   *Priore,* 941 F.2d, 730, 731, (9th Cir., 1991) and cases cited therein.  It completely ignores this
9   Court's compelling reasons to apply ancillary *and equitable jurisdiction* as set forth in *Curry*
10  and the cases it relies upon, but makes a factually unfounded and poorly reasoned analysis
11  based upon *Ecomares v Ovcharik, 2007 U.S. Dist LEXIS 50491,* compelling a response in
12  the sealed declaration of Mr. Flynn. See argument *infra* p. 10.

13       Montgomery's lawyers, Ms. Klar and Pham,  brought the frivolous Los Angeles law
14  suit, devoid of venue,  (none of the parties live or work in Los Angeles) as a forum-shopping
15  pretext to circumvent the obvious jurisdiction and venue in this Court.   But they also
16  misrepresent the status of those proceedings. They claim that the LA case deals "with the
17  attorney-client relationship between Mr. Flynn and the Montgomery parties";  and that
18  transfer to this Court has been rejected by the Central District of California. (Opp. P. 2, L 14-
19  15, 19-20), asserting, therefore,  that it is the proper forum to resolve "the fee dispute."
20  *However, they neglect to inform this Court that there is no "fee dispute"  in Los Angeles*. In
21  their Los Angeles complaint there is no claim  to resolve any "fee dispute."  They only seek
22  injunctive relief in that case to enjoin alleged disclosures and to obtain "client files" in order
23  to avoid  Nevada law granting a  "retaining lien" to counsel for unpaid fees, which is currently
24  being litigated in this Court. [1]  (See Montgomery Complaint,  Exhibit 1 to Opposition).

25       Ms. Klar and Pham  then recite that the Central District remanded the case to the LA

26

27       [1] Judge Pro has already ruled that Mr. Flynn and Ms. DiMare do not have to "surrender their files to
    new counsel of record," and cited *Figliuzzi v Fed. Dist Court,* 111 Nev. 338, 890 P.2d 798 (1995). See
28  Exhibit 6 attached hereto, Sept. 4, 2007, docket # 256, 3:06-cv-00056..

Superior Court, and "rejected" transfer of the case to this Court, implying that the Central District deemed the LA Superior Court to have proper jurisdiction and venue over the "fee dispute." But the truth is precisely the opposite. The Central District remanded the case to Superior Court, and transfer was denied as "moot," because *only injunctive relief* was sought in the LA Complaint and there was an inadequate showing by "defendant" that the $75,000.00 jurisdictional threshold for damages in a diversity removal was met. (See Order of Remand, Exhibit 3 to Montgomery Opposition). In other words, the Central District, in effect, remanded *because there is no "fee dispute" at issue in that case.* The "fee dispute" has never been plead by Montgomery and Mr. Flynn has not even been formally served.

**3.    Montgomery's Lawyers are Acting in Bad Faith with this Court.**

Ms. Klar and Ms. Pham are acting in bad faith attempting to undermine and violate this Court's September 4, 2007 Order, docket #256, attached as Exhibit 6, and this alone is sufficient grounds for this Court to retain equitable jurisdiction over this fee dispute. In their latest procedural maneuver to avoid this Court's jurisdiction over Mr. Flynn's files and the state secrets conditions imposed on said files, Ms. Klar and Pham are improperly using the LA Superior Court to obtain a "writ of possession" to obtain the files. On September 13, 2007, giving Mr. Flynn 24 hours notice, (when he was in Northern California) Ms. Pham filed an 83 page ex parte application before a "commissioner" in the LA for a "writ of possession" to get Mr. Flynn's files. Mr. Flynn, notified the clerk by phone and messenger that there was an existing Court order in Nevada stating that he did not have to surrender the files, and subjecting the files to certain conditions under the state secrets privilege imposed by the Nevada Court. Mr. Flynn also informed the clerk on the phone that he had a lien under Nevada law. The Commissioner mysteriously refused to look at the papers, or allow Mr. Flynn to appear by phone, and then took Ms. Pham into chambers. According to the clerk, Ms. Pham then "withdrew" the ex parte application. She has now refiled it for hearing on October 18, 2007 in another attempt to violate this Court's order. Flynn Declaration, ¶ 52. This bad faith maneuvering alone confers equitable jurisdiction on this Court because Mr.

3

Flynn does not have to surrender his files without his fees being paid. *Figliuzzi v Fed. Dist. Court,* 111 Nev.338, 890 P2d 798 (1995*),* cited in Judge Pro's Septmber 4, 2007 Order.

The Montgomery lawyers have also recently filed an application for arbitration in *San Diego* - apparently recognizing that there is no venue in Los Angeles. That desperate effort will also fail because Mr. Flynn is not a California lawyer, has never held himself out as such, all the billing was *exclusively related* to the Nevada cases, Nevada law explicitly applies under the *pro hac vice* applications of Mr. Flynn and Ms. DiMare, Mr. Stillman has submitted no billing on these cases since July, 2006, all of the *unpaid* fees relate solely to 2007 billings submitted solely by Mr. Flynn as a sole practitioner, and Ms. DiMare as a sole practitioner, the Flynn - Stillman partnership has been dissolved, Mr. Rava is a sole practitioner - neither a partner or associate of Mr. Flynn, Ms. DiMare or the firm, and Montgomery never once "disputed" any of the fees.   Flynn Dec., ¶ 51.

**4.     Montgomery is lying in his sworn statement that Mr. Flynn led him to believe that Mr. Flynn was "authorized to practice law in California." (Montgomery declaration p. 7, L. 10-11.)**

Lying is part of Montgomery's "misconduct"in the underlying cases thereby conferring jurisdiction in this matter, and he repeats his pattern here as demonstrated by the following irrefutable and conclusive evidence:

● **First Meeting with Montgomery.**  Mr. Flynn met Montgomery for the first time on January, 23, 2006 at the Reno office of Logar and Pulver, after eTreppid had brought suit against Montgomery. Mr. Logar had previously sponsored Mr. Flynn's Massachusetts *pro hac vice* admission in a previous case..

At the time of their first meeting, Mr. Flynn explained to Montgomery that he was a Massachusetts lawyer "from Boston" with an office in  Boston, that he had a "California partner," Mr. Stillman who would be involved,  that he was not a Nevada lawyer, and that Mr. Logar would have to sponsor him again *pro hac vice* as a Massachusetts' lawyer, as he did in the prior case.  As is his custom and practice,  Mr. Flynn explained that although Mr.

4

Stillman had an office in California, and Mr. Flynn had a residence in California, he was only licensed in Massachusetts. Montgomery *never once* questioned, raised any concerns, or voiced any issues whatsoever about counsel's Massachusetts' bar license, either at the time of the first meeting or throughout the entire period of representation. Montgomery stated that in the first meeting that he wanted Mr. Flynn to represent him.

In this first meeting, Montgomery demonstrated to Mr. Flynn specific aspects of his technology from his lap top computer which appeared to support his story regarding the use of the technology in the war on terror and for other federal contracts. He claimed that he alone had the "programs and codes", for the technology, and that he had never taken "any technology" from eTreppid. Prior to Mr. Flynn's involvement, the Logar and Pulver firm had asserted this position in a hearing on a temporary restraining order. See generally attached declaration of Michael J. Flynn; and his *pro hac vice* application, attached as Exhibit 1.

● **The " Massachusett's" Pro Hac Vice discussion in Montgomery's presence.** On the afternoon of Feb. 6, 2006, Mr. Flynn met with Montgomery, Mr. Stillman, Mr. Logar and Mr. Pulver in Reno to prepare for the preliminary injunction hearing scheduled for the following day. At that time there was discussion in Montgomery's presence in the Logar and Pulver conference room about the pending *pro hac vice* applications in connection with Mr. Flynn's and Mr. Stillman's appearances the following day. In Montgomery's presence, while he was being prepared to testify, Mr. Logar and/or Mr. Pulver mentioned that the Nevada State Bar had received Mr. Flynn's "certificate of good standing" *from Massachusetts,* and that it was overnighting it's approval for Mr. Flynn to be delivered the following morning; but that Mr. Stillman's certificates from Massachusetts *and* California had not yet been received. Montgomery questioned whether it would be a "problem" if Mr. Flynn's "papers" had not been filed with the Court for the hearing scheduled at 9 AM the next day. All four attorneys collectively stated that it should not pose a problem. Montgomery knew that Mr. Flynn was being admitted as a Massachusetts lawyer in his cases.. See attached declarations of Michael Flynn and Philip Stillman

5

.

● **The preliminary injunction hearing in Montgomery's presence.**   The following day, Feb. 7, 2006, Mr. Flynn represented Montgomery at the ten plus hour preliminary injunction hearing. With Montgomery sitting right next to Mr. Flynn at the counsel table paying rapt attention to every detail,  Mr. Logar commenced the hearing as follows:

> MR. LOGAR: Your Honor, if it please the  Court, I'm Ronald Logar representing the Defendant, along with Mr. Eric Pulver in my office.  I would like to introduce to you a Michael  J. Flynn.
> MR. FLYNN:  Good morning, your Honor.
> MR. LOGAR:  Mr. Flynn is a member of the  Massachusetts Bar.  The application for admission to  pro hac vice has been made. The Massachusetts Bar has sent a Certificate of Good Standing to the State Bar of Nevada.  The State Bar of Nevada has issued its approval.  It was over-nighted yesterday to my office.  It should be received by Federal Express about 10:00 or 10:30 this morning, having complied with the Supreme Court rule as to admission, and we ask that Mr. Flynn be permitted to appear in this matter on behalf of the Defendant.
> MR. LOGAR:  And then I'd like to introduce Mr. Philip Stillman.  Mr. Stillman is a member in good standing of both the Massachusetts and the State Bar of California. He has made application to the State Bar of Nevada for admission and approval pro hac vice.  His Certificate of Good Standing was sent to the State Bar's office in Las Vegas yesterday by the State of California.  It's expected that the State Bar of Massachusetts will send the Certificate of Good Standing to the Las Vegas office today, and then the Las Vegas office will issue its approval and we expect that within the next two days.

● **The proposed fee agreement and discussion in Montgomery's presence.** The day after the preliminary injunction hearing, February 8, 2006, all of the lawyers and Montgomery again met in the conference room of Logar and Pulver. Mr. Stillman presented Montgomery with a proposed fee agreement which had been  under discussion for the previous two weeks among Montgomery and the lawyers, and which had been orally approved by Montgomery, including Mr. Logar's formation of a company called "Ncoder" to own Montgomery's technology. The proposed agreement states in pertinent part  as follows:

"Senior partners (Michael Flynn, *only licensed in MA*,...." (Italics supplied). See attached Ex. 3, P. 2.. Montgomery read and discussed this specific document on February 8, 2006 and thereafter with the lawyers. See attached Flynn and Stillman Declarations.

● **The infamous March 1, 2006 letter to Rumsfeld et al.**  On or about March 1, 2006, the day of the FBI raid, Mr. Flynn prepared a letter based on information received from

Montgomery, which was sent to Donald Rumsfeld and others. That letter, attached hereto as Exhibit 4, explicitly recites on the letterhead "ONLY ADMITTED IN MASSACHUSETTS." Montgomery was sent numerous drafts of said letter by email in draft format, some of which, because they were drafts had not been put on letterhead, which he edited. BUT then, on his request, he was then faxed the final version with the full letterhead on several occasions, including several days later, shortly after a meeting with Michael Sandoval and Edra Blixseth on March 5, 2006, both of whom requested the letter. Montgomery informed Mr. Flynn that he had given Sandoval a copy of the letter and that Sandoval had given it to Ms Blixseth, which later precipitated a series of phone calls and emails involving Blixseth. This letter was routinely referenced by Montgomery throughout the representation.

- **The meeting at "Porcupine Creek"**.   On Sunday, March 5, 2006, approximately *six weeks after first meeting Montgomery*, Mr. Flynn and Attorney, Al Rava met Montgomery, Michael Sandoval, and Edra Blixseth at "Porcupine Creek", the Blixseth "billion dollar residence." At that time in Montgomery's presence, counsel explicitly told Edra Blixseth that he was a Massachusetts lawyer "from Boston" with a "California partner", (as is his custom and practice), and that he had a residence in Boston and Rancho Santa Fe, California. Ms. Blixseth and Mr. Flynn discussed New England and people they mutually knew, including Bill Cohen, former Secretary of Defense, "from Maine".   Mr. Flynn stated that he was not a Nevada lawyer, that all of the legal cases were in Nevada, that Montgomery had retained local Nevada counsel, who had brought in Mr. Flynn because of their prior mutual representation of Mike Love of the Beach Boys in Nevada, and that Mr. Rava was a California lawyer with his own firm. Ms. Blixseth remarked that Nevada was a long way from Massachusetts, she commented on Mr. Flynn's Boston accent, that her husband was a "songwriter", that they had offered through a mutual friend to have Mike Love purchase a home in their Yellowstone project, and that she understood the practice of lawyers appearing in different states, including a comment about her lawyers and then on-going litigation in Montana. Mr. Flynn and Montgomery explained to Ms. Blixseth and Sandoval the nature of

the pending civil proceedings, the FBI raid on Montgomery's home, and the preliminary injunction, which Montgomery kept calling a "TRO." Mr. Flynn explained Montgomery's claims and defenses in the Nevada cases, specifically relating to his claims of ownership of the technology, and that Montgomery had asserted the position that his software was never on the premises of eTreppid.

Montgomery explained the technology and its military applications in the war on terror to Ms. Blixseth. Ms. Blixseth stated that she didn't "have to hear" about the FBI raid or the injunction, that they were of "no concern", that she was a "partner " of Mr. Sandoval in a "software company" who was interested in the technology for "commercial purposes", that she wanted to "bring in" Montgomery, and that Mr. Sandoval had her "full faith and trust" to "get a deal done" between all of them, that Warren Trepp was "of no concern", and that "any partner of mine would always be protected". Flynn Declaration at ?? And Declaration of Al Rava. Neither Ms. Blixseth, Mr. Sandoval, or Montgomery ever questioned or raised any concerns about Mr. Flynn's Massachusetts' license, or any issue whatsoever about his being "authorized to practice law in California." It was irrelevant to the meeting. Mr. Flynn attended the meeting because he was representing Montgomery in Nevada and the injunction was an issue.

● **On-going emails attaching correspondence re "Only Admitted in Massachusetts."** In the ensuing 16 months, Montgomery regularly received emails and faxes attaching correspondence from counsel, *which he routinely reviewed and edited*, which state on the face of the correspondence "ONLY ADMITTED IN MASSACHUSETTS". Examples of such correspondence and emails are attached hereto as Exhibit 5, one of which went back and forth with Montgomery on May 10, 2006 *four times.*

● **Every pleading on file in these cases bears Mr. Flynn's Massachusetts bar number, and *none other*.** In a hearing on August 17, 2007, Judge Pro asked Ms. Klar if she had read a particular pleading. Plainly, Ms. Klar and Ms. Pham know, as does Montgomery who received virtually every pleading in every case, that Mr. Flynn's Massachusetts Bar No. is on

1  the face of every pleading.

2  **5.      Montgomery's Claim that "Following disputes between the Montgomery Parties**

3  **and Mr. Flynn concerning his billing practices and handling of these Matters, Mr.**

4  **Flynn filed a Motion to Withdraw...." (Opp., 3:19-20), Is Blatantly False.**

5          Because the foregoing statement is so blatantly false, Mr. Flynn must respond under

6  seal.  As reflected in the *extremely limited and redacted* e-mails attached under seal to Mr.

7  Flynn's Declaration (there are hundreds more)  there was never any "dispute" whatsoever

8  about Mr. Flynn's billing, the amount of the fees, the work performed, or the intention of the

9  Montgomery to pay the bills until Mr. Flynn raised  issues concerning Montgomery's and

10  Blixseth's *on-going* mis-conduct relating to *multiple matters*, Mr. Flynn's stated intention to

11  withdraw because of said mis-conduct, efforts and negotiations by Mr. Logar to keep Mr.

12  Flynn in the cases, and even then, no specific dispute as to any of the bills. As set forth

13  below, it is withdrawal relating to mis-conduct that compels this Court's jurisdiction.

14  **6.      The Opposition Does Not Address the Nevada" Retaining Lien."**

15          This Court should grant the proposed attached order approving the retaining lien under

16  Nevada law, because Montgomery has completely ignored it, and the Motion for fees on this

17  subject.

18  **7.      The *Ecomares* case Does Not Apply for Clear and Compelling Reasons,**

19  **Primarily, *inter alia,* Because of Montgomery's Misconduct.**

20          *Ecomares Inc.*  v *Ovcharik,* 2007 U.S. Dist. LEXIS 500335 (D.Nev, July 2, 2007) does

21  not apply for the following reasons:

22  (a) That case involved a motion to convert an attorney's lien under *N.R.S. 18.015(1),* the

23  Nevada lien statute into a judgment.. Mr. Flynn is not seeking such relief with this motion.

24  (b) The facts in this case, contrary to *Ecomares,* specifically and uniquely embrace both the

25  ancillary and <u>equitable</u> jurisdiction of this Court. *Williams v Alioto,* 625 F.2d 845, 848 (9th Cir.,

26  1980) (per curiam) "Claims for attorneys' fees ancillary to the case survive independently

27  under the Court's equitable jurisdiction...." Here,  Mr. Flynn is withdrawing pursuant to a

28

contested motion to withdraw, involving conditions sought by the government under the state secrets privilege; and conditions sought by Montgomery seeking a "gag" order and the surrender of the client file, and claiming the withdrawal was "voluntary". ( See Montgomery "Response to Motion to Withdraw", Docket No. 213, July 17, 2007; and Montgomery "Supplemental Response", August 16, 2007 Docket No. ). Judge Pro ruled against Montgomery finding that the withdrawal was not voluntary, that Mr. Flynn did not have to surrender the file, and did not address any "gag" order. (Order of J. Pro, Exhibit 6.) Mr. Flynn's withdrawal is conditioned upon compliance with the state secrets privilege, conditions imposed by Judge Pro, which directly relate to his files, which also relates to his "Nevada "retaining lien" over the files. Thus, this Court has compelling reasons to adjudicate the fee issue, "retaining lien", and surrender of the files, under its equitable jurisdiction in order to continue to adjudicate the withdrawal issues. Montgomery's bad faith attempt to circumvent this Court's September 24, 2007 Order by filing his application for a "writ of possession" in California further justifies equitable jurisdiction.

(c) The Court's equitable jurisdiction also applies to Mr. Flynn's reasons for withdrawal, to wit: the "misconduct " of Montgomery, which misconduct is at the heart of numerous issues in this case, and Montgomery's refusal to pay because of Mr. Flynn's refusal to continue the representation because of said misconduct. See attached sealed declaration of Michael Flynn. Thus, this Court should adjudicate the fees in the context of a contested withdrawal mandated by client misconduct. See eg, *Novinger v E.I. DuPont De Nemours & Co. ,* 809 F.2d 212, 217 (3rd Cir., 1987) *cert. denied,* 481 U. S. 1069 (1987). [In a fee dispute involving "two difficult and suspicious clients" a lien over client files*,* successive lawyers, withdrawal issues, the Court noted that ancillary jurisdiction is "particularly necessary for disputes" involving fees to be paid by withdrawing counsel "because they bear directly upon the ability of the court to dispose of cases before it in a fair manner*". Id* at p. 217 ("suspicious clients" at p. 213)*.* Cited by *Williams v. Alioto, supra* at 731. Here, the facts and circumstances make the "two difficult and suspicious clients" observations in *Novinger* remarkably benign. See

1 attached Flynn declaration. This Court should adjudicate this "dispute."

2 (d). Contrary to Montgomery's assertion, this would not be a "summary proceeding" if he had
3 presented any facts. He did not.

4 **8.    Mr. Stillman's Inadvertent Failure to Timely Remove "Flynn & Stillman " Cardiff,**

5 **California address is Irrelevant; and the "Standing" issue is Moot and Irrelevant.**

6        Montgomery attached the "Attorney Search" record of Mr. Stillman to its Opposition
7  which listed his former firm address of "Flynn and Stillman" after dissolution of the
8 partnership. It is irrelevant. First, Mr. Stillman had requested the name change "many months
9 ago" and it was not done; however he recently corrected it. Stillman Decl., ¶ 16.   Second,
10 Mr. Flynn has not billed for Mr. Stillman's work since July, 2006. All of the unpaid fees are for
11 Mr. Flynn and Ms. DiMare's fees and costs. Flynn Dec., ¶ 51 and invoices sent to
12 Montgomery.  Ms. DiMare has authorized Mr. Flynn to seek her fees. DiMare Dec. ¶ 5.   All
13 of their  work has been done for the Nevada cases. It has been done in Nevada,
14 Massachusetts, California, Washington, D.C., Oregon, Florida, Rhode Island, and while flying
15 over almost every state in the country. It is irrelevant where the work was done, but it is
16 relevant that it was all done for the Nevada cases; all court proceedings were exclusively in
17 Nevada; and no other jurisdiction has been involved, except the state of Washington, which
18 were handled by Washington attorneys. Ancillary and equitable jurisdiction are plainly in
19 Nevada.

20        Justice and equity require that the Court enter the attached Proposed Order, granting
21 the motion for payment of the fees and costs, and authorizing the retention of all of
22 Montgomery's files until said payment is made..

23                                   Respectfully submitted,

24                                   /s/_____

25 September 24, 2007                Michael J. Flynn, Esq.

26

27

28

11