**Michael J. Flynn, Mass. State Bar No.172780**
mjfbb@msn.com
P.O. Box 690, 6125 El Tordo
Rancho Santa Fe, CA 92067; *and*
One Center Plaza, Suite 240
Boston,MA. 02108
Tel:   (858) 775-7624;Fax:  (858) 759-0711
*Admitted Pro Hac Vice*
FORMER Attorney for MONTGOMERY, THE MONTGOMERY FAMILY TRUST, AND THE TRUSTEES OF THE MONTGOMERY FAMILY TRUST.

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| DENNIS MONTGOMERY, and the MONTGOMERY FAMILY TRUST, <br><br> Plaintiffs, <br><br> v. <br><br> ETREPPID TECHNOLOGIES, LLC, WARREN TREPP, and the UNITED STATES DEPARTMENT OF DEFENSE, <br><br> Defendants. <br><br> AND ALL RELATED MATTERS. | 3:06-CV-00056-PMP-VPC <br> **BASE FILE** <br><br> 3:06-CV-00145-PMP-VPC <br><br> **OPPOSITION OF ATTORNEY FLYNN TO MONTGOMERY'S "EMERGENCY" EX PARTE APPLICATION FOR CLARIFICATION OF ORDER RE WITHDRAWAL, DOCKET NO. 256.** |

**INTRODUCTION**

Attorney Michael Flynn submits this Opposition to the "Emergency Ex Parte Application for Clarification of Order Re: Motion to Withdraw by Michael Flynn filed by Deborah A. Klar ("Klar") on behalf of Dennis Montgomery, his wife Brenda Montgomery and the Montgomery Family Trust, (hereinafter "Montgomery"). Montgomery does not meet any of the requirements for reconsideration, and his application should be denied.

There is no "*emergency*" for clarification of anything. Montgomery's alleged "emergency" is a sham manufactured by the filing of a sham Los Angeles law suit, in the wrong forum, in a blatant forum shopping frenzy, founded on false and defamatory statements about Mr. Flynn holding himself out as a "California lawyer," followed by more recent contumacious conduct—all while Montgomery was seeking the identical relief rejected by this Court.

Montgomery's lawyers have compounded their alleged "*emergency*" by seeking to directly circumvent this Court's September 4, 2007 Order, which addresses the military and state secrets in Mr. Flynn's files, by running into Los Angles on an ex parte application, with 24 hour notice to Mr. Flynn knowing he was unavailable on September 13, 2007, before a "commissioner," <u>without</u> providing the "commissioner" with a copy of this Court's September 4, 2007 Order.

After two months of pleadings and a hearing, this Court rejected Montgomery's demand that Mr. Flynn surrender his files under California law, and ordered compliance with two conditions prohibiting the material in Mr. Flynn's files, which contains state secrets, from being transferred to anybody. It was clearly in bad faith to seek identical relief in a different court devoid of jurisdiction and venue on the exact same issue, particularly considering that Montgomery's lawyers did not provide the "commissioner" with a copy of this Court's September 4, 2007 Order; did not notify this Court until after the fact; they knew that Mr. Flynn was not available; they never notified the Government, which they also knew had a substantial interest in Mr. Flynn's files, and they knew they would also be violating the

1 Court's conditions to protect national security.

2 Montgomery's lawyers' efforts to circumvent this Court's September 4, 2007 Order
3 were not potentially without very serious consequences. Had they succeeded, and sent a
4 sheriff to seize the files, they would have undone and contravened four months of work by
5 this Court beginning with the April 2, 2007 Order. Such conduct is blatantly contumacious.
6 A show cause order should issue from this Court.

7 After the 24 hour *ex parte* motion with a "commissioner," mysteriously went awry,
8 they then withdrew it in chambers under unknown circumstances and refiled it for October
9 18, 2007. They then notified this Court, after the fact, via a "clarification," and after they were
10 unsuccessful in Los Angeles. Clearly they are forum shopping and abusing the judicial
11 systems in Nevada and California. But the import of their contempt for this Court's Order
12 should not be ignored.

13 As seen in the recently filed "Reply" in support of Mr. Flynn's Motion for Fees with
14 accompanying declarations and exhibits, Montgomery's sworn statements are patently false;
15 and sadly, part of a pattern of lying. (Docket no. 279 *et seq;* 9.24.07). His new lawyers seem
16 to have similar disregard for the integrity of the system.

17 The only "emergency" is one they have fabricated to cheat Mr. Flynn and Ms.
18 DiMare, and evade this Court's unambiguous, very specific, Order. Montgomery's latest
19 maneuver conjures up the old metaphor of the child who kills his parents and screams
20 "*emergency*" because he has no parents. Montgomery has killed his own credibility.
21 Running to a new court will not save it or bring it back. Montgomery's flagrant abuse of the
22 judicial system founded on patently false statements because he is trying to avoid payment
23 of over $608,000 in fees and costs that he indisputably owes, over which this Court has
24 unassailable ancillary and equitable jurisdiction, is not acceptable. It is particularly important
25 for this Court to assert ancillary jurisdiction to preserve military and state secrets, and to
26 control Montgomery's misconduct, designed to thwart it.

27 The above metaphor has further application here. Montgomery's new lawyers had
28

3

previously filed and requested in this Court the identical relief they are seeking in Los Angeles, *i.e.,* obtain Mr. Flynn's files and "gag" him, including a supplemental filing shortly before the August 17, 2007 hearing on the Motion to Withdraw. They lost. Those claims were rejected. Now they claim they need further briefing on this Court's September 4, 2007 Order because their prior briefing was inadequate.  Yet, had they succeeded on September 13, 2007, they wouldn't be filing this "emergency" application. As in the metaphor, they now claim to need more briefing because they "killed" their prior opportunity to brief the issues correctly, concealed this Court's order from the commissioner, lost that bad faith attempt, and now come back to this Court after their dishonesty failed.  Their own games have come home to roost.

**SUMMARY OF FACTS AND PROCEEDINGS**.

1. On July 9, 2007, Mr. Flynn filed the requisite, bland, with no specific facts, Motion to Withdraw containing approved language under the rules of professional conduct. The Motion merely recited client conduct that made further representation unreasonable and unpaid fees and costs. (Docket No.204; 7.9.07). Underlying the Motion was an extensive history of Montgomery's mis-conduct. Montgomery and his new lawyers then could not help themselves by playing judicial games, and attempting to avoid his financial responsibility which is now gradually exposing his history of misconduct.

2. On July 16, 2007, the government filed a "Response" requesting four conditions for withdrawal under the state secrets privilege, essentially seeking to cleanse Mr. Flynn's files of any state and military secrets falling within the scope of this Court's April 2, 2007 Order. (Docket No. 209; 9.16.07).

3. On July 26, 2007, Montgomery's new lawyers, through local counsel, filed a "Response" seeking two conditions for withdrawal: the surrender of the files; and a "gag" order to allegedly prevent Mr. Flynn from disclosing confidences.  These identical issues they now seek to "clarify" were on their plate when they filed their "Response" on Jul 26, 2007. Indeed, on page 6 of their "Response" they explicitly addressed the purported applicability of California law, citing irrelevant, inapplicable cases. (Docket No. 213; 7.26.07).

4

4. On July 30, 2007, Mr. Flynn filed a "Reply", with a sealed declaration, addressing the specific issues raised in the "Response" asserting that Nevada law, not California law applied. (Docket No. 214; 7.30.07). Also, on July 31, 2007, for the *first time,* notwithstanding Mr. Flynn's phone call to Ms. Klar on July 9, 2007, (never returned), Mr. Flynn spoke to Ms. Pham, who essentially then began a series of threats if Mr. Flynn did not return the files. When Mr. Flynn requested specific cases and facts relating to California law, and requested specific facts about alleged disclosures, neither Ms. Pham or Klar ever provided anything. (See sealed Atty. Flynn Decl., approx. docket #280, Sept. 24, 2007).

5. On August 3, 2007, Ms. Pham and Klar filed a baseless law suit against Mr. Flynn in the Los Angeles Superior Court seeking injunctive relief to obtain Mr. Flynn's files; and to "gag" him for some unspecified, unplead, unfounded claim of violating attorney client confidences. This is the identical relief they were then seeking in the then fully briefed and pending Motion to Withdraw. They knew that all of the work done was performed on the Nevada cases, that Mr. Flynn's Nevada *pro hac vice* applied Nevada law, that all of the invoices submitted were for work on the Nevada cases, and that Montgomery had serious problems with the truth. They knew the latter, *inter alia,* because they are representing Edra Blixseth in her divorce; and there have been serious conflicts over the "truth" between Blixseth and Montgomery. Mr. Flynn has never been served with the Complaint as required by California law, although it was faxed to him by Ms. Pham. There is no venue in Los Angeles, because none of the parties live or work there. They misrepresented the fact in their Complaint that the Montgomery Family Trust resided in California. When they subsequently learned that Montgomery had recently represented to this Court that the Trust was a Washington resident, Ms. Pham then said, and later withdrew, that Montgomery had moved to Los Angeles County.

6. On August 6, 2007, Mr. Flynn sought to remove the LA case to the Central District of California; and to dismiss or transfer it to this Court. On August 22, 2007, the Court denied the removal, *sua sponte,* on the grounds that the LA case only sought injunctive relief and that the $75,000.00 jurisdictional threshold was not met. Montgomery's LA Complaint did not

1  plead or seek relief in connection with any "fee dispute." The Motion to Dismiss/Transfer was
2  denied as "moot."  Mr. Flynn has not appeared or filed any pleadings any the LA case
3  because he has not yet been served, nor has Ms. Klar asked him to accept service.
4  <u>Therefore, there is no "fee dispute" pending before a California Court, which has jurisdiction</u>
5  <u>or proper venue over Mr. Flynn</u>.

6       7.  On August 16, 2007, Ms. Klar filed a supplemental Response to the Motion to
7  Withdraw claiming that it was "voluntary" and again asserting that California law applied.
8  (Docket No. 241; 8.16.07).

9       8.  On August 17, 2007, the Court conducted a telephonic hearing on the Motion to
10  Withdraw.  Ms. Klar argued that the Montgomery file should be surrendered because Mr.
11  Flynn held himself out as a California lawyer and that California law applied. The Court asked
12  Ms. Klar if she had read the pleadings in the cases.  Reluctantly, she admitted she did.  On
13  page one of every pleading, Mr. Flynn's Massachusetts bar number is stated.

14       9.  On August 20, 2007, Mr. Flynn filed an "Amended Notice of Lien" claiming a
15  common law retaining lien over the files for unpaid fees and costs. (Docket No. 246; 8.20.07).

16      10.  On August 21, 2007 Mr. Flynn filed a Motion for Fees and Costs citing ancillary
17  jurisdiction in this Court under *Curry v DelPriore,* 941 F,2d 730 (9th Cir., 1991). (Docket No.
18  248; 8.21.07). The Motion specifically addresses the applicability of Nevada law to adjudicate
19  the Motion for Fees and Costs, and the need for this Court to retain jurisdiction.

20      11.  On September 4, 2007, the Court entered an Order granting the Motion to
21  Withdraw subject to  two of the government's requested conditions, and explicitly rejecting
22  Montgomery's demand that Mr. Flynn "surrender" the files. (Docket No. 256; 9.4.07).

23      12.  On September 10, 2007, Montgomery filed a  "Response" to the Motion for fees,
24  primarily asserting that Mr. Flynn held himself out as a "California lawyer; that California law,
25  therefore, somehow applied; that the pending Los Angeles case "embraced the attorney client
26  relationship" (Ms. Pham used that ambiguous language because she knew there was no "fee
27  dispute" in LA); and they misrepresented the basis for the U.S.D.C., Central District of
28  California's, remand and denial of the motion to dismiss/transfer. Plainly Ms. Pham/Klar were

6

1  not honest with this Court. They knew that they had not sought any relief or plead specific
2  facts about any "fee dispute" in the Los Angeles case; that the Central District remanded the
3  case because there was no monetary damage issues over $75,000—thus no "fee dispute;"
4  and that the "fee dispute was squarely within this Court's jurisdiction under very specific 9th
5  Circuit case law—which they ignored. They made no "specific objections" and provided no
6  legitimate evidence to refute the fees as required by law and local rules. But they attached
7  a pile of irrelevant papers and a new frivolous and jurisdictionally deficient arbitration petition
8  in San Diego. (Docket No. 262; 9.10.07).

9       13. As set forth briefly above, on September 13, 2007, knowing Mr. Flynn was
10 unavailable, they then ran to an LA Court Commissioner to get a Writ of Possession in order
11 to circumvent this Court's September 4th Order. When that failed under mysterious
12 circumstances, they then refiled, scheduled a hearing for October 18, 2007 with the same
13 Commissioner and declared an *emergency* in this Court. It is plain that the only *emergency*
14 is this Court's and counsel's having to deal with Montgomery's frenetic attempts to manipulate
15 justice and continue to conceal his pattern of misconduct.

16       14. On September 24, 2007, Mr. Flynn filed a Reply specifically addressing each of
17 Montgomery's points and authority; and comprehensively addressing Montgomery's lie that
18 Mr. Flynn held himself out to him as a "California lawyer". Said Reply specifically addresses
19 Montgomery's claim in his Response that California has jurisdiction and venue over the fees,
20 the files and the parties. (Docket No. 277; 9.24.07)

21       **ARGUMENT**.

22       Two things are clear from the foregoing chronology: (1) This Court has already ruled
23 on the "surrender" of the files issues, both previously briefed, and then heard in the August
24 17, 2007 hearing. The Court rejected Montgomery's arguments on this precise issue.
25 (Order, docket no. 256, Sept. 4, 2007). The Court explicitly upheld Nevada law, citing
26 *Figliuzzi v State of Nevada*, 111 Nev. 338 (1995) and ruling that Mr. Flynn does not have to
27 "surrender" his files. It couldn't be clearer. No "clarification" is required. (2) The fees and
28 costs issues and collateral issues relating thereto are now fully briefed and under submission

with the Court. Montgomery's *"Emergency Ex Parte* Application for *Clarification*, is in truth, a ruse for seeking reconsideration of the Court's September 4, 2007 Order. Montgomery and the Liner firm have not been up front and direct with the Court.

**Montgomery's Unfounded  Ex Parte Motion is Really a "Reconsideration Motion," and Violates the "Law of the Case" Doctrine.**

The standard for granting a motion for reconsideration is *strict*. *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2nd Cir. 1995).  The "law of the case" doctrine generally precludes a court from reconsidering an issue that has already been decided in the identical case, either by the same court or a superior court. *United States v. Real Property Located at Incline Village*, 976 F.Supp.1327, 1353 (D. NV 1997). "The doctrine is designed to ensure judicial consistency and to prevent the reconsideration, during the course of a single continuous lawsuit, of those decisions which are intended to put a particular matter to rest." *Id.* "The doctrine applies to issues decided explicitly or by necessary implication in the court's prior ruling." *Id.*

Despite these characterizations, a court may exercise its discretion to revisit and reverse a prior ruling on one of five specified grounds." *Id.* "Those grounds are (1) a clearly erroneous prior ruling, (2) an intervening change in controlling law, (3) substantially different evidence, (4) 'other changed circumstances,' and (5) that manifest injustice could result where the prior ruling is permitted to stand." *Id., citing Thomas v. Bible*, 983 F.2d 152, 155 (9th Cir. 1993) *cert denied*, 508 U.S. 951 (1993).

None of those grounds are met here.  There is no erroneous ruling; there is no intervening change in controlling law, or substantially different evidence or other legitimate changed circumstance. (Order, Sept. 4, 2007, cv-00056, docket no. 256).  The Court and the government have spent a lot of time trying to protect the military and state secrets privilege, and because the Liner firm has filed a sham complaint in Los Angeles, and sham request for arbitration in San Diego, should not change the Court's Order or reverse that hard work.

Respectfully submitted,

1 |                                          /s/
2 | September 26, 2007                       Michael J. Flynn, Esq.