1

2

3          **UNITED STATES DISTRICT COURT**

4              **DISTRICT OF NEVADA**

5

6   DENNIS MONTGOMERY, and the                 )
    MONTGOMERY FAMILY TRUST,                   )
7                                              )    3:06-CV-00056-PMP-VPC
                   Plaintiffs,                 )    BASE FILE
8                                              )
    v.                                         )    3:06-CV-00145-PMP-VPC
9                                              )
    ETREPPID TECHNOLOGIES, LLC,                )
10  WARREN TREPP, and the UNITED               )
    STATES DEPARTMENT OF DEFENSE               )    ORDER
11                                             )
                   Defendants.                 )
12  _____ )
                                               )
13  AND ALL RELATED MATTERS.                   )
    _____ )

14

15       Before the court is the motion of Michael Flynn, Esq. ("Flynn") for attorney's fees and

16  costs (#s 248-251). Plaintiffs Dennis Montgomery, Brenda Montgomery, and the Montgomery

17  Family Trust ("Montgomery") opposed (#s 261/262) and filed a request for judicial notice (#262).

18  Flynn replied (#s 277-282).

19       I.    **History and Procedural Background**

20             A.    **Flynn's Motion to Withdraw as Montgomery's Counsel**

21       In February 2006, Mr. Flynn filed verified petitions for permission to practice *pro hac vice*

22  in two matters pending before this court in which he represented the Montgomerys: case nos.

23  3:06-cv-00145 and 3:06-cv-00056.[1]  In each application, Flynn disclosed that he is a member in

24  good standing of the State Bar of Massachusetts, that his law office is located in Boston,

25

26       _____

27       [1] In February 2006, Flynn also filed a *pro hac vice* application in Case No. 3:06-cv-00263, the
    Buckthorne Lane search proceedings (#107). Flynn did not seek to withdraw as counsel in that action, but
    Montgomery presumed Flynn did not object to his being substituted out in that proceeding (#251, n.1), and
28  none was filed.

1  Massachusetts, and that he resides in Rancho Sante Fe, California (#9 - Case 06-56; #9 -Case 06-

2  145; #107 - Case 06-263). The court approved each of these applications. Carla Dimare, Esq.

3  ("Dimare") was later admitted *pro hac vice* on behalf of Montgomery (#113- Case 06-56).

4         In July 2007, approximately eighteen months after the search warrant proceeding and the

5  two civil cases had commenced, Flynn and Dimare moved to withdraw in what is now the

6  consolidated civil case, 3:06-cv-56 (#s 203, 205 & 206). On August 17, 2007, the District Court

7  held a hearing to consider various issues that arose in connection with the motion to withdraw

8  (#247). Thereafter, the District Court granted the motion, and further ordered

9         that to the extent the Montgomery Plaintiffs seek to condition the
           withdrawal of Flynn and Dimare on Flynn and Dimare
10        surrendering their complete "client file" to new counsel of record
           for Plaintiffs (Doc. #213), said precondition is rejected by the
11        Court. In this regard, the record before the Court does not support
           the finding that Flynn and Dimare have withdrawn "voluntary" as
12        counsel for Montgomery Plaintiffs, In the Matter of Kaufman, 93
           Nev. 452, 567 P.2d 957 (1977), nor does it appear on the record
13        before the Court that Flynn and Dimare should be compelled to
           surrender their files to new counsel of record. Figliuzzi v. Fed.
14        Dist. Court, 111 Nev. 338, 890 P.2d 798 (1995).

15 (#256, p. 4, lines 12-20).

16        On September 18, 2007, the Montgomerys filed an emergency *ex parte* application for

17 clarification of order re: motion to withdraw by Michael Flynn (#274), which the District Court

18 denied. The Court stated that by their motion, the Montgomerys did not seek clarification; rather,

19 they sought reconsideration (#291). In denying the motion, the Court found its prior order "clear

20 and unambiguous, dealing solely with the matter then before the Court as to whether to condition

21 Flynn's withdrawal as an attorney in this matter on the return of Montgomery's client file." *Id.*

22                    **B.    Montgomery's California State Court Action**

23        Shortly after Flynn and Dimare moved to withdraw as counsel in these proceedings,

24 Montgomery filed a separate complaint for preliminary and permanent injunctive relief in a

25 California Superior Court on August 3, 2007 (#262, Ex. 1).[2]  Montgomery alleges in the

26 _____

27        [2] Pursuant to Fed.R.Evid. 201, this court takes judicial notice of the pleadings filed in the United
   States District Court, Central District of California, the Los Angeles Superior Court, Central District of
28 California, and the San Diego County Bar Association (#262).

California action that although he retained Flynn to represent him in the consolidated actions currently pending in this court, Flynn held himself out as a licensed California lawyer; therefore, a California court is the proper forum to resolve disputes concerning the attorney-client relationship (#261). Montgomery asks the California court enjoin Flynn from further violations of the California Code of Professional Conduct, or to require Flynn to turn over Montgomery's files in this action (#262, Ex. 1). Montgomery also seeks a permanent injunction to prohibit Flynn from disclosing any confidential and privileged attorney-client communications to any third party. *Id.*

Montgomery's new counsel informed this court that a hearing on a motion in California Superior Court for the return of their client files is presently set for October 18, 2007 (#289).[3]

## C. Flynn's Motion for Attorney's Fees and Costs

On August 20, 2007, Flynn filed an "amended notice of common law 'retaining lien' over the papers and property of the Montgomery parties for unpaid fees and costs" (#246). The filing also included notice of a charging lien pursuant to N.R.S. 18.015. *Id.* Montgomery opposed, making certain jurisdictional arguments and contending that there is no written fee agreement between Montgomery and Flynn (#254).[4] Additionally, Flynn filed a "motion for attorney fees and costs" on August 21, 2007, requesting that this court adjudicate the fee issue and order Montgomery to pay all outstanding fees and costs (#248).

///

///

///

---

[3] The court observes that in the face of the District Court's September 4, 2007 order that Flynn and Dimare would not be compelled to surrender their files to new counsel of record, *see* #256, Montgomery has continued to pursue another forum to adjudicate the fee dispute, namely California. In his California Superior Court action, Montgomery seeks relief that is contrary to the District Court's order.

[4] Montgomery also contends that Flynn voluntarily withdrew from this action. *Id.* The Nevada Supreme Court has held that if an attorney voluntarily withdraws from the case, he loses any claim to a retaining lien. *In the Matter of Kaufman*, 93 Nev. 452, 457 (1977). However, this court has already concluded that the record before the court does not support a finding that Flynn voluntarily withdrew from this action, *see* # 256; therefore, the court disregards this argument.

1    **II.    Analysis and Discussion**

2         **A.    Jurisdiction to Adjudicate Fee Disputes**

3         Flynn asks this court to adjudicate the attorney's fee issue and order Montgomery to pay

4    all outstanding fees and costs (#248).  Montgomery opposes, arguing that Flynn lacks standing

5    to bring such a motion, that California is the proper forum for what is an attorney-client fee

6    dispute, that there is no action pending before this court, and that this court recently ruled that a

7    summary proceeding is not the proper procedure for recovery of fees by an attorney where the

8    client disputes the amount of the fee owed (#261).

9         In *Curry v. Guam Memorial Hospital Authority*, the Ninth Circuit squarely addressed

10   whether the District Court has jurisdiction to adjudicate a fee dispute and stated:

11              Courts have long recognized that fee disputes arising from
                litigation pending before a district court fall within that court's
12              ancillary jurisdiction. Ancillary jurisdiction permits courts to
                adjudicate matters that arise during the course of an action and
13              affect the court's ability either to render an efficacious judgment
                or to control the litigation before it. Ancillary jurisdiction rests on
14              the premise that a federal court acquires jurisdiction of a case or
                controversy in its entirety. Incident to the disposition of the
15              principal issues before it, a court may decide collateral matters
                necessary to render complete justice.

16
17   941 F.2d 730, 731 (9th Cir. 1991) (citation omitted).  The Ninth Circuit also noted that

18   "[a]ncillary jurisdiction encompasses motions to withdraw and fee disputes generated thereby."

19   *Id.*, citing *Williams v. Alioto*, 625 F.2d 845, 848 (9th Cir.1980), *cert. denied*, 450 U.S. 1012

20   (1981) (quotations omitted).  This is exactly the situation that has arisen in this case, and the court

21   concludes that it has ancillary jurisdiction to resolve this fee dispute, which is currently pending

22   by virtue of Flynn's notice of lien and his motion for payments of fees and costs.  In addition,

23   maintaining jurisdiction over all aspects of this proceeding is critically important, since this action

24   concerns information subject to the military and state secrets privilege (#256).

25        Apart from this jurisdictional issue, attorneys admitted *pro hac vice* are bound by the

26   standards of professional conduct as adopted by the Nevada Supreme Court.  Local Rule IA 10-2

27   ("LR 10-2") of the Local Rules of Practice for this Court outlines the procedure for an attorney's

28   admission to practice, and subsection (8) provides that the out-of-state attorney "shall be subject

- 4 -

1  to the jurisdiction of the courts and disciplinary boards of this state with respect to the law of this

2  state governing the conduct of attorneys to the same extent as a member of the State Bar of

3  Nevada." The attorney is also required to comply with the standards of professional conduct of

4  the State Bar of Nevada and related rules of professional conduct. LR IA 10-2(9).

5      LR IA 10-7 governs ethical standards and discipline for attorneys admitted pursuant to

6  LR IA 10-2 and requires that attorneys must comply with the Model Rules of Professional

7  Conduct as adopted by the Nevada Supreme Court. It further provides for disciplinary

8  proceedings for violations of these standards. At issue in this fee dispute is Flynn's conduct as

9  counsel for Montgomery. Flynn, in turn, implicates Rule 3.3(a)(3) and (b) of the Nevada Rules

10  of Professional Conduct, which specifically relates matters already litigated in this court. Both

11  *Curry* and the Local Rules make this court the obvious and proper forum for resolution of this fee

12  dispute.[5]

13                    **B.    Flynn's Motion for Attorney's Fees**

14      Nevada permits two types of liens for the collection of attorney fees – (1) "special or

15  charging" liens; and (2) "general or retaining" liens. *Figliuzzi v. Eighth Judicial District Court,*

16  111 Nev. 338, 342 (1995). A "special or charging" lien is an attorney's lien upon the client's

17  cause of action which attaches to the judgment and the proceeds thereof. *Morse v. District Court,*

18  65 Nev. 275, 281 (1948). In Nevada, a charging lien is available by statute. N.R.S. 18.015(1)

19  allows an attorney a lien for the amount upon which the attorney and client have agreed. To

20  perfect this lien, an attorney must first file a notice of the lien in writing and claim the amount of

21  the lien and the interest the attorney has in the action. N.R.S. 18.015(2). After the notice is filed

22  and served, the attorney may file a motion requesting that the court "adjudicate the rights of the

23  attorney, client or other parties and enforce the lien." N.R.S. 18.015(4). The lien attaches to "any

24  verdict, judgment or decree entered and to any money or property which is recovered on account

25  of the suit or other action, from the time of service of the notices... ." N.R.S. 18.015(3). "The

26

---

27  [5] Montgomery's new counsel has indicated that Montgomery has or will file complaints with the
California and/or the Massachusetts State Bar(s) as to Flynn's actions in this case. The court takes no
position on the propriety of such potential complaints. By this order, this court only takes jurisdiction over
28  the attorney's fees and client file dispute.

1    statute is silent concerning when a motion to convert attorney's lien to judgment is to be filed,
2    but implicit in the plain meaning of the statute is that the attorney's lien will attach to any verdict,
3    judgment or decree entered in the action from which the attorney's fees arise." *Ecomares v.*
4    *Ovcharik*, 2007 WL 1933573, *2 (D.Nev., July 2, 2007).

5         The second type of lien available to attorneys in Nevada is a "retaining lien." A "retaining
6    lien" is one which attaches to "all papers, books, documents, securities and money that come to
7    the attorney in the course of his professional employment by the client without any special
8    contract regarding it." *Morse*, 65 Nev. at 281-82. This common law lien depends upon the
9    possession of the materials, and is confined to the property in possession of the attorney. *Id.* at
10   282. The lien applies to the "general balance for all professional services performed whether in
11   the action itself or in prior actions or for general legal services." *Id.* Pursuant to a retaining lien,
12   an attorney may simply retain possession of the client's files and papers until his fees are paid.
13   *Id.* at 284.

14                              **1. Charging Lien**

15        The court first notes that pursuant to N.R.S. 18.015, the parties need not have a written
16   fee agreement for Flynn to perfect a charging lien on the judgment. *See* N.R.S. 18.015(1) ("The
17   lien is for the amount of any fee which has been agreed upon by the attorney and client. In the
18   absence of an agreement, the lien is for a reasonable fee for the services which the attorney has
19   rendered for the client on account of the suit, claim, demand or action.").

20        Flynn properly perfected his lien pursuant to N.R.S. 18.015(2) on August 20, 2007, by
21   serving Montgomery notice, in writing, claiming the lien and stating the interest which Flynn has
22   in the pending action (#246). Flynn then filed his motion for attorneys fees and costs pursuant
23   to N.R.S. 18.015(4), requesting that this court presently adjudicate the parties' rights and issue
24   an order requiring Montgomery to pay such fees and costs (#248). The court may, upon motion,
25   "adjudicate the rights of the attorney, client, or other parties." *See* N.R.S. 18.015(4).

26        At issue is whether this court may presently adjudicate the amount of the disputed
27   attorney's fees and costs and subsequently order Montgomery to pay the adjudicated amounts.
28   This court recently held that where the parties dispute the amount of the fee and the legal services

                                         - 6 -

1    rendered, the trial court should properly refuse to decide such issues in a summary proceeding in

2    the pending case. *Ecomares v. Ovcharik*, 2007 WL 1933573, *3 (D.Nev., July 2. 2007) (*citing*

3    *Morse v. Eighth Judicial District Court*, 65 Nev. 275 (1948)). In *Ecomares*, the client retained

4    new counsel for the *sole* reason that her former counsel had allegedly engaged in a course of

5    action that was contrary to her wishes. Because her former counsel's actions resulted in what the

6    client believed were unnecessary and unreasonable legal fees, the client retained new counsel and

7    refused to pay the fees. Similarly, in *Morse*, relied on by the court in *Ecomares*, the Nevada

8    Supreme Court found that by asserting attorney misconduct and negligence which resulted in the

9    clients suffering damages "in excess of the amount of any fee earned by the attorneys," the clients

10   had made "impossible a summary determination of the simple issue of the value of the services"

11   because they had "inject[ed] more complicated issues." *Morse*, 65 Nev. at 286-87.

12          The present case can be distinguished from *Ecomares* and *Morse*. Here, Montgomery has

13   filed an affidavit swearing, under penalty of perjury, that he "disputes" Flynn's fees (#261, Decl.

14   of Montgomery, ¶ 10). However, nowhere does Montgomery allege that Flynn followed a course

15   of action with which Montgomery disagreed, thereby inflating the legal bill, as the client alleged

16   in *Ecomares*. Nor does Montgomery allege, as the client did in *Morse*, that Flynn acted with the

17   particular sort of attorney misconduct, such as negligence or malpractice, that would result in

18   Montgomery suffering excessive fees and damages in amounts in excess of any fees Flynn earned.

19   Notably, when Flynn moved to withdraw as counsel for Montgomery in July 2007, Montgomery

20   had no opposition whatsoever (#213) ("Plaintiffs Dennis Montgomery and the Montgomery

21   Family Trust do not oppose the recent request by their current lead counsel of record to withdraw

22   from this case... ."). The bulk of Montgomery's response to Flynn's motion to withdraw centered

23   on concerns that the government was attempting to impose requirements on the transfer of

24   Montgomery's client file from Flynn to new counsel. *Id.* There was no mention that

25   Montgomery disputed Flynn's fees or was unsatisfied with Flynn's actions. The principal reason

26   Montgomery has presented in his papers filed with both this court and in the California action for

27   disputing Flynn's fees is that he alleges Flynn improperly held himself out as a California attorney

28

1   (#261, Decl of Montgomery, ¶4-7; *see also* #262, Exhibit 1).[6] Even if this allegation is true, such

2   actions by Flynn are irrelevant to whether the fees Flynn charged are reasonable.

3        Further, Flynn has presented evidence which reveals that Montgomery was more than

4   satisfied with the results of Flynn's work, #279 and #282, *sealed.* The fees at issue here are from

5   January 2007 through approximately July 2007; prior to this, Montgomery paid Flynn what are

6   likely very substantial fees for approximately one year. The underlying issue with respect to the

7   breakdown of the attorney-client relationship does not seem to be misconduct on Flynn's part or

8   Flynn's unnecessary inflation of legal bills; rather, it appears to the court that Flynn became

9   disillusioned with Montgomery's presentation of the facts, which, in turn, led to Montgomery's

10  dissatisfaction with Flynn. This has nothing to do with the *amount* of the fees.

11       To the extent that Flynn is requesting that this court order Montgomery pay the attorney's

12  fees and costs now, the court will not do so because such a request is essentially a demand for

13  judgment. However, the court may in fact determine the *amount* of the fees due because there

14  is no issue currently before this court that would affect the *value* of the fees in dispute.

15  Thereafter, pursuant to N.R.S. 18.015, Flynn must await resolution of the pending action and then

16  seek enforcement of his charging lien.

17                          **2. Retaining Lien**

18       Flynn also has a retaining lien over Montgomery's files. In contrast to the charging lien,

19  the retaining lien is "a passive lien and cannot ordinarily be actively enforced either at law or in

20  equity. It is simply a right to retain the papers as against the client until the attorney is paid in

21  full." *Morse*, 65 Nev. at 282 (citations omitted); *see also In the Matter of Kaufman*, 93 Nev. 452,

22  457 (1977). The attorney may retain the files "until a court, at the request of the client, requires

23

24  ───────────────

25       [6] The court notes that Montgomery alleges that Flynn employed "improper billing practices" (#261, p. 2), that he "dispute[s] that Mr. Flynn is entitled to any further fees" (#261, p. 6), that he "disputes the amount of the fees billed by Mr. Flynn... as well as his handling of these matters," (#261, Decl of

26  Montgomery, ¶ 10), and that "the amount of fees requested by Flynn is unreasonable and inaccurate" (#254, p. 2). These vague allegations, which the court interprets as related to the allegation that Flynn held himself

27  out as a California attorney, rather than that Flynn improperly acted to inflate the bills or unreasonably billed unnecessary hours, are not enough for this court to refrain from determining the *amount* of the fees at issue

28  and entering the lien, which will attach to the judgment.

1   the attorney to deliver the retained items upon the client's furnishing of payment or security for

2   the attorney's fees." *Figliuzzi*, 111 Nev. at 342. Notably, "*only the client* may request the court

3   to compel an attorney, who is holding papers under a retaining lien, to relinquish the papers." *Id.*

4   at 343 (emphasis added). The district court's authority to "enforce" the retaining lien "depends

5   solely on the client's willingness to provide substitute security" and the court may not order the

6   attorney to return the papers in the absence of such security. *Id.* Additionally, the court may not

7   order the client to provide adequate security – "if the client does not provide the required security,

8   the court is without jurisdiction to order the attorney to return the requested papers and the client

9   must suffer the consequent embarrassment." *Id.*

10          Montgomery has never filed a motion with this court requesting that Flynn return his

11  client files.[7] The proper procedure with respect to the retaining lien is for Montgomery to file a

12  motion with the court requesting that Flynn return his client files and to present adequate security

13  or bond with the motion. Only then may the court order Flynn to return Montgomery's files.

14  *Figliuzzi*, 111 Nev. at 343 (a court is without jurisdiction to discharge and destroy a retaining lien

15  without providing for the payment or security for the payment of the attorney fee).

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26

27          [7] In fact, the District Court recently noted this when it stated, "Montgomery has not moved in this
    Court for return of his client files under Nevada or any other applicable law. The Court's denial of
28  Montgomery's Motion for Clarification therefore is without prejudice to file a fully briefed motion for return
    of the file, including any argument that law other than Nevada's applies to such an inquiry" (#291).

### III.   Conclusion

The court concludes that it has jurisdiction to adjudicate the amount of the fees allegedly due Flynn, and it will determine the amount of attorney's fees as more fully set forth below. In the event attorney's fees are awarded to Flynn, they will attach to any verdict, judgment or decree entered in this action in favor of Montgomery. With regard to Flynn's retaining lien, the court concludes that should Montgomery desire the client files currently in Flynn's possession, Montgomery must file a motion requesting the return of the files and post adequate security or bond. Based on the foregoing and for good cause appearing,

**IT IS ORDERED** that this court retains ancillary jurisdiction to resolve Flynn's motion (#248) and this fee dispute between Flynn and Montgomery.

**IT IS FURTHER ORDERED** that Flynn's motion for attorney's fees and costs (#248) is **GRANTED IN PART** to the extent that the court will adjudicate the *amount* of attorney's fees and costs Flynn seeks pursuant to this motion. Given the complexity of these matters, the amount of fees requested, and because Flynn's motion implicates the attorney-client privilege, Flynn shall submit to the court *in camera* a supplement in support of his motion for fees and costs no later than **Friday, October 26, 2007.** On that same date, he shall also serve the supplement on Montgomery's counsel. The supplement shall include the following:

1. Flynn shall attached all invoices, which the court assumes are itemized as to the date the services were performed, a description of the services provided, the time spent on each service provided (in tenths of an hour), and the dollar amount attributed that item. To the extent task descriptions are subject to the District Court's order concerning the military and state secrets privilege, Flynn shall redact such material.

2. Flynn shall provide an itemized summary of all costs advanced, including postage, telephone, photocopies, facsimiles, legal research, as well as the date incurred and the amount charged for each cost.

3. Flynn shall further provide a summary description of the legal services performed by category, including the number of hours expended on each category, and the total

- 10 -

1     amount for professional services rendered for each category. For example, as to the

2     motion for protective order regarding trade secrets, Flynn shall state the total

3     number of hours expended for that category, the legal fees charged for that category,

4     as well as a brief summary of the work performed.

5     **IT IS FURTHER ORDERED** that Montgomery shall have leave to respond *in camera*

6     to Flynn's supplement no later than **Friday, November 9, 2007,** and he shall provide a copy of

7     the response to Flynn on that same date. Flynn shall have leave to reply *in camera* no later than

8     **Friday, November 16, 2007,** and he shall also provide a copy of the reply to Montgomery on that

9     same date.

10     **IT IS FURTHER ORDERED** that Flynn's motion for attorney's fees and costs (#248)

11     is **DENIED IN PART** to the extent Flynn requests that the court order Montgomery to presently

12     pay any adjudicated attorney's fees and costs. Any fees and costs awarded will attach to any

13     verdict, judgment or decree entered in this action in favor of Montgomery.

14     **IT IS FURTHER ORDERED** that counsel for Montgomery shall deliver, either via

15     facsimile or hand delivery, a copy of this order to the chambers of the presiding judge in case no.

16     BC375335, in the Superior Court of the State of California, County of Los Angeles, Central

17     District, no later than 5:00 p.m. on Monday, October 15, 2007.

18     October 12, 2007.

19

20     UNITED STATES MAGISTRATE JUDGE

21

22

23

24

25

26

27

28