1  Mark H. Gunderson, Esq. (SBN: 2134)
   Catherine A. Reichenberg, Esq. (SBN: 10362)
2  GUNDERSON LAW FIRM
   5345 Kietzke Lane, Suite 200
3  Reno, Nevada 89511
   Telephone: (775) 829-1222
4  Facsimile: (775) 829-1226

5  Deborah A. Klar, Esq. (SBN: CA 124750)
   Teri T. Pham, Esq. (SBN: CA 193383)
6  Tuneen E. Chisolm, Esq. (SBN: CA 211741)
   LINER YANKELEVITZ
7  SUNSHINE & REGENSTREIF LLP
   1100 Glendon Avenue, 14th Floor
8  Los Angeles, California 90024-3503
   Telephone: (310) 500-3500
9  Facsimile: (310) 500-3501
   ADMITTED PRO HAC VICE
10
   Attorneys for Plaintiffs
11 DENNIS MONTGOMERY, and the MONTGOMERY
   FAMILY TRUST
12

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DENNIS MONTGOMERY and the MONTGOMERY FAMILY TRUST,<br><br>Plaintiffs,<br><br>vs.<br><br>ETREPPID TECHNOLOGIES, LLC, WARREN TREPP, and the UNITED STATES DEPARTMENT OF DEFENSE,<br><br>Defendants.<br><br>AND RELATED CASES. | Case No. 3:06-CV-00056-PMP-VPC<br>BASE FILE<br><br>(Consolidated with Case No. 3:06-CV-00145-PMP-VPC)<br><br>**THE MONTGOMERY PARTIES' BRIEF RE DISPUTES RE eTREPPID'S REQUESTS FOR PRODUCTION OF DOCUMENTS PER MAGISTRATE JUDGE COOKE'S ORDER FILED JANUARY 23, 2008; DECLARATION OF TUNEEN E. CHISOLM** |

Pursuant to Magistrate Judge Cook's Order filed January 23, 2008, Dennis Montgomery and The Montgomery Family Trust (collectively the "Montgomery Parties") submit this brief stating their position on the issues in dispute regarding the first and second sets of requests for production of documents propounded by eTreppid Technologies, LLC ("eTreppid").

## STATEMENT OF THE REQUESTS IN DISPUTE

Based upon communications between counsel between as of February 8, 2008, the Montgomery Parties understand the issues in dispute are limited to the requests identified below.

### eTreppid's First Set of Requests for Production ("RFP1")

i. Request Nos. 3, 4, and 6 for all documents that contain some or all of the full text of source code copyrighted by Montgomery, but not deposited with the U.S. Copyright Office, and of the source code derivative works;

ii. Request Nos. 8 and 9 for the text of alleged infringing works, including source code;

iii. Request No. 10 for all documents relating to Montgomery's health insurance, beyond that which is sufficient to establish that health insurance obtained through eTreppid's group plan was paid for by Montgomery as reflected on eTreppid K-1's issued to Montgomery;

iv. Request No. 11 for Montgomery's tax returns for the years 1998 through 2005;

v. Request Nos. 13 and 14 for all documents relating to any loans made to Montgomery by Warren Trepp or any entity controlled by Warren Trepp;

vi. Request No. 16 for all documents relating to "eTreppid's technology, products, and/or research and development efforts";

vii. Requests No. 18 for all documents containing "any source code written by" Montgomery or under his direction, "in the fields of data compression, pattern recognition, object tracking, or anomaly detection (including, but not limited to: all or any part of a software program or algorithm)";

0039641/001/ 380937v04

       viii.     Request No. 19 for all documents that relate to "any research and development efforts" by Montgomery or anyone working under his direction, "in the fields of data compression, pattern recognition, object tracking, or anomaly detection (including, but not limited to: any and all notes, diagrams, laboratory materials, or source code)";

       ix.     Request No. 20 for the "[e]xecutable versions of any and all software, developed by" Montgomery or anyone working under his direction, relating to the "fields of data compression, object tracking, pattern recognition, or anomaly detection";

       x.     Request No. 22 for a reproduction of all of the software transferred to eTreppid under the 1998 Contribution Agreement "including, but not limited to: all source code – whether in printed or executable form – executable files, shop notes, laboratory notes, and any other memoranda";

       xi.     Request Nos. 24, 25, 26, 27, and 28 for all documents relating to Montgomery's relationship, "business or otherwise," with Computermate, Inc., Barrett Laboratories, Inc., 3Net Systems, Inc., Alternative Technology Resources, Inc., and National Healthcare Exchange Services, Inc.;

       xii.     Request Nos. 30 and 31 for all documents relating to "any attempt (either successful or unsuccessful) by [Montgomery] to sell, license, distribute or otherwise exchange for value any interest in software or other technology in the fields of data compression, object tracking, pattern recognition, or anomaly detection" from January 18, 2006 to the present, and from February 8, 2006 to the present, respectively.

       xiii.     Request Nos. 32 and 33 for documents regarding communications with Michael Sandoval of Portland Oregon, which requests eTreppid expressly declined to amend, and to which Montgomery has already responded.

    eTreppid's Second Set of Requests for Production ("RFP2")

       xiv.     Request Nos. 1, 2, and 3, which are duplicative, *verbatim*, of Request Nos. 18, 19, and 20 in eTreppid's First Set of Requests for Production;

       xv.     Request No. 4, which is duplicative, *verbatim*, of Request No. 22 in the First Set of Requests for Production;

0039641/001/ 380937v04

      xvi.    Request No. 6 for inspection or forensic copies of any "original or copied electronic device, including any hard drive or disk . . . that was seized by the [FBI] and returned to [Montgomery] pursuant to File No. 295A-LV-39.368";

      xvii.    Request No. 7 for inspection by Jonathan Karchmer or production of forensic copies of "all documents and electronically stored information, including but not limited to all source code contained on all computer hard drives seized by the FBI and returned to [Montgomery] pursuant to File No. 295A-LV-39.368";

      xviii.    Request No. 20 for all emails sent or received by Warren Trepp, Doug Frye, or any other manager, member, or employee of eTreppid, in their native format;

      xix.    Request Nos. 22 and 23 for documents regarding Montgomery's communications with the media regarding the FBI's investigation of Jim Gibbons and Warren Trepp;

      xx.    Request No. 24 for all documents relating to any "payments to [Montgomery] for any purpose whatsoever by Edra Blixeth, OpSpring, AziMyth, Inc., Michael Sandoval, or Atiego, Inc., between July 2005 and the present";

      xxi.    Request No. 25 for "every contract of every kind whatsoever" between Montgomery and Edra Blixeth, OpSpring, AziMyth, Inc., Michael Sandoval, or Atiego, Inc.;

      xxii.    Request No. 26 and 27 for all documents memorializing any communications between Montgomery, or anyone acting on his behalf, and between Montgomery and Edra Blixeth, OpSpring, AziMyth, Inc., Michael Sandoval, or Atiego, Inc., or any customer or prospective customer of OpSpring, Inc. or AziMyth.

0039641/001/ 380937v04

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The major disputed issues regarding eTreppid's requests for production revolve around eTreppid's attempt, under the guise of discovery, to obtain from Dennis Montgomery source code that eTreppid never had and was unable to get by way of the preliminary injunction entered in February 2006, or eTreppid's motions seeking to modify the preliminary injunction. The other disputed issues concern eTreppid's unreasonable and burdensome demands for a re-creation of CD No.1, and its harassing and burdensome requests for information that is either completely irrelevant or only tangentially relevant, but invasive or Montgomery's privacy rights and proprietary business relationships, including eTreppid's requests seeking production of all of the various items that the FBI seized and/or returned to Montgomery during what was essentially an illegal search and seizure.

Accordingly, the Montgomery Parties stand by their asserted objections and respectfully submit that the Court should deny any attempt by eTreppid to compel a further production in connection with the requests at issue beyond what the Montgomery Parties have agreed to produce.

## II. ETREPPID ATTEMPTS TO FORCE MONTGOMERY TO RE-CREATE "CD NO. 1" FOR FREE: RFP1 REQUEST NO. 22 AND RFP 2 REQUEST NO. 4

eTreppid's Request No. 22 in RFP1, which is repeated *verbatim* as Request No. 4 in RFP2, calls for production of the software transferred to eTreppid under the 1998 Contribution Agreement "including, but not limited to: all source code – whether in printed or executable form – executable files, shop notes, laboratory notes, and any other memoranda." [Exh. B (RFP1).] The Montgomery Parties agreed to produce the relevant and non-privileged documents in their possession, custody, or control, which are sufficient to describe the compression technology transferred under the Contribution Agreement, but otherwise objected to this request for good reason. [Exh. C (Supplemental Response to RFP1).] What eTreppid really wants is "the source code and executable files" that were on CD No. 1. [Exh. H (Snyder letter dated Feb. 4, 2008, p. 4).] eTreppid contends that the request is "clearly relevant to Montgomery's assertion that the

1

developed the pattern recognition software prior to, and independent of, his work at eTreppid." [*Id.*] eTreppid's position is a convoluted stretch, to say the least.

First, eTreppid's demand for the actual source code and executable files contained on CD No. 1 is completely irrelevant, because the compression technology that Montgomery transferred to eTreppid on CD No. 1 under the 1998 Contribution Agreement is not at issue in this case. There is no dispute that eTreppid owns that technology. When asked, during the preliminary injunction hearing in February 2006, if there was any doubt in his mind whether eTreppid got and used "the compression technology that was on CD No. 1," Trepp testified: "Yes." "If there was a CD 1, I believe we got what we bargained for." [P.I. Hearing Transcript Vol 2. 67.] The Contribution Agreement, which Trepp had prepared, describes the scope of what was transferred under that agreement. [Exh. G (Contribution Agreement).] eTreppid has that document in its possession, and nothing more should be required.

Second, the duplicative requests are overly broad and, consequently, unduly burdensome, and they constitute an attempt to impose on Montgomery an obligation which well exceeds any obligation he has under the Federal Rules of Civil Procedure. CD No. 1 was created nearly ten years ago! According to the Contribution Agreement that Trepp had drawn up, CD No. 1 contained a wealth of Montgomery's knowledge in the filed of software compression technology as of that September 1998. [Exh. G, ¶ 1.2.] There is simply no rational basis for eTreppid's insistence that Montgomery should go back and re-create, *for free* ten years later, a contribution that Trepp valued at $1.3 million ten years ago.

### III. ETREPPID'S SEEKS THROUGH DISCOVERY A TURNOVER OF SOURCE CODE AND EXECUTABLE FILES CREATED BY MONTGOMERY, WHICH BOTH THE STATE COURT AND THIS COURT DECLINED TO ORDER: RFP 1 REQUEST NOS. 3, 4, 6, 8, 9, 16, 18, 19 & 20 AND RFP2 REQUEST NOS. 1, 2 & 3

Through multiple requests, eTreppid seeks a turnover of all source code and executable files that Montgomery has *ever* created "in the fields of data compression, pattern recognition, object tracking, or anomaly detection (including, but not limited to: all or any part of a software program or algorithm)." [Exh. B (RFP1) & D (RFP2).] Montgomery has refused to produce the source

2

code and other software primarily on the grounds that the requests are unnecessarily invasive of Montgomery's right to maintain and protect his trade secrets, vague, ambiguous, overbroad, and unduly burdensome in light of the volume of responsive files and the associated cost. [Exh. C (Supplemental Response to RFP1) & Exh. E (Response to RFP2).] One could expect literally millions of files of code to be responsive to eTreppid's requests. The time and cost to gather and produce forensic copies of that kind of volume is staggering, and forensic copies would indeed be required to preserve the original files. Those issues aside, eTreppid simply is not entitled to the discovery it seeks.

### A. eTreppid Is Apparently Incapable of Distinguishing Its Allegedly "Misappropriated Source Code" From Montgomery's Source Code

eTreppid purportedly commenced this action to recover source code it claims was misappropriated by Montgomery in January 2006. However, testimony from eTreppid's own witnesses confirms that eTreppid never actually had access to any source code created by Montgomery other than whatever Montgomery transferred to the company on "CD No. 1" under the 1998 Contribution Agreement. The *only* technology transferred to eTreppid by Montgomery under that agreement was the compression technology on CD No. 1. According to Warren Trepp, Montgomery "kept the source code under his wing in his private cubbyhole, not on a source server." [Exh. A (P.I. Hearing Transcript Vol. 2, p. 98-99).] eTreppid programmer Sloan Venables, who supposedly discovered that Montgomery had deleted the source code and who worked on recovery efforts, testified at the preliminary injunction hearing that because he was never given access to source codes for object tracking or pattern recognition: "I don't know if they were ever there. I wouldn't know. I don't know what the actual programs were called." [P.I. Hearing Transcript Vol. 1, p. 119-120.]

Consistent with Trepp's and Venable's testimony, eTreppid has been shown itself to be completely incapable of identifying the allegedly misappropriated source code in any meaningful and particularly way. Montgomery propounded the following interrogatory to eTreppid on November 16, 2007:

> To the best of YOUR ability, as of the date of YOUR response, identify with particularity and precision each eTreppid Technologies,

3

> LLC trade secret which you allege was misappropriated by Dennis Montgomery (hereinafter the "TRADE SECRET SOURCE CODE"), including its constitutive elements, capability, technical specifications, computer language (as applicable), date of creation, and the names of the individual creators.

eTreppid's very best eTreppid to date was to state that:

> eTreppid claims as a trade secret all software source code, object code, algorithms, formulae, or know-how in the fields of digital compression products, including but no limited to data compression, pattern recognition, object tracking, film colorization, or anomaly detection which was used in fulfilling any contractual obligations eTreppid owed to any third party, and which was either (1) transferred to eTreppid by Montgomery or any other individual, (2) a modification or outgrowth of any technology transferred to eTreppid by Montgomery or any other individual, or (3) conceived, developed created, or modified by Montgomery or any other eTreppid employee between September 1998 and January 2006. This definition includes the FOOS software and algorithms, as well as any and all software used in fulfilling any Contracts with the United States Government and agencies thereof, as well as commercial customers, as well as any modification, upgrades, or advancements to such software.

[Exh. I (eTreppid Response to Second Set of Interrogatories, Amended Interrogatory No. 1).]

eTreppid's so-called definition of the allegedly misappropriated source code is vague and ambiguous to say the least.

It is well-settled that a plaintiff seeking relief for misappropriation of trade secrets should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons skilled in the trade. See, e.g., *IMAX Corp. v. Cinema Technologies, Inc.*, 152 F.3d 1161, 1164-65 (9th Cir. 1998). eTreppid has not met its burden of identification in this case, and thus should not be permitted to use discovery as a fishing expedition and an opportunity to latch onto Montgomery's technology. As previously stated during the November case management hearing in this action, that would be tantamount to eTreppid claiming that money was stolen and then asking to see Montgomery's bank account before identifying the amount of money allegedly taken.

**B.   <u>Montgomery Is Entitled To Protect His Technology From Disclosure</u>**

Specifically with respect to Request Nos. 3, 4, and 6 in RFP1, eTreppid contends that Montgomery should produce the full text of the source code that was copyrighted but not deposited with the Copyright Office, along with the full text of any derivative works so that eTreppid can

4

compare the source codes. The premise is unreasonable because eTreppid never had access to the source code to begin with and thus could not possibly know what comparisons to make. Moreover, Montgomery can maintain as trade secrets those parts of his source code which were not made publicly available as part of the material deposited with the Copyright Office. NRS 600A.030.[1]

NRS 600A.070, entitled "Preservation of secrecy," provides for the preservation of the secrecy of an alleged trade secret by reasonable means, which may include, *inter alia*, without limitation, protective orders in connection with discovery proceedings and determining the need for any information related to the trade secret before allowing discovery. Under the circumstances of this case, ***there is no "need" for disclosure*** of Montgomery's source code and executable files to eTreppid. eTreppid's counsel, Steven Peek, represented to this Court that:

> we should be able to inspect with forensic experts, "attorneys eyes only," using what ***we have in the form of outputs*** that we've used in the performance of our contracts with the United States government ***that are not covered by the State Secrets Privilege***, we would be able to compare those, too, to show that the technology that is on the hard drives and on the material that Mr. Montgomery stole from us, was used to perform these outputs.

[Exh. F (November 15, 2007, Hearing Transcript, p. 18).] Putting aside the question of whether the premise of matching output with source code is even technically feasible, eTreppid apparently has no such output data. To the contrary, eTreppid's counsel Jerry Snyder indicated that the output data was merely hypothetical. [Chisolm Decl., ¶ 7.]

The output data described by Mr. Peek would have been responsive to several of Montgomery's requests for production from eTreppid, including: request no. 2 (based on eTreppid's interrogatory responses that the technology at issue was transferred under the Contribution Agreement), request no. 58 (for documents concerning eTreppid's alleged ownership

---

[1] NRS 600A.030 defines "Trade secret" to mean:

> information, including, without limitation, a formula, pattern, compilation, program, device, method, technique, product, system, process, design, prototype, procedure, computer programming instruction or code that:
> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by the public or any other persons who can obtain commercial or economic value from its disclosure or use; and
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

5

of trade secrets or technology disputed in this case), and especially request nos. 62 and 68 (for documents upon which eTreppid relies to define and/or identify the misappropriated trade secrets and/or to establish its ownership of the TRADE SECRET SOURCE CODE). [Exh. J and K.] According to Mr. Peek, eTreppid has output data that does not fall under the state secrets privilege and thus is not subject to the United States Protective Order. Accordingly, this output data should have been produced without delay. However, *no such output data has been produced*, despite demands as recently as January 31, 2008. [Chisolm Decl., ¶ 7.]

### C. eTreppid Should Not Be Permitted To Use Discovery To Alter The Status Quo Regarding Possession Of Montgomery's Technology

The state court declined to order Montgomery to turnover any source code or software files. Similarly, District Court Judge Pro denied eTreppid's motion to modify the preliminary injunction, wherein eTreppid tried to alter the status quo and gain custody of various hard drives and storage media that eTreppid claimed contained so-called "eTreppid Source Code." Particularly in light of eTreppid's failure and complete inability to even describe the allegedly misappropriated trade secrets with any reasonable degree of particularity, this Court should not allow eTreppid to use discovery to effect a change the status quo that essentially amounts to the ultimate relief that eTreppid seeks in this action – possession of Montgomery's pattern recognition, object tracking, and anomaly detection technology.

## IV. ETREPPID SEEKS IRRELEVANT DISCOVERY OF MONTGOMERY'S FORMER BUSINESS RELATIONSHIPS: RFP1 REQUEST NOS. 24, 25, 26, 27 AND 28

By Request Nos. 24, 25, 26, 27, and 28 eTreppid's seeks all documents relating to Montgomery's relationship, "business or otherwise," with Computermate, Inc., Barrett Laboratories, Inc., 3Net Systems, Inc., Alternative Technology Resources, Inc., and National Healthcare Exchange Services, Inc. On its face, the request is overbroad in temporal scope and subject matter, unduly burdensome, and seeks information that is completely irrelevant to the issues in this action. These requests literally call for every single document generated in the course of Montgomery's former business relationships, including – one must presume – the actual technology developed.

6

0039641/001/ 380937v04

1    eTreppid contends the information concerning the entire scope and span of any relationship Montgomery had with these third party entities is somehow necessary to demonstrate the commercial applications for the copyrighted software, and whether Montgomery legitimately obtained an interest in the copyrights. [Exh. H (Snyder letter of Feb. 4, 2008, p. 4).] eTreppid also asserts, without basis, that these third party entities are the "record owners of the copyrights at issue." [*Id.*] Discovery relating to the copyright assignments to Montgomery from these entities is the only reasonable portion of what is sought in these requests. However, Montgomery has already produced the copyright registrations, copies of the source code deposited with the copyright office in connection with the registrations, and copies of the assignments transferring ownership of the copyrights to Montgomery. Nothing further is warranted.

## V. MONTGOMERY'S POST-ETREPPID BUSINESS RELATIONSHIPS AND TECHNOLOGY DEVELOPMENTS: RFP1 REQUEST NOS. 30 & 31 AND RFP2 REQUEST NOS. 24, 25, 26 & 27

eTreppid also seeks discovery of all documents reflecting Montgomery's business relationships and technology developments since Montgomery ceased working at eTreppid. To justify its requests, eTreppid contends that Montgomery is marketing eTreppid technology and essentially violating the Preliminary Injunction Order, which begs the question. This, again, is a ploy to obtain from Montgomery technology that eTreppid does not have, never had, and is not entitled to have.

In addition, eTreppid seeks discovery of: (i) documents relating to any "payments to [Montgomery] for any purpose whatsoever by Edra Blixeth, OpSpring, AziMyth, Inc., Michael Sandoval, or Atiego, Inc., between July 2005 and the present"; (ii) "every contract of every kind whatsoever" between Montgomery and Edra Blixeth, OpSpring, AziMyth, Inc., Michael Sandoval, or Atiego, Inc.; (iii) and all documents memorializing any communications between Montgomery, or anyone acting on his behalf, and between Montgomery and Edra Blixeth, OpSpring, AziMyth, Inc., Michael Sandoval, or Atiego, Inc., or any customer or prospective customer of OpSpring, Inc. or AziMyth. [Exhs. B & D.] These requests are invasive of Montgomery's and the other parties' proprietary business concerns and trade secrets. There must be more than mere conjecture on the

0039641/001/ 380937v04

part of eTreppid to support such a wholesale invasion of Montgomery's business dealings two years after his departure from eTreppid. Montgomery's skill and knowledge of a particular business and technology is his means of earning a living. He came to eTreppid with that skill and knowledge, and left. eTreppid's attempt to brand everything Montgomery knows and does as eTreppid trade secrets is not a credible basis for allowing the broad invasive discovery sought.

VI. **THE ITEMS THAT THE FBI SEIZED FROM AND/OR RETURNED TO MONTGOMERY; RFP2 REQUEST NOS. 6 & 7**

By RFP2 Request Nos. 6 and 7, eTreppid seeks inspection or forensic copies of any "original or copied electronic device, including any hard drive or disk . . . that was seized by the [FBI] and returned to [Montgomery] pursuant to File No. 295A-LV-39.368", as well as inspection by Jonathan Karchmer or production of forensic copies of "all documents and electronically stored information, including but not limited to all source code contained on all computer hard drives seized by the FBI and returned to [Montgomery] pursuant to File No. 295A-LV-39.368." [Exh. D.]

Clearly eTreppid is attempting to exploit the FBI's illegal search and seizure of property from Montgomery's home and storage units, without regard for whether such items were personal to Montgomery or not. The mere fact that items were seized and/or returned by the FBI does not make all such electronic media subject to eTreppid's inspection. Montgomery justifiably asserted objections on various grounds, including relevance and privacy. [Exh. D.] With respect to Request No. 7, where eTreppid identified drives by serial numbers using the data obtained from the FBI seizure inventory lists, Montgomery agreed to allow inspection of a forensic copy of those drives for which eTreppid could demonstrate ownership. [Exh. E.] That is the only reasonable resolution of this request. There is simply no basis for allowing eTreppid to fish around amongst the numerous hard drives and electronic storage media in Montgomery's possession, solely on the basis that the FBI improperly seized it. What does the FBI's unlawful seizure in violation of Montgomery's 4th amendment rights have to do with discovery in this action. It is a *non-sequitor*.

8

## VII. MISCELLANEOUS REQUESTS IN DISPUTE

### A. Montgomery's Health Insurance Documents: RFP1 Request No. 10

RFP1 Request No. 10 seeks all documents relating to Montgomery's health insurance for from 1998 through 2005. Montgomery responded that "the relevant non-privileged documents sufficient to demonstrate that Dennis Montgomery obtained health insurance through eTreppid at his own cost are the K-1's issued to Mr. Montgomery by eTreppid, some of which have been produced in this action," but otherwise objected on various grounds, including relevance and rights of privacy. [Exh. C.] According to eTreppid's counsel, the request goes to whether Montgomery purchased his own insurance. Thus, the K-1's are sufficient and no further response is warranted.

### B. Montgomery's Tax Returns For 1998 Through 2005: RFP1 Request No. 11

eTreppid contends that discovery of Montgomery's tax returns is relevant to issues such as Montgomery's compensation, what he believe his employment status to be, and whether he was deriving income from any other endeavors. [Exh. H, pp. 2-3.] Montgomery's compensation is not at issue in this action, nor is his income. Montgomery contends that eTreppid has failed to compensate him for use of his software that was not transferred under the Contribution Agreement. That compensation has nothing to do with the amounts of the guaranteed payments Montgomery received as a member of eTreppid.

Where "there simply is no fact of consequence . . . which would be made more probable if [a party's] confidential information were disclosed to the [opposing party] than if it were not," the information is deemed not reasonably calculated to lead to the discovery of admissible evidence. *Eagle Industries, Inc. v. Ransburg Corp.*, 124 F.R.D. 197, 199 (S.D. Ind. 1989). There are far less intrusive means of determining Montgomery's compensation, income, and employment status than the wholesale disclosure of his confidential tax returns. Documents that are only "marginally relevant" to the litigation should be subject to a Rule 26 protective order when their disclosure "would cause unnecessary breaches of privacy and confidentiality, resulting in annoyance . . ." *Laxalt v. McClatchy*, 116 F.R.D. 455, 458 (D. Nev. 1986). Similarly, Montgomery's income from other sources is not relevant nor are his tax returns the least intrusive means of determining whether

9

1 Montgomery was purportedly competing against eTreppid in breach of the eTreppid Operating
2 Agreements.

### C. Loans Made to Montgomery By Trepp Or Entities Owned By Trepp: RFP1 Request Nos. 13 & 14

eTreppid contends that any loans made to Montgomery by Trepp or Trepp-controlled entities are relevant "to show the degree to which Montgomery used his interest in eTreppid to secure loans" and that somehow "directly relates" to Montgomery's claim that he was not paid sufficiently to compensate him for use of his software. [Exh. H, p. 3.] eTreppid's "rationale" does not hold water.  eTreppid has repeatedly claimed in this action, most notably in opposition to Montgomery's motion to consolidate the Friendly Capital case, that any such loans – such as from Friendly Capital – are completely irrelevant to this trade secret litigation.  Whether and how Montgomery leveraged his membership interests in eTreppid obviously has no bearing on whether eTreppid paid Montgomery for use of software that was not transferred to eTreppid under the Contribution Agreement.  Moreover, Trepp already has these documents in his custody, possession and control.

### D. Emails Sent or Received By Trepp, Frye, Or Any Other Person At eTreppid: RFP2 Request No. 20

eTreppid seeks all emails sent or received by Warren Trepp, Doug Frye, or any other manager, member, or employee of eTreppid, in their native format, for an unspecified time frame. The volume of files responsive to this request makes it unduly burdensome on its face.  Further, Moreover, already has these documents in his custody, possession and control.

### E. Communications Regarding the Grand Jury Proceedings and FBI Investigation re Trepp and Jim Gibbons; RFP2 Request Nos. 22 & 23

eTreppid also seeks documents regarding Montgomery's communications with the media regarding the FBI's investigation of Jim Gibbons and Warren Trepp. However, as eTreppid has acknowledged that investigation has nothing to do with the issues in this action and eTreppid already has public access to any statements attributed to Montgomery by the media.  More specifically, defendants have previously acknowledged that the email they complain about is "not

10

1  pertinent to the issues in this case." See Defendants eTreppid Technologies, L.L.C. and Warren
2  Trepp's Notice of Objection to the Public Filing of a Fabricated Document by Dennis Montgomery
3  filed June 22, 2007, at 2.

6  Dated: February 15, 2008           Respectfully submitted,

                                      LINER YANKELEVITZ
                                      SUNSHINE & REGENSTREIF LLP

                                      By: _____
                                      Deborah A. Klar
                                      Tuneen E. Chisolm
                                      Attorneys for Plaintiffs
                                      DENNIS MONTGOMERY and the
                                      MONTGOMERY FAMILY TRUST

## DECLARATION OF TUNEEN E. CHISOLM

I, Tuneen E. Chisolm, declare as follows:

1. I am an attorney at law duly licensed to practice before this Court. I am senior counsel the law firm of Liner Yankelevitz Sunshine & Regenstreif LLP, counsel of record for Dennis Montgomery and the Montgomery Family Trust in this action. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2. Attached hereto as **Exhibit A** is a true and correct copy of the relevant portions of the Transcript from the Preliminary Injunction Hearing held February 7, 2006.

3. Attached hereto as **Exhibit B** is a true and correct copy of eTreppid's first set of requests for production of documents ("RFP1").

4. Attached hereto as **Exhibit C** is a true and correct copy of the Montgomery Parties' supplemental response to RFP1.

5. Attached hereto as **Exhibit D** is a true and correct copy of eTreppid's second set of requests for production of documents ("RFP2").

6. Attached hereto as **Exhibit E** is a true and correct copy of the Montgomery Parties' response to RFP2.

7. Attached hereto as **Exhibit F** is a true and correct copy of the relevant portions of the transcript from the November 15, 2007 discovery status conference hearing in this action. On January 31, 2008, during a telephonic meet and confer with J. Snyder, I asked Mr. Snyder where the "output" was that Stephen Peek has referenced at November discovery status conference. Mr. Snyder indicated that he thought the referenced output was just a hypothetical. I provided the hearing transcript citation and direct quote to Mr. Snyder showing that Mr. Peek had represented to the Court that eTreppid in fact had output date that it intended to use to somehow identify the source code at issue in this case. However, eTreppid has not produced any such output to date and Mr. Snyder has not responded to my follow-up inquiry.

8.

0039641/001/ 380937v04

1  9. Attached hereto as **Exhibit G** is a true and correct copy of the "Contribution Agreement" dated effected September 28, 1998, as produced by eTreppid as "Exhibit 3" during the preliminary injunction hearing.

4  10. Attached hereto as **Exhibit H** is a true and correct copy of a letter from eTreppid's counsel Jerry Snyder to the undersigned, dated February 4, 2008.

6  11. Attached hereto as **Exhibit I** is a true and correct copy of the relevant portions of eTreppid's response to second set of interrogatories.

8  12. Attached hereto as **Exhibit J** is a true and correct copy of the relevant portions of eTreppid's response to Montgomery's first set of requests for document production.

10  13. Attached hereto as **Exhibit K** is a true and correct copy of the relevant portions of eTreppid's response to Montgomery's second set of requests for document production.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this __15__ day of February, 2008, at Los Angeles, California.

_____
Tuneen E. Chisolm

13

| | |
|---|---|
| | **CERTIFICATE OF SERVICE** |

Pursuant to NRCP 5(b), I certify that I am an employee of the LAW OFFICES OF LINER YANKELEVITZ SUNSHINE & REGENSTREIF LLP, and that on **February 15, 2008**, I caused to be served the within document described as **THE MONTGOMERY PARTIES' BRIEF RE DISPUTES RE eTREPPID'S REQUESTS FOR PRODUCTION OF DOCUMENTS PER MAGISTRATE JUDGE COOKE'S ORDER FILED JANUARY 23, 2008; DECLARATION OF TUNEEN E. CHISOLM** on the interested parties in this action as stated below:

| | |
|---|---|
| J. Stephen Peek, Esq.<br>Jerry M. Snyder, Esq.<br>Hale Lane Peek Dennison and Howard<br>5441 Kietzke Lane<br>SecondFloor<br>Reno, Nevada 89511<br>(775) 327-3000; 786-6179 - FAX<br>speek@halelane.com; jsnyder@halelane.com<br>Attorneys for Etreppid and Warren Trepp | Carlotta P. Wells, Sr. Trial Counsel<br>U.S. Dept. of Justice<br>Fed. Programs Branch<br>Civil Division<br>Room 7150<br>20 Massachusetts Avenue, NW<br>Post Office Box 883<br>Washington, D.C. 20044<br>(202) 514-4522; 616-8470 - FAX<br>E-mail: Carlotta.wells@usdoj.gov<br>Attorneys for Department of Defense |
| Reid H. Weingarten, Esq.<br>Brian M. Heberlig, Esq.<br>Robert A. Ayers, Esq,<br>Steptoe & Johnson, LLP<br>1330 Connecticut Avenue, N.W.<br>Washington, D.C. 20036-1795<br>(202) 429-3000; (202) 429-3902 - FAX<br>rweingarten@steptoe.com;<br>bhaberlig@steptoe.com; rayers@steptoe.com<br>Attorneys for eTreppid and Warren Trepp | Ralph O. Gomez, Esq., Sr. Trial Counsel<br>U.S. Dept. of Justice, Fed. Programs Branch<br>Civil Division, Room 6144<br>20 Massachusetts Avenue, NW<br>Post Office Box 883<br>Washington, D.C. 20044<br>(202) 514-1318; 616-8470 - FAX<br>E-mail: raphael.gomez@usdoj.gov<br>Attorneys for Department of Defense |
| Greg Addington, AUSA<br>U.S. DEPARTMENT OF JUSTICE<br>100 W. Liberty Street. Suite 600<br>Reno, Nevada 89501<br>E-mail: Greg.addington@usdoj.gov<br>(775) 784-5181 - FAX<br>Attorneys for Department of Defense | |

☒ **[ELECTRONIC]** By filing the document(s) electronically with the U.S. District Court and therefore the court's computer system has electronically delivered a copy of the foregoing document(s) to the persons listed above at their respective email address.

☒ **[Federal]** I declare that I am employed in the offices of a member of the State Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

PROOF OF SERVICE

0039641/001/ 371787v01

1      I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

2

Executed on February 15, 2008, at Los Angeles, California

3

4        Criss A. Draper                                   /s/ Criss A. Draper

5      (Type or print name)                                  (Signature)

PROOF OF SERVICE

0039641/001/371787v01