1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

DENNIS MONTGOMERY, et al.,       )       3:06-CV-0056-PMP (VPC)
                                 )
            Plaintiffs,          )
                                 )       **ORDER REGARDING ENFORCEMENT**
      vs.                        )       **OF U.S. PROTECTIVE ORDER**
                                 )
ETREPPID TECHNOLOGIES, LLC., et al., )
                                 )
            Defendants.          )
_____)

Before the court is the motion of the United States, an interested party, for enforcement of the United States Protective Order ("U.S. protective order") (#350). The parties and former counsel for the plaintiffs ("Montgomery parties"), Michael Flynn, responded as follows: #s 357, 358, 359, 381/382, 384, 389, & 390. On January 23, 2008, the court heard oral argument and took the matter under submission. Having reviewed the papers on file herein and the arguments at the hearing, the court grants the motion of the United States as more fully discussed below.

**I.      Historical Background**

In considering this motion, it is necessary to review the history of this action, the related search warrant proceeding, and the events which precipitated the issuance of the underlying U.S. Protective Order. Originally, the defendants, ("eTreppid parties") brought suit in Nevada state district court against the Montgomery parties in the case known as Case No. 06-145 (Case No. 06-145, #1). The Montgomery parties answered and counterclaimed against the eTreppid parties and the United States Department of Defense ("United States"), and then removed that action to this court. The Montgomery parties also filed their own action in this court against the eTreppid parties

and the United States, which known as Case No. 06-56 (Case No. 06-56, #s 1 & 7).  These cases were ultimately consolidated in March 2007 in Case No. 06-56 (#123).

In September 2006, the United States filed its motion for protective order pursuant to the military and state secrets privilege (#83), which was supported by the declaration of John Negroponte, Director of National Intelligence. *Id.*, Ex. 1.  The United States brought the motion pursuant to Fed.R.Civ.P. 26(c) to prevent disclosure of certain information it deemed protected by the military and state secrets privilege (#83).  Attached to the United States' motion was the proposed U.S. protective order.  *Id.,* Ex. 4.  Notably, the court had not yet decided the motions pending in the companion search warrant proceeding, which was sealed. In light of the United States' assertion of the military and state secrets privilege and the pending search warrant proceeding, this court stayed all further discovery in the civil cases on September 26, 2006 (#84). Thus, United States' motion for protective order was not issued until August 2007, nearly one year later (#253).

### A.      The Search Warrant Proceeding

In February 2006, this court issued search warrants for the residence and rented warehouse units of Dennis Montgomery based upon a finding that there was probable cause to believe that Mr. Montgomery may have violated 18 U.S.C. § 1832, Theft of Trade Secrets, and 18 U.S.C. § 793(e), Unlawful Retention of National Defense Information (Case No. 3:06-CV-0263-PMP (VPC) "Search Warrant").  Those premises were search, and federal authorities seized property.  Shortly thereafter, Mr. Montgomery filed a motion to unseal the search warrant affidavit and for a return of the seized property pursuant to Fed.R.Crim.P. 41(g).  After extensive briefing and an evidentiary hearing, this court issued its order in November 2006, granting the relief requested (Search Warrant #86). In March 2007, the District Court affirmed that order (Search Warrant #122).

Since the pending search warrant proceeding was inextricably tied to the two civil actions, it was not until March 2007 that the District Court was able to take up the many pending motions in the civil cases. Initially, the District Court issued an order unsealing the search warrant file, and the Court established a protocol by which the United States and the parties in the civil proceeding would

1  review the documents prior Clerk of Court's unsealing of the search warrant file to the public

2  (#125).  Thereafter, the United States filed an emergency motion to modify that order on the ground

3  that it first needed to review the file to insure that information subject to the military and state

4  secrets privilege would be redacted (#133).  The District Court granted this motion and directed

5  government counsel to travel to Las Vegas to review the search warrant file in the District Court's

6  chambers, after which Judge Philip Pro would meet privately with counsel for the United States and

7  authorized government representatives to discuss recommended redactions (#143). Thereafter, the

8  District Court would determine the disposition and storage of redacted documents. *Id.*  It was not

9  until September 17, 2007, five months later, that the District Court issued its order unsealing the

10  search warrant case file (Search Warrant #131).[1]

11  **B.      The U.S. Protective Orders (#s 252 & 253)**

12  In June 2007, the District Court held a hearing to consider several of the pending motions

13  in the consolidated civil case, including the United States' motion for protective order (#188).  It

14  was agreed that counsel would provide the Court with a revised proposed protective order, and that

15  proposed protective order was thereafter submitted (#196).  On August 29, 2007, the District Court

16  issued two orders concerning the U.S. protective order.  In its first order, the District Court noted

17  that it had met with United States' counsel and government officials authorized to assert the miliary

18  and state secrets privilege "in these related [civil] actions as well as with counsel in the related

19  Search Warrant case," which included a review of all pleadings, motions, documents and exhibits, to

20  identify and redact those items subject to the military and state secrets privilege (#252).  In granting

21  the motion the Court stated:

22      [T]he United States seeks a protective order pursuant to Federal Rule
        of Civil Procedure 26(c) to prevent the disclosure of information
23      relating to (1) the existence or non-existence of any actual or proposed
        relationship or agreement, connection, contract, transaction,
24      communication or meeting of any kind between an intelligence agency
        as defined in 50 U.S.C. § 401(a)(4), which includes intelligence
25      elements of the military services; and (2) any actual or proposed

26  _____

27      [1]One document in the search warrant file remained sealed until the District Court issued a
    separate order to unseal docket # 70 (Search Warrant #133).

28                                              3

> interest in, application, or use by any intelligence agency, or any current or former official, employee, or representative thereof, of any technology, software, or source code owned or claimed by individuals or entities associated with these lawsuits.

(#252).  The District Court further noted based on its review of a classified declaration *in camera* and *ex parte*, the United States demonstrated that "disclosure of information at issue in this litigation subject to the proposed protective order could be expected to cause serious, and in some cases exceptionally grave damage to national security."  *Id.*

On that same date, the District Court signed the revised U.S. protective order to protect information subject to the military and state secrets privilege in this consolidated civil proceeding (#253).  That order provides that certain information that may be disclosed in this action is subject to the military and state secrets privilege and provides, "Such information shall not be subject to *discovery or disclosure* by any of the Parties during all proceedings in these actions and shall be excluded from evidence at trial."  *Id.* (emphasis supplied). The U.S. protective order outlines with specificity which areas of inquiry are prohibited, which are not prohibited, and also establishes a protocol for the United States' continued oversight of discovery and court proceedings to prevent disclosure of information subject to the military and state secrets privilege. *Id.*

### C.  Counsel for the Montgomery Parties' Motion to Withdraw (#204)

During the pendency of the matters described above, Michael Flynn and Carla DiMare, counsel for the Montgomery parties in the consolidated civil proceeding and the search warrant proceeding, moved to withdraw as counsel (#s 204-206) ("Flynn motion to withdraw").  The United States took no position on the merits of the motion to withdraw, but it asked the court to condition withdrawal as follows:

> 1.  All counsel (*i.e.,* Michael J. Flynn, Carla DiMare, Ronald J. Logar, and Eric A. Pulver) have complied with their obligations to protect information subject to the military and state secrets privilege as upheld by this Court in the instant action;
>
> 2.  All counsel certify that they have not transmitted any information covered by the military and state secrets privilege to new counsel for Dennis Montgomery or to any other person;

4

3.    All counsel have either produced to the United States or, after consultation with the United States Department of Justice Security and Emergency Planning Staff (SEPS), certified that they have properly destroyed all information , either in hard copy or electronic format, in their possession that is protected by the military and state secrets privilege; and,

4.    The United States either has confirmed that all counsel for Montgomery have produced such documents to the United States or determined that counsel for Montgomery's certification that information protected by the military and state secrets privilege in any documents in either hard or electronic format in counsel for Montgomery's possession has been destroyed is sufficiently detailed.

(#209).  On August 14, 2007, new counsel for the Montgomery parties ("Ms. Klar") filed a notice of appearance of counsel (#236), and on August 17, 2007, the District Court held a hearing to consider the Flynn motion to withdraw (#247; *see also* August 17, 2007 Transcript of Hearing) (#267)).  At issue was whether and how the United States could review documents in the possession of Mr. Flynn and Ms. DiMare.  Mr. Flynn and Ms. DiMare sought a retaining lien on the files because the Montgomery parties refused to pay outstanding fees and costs.  August 17, 2007 Transcript at 10-11.  Although Ms. Klar could obtain the files if the Montgomery parties posted a bond for the amount of the outstanding attorney's fees, the Montgomery parties declined to do so and were instead pursuing other relief in a California court. *Id.* at 12.  As an alternative, Ms. Klar proposed that the District Court appoint a special master to review the client files to protect the attorney-client privilege and to determine which documents might be subject to the military and state secrets privilege. *Id.* at 16.  The District Court rejected that proposal, since it is the United States who holds the state secrets privilege. *Id.* at 16.  In response, Mr.Klar asked the Court to allow briefing concerning whether the state secrets privilege trumps the attorney-client privilege in this circumstance. *Id.* at. 24.  Having heard further arguments of counsel, the District Court took the motion under advisement. *Id.* at 42.

On September 4, 2007, this District Court granted the Flynn and DiMare motion to withdraw, subject to conditions one and two as set forth in the United States' response (#256).  However, the District Court rejected conditions three and four "as conditions to the withdrawal" of

5

Flynn and DiMare and further ordered that under Nevada law, Mr. Flynn and Ms. DiMare had a retaining lien and were not required to surrender their files to new counsel of record. *Id.*

Subsequent to this hearing, the court determined that it had ancillary jurisdiction to adjudicate the motion for attorney's fees and the fee dispute, as opposed to a California Superior Court, and established a briefing schedule (#296). That matter is under submission, and the Montgomery parties have not posted a bond to release their client files to their new counsel; therefore, the client files still remain in the possession of former counsel.

### D. The United States' Motion for Enforcement of U.S. Protective Order (#350)

It is in this historical context that the United States filed its motion to enforce the U.S. protective order with respect to the client files in the possession of the Montgomery parties' former counsel in order to protect information covered by that order (#350). The United States identified three categories of documents which may contain information protected by the military and state secrets privilege:

1. Originals or copies of documents filed in the consolidated civil cases or in the criminal search warrant case containing military and state secrets information, which has been redacted by order of the District Court;

2. Correspondence or emails either directed to opposing counsel, non-parties, or other persons that contain military and state secrets information protected by the August 29 U.S. protective order, including memorialization of any oral communication to or from opposing counsel, non-parties or other persons that references or contains information protected by the August 29 U.S. protective order; and

3. Attorney-client communications, including

   (a) drafts of documents that have been filed in the consolidated cases or in the criminal search warrant case containing military and state secrets information, which have been redacted by order of the District Court;

   (b) any correspondence or e-mails to either the Montgomery clients or Montgomery co-counsel that were not also send to opposing counsel, non-parties or other persons that contain military and state secrets

6

information protected by the August 29 U.S. protective order; and

(c) any memoranda or other document prepared in the consolidated civil cases or criminal search warrant case and not filed or not also disseminated to opposing counsel, non-parties or other persons that reference or contain such information protected by the August 29 U.S. protective order.

*Id.* at pages 3-4.

The United States also proposed the following procedures for review of the documents:

1. A U.S. government employee or employees with the appropriate security clearances and authorizations would first review the Montgomery client files in former counsel's possession for the purpose of identifying and segregating all documents that fall within the three categories above.

2. The U.S. government employee or employees then would redact military and state secret information protected by the August 29 U.S. protective order from such documents.

3. The U.S. employee or employees would not disclose the content of information from any attorney-client privileged documents identified above either to government counsel in the consolidated cases or criminal search warrant case or to any other government officials working on or otherwise connected with such cases.

4. An appropriate inventory would be prepared.

5. Redacted copies of the documents would be returned to the Montgomery client files.

6. The unredacted originals and one copy of the redacted documents would be stored by the U.S. Department of Justice Security Offices until ninety days after the date on which a resolution on the fee issues is reached or a final order is issued, and any appeal therefrom has been exhausted relating to the transfer of files from former counsel to current counsel.

7. Upon completion of the 90-day period, the unredacted originals and copies would be destroyed, unless either of the following conditions applies: (a) before resolution or transfer of files issue, both current and former counsel notify the U.S. government in writing that it is not necessary to retain the originals and copies referred to in this paragraph; or (b) after resolution of the transfer of files issue, current or former

7

counsel obtain a court order postponing the destruction of the originals and copies referred to in this paragraph.

*Id.* at pages 4-5; *see also* Ex. 2.

## II.   Discussion and Analysis

### A.   The Scope of the District Court's Orders Regarding the Military and State Secrets Privilege (#s 252 & 253)

The Montgomery parties contend that the U.S. protective order (#253) only gives the United States the right to review documents which are the subject of discovery in the pending actions. However, the District Court issued not one, but two, orders regarding the military and state secrets privilege (#s 252 & 253). In its first order issued on August 29, 2007, the District Court recounted meetings between counsel in these related actions and the search warrant proceedings, and noted that those authorized to assert the military and state secrets privilege had reviewed and redacted all pleadings, motions, declarations and other material filed in those cases. *Id.* The District Court then reviewed those papers *in camera* and *ex parte* with counsel for the United States present and approved the proposed redactions. *Id.* Importantly, the District Court expressly found that the United States has demonstrated that "disclosure of information at issue in this litigation subject to the proposed protective order could be expected to cause serious, and in some case, exceptionally grave damage to national security" (#252).

The second order is the order the United States proposed more than a year prior and speaks more directly to the anticipated issues arising during civil discovery. It more clearly identifies what information cannot be disclosed (*see* #253, ¶¶ 2 and 3), and also states that "[s]uch information shall not be subject to *discovery or disclosure* by any of the Parties during all proceedings in these actions and shall be excluded from evidence at trial" (#253) (emphasis supplied). Based upon the plain language of these two orders, as well as the events leading up to the issuance of the order, this court concludes that the District Court intended these orders to govern not only disclosures made during discovery, but also the dissemination of any information subject to the military and state secrets privilege.

1    The Montgomery parties next assert that the U.S. protective order (#253) does not give the

2    United States the right to review any attorney files and that nowhere does the order – or presumably

3    the companion order (#252) – give the United States the right to review documents protected by the

4    attorney-client privilege.  It is correct that neither order speaks to the issue of documents subject to

5    the state secret privilege that are located in attorney-client files.  For that matter, these orders do not

6    contemplate any number of scenarios in which documents protected by the state secrets privilege

7    might be located.

8    The District Court issued the U.S. protective order in the wake of months of government

9    review and redaction of privileged information disclosed in the search warrant proceeding, and it

10   was obvious that there would be similar concerns as the consolidated civil proceedings finally

11   moved forward.  It reflects that concern not only as to discovery but as to *disclosure* of any

12   information protected by the miliary and states secrets privilege (#253).

13   The District Court's orders implicitly recognize that the state secrets privilege has been

14   invoked and governs all proceedings and disclosures – during discovery or otherwise – that may

15   arise in this litigation.  Read together, and particularly in the context of the history of these

16   proceedings and the search warrant proceedings, this court concludes that these orders are

17   prophylactic and cover all documents and information protected by the military and state secrets

18   privilege.  Otherwise, the United States will be constrained to continually return to court to address

19   each new circumstance that implicates the military and state secrets privilege.  Having concluded

20   that the orders provide for the procedures sought by the United States, the court turns to the conflict

21   between the military and state secrets privilege and the attorney-client privilege.

22   **B.      The Attorney-Client Privilege and the Military and State Secrets**
         **Privilege**

23

24       In this proceeding, an unusual situation arose as a consequence of the withdrawal of Mr.

25   Flynn and Ms. DiMare as the Montgomery parties' counsel during the midst of concluding the

26

27

28
                                                         9

search warrant proceeding and commencing the civil proceeding in earnest.[2]  Mr. Flynn is in

possession of all of the client files regarding this proceeding and the search warrant proceeding from

the inception of these proceedings until some time in July 2007.  At the August 17, 2007 hearing on

Mr. Flynn and Ms. DiMare's motion to withdraw, Mr. Flynn characterized the extent of information

protected by the military and state secrets privilege ("protected information") as follows:

> In other words, to give the Court an idea of the magnitude of the
> problem, there are probably thousands of e-mails, many of which
> contain references to matters that ended up in memos, declarations and
> transcripts, that relate, in one way or another, to what the government
> – what the Court approved to be redacted under your April 2nd order.

August 17, 2007 Transcript at page 6, line 25; 27:1-5 (#267).  Mr. Flynn went on to state:

> It is an extremely burdensome and significant task to go through those
> documents and e-mails, many of which – most of which are in
> electronic form, and many of which are in documents that were made
> at various points in time along the way, it would be a huge task to go
> through them all, protect the attorney-client privilege, not let
> government personnel see what's in there, yet redact what needs to be
> protected apparently for national security reasons, and which I agree
> with, and then turn over to the government redacted documents and/or
> electronic media without waiving or violating the attorney-client
> privilege . . . .

*Id.* at page 7, lines 21-25; 8:1-6.  Further, he stated, "My electronic files are voluminous and in

multiple computers in different locations.  My paper files are on both coasts" (#384 at p. 4).  It is

undisputed that the documents in Mr. Flynn's possession are voluminous, are located in different

parts of the country, and are stored in both paper and electronic form.  The question is how the

United States can review all of those documents to redact information protected by the military and

state secrets privilege without invading the attorney-client privilege.  The short answer is that these

two vitally important principles in our jurisprudence cannot be reconciled.

In this case, the military and state secrets privilege directly conflicts with the attorney-client

privilege.  "The attorney-client privilege is the oldest of privileges for confidential communications

---

[2]The court does not believe the United States' motion is predicated solely on former counsels'
withdrawal from this case.  All of the information in Mr. Flynn's possession that may be subject to the
military and state secrets privilege belongs to the United States.  Regardless of who represents the
Montgomery parties, this would have to be resolved.

10

known to the common law." *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981).  The purpose of the privilege "is to encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."  *Id.* "The attorney-client privilege has deep roots in this country's historical jurisprudence:  The rule, which places the seal of secrecy upon communication between attorney and client, is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure."  *United States v. Bauer,* 132 F.3d 504, 510 (9th Cir. 1997) (quoting *Hunt v. Blackburn,* 128 U.S. 464, 470 (1888)).

Ms. Klar, the Montgomery parties' new counsel, has expressed justifiable concerns about the propriety of third parties – most especially the government – having access to attorney-client files. The proposed protocol would not allow Ms. Klar the opportunity to review the files in advance of the government, and the government would have unfettered access to attorney-client documents that government security officers would unilaterally redact.  The government would then store the information. The "seal of secrecy," which is the bedrock of the attorney-client privilege, would be broken, albeit by the government, as opposed to opposing counsel.

 The military and state secrets privilege has constitutional underpinnings, which permits the government to protect against the unauthorized disclosure in litigation of information that may adversely affect national security interests. *See United States v. Reynolds,* 345 U.S. 1, 7-8 (1953); *Black v. United States,* 62 F.3d 1115, 1118 (8th Cir. 1995); *cert. denied,* 465 U.S. 1038 (1996); *Ellsberg v. Mitchell,* 709 F.2d 51, 56 (D.C. Cir.1983), *cert. denied,* 465 U.S. 1038 (1984).  The purpose of the privilege is to protect against the unauthorized disclosure of information that may adversely affect national security interests, regardless of how the person who has the information or seeks its disclosure is related to the government.  *See generally,* 2 S. Stone & R. Taylor, *Testimonial Privileges* § 9.12 at 9-37 (2d ed. 1995).

The military and state secrets privilege belongs to the government and it is only the United States who can assert it.  *Dep't. Of Navy v. Egan*, 484 U.S. 518, 527 (1988).  Once a court upholds a

1  properly invoked privilege, it is an absolute bar to disclosure, no matter how compelling the need for

2  the information, or relevance thereof, to a proper resolution of the case of any issue raised therein.

3  *Reynolds,* 345 U.S. at 11; *Black,* 62 F.3d at 1119; *Fitzgerald v. Penthouse Intern, Ltd.,* 776 F.2d

4  1236, 1240 (4th Cir. 1985); *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 399 (D.C.

5  Cir. 1984).  This means that once a court decides there exists a harm which might reasonably flow

6  from disclosure, the privilege cannot be overcome by "even the most compelling necessity."

7  *Reynolds,* 345 U.S. at 11; *In re Under Seal,* 945 F.2d 1285, 1288 n.2 (4th Cir. 1991).

8          Neither counsel nor the court has found any cases that reconcile the competing interests

9  embodied by the respective privileges.  This may be partly due to the fact that cases have been

10 dismissed when the military and state secrets privilege is properly invoked.  *Frost v. Perry*, 919

11 F.Supp. 1459 (D.Nev. 1996); *see also*, *Weston v. Lockheed Missiles & Space Co.*, 881 F.2d 814, 816

12 (9th Cir. 1989); *Bareford v. General Dynamics Corp.*, 973 F.2d 1138, 1141 (5th Cir. 1992), *cert.*

13 *denied*, 507 U.S. 1029 (1993); *Zuckerbraun v. General Dymanics Corp.*, 935 F.2d 544 (2d Cir.

14 1991); *Farnsworth Cannon, Inc. v. Grimes*, 635 F.2d 268 (4th Cir. 1980) (*en banc)*.  The Supreme

15 Court has held that the attorney-client privilege survives the death of a client in the face of a federal

16 grand jury subpoena for the decedent's lawyer's handwritten notes of a meeting prior to the client's

17 death. *Swidler & Berlin v. United States,* 524 U.S. 399, 410-11 (1998).  However, the dissent

18 recognized that the attorney-client privilege may be abrogated "where the constitutional rights of a

19 criminal defendant are at stake.  An exception may likewise be warranted in the face of a compelling

20 law enforcement need for information." *Id.* at 413-15 (J. O'Connor dissenting).

21         While instructive, *Swidler* does not address the precise issue before this court.  Justice

22 O'Connor noted that a compelling law enforcement need for information might justify an exception

23 to the attorney-client privilege, but this court will not speculate what that compelling law

24 enforcement need might be.  However, the court does believe that the invocation of the state secrets

25 privilege is a compelling circumstance that trumps the attorney-client privilege in this situation. The

26 information covered by the state secrets privilege inures only to the United States and is

27 government-owned.  Neither former nor current counsel for the Montgomery parties have security

28

clearances, and they are not entitled to possess or have any access to this information. They are likewise not in a position to review the files themselves and decide what information is or is not subject to the military and state secrets privileges.  In addition, because the government owns and controls the information covered by the military and state secrets privilege, the fact that such information resides in attorney-client files cannot logically render that protected information subject to a blanket attorney-client privilege.  Otherwise, a person could retain government-owned national security information simply by turning it over to his or her attorney, which would seriously erode the purpose and effect of the military and state secrets privilege.  Because national security concerns are paramount, the court is constrained to conclude that "even the most compelling necessity" – the preservation of the attorney-client privilege – does not permit the attorney-client privilege to be invoked to limit or interfere with the government's need to protect information covered by the military and state secrets privilege.

### C.      Protocols for Government Review of the Attorney-Client Files

Because the government owns certain information contained in the attorney-client files of former counsel for the Montgomery parties, only the government can determine what information is protected, what information must be redacted, and where the unredacted files should be stored. However, the court stresses that it is deeply concerned that the Montgomery parties' rights be protected to the greatest extent possible under these unique circumstances. The government has identified three categories of documents which may contain information protected by the state secrets privilege, as well as a six-step process for document review (#350).  The proposed protocol attempts to balance the Montgomery parties' legitimate concerns to protect information subject the attorney-client privilege, insofar is possible, with the paramount need to prevent further dissemination of information and documents covered by the military and state secrets privilege. However, the court believes that in addition to these protocols, the United States should be required to adhere to the following additional procedures:

> 1.      Identify the employees if necessary, *in camera*, of the United States who are authorized to review the Montgomery client files in former counsel's possession;

2. Upon completion of the document review and redaction, such authorized U.S. government employees shall file with the court a declaration that they have not disclosed the content of information from any attorney-client privileged document either to government counsel in the consolidated cases, the criminal search warrant case, or to any other government officials working on or otherwise connected with such cases; and

3. Upon completion of the document review and redaction, such authorized U.S. government employees may be required to meet with the District Court or this court, *in camera,* for the purpose of assuring the court that the protocols have been followed and to address any issues that may arise in the course of the document review.

Based upon the foregoing, the United States' motion for enforcement of United States' protective order (#350) is **GRANTED**. The court adopts the United States' proposed protocols for review of documents, *infra* at pages 7-8 herein, and further orders the United States to adhere to the additional procedures for document review set forth herein, *infra*, pages 13-14.

**IT IS SO ORDERED.**

DATED:   February 19, 2008.

_____
UNITED STATES MAGISTRATE JUDGE

14