Mark H. Gunderson, Esq. (SBN: 2134)
Catherine A. Reichenberg, Esq. (SBN: 10362)
GUNDERSON LAW FIRM
5345 Kietzke Lane, Suite 200
Reno, Nevada 89511
Telephone: (775) 829-1222
Facsimile: (775) 829-1226

Deborah A. Klar, Esq. (SBN: CA 124750)
Teri T. Pham, Esq. (SBN: CA 193383)
Tuneen E. Chisolm, Esq. (SBN: CA 211741)
LINER YANKELEVITZ
SUNSHINE & REGENSTREIF LLP
1100 Glendon Avenue, 14th Floor
Los Angeles, California 90024-3503
Telephone: (310) 500-3500
Facsimile: (310) 500-3501
ADMITTED PRO HAC VICE

Attorneys for Plaintiffs
DENNIS MONTGOMERY, and the MONTGOMERY FAMILY TRUST

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| DENNIS MONTGOMERY and the MONTGOMERY FAMILY TRUST,<br><br>Plaintiffs,<br><br>vs.<br><br>ETREPPID TECHNOLOGIES, LLC, WARREN TREPP, and the UNITED STATES DEPARTMENT OF DEFENSE,<br><br>Defendants.<br><br>AND RELATED CASES. | Case No. 3:06-CV-00056-PMP-VPC<br>BASE FILE<br><br>(3:06-CV-00145-PMP-VPC)<br><br>**REPLY TO ETREPPID'S POINTS AND AUTHORITIES IN SUPPORT OF ITS ASSERTION OF THE ATTORNEY CLIENT PRIVILEGE AGAINST DENNIS MONTGOMERY** |

## I. INTRODUCTION

As the Montgomery Parties anticipated, eTreppid relies on *Milroy v. Hanson*, 875 F.Supp. 646 (D. Neb 1995) and related cases to argue that it can assert the attorney privilege against the them despite the fact that Mr. Montgomery and the Trust are members of eTreppid. As the Montgomery Parties have explained, given that eTreppid, as a limited liability company, is more analogous to a partnership than a corporation with respect to the issues pertinent to the applicability of the joint client exception to the privilege, this Court should look to *Wortham & Van Liew v. Superior Court*, 188 Cal. App. 3d 927, 932 (1987) to decide the privilege issue. Under *Wortham*, the Montgomery Parties, as members of eTreppid, must be considered joint clients of eTreppid's counsel along with and other members of eTreppid and eTreppid itself. As such, the joint client exception applies to the Montgomery Parties.

Moreover, *Milroy* does not represent the so-called "majority rule" as eTreppid asserts. Multiple decisions hold that a corporation cannot assert the attorney-client privilege against a corporate director as to communications between the corporation and its counsel that occur during the director's tenure. Under those decisions, the Montgomery Parties are entitled to the purportedly privileged communications between eTreppid and its counsel since Mr. Montgomery was a member of eTreppid's Management Committee.

Finally, eTreppid fails to show that its communications with Douglas Frye—who, as Manager of eTreppid, was responsible for the LLC's day-to-day operations (Exs. B § 6.11, and C § 6.1.1 to Chisolm Decl.)—involve legal advice and not general business matters. eTreppid has thus failed to carry its burden to show that the attorney-client privilege applies to such communications. Accordingly, even if eTreppid could, in theory, assert the attorney-client privilege, its objection to producing its communications with Mr. Frye must be overruled.

## II. THIS COURT SHOULD LOOK TO *WORTHAM & VAN LIEW V. SUPERIOR COURT* TO DECIDE THE ATTORNEY CLIENT PRIVILEGE ISSUE.

As the Montgomery Parties have explained, eTreppid's members, like partners in a partnership, owe fiduciary duties to one another. Accordingly, under the reasoning of *Wortham & Van Liew v. Superior Court*, 188 Cal. App. 3d 927, 932 (1987), eTreppid and its members must be

1

considered joint clients of eTreppid's counsel, including Mr. Frye, with respect to eTreppid's communications with counsel concerning partnership matters. *See also Roberts v. Heim*, 123 F.R.D. 614, 622 (N.D. Cal. 1988); and *Hecht v. Superior Court*, 192 Cal. App. 3d 560 (1987). Under Nevada's joint client exception to the attorney client privilege, which is analogous to California's joint client exception at issue in *Wortham*, eTreppid cannot assert the attorney client privilege against the Montgomery Parties.

Moreover, contrary to eTreppid's assertion, even as concerns corporations, *Milroy* does not reflect the purported "majority rule." There are multiple decisions that are contrary to *Milroy*. *See, e.g., Inter-Fluve v. Mont. Eighteenth Judicial Dist. Court*, 112 P.3d 258, 264 (Mont. 2005) ("we conclude that while Inter-Fluve was the client with respect to the attorney-client communications at issue here, the directors were joint clients with Inter-Fluve"); *Carnegie Hill Financial, Inc. v Krieger*, 2000 US Dist. LEXIS 21 at *7, fn.2 (D. Pa. 2000) ("policy underlying attorney-client privilege and work product immunity would not be advanced by now denying former officers and directors of the corporation access to documents which are relevant to the issues tendered by Plaintiffs and which they could have seen upon request at any time"); *Glidden Co. v. Jandernoa*, 173 F.R.D. 459, 473 (D. Mich. 1997) ("directors have a right to access attorney communications of the company relating to the time that they served as directors"); *In re Hutchins*, 211 B.R. 330, 333 (Bankr. D. Ark. 1997) (plaintiff was entitled to review report prepared by attorneys on behalf of corporate entities because he was an officer and director of those entities); *Moore Bus. Forms v. Cordant Holdings Corp.*, 1996 Del. Ch. LEXIS 56 (Del. Ch. 1996) ("Delaware case law supports Moore's position that as a general matter, a corporation cannot assert the privilege to deny a director access to legal advice furnished to the board during the director's tenure."); *Gottlieb v. Wiles*, 143 F.R.D. 241, 247 (D. Colo. 1992) (corporation could not assert attorney client privilege against its former Chairman and CEO because "he was squarely within the class of persons who could receive communications and work product from MiniScribe's counsel without adversely impacting the privileged or confidential nature of such material"); *Harris v. Wells*, 1990 US Dist LEXIS 13215 (D. Conn. 1990); and *Kirby v. Kirby*, 1987 Del. Ch. LEXIS 463, *19 (Del. Ch. 1987) ("directors are all responsible for the proper management of the corporation, and it seems

2
REPLY TO ETREPPID'S POINTS AND AUTHORITIES IN SUPPORT OF ITS ASSERTION OF THE
ATTORNEY-CLIENT PRIVILEGE AGAINST DENNIS MONTGOMERY
0039641/001/ 381921v02

consistent with their joint obligations that they be treated as the "joint client" when legal advice is rendered to the corporation through one of its officers or directors"). Under these decisions, eTreppid cannot assert the attorney client privilege against the Montgomery Parties because Mr. Montgomery had management responsibilities at eTreppid analogous to the responsibilities of a director.

### III. ETREPPID HAS FAILED TO SATISFY ITS BURDEN TO ESTABLISH THAT ITS COMMUNICATIONS WITH MR. FRYE ARE PRIVILEGED.

As the Montgomery Parties noted, eTreppid has the burden to make a *prima facie* showing that the information it seeks to withhold is privileged. *See United States v. Bauer*, 132 F.3d 504, 507 (9th Cir. 1997); and *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992). eTreppid has failed to satisfy its burden. It has made no showing that its communications with Mr. Frye relate to the giving or receiving of legal advice as necessary for its assertion of the attorney-client privilege. *See United States v. Chevron Texaco Corp.*, 241 F. Supp. 2d 1065, 1076 (D. Cal. 2002).

While eTreppid claims that it should be permitted to assert the attorney-client privilege against the Montgomery Parties "on a case by case basis," eTreppid ignores that its time for making its "case" has now passed. eTreppid made no effort in its brief to identify any communications it had with Mr. Frye that involve legal advice.

Additionally, eTreppid has never provided a privilege log to the Montgomery Parties. Its explanations that it has been prevented from doing so because (a) it is in the process of negotiating protocols with the Department of Justice pertaining to the production of electronically stored information and (b) it seeks the Court's guidance regarding the extent to which it can assert the privilege (eTreppid's Brief at 3, fn. 1), are unconvincing. The protocols eTreppid is negotiating with the DoJ and the existing protective order do not in any way prevent eTreppid from providing a privilege log to the Montgomery Parties. Indeed, it seems highly unlikely that the protocols would

ever apply to attorney-client communications between Mr. Frye and eTreppid as there is no evidence that Mr. Frye had the requisite clearance to consider matters that involved "state secrets."[1]

Nor does eTreppid need "guidance" from the Court in order to prepare a privilege log. Indeed, the fact that eTreppid has avoided and continues to avoid providing a privilege log to the Montgomery Parties, reveals that eTreppid recognizes that its preparation of a log would be a waste of time because it lacks valid grounds to assert the privilege against the Montgomery Parties. In short, eTreppid's excuses for failing to prepare a privilege log are disingenuous. If this Court accepts these excuses, then it should not yet rule whether eTreppid can assert the attorney client privilege against the Montgomery Parties with respect to its communications with Mr. Frye. Absent eTreppid's provision of a privilege log, such a ruling would be premature.

## IV. **CONCLUSION.**

For the foregoing reasons, eTreppid's attorney-client privilege objections should be overruled in their entirety. At a minimum, the Montgomery Parties are entitled to eTreppid's communications with Mr. Frye.

Dated: February 20, 2008

LINER YANKELEVITZ
SUNSHINE & REGENSTREIF LLP

By: _____/s/_____
Deborah A. Klar
Attorneys for Plaintiffs
DENNIS MONTGOMERY, and the
MONTGOMERY FAMILY TRUST

---

[1] Further, eTreppid did not become involved in any government contracts until 2003. The protocols thus could not relate to any purportedly attorney-client privileged communications prior to that point as such communications could not involve "state secrets."