J. Stephen Peek, Esq. (NV Bar #1758)
Jerry M. Snyder, Esq. (NV Bar #6830)
Adam G. Lang, Esq. (NV Bar #10117)
Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Telephone:  (775) 327-3000
Facsimile:   (775) 786-6179
speek@halelane.com; jsnyder@halelane.com;
alang@halelane.com

Reid H. Weingarten, Esq. (D.C. Bar #365893) (Admitted Pro Hac Vice June 15, 2007)
Brian M. Heberlig, Esq. (D.C. Bar #455381) (Admitted Pro Hac Vice June 15, 2007)
Robert A. Ayers, Esq. (D.C. Bar #488284) (Admitted Pro Hac Vice June 15, 2007)
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036-1795
Telephone: (202) 429-3000

Attorneys for eTreppid Technologies, LLC and Warren Trepp

UNITED STATES DISTRICT COURT

FOR THE DISTRICT COURT OF NEVADA

| | |
|---|---|
| DENNIS MONTGOMERY, an individual; and MONTGOMERY FAMILY TRUST, a California Trust, | Case No. 3:06-CV-00056-PMP-VPC<br>**Base File** |
| Plaintiffs, | 3:06-CV-00145-PMP-VPC |
| vs. | |
| ETREPPID TECHNOLOGIES, L.L.C., a Nevada Limited Liability Company; WARREN TREPP, an individual; DEPARTMENT OF DEFENSE of the UNITED STATES OF AMERICA; and DOES 1 through 10, | |
| Defendants. | |
| AND RELATED CASE(S) | |

**ETREPPID'S AND WARREN TREPP'S OPPOSITION TO THE MONTGOMERY PARTIES' MOTION FOR PROTECTIVE ORDER PRECLUDING PRODUCTION OF ACTUAL SOFTWARE AND TECHNOLOGY-ENABLING INFORMATION**

eTreppid Technologies, L.L.C. and Warren Trepp (hereinafter collectively referred to as "eTreppid"), by and through their counsel, Hale Lane Peek Dennison and Howard, hereby submit their

::ODMA\PCDOCS\HLRNODOCS\726616\1

1

Opposition to Dennis Montgomery and the Montgomery Family Trust's (collectively "Montgomery") Motion for Protective Order Precluding Production of Actual Software and Technology-Enabling Information ("Motion for Protective Order"). This Opposition is supported by the following Memorandum of Points and Authorities and all pleadings and papers filed herein.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Through the present motion, Montgomery seeks to avoid disclosure of the most significant information available in this case: the source code and executable versions of the software that each side is claiming as a trade secret. Montgomery asserts that a protective order is necessary because (1) he is not in possession of "CD1," and therefore should not be obliged to provide it; (2) the source code and object code for the software at issue is not relevant to this case; and (3) his disclosure of the source code cannot be compelled because such disclosure would require Montgomery to reveal his trade secrets to eTreppid.

Montgomery's arguments are meritless. First, Montgomery has asserted that the software at issue in this case – that is, eTreppid's digital compression products, including compression technology, pattern recognition, object detection, and anomaly detection products – were developed by Montgomery prior to and independent of his work at eTreppid. Montgomery supports this contention by stating that the only technology that he transferred to eTreppid was that contained on CD1. eTreppid is entitled to test this assertion by discovering what was actually contained on CD1. Notably, while Montgomery has stated, in his declaration dated March 10, 2008, that he has been unable to locate a copy of CD1, his declaration is silent as to whether he has located the information stored on CD1. As both parties have alleged that the value of the software technology at issue in this case is quite substantial, Montgomery should be required to provide "all documents that relate to the software that [Montgomery] transferred to eTreppid under the terms of the September 28, 1998 Contribution Agreement," as eTreppid has requested.

Second, the requested material is likely the most relevant evidence in this case. Because Montgomery claims that eTreppid has infringed his copyrights, eTreppid is entitled to discover the text of the original copyrighted material, the text of any derivative works prepared by Montgomery, and the

::ODMA\PCDOCS\HLRNODOCS\726616\1                     2

1  text of the allegedly infringing works – all of which are in Montgomery's possession. Moreover, as
2  Montgomery has asserted that the software that eTreppid used in fulfilling its contractual obligations to
3  third parties was derived from his previous work in the field, eTreppid is entitled to examine that
4  previous work in order to probe the basis for Montgomery's claims. Finally, Montgomery has
5  acknowledged, under oath, that he has further developed the software that eTreppid used under the
6  aegis of his "current employers." This is likely a violation of the preliminary injunction in this case,
7  and eTreppid is entitled to discover the nature and extent of these modifications.

8  Third, Montgomery's assertion that his disclosure of the software in this matter would result in
9  a disclosure to eTreppid of Montgomery's trade secret source code is simply meritless. Montgomery
10 has made claims for copyright infringement and theft of trade secret, and he must provide evidence
11 relevant to those claims. Montgomery fails even to argue that the existing protective order, which
12 allows him to designate the software as "restricted confidential," is somehow inadequate to protect his
13 interest in the secrecy of this material. Accordingly, none of Montgomery's bases for seeking a
14 protective order is valid.

15 Indeed, the present Motion for Protective Order is only the most recent in a series of attempts
16 by Montgomery to delay the resolution of this matter by refusing to provide eTreppid with information
17 needed to prepare this case for trial. Since this Court re-opened discovery in November 2007,
18 Montgomery has produced less than 1000 pages of documents, most of which are publicly available or
19 already produced by eTreppid. Montgomery has refused to provide meaningful interrogatory
20 responses. Even when ordered by this Court to produce documents in response to a number of
21 eTreppid's discovery requests on or before March 14, 2008, Montgomery provided less than 20 pages
22 of additional documents. Moreover, even though eTreppid's discovery requests have been pending, in
23 some cases, for more than eighteen months, Montgomery has only just now sought a protective order.
24 Montgomery's stonewalling and gamesmanship must end, and eTreppid must be allowed to conduct
25 discovery as to the basis of each party's claims and defenses. Accordingly, eTreppid respectfully
26 requests that this Court order Montgomery to produce documents in response to eTreppid's Requests
27 For Production (First Set), Requests No. 3, 4, 5, 6, 8, 9, 16, 18, 20, and 22, and (Second Set), Requests
28 No. 1, 2, and 3.

::ODMA\PCDOCS\HLRNODOCS\726616\1                      3

## II. ARGUMENT

### A. Montgomery Should Be Required to Provide Copies of the Information Provided to eTreppid Under the Contribution Agreement

Montgomery does not, and cannot, assert that the information contained on CD1 is relevant. Indeed, Montgomery's position in this case depends on his claim that CD1 is the only technology that eTreppid owns, and that the digital compression products at issue in this case are not related to the material on CD1. As such, the information that was contained on CD1 is of paramount importance in this case.

Montgomery asserts that he does not have CD1 in his possession. However, the text of eTreppid's request is not limited to "CD1." Rather, eTreppid has requested that Montgomery provide "all documents that relate to the software that [Montgomery] transferred to eTreppid under the terms of the September 28, 1998 Contribution Agreement." Obviously, this request seeks all electronically stored information that was contained on CD1, whether or not Montgomery is in possession of a single CD that contains all the information at issue. Montgomery does not claim, in his March 10, 2008 Declaration, that he is not in possession of this information. Rather, Montgomery asserts that it would be "burdensome" to recreate CD1. However, Montgomery does not offer any explanation of what information was contained on CD1, or why he cannot locate this information now. Indeed, Montgomery does not even state, in his declaration, that he has looked for this information.

Montgomery's excuses for failing to provide this information are unavailing. As his declaration shows, he likely has, in his possession, the information that was contained on CD1. This Court should order him to produce that information.

### B. The Requested Source Code and Object Code Is Highly Relevant

As eTreppid has already set forth at length in its Motion to Compel, filed March 10, 2008, the requested software source code and executable files are highly relevant in this matter. Jonathan Karchmer, an expert retained by eTreppid, has testified that through an analysis of this software:

- eTreppid will be able to compare the text of Montgomery's originally copyrighted source code and the text of the eTreppid source code to develop its defense to Montgomery's claim that the eTreppid source code constitutes a "derivative work."

::ODMA\PCDOCS\HLRNODOCS\726616\1      4

- eTreppid will be able to examine any comments placed by programmers in the source code, to determine whether any other eTreppid programmers worked on the subject source code.

- eTreppid will be able to determine what computer language was used to create the software.

- eTreppid will be able to compare its software with earlier versions of the software that Montgomery claims to have written, in order to test Montgomery's claim that the subject software was based on technology that he created prior to, and independent of, his work at eTreppid.

Montgomery asserts that this is not relevant because there are only three questions relevant to a determination of ownership: (1) whether there is a written assignment through which Montgomery assigned his rights in the source code to eTreppid; (2) whether Montgomery was an employee of eTreppid such that any trade secrets he developed at eTreppid belonged to eTreppid; and (3) whether Montgomery created the software as a work for hire. Even if these were the only questions relevant to the issue of ownership, Montgomery nonetheless should be required to produce the subject source code because an analysis of that information will allow eTreppid to determine when the subject software was created, who created it, and whether it is related to the software that Montgomery previously copyrighted. Accordingly, Montgomery should be compelled to produce the subject software. *Dynamic Microprocessor Assocs. v. EKD Computer Sales*, 919 F.Supp. 101 (E.D.N.Y. 1996).

However, Montgomery's assertion oversimplifies the extent of factual investigation required, because it assumes that Montgomery himself created the actual software. There is at least some reason to doubt this. During the Air Force's investigation of Montgomery's theft of eTreppid's property, a number of eTreppid employees that were interviewed told the FBI that they did not think that Montgomery had created any significant software at eTreppid. In Special Agent Paul Haraldsen's February 14, 2006 Report of Investigation (a true and correct copy of which is attached hereto as **Exhibit 1**), Haraldsen reports that Patty Gray "had reason to believe that [Montgomery] had not written significant software for the company." **Exhibit 1.** p. 3 of 19. Haraldsen also reports that

::ODMA\PCDOCS\HLRNODOCS\726616\1

5

1  eTreppid employee Jesse Anderson advised Haraldsen that Montgomery "was using open Source Code
2  to develop eTreppid's Source Code, not writing software, [and] does not possess adequate technical
3  abilities." *Id.* at p. 5 of 19. Moreover, during the preliminary injunction hearing, Montgomery
4  testified that as of 2002, eTreppid employee Sun Zehang had worked on eTreppid's object tracking
5  technology. A true and correct excerpt from the hearing transcript is attached hereto as **Exhibit 2.**

6  Accordingly, there are significant questions in this case that can only be resolved through an
7  analysis of the software at issue, including (1) when the software was written; (2) who wrote the
8  software; and, (3) whether eTreppid's software in any way relates to the software that Montgomery
9  previously copyrighted.

### C.  eTreppid Cannot Be Required to Define Its Trade Secrets with Particularity Because Montgomery Has Stolen, and Is in Possession of, the Information Needed To Do So

Montgomery next asserts that he cannot be compelled to produce the subject software until eTreppid defines its claimed trade secrets with particularity. Montgomery has cited to no authority to suggest that, under Nevada law, a plaintiff must define a trade secret with particularity before discovering information relative to that trade secret.

However, even assuming *arguendo* that Montgomery's legal statement is correct, eTreppid has defined its trade secret with sufficient particularity. Citing *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164-65 (9th Cir. 1998), Montgomery asserts that eTreppid must "describes the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons skilled in the trade."

eTreppid has defined its trade secrets as follows:

> eTreppid claims as a trade secret all software source code, object code, algorithms, formulae, or know-how in the fields of digital compression products, including but not limited to data compression, pattern recognition, object tracking, film colorization, or anomaly detection which was used in fulfilling any contractual obligations eTreppid owed to any third party, and which was either (1) transferred to eTreppid by Montgomery or any other individual, (2) a modification or outgrowth of any technology transferred to eTreppid by Montgomery or any other individual, or (3) conceived, developed, created, or modified by Montgomery or any other eTreppid employee between September 1998 and January 2006. This definition specifically includes the FOOS software and algorithms, as well as any and all software used in fulfilling

::ODMA\PCDOCS\H

    any Contracts with the United States Government and agencies thereof, as well as commercial customers, as well as any modifications, upgrades, or advancements to such software.

  This definition is sufficiently particular. It informs Montgomery of the type of technology claimed as a trade secret, and the purpose for which eTreppid used this technology. As eTreppid's former Chief Technology Officer, Montgomery surely must have an understanding of which software technology is covered by this definition.

  Moreover, as was demonstrated at the preliminary injunction hearing, Montgomery erased the source code from eTreppid's system, and absconded with the only extant copy of this information. eTreppid cannot be expected to state the technical parameters of the stolen information without having an opportunity to examine the requested source code. Accordingly, Montgomery cannot avoid discovery by claiming that eTreppid has not sufficiently defined its trade secrets.

**D.**  **The Existing Protective Order Is Sufficient to Protect Montgomery's Interest in the Secrecy of the Subject Information**

  Finally, Montgomery argues that he should not be compelled to provide the requested information because this would amount to a disclosure of his alleged trade secret to eTreppid. However, Montgomery fails to explain why the existing protective order, which allows him to avert such disclosure by designating the material disclosed as "restricted confidential," is inadequate to maintain his interest in the secrecy of this information. Montgomery had every opportunity, while eTreppid's motion for a protective order was pending, to raise any concerns he had with the scope or applicability of that order. He did not at any time assert that the existing protective order was insufficient to protect the secrecy of the subject technology. He cannot now claim that the protections afforded by that order are inadequate.

**III.**  **CONCLUSION**

  For all of the foregoing reasons, eTreppid respectfully requests that Montgomery's Motion for Protective Order Precluding Production of Actual Software and Technology-Enabling Information be denied, and that Montgomery be ordered to produce documents in response to eTreppid's Requests For Production (First Set), Requests No. 3, 4, 5, 6, 8, 9, 16, 18, 20, and 22, and (Second Set), Requests No. 1, 2, and 3.

::ODMA\PCDOCS\HLRNODOCS\726616\1         7

1  Dated: March 21, 2008.

/s/
J. Stephen Peek, Esq.  (NV Bar #1758)
Jerry M. Snyder, Esq. (NV Bar #6830)
Adam G. Lang, Esq. (NV Bar #10117)
Shane M. Biornstad, Esq. (NV Bar #9972)
Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Telephone:  (775) 327-3000
Facsimile:   (775) 786-6179

Reid H. Weingarten, Esq. (D.C. Bar #365893)
Brian M. Heberlig, Esq. (D.C. Bar #455381)
Robert A. Ayers, Esq. (D.C. Bar #488284)
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036-1795
Telephone:  (202) 429-3000
Facsimile:   (202) 429-3902

*Attorneys for Plaintiff and Cross-Defendant eTreppid Technologies, L.L.C. and Cross-Defendant Warren Trepp*

::ODMA\PCDOCS\HLRNODOCS\726616\1            8

# PROOF OF SERVICE

I, Paul D. Cain, declare:

I am employed in the **City of Reno, County of Washoe, State of Nevada,** by the law offices of Hale Lane Peek Dennison and Howard. My business address is: **5441 Kietzke Lane, Second Floor, Reno, Nevada 89511**. I am over the age of 18 years and not a party to this action. I am readily familiar with Hale Lane Peek Dennison and Howard's practice for collection of mail, delivery of its hand-deliveries and their process of faxes.

On March 21, 2008, I caused the foregoing **ETREPPID'S AND WARREN TREPP'S OPPOSITION TO THE MONTGOMERY PARTIES' MOTION FOR PROTECTIVE ORDER PRECLUDING PRODUCTION OF ACTUAL SOFTWARE AND TECHNOLOGY-ENABLING INFORMATION** to be:

__X__   filed electronically with the U.S. District Court and therefore the court's computer system has electronically delivered a copy of the foregoing document to the following person(s) at the following e-mail addresses:

*Fax No. 775/829-1226*
mgunderson@gundersonlaw.com
Mark H. Gunderson, Ltd.
Mark H. Gunderson, Esq.
5345 Kietzke Lane, Suite 200
Reno, Nevada 89511

*Fax 310/500-3501*
dklar@linerlaw.com;
tchisolm@linerlaw.com
Deborah A. Klar, Esq.
Tuneen Chisolm, Esq.
Liner Yankelevitz Sunshine & Regenstreif, LLP
1100 Glendon Avenue, 14th Floor
Los Angeles, CA 90024-3503

*Fax No. 202/616-8470*
Carlotta.wells@usdoj.gov
Carlotta P. Wells, Esq.
Senior Trial Counsel
Federal Programs Branch
Civil Division – Room 7150
U.S. Department of Justice
20 Massachusetts Ave., NW
P.O. Box 883
Washington, DC 20044

*Fax No. 784-5181*
Greg.addington@usdoj.gov
Greg Addington, Esq.
Assistant U.S. Attorney
100 W. Liberty Street, Suite 600
Reno, NV 89501

*Fax 202/616-8470*
Raphael.gomez@usdoj.gov
Raphael O. Gomez, Esq.
Senior Trial Counsel
Federal Programs Branch
Civil Division – Room 6144
U.S. Department of Justice
20 Massachusetts Ave., N.W.
P.O. Box 883
Washington, D.C. 20044

::ODMA\PCDOCS\HLRNODOCS\726616\1

9

*Fax No. 775-823-2929*
bpeck@lrlaw.com
Bridget Robb Peck, Esq.
Lewis and Roca, LLP
50 W. Liberty Street, Ste. 410
Reno, Nevada 89501

*Fax No. 206-903-8820*
park.brian@dorsey.com;
stewart.douglas@dorsey.com;
trotta.nicole@dorsey.com;
Crowley.robert@dorsey.com;
Brian Park, Esq.
Douglas Stewart, Esq.
Nicole Trotta, Esq.
Robert Crowley, Esq.
Dorsey & Whitney, LLP
1420 Fifth Ave., Ste. 3400
Seattle, Washington 98101

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on March 21, 2008.

\_\_\_\_/s/_____
Paul D. Cain