1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

DENNIS MONTGOMERY, et al.,          )          3:06-CV-0056-PMP (VPC)
                                    )
            Plaintiffs,             )
                                    )          **ORDER REGARDING**
     vs.                            )          **ATTORNEYS' FEES AND COSTS**
                                    )
ETREPPID TECHNOLOGIES, LLC., et al., )
                                    )
            Defendants.             )
_____ )

Before the court is the motion of Michael Flynn, former counsel for the plaintiffs ("Montgomery parties"), for attorneys' fees and costs (#s 248-251).  The court has reviewed the following papers on file herein (#s 261-261; 277-284; 296; 298; 323-324; and 338).  On November 27, 2007, this court ordered that supplemental briefing be submitted *in camera* to the court (#338).  The court has reviewed the following *in camera* submissions:  former counsels' summary description of unpaid legal services; summary description of unpaid costs; supplemental declaration of Michael Flynn; supplemental declaration of Carla DiMare; errata re supplement; Montgomery parties' response; supplemental declaration of Kenneth Moscaret; declaration of Dennis Montgomery; Montgomery parties' evidentiary objections; Mr. Flynn's supplemental reply and declaration; supplemental declaration of Ms. DiMare; Montgomery parties' *ex parte* application for order striking supplemental reply; Montgomery parties' evidentiary objections; and Mr. Flynn's objection to Montgomery parties' *ex parte* application for an order to strike supplemental reply (#s 483-497).

Having reviewed these papers, as well as the record on file herein, this court grants the motion for attorneys' fees in the amount of $530,612.00, and for costs in the amount of $26,910.18, as more

1  fully discussed below.  The Montgomery parties' *in camera* evidentiary objections, dated December 13

2  and December 26, 2007 (#s 491 & 496), are denied, and the Montgomery parties' *in camera ex parte*

3  application for order striking supplemental reply dated December 26, 2007 (#495) is also denied.

4  **I.    Procedural History**

5          By their motion, Mr.Flynn and Ms. DiMare ("Mr. Flynn," "Ms. DiMare," or "former counsel")

6  seek $843,107.00 in attorneys' fees and $27,151.00 in costs for the period from December 2006 through

7  December 2007. Mr. Flynn and Ms. DiMare  represented the Montgomery parties in the search warrant

8  proceeding, as well as the pending civil proceeding and related matters until the District Court granted

9  their motion to withdraw as counsel on September 4, 2007 (#256). There is no dispute that the

10  Montgomery parties compensated former counsel for legal services rendered from the inception of their

11  representation in December 2005 through mid-December 2006.

12          In July 2007, Mr. Flynn and Ms. DiMare asked to withdraw as counsel based upon nonpayment

13  of legal fees and the assertion that Mr. Montgomery had engaged in conduct that made continued

14  representation unusually difficult (#s 205/206).  Since the United States had successfully invoked the

15  military and state secrets privilege, the withdrawal of counsel was not a routine motion, and it drew a

16  response from the United States (#209), as well as from the Montgomery parties' putative new counsel,

17  Liner, Yankelevitz, Sunshine & Regenstrief LLP ("Liner firm") (#213).  The government sought to

18  impose conditions on the withdrawal of former counsel concerning documents in the client file subject

19  to the military and state secrets privilege. The Liner firm raised concerns about the government's

20  potential access to client files based on the attorney-client privilege, and it also asked the court to order

21  Mr. Flynn and Ms. DiMare to surrender the files to new counsel upon entry of the order granting the

22  motion to withdraw.

23          Prior to the August 17, 2007 hearing on the motion to withdraw, Mr. Flynn filed a notice of lien

24  over the client files for unpaid fees and costs, which is allowed under Nevada law (#243). At about this

25  same time, the Liner firm filed a separate lawsuit against Mr. Flynn in Los Angeles Superior Court

26  seeking injunctive relief to compel the turnover of  the Montgomery parties' client files in Mr. Flynn's

27  possession and to enjoin him from disclosing attorney-client communications to any third party (#262,

28
                                                          2

Ex. 1).[1]  On August 17, 2007, the District Court heard arguments  regarding the effect of the retaining lien and the government's request that certain conditions be imposed on Mr. Flynn and Ms. DiMare's withdrawal as counsel.  On September 4, 2007, the District Court granted the motion to withdraw and found that former counsel have a valid retaining lien on the client files under Nevada law (#256).  The effect of the retaining lien is that former counsel does not have to surrender the client files until the Montgomery parties either pay the disputed fees and costs or post a bond with the court for the amount at issue. To date, the Montgomery parties have elected not to do either. The District Court further imposed two of the four conditions requested by the United States to safeguard documents in the client files that may be subject to the military and state secrets privilege. *Id.*

After the District Court found that former counsel have a retaining lien under Nevada law, the Liner firm immediately filed an emergency *ex parte* application for clarification of the order granting the motion to withdraw (#274), which the District Court denied (#291). Shortly thereafter, this court granted former counsels' motion for attorneys' fees and costs, finding that this court specifically had jurisdiction to adjudicate the amount of fees due to former counsel (#296). However, the court ordered that former counsel lodge supplemental points and authorities in support of the fee application *in camera*. *Id.*  Finally, the court  ordered the Montgomery parties' counsel to deliver a copy of the court's order to the presiding judge in the Superior Court of the State of California in advance of the hearing scheduled in that matter.  *Id.*

Notwithstanding this court's order finding it had jurisdiction to adjudicate former counsels' fee application, the Liner firm proceeded with an October 18, 2007 hearing in the Los Angeles County Superior Court (#s 323/324).   On November 21, 2007, Judge House dismissed the matter on the basis of forum non conveniens and stated in her order, "California is involved in this matter due to an unsubstantiated allegation by the plaintiff that defendant misrepresented to him that defendant was licensed to practice in California. This case is before a California court for the transparent purpose of

---

[1]The Liner firm, on behalf of the Montgomery parties, also initiated proceedings against Mr. Flynn with the California and Massachusetts State Bar Associations.

1    having this court countermand the orders of the Nevada District Court.  California has no interest in

2    doing so" (#357, Ex. 1 at page 3, lines 20-25).

3          After the California state court hearing regarding the Montgomery parties' attempt to circumvent

4    the rulings of the District Court and this court as it pertains to the attorneys' fee dispute, the Montgomery

5    parties next filed a motion to require former counsel to redact attorney-client communications prior to

6    submission of supplemental billings to the court (#302).[2]   The court stayed briefing until it could

7    consider this motion and ultimately denied the Montgomery parties' motion, but did establish a protocol

8    for submission of revised billing statements, as well as a new briefing schedule (#338).  This court noted

9    that when disputes arise between attorney and client, the attorney is permitted to reveal privileged

10   communications to establish the fee. *Id; see also Van Asdale v. Int'l Game Technology,* 498 F.Supp.2d

11   1321 (D. Nev. 2007).   The court reiterated that all further papers pertaining to the fee dispute be

12   submitted *in camera,* it cautioned former counsel to disclose only those attorney-client communications

13   necessary to describe the legal services provided, and it admonished former counsel to refrain from

14   inserting invective and personal attacks on their former clients in the billing statements (#338).

15   **II.    Discussion and Analysis**

16        *A.    Retaining Lien*

17        The Nevada Supreme Court has held that "... the court in the action in which the attorney's

18   services were rendered has incidental jurisdiction to resolve disputes between a litigant and his attorney

19   relative to the establishment of an attorney's lien." *Gordon v. Stewart*, 74 Nev. 115, 118 (1958).  A

20   retaining lien entitles an attorney "to retain the client's papers, property or money until a court, at the

21   request of the client, requires the attorney to deliver the retained items upon the client's furnishing of

22   payment or security for the attorney's fees." *Figliuzzi v. Eighth Judicial District Court*, 111 Nev. 338,

23   342 (1995).  This right depends on the possession of the actual file.  *Morse v. Eighth Judicial District*

24   *Court in and for Clark County*, 65 Nev. 275, 282 (1948).  Pursuant to a retaining lien, an attorney may

25   recover outstanding compensation "for all professional services performed whether in the action itself

26   _____

27        [2]The Montgomery parties filed this motion before the California Superior Court issued its order.

28                                                    4

1    or in prior actions or for general legal services." *Id*. Former counsel have a retaining lien on the client

2    files in their possession (#256).

3         **B.    *Quantum Meruit***

4         The doctrine of *quantum meruit* generally applies to an action for restitution where work

5    performed by one party is founded on a promise by another party to pay as much as is reasonably

6    deserved for that work. *Sack v. Tomlin*, 110 Nev. 204, 208 (1994). An "attorney may recover the

7    reasonable value of his services on a *quantum meruit* basis." *Harwood v. Carter*, 47 Nev. 334 (1924);

8    *see also Gordon v. Stewart*, 74 Nev. 115 (1958) ("The attorneys' right is not based upon (or limited to)

9    his lien. It is based upon contract express or implied. The lien, as is true of other forms of lien, is but

10   security for his right.")

11        "A promise to pay the reasonable value of services may be implied... ." *Morrow v. Barger*, 103

12   Nev. 247, 252 (1987) (discussing a real estate claim in *quantum meruit*); *see also Mathews v. Collman*,

13   110 Nev. 940, 948 (1994) (holding that a broker had been acting as an agent for a real estate company,

14   "at least impliedly," and therefore, was entitled to the reasonable value of her services in *quantum*

15   *meruit*). "Where one performs services for another at the latter's request and there is no express

16   agreement as to compensation, a promise to pay the reasonable value thereof will be implied." *Checker,*

17   *Inc. v. I.M. Zeman, S.A.*, 86 Nev. 216 (1970) (finding an implied contract between the client and his

18   accounting firm where the client had previously paid bills without disputing the amount or the value).

19        It is undisputed that there was no signed fee agreement. However, Mr. Flynn contends that the

20   Montgomery parties made "numerous written and oral promises to pay me for all of my services

21   rendered and my costs, right up through May 2007" (#249, Flynn Decl. ¶ 17). He also asserts that prior

22   to June 2007, the Montgomery parties "never challenged, objected to, opposed or questioned any of the

23   invoices sent to them. In fact, they repeatedly praised my work and agreed to pay all invoices sent." *Id.*

24   The Montgomery parties do not traverse these statements. The only evidence directly from the

25   Montgomery parties in opposition to the fee motion are two declarations of Mr. Montgomery. In the

26   first, Mr. Montgomery attaches "sample copies" of billing statements for the period from January 2006

27   through November 2006 (#261, Montgomery Decl. and Ex. A). These consist of one-page statements

28

1   identifying the attorneys who performed the legal services, the hours billed for each, their hourly rates,

2   and the total amount for services rendered. *Id.* It is undisputed that the Montgomery parties paid these

3   bills. Apart from the Montgomery declarations, there is evidence that the Montgomery parties paid

4   former counsel attorneys' fees and costs for legal services for approximately one year in the amount of

5   $1,230,000.00 (#262, Ex. 2). Mr. Montgomery's second declaration attests that subsequent billing

6   statements for the period December 2006 through mid-July 2007 were block-billed (Montgomery Decl.,

7   filed December 13, 2007, *in camera*, #490).

8       The court finds that there was an implied promise to pay former counsel for their legal services.

9   There is no evidence that the Montgomery parties ever disputed the amount or the legal services

10   rendered for more than a one-year period. The one-page billing statements for fees and costs in excess

11   of one million dollars suggest that this was a "spare no expense" case, that former counsel were to

12   devote their complete attention to the Montgomery parties' legal matters, and that all concerned

13   implicitly understood and agreed that traditional billing practices were unnecessary. It was only when

14   the clients and former counsel had a falling out that the fee dispute arose.

15       The court also rejects the notion that Mr. Montgomery is an unsophisticated user of legal

16   services. The record in this proceeding, as well as the search warrant proceeding, reveals that Mr.

17   Montgomery has retained counsel for legal advice on a wide range of complex matters, including

18   copyrights, patents, and business organizations. He impresses the court as a highly intelligent,

19   sophisticated person who demands a high level of legal expertise from counsel, and as someone who

20   would not hesitate to challenge legal bills.

21       The court now turns to consideration of the reasonable value for the legal services rendered and

22   whether the Montgomery parties should compensate their former counsel for the legal services provided.

23       **C.    *The Reasonable Value of Legal Services Rendered***

24       Two common methods of determining reasonable value are looking at the "applicability of

25   established customs," or utilizing the amount the parties orally agreed upon. *See Asphalt Products Corp.*

26   *v. All Star Ready Mix, Inc.*, 111 Nev. 799, 802 (1995); *see also Flamingo Realty, Inc. v. Midwest*

27   *Development, Inc.*, 110 Nev. at 984, 988 (1994) (affirming the applicability of "established customs"

28

1    in determining the reasonable value and rate of compensation in the real estate industry). In *Gordon*,

2    the Nevada Supreme Court stated:

3           The amount of the agreed fee is certainly a proper consideration upon a
            determination, in *quantum meruit*, of reasonable value; but just as clearly,
4           it cannot be held to be the controlling or dominant consideration.
            *Quantum meruit* contemplates that the true reasonable value is to be
5           substituted for the agreed terms. Discrepancies between value and agreed
            terms are bound to occur in every case.
6
     *Gordon*, 74 Nev. at 119.
7
8           In determining whether the evidence supports the District Court's determination of what

9    constitutes "reasonable value," the Nevada Supreme Court has used the "substantial evidence" standard.

10   *See Asphalt Products*, 111 Nev. at 803.  "Substantial evidence is that which a reasonable mind might

11   accept as adequate to support a conclusion." *Id.* (citations omitted).  A district court has "wide discretion

12   in calculating an award of damages" under the doctrine of *quantum meruit*. *Flamingo Realty,* 110 Nev.

13   at 987.

14                    *1.      Reasonable Hourly Rate*

15          Former counsel charged the following hourly rates: Mr. Flynn at $400.00;  Ms. DiMare at

16   $300.00;  Mr. Rava at $300.00; and $80.00 for paralegals (#249, Flynn Decl.; *see also* exhibits attached

17   to Flynn's supplemental *in camera* declaration, dated December 4, 2007, #485).[3]  Mr. Moscaret, the

18   Montgomery parties' expert retained to review former counsels' billing statements, opined that these

19   hourly rates are reasonable, and the court agrees.

20                    *2.      Documents Submitted for the Court's Review*

21          To assist the court in determining the reasonable value for legal services rendered, the court

     ordered former counsel to supplement their fee motion and provide the following information:
22

23           A.      A summary of costs;
             B.      A summary description of unpaid legal service performed by category;
24           C.      Supplemental billing statements for the fees in dispute, itemizing the date
                     legal services were performed, a description of the legal services
25                   provided, the time spent on each service (in tenths of an hour) and the
                     dollar amount attributable to each item; and
26           D.      The information required pursuant to Local Rule 54-16(b).

27   _____

     [3]Mr. Rava only provided legal services for the period ending December 31, 2006.
28
                                                      7

1   (#s 296 & 338).  Former counsel did so, and these revised billing statements have drawn several

2   objections from Mr. Moscaret, particularly that these revised statements are vague and unclear, but at

3   the same time are too detailed to be reliable because they were created after the fact.

4          The court observes that from the outset of former counsels' representation of the Montgomery

5   parties, they did not engage in standard billing practices.  In fact, former counsel submitted monthly one-

6   page bills for legal services totaling many thousands of dollars, which were paid without question.  It

7   was not until former counsels' bills remain unpaid for several months that former counsel provided

8   "block billing" statements; that is, billing statements that state the date legal services were rendered, a

9   general description, or "bundle," of those legal services, and the hours spent by each attorney.  *See*

10  Montgomery Decl., #490*, in camera*, Ex. A.

11         After the court reviewed these revised billing statements, it ordered former counsel to "unbundle"

12  their itemization of legal services and to provide the task summaries to enable the court, and presumably

13  the Montgomery parties, to better evaluate the disputed fees.  The court fully recognized that the fees

14  in dispute did not occur in a vacuum; rather, they were incurred over many months in a highly complex

15  proceeding, which included the unsealing of a search warrant, trade secret litigation, technology that

16  caused the United States to invoke the military and state secrets privilege, national media attention, and

17  many hotly contested motions.  There is nothing remotely routine about these proceedings.

18          The court also knew that in directing former counsel to reconstruct their billing statements, it

19  would be impossible to recapture every tenth of an hour or to fully itemize each task performed on a

20  given day.  It is evident that former counsel devoted themselves full time to representing the

21  Montgomery parties.  Given the nature and volume of the work, it would be difficult, if not impossible,

22  to create standard time sheets for every meeting, every email, every telephone call, and so on.  This is

23  especially true in light of the fact that the court now understands that a one-page monthly statement had

24  sufficed between the clients and counsel for more than one year.  In addition, because the Montgomery

25  parties' were concerned former counsel would prejudice them by gratuitously disclosing attorney-client

26  privileged matters in the billing statements, the court ordered that the supplemental papers were not only

27  to be lodged *in camera*, but that former counsel were to take great care in describing legal services

28

1  rendered.  The consequence is that many billing entries are only generically described.  It is inconsistent

2  for the Montgomery parties to now complain about vagueness or lack of more thorough documentation.

3         The Montgomery parties are in the best position to challenge former counsels' supplemental

4  billing statements and the declarations of former counsel, but they declined to do so.  They contend they

5  "have been prevented from telling their side of the story" because this court ruled that the only fees in

6  dispute are those that remain unpaid.  This, the Montgomery parties claim, punishes them for asserting

7  the attorney-client privilege (Montgomery parties' *in camera* response to Michael Flynn's supplemental

8  submission in support of motion for attorney fees and costs dated December 13, 2007, #488).  The court

9  rejects the Montgomery parties' assertion of prejudice.  The court has acceded to nearly every request

10  the Montgomery parties made regarding the procedure by which the court would undertake review of

11  this dispute.  As a result, the court has only the declaration of Mr. Moscaret, the Montgomery parties'

12  expert, in opposition to former counsels' fee motion.

13         Although this fee dispute spans many months, many thousands of dollars in fees, and a multitude

14  of complicated legal issues, the court has not only reviewed every single time entry; it has the decided

15  benefit of having presided over these proceedings from the outset, and it is very familiar with the matters

16  which gave rise to the legal services rendered.

17                    ***3.      Local Rule 54-16***

18         Local Rule 54-16 ("LR 54-16") is typically invoked when the court is asked to determine an

19  attorneys' fee application at the conclusion of litigation; nevertheless, several of the considerations

20  outlined in LR 54-16(b)(3) are helpful to this court in assessing the reasonableness of former counsels'

21  fee motion.

22         (A)      The Results Obtained

23         The Montgomery parties prevailed on the pivotal Rule 41(g) motion to unseal the search warrant

24  and on motions related to that proceeding.  In the civil proceeding, the Montgomery parties prevailed

25  on an emergency temporary restraining order, a motion to dismiss, removal proceedings, discovery

26  matters, and a number of matters related to the 41(g) motion to unseal the search warrant affidavits. This

27  factor weighs in favor of former counsel.

28

(B)     The Time and Labor Required

Based upon the legal services rendered during the period in dispute and the court's review of the docket and former counsels' supplemental timesheets, it is evident that former counsel expended an extraordinary amount of time in representing the Montgomery parties.  However, the court reserves its discussion of time and labor and will discuss this factor in conjunction with Mr. Moscaret's objections.

(C)     The Novelty and Difficulty of the Questions Involved

The court finds that this case presents highly novel and difficult questions, including constitutional issues related to the search warrant proceeding, national security issues, the military and state secrets privilege, sophisticated and complex intellectual property issues concerning software technology and copyright law.  Additional matters include business and partnership matters, federal jurisdictional issues, alleged political corruption, and grand jury proceedings.  This factor weighs in favor of former counsel.

(D)     The Skill Requisite to Perform the Legal Service Properly

Given the complexity of the legal issues summarized above, the Montgomery parties necessarily required the services of a seasoned, experienced attorney who possesses both civil and criminal experience.  The court finds Mr. Flynn and Ms. DiMare possess such skill and experience.  This factor weights in favor of former counsel.

(E)     The Preclusion of Other Employment by the Attorney Due to Acceptance of the Case

It is undisputed that former counsel represented the Montgomery parties to the exclusion of other employment.  This factor weighs in favor of former counsel.

(F)     The Customary Fee

The court earlier addressed this issue and finds that former counsel's hourly rate is reasonable.

(G)     Fixed or Contingent Fee

The court is proceeding in *quantum meruit* and has found an implied agreement existed for the payment of legal services.  This factor weighs in favor of former counsel.

10

(H)     The Time Limitations Imposed by the Client or the Circumstances

The court is familiar with both the search warrant proceeding and the civil proceeding and finds that there were substantial time limitations imposed on former counsel by the nature and complexity of the litigation.  This factor weighs in favor of former counsel.

(I)     The Experience, Reputation, and Ability of the Attorney(s)

Mr. Flynn is a trial lawyer with thirty-seven years of experience and the court finds him to be a highly skilled trial attorney.  Ms. DiMare is an experienced trial lawyer, having been in practice for seventeen years. This factor weighs in favor of former counsel.

(J)     The Undesirability of the Case

Former counsel acknowledge that this case presented novel, challenging legal issues which consumed their time for eighteen months. As a result, they were required to devote all of their professional time to these clients.  In addition, this case became the subject of national media attention, which required additional attorney time.  This factor can be said to weigh for or against former counsel.

(K)     Nature and Length of Professional Relationship with Clients

Mr. Flynn represented the Montgomery parties for eighteen months, from the inception of the search warrant and the civil proceedings.  Ms. DiMare's representation commenced in April 2006; therefore, she served as their attorney for sixteen months.  This factor weighs in favor of former counsel.

(L)     Awards in Similar Cases

This factor is inapplicable.

### 4.     Mr. Moscaret's Opinion

Federal Rule of Evidence 702 governs the admissibility of expert opinion testimony, and consists of three distinct, but related, requirements: "(1) the subject matter at issue must be beyond the common knowledge of the average layman; (2) the witness must have sufficient expertise; and (3) the state of the pertinent art or scientific knowledge permits the assertion of a reasonable opinion." *United States v. Finley*, 301 F.3d 1000, 1007 (9th Cir. 2002); *see also* Fed. R. Evid. 702.  The District Court is the "gatekeeper" of expert opinion testimony; thus, the court has a special responsibility to ensure that all expert opinion testimony has a "reliable foundation and is relevant to the task at hand." *Daubert v.*

1   *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993); *see also Kumho Tire Company, Ltd., v.*

2   *Carmichael*, 526 U.S. 137, 142 (1999).

3          In *Daubert*, the Supreme Court stated that the trial court should make a preliminary

4   determination as to whether the reasoning or methodology underlying the testimony is valid, and also

5   determine "whether that reasoning or methodology properly can be applied to the facts at issue."  509

6   U.S. at 592-93.  The Court set out certain factors the trial court may use in making such an assessment.

7   *Id*. at 593.  These factors include whether the theory or methodology can be or has been tested, whether

8   it has been subjected to peer review, whether there is a high "known or potential rate of error" with

9   respect to that particular methodology, whether there are standards controlling the methodology, and

10  whether the theory or methodology enjoys "general acceptance" within the relevant professional

11  community.  *Kumho*, 526 U.S. at 149-50 (citing *Daubert*, 509 U.S. at 592-94).  In some cases, "the

12  relevant reliability concerns may focus upon personal knowledge or experience," and in other cases, such

13  determinations are dependent upon the nature and facts of the case.  *Id*. at 150.

14         The test of reliability is "flexible;" therefore, the trial court need not necessarily or exclusively

15  use the *Daubert* factors in determining the reliability of expert opinion testimony.  *Kumho*, 526 U.S. at

16  150.  "The law grants a district court the same broad latitude when it decides *how* to determine reliability

17  as it enjoys in respect to its ultimate reliability determination."  *Id*. at 143 (citing *General Electric Co.*

18  *v. Joiner*, 522 U.S. 136, 143 (1997)).  Appellate courts review District Courts' decisions under an "abuse

19  of discretion" standard.  *General Electric*, 522 U.S. at 141.

20         The court earlier noted that apart from Mr. Montgomery's brief declarations regarding billing

21  statements, the Montgomery parties submit only the declaration of Mr. Moscaret in opposition to former

22  counsels' fee application.  According to Mr. Moscaret's declaration, he spent two days at the Liner firm

23  in October 2007, during which he spoke with counsel assigned to this action, he reviewed certain non-

24  privileged documents, and he reviewed all documents that pertain to this fee dispute.  *See* December 13,

25  2007 *in camera* supplemental declaration of Kenneth M. Moscaret #489; *see also* #306, original

26  Mosacret Decl.  Mr. Moscaret discloses that he has routinely been qualified as an expert witness

27  regarding outside counsel billings in numerous large, complex federal proceedings, but fails to state the

28

amount of the fee he charged for his services, other than to disclose that he charges an hourly rate. *Id.*

In addition to his declarations, Mr. Moscaret attaches five charts to his supplemental declaration through which he further analyzes former counsels' billing statements. The court has spent considerable time reviewing Mr. Moscaret's declarations and the attached charts and offers the following observations. First, based upon a brief two-day review of documents relevant to this fee dispute, there is no conceivable way that Mr. Moscaret can understand the nature and complexity of this case. Rather, Mr. Moscaret's review is more comparable to that of an auditor who reviews objective data – the time entries – and opines about them based upon standard and customary billing practices. However, this is not a routine piece of litigation, and the Montgomery parties paid former counsels' fees in excess of $1.2 million based upon monthly one-page billing statements. Second, it is abundantly clear that the clients and former counsel understood that this practice was acceptable in light of the volume, complexity and time pressures inherent in this proceeding. Third, when this court ordered former counsel to revise their billing statements, it was well aware that such reconstruction could not operate in a vacuum. Fourth, there is no dispute that former counsel were exclusively devoted to representation of the Montgomery parties for eighteen months, that the client expected their complete time and attention, and that it is difficult to capture every time entry that might otherwise appear in a more typical piece of litigation.

Mr. Moscaret also opines that former counsels' fees warrant reduction for the following reasons: (1) consecutive days of double-digit billings; (2) many entries are vague, unclear, and lack detailed subject matter; (3) the revised billing statements still contain improper block billings; and (4) there are discrepancies in supplemental billing entries when compared with original invoices. The Montgomery parties cannot have it both ways, on the one hand arguing that the statements should exclude all privileged information, and on the other hand, that the redacted statements are now vague and unclear. It was the Montgomery parties who objected to former counsels' initial revised billing statements and who also asked that former counsel be admonished to avoid gratuitous disclosure of attorney-client privilege. The result is that there are many vague entries as well as additional information that differs from the original billing statements.

13

Given that Mr. Moscaret's opinions constitute the basis of the Montomery parties' objections to former counsels' fee application, the court analyzes Exhibit B to Mr. Mosacret's declaration, which responds to former counsels' court-ordered task summary. *See* December 4, 2007 *in camera* summary description of unpaid legal services performed by category (#483).

A.      Respond to Objections to 41(g) Order – 98.65 hours

Mr. Moscaret incorrectly attributes 98.65 hours to this category.  As former counsel correctly pointed out, Mr. Moscaret combined hours billed on another category, which was opposition to eTreppid's 41(g) motion for reconsideration. These are separate tasks, and the court is familiar with each.  The court notes that former counsel prevailed on the Rule 41(g) motion, which was extremely complex and drew objections from the United States, which required a response to preserve the court's order that favored the Montgomery parties. The court finds the hours were reasonably expended in both categories.

B.      *Ex Parte* Motion to Shorten Time and Motion to Unseal – 31.75  hours

The court has reviewed the motions related to this entry, which includes a detailed declaration from Mr. Flynn.  The court observes that while the time spent on this category would ordinarily be extremely excessive, such was not the case here.  Mr. Moscaret did not review the underlying work to better understand it in context.  The court has, and it finds these hours to be reasonable.

C.      Media Issues, E-Mails, Phone Calls for February 2007 – 52.5 hours

Mr. Moscaret incorrectly attributes 52.5 hours for media matters to February only, when the total number is for two months, both January and February 2007.  This represents less than one hour per day. Apart from standard legal representation, former counsel became embroiled in responding to media questions after publication of newspaper articles in *The Wall Street Journal* and other national media outlets.  The court finds these hours to be reasonable.

D.      Motion to Obtain Disclosures – 40 hours

Mr. Moscaret incorrectly combines the hours attributable to two motions, not one. The first motion was filed under seal in the search warrant proceeding, and the second was filed in the civil

14

proceeding and does not contain sensitive information.  The court has reviewed each of these motions, which are both twenty pages in length, and it finds these hours to be reasonable.

E.   Opposition to Motion for Restraining Order – 96.50 Hours

The court has reviewed eTreppid's motion for temporary restraining order (#s 73, 74), the Montgomery parties' opposition (#s 126, 127), and the District Court's order denying the motion (#136). The court has also considered the *in camera* response of former counsel.  The court finds these hours to be reasonable.

F.   Response to Trepp Emergency Motion – 70.8 Hours

Mr. Moscaret's characterization of this time as excessive continues to reflect his lack of understanding of the dynamics of this litigation.  As with other task summaries, on its face, this amount of time appears excessive.  However, had Mr. Moscaret reviewed the underlying motions, declarations, and related documents, he may have reached a different conclusion.  The court has done so, and further notes that eTreppid's emergency motion was denied.  The court finds these hours to be reasonable.

G.   Activity in Response to Grand Jury Subpoena – 42.15 Hours

The court has no direct knowledge of the grand jury proceedings pending in Washington, D.C., apart from references made in papers filed in this action.  Without having even that cursory understanding, Mr. Moscaret's opinion is that the time billed is excessive, although he admits he has no knowledge of Mr. Flynn's expertise in criminal matters.  One would think that would be part of his assignment before rendering an opinion.  In response, Mr. Flynn submitted a more detailed explanation of those grand jury proceedings, including the fact that the motion to quash the grand jury subpoena was granted.  The court is satisfied that Mr. Flynn possesses significant experience in criminal matters, and that the hours expended are reasonable.

H.   E-mails, Calls, Media Issues – March 2007) – 28 Hours

Mr. Moscaret opines that this collection of time entries is excessive, since it totals three and one-half days for what he considers to be routine tasks.  However, when these hours are divided over the month of March, it amounts to about one hour per day.  As Mr. Flynn noted in his response, there were

1    two additional articles published in *The Wall Street Journal* on February 15 and March 30, 2007, which

2    required Mr. Flynn's attention.  The hours expended are reasonable.

3                   I..    Opposition to Government Motion for Protective Order – 370.2 Hours

4          Mr. Moscaret calculates that this entry totals forty-six days of attorney time, and he concludes

5    that the time spent is "undoubtedly excessive." However, there is no such category in the task summary,

6    so it is unclear what matters Mr. Moscaret combined to reach his total. There were different motions for

7    protective orders filed in this action, and each dealt with complex legal issues.  There is simply no way

8    for the court to understand Mr. Moscaret's conclusion; therefore, the court rejects this challenge to the

9    hours billed.

10                  J.    Motion to Withdraw – 45.35 Hours

11         Mr. Moscaret challenges this category as excessive on its face, and he also contends that the

12   client should not be charged the cost of the motion to withdraw.  The court has reviewed Mr. Flynn's

13   response and understands the issues underlying Mr. Flynn's decision to move to withdraw as counsel,

14   the professional responsibility concerns his withdrawal implicated, and related issues between Mr.

15   Montgomery and Mr. Flynn.  In addition, the government filed a response to address issues related to

16   the military and state secrets privilege, which are unique to this proceeding. The court  is quite familiar

17   with the motion to withdraw and sensitive issues that arose between client and counsel.  As with other

18   categories of tasks, the hours billed in this category appear excessive, but the court understands the

19   subtext of what occurred.  The court finds these hours are reasonable.

20                  K.    Invoice #14 – July 11 through December 4, 2007

21         The remaining task summaries to which Mr. Mosacret objects are of no help to the court because

22   he combines several categories together, but fails to identify how he did so.  The court will not rely on

23   the balance of Mr. Moscaret's Exhibit B and, instead, undertakes its own review of the remaining

24   sections of Invoice No. 14 in dispute.  The court does note that it has reviewed and considered Mr.

25   Moscaret's discussion of Invoice #14 in his supplemental declaration (#489).

26

27

28                                                    16

1.     **Montgomery Parties' Los Angeles Litigation and State Bar-Related Complaints Against Former Counsel**

This category concerns the following entries on the task summary:

|  |  |
|---|---|
| 8/3 – 8/7 | 45.6 hours |
| 9/25 – 9/27 | 16   hours |
| 9/25 – 10/2 | 76.7 hours |
| 9/25 – 10/3 | 35   hours |
| 10/5 – 11/14 | 87.5 hours |
| 10.5 – 10/28 | 18   hours |
| Total | 278.8 hours |

The hours represented by these task concern the disputes that arose between former counsel and the Montgomery parties in California Superior Court, and the State Bars of California and Massachusetts after former counsel moved to withdraw as counsel and, thereafter, when the District Court granted former counsels' motion to withdraw.  The court notes that the initial strategy of the Montgomery parties and the Liner firm was to challenge former counsels' fee dispute in every forum but this one and to compel former counsel to expend substantial time and attorneys' fees in defending themselves, even in the face of clear orders issued by the District Court and this court to the contrary.  This conduct resulted in the expenditure of many thousands of dollars in attorneys' fees for all concerned, but also in even greater delays in the disposition of the instant motion. The Montgomery parties have repeatedly complained to this court that they have been prejudiced because they do not have former counsels' client files.  Had they not pursued these protracted attempts to wrest jurisdiction from this court and had they provided something more than Mr. Moscaret's declaration and exhibits in opposition to this fee dispute, the court would have been in a far better position to decide this motion sooner rather than later.

Having reviewed these billing entries and task summaries, the court disallows the following attorneys' fees for this category of legal services: Mr. Flynn – $90,080.00 and Ms. DiMare – $45,240.00. The total amount disallowed in this category is $135,320.00.

2.     **Former Counsels' Motion for Attorneys' Fees and Court-Ordered Supplemental Fee Application**

This category concerns the following entries in the task summary:

|  |  |  |  |
|---|---|---|---|
| 1. | 8/18 – 9/24 | 113.6 | hours |
| 2. | 10/23 – 11/5 | 23.3 | hours |

17

3.    11/27 – 12/ 4    68.65  hours[4]
4.    12/4 – 12/ 5    10      hours[5]

Total:        215.55  hours

Former counsel incurred these hours for the preparation of the motion for attorneys' fees, in their reply in support of that motion, and in providing the supplemental billing statements and related summaries pursuant to this court's November 27, 2007 order.  Although the court believes that the supplemental briefing procedure ordered by the court inured to the benefit of the Montgomery parties in challenging the fee application, the court finds that these fees are not reasonably recoverable under *quantum meruit.*  Based upon the foregoing, the court disallows the following attorneys' fees: Mr. Flynn – $54,040.00 and Ms. DiMare – $24,135.00.  The total amount disallowed in this category is $78,175.00.

## L.    Mr. Moscaret's Charts: #s 1, 2, 4, and 5

The court has reviewed Mr. Moscaret's charts in which he objects to time entries that appears throughout the billing statements as vague, unclear, lacking in subject matter, block billing, consecutive double-digit billing days, and entries that he asserts contain major discrepancies between the original versus the supplemental invoices.  As repeatedly noted herein, this court is in a far better position than Mr. Moscaret to assess the reasonableness of the fee application, not only because the court is familiar with the underlying proceedings; it also spent considerable time reviewing those proceedings, comparing the work performed  to the time entries, which is something Mr. Moscaret did not do.  Accordingly, the court gives little weight to these charts.

### 5.    *Costs – Local Rule 54-16(b)(2)*

Pursuant to LR 54-16(b)(2) and this court's orders (#s 296 and 338), former counsel submitted *in camera* a summary description of costs, which total $27,151.00 (December 4, 2007 *in camera* summary description of outstanding costs, #484).  The Montgomery parties do not dispute this itemization of costs with the exception of costs associated with post-withdrawal matters, which include

---

[4]The original total for this category is 89.65; former counsel later noted the correct total is 68.65 hours.

[5]These hours were submitted in the December 5, 2007 *in camera* supplemental errata filed by Ms. DiMare (#487).

18

costs related to former counsels' fee motion, the California Superior Court proceedings, and California and Massachusetts Bar proceedings. In reviewing the December 4, 2007 *in camera* summary of costs and the disputed invoices, the court notes that no costs were assessed for Lexis or copying after August 2007. Invoice #14 is the final invoice at issue indicates that $240.82 is related to the California Superior Court matter. (December 4, 2007, *in camera,* supplemental Flynn Decl. #485, Ex. 7). The court agrees that this amount should be deducted, and awards the balance of $26,910.18 in costs to former counsel.

**III.    Conclusion**

Based upon the foregoing, this court finds that the reasonable amount of the attorneys' fees former counsel shall be entitled to recover is $530,612.00 and costs in the amount of $26,910.18, for a total of $557,522.18.

All documents submitted *in camera* concerning the motion for attorneys' fees have been filed *under seal* and shall be available for review only by the court (#s 483- 487).

The Montgomery parties' *in camera* evidentiary objections, dated December 13 and December 26, 2007 (#s 491 & 496), are denied, and the Montgomery parties' *in camera ex parte* application for order striking supplemental reply dated December 26, 2007 (#495) is also denied.

**IT IS SO ORDERED.**

DATED:   March 24, 2008.

_____
UNITED STATES MAGISTRATE JUDGE