UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DENNIS MONTGOMERY and the MONTGOMERY FAMILY TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>ETREPPID TECHNOLOGIES, LLC; WARREN TREPP; and the UNITED STATES DEPARTMENT OF DEFENSE,<br><br>Defendants.<br><br>AND ALL RELATED MATTERS. | 3:06-CV-00056-PMP-VPC<br>BASE FILE<br><br>3:06-CV-00145-PMP-VPC<br><br>O R D E R |

Presently before the Court is Dennis Montgomery and the Montgomery Family Trust's ("Montgomery") Notice of Motion and Motion to Dismiss eTreppid's Counterclaim Re Non-Statutory Trade Secret Claims Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. #413), filed on January 22, 2008. eTreppid Technologies, Inc. and Warren Trepp ("eTreppid") filed an Opposition (Doc. #426) on February 11, 2008. Montgomery filed a Reply (Doc. #446) on February 25, 2008.[1]

///

///

---

[1] Montgomery also filed a Motion for Judgment on the Pleadings Re: eTreppid's Non-Statutory Trade Secret Tort Claims (Doc. #325). This motion was directed at eTreppid's prior Counterclaim. Because eTreppid since has filed a new Counterclaim, the Court will deny this motion as moot.

///

## I. BACKGROUND

This case concerns a dispute between eTreppid and Montgomery as to who owns certain computer software source code. At issue in the present motion are eTreppid's non-statutory state law tort claims asserted in eTreppid's Counterclaim (Doc. #393). Specifically, the Montgomery parties argue eTreppid's claims in counts three, four, five, seven, nine, ten, and eleven are preempted by Nevada's Uniform Trade Secrets Act because they arise out of the same factual allegations as eTreppid's misappropriation of trade secrets claim. eTreppid responds that its other tort claims include conduct beyond Montgomery's alleged misappropriation of trade secrets, and therefore the Act does not preempt the claims. Additionally, eTreppid argues that even if the claims are duplicative, eTreppid may plead in the alternative under Federal Rule of Civil Procedure 8.

In the Counterclaim, eTreppid alleges it is in the business of developing and marketing software, including software for data compression, pattern recognition, object tracking, and anomaly detection. (Countercl. [Doc. #393] at 13.) The software is written in human readable computer language known as source code. (Id. at 9.) The Counterclaim defines the term "eTreppid Source Code" as "the source code which comprises eTreppid's digital compression products, including data compression, pattern recognition, object tracking and anomaly detection and other related functions." (Id. at 9, 13.) eTreppid contends it took measures to protect access to its Source Code, including limiting the storage of the Source Code to two password-protected servers and computer workstations. (Id. at 14.) Only Montgomery and one other eTreppid employee knew the password. (Id.) These computers were stored in a room accessible by only a few employees. (Id.) In addition to this security, eTreppid controlled access to its building and had an alarm system. (Id.)

eTreppid alleges it permitted its employees to work on portions of the eTreppid

Source Code from a shared directory, but only Montgomery, eTreppid's Chief Technology Officer, had access to the complete eTreppid Source Code. (Id. at 9, 11, 15.) According to the Counterclaim, Montgomery began deleting eTreppid Source Code files in December 2005. (Id.) eTreppid contends Montgomery removed one of the backup workstations used to store the Source Code and Montgomery deleted the Source Code from the eTreppid servers and the employees' workstations. (Id. at 16.) eTreppid discovered the Source Code was deleted in January 2006 and thereafter terminated Montgomery's employment. (Id. at 16-17, 19.) eTreppid alleges that as a result of Montgomery deleting its Source Code, eTreppid's employees' ability to perform their work on customer projects is limited, eTreppid is unable to obtain contracts with interested customers, and also has been "precluded from doing business with certain of its prior customers because they had been brought into this litigation by Montgomery." (Id. at 18-19.)

On March 6, 2006, Federal Bureau of Investigation ("FBI") agents searched Montgomery's residence and rented storage units. (Id. at 18.) The FBI seized, among other things, computer hard drives. (Id.) eTreppid contends twenty-seven of these hard drives belong to eTreppid, as documented by the serial numbers and eTreppid's receipts. (Id.)

eTreppid initially brought an action against Montgomery in state court, where it obtained a preliminary injunction restraining Montgomery from "destroying, hypothecating, transferring, modifying and/or assigning the eTreppid Source Code, [and] from discussing any eTreppid technology, including anomaly detection and pattern recognition software, with any third-party." (Id. at 19.) eTreppid contends that after it terminated Montgomery's employment in January 2006, and after the preliminary injunction took effect, Montgomery discussed the eTreppid technology with potential investors, including Counterdefendants Edra Blixseth, Michael Sandoval, Opspring LLC, and Atigeo LLC. (Id. at 19-20.) According to eTreppid, these individuals and entities

currently possess the eTreppid Source Code and are modifying and developing the Source Code to market it to third parties. (Id. at 20.)

After eTreppid brought suit in Nevada state court, Montgomery brought suit in this Court and then removed the state court action to this Court. The Court has consolidated the actions. Based on the above allegations, eTreppid brings counterclaims for misappropriation of trade secrets under Nevada Revised Statutes § 600A.010 et seq., breach of contract, conversion, breach of fiduciary duty, bad faith - tortious and contractual, declaratory relief, intentional interference with contract, claim and delivery, civil conspiracy, and intentional interference with prospective economic relations. Montgomery moves to dismiss counts three, four, five, seven, nine, ten and eleven as preempted by the Nevada Uniform Trade Secrets Act.

## II. DISCUSSION

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." Wyler Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted). However, the Court does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in the plaintiff's complaint. See Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994). There is a strong presumption against dismissing an action for failure to state a claim. Ileto v. Glock Inc., 349 F.3d 1191, 1200 (9th Cir. 2003). "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" Hydrick v. Hunter, 500 F.3d 978, 985 (9th Cir. 2006) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. Bell Atl. Corp. v Twombly, 127 S. Ct. 1955, 1965 (2007). Such allegations must amount to "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Id. at 1964-65.

///

## A. Preemption

Nevada's Uniform Trade Secrets Act prohibits the misappropriation of trade secrets and provides for a private right of action for damages and injunctive relief. See Nev. Rev. Stat. § 600A.010 et seq. The Act contains a provision indicating it displaces certain conflicting tort remedies:

> 1. Except as otherwise provided in subsection 2, this chapter displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret.
> 2. This chapter does not affect:
>    (a) Contractual remedies, whether or not based upon misappropriation of a trade secret;
>    (b) Other civil remedies that are not based upon misappropriation of a trade secret; or
>    (c) Except as otherwise provided in NRS 600A.035, criminal sanctions, whether or not based upon misappropriation of a trade secret.

Nev. Rev. Stat. § 600A.090. The Act precludes common law tort claims arising from a "single factual episode" of misappropriation of a trade secret. Frantz v. Johnson, 999 P.2d 351, 357-58 (Nev. 2000); Hutchison v. KFC Corp., 809 F. Supp. 68, 71-72 (D. Nev. 1992) (dismissing various common law tort claims as precluded by the Act). However, Nevada's Uniform Trade Secrets Act does not provide a "blanket preemption to all claims that arise from a factual circumstance possibly involving a trade secret." Frantz, 999 P.2d at 357 n.3. If the plaintiff asserts claims that "do not depend on the information at issue being deemed a trade secret," the Act will not preclude those claims. Id.

Pursuant to Federal Rule of Civil Procedure 8, "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Even if any of the above claims are duplicative of the misappropriation of trade secrets claim and therefore preempted by the Nevada Unfair Trade Secrets Act, eTreppid is entitled to plead the claims in the alternative under Rule 8. eTreppid cannot recover on both types of claims. See Frantz, 999 P.2d at 357-58 (finding

5

1 district court erred in awarding damages on both statutory and common law claims based
2 on a misappropriation of trade secrets). However, it may plead the statutory and non-
3 statutory claims in the alternative at this stage of the proceedings, and it therefore would be
4 premature to dismiss eTreppid's common law claims.[2] The Court will deny Montgomery's
5 motion to dismiss on this basis.

### B. Count Three - Conversion

Montgomery argues eTreppid fails to state a conversion claim because a claim for conversion of an intangible asset will not lie. See Custom Teleconnect, Inc. v. Int'l Tele-Serv., Inc., 254 F. Supp. 2d 1173, 1182 (D. Nev. 2003) ("Courts have traditionally refused to recognize conversion of intangible assets that are not merged with something more tangible."). eTreppid's conversion claim alleges Montgomery converted "eTreppid Confidential Information (including, but not limited to, email files and the eTreppid Source Code) and other property." (Countercl. at 22.) With respect to the "other property," the Counterclaim alleges Montgomery removed one of the backup workstations used to store the Source Code and took eTreppid hard drives as demonstrated by the items the FBI seized. (Id. at 18-19.) eTreppid has alleged Montgomery converted tangible items in the form of a computer workstation and hard drives, as well as intangible electronic information merged with the tangible hard drives. The Court therefore will deny Montgomery's motion to dismiss count three.

### C. Count Seven - Interference with Contract

Montgomery argues the Court should dismiss this claim because it does not allege eTreppid had a valid and existing contract. Montgomery also argues eTreppid fails

---

[2] Although this Court dismissed conflicting common law claims as preempted by the Nevada Uniform Trade Secrets Act in another action, it is unclear from the opinion in that case whether the plaintiff argued he was entitled to plead in the alternative under Rule 8. See Hutchison, 809 F. Supp. at 71-72.

6

to state a claim because it relies on Montgomery bringing suit against third parties and Montgomery has a constitutional right to petition the government for redress of grievances. To establish an intentional interference with contractual relations, a plaintiff must show (1) a valid and existing contract; (2) the defendant knew of the contract; (3) the defendant committed intentional acts intended or designed to disrupt the contractual relationship; (4) the defendant's conduct actually disrupted the contract; (5) resulting in damage. J.J. Indus., LLC v. Bennett, 71 P.3d 1264, 1267 (Nev. 2003).

The Counterclaim alleges Montgomery knew of certain contracts between eTreppid and third parties, including LLH & Associates, and Montgomery interfered with the contractual relationship between eTreppid and "each and every third party with which eTreppid had a contract . . . ." (Countercl. at 25.)  Montgomery's assertion that the claim does not allege an existing contract therefore is incorrect.  Further, eTreppid's claim is not based solely on Montgomery's actions in joining certain parties to a lawsuit.  eTreppid also alleges Montgomery deleted all versions of eTreppid's Source Code from eTreppid's computers and failed to make backup disks as he stated he had been doing, thereby limiting eTreppid's ability to perform work for its customers.  (Id. at 16-18.)  The Court therefore will deny Montgomery's motion to dismiss count seven.

**D.  Count Eleven - Interference with Prospective Economic Advantage**

Montgomery argues this claim fails to state a claim because the Counterclaim alleges Montgomery was justified in his alleged interference due to his claim he owns the Source Code.  The intentional interference with prospective economic relations claim alleges eTreppid had prospective contractual relationships with third parties with respect to the technology and Source Code, Counterdefendants knew of these prospective relationships, they intended to prevent eTreppid from entering these relationships, and they acted without privilege or justification in interfering with eTreppid's prospective relationships.  (Id. at 27-28.)  Elsewhere, the Counterclaim asserts "Montgomery claims to

7

own some or all of the eTreppid Source Code and other eTreppid Confidential Information, through his association with and control of the Montgomery Family Trust." (Id. at 10.)

To establish the tort of interference with prospective business advantage, a plaintiff must show:

> (1) a prospective contractual relationship between the plaintiff and a third party; (2) the defendant's knowledge of this prospective relationship; (3) the intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and, (5) actual harm to the plaintiff as a result of the defendant's conduct.

Consol. Generator-Nevada, Inc. v. Cummins Engine Co., Inc., 971 P.2d 1251, 1255 (Nev. 1998). However, the allegation that Montgomery has claimed he owns the Source Code does not establish Montgomery was justified or privileged in his alleged interference. For example, Montgomery's claim to ownership could have been knowingly false. Such a claim would not amount to justification or privilege. The Court therefore will deny Montgomery's motion to dismiss count eleven.

## III. CONCLUSION

IT IS THEREFORE ORDERED that the Montgomery Parties' Motion for Judgment on the Pleadings Re: eTreppid's Non-Statutory Trade Secret Tort Claims (Doc. #325 is hereby DENIED as moot.

IT IS FURTHER ORDERED that Dennis Montgomery and the Montgomery Family Trust's Notice of Motion and Motion to Dismiss eTreppid's Counterclaim Re Non-Statutory Trade Secret Claims Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. #413) is hereby DENIED.

DATED: April 7, 2008.

_____
PHILIP M. PRO
United States District Judge