**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MONTGOMERY, *et al.*, ) | 3:06-CV-00056-PMP-VPC |
| Plaintiffs, ) | BASE FILE |
| ) | |
| v. ) | 3:06-CV-00145-PMP-VPC |
| ) | |
| ETREPPID TECHNOLOGIES, LLC, ) | |
| *et al.*, ) | **ORDER** |
| ) | |
| Defendants. ) | |
| ——————————————— ) | |
| AND ALL RELATED MATTERS. ) | |
| ——————————————— ) | |

Before the court is eTreppid Technologies, LLC's ("eTreppid") points and authorities in support of its assertion of the attorney-client privilege against Dennis Montgomery (#427). Also before the court is Dennis Montgomery ("Montgomery") and the Montgomery Family Trust's ("the Trust") (collectively the "Montgomery Parties") memorandum of points and authorities showing that eTreppid's attorney-client privilege objections should be overruled in their entirety (#428 and #429). Both eTreppid and Montgomery filed replies (#438 and #439). eTreppid additionally filed a supplement and errata to their supplement (#s443-445). The court has thoroughly reviewed the record and the parties' submissions and concludes that eTreppid may withhold attorney-client privileged communications from Montgomery.

**I. HISTORY & PROCEDURAL BACKGROUND**

Plaintiffs in this action are Dennis Montgomery and the Montgomery Family Trust, members of eTreppid (#7). Defendants and counter-claimants are eTreppid Technologies, LLC, a limited liability company registered in the State of Nevada, and Warren Trepp, a member of eTreppid. *Id.* eTreppid is "in the business of developing and marketing software for various applications" (#393).[1]

_____

[1] This case has a very involved history, much of which is irrelevant to the current issues before the court. Therefore, the court does not here list all the claims and/or parties involved in this action and sets out

1    The Montgomery Parties' main claim is that eTreppid unlawfully used and sub-licensed

2    certain software that Montgomery invented and developed, and for which the Trust owns

3    copyrights (#7). eTreppid's primary counter-claim is that between December 2005 and January

4    2006, Montgomery knowingly destroyed and/or deleted software from eTreppid's computers and

5    servers, and also stole a complete copy of the software for his personal use and benefit (#393).

6    eTreppid claims that by stealing the software, Montgomery misappropriated eTreppid's trade

7    secrets. *Id*.

8    This dispute involves the Montgomery Parties' discovery requests, which eTreppid asserts

9    implicate the attorney-client privilege. Montgomery claims that as a member and former manager

10   of eTreppid, he is a "joint client" with eTreppid for the purposes of the attorney-client privilege;

11   as such, eTreppid may not assert the attorney-client privilege against him with respect to

12   privileged communications created during the time he was a manager and member of eTreppid

13   (#428). eTreppid's position is that it is the sole client for the purposes of the attorney-client

14   privilege, that the ability to assert or waive the privilege belongs to current management, and that

15   Montgomery is no longer current management as he is adverse to eTreppid and has been since

16   2006 (#427). As the parties were unable to resolve this issue, the court ordered that the parties

17   file simultaneous briefs setting out their respective views (#419).

18                                  **II.  DISCUSSION**

19                     **A. Attorney-Client Privilege**

20           "The attorney-client privilege is one of the oldest recognized privileges for confidential

21   communications." *Swidler & Berlin v. U.S.*, 524 U.S. 399, 403 (1998). Its main purpose is "to

22   encourage full and frank communication between attorneys and their clients and thereby promote

23   broader public interests in the observance of law and the administration of justice." *Upjohn Co.*

24   *v. United States*, 449 U.S. 383, 389 (1981). The privilege extends to "confidential disclosures

25   made by a client to an attorney in order to obtain legal advice ... as well as an attorney's advice

26   in response to such disclosures." *U.S. v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996).

27   ───────────────

28   only the facts necessary to the immediate issues.

1    Only the holder of the attorney-client privilege may waive it.  *Tennenbaum v. Deloitte &*
2    *Touche*, 77 F.3d 337, 340-41 (9th Cir. 1996).  The privilege is not absolute and may be waived
3    or lost under certain circumstances.  *Weil v. Investment/Indicators, Research & Management*, 647
4    F.2d 18, 24 (9th Cir. 1981) (privilege waived upon voluntary disclosure to third-party); *see also*
5    *In re Napster, Inc. Copyright Litigation*, 479 F.3d 1078, 1090 (9th Cir. 2007) (privilege lost due
6    to crime-fraud exception).  Because it impedes "the full and free discovery of the truth, the
7    attorney-client privilege is strictly construed" and "'applies only where necessary to achieve its
8    purpose.'"  *United States v. Taleo*, 222 F.3d 1133, 1140 (9th Cir. 2000) (quoting *Weil*, 647 F.2d
9    at 24 and *Fisher v. United States*, 425 U.S. 391, 403 (1976)).

10       **B. Analysis**

11    The essential issue here is whether, over the objections of eTreppid, Montgomery has the
12    right to access attorney-client privileged communications for the time period during which
13    Montgomery served as a manager and active member of eTreppid.  The issue turns this question:
14    who is the client for purposes of the attorney-client privilege?

15    The parties generally agree that the attorney-client privilege belongs to the "client," and
16    that only the "client" may assert or waive the privilege.  However, the parties disagree as to who
17    the client is.  eTreppid takes the "entity is the client" position, arguing that eTreppid, as a limited
18    liability company ("LLC"), is the sole client.  Montgomery contends that the "joint client
19    exception" applies here – he agrees that eTreppid is a "client," but argues that as an individual
20    member and former manager of eTreppid, he is also a "client" such that eTreppid may not assert
21    the privilege against him.

22       **1. Preliminary Issues**

23    Before delving into the principle issue, the court must address two preliminary matters.
24    First, the parties disagree as to whether there exists federal common law sufficient to resolve the
25    relevant issues.  Second, the parties differ as to whether an LLC should be treated as a corporation
26    or a partnership for the purposes of the attorney-client privilege.[2]

27
_____

28    [2] A third preliminary issue involves how to treat each specific communication, particularly those
    related to Douglas Frye, who, in addition to being an eTreppid member, is eTreppid's manager and in-house

1

### a. Jurisdiction and Applicable Law

2    Both parties agree that the federal law of privilege applies (#428, p. 3; #438, p. 6).

3  However, Montgomery asserts that there is no applicable federal common law addressing the joint

4  client exception to the attorney client privilege; therefore, the court should look to Nevada or

5  California law (#428, p. 3).  eTreppid contends that there exists federal law sufficient to resolve

6  the issues presented (#427).

7    This case is before the court on the basis of federal question jurisdiction.  In cases

8  involving a federal question and pendant state law claims, the federal law of privilege applies.

9  *Agster v. Maricopa County*, 422 F.3d 836, 839 (9th Cir. 2005); *see also* Fed.R.Evid. 501.

10  Although the court looks first to federal common law, the court may also look to state privilege

11  law "if it is enlightening."  *Tennenbaum*, 77 F.3d at 340.  If neither state nor federal law is on

12  point, the court should issue an opinion "in light of reason and experience."  *Robert v. Heim*, 123

13

14  _____

15  counsel.  Montgomery claims that before the court may rule on the issue of privilege, eTreppid must meet
its burden of proving that each particular document/communication is protected by the attorney-client

16  privilege.  Montgomery argues that because eTreppid failed to produce a privilege log setting out which
communications it claims are privileged, eTreppid has failed to meet its burden; therefore, eTreppid has

17  waived its privilege.

    The court is aware that eTreppid has not produced a privilege log.  However, the current briefs are

18  not before the court upon a motion to compel discovery.  Instead, the court ordered simultaneous briefing
on this narrow issue: whether eTreppid may assert the attorney-client privilege against Montgomery – who,

19  while still technically a member of eTreppid, has not been active in its management since he adversely parted
ways with eTreppid over two years ago – to prevent him from obtaining certain communications during

20  discovery.  To the extent that the parties address issues pertaining to particular documents and attorneys, the
court finds these arguments premature.

21    The court concludes below that eTreppid may assert the attorney-client privilege against

22  Montgomery.  After eTreppid produces a privilege log and the parties confer, should the parties still disagree
as to which communications are privileged, they may bring the particular communications to the court's

23  attention for *in camera* review.  *See Gottlieb v. Wiles*, 143 F.R.D. 241, 248 (D. Colo. 1992) (after ruling on
whether the former director was entitled to the corporation's privileged communications, the court ordered

24  counsel to prepare a privilege log of all materials it planned to withhold on the basis of privilege and noted
that if the parties disagreed after reviewing the privilege log, the parties could submit the documents to the

25  court for *in camera* review).  The court anticipates that eTreppid, as stated in its brief, will be reasonable in
making such privilege determinations.  *See* #427 ("To be sure, eTreppid understands that not all

26  communications between eTreppid and Frye are privileged.  It goes without saying that in order for a
communication to be protected under the attorney-client privilege, the communication must be confidentially

27  made pursuant to the obtaining or rendering of legal services from a duly licensed attorney acting as such.
Clearly, due to Frye's position as manager of eTreppid, many communications between Frye and eTreppid

28  will concern issues unrelated to legal services.").

F.R.D. 614, 622 (N.D.Cal. 1988) (citing *Trammel v. United States*, 445 U.S. 40 (1980)); *see also* Fed.R.Evid. 501.  Thus, the court will look primarily at federal common law, but may also rely on state law, particularly Nevada and California, in making a determination on the issues presented.[3]

### b. Is a Limited Liability Company more analogous to a Corporation or a Partnership?

The second issue is whether eTreppid, as an LLC, should be treated as a corporation or a partnership for the purposes of the attorney client privilege.  There is no case law, state or federal, that is directly on point; thus, this is an issue of first impression.  eTreppid argues that federal courts have routinely treated LLCs as corporations; as such, the court should apply corporations law (#427).  Montgomery contends that, particularly on the facts of this case, an LLC is more like a partnership because co-members of an LLC owe each other fiduciary duties just as partners in a partnership owe each other fiduciary duties; therefore, the court should apply partnership law (#428).

An LLC is a relatively new hybrid business entity that has the characteristics of both a corporation and a partnership, but is not characterized as either.  *Lattanzio v. COMTA*, 481 F.3d 137, 140 (2d Cir. 2007); *see also In re Tri-River Trading, LLC*, 329 B.R. 252, 267, n.16 (8th Cir. 2005).  While LLCs offer members the same protection from personal liability as corporations offer their shareholders, *see Ditty v. Checkrite, Ltd.*, 973 F.Supp. 1320, 1335 (D. Utah 1997), unless otherwise indicated, LLCs are generally treated as partnerships for tax purposes. *McNamee v. Department of the Treasury, Internal Revenue Service*, 488 F.3d 100, 107 (2d Cir. 2007) (citing IRS rules and publications).  One commentator has stated that an LLC borrows from a partnership the characteristics of informal operation, internal governance by contract, direct

---

[3] As set out in further detail below, the court undertook an in-depth review of the case law cited by each of the parties, and further conducted its own independent research.  While the court acknowledges that neither the Supreme Court nor any of the Circuit Courts of Appeals have specifically addressed the joint client exception to the attorney-client privilege, especially with respect to the particular circumstances presented in this case, a number of federal district courts have addressed very similar issues.  The court finds that for the most part, it has adequate federal law at its disposal to make determinations in this case.  However, as noted, the court's determinations may be guided by referencing state law as well.

participation by members, and no taxation at the entity level. *See* William Meade Fletcher, 1A Fletcher Cyclopedia of the Law of Corporations, *Classification and Kinds of Corporations, Limited Liability Companies* § 70.50 (2007). From a corporation, an LLC borrows the characteristics of member protection from personal liability, the requirement that organizers file articles of organization with the secretary of state, a corporate form of governance if the LLC elects to be governed by managers, and an operating agreement analogous to corporate bylaws. *Id*. An LLC has an existence separate from its members and managers. *Abrahim & Sons Enterprises v. Equilon Enterprises, LLC*, 292 F.3d 958, 962 (9th Cir. 2002) (applying California law and stating "Members own and control most LLCs, yet the LLCs remain separate and distinct from their members.").

In support of his position, Montgomery cites *Wortham & Van Liew v. Superior Court*, 188 Cal. App. 3d 927 (1987), in which the court analyzes California's joint client exception (#428). The *Wortham* court held that in the context of a partnership, partners owe each other fiduciary duties. *Wortham*, 188 Cal. App. 3d at 932. Further, the court held that since all partners are entitled to a wide range of documents related to the partnership, an attorney who represents the partnership also represents each partner jointly as to any partnership business. *Id*. However, while this may be true regarding partnerships, *Wortham* fails to enlighten the court as to whether an LLC should be treated as a partnership or a corporation for purposes of the attorney-client privilege.

The court is aware of only two cases, neither of which is factually on point, that have addressed how an LLC is treated with respect to the attorney-client privilege. *See Moore v. Commissioner of Internal Revenue*, T.C. Memo. 2004-259 (2004) (federal tax court applying the law of corporations to an LLC for the purposes of the attorney-client privilege); *see also In re Tri-River Trading, LLC*, 329 B.R. 252 (8th Cir. 2005) (Eighth Circuit bankruptcy appellate panel treating an LLC as a corporation for the purposes of the attorney-client privilege).[4]

In *In re Giampietro*, 317 B.R. 841, 845-47 (D. Nev. 2004), a bankruptcy court applying

---

[4] The court will discuss both of these cases in further detail below.

- 6 -

Nevada law held that an LLC should be treated as a corporation for purposes of the "alter ego" doctrine, which results in "piercing the corporate veil" and finding the individuals behind the corporation personally liable. *Id*. at 845-47. The court stated: "Even though the Bankruptcy Code does not explicitly mention limited liability companies, as the Code was adopted before such entities were widely-used, most courts and commentators agree that they are analogous to corporations ... ." *Id*. at n. 3; *see also Ditty*, 973 F.Supp. at 1335 (applying Utah corporate law to an LLC for purposes of the alter ego doctrine). In *In re Senior Cottages of America*, 482 F.3d 997 (8th Cir. 2007), the Eighth Circuit held that an LLC should be treated as a corporation for purposes of determining whether a bankruptcy trustee had standing to assert claims against an LLC's former attorneys. *Id*. at 1001. The Eighth Circuit compared Minnesota's LLC statutory provisions to its corporate provisions, and held that the two entities share many of the same properties. *Id*.

A number of states have also applied corporate law to LLCs. In *PacLink Communications v. Superior Court*, 90 Cal. App. 4th 958 (2001), a California court held that LLC members must bring a derivative action against the LLC, similar to corporate shareholder derivative actions, where the claim is that LLC assets were injured. *Id.* at 963-64; *see also Blanton v. Prins*, 938 So.2d 847, 852-53 (Miss. App. 2005) (applying corporate shareholder derivative rules to an LLC). Further, a Virginia court applied the corporate "business judgment rule" to the managers of a Virginia LLC, stating "there is no basis to apply a different rule to managers seeking protection from liability ... ." *Flippo v. CSC Assoc. III, L.L.C.*, 262 Va. 48, 56-7 (2001); *see also In re Tri-River Trading, LLC*, 329 B.R. 252, 267-68 (8th Cir. 2005) (treating an LLC like a corporation pursuant to Missouri law for the purposes of the business judgment rule). Additionally, an appellate court in Ohio applied corporations law to an LLC in determining whether to disqualify an attorney on the basis of a conflict of interest. *Legal Aid Society of Cleveland v. W&D Partners I, LLC*, 834 N.E.2d 850, 854-55 (Ohio App. 2005). California has codified the corporate "alter ego" doctrine for LLCs, *see* Cal. Corp. Code § 17101(b) (2004), while other states have applied the doctrine to LLCs through the common law. *Milk v. Total Pay and H.R. Solutions, Inc.*, 634 S.E.2d 208 (Ga. App. 2006).

1   Montgomery argues that an LLC is more closely analogous to a partnership because, like

2   partners in a partnership, members of an LLC owe each other fiduciary duties (#428, p. 4).

3   Montgomery cites a New York District Court case for the proposition that "co-members of an

4   LLC owe fiduciary duties to each other." *Id*. (citing *At the Airport v. ISATA, LLC*, 438 F.Supp.2d

5   55, 65 (E.D.N.Y. 2006)). Regardless of the truth of that statement, Montgomery has not cited one

6   case that holds that an LLC is similar to a partnership based on the fiduciary duty members owe

7   each other. Indeed, Montgomery fails to cite any case law applying the law of partnerships to an

8   LLC. Instead, Montgomery supports his argument only by generally comparing eTreppid's LLC

9   organizational structure to a partnership.

10   eTreppid contends that even if the court found that eTreppid operates like a partnership,

11   under federal common law, partnerships and limited partnerships are treated as corporations for

12   purposes of the attorney-client privilege. The court agrees. *See Hopper v. Frank*, 16 F.3d 92, 94-

13   7 (5th Cir. 1994) (holding that the attorneys' representation was of the limited partnership

14   "entity," and stating that "there is no logical reason to distinguish partnerships from corporations

15   or other legal entities in determining the client a lawyer represents."); *see also United States v.*

16   *Campbell*, 73 F.3d 44, 47 (5th Cir. 1996) (holding that only the bankruptcy trustee for the limited

17   partnership – not the general partner – had the power to assert or waive the attorney-client

18   privilege on behalf of the limited partnership, and stating that a "limited partnership, like a

19   corporation, is an inanimate entity that can act only through its agents. Accordingly, the same

20   rule that applies to corporations in bankruptcy should apply to a bankrupt limited partnership.");

21   *see also In re Bieter Company*, 16 F.3d 929, 935 and n.7 (8th Cir. 1994) (holding that the

22   partnership entity is the client for the purposes of the attorney-client privilege and stating that

23   "Once it is recognized ... that the privilege applies to the corporate form of organization there

24   seems no basis for limiting it to corporations, as distinct from unincorporated associations,

25   partnerships, or sole proprietorships") (citations and quotations omitted).

26   In addition to case law, the court also conducted an extensive review of eTreppid's 1998,

27

28                                                        - 8 -

1999 and 2001 Operating Agreements ("OA") (#429, Exhibits A-C).[5]  The OA reveals that eTreppid elected to be classified as a partnership for federal tax purposes. *Id.*, Exhibits A-B, sec. 10.6.1; Exhibit C, sec. 9.6.1.  However, as to the management of eTreppid, the OA states that eTreppid is managed by, and all company powers are vested in, a management committee. *Id.*, Exhibits A-C, sec. 6.1 and 6.2.  The management committee has "the general powers and duties of the management typically vested in the board of directors and the office of the chief executive officer of a corporation." *Id.*  The LLC's manager conducts the day-to-day operations at the direction and under the oversight of the management committee. *Id.*, sec. 6.1.  The manager has "the general powers and duties of management typically vested in the office of a chief operating officer of a corporation." *Id.*, sec. 6.3.  In January 1999, the manager was also given the title of "President" of eTreppid. *Id.*, Exhibits B-C, sec. 6.3.  The OA contains specific limitations on the powers of the management committee and the manager, requiring member action for certain important duties. *Id.*, Exhibits A-C, sec. 6.4.

In the original 1998 OA, Montgomery was designated as eTreppid's manager. *Id.*, Exhibit A sec. 6.1.1.  However, from January 1999 on, Douglas Frye was designated as eTreppid's manager, and Montgomery was designated as eTreppid's chief technology officer. *Id.*, Exhibit B, sec. 6.1.1 and 6.1.3.  As of January 1999, the management committee consisted of Douglas Frye, Warren Trepp and Dennis Montgomery. *Id.*, Exhibits B-C, sec. 6.1.4.  From inception, Warren Trepp acted as the chair of the management committee. *Id.*, Exhibits A-C, sec. 6.1.5.

The Operating Agreement indicates that eTreppid conducts business more like a corporation than a partnership.  eTreppid's organization is based on a corporate structure, with the Management Committee being compared to a corporate board of directors and a chief executive officer, and the manager being compared to a president and chief operating officer.  The management committee acts by vote and makes policies and procedures, similar to a corporate board of directors.  The committee then oversees eTreppid's manager in carrying out those

---

[5] eTreppid's original Operating Agreement is dated September 28, 1998 (#429, Exhibit A).  The Operating Agreement was amended and restated on January 1, 1999 (#429, Exhibit B), and again on November 1, 2001 (#429, Exhibit C).  The court here sets out only provisions relevant to the issues at hand.

1  policies and procedures, just as a board of directors oversees corporate officers.  Members, like

2  corporate shareholders, have no personal liability.  eTreppid also has a resident agent similar to

3  a corporation, had to file articles of organization with the Nevada Secretary of State like a

4  corporation files articles of incorporation, and has an Operating Agreement akin to corporate

5  bylaws.  The only comparison to a partnership is eTreppid's tax treatment.

6       Further, while none of the cases the court reviewed is exactly on point, taken together with

7  eTreppid's Operating Agreement, they are instructive.  Federal and state courts have consistently

8  applied the law of corporations to LLCs, including for the purposes of piercing the corporate veil,

9  the "alter ego" doctrine, determining standing, the "business judgment rule," and derivative

10  actions.  Federal courts have also treated partnerships and limited partnerships as corporations

11  for the purposes of determining the attorney-client privilege.  Montgomery has not called to the

12  court's attention any cases applying partnership law to an LLC.  Therefore, the court concludes

13  that eTreppid should be treated as a corporation pursuant to federal common law.

14       **2. Main Issue**

15            **a. Corporations and the Attorney-Client Privilege**

16       It is well established that the attorney-client privilege attaches to both individuals and

17  corporations.  *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981).  However, "special

18  problems" arise in the administration of the attorney-client privilege to corporations. *Commodity*

19  *Futures Trading Commission v. Weintraub*, 471 U.S. 343, 348 (1985).  With regard to this issue,

20  the Supreme Court has stated:

21            As an inanimate entity, a corporation must act through its agents.
            A corporation cannot speak directly to its lawyers.  Similarly, it
22            cannot directly waive the privilege when disclosure is in its best
            interest.  Each of these actions must necessarily be undertaken by
23            individuals empowered to act on behalf of the corporation... .

24            ... [f]or solvent corporations, the power to waive the corporate
            attorney-client privilege rests with the corporation's management
25            and is normally exercised by its officers and directors.  The
            managers, of course, must exercise the privilege in a manner
26            consistent with their fiduciary duty to act in the best interests of
            the corporation and not of themselves as individuals.

27
            The parties also agree that when control of a corporation passes to
28

- 10 -

new management, the authority to assert and waive the corporation's attorney-client privilege passes as well. New managers ... may waive the attorney-client privilege with respect to communications made by former officers and directors. Displaced managers may not assert the privilege over the wishes of current managers, even as to statements that the former might have made to counsel concerning matters within the scope of their corporate duties.

*Id*. at 348-49 (internal citations omitted).

### b. The Joint Client Exception

Joint clients are clients who are represented by the same attorney on a matter of common legal interest. Paul R. Rice, *Attorney-Client Privilege in the United States* § 4:23 (2008). With respect to corporations, the joint client exception theory is that there is one collective corporate client which includes the corporation and each individual member of the board of directors rather than just the corporation alone. *Id*. The theory is that because directors are collectively responsible for the management of a corporation and a corporation is an inanimate entity that cannot act without humans, it is consistent with a director's role and duties that the director be treated as a joint client when legal advice is rendered to the corporation through one of its directors. *Milroy v. Hanson*, 875 F.Supp. 646, 649 (D.Neb. 1995). Courts have come down on both sides of this issue.[6]

### c. Divergent Positions

#### (1) The "Entity is the Client"

Some courts have held that the sole client is the corporate entity or organization. In *Milroy v. Hanson*, 875 F.Supp. 646 (D.Neb. 1995), a former director and minority shareholder of a closely held corporation sued the directors and majority shareholders seeking liquidation of the corporation. The plaintiff sought company documents, but the defendants refused to produce them, arguing that they were protected by the attorney-client privilege. *Id*. at 647. The court rejected a line of cases, which had held that the joint client exception applied to such a situation.

---

[6] The court notes that both parties cited numerous cases to support their respective positions. In this order, the court does not list all of these cases but assures the parties that it has reviewed each of these holdings.

*Id*. at 648-49. The court found that those cases:

> make a fundamental error by assuming that for a corporation there exists a "collective corporate 'client'" which may take a position adverse to "management" for purposes of the attorney-client privilege. There is but one client, and that client is the corporation. *Weintraub*, 471 U.S. at 348, 105 S.Ct. at 1990. This is true despite the fact that a corporation can only act through human beings. As the Supreme Court has stated, "for solvent corporations" the "authority to assert and waive the corporation's attorney-client privilege" rests with "*management.*" *Weintraub*, 471 U.S. at 348-49, 105 S.Ct. at 1991 (emphasis added). A dissident director is by definition not "management" and, accordingly, has no authority to pierce or otherwise frustrate the attorney-client privilege when such action conflicts with the will of "management."

*Id*. at 649. The *Milroy* court found that the fact that the plaintiff former director had not filed suit in his fiduciary role as a corporate director to benefit the company, but rather in his individual role to benefit himself, made it even less likely that the plaintiff was entitled to the company's privileged documents. *Id*. at 650.

In *Dexia Credit Local v. Rogan*, 231 F.R.D. 268 (N.D.Ill. 2004), the largest creditor of a bankrupt corporation sued the corporation's former CEO and managers for fraud. *Id*. at 277. The former CEO moved to compel production of documents withheld under the attorney-client privilege. *Id*. The court held that "the [attorney-client] privilege does not belong to the individual agents of the corporation seeking the advice; the privilege belongs to the corporation because the corporation is the client. That is the rule in federal courts... ." *Id*. (citing *Weintraub*)). The court noted that once the former CEO left the corporation, his right to access attorney-client privileged documents terminated. *Id*. It was of no matter that he had been employed at the time the documents were originally created because the privilege belonged to the corporation and did not depart with former officers who left the company. *Id*.

Other courts have taken the same position. *Bushnell v. Vis Corp.*, 1996 WL 506914, *8 (N.D.Cal. 1996) (unreported) (stating that the suggestion that the corporation is a joint client with its directors is "erroneous" and holding that a former director has no right to the corporation's attorney-client privileged documents); *In re Marketing Investors Corp.*, 80 S.W.3d 44, 50 (Tex.App. 1998) (finding the *Milroy* line of cases most persuasive and holding that when the

1    corporation terminated its former president, his right to view attorney-client privileged documents

2    ceased); *Genova v. Longs Peak Emergency Physicians, P.C.*, 72 P. 3d 454, 462-63 (Colo.App.

3    2003) (agreeing with *Milroy* and stating "although plaintiff's status as a former director would

4    have entitled him to learn privileged information when he was a director, he would then have

5    been duty bound to keep such information confidential.  He would not have been entitled alone

6    to assert or waive the privilege on behalf of [the corporation]"); *Lane v. Sharp Packaging*

7    *Systems, Inc.*, 640 N.W.2d 788, 800-04 (Wis. 2002) (holding that a former director is not by

8    definition "management" and does not have the right to access attorney-client privileged

9    documents against the will of current management).

10                          **(2) The Collective Corporate Client**

11           A second line of cases has embraced the joint client exception for corporations.  In

12    *Gottlieb v. Wiles*, 143 F.R.D. 241 (D.Colo. 1992), a former director and CEO sued the

13    corporation.  The corporation withheld documents from the plaintiff during discovery based on

14    the attorney-client privilege.  The court stated "It is certainly true that the attorney-client privilege

15    belongs to the corporation, or its Trustee, and that [the plaintiff] has no power to either assert or

16    waive it" on behalf of the corporation.  *Id*. at 247.  However, the court stated that whether the

17    plaintiff could assert or waive the privilege on behalf of the corporation was not the dispositive

18    issue – the issue was whether he could access those privileged documents that had been originally

19    created during the time he had been a director and officer.  *Id*.  The court noted that while the

20    plaintiff had been a director, he was "squarely within the class of persons who could receive

21    communications" from the corporation's counsel "without adversely impacting the privileged or

22    confidential nature of such material."  *Id*.  The court compared this situation to one in which two

23    parties jointly retain a single attorney, and noted that when those joint clients later become

24    adverse, neither is permitted to assert the attorney-client privilege against the other as to

25    communications occurring while they had a common interest.  *Id*.  Thus, the court held that

26    former director and CEO had the right to access the documents that had been created while he

27    was a director and officer at the corporation.  *Id*.

28           Other courts have come to the same conclusions as the *Gottlieb* court.  *Kirby v. Kirby*,

1   1987 WL 14862, *7 (Del.Ch. 1987) (unreported) (holding that the directors of a closely held

2   corporation, collectively, were the client and that joint clients may not assert the attorney-client

3   privilege against one another); *Harris v. Wells*, 1990 WL 150445, *3-4 (D.Conn. 1990)

4   (unreported) (holding that because the corporation's directors are entrusted with the responsibility

5   of managing the corporation, the corporation's directors hold the attorney-client privilege and

6   therefore cannot assert the privilege against each other); *Glidden Company v. J. Jandernoa*, 173

7   F.R.D. 459, 473-74 (W.D.Mich. 1997) (directors have a right to access attorney communications

8   relating to the time that they served as directors); *Inter-Fluve v. Montana Eighteenth Judicial

9   District Court*, 112 P.3d 258, 264 (Mont. 2005) (closely held corporation and directors were joint

10  clients because a corporation can act only through its agents; therefore, the corporation could not

11  assert the attorney-client privilege against its joint client directors).

12              **d. Which Position is Most Persuasive?**

13          The Ninth Circuit has not spoken on this subject.  Indeed, none of the Circuit Courts of

14  Appeals appear to have directly addressed the joint client exception under the facts of this case.

15  However, in the context of a criminal case, the Ninth Circuit held that the defendant, a former

16  director of a corporation, had hired the law firm to represent the corporate entity and not the

17  director in his individual capacity as a director.  *United States v. Plache*, 913 F.2d 1375, 1381 (9th

18  Cir. 1990).  Thus, the corporate entity was the client.  *Id*.  The Ninth Circuit concluded that

19  because the corporation itself was the client, the former director, as a "displaced" manager, had

20  no power to assert the attorney-client privilege to prevent the corporation's attorney from

21  testifying against him.  *Id*.

22          The court acknowledges that *Plache* is a criminal, not a civil, case.  Moreover, the *Plache*

23  facts are the inverse of the present case: in *Plache*, the former director claimed he was a joint

24  client in order to assert the attorney-client privilege on behalf of the corporation.  In the present

25  case, Montgomery does not seek to assert the attorney-client privilege on behalf of the corporation

26  – instead, he seeks to prevent eTreppid from asserting the privilege against him.  Despite the fact

27  that *Plache* is the opposite of the present situation, the court finds the conclusion that the

28  corporation is the client instructive.  This court concludes that, given the opportunity, the Ninth

1    Circuit would likely reject the premise that directors are joint clients with the corporation.

2         The court also finds *Moore v. Commissioner of Internal Revenue*, T.C. Memo. 2004-259

3    (2004) instructive.  In *Moore*, the petitioners argued that because an LLC is an entity and can act

4    only through humans, the individual members of an LLC were the "clients" for the purposes of

5    the attorney-client privilege.  *Id*. at *4.  The tax court rejected that position and held that the LLC

6    was the sole client of the attorney.  *Id*. at *3-4.  Noting that the power to waive a corporation's

7    attorney-client privilege normally belongs to the officers and directors, the court held that this

8    power belonged only to the *current* management of the LLC.  *Id*. at *3 (quoting *Weintraub*, 471

9    U.S. at 348-49).

10        Additionally, while *Milroy* may not be the "majority" position, as eTreppid asserts, the

11   court notes that many more courts have rejected the reasoning in *Gottlieb* than in *Milroy*.  The

12   court further notes that in *Kirby*, the seminal case supporting the joint client exception line of

13   cases, the court relied on absolutely no authority at all.  *Kirby v. Kirby*, 1987 WL 14862 (Del.Ch.

14   1987) (unreported).

15        In *In re Tri-River Trading, LLC*, 329 B.R. 252 (8th Cir. 2005), an individual and a

16   corporation formed an LLC and were the sole members.  *Id*. at 257.  The individual member and

17   the LLC eventually sued the corporate member and the corporation's president and manager.  *Id*.

18   at 258.  One attorney represented both the individual member and the LLC in that suit.  *Id*.  In a

19   later bankruptcy action, the bankruptcy court prohibited the LLC's state court attorney from

20   testifying as to communications he had with the LLC.  *Id*. at 259.  Instead, the attorney was

21   permitted to testify only as to the advice he gave to the individual member during the state court

22   action.  *Id*.  The Eighth Circuit bankruptcy appellate panel overturned.  *Id*.  Without explanation,

23   the court assumed that the individual member and the LLC were joint clients.  *Id*. at 268-69.  The

24   court concluded that there is no expectation of privacy between adverse joint clients for

25   communications the clients receive during the time they had a common interest and held that the

26   attorney should have been allowed to testify as to his communications with the LLC.  *Id*.

27        The court in *Tri-River* cited neither *Milroy* nor *Gottlieb*.  Further, the *Tri-River* court

28   relied on a First Circuit case in holding that individual member and the LLC were joint clients

- 15 -

1   – yet, this court's review of the First Circuit case reveals that it did not touch upon the issues

2   pertinent to this case, namely, whether a former director could access attorney-client privileged

3   documents from the corporation.  *Id*. at 269 (citing *FDIC v. Ogden Corp.*, 202 F.3d 454, 461 (1st

4   Cir. 2000)).[7]

5          Based on all of these considerations, the court concludes that the *Milroy* line of cases are

6   more persuasive. It makes sense that the corporation is the sole client.  While the corporation can

7   only communicate with its attorneys through human representatives, those representatives are

8   communicating on behalf of the corporation, not on behalf of themselves as corporate managers

9   or directors.  Moreover, the court finds very convincing the language in *Weintraub*, which states

10  that the privilege belongs to the corporation, can be asserted or waived only by management, and

11  that this power transfers when control of the corporation is transferred to new management.

12         Also important to the court's decision is the fact that Montgomery, like the former director

13  in *Milroy*, is not suing on behalf of eTreppid or in his capacity as a former manager or officer.

14  Rather, Montgomery is suing to benefit himself individually – a perfectly acceptable position, but

15  not one which should entitle him to eTreppid's attorney-client privileged communications.  Like

16  the "dissident" director in *Milroy*, Montgomery is now adverse to eTreppid and may not obtain

17  privileged documents over the objection of current management.   Moreover, even though

18  Montgomery would have had access to such documents during his time at eTreppid, he still

19  would have been duty-bound to keep such information confidential.

20  _____

21        [7] Montgomery also makes the argument that Nevada law recognizes the joint client exception to the
     attorney-client privilege.  *See* NRS 49.115(5) ("There is no privilege ... as to a communication relevant to
22   a matter of common interest between two or more clients if the communication was made by any of them to
     a lawyer retained or consulted in common, when offered in an action between any of the clients.").  Before
23   this clause applies, however, one must qualify as a "client" in the first instance, which, obviously, is the
     primary issue involved.  Nevada's definition of "client" is "a person, including a public officer, corporation,
24   association or other organization or entity, either public or private, who is rendered professional legal
     services by a lawyer, or who consults a lawyer with a view to obtaining professional legal services from
25   him." NRS 49.045.  Although it appears that either an individual or an entity such as an LLC may be a client,
     this definition does not assist the court in determining whether Montgomery is a "client" *in conjunction with*
26   eTreppid.  The court's research reveals no Nevada case law on this topic. Montgomery requests that the court
     turn to *Wortham* because it discusses California's joint client exception which is similar to Nevada's.
27   However, as noted, *Wortham* involves a partnership rather than a corporation, and the court does not view
     *Wortham* as applicable.
28

1    The court concludes that eTreppid is the sole client; therefore, eTreppid holds the

2    attorney-client privilege. Only current management may assert or waive such privilege. Although

3    he is still a member of eTreppid, Montgomery is not part of eTreppid's current management

4    (#s443-445).   As such, Montgomery may not access eTreppid's attorney-client privileged

5    communications.

6    ///

7    ///

8    ///

9    ///

10   ///

11   ///

12   ///

13   ///

14   ///

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

### III.   CONCLUSION

The court concludes as follows:

1.   The federal law of privilege applies, although the court may look to state law if instructive;

2.   Limited liability companies, and particulary eTreppid under the facts of this case, are most analogous to corporations; therefore, the law of corporations applies for purposes of the attorney-client privilege;

3.   Montgomery is not a joint client with eTreppid.  eTreppid is the sole client for purposes of the attorney-client privilege; and

4.   eTreppid holds the attorney-client privilege and may assert or waive the privilege against Montgomery.

Based on the foregoing and for good cause appearing:

**IT IS ORDERED** that eTreppid may assert the attorney-client privilege in response to Montgomery's discovery requests;

**IT IS FURTHER ORDERED** that eTreppid produce a privilege log that includes all documents and communications for which it intends to assert the attorney-client privilege.  In doing so, eTreppid must carefully consider Douglas Frye's role as eTreppid's full-time manager and part-time in-house counsel;

**IT IS FURTHER ORDERED** that after conferring, should the parties disagree that certain documents and/or communications are attorney-client privileged, the parties may submit these documents and/or communications to the court, *in camera*, with arguments supporting their respective positions.

**IT IS SO ORDERED.**

**DATED:** April 18, 2008.

_____
**UNITED STATES MAGISTRATE JUDGE**

- 18 -