J. Stephen Peek, Esq. (NV Bar #1758)
Jerry M. Snyder, Esq. (NV Bar #6830)
Adam G. Lang, Esq. (NV Bar #10117)
Shane M. Biornstad, Esq. (NV Bar #9972)
Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Telephone:  (775) 327-3000
Facsimile:   (775) 786-6179
speek@halelane.com; jsnyder@halelane.com;
alang@halelane.com; sbiornstad@halelane.com

Reid H. Weingarten, Esq. (D.C. Bar #365893) (Admitted Pro Hac Vice June 15, 2007)
Brian M. Heberlig, Esq. (D.C. Bar #455381) (Admitted Pro Hac Vice June 15, 2007)
Robert A. Ayers, Esq. (D.C. Bar #488284) (Admitted Pro Hac Vice June 15, 2007)
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036-1795
Telephone:  (202) 429-3000

Attorneys for eTreppid Technologies, LLC and Warren Trepp

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT COURT OF NEVADA

| | |
|---|---|
| DENNIS MONTGOMERY, an individual; and MONTGOMERY FAMILY TRUST, a California Trust,<br><br>Plaintiffs,<br><br>vs.<br><br>ETREPPID TECHNOLOGIES, L.L.C., a Nevada Limited Liability Company; WARREN TREPP, an individual; DEPARTMENT OF DEFENSE of the UNITED STATES OF AMERICA; and DOES 1 through 10,<br><br>Defendants.<br>_____/<br>AND RELATED CASE(S)<br>_____/ | Case No. 3:06-CV-00056-PMP-VPC<br>**Base File**<br><br>3:06-CV-00145-PMP-VPC<br><br>**ETREPPID TECHNOLOGIES, L.L.C. AND WARREN TREPP'S OPPOSITION TO THE MONTGOMERY PARTIES' MOTION FOR AN EVIDENTIARY HEARING AND MOTION FOR A PROTECTIVE ORDER PENDING THE HOLDING OF AN EVIDENTIARY HEARING** |

eTreppid Technologies, L.L.C. and Warren Trepp (hereinafter collectively referred to as "eTreppid"), by and through their counsel Hale Lane Peek Dennison and Howard, hereby submit their Opposition to The Montgomery Parties' Motion for an Evidentiary Hearing and Motion for A Protective Order Pending the Holding of an Evidentary Hearing ("Montgomery's Motions").

## I. **INTRODUCTION**

In the present motion, Montgomery requests that this Court relieve him of his obligations to provide certain discovery, to eTreppid – including forensic images of hard drives, photocopies of the faces of certain CDs, and copies the data stored on CDs bearing the eTreppid logo – based on nothing more than Montgomery's fantastic allegation that eTreppid caused FBI Special Agent Michael West to plant evidence in the items that were seized during the FBI's search of Montgomery's home and storage units, and which were subsequently returned to Montgomery.

This motion is just the most recent in a series of attempts by Montgomery to prevent eTreppid from taking discovery in this matter. Since eTreppid requested the subject information in Its Second Set of Requests for Production of Documents, served on November 19, 2007, Montgomery has simply refused to participate meaningfully in discovery. Even after February 21, 2008, when this Court ordered Montgomery to provide the requested information, Montgomery has attempted to avoid production, first by filing an objection and motion for reconsideration of the Magistrate's February 21, 2008 order, and, when that motion was denied, by simply refusing to provide the subject documents. Now, six weeks after this Court ordered Montgomery to produce the subject documents, Montgomery claims that he cannot do so because certain discrepancies exist between the original search warrant returns (the "Returns") and the inventory of returned items (the "Inventory") prepared by the FBI.

Montgomery has been aware of the alleged discrepancies between the Returns and the Inventory since approximately March 29, 2007, when the Inventory was completed and his former counsel, Eric Pulver, signed for receipt of the document. Nonetheless, Montgomery did not ask this Court to take any action regarding this matter until now, more than one year after he became aware of the issue. Indeed, Montgomery did not even raise the alleged discrepancy between the Returns and the Inventory as an objection to eTreppid's Requests for Production, nor did he assert this issue as a defense to eTreppid's motion to compel. He should not be allowed to avoid production, at this late hour, based on an argument that he could have brought to the Court's attention months earlier.

This motion is not only untimely, but it is factually meritless. The alleged "discrepancies" between the Returns and the Inventory consist of nothing more than 2 CDs and a handful of hard drives. Montgomery acknowledges, in his motion, that these discrepancies may be explained by "an

omission made in the heat of the search." Nonetheless, Montgomery invites this Court to indulge in a conspiracy theory to explain the alleged discrepancy, but does not provide any real evidence of such a conspiracy.

Finally, even assuming, *arguendo*, that there were some merit to Montgomery's putative suspicion that the evidence seized by the FBI was tampered with, this does not provide any basis for Montgomery's refusal to provide this information in discovery, as he was previously ordered to do. If the evidence had actually been altered, then this fact would be highly relevant; and Montgomery should be eager to produce the allegedly altered evidence in order to show eTreppid's malfeasance. The fact that Montgomery instead seeks to prevent disclosure of this evidence speaks volumes about the complete lack of merit to his allegation that evidence was altered in any way.

## II. STATEMENT OF FACTS

### A. Nature of Any Discrepancies Between the Returns and the Inventory

Notably absent from Montgomery's Motion is any discussion of the exact nature of the alleged discrepancy between the Returns and the Inventory. Instead, Montgomery generally alleges that "the return inventory lists reflect that the FBI returned significantly more documents and material than what was originally seized." A close comparison of the Returns and the Inventory shows that the difference between what was seized and what was returned is really not as significant as Montgomery would have this Court believe.

Montgomery has been ordered to provide eTreppid with the following items which were seized during the FBI's search of his home and storage units (1) photocopies of the faces of all CDs that were seized, (2) full electronic copies of any CDs that were labeled in such a manner as to indicate ownership by eTreppid, and (3) forensic copies of any hard drives for which eTreppid can establish ownership. Accordingly, any discussion of the discrepancies between the Returns and the Inventory will be limited to these items.

///
///
///
///

Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

CD's Seized compared to CDs Returned

The Returns[1] (**Exhibits A and B** to Montgomery's Motion) contain the following specifically identified entries showing that the FBI seized CDs or DVDs:

- "15 Compact Disks" (Doc. 15, Item 5).
- "16 Compact Disks" (Doc. 15, Item 13).
- "One Yellow/Grey Case Containing eTreppid Disks" (Doc. 17, item 1).
- "Seven Compact Disks" (Doc. 17, Item 2).
- "One box containing 78 compact disks" (Doc. 17, Item 11).
- "One compact disk labeled eTreppid. (Doc. 17, Item 14).

The Inventory (**Exhibit C** to Montgomery's Motion) contains the following specifically identified entries showing that the FBI returned CDs or DVDs:

- "One Yellow and Grey Case Containing eTreppid Disks – 51 CDs" (Item 9).
- "One DVD disk Etreppid 1 – Dennis, Warren, Gianna 7/11/02"
- "3 DVDs and 2 compact disks" (Item 12).
- "2 DVDs labeled 'Lance Output [illegible] eTreppid Eyes Only'" (Item 14).
- "Thirteen (13) Computer CDs" (Item 25).
- "Sixteen (16) Computer CDs (Item 26).
- "Three (3) Computer CDs" (Item 27).
- "Seventy-Eight (78) CDs.

It is obviously impossible to say to an absolute degree of certainty how many CDs were in the Yellow and Grey case at the time of the original search. However, there is no reason to belive that it did not contain 51 CDs at that time, just as it contained 51 CDs at the time the seized items were returned. Based on this assumption, the Returns list a total of 168 CDs and DVDs. The Inventory shows that the FBI returned a total of 169 CDs and DVDs. Clearly the slight discrepancy in the number of CDs and DVDs listed on the Returns and on the Inventory is not so significant as to demand

---

[1] There are two Returns at issue here, which are referred to by their filing number in the Buckthorne Lane Proceedings, Case No. 3:06-cv-00263-PMP-VPC, or Doc. No. 15 and Doc. No. 17.

any explanation other than the simple fact that the number of CDs was miscounted during the search. Montgomery's suggestion to the contrary is simply ludicrous.

<u>Hard Drives Seized Compared to Hard Drives Returned</u>

The Returns (**Exhibits A and B** to Montgomery's Motion) contain the following specifically identified entries showing that the FBI seized Hard Drives.

- "HP Pavilion DV 1000. . . Notebook" (Doc. 15, Item 1)
- "Western Digital Hard Disk" (Doc. 15, Item 10).
- "Granite Digital – "DEVSERVER" 12/17/2005" (Doc. 15, Item 11).
- "Granite Digital Server Labeled "DEO 01/20/06 Prog." (Doc 15 Item 15).
- "One IBM Travel Star Hard Drive." (Doc. 17 Item 7).
- "Eleven Sealed Western Digital Hard Drives." (Doc. 17 Item 8).
- "Ten Various Manufacture Hard Drives" (Doc. 17, Item 10).
- "One Removable Hard Drive Labeled 'Dennis Eyes Only.'" (Doc. 17, Item 14).

The Inventory (**Exhibit C** to Montgomery's Motion) contains the following specifically identified entries showing that the FBI returned Hard Drives:

- "Granite Digital DEVSERVER Labeled 12/17/05 . . . with two hard drives." (Item 3).
- "One Granite Digital Server labeled 1/20/06 Prog with two hard drives." (Item 4).
- "One Western Digital 300 GB. . . containing evidence from HP Pavillion Notebook 30 GB Hatachi Hard drive." (Item 5).
- "One Maxtor 300 GB Hard Drive. . . containing evidence derived from custom tower Western Digital 250 GB Hard drive." (Item 6).
- "Eleven sealed Western Digital Hard Drives." (Item 7).
- Item 8 is a list of ten specifically identified hard drives.
- "Western Digital 250 GB" (Item 10).
- One removable Western Digital 60 GB" (Item 11)

The Inventory shows that a total of 29 hard drives were returned to Montgomery. While the returns only specifically identify 24 hard drives which were seized, the also identify the "Granite Digital DEVSERVER," which, the Inventory shows, contains two hard drives; the "Granite Digital

1 Server labeled 1/20/06 Prog," which contained two hard drives, and one hard drive containing evidence derived from the HP laptop. Accordingly, it is clear that while not all the hard drives specifically identified in the Inventory were specifically identified in the Returns, this is due to nothing more sinister than the fact that a handful of the hard drives that were originally seized were not specifically identified on the Returns because they were installed in servers at the time of seizure. Only during the more meticulous process of preparing the Inventory did the FBI specifically identify the hard drives installed in servers. The slight discrepancy between the Returns and the Inventory does not suggest any improper activity on the part of the FBI, it merely shows that the Inventory was prepared in more complete detail than the returns.

Accordingly, Montgomery's suggestion that the "FBI returned significantly more documents and material than what was originally seized" is simply not born out by the evidence.

### B. Montgomery's Delay In Seeking the Requested Relief

As set forth above, the evidence available in this matter shows that Montgomery claimed concerns about any discrepancies between the Returns and the Inventory are not supported by the evidence. The procedural history associated with this matter strongly suggests that Montgomery himself recognizes the weakness of his position, and has filed the present motion for no purpose other than to further delay compliance with this Court's February 21, 2008 order.

All relevant portions of the Inventory were completed on March 29, 2007, and bear the signature of Montgomery's former counsel, Eric Pulver.[2] Thus, as of that date, Montgomery was aware of the alleged discrepancies between the Returns and the Inventory.

eTreppid served its Second Set of Requests for Production on November 19, 2008. **Exhibit D** to Montgomery's Motion. In these requests, eTreppid asked that Montgomery provide for inspection, or produce forensic copies of, "any electronic storage device, including any hard drive or disk. . . that was seized by the FBI and returned to you . . ." *Id.*, Request No. 6. Montgomery provided his responses to these requests on January 25, 2008. **Exhibit E** to Montomery's Motion. In these responses, Montgomery did not raise any objection to eTreppid's request based on the notion that

---

[2] One page of the Inventory is dated April 7, 2007. However, this shows only the return of certain prescription drugs and is not relevant to the present motion.

Montgomery could not ascertain what was "seized" by the FBI because of an alleged discrepancy between the Returns and the Inventory.

Montgomery refused to provide documents responsive to eTreppid's Request No. 6, and eTreppid was obliged to file a motion to compel on February 15, 2008. Docket No. 431. Pursuant to this Court's order, Montgomery filed a simultaneous brief regarding the dispute as to production of documents. Docket No. 432. Although Montgomery's brief included a specific discussion of eTreppid's Request No. 6, Montgomery did not, at that time, raise any concern with a discrepancy between the Inventory and the Returns.

On February 21, 2008, after a hearing lasting nearly all day, this Court issued an Order (Docket 448) which required Montgomery to (1) provide eTreppid with photocopies of the faces of all CDs seized in the FBI search and returned to Montgomery, (2) provide eTreppid with actual copies of all those CDs which bore a label indicating ownership by eTreppid, and (3) produce a forensic copy of those hard drives for which eTreppid had provided records indicating ownership. Pursuant to the February 21 Order, Montgomery was required to provide the subject documents on or before March 14, 2008.

On March 7, 2008, Montgomery filed his Objection to the Magistrate's February 21, 2008 order and a Request for Reconsideration of the same. Docket No. 460. In this Objection, Montgomery argued at some length that he should not be obliged to provide copies of the subject CDs. Docket No. 460, 13:11 to 16:14. However, at no point did Montgomery assert that he should be relieved of his obligation to produce the subject documents by virtue of any alleged discrepancies between the Inventory and the Returns.

On March 19, 2008, this Court Denied Montgomery's objections (Docket 480) and upheld the February 21, 2008 order requiring production of the subject documents and CDs by March 14, 2008. Nonetheless, Montgomery has still not produced these items, and on April 7, 2008 – more than one year after the Inventory was prepared, Montgomery first asserted that that he should not be obliged to provide the CDs and hard drives that are the subject of this Court's February 21, 2008 order because of an alleged discrepancy between the Inventory and the Returns.

///

## III. ARGUMENT

### A. Montgomery's Request for a Protective Order Should Be Denied as Untimely

As set forth above, Montgomery has been aware of the basis for his present request for a protective order since March 29, 2007. Nonetheless, Montgomery did not assert this objection in his original responses to eTreppid's requests for production, he did not assert this objection in his opposition to eTreppid's motion to compel, and he did not assert this argument in his objection to the Court's February 21, 2008 Order. By failing to assert this argument for weeks and months, especially in light of the fact that the discovery deadline is rapidly approaching and the Montgomery was ordered to provide the subject documents weeks ago, Montgomery has waived his right to seek the present protective order. *Drutis v. Rand McNally & Co.*, 236 F.R.D. 325 (E.D.Ky. 2006).

### B. Montgomery Has Not Shown Any Need for a Protective Order

In addition, Montgomery has not shown good cause to support a protective order. Montgomery asserts that good cause exists because "The FBI's inventories are facially incompatible – particularly given that the inventories of 'returned' items is [sic] substantially broader than the inventory of that which was seized." Motion at 10:4-6.

As set forth above, there is simply no substance to Montgomery's allegation. Montgomery seeks a protective order to prevent him from providing certain CDs and Hard Drives. The Returns show that the government seized 168 CDs and DVDs, and returned 169 CDs and DVDs. This difference of one CD is hardly so substantial as to warrant the suspicion that the evidence was altered while in the custody of the FBI. Likewise, any "discrepancy" between the Returns and the Inventory with respect to the hard drives seized is clearly explained by the fact that the Inventories specifically identify hard drives that were installed in servers and therefore not individually inventoried at the time the Returns were created. Accordingly, Montgomery has not presented evidence to this Court to show that the FBI returned more evidence than it originally seized.

Moreover, even if this Court were to accept Montgomery's conspiracy theory as having some basis in reality, Montgomery would not be entitled to a protective order. If, as Montgomery alleges, eTreppid managed to persuade an FBI agent to plant evidence, then surely the allegedly planted evidence would be highly relevant in this matter. Because it would be in Montgomery's interest to

1 produce any evidence that the items in the FBI's possession were tampered with, he is not entitled to a
2 protective order relieving him of the obligation to provide this evidence.

3   Indeed, if Montgomery had some basis to believe that evidence was planted, then he would
4 have the obligation of producing this evidence. In fact, even though the allegedly planted evidence has
5 been in Montgomery's possession ever since the items seized by the FBI were returned to
6 Montgomery in March 2007, Montgomery has produced no real evidence which supports the
7 allegations of the present motion. This fact alone demonstrates the frivolous and bad faith nature of
8 the present motion for a protective order. Accordingly, eTreppid respectfully submits that no good
9 cause exists to support Montgomery's motion for a protective order.

## IV.  CONCLUSION

For the foregoing reasons, eTreppid respectfully requests that Montgomery's Motion for a Protective Order be Denied. eTreppid does not object to the requested evidentiary hearing.

Dated:  April 25, 2008.

      /s/
J. Stephen Peek, Esq.  (NV Bar #1758)
Jerry M. Snyder, Esq. (NV Bar #6830)
Adam G. Lang, Esq. (NV Bar #10117)
Shane M. Biornstad, Esq. (NV Bar #9972)
Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada  89511
Telephone:  (775) 327-3000
Facsimile:   (775) 786-6179

Reid H. Weingarten, Esq. (D.C. Bar #365893)
Brian M. Heberlig, Esq. (D.C. Bar #455381)
Robert A. Ayers, Esq. (D.C. Bar #488284)
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036-1795
Telephone:  (202) 429-3000
Facsimile:   (202) 429-3902

*Attorneys for Plaintiff and Cross-Defendant eTreppid Technologies, L.L.C. and Cross-Defendant Warren Trepp*

**PROOF OF SERVICE**

I, Cynthia L. Kelb, declare:

I am employed in the **City of Reno, County of Washoe, State of Nevada,** by the law offices of Hale Lane Peek Dennison and Howard.  My business address is: **5441 Kietzke Lane, Second Floor, Reno, Nevada  89511**.  I am over the age of 18 years and not a party to this action.  I am readily familiar with Hale Lane Peek Dennison and Howard's practice for collection of mail, delivery of its hand-deliveries and their process of faxes.

On April 25, 2008, I caused the foregoing **ETREPPID TECHNOLOGIES, L.L.C. AND WARREN TREPP'S OPPOSITION TO THE MONTGOMERY PARTIES' MOTION FOR AN EVIDENTIARY HEARING AND MOTION FOR A PROTECTIVE ORDER PENDING THE HOLDING OF AN EVIDENTIARY HEARING** to be:

  X         filed electronically with the U.S. District Court and therefore the court's computer system has electronically delivered a copy of the foregoing document to the following person(s) at the following e-mail addresses:

*Fax No. 775/829-1226*
mgunderson@gundersonlaw.com
Mark H. Gunderson, Ltd.
Mark H. Gunderson, Esq.
5345 Kietzke Lane, Suite 200
Reno, Nevada 89511

*Fax 310/500-3501*
dklar@linerlaw.com; tchisolm@linerlaw.com
Deborah A. Klar, Esq.
Tuneen Chisolm, Esq.
Liner Yankelevitz Sunshine & Regenstreif, LLP
1100 Glendon Avenue, 14th Floor
Los Angeles, CA 90024-3503

*Fax No. 202/616-8470*
Carlotta.wells@usdoj.gov
Carlotta P. Wells, Esq.
Senior Trial Counsel
Federal Programs Branch
Civil Division – Room 7150
U.S. Department of Justice
20 Massachusetts Ave., NW
P.O. Box 883
Washington, DC  20044

*Fax 202/616-8470*
Raphael.gomez@usdoj.gov
Raphael O. Gomez, Esq.
Senior Trial Counsel
Federal Programs Branch
Civil Division – Room 6144
U.S. Department of Justice
20 Massachusetts Ave., N.W.
P.O. Box 883
Washington, DC  20044

*Fax No. 784-5181*
Greg.addington@usdoj.gov
Greg Addington, Esq.
Assistant U.S. Attorney
100 W. Liberty Street, Suite 600
Reno, NV  89501

*Fax No. 775-823-2929*
bpeck@lrlaw.com
Bridget Robb Peck, Esq.
Lewis and Roca, LLP
50 W. Liberty Street, Ste. 410
Reno, Nevada 89501

*Fax No. 206-682-7100*
jbeatty@karrtuttle.com
Jacquelyn A. Beatty, Esq.
Karr Tuttle Campbell
1201 Third Avenue, Suite 2900
Seattle, WA  98101

*Fax No. 206-903-8820*
park.brian@dorsey.com;
stewart.douglas@dorsey.com;
trotta.nicole@dorsey.com;
Crowley.robert@dorsey.com;
Brian Park, Esq.
Douglas Stewart, Esq.

Nicole Trotta, Esq.
Robert Crowley, Esq.
Dorsey & Whitney, LLP
1420 Fifth Ave., Ste. 3400
Seattle, Washington 98101

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on April 25, 2008.

                               ____/s/_____
                               Cynthia L. Kelb

Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511