**Michael J. Flynn, Mass. State Bar No.172780**
P.O. Box 690, 6125 El Tordo
Rancho Santa Fe, CA  92067; *and*
One Center Plaza, Suite 240
Boston, MA  02108
Tel.: (858) 775-7624; Fax: (858) 759-0711
*Admitted Pro Hac Vice*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| DENNIS MONTGOMERY, and the MONTGOMERY FAMILY TRUST,<br><br>    Plaintiffs,<br><br>v.<br><br>ETREPPID TECHNOLOGIES, LLC, WARREN TREPP, and the UNITED STATES DEPARTMENT OF DEFENSE,<br><br>    Defendants.<br><br>AND ALL RELATED MATTERS. | 3:06-CV-00056-PMP-VPC<br>**BASE FILE**<br><br>3:06-CV-00145-PMP-VPC<br><br>**OPPOSITION TO EMERGENCY MOTION TO SEAL AND STRIKE FILINGS OF MICHAEL FLYNN** |

## INTRODUCTION

Michael Flynn opposes the "Emergency Motion" collectively filed by the Dennis Montgomery/Edra Blixseth parties (the "Blixseth Motion") on the following grounds :[1]

There is no "Emergency." There is no properly filed or intelligible Motion. There is no properly filed or intelligible Memorandum in support of said Motion. There are no declarations, documents, exhibits, *nothing*, in support of anything that supports any legal basis for any legal relief whatsoever.

---

[1] The Motion was also filed on behalf of Opspring and Blixseth, who owns Opspring. The Liner Firm represents all of them.

1

1. The Emergency Motion is three quarters of a page of random requests supported by a one paragraph "Memorandum of Points and Authorities" that does not contain any points or any authorities whatsoever. The Motion and memorandum do not recite a *single* fact or even a single conclusory collection of circumstantial facts, or any evidence, supported by anything, even remotely establishing purported violations of the attorney client privilege, let alone any prejudice derived from any disclosure of "confidential information" subject to any of the Nevada Rules of Professional Conduct.

There is absolutely NO evidentiary foundation to support anything in the so-called "Emergency Motion." There is NO evidentiary foundation to warrant any order of this Court of any nature or description, let alone one as onerous, and as damaging to the administration of justice, as that requested. In sum, this is just another shotgun, thrown together, Motion from the Liner Firm filed at at night, after business hours, with the electronic system, once again crying wolf, on behalf of two conflicted clients, as part of their strategy, already recognized by the Court, to delay and obstruct these proceedings. (See Order re attorney's fees, Doc. # 502)

Judge Pro unsealed these proceedings for a good reason. There is nothing like the light of day to reveal truth, inhibit litigation misconduct, preserve judicial resources, and prevent injustice. Granting this completely unsupported "Emergency Motion" would throw this case backwards for months, maybe even years. The Blixseth parties have repeatedly proven that concealment and violation of court orders is the MO of their lawyers, the Liner Firm. There is no explanation for the utter flouting of this Court's orders requiring production of the Blixseth/Montgomery/Sandoval emails; and "CD No.1" Such conduct should not be rewarded. It should be sanctioned.

Mr. Flynn respectfully requests that the Court review the Motion for Sanctions and the Motion to Establish Procedures, including the Declaration of Michael Flynn, before even considering this purported "Emergency." A review of those pleadings will support the following conclusions of fact and law:

1. There have been NO disclosures of any attorney client privileged "confidential communications" in either Motion. Mr. Flynn has established a record of the Liner Firm's litigation misconduct in the Motion for Sanctions based on extrinsic, non-privileged evidence, which Mr. Flynn had an absolute

1  right to file under Nevada Rules of Professional Conduct ("NRPC"), Rule 1.6 (b) (5). Flynn Declaration ¶¶ 2-10.

2. Dennis Montgomery did indeed commit perjury in his September 10, 2007 Declaration justifying the filing of the Motion under said Rule, and the sanctions requested therein. See Motion for Sanctions, pp. 7-14.

3. Ms. Deborah Klar did indeed lie to the Court at the January 22, 2008 hearing, when she accused Mr. Flynn of disclosing state secrets protected information in publically filed pleadings, not under seal, and advised Montgomery to do so. Mr. Flynn has provided a detailed statement of facts proving Ms. Klar's misrepresentations to the Court. See Motion for Sanctions, pp.16-19; Flynn Declaration ¶¶ 15-30.

4. The Motion to Establish Procedures *protects* any potential attorney client "confidential communications, making this Emergency Motion both premature and moot.

5. The Emergency Motion cannot be granted because it is bereft of any factual or legal basis whatsoever; and the Blixseth parties utterly failed to sustain their burden of proof.

The Emergency Motion incorporates proposed Findings of Fact and Conclusions of Law unsupported by anything. The proposed pleading is simply a collection of frantic ramblings having nothing to do with any of the substantive or procedural issues or facts raised by the filings sought to be stricken. There is not even a shred of evidence for this Court to justify any findings of *fact.* There is no properly presented legal analysis or basis to make any conclusions of law. The proposal contains a few sparse citations to a few Rules and cases; it misstate them and the applicable law; it confuses the regulatory effect of the Rules; it grossly ignores and misrepresents the detailed analysis of the Rules and cases cited in the Motions; and it utterly ignores the detailed factual basis for the two Motions sought to be stricken. It is an act of desperation designed to conceal the truth. As set forth below, there is absolutely no factual or legal basis to grant this motion.

The "Emergency Motion" was filed at Eight O'Clock PM, in another Liner Firm "sneak attack" hoping to catch the Court in the morning, unprepared, off-guard, and ill equipped to do anything but react to a baseless proposal relating to the attorney client privilege. But, as soon as the

Court moves beyond the shrill and frantic tone of the proposal, it must conclude that the "Emergency Motion" must be denied.

Conversely, the Motion for Sanctions, and Motion to Establish Rule 3.3 Procedures are supported by highly detailed facts, an in depth legal analysis, a 54 page declaration of Mr. Flynn, accompanied by exhibits, all of which explicitly recites that there are no "confidential communications" disclosed in the subject pleadings; and that the relief requested in the Rule 3.3 Motion is designed to sort out with a complete record what is and is not protected by the attorney client privilege. The Nevada Rules of Professional Conduct have been scrupulously adhered to.

Tellingly, there is no declaration of Dennis Montgomery. There is no declaration of Edra Blixseth. There is no declaration from Ms. Klar, or Ms. Chisholm, or Ms. Pham. There is nothing. The following facts and law compel denial of the "Emergency Motion."

## POINTS AND AUTHORITIES

1. <u>The attorney client privilege is narrowly construed; and the burden of proving its application in specific circumstances involving specific "confidential communications" rests on the asserting party.</u> *Weil v Indicators, Inc.*, 647 F.2d 18, 24 (9th Cir. 1981) In this case, the asserting party is apparently Dennis Montgomery, although the Motion doesn't even *pretend* to recite *any* facts relating to *any* communications with him, confidential or otherwise, that should be sealed or stricken. As to "information" in general (not even subject to the privilege and not governed by any Rule - aside from other considerations like waiver, exceptions etc.), again, there is no showing of any such "confidential information" which violates anything. Certainly, there is no factual showing whatsoever, of anything that Mr. Flynn has submitted in any pleadings, which implicates anything, privileged or otherwise.

Indeed, the very fact that there is no reference to any information whatsoever in the "Emergency Motion" reveals its fundamental flaw. If the Blixseth parties contested any specifics whatsoever, in either Motion, the Court would be compelled to examine the Motion, and conclude, that there have been no improper disclosures, and they have not met their burden. Additionally, any specifics would focus the Court on the two Motions, warranting detailed scrutiny by the Court of both

the Motion for Sanctions, and the Motion under Rule 3.3.  They avoid this process by filing a mish mush of generalities.

In order to make any findings of fact or legal conclusions supporting a factual and legal determination that Montgomery has met his burden of proving the application of the privilege,  he must provide an evidentiary basis citing specific violations of specific confidences set forth in the pleadings sought to be stricken.  If the Court does undertake an analysis of the pleadings, *and* then gives Montgomery another bite at the apple, it will become plain that there is no basis for this Motion, emergency, notice, ex parte, or otherwise; and that the Rule 3.3 Motion protects their rights.

2. <u>Mr. Flynn has the right to file his Motion for Sanctions under NRPC, Rule 1.6 (b); and a duty to file the Rule 3.3 Motion</u>. As to the latter, and the assertion that it was filed untimely, the Blixseth parties are just factually wrong. The process was straightforward. Mr. Flynn followed the Rules to a T. First,  he admonished Montgomery and Blixseth in repeated emails of their misconduct, and advised them of his duties, and their duties under the law, and of his intended withdrawal. Then he withdrew. Then he complied with all state secrets  procedures requested by the government and adopted by the Court as a condition of his withdrawal.  (Doc. # 256 ) Then he repeatedly advised the Liner Firm in emails and documents of their duties NOT to file perjured or false pleadings with respect to issues and facts known by Mr. Flynn to have been falsified by Montgomery. See Motion for Sanctions and Flynn Declaration. Then he strictly complied with Judge Cooke's Orders while the Motion for Fees was pending; and until it was decided.. (Doc. # 502) Then he waited until Judge Cooke ruled on the Motion for perjury sanctions on the November 2, 2007 declaration.  And he waited for Judge Cooke to rule on the Government Motion to Enforce the redaction of files. (Order. Feb. 19, 2008, Doc. # 435   ) *All of these procedural delays   to implement his Rule 3.3 obligations were to avoid even the spector of prejudice to Montgomery.*

Then Montgomery filed his March 10, 2008 declarations again requiring Mr. Flynn to comply with Rule 3.3. See Rule 3.3 Motion, footnote explicating Nevada's adoption of the Model Rules requiring post withdrawal compliance. .Given the procedural history of these matters; and the Liner Firm's explicit filing of the perjured declaration invoking Mr. Flynn's Rule 1.6 (b) rights; and his Rule

5

1  3.3 duties triggered by the three declarations cited in the Rule 3.3 Motion, the procedural process was
2  the *most protective of Montgomery.* It remains so today. The fact that Montgomery committed perjury
3  after Mr. Flynn's withdrawal is properly before the Court in the Motion for Sanctions.

4     3. <u>Not all communications between an attorney and client are privileged</u>. Mr. Flynn has rights
5  to disclose client confidences under Rule 1.6 (b) (5) in any adversary proceedings or "controversy"
6  between the client and the attorney. *Van Asdale v. Int'l Game Technology*, 498 F.Supp 1321, 1326-
7  27 (NV 2007) ["The Model Rules permit a lawyer to reveal confidential information relating to the
8  representation in order 'to establish a claim or defense on behalf of the lawyer in a controversy
9  between the lawyer and the client.' ABA Model Rule 1.6(b)(5); *see also* Nevada Rule 1.6; Model Code
10 of Prof. Responsibility, Rule 4 (c). The Motion for Sanctions based on the bad faith litigation strategies
11 and the perjured declaration constitute such proceedings or "controversy. Mr. Flynn complied with the
12 Court's Order and waited until the fee Motion was decided in order to avoid prejudice to Montgomery.
13 The subsequent controversy relates to their litigation misconduct. Nonetheless, even in said Motion,
14 as recited therein, *Mr. Flynn has not revealed "client confidences."*

15    3. <u>A communication between an attorney and a client is only "confidential" if it is "not
16 intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the
17 rendition of professional legal services to the client or those reasonably necessary for the transmission
18 of the communication."</u> N.R.S.A. § 49.055 (2007).  In these cases, virtually every communication
19 between Mr. Flynn and Montgomery was either intended for third parties, or made in the presence
20 of third parties. This aberration of generally expected confidential attorney client communications
21 primarily results from  Montgomery's "MO" to *use* Mr. Flynn in a pattern of deception, while
22 concealing the true facts. The Blixseth parties have not recited any alleged disclosure of any
23 communications in their Emergency Motion because it will reveal that no privileged communications
24 have been disclosed.

25    4. "<u>The attorney client privilege protects only those communications necessary to obtain legal
26 advice.</u>" *Ideal Electric Co. v. Flowserve Corp.*, 230 F.R.D. 603 ( NV 2005). The Blixseth parties have
27 not met their burden on this issue. No communications seeking legal advice are implicated.

28

5. <u>Also, "it is well settled that the attorney client privilege does not extend to attorney-client communications which solicit or offer advice for the commission of a crime or fraud</u>. *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992). The Blixseth parties can never meet their burden on this issue. Any inquiry by the Court in the context of the Rule 3.3 Motion, or even pursuant to this Motion will compel no other conclusion.

6. <u>As admitted by the Blixseth parties, they are adversaries with Mr. Flynn</u>. As stated above, where the attorney and client become adversaries in a subsequent "controversy", "proceedings" or lawsuit, including a fee dispute, the attorney client privilege may not apply. *See Van Asdale v. Int'l Game Technology*, 498 F.Supp.2d 1321, 1327 (NV 2007), and cases cited. Also, "[t]he privilege may be waived by the client either implicitly, by placing privileged matters in controversy, or explicitly, by turning over privileged documents." *Gomez v. Vernon*, 255 F.3d 1118, 1131 (9th Cir. 2001); *see also U.S. v. Chaiban*, 2007 U.S.Dist. LEXIS 8228, 52-55 (NV 2007) ["It is well established that voluntary disclosure of the content of a privileged attorney communication constitutes a waiver of the privilege as to all other such communications on the same subject."].

In these cases, with the detailed record recited in the Motion for Sanctions, and given the crime/fraud exception, it is unlikely any vestige of the privilege remains. If the Montgomery parties wish to assert the privilege, as they are apparently doing in this Emergency Motion, they should do so in response to the two filed Motions; or if the Court deems necessary, impose the burden of proof required by the law and require them meet it in the context of a Notice Motion with detailed facts.

7. <u>As discussed in the Motion for Sanctions, and the Rule 3.3 Motions, the doctrine of waiver based on the Fairness Doctrine applies to the Motions.</u> Accusations attacking the ethics, integrity, credibility, or honesty of an attorney warrant application of the fairness doctrine giving the lawyer broad discretion to respond, and to impeach the client's credibility. Pursuant to NRPC, Rule 1.6 (b). Mr. Flynn has the *right* to respond to any allegations made against him by a client in any proceeding or any controversy. Montgomery *publicly* filed the perjured declaration in this Court and in other forums. Ms. Klar publicly accused Mr. Flynn of criminal violations at the January 22, 2008 hearing. Mr. Flynn has the right to respond in his Motion for Sanctions..

1 Rule 1.6 (b) merely codifies case precedent dealing with waiver of the privilege. It is
2 commonly called the self-defense exception to the privilege. Waiver of the attorney client privilege is
3 historically based on the "fairness doctrine" holding that accusations against a lawyer's performance
4 or integrity waives "what transpired between them." *Bittaker v. Woodford,* 331 F.3d 715, 718-719
5 (9th Cir. 2003). See also, *Mackler v. Turtle Bay Apparel,* 153 F. Supp2d 504, 508 (S.D. NY. 2001)[
6 Attorney suborned perjury warranted compensatory monetary sanctions.) Deliberate and repeated
7 misrepresentations to the Court in order to "countermand" its Orders, delay and multiply the
8 proceedings, and the use of a perjured declaration to evade said Orders, invokes waiver, prohibits using
9 the privilege as a sword, and entitles Mr. Flynn to a full and complete response to the perjured
10 accusations. *Bittaker, supra* at 718-719. *See* Motion for Sanctions.

11 8. The Rule 3.3 Motion to Establish procedures protects client confidences, if any. As set forth
12 in said Motion, the Blixseth parties have all of the protection the law gives them, *and more*, in the Rule
13 3.3 Motion. Client confidences are protected until the procedures are in place. The *Nix Warden* case
14 analyzed at length in the Motion for Sanctions (and improperly analyzed in the Emergency Motion)
15 explicitly cites Rule 3.3 as *requiring* disclosure of perjury, false submission of evidence and fraud on
16 the Court. *Nix, Warden v Whiteside,* 457 U.S. 157, 168-169. The current NRPC Rule 3.3 requires
17 "remedial measures, including disclosure after withdrawal; but in this case, the Court need not even
18 address that issue. Mr. Flynn is still in the case as an interested party and subject to the Rules.

19 The procedures requested in the Rule 3.3 Motion will enable the Blixseth parties to assert,
20 with their burden of proof, their claims of privilege in an *in camera* filing if that is what the Court
21 requires. Scrutiny by the Court in the context of that Motion will reveal that there are NO "client
22 confidences" revealed by Mr. Flynn in either Motion; that he has a "duty " to redact his files under the
23 Court's Orders to protect military and state secrets information; (Doc. # 256, # 435.); that serious
24 issues exist with regard to the redaction of his files while Montgomery's and Blixseth's are not
25 redacted; and that he has a duty to disclose fraud on the Court, perjury and false evidence, pursuant
26 to Rule 3.3 (a)(3) and (b) as recited in that Motion.

27 The Supreme Court's admonitions in *Nix v. Whiteside, supra,* cannot be ignored. As noted by
28

the Supreme Court, a lawyer has a "solemn duty" to "ensure" that false evidence has not been submitted. *Id.* Many judges and commentators strongly endorse the stringent application of sanctions in the context of what they see in the modern litigation epidemic of misrepresentation, deceit and even perjury flooding the courts, and implicitly or explicitly sanctioned by lawyers. The Courts must use the full force and effect of the Rules to bring the Bar into compliance with the *Nix* admonitions and Rule 3.3. This case, with a fully documented record provides the right procedural context in which to do it. Lawyers that try to obey the Rules, achieve justice, and behave with "Candor Toward the Tribunal" should not be punished by phrenetic misplaced, cry wolf emergencies that don't exist. The Emergency Motion is designed to conceal the truth, and obstruct justice. This Court has been remarkably patient and forbearing in the face of what is.obvious Montgomery/Blixseth/Liner Firm misconduct.

Although the Blixseth parties may claim that they are prejudiced because the *truth* about their eight month pattern of lying, submitting false, perjured, and misleading evidence, and generally engaging in "bad faith" litigation misconduct and strategies, has been exposed to the light of day in the Motion for Sanctions, they cannot claim that they have been prejudiced by the disclosure of any confidential information because they haven't. That is the plain and simple truth. Otherwise they would have filed detailed factual itemizations of the disclosures; and detailed factual recitations of the prejudice. This they cannot do because the Court will then see that there are no improper disclosures in violation of the privilege; and there is no prejudice.

If the Court were to grant this Motion it would give a permission slip to every lawyer to aid and abet perjury, fraud, and the submission of false evidence; and that any lawyer who follows the rules to prevent such misconduct is somehow acting improperly. Mr. Flynn respectfully requests that the Motion be denied.

Respectfully Submitted,

S/S_____

Michael J. Flynn, Esq.