**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DENNIS MONTGOMERY, *et al.*, | 3:06-CV-00056-PMP-VPC |
| Plaintiffs, | BASE FILE |
| v. | 3:06-CV-00145-PMP-VPC |
| ETREPPID TECHNOLOGIES, LLC, *et al.*, | **ORDER** |
| Defendants. | |
| AND RELATED CLAIMS. | |

Before the court is the motion of eTreppid Technologies, L.L.C. and Warren Trepp ("eTreppid") for sanctions against Dennis Montgomery and Montgomery Family Trust ("Montgomery parties") (#482). The Montgomery parties opposed (#528), as did Atigeo, LLC (#523), and eTreppid replied (#544).

**1.    Procedural History**

On February 21, 2008, this court heard oral argument on eTreppid's motion to compel production of certain documents (#431), and ordered the Montgomery parties to produce certain documents no later than March 14, 2008 (#448). The Montgomery parties filed a paper styled as an objection *and* request for reconsideration of and notice of motion to modify magistrate judge's order (#460), which asked for mutually exclusive forms of relief: an order from the District Court overruling the order, but also reconsideration of the order by this court. The Montgomery parties failed to obtain a stay of this court's order prior to the March 14, 2008 court-ordered deadline for production of documents, and the District Court ultimately affirmed this court's February 21, 2008 order (#480).

In response to this court's order, the Montgomery parties produced eighteen pages of documents: DM 888 through DM 906. After counsel for the parties exchanged correspondence without resolution of the document production, this motion followed. Subsequent to the filing

of the motion, eTreppid made two additional inquiries about the document production, and the Montgomery parties did not respond (#544).

Seven categories of documents are at issue in eTreppid's motion, and the court's current understanding of the status of each is described below:[1]

**1.      Production of Mr. Montgomery's tax returns for the years 1998-2005**

The Montgomery parties did not provide Mr. Montgomery's tax returns on March 14, 2008, but apparently produced them by April 4, 2008 (#528). There is no explanation for the delay in producing these documents.

**2.      All documents relating to loans by Mr. Trepp or any entity understood to be controlled by Mr. Trepp to Mr. Montgomery**

The Montgomery parties state that there are only two cancelled checks from 2001 responsive to this production request that they took time to locate, and it appears they eventually produced them to eTreppid (#544).

**3.      Documents relating to eTreppid's technology, including white papers, power point presentations, marketing documents, and correspondence with potential customers**

The Montgomery parties have produced nothing in response to this request, as they assert that such a response would "involve technology-enabling disclosure of [Mr. Montgomery's] work product," and "[n]o such disclosure was ordered by March 14, 2008" (#528 at p. 4, lines 23-25).

**4.      Documents relating to any attempt by Mr. Montgomery to license, sell, or distribute any technology in the fields of data compression, pattern recognition, object tracking, or anomaly detection from January 18, 2006 to the present**

The Montgomery parties state that "to the extent the Montgomery Parties are in possession of documents responsive to this request, those documents would exist only in electronic form. Accordingly, those documents are not 'hard copy documents' and, therefore, were not required to be produced on March 14 under the terms of the Order." *Id.* at 5:2-5.

---

[1] eTreppid also reports that the Montgomery parties produced a letter indicating that Computermate transferred rights in certain copyrights to Mr. Montogmery, which was responsive to a separate document production request.

    **5.**    **Documents Mr. Montgomery provided to the *Wall Street Journal*, as well as any other reporters or media organization, which discuss or refer to Mr. Trepp, eTreppid, or Jim Gibbons**

The Montgomery parties state that since these documents are not "hard copy documents," they were not required to be produced. *Id.* at 5:8-11.

    **6.**    **Photocopies of the faces of all CDs seized during the FBI's March 2006 search of the Montgomery home and storage units, and where any CD seized by the FBI is marked as an eTreppid CD, a copy of the CD**

The Montgomery parties contend once again that this court only ordered production of "hard copy documents" and further claim that this document production response would require copies of electronic data that implicates proposed vendor protocols. *Id.* at 5. They also seem to claim that compliance is "problematic" because they cannot be certain that CDs marked as "eTreppid CD" and returned to Mr. Montgomery were actually seized by the FBI. *Id.* Nevertheless, the Montgomery parties produced photocopies of the faces of thirty-one of the more than 167 CDs that the FBI returned to the Montgomery parties in March 2007 (#544).

## II.    <u>Discussion and Analysis</u>

    **A.**    **Whether LR 26-7 required eTreppid to meet and confer prior to filing its motion for sanctions**

LR 26-7 does not apply to eTreppid's motion for sanctions because eTreppid was not seeking to resolve an ongoing discovery dispute prior to filing a motion to compel or a motion for protective order. That motion cycle already occurred, the court held an exhaustive hearing on this and other discovery disputes, and then it issued an order. By its communications to the Montgomery parties, eTreppid was asking them to do what had already been ordered – produce the documents. Although not required to do so, eTreppid counsel nevertheless asked the Montgomery parties' counsel – before and after filing the motion for sanctions – to comply with the order. It is an understatement that the document production fell woefully short of what the court ordered.

/ / /

/ / /

/ / /

    **B.    Whether the March 14, 2008 order only required the Montgomery parties to produce "hard copy documents," thus excusing any substantive document production**

The court has read and re-read its February 21, 2008 order to locate any statement by this court that documents ordered to be produced were limited to "hard copy documents" only. The court found no such statement, nor any statement in the order that could remotely be construed in such a fashion. The reason is simple. It is axiomatic that in civil litigation throughout the United States today, documents are now created on computers in an electronic format. One has to push the "print" button on the computer to generate a copy of the document on a piece of paper. Printing electronically stored documents in response to a document production *request,* much less a *court order,* is something litigants and lawyers do everyday. For the Montgomery parties to seriously contend that documents that this court ordered to be produced were somehow exempt because they are in electronic form is not only astonishing; it is bad faith, and it will not be tolerated.

    **C.    Whether vendor protocols had to be in place prior to the Montgomery parties' compliance with the February 21, 2008 order**

The court has reviewed all of the correspondence and email communications between counsel concerning the Montgomery parties' failure to comply with the court's order, and concern about the vendor protocols is never mentioned. This is a red herring, and if there had been a *bona fide* concern about the vendor protocols, counsel for the Montgomery parties surely would have raised that prior to the filing of the motion for sanctions. They did not.

    **D.    Whether discrepancies with the FBI's seizure inventory list and the FBI return inventory list prevent compliance with the February 21, 2008 order**

As with the vendor protocols, the Montgomery parties' counsel never mentioned this issue in the communications concerning the failure to produce documents as ordered by this court. The court finds that the Montgomery parties deliberately refused to comply with the February 21, 2008 order and invited either a motion for sanctions or a motion for order to show cause.

/ / /

/ / /

/ / /

**E.     Whether the Montgomery parties should be sanctioned for their response to the court-ordered production of documents**

As tempting as it might be to recommend dismissal of this case, this court is not going to issue a report and recommendation to the District Court granting eTreppid's request for case-ending sanctions. However, the court's patience for abusive, bad faith discovery gamesmanship is ended. The court finds that the Montgomery parties have deliberately violated this court's February 21, 2008 order by failing to produce the documents as ordered, and sanctions for this misconduct are warranted as more fully set forth herein.

### III.     Conclusion

Having considered eTreppid's motion for sanctions (#482), as well as the chronic pattern of abusive discovery tactics in this action, and for good cause appearing,

**IT IS ORDERED** that eTreppid's motion for sanctions (#482) is **GRANTED in part and DENIED in part** as follows:

1. The court will issue an order for monetary sanctions against the Montgomery parties for its failure to comply with the court's February 21, 2008 order;

2. eTreppid shall file a memorandum of the attorney's fees and costs incurred in bring the motion for sanctions no later than **Monday, May 19, 2008,** and shall provide an itemized statement of the legal services performed, by whom, the hourly rate of each attorney, and the attorney's fees attributable to each task, as well as the affidavit of counsel attesting to the accuracy of the memorandum;

3. The Montgomery parties have leave to file a response to the statement of attorney's fees and costs no later than **Tuesday, May 27, 2008**; and

4. The court will ultimately determine a proper monetary sanction against the Montgomery parties.

**IT IS FURTHER ORDERED** that the Montgomery parties shall produce every single document, no matter that document's format, as ordered by this court in the following categories, and they shall do so no later than **Monday, May 19, 2008**:

1. Documents relating to eTreppid's technology, including white papers, power point presentations, marketing documents, and correspondence with potential customers;
2. Documents relating to any attempt by the Montgomery parties to license, sell, or distribute any technology in the fields of data compression, pattern recognition, object tracking, or anomaly detection between January 18, 2006 and the present;
3. Documents that the Montgomery parties provided to the *Wall Street Journal*, as well as any other reporters or media organizations, which discuss or refer to Mr. Trepp, eTreppid, or Jim Gibbons; and
4. Photocopies of the faces of all CDs seized during the FBI's March 2006 search of the Montgomery residence and storage units and a copy of any CD seized by the FBI and marked as an "eTreppid CD."

**IT IS FURTHER ORDERED** that no later than **Tuesday, May 20, 2008** counsel for the Montgomery parties shall file a declaration with this court certifying that they have produced all documents as ordered herein and by the February 21, 2008 order.

**IT IS FURTHER ORDERED** that apart from this motion, the court has under submission eTreppid's motion to compel production of source code (#461) and the Montgomery parties' motion for protective order (#468). However, the following motions have also been filed:

1. Montgomery parties' motion for protective order (#527);
2. Montgomery parties' motion to compel further responses to interrogatories (#535);
3. Montgomery parties' motion to compel production of documents (#536); and,
4. eTreppid's motion for protective order (#577).

Counsel for the parties in this action are ordered to hold a face-to-face meeting in Reno, Nevada no later than **Friday, May 23, 2008**, to discuss, *in the utmost good faith*, resolution of these four pending discovery motions and any other discovery motions filed in the interim. Counsel shall thereafter file a *joint* discovery motion status report within five court days of the face-to-face meeting, and they shall attach certifications of their efforts to meet and confer to resolve these disputes pursuant to LR 26-7. To the extent any pending discovery disputes have been resolved,

1  counsel for the parties shall so advise the court and shall also file proper notices to withdraw any
2  resolved motion.  If disputes remain, counsel shall report in detail the nature of each dispute and
3  each parties' respective position concerning the unresolved dispute.  Counsel for the parties are
4  strongly cautioned that if the court determines that any unresolved discovery disputes are the
5  result of bad faith, sanctions will be ordered.

6  **IT IS SO ORDERED.**

7  Dated:  May 7, 2008.

*/s/ Valerie P. Cooke*
_____
**UNITED STATES MAGISTRATE JUDGE**