GREGORY KATSAS
Acting Assistant Attorney General
GREGORY A. BROWER
United States Attorney
District of Nevada
GREG ADDINGTON
Assistant United States Attorney
Nevada Bar 6875
100 West Liberty, Suite 600
Reno, Nevada 89501
VINCENT M. GARVEY
Deputy Branch Director
CARLOTTA P. WELLS
RAPHAEL O. GOMEZ
Senior Trial Counsel
Federal Programs Branch
Civil Division - Room 7150
U.S. Department of Justice
20 Massachusetts Ave., NW/P.O. Box 883
Washington, D.C.  20044
Telephone: (202)514-4522
Facsimile:  (202) 616-8470

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| DENNIS MONTGOMERY, et al., | |
| Plaintiffs, | |
| v. | 3:06-CV-00056-PMP-VPC<br>**BASE FILE** |
| ETREPPID TECHNOLOGIES, INC., et al., | 3:06-CV-00145-PMP-VPC |
| Defendants. | |

**UNITED STATES' MEMORANDUM**
**PURSUANT TO MAY 16, 2008 MINUTES OF THE COURT**

Pursuant to the May 16, 2008 Minutes of the Court, the United States submits the instant Memorandum. With respect to question 4 set forth therein, the United States states as follows:

1. The United States Protective Order (docket no. 253) provides that, if a party believes that "a full and complete response" to a discovery request "could disclose information within the scope of the state secrets privilege," then the party must first present such information to the United States for review before producing it to either his counsel or the other parties in the litigation. U.S. Prot. Order ¶ 7. In practice, this provision contemplates that the parties who

have been cleared to access classified or otherwise protected government information, including Dennis Montgomery, would take the following steps on receipt of a discovery request:

    a. The party first should identify the universe of information that may be responsive to a particular request.

    b. The party then must review that universe of information and make a good faith determination of whether the information is subject to the state secrets privilege and/or the United States Protective Order.

    c. To the extent the party determines that certain information is covered by the United States Protective Order, the party must forward that information directly to counsel for the United States.

    d. If the party in good faith determines that certain information is not subject to the provisions of the United States Protective Order, then that information may be transmitted to his counsel for review, processing, and production.

2. If, in the course of reviewing and processing information received by their client, counsel identifies information that he in good faith believes is covered by the United States Protective Order, then counsel shall forward such information to counsel for the United States for review before such information is produced to other parties.

3. In addition, all information that a party produces to other parties in response to a discovery request must be provided simultaneously to the United States for review.

4. After the Court entered the May 7, 2008 Order (docket no. 582), counsel for Montgomery contacted counsel for the United States regarding Montgomery's alleged concerns about his ability to comply with the Court's directive that he produce documents by May 19, 2008. Montgomery's counsel advised government counsel that Montgomery had identified a voluminous amount of information that needed to be reviewed (at that point estimated to be the equivalent of 700,000 pages) in order for Montgomery to produce the responsive documents as ordered. Montgomery's counsel advised that Montgomery believes that a large percentage of the information he is required to review is subject to either the United States Protective Order or the Non-Disclosure Agreement(s) (hereinafter referred to as "NDA"), which Montgomery had

executed with the United States Department of Defense (hereinafter referred to as "DoD").[1] Counsel suggested that, in order to satisfy his obligations under the May 7 Order, the United States Protective Order, and the NDA, Montgomery should forward the entire universe of documents potentially responsive to the discovery requests covered by the May 7 Order to the United States for review.

      5. Counsel for the United States rejected Montgomery's proposal.[2] As an initial matter, the discovery rules impose the obligation to identify information responsive to either the extant discovery requests or the May 7 order on Montgomery, not on the government, which is not a party to the litigation. In addition, the United States Protective Order contemplates that a party forward only that information that he believes in good faith is covered by the terms of the United States Protective Order to the government for review in the first instance, before sending such information to his counsel. Further, the government's estimate of the percentage of documents likely to contain information covered by either the United States Protective Order or the NDA is substantially lower than Montgomery's. Indeed, government counsel advised that the vast majority of the documents in Montgomery's possession is unlikely to contain either state secrets privileged or classified information.

      6. Following the discussions between Montgomery's counsel and government counsel, Montgomery filed his request for an emergency hearing on May 14, 2008 (docket no. 604). In that motion, Montgomery stated that there was the equivalent of 1.5 million pages of documents that he must review in order to comply with the Court's May 7 Order. Of these, Montgomery

---

[1] Counsel for Montgomery stated that Montgomery claims he executed more than one NDA with the DoD. DoD, however, is aware of only one NDA executed by Montgomery.

[2] It appears that Montgomery has made no attempt to review his files to exclude documents that are not subject to the U.S. Protective Order. For instance, Montgomery could exclude documents related to the "Big Safari" contract between eTreppid and the United States Air Force. As well as any other contract that is not subject to paragraphs 2 or 3 of the United States Protective Order  In fact, the United States Protective Order specifically excludes documents that relate to the "Big Safari" contract as set forth in paragraph 4 of that Order.

1 estimated that 60 to 80 percent contains information that cannot be released under the terms of
2 either the United States Protective Order or the NDA.

3     7. On May 16, 2008, counsel for the United States reiterated to counsel for Montgomery
4 that the government would not agree to conduct the initial review of the 1.5 million pages of
5 information that Montgomery claims must be reviewed in order to meet his obligations to
6 comply with the May 7 Order.  Government counsel, however, advised that they appreciated
7 Montgomery's concerns about protecting information that is either subject to the states secrets
8 privilege or otherwise classified.  As a means of providing assistance to Montgomery in
9 identifying more precisely the information covered by either the United States Protective Order
10 or the NDA, government counsel reminded Montgomery's counsel that, on at least two previous
11 occasions, government counsel had offered to arrange for a meeting between Montgomery and
12 appropriate government officials.  The purpose of such a meeting would have been to provide
13 Montgomery with an explanation of the parameters of the United States Protective Order, a
14 conversation that is possible with Montgomery, because of his government-authorized access to
15 protected information, but not with his un-cleared counsel.[3]  During the May 16 discussions,
16 government counsel suggested that such meetings should be arranged, in the Washington, D.C,
17 area, between Montgomery and authorized government personnel.  The government personnel
18 who would be available at such time would be authorized to discuss with Montgomery not only
19 the information protected by the United States Protective Order, but also information protected
20 under the NDA.

21     8. Government counsel advised counsel for Montgomery that, as a result of these
22 meetings, Montgomery should have a clear understanding of the exact scope of the information
23 that cannot be disclosed without first being provided to the government for its review.  Counsel

---

[3] With respect to one of the prior occasions, government counsel offered to meet with Montgomery in Reno, Nevada at a convenient time before or after the December 2007 discovery status conference, when a meeting similar to that which the government had proposed to counsel for Montgomery was held with Warren Trepp.

for the government further stated that, as a result of this heightened understanding, the percentage of documents that should be forwarded to the government for an initial review would be significantly less than the 60 to 80 percent that Montgomery currently estimates. Indeed, government counsel stated that, after such meetings with authorized personnel, Montgomery should be able to use search terms to drastically narrow the scope of documents that may be subject to either the United States Protective Order or the NDA. Montgomery counsel asked whether a written list of search terms could be provided to Montgomery. Government counsel stated that was a question for the government officials with whom Montgomery would meet, who could advise during the course of the meetings whether such a list would or would not contain state secrets privileged or classified information.

9. Counsel for Montgomery rejected the government's proposal.

DATED: May 19, 2008

Respectfully submitted,

GREGORY KATSAS
Acting Assistant Attorney General

GREGORY A. BROWER
United States Attorney
District of Nevada

GREG ADDINGTON
Assistant United States Attorney
Nevada Bar 6875
100 West Liberty, Suite 600
Reno, Nevada 89501

VINCENT M. GARVEY
Deputy Branch Director

 /s/ Carlotta P. Wells
CARLOTTA P. WELLS
RAPHAEL O. GOMEZ
Senior Trial Counsel
Federal Programs Branch
Civil Division - Room 7150
U.S. Department of Justice
20 Massachusetts Ave., NW
P.O. Box 883
Washington, D.C.  20044

Counsel for the United States