Mark H. Gunderson, Esq. (SBN: 2134)
Catherine A. Reichenberg, Esq. (SBN: 10362)
GUNDERSON LAW FIRM
5345 Kietzke Lane, Suite 200
Reno, Nevada 89511
Telephone: (775) 829-1222
Facsimile: (775) 829-1226

Deborah A. Klar, Esq. (SBN: CA 124750)
Tuneen E. Chisolm, Esq. (SBN: CA 211741)
LINER YANKELEVITZ
SUNSHINE & REGENSTREIF LLP
1100 Glendon Avenue, 14th Floor
Los Angeles, California 90024-3503
Telephone: (310) 500-3500
Facsimile: (310) 500-3501
ADMITTED PRO HAC VICE

Attorneys for DENNIS MONTGOMERY, the
MONTGOMERY FAMILY TRUST, EDRA BLIXETH,
AND OPSPRING LLC

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DENNIS MONTGOMERY and the MONTGOMERY FAMILY TRUST,<br><br>Plaintiffs,<br><br>vs.<br><br>ETREPPID TECHNOLOGIES, LLC, WARREN TREPP, and the UNITED STATES DEPARTMENT OF DEFENSE,<br><br>Defendants.<br><br>AND RELATED CASES. | Case No. 3:06-CV-00056-PMP-VPC<br>BASE FILE<br><br>(Consolidated with Case No. 3:06-CV-00145-PMP-VPC)<br><br>**OBJECTION OF DENNIS MONTGOMERY, BRENDA MONTGOMERY AND MONTGOMERY FAMILY TRUST TO MAY 7, 2008 ORDER OF MAGISTRATE JUDGE; MEMORANDUM OF POINTS AND AUTHORITIES** |

2

Pursuant to 11 U.S.C. §636(b)(1)(A), Federal Rule of Civil Procedure 72 and Local Rule IB 3-1, Dennis Montgomery, Brenda Montgomery and the Montgomery Family Trust ("the Montgomery Parties") respectfully object to the final May 7, 2008 Order of Magistrate Judge Valerie Cooke on attorney Michael J. Flynn's request for attorney's fees on the ground that the Magistrate Judge's Order is clearly erroneous and contrary to the law for the following reasons:

1. The evidence relied upon by the Magistrate Judge in issuing her final May 7, 2008 Order are inadmissible hearsay and improper under Ninth Circuit authority.

2. The Court lacked jurisdiction to summarily adjudicate the fee dispute between non-party Michael J. Flynn and the Montgomery Parties in this action.

3. The Magistrate Judge's May 7, 2008 Order and attendant rulings violate the Montgomery Parties' right to a trial by jury.

4. The Magistrate Judge's May 7, 2008 Order and attendant rulings violate the Montgomery Parties' right to due process.

5. The Magistrate Judge's May 7, 2008 Order and attendant rulings amount to a decision on a dispositive issue as between non-party Michael J. Flynn and the Montgomery Parties, and are beyond the scope of the Magistrate Judge's reference.

6. The Magistrate Judge erred in determining that Nevada law governs the fee dispute between non-party Michael J. Flynn and the Montgomery Parties.

Dated: May 27, 2008

Respectfully submitted,

LINER YANKELEVITZ
SUNSHINE & REGENSTREIF LLP


By: ___/s/_____
Deborah A. Klar
Attorneys for Dennis Montgomery, Brenda
Montgomery and the Montgomery Family Trust

3

0039641/001/ 394462v01

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

On May 7, 2008, this Court, Magistrate Judge Valerie Cooke, issued an order on non-party Michael J. Flynn's "Motion to Conform Attorneys' Fees," finally ending a nearly nine month ancillary proceeding instituted by Mr. Flynn and his colleague, Carla DiMare, to recover attorneys' fees from their former clients in this action, Dennis Montgomery, Brenda Montgomery and the Montgomery Family Trust ("the Montgomery Parties"). That Order, however, is clearly erroneous and contrary to the law, as the Magistrate Judge relied on inadmissible hearsay evidence and never had any authority or jurisdiction to engage in this nine month summary ancillary proceeding. The Magistrate Judge's order has essentially conferred upon this Court subject matter jurisdiction where it otherwise had none, and should accordingly be reversed.

### II.

### SUMMARY OF PERTINENT FACTS

Until August of this year, the Montgomery Parties were represented in a variety of legal matters by attorney Michael J. Flynn and his colleagues in his California law firm of Flynn & Stillman, as well as California attorney, Carla DiMare. Until that time, the Montgomery Parties believed Mr. Flynn to be licensed to practice in California. Among other things, Mr. Flynn resides in California, and he maintained an office in California where he met with the Montgomery parties. Mr. Flynn and his California law firm further prepared, but never signed a written fee agreement providing for arbitration of disputes under California law. Furthermore, although he was admitted to practice *pro hac vice* before this Court in connection with his representation of the Montgomery Parties in this litigation, all of his legal work was performed from his offices in California, along with other California attorneys, and all of his pleadings listed a California address and telephone

1. number. In addition, all of his invoices were sent from an address in California, and all payments were remitted to California.[1]

On July 9, 2008, Mr. Flynn and Ms. DiMare filed a Motion to Withdraw as counsel of record in this action. On August 1, 2007, the Montgomery Parties terminated Mr. Flynn's and Ms. DiMare's representation of them in all matters. The Montgomery parties also demanded that Mr. Flynn return to them all client files in his possession. Mr. Flynn refused to do so, and instead, demanded that the Montgomery Parties pay him in excess of $600,000 before he would turn over the files.

On August 3, 2008, the Montgomery Parties commenced an action in the Los Angeles Superior Court for the State of California seeking return of their files and injunctive relief.[2] The Montgomery Parties also began initiating California arbitration proceedings against Mr. Flynn concerning the parties' fee dispute.[3]

On August 17, 2008, this Court held a hearing on Mr. Flynn's and Ms. DiMare's Motion to Withdraw and subsequently granted the Motion to Withdraw subject to certain conditions requested by the United States Department of Defense ("US DoD"). The Court also indicated that it would not "condition" Mr. Flynn's withdrawal on turnover of his files, but otherwise did not rule on the issue of Mr. Flynn's fees or files. This Court noted at the August 17, 2008 hearing that there were already proceedings in California concerning Mr. Flynn's fees and files.[4]

Immediately following the August 17, 2008 hearing, Mr. Flynn filed a Notice of Lien in this action, unilaterally announcing that he had a retaining lien on any "papers and property of the

---

[1] All of these facts and supporting evidence are set forth in the Declarations of Dennis Montgomery and Teri T. Pham in opposition to Mr. Flynn's Motion for Attorneys Fees, as well as evidence submitted by Mr. Flynn himself. [Docket #261 and 262]

[2] The Montgomery parties sought an order from the Los Angeles Superior Court enjoining Mr. Flynn from disclosing attorney-client confidences to third parties.

[3] The Montgomery Parties sought in the California fee arbitration not only a determination that Mr. Flynn is not entitled to the $608,000 that he claimed was owed, but also a determination that they were entitled to disgorgement of all fees previously paid as a result of Mr. Flynn's ethical violations.

[4] The Montgomery Parties subsequently sought clarification of the Court's September 4, 2008 Order and this Court confirmed that no determination had yet been made by the Court with respect to Mr. Flynn's files. [Docket #291]

5

Montgomery parties." [Docket #243 & 246]. Four days later, on August 21, 2007, seeking to circumvent the proceedings in California, Mr. Flynn filed a Motion for Attorneys Fees and Costs in this Court, seeking an immediate order for payment of $608,000 in attorneys' fees generated by him, the firm of Flynn & Stillman, and Ms. DiMare [Docket #248]. On August 31, 2007, the Montgomery Parties filed a one page Notice of Objection to Flynn's unilateral Notice of Lien [Docket #254]. Neither Mr. Flynn nor the Montgomery Parties have ever formally requested adjudication by this Court of Flynn's purported retaining lien over his files.

Despite this, on October 12, 2008, Magistrate Judge Valerie Cooke issued an interim order granting in part and denying in part Mr. Flynn's Motion for Attorneys. [Docket #296]. Noting that "Montgomery has never filed a motion with this court requesting that Mr. Flynn return his client files," the Magistrate Judge nonetheless *sua sponte* determined that Nevada law applies to this dispute, and that Mr. Flynn is entitled to a retaining lien under Nevada law.[5] Magistrate Judge Cooke further ruled that the Court has jurisdiction to summarily adjudicate the fee dispute in the midst of this ongoing litigation, and set forth a procedure for submission of evidence and briefing with respect to the attorneys' fee dispute as an ancillary proceeding.[6] [Docket # 296].

In connection with the summary proceeding established by the Magistrate Judge, the parties submitted written evidence and argument. However, no depositions or discovery were allowed, and no testimony or oral argument was presented. Among other things, Mr. Flynn submitted billing statements which he created for purposes of the summary proceeding. The billing statements set forth the amount of time he and his California colleagues billed and a description of their purported services. The Montgomery Parties objected to these billing statements on the

---

[5] The Magistrate Judge incorrectly noted that this Court had already concluded that Mr. Flynn did not have to turn over his files and did not voluntarily withdraw. [Docket #296 at n. 3 and 4. However, that is inconsistent with this Court's September 4, 2008 and October 4, 2008 Orders discussed above.

[6] As a result of the Magistrate Judge's October 12, 2008 ruling, the California court and arbitration tribunal subsequently dismissed the proceedings in California.

6

ground of hearsay, among other grounds [Docket # 491 and 496],[7] particularly given that Mr. Flynn's original time entries were block-billed (often in more than 10 hour blocks), yet the billing statements filed in support of Mr. Flynn's fee application broke down the time billed by Mr. Flynn and his associates in tenths of an hour.[8] Mr. Flynn acknowledged in his submissions that he used various documents in an effort to refresh his recollection to prepare these invoices. However, none of those records were provided to the Montgomery Parties.

On March 24, 2008, the Magistrate Judge issued an Order on Mr. Flynn's Motion for Attorneys Fees, denying all of the Montgomery Parties' evidentiary objections and finding that Mr. Flynn is entitled to recover $557,522.18 in attorneys' fees. [Docket #502]. The Magistrate Judge further confirmed that Mr. Flynn is entitled to a retaining lien under Nevada law.[9] Despite the Montgomery Parties' evidence to the contrary, the Magistrate Judge also made a factual finding that there was no dispute concerning the amount of fees billed or the legal services rendered by Mr. Flynn and his colleagues. The Magistrate Judge also made a factual finding that all of the time billed by Mr. Flynn and his colleagues prior to July 9, 2008 was reasonable.

Unsatisfied with this result, however, on March 31, 2008, Mr. Flynn filed a request for reconsideration of the Magistrate Judge's March 24, 2008 Order, styled as a "Motion to Conform Amount of Fees and Costs to March 24, 2008 Order," seeking an additional l $71,289.97 in fees. The Montgomery Parties opposed that request for reconsideration. However, on May 7, 2008, the Magistrate Judge granted the request and determined that Mr. Flynn is entitled to recover a total of $628,812.15 in attorneys' fees and costs.

Neither the Magistrate Judge's May 7, 2008 final Order on Mr. Flynn's request for attorneys' fees nor any of her prior rulings in connection with Mr. Flynn's fee request were styled

---

[7] The Montgomery Parties also objected to the entire proceeding as an unwarranted intrusion into the attorney-client privilege, *particularly in the midst of the ongoing underlying litigation.* However, the Magistrate Judge rejected the Montgomery Parties' objection.

[8] The Montgomery Parties submitted the declaration of expert witness Ken Moscaret who discussed all of the issues and defects with Mr. Flynn's original and newly minted invoices.

[9] The Magistrate Judge incorrectly stated that "the District Court found that former counsel have a retaining lien under Nevada law," although there has never been such a finding except by the Magistrate Judge in her October 12, 2007 ruling. [Docket #502 at 3:10]

as a Report and Recommendation. Rather, all of those rulings and orders were issued as orders of the Court. As discussed below, the Magistrate Judge did not have authority to render findings and make a dispositive determination on this fee dispute, and did not have jurisdiction to render any decision on this contested fee dispute in connection with this litigation. Furthermore, the Court erred in accepting the newly minted hearsay billing statements and allowing Mr. Flynn to recover fees for all time that was previously block-billed.

## III.

## ARGUMENT

### A. The Evidence Relied Upon By The Magistrate Judge Is Inadmissible and Improper.

As discussed above, the Magistrate Judge accepted Mr. Flynn's recreated fee statements as the basis for her determination that Mr. Flynn is entitled to recover $628,812.15 in attorneys' fees, and rejected the Montgomery Parties' objections to those recreated statements on the ground of hearsay. There is no exception to the hearsay rule that would apply to these recreated statements, and the Magistrate Judge did not articulate any in her March 24, 2008 ruling.

The Magistrate Judge indicated in her Order that Mr. Flynn was to comply with Local Rule 54-16. She did not authorize him to go back and rewrite those bills so that they comply with the mandate of Local Rule 54-16. Such a rule would be tantamount to legalized fraudulently billing. It is not credible that an attorney who has block billed can go back in time months and years later and break down that time in tenths. Indeed, clear Ninth Circuit authority cited by the Montgomery Parties' expert witness, Ken Moscaret, holds that attorney block-billing is improper and grounds for reduction of fees. See Welch v. Metropolitan Life Insurance Company, 480 F.3d 942 (9th Cir. 2007) (affirming reduction of attorneys' fees where attorney improperly block billed time entries). Accordingly, the Magistrate Judge's wholesale reliance on the inadmissible recreated hearsay statements and refusal to reduce Mr. Flynn's improper block billings are clearly erroneous and her order awarding Mr. Flynn $628,812.15 in attorneys' fees should be reversed.

### B. The Court Lacked Jurisdiction to Summarily Adjudicate This Fee Dispute

It is well-established that where there is a dispute between an attorney and client concerning payment of fees, the attorney may not seek to adjudicate that issue by way of a motion in the underlying dispute, but must commence a separate action or await conclusion of the underlying action before adjudication of a perfected attorney's lien. That was the express holding of a decision issued by this very Court less than a year ago. See Ecomares, Inc. v. Ovcharik, 2007 U.S. Dist. LEXIS 500335 (D.Nev. July 2, 2007). In Ecomares, a Nevada law firm filed a motion in the underlying case to convert its attorney's lien into a judgment while the action was still pending. The lien was based on a written agreement between the client and the firm. Id. at *3. In opposition to the motion, the client disputed the amount of fees owed and informed the court that she was pursuing a fee dispute resolution through the Nevada State Bar. Id. In denying the law firm's motion, this Court stated:

> Where there is a dispute between the client and former counsel regarding the fee requested or the legal services rendered, Morse v. Eighth Judicial District Court, 65 Nev. 275 (1948) dictates a different result. In Morse, the court held that where there are such disputes between the attorney and client, the trial court should properly refuse to decide such issues in a summary proceeding in the pending case.

Id. at *5-6. This Court specifically distinguished the Ecomares case from Gordon v. Stewart, 74 Nev. 115 (1958), a case relied upon by Mr. Flynn, in which the client expressly conceded that he had breached the fee agreement and that the attorney was entitled to recover in *quantum meruit*. Ecomares, 2007 U.S. Dist. LEXIS 50491 at *5. There has been no such concession by the Montgomery Parties here. Indeed, the Montgomery Parties expressly disputed and still dispute the amount of fees owed to Mr. Flynn, and even filed a California arbitration proceeding seeking disgorgement of fees previously paid to Mr. Flynn. [Docket #261]. The Magistrate Judge noted all of this but nonetheless, disregarded the evidence presented by the Montgomery Parties and determined that there was no dispute as to the amount of fees owed.

The Magistrate Judge's decision is completely contrary to this Court's decision in Ecomares, as well as the Nevada Supreme Court's decision in Morse, cited by this Court in

9

0039641/001/ 394462v01

Ecomares. There, the Nevada Supreme Court expressly rejected a summary adjudication of a former lawyer's fee motion in the underlying case stating:

> This court has never had occasion to approve such summary hearing nor is it necessary to determine now whether or not such summary procedure should be had in a proper case. That it would not have been proper in the instant case is plain. So delicate is the relationship between attorney and client, so necessary is it that absolute trust and confidence be unimpaired between them that the client has the power (as distinguished from the right) to discharge his attorney at any time. 5 Am.Jur. 281, Attorneys at Law, sec. 34, and cases cited. . . . The clients cite authorities to show that it is a breach of the attorney's duty to act inconsistently with the client's express wishes or to refuse to follow his instructions; that the attorney is not entitled to fees when he has been remiss in his duty whereby serious damage to the client's cause of action resulted etc. We have no hesitation in holding that the trial court properly refused to hear and determine these issues in a summary proceeding in the main action.

Morse, 65 Nev. at 287-288. Similarly, here, the Magistrate Judge should have rejected Mr. Flynn's request for summary adjudication of his motion for attorneys' fees. Given the clear dispute by the Montgomery Parties that *any* fees were owed to Mr. Flynn, to the extent the Court rejected their request for arbitration, Mr. Flynn was required to initiate a separate action, and the Montgomery Parties were entitled to a trial by jury, as well as complete discovery and due process in connection with that action. The Magistrate Judge's order is therefore clearly erroneous for this reason, as well.

### C.  The Magistrate Judge Lacked Authority to Rule On This Dispositive Motion.

It is well-established that a Magistrate Judge has no power to decide a dispositive motion absent consent of the parties. Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix, Inc., 725 F.2d 537, 546 (9th cir. 1984); 28 U.S.C. §636(b)(1)(A). Yet that is exactly what the Magistrate Judge did here. Although the fee dispute is not dispositive as to the underlying litigation, it is certainly dispositive as to the Montgomery Parties and Mr. Flynn. Indeed, in Ecomares, the Magistrate Judge issued only a Report and Recommendation with respect to the law firm's motion for attorneys' fees, making clear that such a determination is dispositive and not within the scope of the Magistrate Judge's reference. Accordingly, as the Montgomery Parties did not consent to the Magistrate Judge deciding this fee dispute, her order on behalf of the Court was clearly erroneous.

0039641/001/ 394462v01

D. **The Magistrate Judge Erred In Sua Sponte Determining That Nevada Law Governs The Dispute Between Mr. Flynn and the Montgomery Parties.**

As discussed above, contrary to the Magistrate Judge's rulings this Court never made any express determination that Nevada law governs this dispute, nor did any party expressly request such a determination. The Magistrate Judge's sua sponte determination in this regard is therefore clearly erroneous. The Montgomery Parties respectfully request that the Court allow the parties an opportunity to submit full briefing on this issue to the extent this Court determines that the issue of whether or not Mr. Flynn has a valid retaining lien should be decided by this Court, including briefing on Nevada's choice of law rules and whether or not the parties' relationship is governed by California's law, where Mr. Flynn and his colleagues live and work, or Massachusetts law, where Mr. Flynn is licensed.

## IV.

## CONCLUSION

For all the foregoing reasons, the Montgomery Parties respectfully request that the Court reverse the Magistrate Judge's May 7, 2008 Order determining that Mr. Flynn is entitled to a Nevada retaining lien in the amount of $628,812.15.

Dated: May 27, 2008                    Respectfully submitted,

                                       LINER YANKELEVITZ
                                       SUNSHINE & REGENSTREIF LLP


                                       By:    /s/   Deborah Klar
                                           Deborah A. Klar
                                           Attorneys for Plaintiffs DENNIS
                                           MONTGOMERY, BRENDA
                                           MONTGOMERY and the
                                           MONTGOMERY FAMILY TRUST

0039641/001/ 394462v01