Mark H. Gunderson, Esq. (SBN: 2134)
Catherine A. Reichenberg, Esq. (SBN: 10362)
GUNDERSON LAW FIRM
5345 Kietzke Lane, Suite 200
Reno, Nevada 89511
Telephone: (775) 829-1222
Facsimile: (775) 829-1226

Deborah A. Klar, Esq. (SBN: CA 124750)
Tuneen E. Chisolm, Esq. (SBN: CA 211741)
LINER YANKELEVITZ
SUNSHINE & REGENSTREIF LLP
1100 Glendon Avenue, 14th Floor
Los Angeles, California 90024-3503
Telephone: (310) 500-3500
Facsimile: (310) 500-3501
ADMITTED PRO HAC VICE

Attorneys for Plaintiffs
DENNIS MONTGOMERY and
the MONTGOMERY FAMILY TRUST
and Counterdefendants EDRA BLIXSETH
and OPSPRING LLC

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| DENNIS MONTGOMERY and the MONTGOMERY FAMILY TRUST,<br><br>Plaintiffs,<br><br>vs.<br><br>ETREPPID TECHNOLOGIES, LLC, WARREN TREPP, and the UNITED STATES DEPARTMENT OF DEFENSE,<br><br>Defendants.<br><br>AND RELATED CASES. | Case No. 3:06-CV-00056-PMP-VPC<br>BASE FILE<br><br>(Consolidated with Case No. 3:06-CV-00145-PMP-VPC)<br><br>**RESPONSE TO COURT'S ORDER TO SHOW CAUSE REGARDING WHY THE MONTGOMERY PARTIES' SHOULD NOT BE HELD IN CONTEMPT OF COURT FOR FAILING TO COMPLY WITH MAY 21, 2008 ORDER** |

1

0039641/001/ 37731v01

## I. INTRODUCTION

On May 21, 2008, this Court issued an order (the "May 21 Order") in which it construed the pending motion for sanctions by eTreppid Technologies LLC ("eTreppid") (Docket #634) as a motion for an order to show cause why Dennis Montgomery ("Montgomery") and the Montgomery Family Trust (jointly with Montgomery, the "Montgomery Parties") should not be held in contempt of court for their failure to comply with this Court's order of May 21, 2008 (Docket # 628). The May 21 Order directs that the Montgomery Parties produce all documents described in items 1 through 4 of the Court's May 7, 2008 order (the "May 7 Order" (Docket # 582)) and no later than Friday, May 23, 2008. The May 21 Order further requires Montgomery to produce the so-called "Glen Glogauer emails" no later than Friday, May 23, 2008 in PST or native format.

The status of the Montgomery Parties' production of the documents listed in items 1 through 4 of the May 7 Order and the Glen Glogauer email is stated below.

## II. STANDARDS FOR CIVIL CONTEMPT

A party commits civil contempt if it disobeys "a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *Go-Video v. Motion Picture Ass'n of Am. (In re Dual-Deck Video Cassette Recorder Antitrust Litig.)*, 10 F.3d 693, 695 (9th Cir. 1993). A person should not be held in contempt if his action "appears to be based on a good faith, reasonable interpretation of the court's order." *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982). "'Substantial compliance' with the court order is a defense to civil contempt, and is not vitiated by 'a few technical violations' where every reasonable effort has been made to comply." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d at 695 The alleged contemnor must have violated the court's order by clear and convincing evidence, not merely a preponderance of the evidence. *Id.*

## III. STANDARDS FOR TERMINATING SANCTIONS

"Mindful of the strong policy that cases be decided on the merits, and that dismissal without deciding the merits is the most extreme sanction, a court must not only exercise its inherent power to dismiss with restraint, but it may do so only after considering several factors…" *U.S. v. Shaffer*

*Equipment Co.*, 11 F. 3d 450, 462 (4th Cir. 1993).  In order for a court to dismiss a case as a sanction, the district court must consider five factors:

    (1) The public's interest in expeditious resolution of litigation;

    (2) The court's need to manage its docket;

    (3) The risk of prejudice to the defendants;

    (4) The public policy favoring disposition of cases on their merits; and

    (5) The availability of less drastic alternatives.

*Yourish v. California Amplifier*, 191 F. 3d 983, 990 (9th Cir. 1999) *citing Hernandez v. City of El Monte*, 138 F. 3d 393, 399 (9th Cir. 1998).  "Where a court order is violated, the first two factors support sanctions and the fourth factor cuts against a default.  Therefore, it is the third and fifth factors that are decisive."  *Adriana Intern. Corp. v. Thoeren*, 913 F. 2d 1406, 1412 (9th Cir. 1990).  "(W)hat is most critical for case-dispositive sanctions, regarding risk of prejudice and of less drastic sanctions, is whether the discovery violations 'threaten to interfere with the rightful decision of the case."  *Valley Engineers Inc. v. Electric Engineering Co.*, 158 F. 3d 1051, 1057 (9th Cir. 1998) (*quoting Adriana*, 913 F. 2d at 1412.  Discovery violations can threaten to interfere with a rightful decision in two instances:  (1) where a party's discovery violations present a "pattern of deception…[that makes] it impossible 'for the district court to conduct a trial' with any reasonable assurance that the truth would be available'" <u>Valley Engineers Inc.</u>, 158 F. 3d at 1057 *quoting* <u>Anheuser-Busch, Inc. v. Natural Beverage Distrib.</u>, 69 F. 3d 337, 352 (9th Cir. 1995) and (2) where a party's repeated failure to comply with orders compelling production threaten the rightful resolution by preventing the other party from preparing for a fast-approaching trial date, <u>Payne v. Exxon Corp.</u>, 121 F. 3d 503, 508 (9th Cir. 1997).

## IV. THE MONTGOMERY PARTIES GOOD FAITH EFFORT TO COMPLY WITH THE COURT'S MAY 21, 2008 ORDER

### A. Item 1 ("Documents Relating To Etreppid's Technology,[1] Including White Papers, Power Point Presentations, Marketing Documents, And Correspondence With Potential Customers")

#### i. The Hard Drive Produced to eTreppid on May 23, 2008.

On May 23, 2008, the Montgomery Parties produced a hard drive containing Montgomery's back-up copies of eTreppid electronic files created or dated on or before December 31, 2002 (the "Pre-2003 Electronic Files"). The Montgomery Parties believe in good faith that the Pre-2003 Electronic Files do not contain information subject to the United Stated Protective Order (the "Protective Order") or non-disclosure agreements between Montgomery and agencies of the U.S. Government (the Non-Disclosure Agreements") because eTreppid did not begin performing any sensitive work for the Government until 2003. Accordingly, it was unnecessary to undertake a time consuming screening of these particular electronic files; thereby permitting their prompt production.

Although the hard drive was timely produced, eTreppid advised the Montgomery Parties' counsel that it was not "readable." The problem may be due to viruses present in the original electronic files at the time they were backed up. It is possible that if eTreppid started up the drive delivered on May 23rd without taking precautions for the possibility that some files contained viruses, many files on the hard drive could have been rendered unreadable.

In any event, to cure the problem, on May 24, 2008, the Montgomery Parties sent another hard drive containing the same electronic files to eTreppid by Greyhound Bus. A label on the outside of the drive indicated that the drive might contain viruses. The Montgomery Parties'

---

[1] For purposes of responding to Item 1 of the May 7 Order, the Montgomery Parties have not distinguished between technology owned by eTreppid and technology used by eTreppid in performing certain work for agencies of the U.S. Government, but not owned by eTreppid. The Montgomery Parties do not, however, construe Item 1 of the May 7 Order to require production of any source code because Item 1 of the May 7 Order is based on the provision in February 21 Order concerning eTreppid's Request for Production No. 16. As to the documents the Court ordered to be produced pursuant to that document request, "source code information or executable versions of software at issue in this action" was excluded. [Docket # 448 at 4.]

counsel have not heard further from eTreppid's counsel regarding this hard drive and therefore assume that eTreppid was able to read the information on the replacement drive.

On May 27, the Montgomery Parties produced a hard drive containing additional electronic files believed in good faith to be outside the scope of the U.S. Protective Order and the Non-Disclosure Agreements.

### ii. Files That May Contain Information Covered by the U.S. Protective Order and Non-Disclosure Agreements and Thus Require Government Input Prior to Production.

In addition to the Pre-2003 files, Montgomery has millions of files in electronic form that may relate "to eTreppid's technology" as described in Item 1 of the May 7, 2008 Order.[2] [Docket # 582 at 5.] Some of these files may contain information subject to the U.S. Protective Order and/or non-disclosure or confidentiality agreements between Montgomery and federal agencies ("Non-Disclosure Agreements"). These files will be the subject of the meeting between Montgomery and the Government which is set for June 6, 2004. Once Montgomery receives guidance from the Government, all files which are outside the scope of the protective order will be promptly produced.

In the interim, the Montgomery Parties are working in good faith to screen Pre-2003 files to identify and segregate files which may contain information within the scope of the U.S. Protective Order and/or other applicable agreements. Of the remaining Pre-2003 electronic back-up files, Montgomery has screened them in two ways to identify and segregate the protected files. First, Montgomery segregated all non-text files that cannot be searched using key word search terms. Second, with respect to the remaining files containing text in whole or in part, Montgomery ran key word searches on these files in effort to identify protected information.

---

[2] The May 7 Order requires the production of "Documents relating to eTreppid's technology, including white papers, power point presentations, marketing documents, and correspondence with potential customers." The language, "including white papers, power point presentations," etc. does not appear intended to limit the language "documents relating to eTreppid's technology," but, rather, to ensure that certain types of documents are included.

1  This process has taken significant time. The Windows operating environment which must
2  be used to search through the electronic files because that is the operating system used to create the
3  files is not capable of scanning for key words efficiently. Searches have been running nearly non-
4  stop for approximately one week. A search for one word takes over twenty four hours to complete.
5  The Montgomery Parties now anticipate that they will not be able to produce Pre-2003 electronic
6  back-up files that do not contain potentially protected information until early next week assuming
7  the U.S. Government does not add additional search terms.
8  As noted, issues pertaining to production of these files will be addressed at a technical
9  meeting with the Government scheduled for later this week.

10 **B. Item 2 ("Documents relating to any attempt by the Montgomery parties to**
11 **license, sell, or distribute any technology in the fields of data compression,**
12 **pattern recognition, object tracking, or anomaly detection between January 18,**
13 **2006 and the present")**

14  The only documents even arguably responsive to this request are agreement between
15  Opspring and Montgomery. Montgomery does not have possession of these documents which he
16  believes are in the possession of his former counsel of record, Michael Flynn ("Flynn").[3] In an
17  effort to comply with the request, however, Montgomery obtained copies of the
18  Opspring/Montgomery agreements from Opspring's former counsel, Dorsey & Whitney. These
19  copies have been produced as documents number MONT 160-180 and produced to eTreppid on
20  May 26, 2008, as ordered at the May 21, 2008 hearing. By producing the documents, Montgomery
21  does not intend to, and does not, admit that he has possession, custody or control over any
22  Opspring document.

---

[3] These are the same documents that are responsive to eTreppid Request No. 25. Since Montgomery entered into the agreements produced in response to Request No. 25, the Montgomery Parties have not been in a position to license, sell or distribute the technology that is the subject of those agreements.

### C. Item 3 ("Documents that the Montgomery parties provided to the Wall Street Journal, as well as any other reporters or media organizations, which discuss or refer to Mr. Trepp, eTreppid, or Jim Gibbons")

As ordered, on May 21, 2008, the Montgomery Parties produced e mails to and from the Wall Street Journal and/or other media outlets. The documents were bates stamped MONT 001-119. The e mails are predominately to or from Montgomery's former counsel, Flynn. These are the only documents which Montgomery can verify were provided to the media.

eTreppid, however, cites certain statements by the media reporting that "hundreds" of e mails had been provided by Montgomery. As confirmed by the e mails produced on May 21 (and contrary to Flynn's representations), Flynn was the main point person between Montgomery and the media. As such, Flynn would have been the source of the "hundreds" of e mails referenced by eTreppid. Indeed, Montgomery is aware that emails which discuss or refer to Trepp, eTreppid, or Jim Gibbons were provided to certain reporters on his behalf. However, unless the e mails are addressed to, or were received from, a reporter, the Montgomery Parties cannot ascertain the universe of e mails provided by Flynn. Only Flynn can provide this information. However, the Montgomery Parties are preparing to produce all e mails they believe may have been provided to the media. The Montgomery Parties, however, cannot verify that such e mails were, or were not, actually provided by Flynn to reporters.[4]

### D. Item 4 ("Photocopies of the faces of all CDs seized during the FBI's March 2006 search of the Montgomery residence and storage units and a copy of any CD seized by the FBI and marked as an "eTreppid CD"

The final category seeks copies of the faces of CDs seized by the FBI pursuant to the 2006 execution of search warrants at Montgomery's residence and storage units. Montgomery has provided such copies for 58 CDs which Montgomery is fairly certain were seized by the FBI. Specifically, on March 14 and May 23, 2008, the Montgomery Parties photocopies of the faces of

---

[4] As the Court is aware, Flynn has a retaining lien on Montgomery's files and, therefore, Montgomery does not have access to information maintained in his former lawyer's files.

58 CDs they believe were seized by the FBI from Montgomery's residence. These documents were marked with control numbers DM 888-906 and MONT 120-146.

In March, photocopies of 30 CDs were produced to eTreppid. Of those, twelve had an "eTreppid indicia". Copies of those CDs will be produced to eTreppid forthwith. Ten of the 28 CDs for which photocopies were produced in May have an eTreppid indicia. Copies of those CDs will be produced forthwith.

Nevertheless, eTreppid complains that the FBI inventories reflect that 169 CDs were seized. The reasons for the shortfall include the following. First, Montgomery cannot verify the precise CDs seized by the FBI. FBI inventories do not clearly identify the CDs taken in the search. Complicating matters, the return inventories show that a higher number of CDs were returned, than were purportedly seized.[5] Moreover, at the time the CDs were returned, Montgomery did not segregate the returned items, but merely intermingled returned CDs with others in his possession. It is therefore impossible to ascertain exactly which CDs were seized by the Government.

Second, the FBI seizure inventory identifies a yellow/gray binder containing CDs. Although the inventory is specific enough to identify these CDs as CDs seized by the Government, Montgomery believes in good faith that these CDs may disclose information within the ambit of the Protective Order and/or non-disclosure agreements with other federal agencies. Montgomery is hopeful that this issue will be resolved at the June 6 meeting with the Government. If so, Montgomery will promptly produce all eTreppid CDs seized by the Government which the Government deems to be outside the scope of the Protective Order and/or non-disclosure agreements.

Finally, Montgomery specifically recalls that a CD with Trepp e mails was seized by the FBI and that the CD is responsive to Item 4. Accordingly, Montgomery has undertaken a diligent but unsuccessful search to locate this CD. Montgomery believes that the CD may in Mr. Flynn's or his son's possession (and may include e mails provided to the press by Flynn).

---

[5] As the Court knows, Montgomery has requested that an evidentiary hearing to determine precisely what the FBI took, and what it returned; i.e. to resolve the discrepancy between the search and return inventories. The motion is still pending.

0039641/001/37731v01

### E. Glen Glogauer email in native of PST format

The Montgomery Parties' production of the Len Glogauer email in PST format is scheduled to occur on June 5th. At the time of the May 21, 2008 hearing, counsel for the Montgomery Parties did not know who had possession of the Len Glogauer email. Importantly, before the May 21 hearing, the Len Glogauer email in PST or native format was not required to be produced pursuant to any Court Order. Subsequent to the May 21, 2008 hearing, counsel for the Montgomery Parties promptly acted to locate the Len Glogauer email. Thereafter, arrangements for production of that email in PST format were made.

## V. CONCLUSION

For the foregoing reasons, the evidence does not support an order finding the Montgomery Parties are in contempt of its May 21, 2008 Order. Accordingly, terminating sanctions are not warranted.

Dated: June 2, 2008

Respectfully submitted,

LINER YANKELEVITZ
SUNSHINE & REGENSTREIF LLP

By: _____/s/_____
Deborah A. Klar
Attorneys for DENNIS MONTGOMERY,
the MONTGOMERY FAMILY TRUST,
EDRA BLIXETH, AND OPSPRING LLC

# CERTIFICATE OF SERVICE

Pursuant to NRCP 5(b), I certify that I am an employee of the Law Offices Of Liner Yankelevitz Sunshine & Regenstreif LLP, and that on **June 3, 2008**, I caused to be served the within document described as **RESPONSE TO COURT'S ORDER TO SHOW CAUSE REGARDING WHY THE MONTGOMERY PARTIES' SHOULD NOT BE HELD IN CONTEMPT OF COURT FOR FAILING TO COMPLY WITH MAY 21, 2008 ORDER** on the interested parties in this action as stated below:

| | |
|---|---|
| J. Stephen Peek, Esq.<br>Jerry M. Snyder, Esq.<br>Hale Lane Peek Dennison and Howard<br>5441 Kietzke Lane, Second Floor<br>Reno, Nevada  89511<br>(775) 327-3000; 786-6179 - FAX<br>speek@halelane.com; jsnyder@halelane.com<br>Attorneys for Etreppid and Warren Trepp | Carlotta P. Wells, Sr. Trial Counsel<br>U.S. Dept. of Justice<br>Fed. Programs Branch<br>Civil Division, Room 7150<br>20 Massachusetts Avenue, NW<br>Post Office Box 883<br>Washington, D.C. 20044<br>(202) 514-4522; 616-8470 - FAX<br>E-mail:  Carlotta.wells@usdoj.gov<br>Attorneys for Department of Defense |
| Reid H. Weingarten, Esq.<br>Brian M. Heberlig, Esq.<br>Robert A. Ayers, Esq,<br>Steptoe & Johnson, LLP<br>1330 Connecticut Avenue, N.W.<br>Washington, D.C.  20036-1795<br>(202) 429-3000; (202) 429-3902 - FAX<br>rweingarten@steptoe.com;<br>bhaberlig@steptoe.com; rayers@steptoe.com<br>Attorneys for eTreppid and Warren Trepp | Raphael O. Gomez, Esq., Sr. Trial Counsel<br>U.S. Dept. of Justice, Fed. Programs Branch<br>Civil Division, Room 6144<br>20 Massachusetts Avenue, NW<br>Post Office Box 883<br>Washington, D.C. 20044<br>(202) 514-1318; 616-8470 - FAX<br>E-mail:  raphael.gomez@usdoj.gov<br>Attorneys for Department of Defense |
| Greg Addington, AUSA<br>U.S. DEPARTMENT OF JUSTICE<br>100 W. Liberty Street. Suite 600<br>Reno, Nevada  89501<br>E-mail:  Greg.addington@usdoj.gov<br>(775) 784-5181 - FAX<br>Attorneys for Department of Defense | Bridget Robb Peck, Esq.<br>Lewis and Roca LLP<br>50 West Liberty Street, Suite 410<br>Reno, Nevada  89501<br>Tel:  (775) 823-2900<br>Fax:  (775) 823-2929<br>bpeck@lrlaw.com<br>Attorneys for Atigeo LLC and Michael Sandovdal |
| Jacquelyn A. Beatty, Esq.<br>Karr Tuttle Campbell<br>1201 Third Avenue, Suite 2900<br>Seattle, Washington  98101<br>Fax:  (206) 682-7100<br>E-mail:  jbeatty@karrtuttle.com<br>Attorneys for Michael Sandoval | Robert E. Rohde, Esq.<br>Rohde & Van Kampen<br>1001 Fourth Avenue, Suite 4050<br>Seattle, Washington  98154<br>Fax:  (206) 405-2825<br>E-mail:  brohde@rohdelaw.com<br>Attorneys for Atigeo LLC |

☒  **[ELECTRONIC]**  By filing the document(s) electronically with the U.S. District Court and therefore the court's computer system has electronically delivered a copy of the foregoing document(s) to the persons listed above at their respective email address.

0039641/001/ 371787v01

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on June 3, 2008, at Los Angeles, California.

| Criss A. Draper | *(signature)* |
|---|---|
| (Type or print name) | (Signature) |

0039641/001/ 371787v01