| | |
|---|---|
| 1 | Mark H. Gunderson, Esq. (SBN: 2134) |
|  | Catherine A. Reichenberg, Esq. (SBN: 10362) |
| 2 | GUNDERSON LAW FIRM |
|  | 5345 Kietzke Lane, Suite 200 |
| 3 | Reno, Nevada 89511 |
|  | Telephone: (775) 829-1222 |
| 4 | Facsimile: (775) 829-1226 |

Deborah A. Klar, Esq. (SBN: CA 124750)
Tuneen E. Chisolm, Esq. (SBN: CA 211741)
LINER YANKELEVITZ
SUNSHINE & REGENSTREIF LLP
1100 Glendon Avenue, 14th Floor
Los Angeles, California 90024-3503
Telephone: (310) 500-3500
Facsimile: (310) 500-3501
ADMITTED PRO HAC VICE

Attorneys for DENNIS MONTGOMERY, the
MONTGOMERY FAMILY TRUST, EDRA BLIXETH, and
OPSPRING LLC

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DENNIS MONTGOMERY and the MONTGOMERY FAMILY TRUST, | Case No. 3:06-CV-00056-PMP-VPC BASE FILE |
| Plaintiffs, | (Consolidated with Case No. 3:06-CV-00145-PMP-VPC) |
| vs. | |
| ETREPPID TECHNOLOGIES, LLC, WARREN TREPP, and the UNITED STATES DEPARTMENT OF DEFENSE, | **PLAINTIFFS' EMERGENCY MOTION REQUESTING DELAY IN HEARING, OR IN THE ALTERNATIVE, RELIEF FROM THE REQUIREMENT THAT MONTGOMERY BRING HARD DRIVES CONTAINING POTENTIALLY PRIVILEGED INFORMATION** |
| Defendants. | |
| AND RELATED CASES. | |

Plaintiff Dennis Montgomery respectfully requests that the Court relieve him of the obligation to bring with him on June 10 any hard drive potentially containing classified material. Montgomery makes this request because the Government has forbidden him from transporting any storage medium, whether an original hard drive or full or partial copies, that potentially contains classified material. Exh. 1, at 1. Accordingly, the Court's current Order leaves Montgomery in a position where he must either (a) violate the provisions of the Court's Order requiring him to bring original hard drives or (b) risk penalties for mishandling classified information. Montgomery should not be placed in this dilemma.

Montgomery is attempting to substantially comply with the Court's Order by creating copies of the files that do not contain classified information. Indeed, that is how he accomplished the initial production — because no potentially sensitive work occurred until 2003, he was able to produce all files that were last edited on or before December 31, 2002, by copying them and producing the copied files. However, as explained below, it is physically impossible for him to complete this process for post-2003 files in time for the June 10 hearing. Montgomery therefore requests the Court's guidance and suggests that a continuance of the hearing may be appropriate.

First, the delay in creating copies has been outside Montgomery's control. Montgomery's storage media, which are located in California, contain approximately 2.87 million files. To identify which of those files contain classified material (so that they may be removed from the copies), Montgomery must run searches using terms provided by the Government. Due to the sensitive nature of the material, the Government will not discuss the matter via e-mail or over the telephone, or in any manner other than in person in or near Washington, D.C., at a location the Government is confident enjoys sufficient security. Thus, Montgomery must travel to Washington to obtain the search terms. The Government has scheduled that meeting for June 6.

As noted above, the Government will not permit Montgomery to transport any storage media that may contain classified material. The Government also is unwilling to permit anyone but Montgomery to work with the storage media — indeed, he is not even permitted to provide media containing potentially classified information to his attorneys. Thus, because Montgomery must

---
1

EMERGENCY MOTION REQUESTING DELAY IN HEARING

1 personally implement the searches, he must return to California after meeting the Government's
2 representatives on June 6 before the searches can begin.

3       Given these constraints, Montgomery cannot hope even to complete a single search in time
4 for the scheduled hearing. As described in more detail in his declaration, using the equipment and
5 software available to him for the task, running even a single search requires approximately 60
6 hours. The fundamental problem is that the Windows search utility was designed to search
7 thousands of files, not millions of files. Thus, the search repeatedly crashes and must be manually
8 resumed after each crash. Since it is impractical for Montgomery to personally monitor the process
9 24 hours a day, more time will undoubtedly be lost if a crash occurs when he is otherwise occupied,
10 or sleeping. Even when the search is operating, the sheer number of files that must be searched
11 causes the utility to operate painfully slowly.

12       What is worse, even after the searches are completed, Montgomery must review the results
13 because he anticipates both false positives and false negatives. To illustrate the problem of false
14 positives, suppose that one of the terms provided by the Government were the acronym "mba."
15 Then in addition to the "true positives" (files that used the term MBA), Montgomery's search also
16 would pick up as false positives files referencing the "ruMBA" or discussing "luMBAgo." In order
17 to represent that he had limited the removal process only to "true positives," Montgomery will have
18 to manually inspect the search results to distinguish true positives from false positives. Based on
19 his knowledge of the files and the terms he anticipates being requested to search, Montgomery
20 expects this to be a significant issue.

21       False negatives are an even thornier problem. Approximately half of the 2.87 million files
22 are image files. The Windows search utility is not capable of searching images. However,
23 unsearchable text is frequently present in these images. For example, many of the images contain
24 watermarks with a term Montgomery anticipates will be included among the Government's search
25 terms. The only way for Montgomery to detect and remove these files is to manually inspect each
26 and every image file. If there are only one million image files, and if Montgomery is able to
27 inspect 5,000 files per day (a task that would make this inspection his full-time job), the process
28 would take 200 days, or nearly seven months.

2
EMERGENCY MOTION REQUESTING DELAY IN HEARING
Error! Unknown document property name./Error! Unknown document property name./ Error! Unknown document property name.vError!
Unknown document property name.

1     In short, Montgomery has diligently undertaken the enormously burdensome task required by this Court's Order. However, it is physically impossible for him to fully comply with the Court's Order without violating the Government's requirements regarding the handling of classified information. It is technically impossible, given the time constraints, for Montgomery to substantially comply with the Court's order by separating out and providing for inspection all files that do not contain classified information. Montgomery therefore respectfully requests relief from the Court's Order to the extent it would require him to transport classified information in violation of the Government's restrictions, and suggests that a continuance of the June 10 hearing may be appropriate.

Dated: June 5, 2008

GUNDERSON LAW FIRM
LINER YANKELEVITZ SUNSHINE &
REGENSTREIF LLP

By: /s/ Mark Gunderson

Mark H. Gunderson
Attorneys for DENNIS MONTGOMERY,
the MONTGOMERY FAMILY TRUST,
EDRA BLIXETH, and OPSPRING LLC

---

3
EMERGENCY MOTION REQUESTING DELAY IN HEARING

Error! Unknown document property name./Error! Unknown document property name./ Error! Unknown document property name.vError! Unknown document property name.