UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DENNIS MONTGOMERY and the MONTGOMERY FAMILY TRUST,<br><br>    Plaintiffs,<br><br>v.<br><br>ETREPPID TECHNOLOGIES, LLC; WARREN TREPP; and the UNITED STATES DEPARTMENT OF DEFENSE,<br><br>    Defendants.<br><br>AND ALL RELATED MATTERS. | 3:06-CV-00056-PMP-VPC<br>BASE FILE<br><br>3:06-CV-00145-PMP-VPC<br><br>O R D E R |

Presently before the Court is Counterdefendants Edra Blixseth and Opspring, LLC's Motion to Dismiss eTreppid's Counterclaims (Doc. #504) with supporting exhibits (Doc. #505), filed on March 24, 2008. Counterclaimants eTreppid Technologies, LLC and Warren Trepp ("eTreppid") filed an Opposition (Doc. #532) on April 11, 2008. Counterdefendants filed a Reply (Doc. #559) on April 25, 2008.

**I. BACKGROUND**

This case concerns a dispute between eTreppid and Dennis Montgomery ("Montgomery") as to who owns certain computer software source code. At issue in the present motion are eTreppid's misappropriation of trade secrets and non-statutory state law tort claims asserted in eTreppid's Counterclaim (Doc. #393).

///

In the Counterclaim, eTreppid alleges it is in the business of developing and marketing software, including software for data compression, pattern recognition, object tracking, and anomaly detection. (Countercl. [Doc. #393] at 13.) The software is written in human readable computer language known as source code. (Id. at 9.) The Counterclaim defines the term "eTreppid Source Code" as "the source code which comprises eTreppid's digital compression products, including data compression, pattern recognition, object tracking and anomaly detection and other related functions." (Id. at 9, 13.) eTreppid contends it took measures to protect access to its Source Code, including limiting the storage of the Source Code to two password-protected servers and computer workstations. (Id. at 14.) Only Montgomery and one other eTreppid employee knew the password. (Id.) These computers were stored in a room accessible by only a few employees. (Id.) In addition to this security, eTreppid controlled access to its building and had an alarm system. (Id.)

    eTreppid alleges it permitted its employees to work on portions of the eTreppid Source Code from a shared directory, but only Montgomery, eTreppid's Chief Technology Officer, had access to the complete eTreppid Source Code. (Id. at 9, 11, 15.) According to the Counterclaim, Montgomery began deleting eTreppid Source Code files in December 2005. (Id.) eTreppid contends Montgomery removed one of the backup workstations used to store the Source Code and Montgomery deleted the Source Code from the eTreppid servers and the employees' workstations. (Id. at 16.) eTreppid discovered the Source Code was deleted in January 2006 and thereafter terminated Montgomery's employment. (Id. at 16-17, 19.) eTreppid alleges that as a result of Montgomery deleting its Source Code, eTreppid's employees' ability to perform their work on customer projects is limited, eTreppid is unable to obtain contracts with interested customers, and also has been "precluded from doing business with certain of its prior customers because they had been brought into this litigation by Montgomery." (Id. at 18-19.)

2

On March 6, 2006, Federal Bureau of Investigation ("FBI") agents searched Montgomery's residence and rented storage units. (Id. at 18.) The FBI seized, among other things, computer hard drives. (Id.) eTreppid contends twenty-seven of these hard drives belong to eTreppid, as documented by the serial numbers and eTreppid's receipts. (Id.)

eTreppid initially brought an action against Montgomery in state court, where it obtained a preliminary injunction restraining "Montgomery and all persons or entities in active concert or participation therewith" from "destroying, hypothecating, transferring, modifying and/or assigning the eTreppid Source Code, [and] from discussing any eTreppid technology, including anomaly detection and pattern recognition software, with any third-party." (Id. at 19.) eTreppid contends that after it terminated Montgomery's employment in January 2006, and after the preliminary injunction took effect, Montgomery discussed the eTreppid technology with potential investors, including Counterdefendants Edra Blixseth ("Blixseth"), Michael Sandoval ("Sandoval"), Opspring LLC ("Opspring"), and Atigeo LLC. (Id. at 19-20.) According to eTreppid, these individuals and entities currently possess the eTreppid Source Code and are modifying and developing the Source Code to market it to third parties, despite their awareness of the preliminary injunction. (Id. at 20.)

After eTreppid brought suit in Nevada state court, Montgomery brought suit in this Court and then removed the state court action to this Court. The Court has consolidated the actions. Based on the above allegations, eTreppid brings counterclaims for misappropriation of trade secrets under Nevada Revised Statutes § 600A.010 et seq., breach of contract, conversion, breach of fiduciary duty, bad faith - tortious and contractual, declaratory relief, intentional interference with contract, claim and delivery, civil conspiracy, and intentional interference with prospective economic relations.

Counterdefendants Blixseth and Opspring move to dismiss eTreppid's state law claims based on misappropriation of trade secrets as preempted by Nevada's Uniform

3

Trade Secrets Act. Additionally, Counterdefendants move to dismiss all of eTreppid's claims against them because those claims are predicated on the state court preliminary injunction, which Counterdefendants contend is unenforceable as a matter of law as too vague. Counterdefendants also move to dismiss eTreppid's claim for misappropriation of trade secrets to the extent it asserts Counterdefendants misappropriated anything beyond data compression source code because eTreppid does not own any source code other than data compression code. Counterdefendants move to dismiss the misappropriation of trade secrets claim for the additional reason that eTreppid fails to identify the trade secret sufficiently.

eTreppid responds that its misappropriation of trade secrets claim and its Nevada common law claims are not necessarily based on the same facts, and eTreppid is permitted to plead the claims in the alternative. With respect to the preliminary injunction, eTreppid contends the order sufficiently describes the prohibited conduct and adequately defines and identifies the eTreppid Source Code. eTreppid argues it is a question of fact not suitable for resolution on a motion to dismiss whether it has ownership rights in technology beyond data compression. eTreppid further argues it adequately has defined its trade secret and further definition is not possible because Montgomery stole the Source Code and deleted eTreppid's copies of it.

Counterdefendants also move to dismiss eTreppid's intentional interference with a contract claim in count eight because Counterdefendants allegedly did not interfere with eTreppid's contract with Montgomery until after Montgomery was terminated from eTreppid. Counterdefendants also argue eTreppid fails to state a cause of action for claim and delivery against them because eTreppid alleges Montgomery has possession of the subject computer hard drives, not Counterdefendants.

eTreppid responds that Montgomery's contractual obligations regarding trade secrets extended beyond his termination, and, in any event, the date of Montgomery's

termination of employment is a question of fact. With respect to claim and delivery, eTreppid contends it adequately has alleged Montgomery transferred property to Counterdefendants. Alternatively, eTreppid requests leave to amend to add sufficient factual allegations regarding claim and delivery.

**II. DISCUSSION**

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." Wyler Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted). However, the Court does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in the plaintiff's complaint. See Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994). There is a strong presumption against dismissing an action for failure to state a claim. Ileto v. Glock Inc., 349 F.3d 1191, 1200 (9th Cir. 2003). "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" Hydrick v. Hunter, 500 F.3d 978, 985 (9th Cir. 2006) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. Bell Atl. Corp. v Twombly, --- U.S. ----, 127 S. Ct. 1955, 1965 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." Id. at 1964-65.

**A. Preemption**

Nevada's Uniform Trade Secrets Act prohibits the misappropriation of trade secrets and provides for a private right of action for damages and injunctive relief. See Nev. Rev. Stat. § 600A.010 et seq. The Act contains a provision indicating it displaces certain conflicting tort remedies:

   1. Except as otherwise provided in subsection 2, this chapter displaces

>conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret.
>2. This chapter does not affect:
>   (a) Contractual remedies, whether or not based upon misappropriation of a trade secret;
>   (b) Other civil remedies that are not based upon misappropriation of a trade secret; or
>   (c) Except as otherwise provided in NRS 600A.035, criminal sanctions, whether or not based upon misappropriation of a trade secret.

Nev. Rev. Stat. § 600A.090. The Act precludes common law tort claims arising from a "single factual episode" of misappropriation of a trade secret. Frantz v. Johnson, 999 P.2d 351, 357-58 (Nev. 2000); Hutchison v. KFC Corp., 809 F. Supp. 68, 71-72 (D. Nev. 1992) (dismissing various common law tort claims as precluded by the Act). However, Nevada's Uniform Trade Secrets Act does not provide a "blanket preemption to all claims that arise from a factual circumstance possibly involving a trade secret." Frantz, 999 P.2d at 357 n.3. If the plaintiff asserts claims that "do not depend on the information at issue being deemed a trade secret," the Act will not preclude those claims. Id.

Pursuant to Federal Rule of Civil Procedure 8, "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Even if any of the above claims are duplicative of the misappropriation of trade secrets claim and therefore preempted by the Nevada Unfair Trade Secrets Act, eTreppid is entitled to plead the claims in the alternative under Rule 8. eTreppid cannot recover on both types of claims. See Frantz, 999 P.2d at 357-58 (finding district court erred in awarding damages on both statutory and common law claims based on a misappropriation of trade secrets). However, it may plead the statutory and non-statutory claims in the alternative at this stage of the proceedings, and it therefore would be

6

premature to dismiss eTreppid's common law claims.[1]  The Court will deny Counterdefendants' motions to dismiss on this basis.

### B. Preliminary Injunction

Counterdefendants move to dismiss all of eTreppid's claims, arguing the claims are based on Counterdefendants' alleged violation of the state court preliminary injunction. Counterdefendants contend the injunction is unenforceable as a matter of law because it is too vague.  Counterdefendants contend the preliminary injunction does not define what constitutes eTreppid Source Code sufficiently to put Counterdefendants on notice as to what conduct is enjoined.  Counterdefendants note they had no prior relationship with eTreppid and would not be in a position to know what eTreppid considered its proprietary source code.

eTreppid responds that the preliminary injunction adequately identifies the technology at issue as computer software code allegedly belonging to eTreppid and further describes this technology to include anomaly detection and pattern recognition software. Additionally, eTreppid contends this Court previously found the preliminary injunction enforceable when it denied Montgomery's motion to vacate the preliminary injunction.

Pursuant to Federal Rule of Civil Procedure 65(d), an order granting an injunction must: "(A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail--and not by referring to the complaint or other document--the act or acts restrained or required."  Rule 65's specificity requirement is not merely a technical procedural hurdle.  Schmidt v. Lessard, 414 U.S. 473, 476 (1974).  "The Rule was designed to prevent uncertainty and confusion on the part of those faced with

---

[1] Although this Court dismissed conflicting common law claims as preempted by the Nevada Uniform Trade Secrets Act in another action, it is unclear from the opinion in that case whether the plaintiff argued he was entitled to plead in the alternative under Rule 8.  See Hutchison, 809 F. Supp. at 71-72.

7

injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." Id.  The injunction should be in plain English, understandable by a lay person. Reno Air Racing Ass'n., Inc. v. McCord, 452 F.3d 1126, 1134 (9th Cir. 2006).  However, an injunction is not deficient under Rule 65(d) unless it is so vague it has "no reasonably specific meaning." Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1087 (9th Cir. 2004) (quotations omitted).  Whether an injunction is sufficiently specific is "context-specific" and depends on the circumstances surrounding the injunction's entry. Reno Air Racing Ass'n., Inc., 452 F.3d at 1133.

An injunction involving trade secrets often is difficult to frame so as to provide sufficient protection to the party claiming the trade secret while still giving the enjoined parties reasonable notice of the restrained conduct. See Am. Can Co. v. Mansukhani, 742 F.2d 314, 332-33 (7th Cir. 1984).  Rule 65(d)'s specificity requirement does not mean an injunction must disclose the trade secrets the injunction is aimed at protecting. See Henry Hope X-Ray Prod., Inc. v. Marron Carrel, Inc., 674 F.2d 1336, 1343 (9th Cir. 1982) (approving district court's use of a sealed appendix describing the trade secret to ensure the injunction did not disclose the protected party's trade secrets); 3M v. Pribyl, 259 F.3d 587, 598 (7th Cir. 2001).  Such a rule would defeat the purpose of acquiring the injunction to prevent such disclosure.  However, the issuing court must endeavor to identify what constitutes the trade secret at issue such that a restrained party is able to determine its responsibilities under the injunction. See Patriot Homes, Inc. v. Forest River Housing, Inc., 512 F.3d 412, 415-16 (7th Cir. 2008).

A party potentially implicated by the injunction may petition the court that granted the injunction for a modification or construction of the order. Regal Knitwear Co. v. NLRB, 324 U.S. 9, 15 (1945).  A party who makes "its own determination as to what the injunction mean[s], . . . act[s] at its peril." Donovan v. Sureway Cleaners, 656 F.2d 1368, 1373 (9th Cir. 1981).

8

The state court preliminary injunction states that it involves "computer software source code (hereinafter 'Source Code'), allegedly belonging to Plaintiff ETreppid Technologies." ( [Doc. #505], Ex. 1 at 1.)  The state court found that pursuant to the parties' employment agreement, the parties' course of conduct, and Montgomery's acquiescence to and participation in the use of the Source Code and technology to fulfill eTreppid contractual agreements, eTreppid established it was likely to prevail on its claims that Montgomery misappropriated the Source Code.  (Id. at 2.)  Additionally, the preliminary injunction identified the "technology at issue, including data compression software, image detection software, and pattern recognition software, which necessarily relies upon the Source Code for its operation" as essential to eTreppid's business and worth in excess of $100,000.  (Id.)  The state court therefore ordered the following:

> Until the conclusion of a trial on the merits or other Order, Montgomery and all persons or entities in active concert or participation therewith, are enjoined and restrained from destroying hypothecating, transferring, modifying, and/or assigning the ETreppid Source Code, from discussing and ETreppid technology, including anomaly detection and pattern recognition software, with any third party, except experts and other persons and witnesses necessary to Defendant's case and counsel, provided, however that such witnesses and counsel shall not disclose any information to others about ETreppid Source Code.

(Id. at 3.)  The state court stated its reasons for issuing the injunction were "to maintain the status quo and to avert any irreparable harm that ETreppid may suffer and based on the risk that Mr. Montgomery could delete and/or transfer the last version of the ETreppid Source Code that remains intact."  (Id.)

This Court previously has rejected Montgomery's argument that the state court preliminary injunction is too vague to be enforceable.  (Mot. to Vacate Prelim. Inj. [Doc. #26 in 2:06-CV-00145-PMP-PAL] at 25-26; Order [Doc. #230].)  The Court likewise rejects Counterdefendants' argument.  The preliminary injunction identifies the trade secret at issue as eTreppid's Source Code and the data compression software, image detection

9

software, and pattern recognition software, which necessarily rely upon the Source Code for their operation. The preliminary injunction further identifies the Source Code as the technology Montgomery and eTreppid used, through their course of dealing at eTreppid, to fulfill eTreppid's contracts. To be enjoined, Counterdefendants must be acting in active concert or participation with Montgomery, and eTreppid alleges Counterdefendants did so in full awareness of the preliminary injunction. Montgomery, as the only person at eTreppid with access to the complete eTreppid Source Code, the person responsible for its backup, and the Chief Technology Officer at eTreppid, is intimately familiar with the disputed Source Code eTreppid used to fulfill its contracts in the areas of data compression, image detection, and pattern recognition, and which he is alleged to have deleted and stolen. Given Montgomery's primary role in relation to eTreppid's Source Code, "[i]t ill behooves [Montgomery] and those in privity with him to now assert they do not know." Dekar Indus., Inc. v. Bissett-Berman Corp., 434 F.2d 1304, 1306 (9th Cir. 1970). Given the context and the circumstances surrounding the issuance of the preliminary injunction, the preliminary injunction has reasonably specific meaning. The Court will deny Counterdefendants' motion to dismiss on this basis.

### C. Misappropriation of Trade Secrets for Code Other Than Data Compression

Counterdefendants argue that to state a misappropriation of trade secrets claim, eTreppid must own the source code at issue. Counterdefendants argue eTreppid asserts in the Counterclaim it owns the source code because Montgomery transferred it to eTreppid by agreement or because Montgomery created it within the scope of his employment. Counterdefendants contend that these ownership allegations are belied by the Contribution Agreement and Operating Agreement entered into by Montgomery and eTreppid in which Montgomery agreed to transfer only technology related to data compression. Counterdefendants contend the Court may review these documents on a motion to dismiss

because eTreppid refers to these agreements in the Counterclaim. As to work for hire, Counterdefendants argue Montgomery was a partner in eTreppid, not its employee, and no agreement exists that any work Montgomery produced for eTreppid would belong to eTreppid beyond data compression software.

eTreppid responds that it need not prove ownership at the motion to dismiss stage, it need only plead facts supporting a plausible entitlement to relief. eTreppid contends it has made sufficient factual allegations it owns the misappropriated property. eTreppid argues that determining what technology Montgomery transferred under the Contribution Agreement, whether Montgomery was an employee, and whether Montgomery held a copyright interest in the Source Code are factual issues and therefore dismissal is inappropriate.

Determining who owned the disputed Source Code involves questions of fact not suitable for determination while ruling on a motion to dismiss. The Court therefore will deny Counterdefendants' motion to dismiss on this basis.

### D. Misappropriation of Trade Secrets - Identifying the Trade Secret

Counterdefendants move to dismiss eTreppid's misappropriation of trade secrets claim for failure to identify the purported trade secret by describing it sufficiently to separate it from matters of general knowledge in the trade. eTreppid responds that it sufficiently describes the software at issue by describing the type of technology at issue and the purposes for which eTreppid used it. Additionally, eTreppid contends it cannot further describe the trade secret because Montgomery took it and deleted eTreppid's copies of it.

The Counterclaim sufficiently identifies the trade secret at issue for purposes of surviving a Rule 12(b)(6) motion to dismiss. eTreppid identifies the Source Code as being related to data compression, pattern recognition, object tracking, and anomaly detection. (Countercl. at 9, 13.) This adequately identifies the trade secret at issue for notice pleading purposes. The cases upon which Counterdefendants rely apply California law, which

statutorily requires that in a misappropriation of a trade secret action, a party alleging misappropriation "shall identify the trade secret with reasonable particularity" before commencing discovery relating to the trade secret. Cal. Code Civ. P. § 2019.210; see also Imax Corp. v. Cinema Tech., Inc., 152 F.3d 1161, 1164-65 (9th Cir. 1998) (applying California law); Universal Analytics, Inc. v. MacNeal-Schwendler Corp., 707 F. Supp. 1170, 1177 (C.D. Cal. 1989) (same). Counterdefendants have not provided any authority that Nevada employs a rule that would require dismissal on a motion for failure to state a claim for failure to adequately identify the trade secret in the complaint. Even in California, a party need do so only before discovery commences, not necessarily in the complaint or counterclaim. In Imax, the party asserting the trade secret failed to identify the trade secret sufficiently at the summary judgment stage, not dismissal. Imax Corp., 152 F.3d at 1166. Counterdefendants may pursue further definition of the trade secret at issue through discovery.

Moreover, the Counterclaim alleges that Montgomery was the only eTreppid employee with access to the entire eTreppid Source Code, that Montgomery was the individual solely responsible for backing up the Source Code, that Montgomery falsely represented he was providing eTreppid with backup disks containing the Source Code, that Montgomery took the Source Code from eTreppid, and that Montgomery deleted all copies of the Source Code from all eTreppid electronic storage media. (Countercl. at 9-10, 14-17.) Accepting these allegations as true in ruling on a motion to dismiss, eTreppid is incapacitated in further identifying the trade secret at the pleading stage due to Montgomery's theft and destruction of the Source Code. The Court therefore will deny Counterdefendants' motion to dismiss on this basis.

### E. Intentional Interference with Contract

Counterdefendants move to dismiss eTreppid's claim for intentional interference with a contract because based on the Counterclaim's allegations, Counterdefendants did not

interfere with eTreppid's contract with Montgomery until after Montgomery's employment with eTreppid was terminated. eTreppid responds that Montgomery's contractual relations with respect to eTreppid's proprietary information extend beyond Montgomery's period of employment. Further, eTreppid argues the period of Montgomery's employment is a factual issue.

To state a claim for intentional interference with contractual relations, a plaintiff must show "(1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." J.J. Indus., LLC v. Bennett, 71 P.3d 1264, 1267 (Nev. 2003).

The Counterclaim alleges that pursuant to the Operating Agreement, Montgomery agreed to devote substantially all of his time and attention to eTreppid's business during reasonable business hours. (Countercl. at 12.) Additionally, the Counterclaim asserts the Operating Agreement required Montgomery not to compete with eTreppid in developing competitive software, not to be involved in a similar business as eTreppid, and otherwise not to engage in similar business as eTreppid. (Id. at 11-12.) eTreppid alleges that "after Montgomery's employment with eTreppid was terminated in January 2006, and after the entry of the foregoing Preliminary Injunction, . . . Montgomery discussed the eTreppid technology with a group of potential investors, including, not limited to . . . Blixseth . . . in clear violation of the Court's preliminary injunction order." (Id. at 19.)

eTreppid further alleges that "Montgomery, Blixseth, and Sandoval formed a separate entity, Opspring, for the specific purpose of further misappropriating the eTreppid Source Code and related technology by using them for their own financial gains and in clear violation of the preliminary injunction order, which is still in effect." (Id.) Additionally, eTreppid contends that "from the time that Montgomery first began

13

discussing the eTreppid technology and Source Code with Blixseth, Opspring, Atigeo, and/or Sandoval, these individuals and entities were aware of the fact that the Court had entered the Preliminary Injunction referenced above, but nonetheless knowingly disregarded the requirements of the Preliminary Injunction." (Id. at 20.)  In its eighth cause of action, eTreppid alleges Blixseth and Opspring were aware of the contract between eTreppid and Montgomery, and through the conduct above, intended to and did interfere with this contractual relationship, causing eTreppid damages.  (Id. at 25-26.)

        eTreppid's allegations in its eighth cause of action fail to state a claim for intentional interference with contractual relations against Counterdefendants.  Taking the Counterclaim's factual allegations as true, Montgomery's employment with eTreppid terminated and the preliminary injunction was in place before Montgomery first began talking to Counterdefendants.  Consequently, no valid and existing contract existed between eTreppid and Montgomery at the time of the alleged interference.  In opposition, eTreppid argues Montgomery had continuing obligations of non-disclosure under his contract.  However, the Counterclaim makes no factual allegations that Montgomery had any contractual obligations regarding eTreppid's proprietary information.  The Counterclaim identifies Montgomery's contractual obligations as devoting substantially all of his time to eTreppid business and not competing with eTreppid.  Nowhere does eTreppid allege Montgomery entered into a non-disclosure agreement.  Because the Counterclaim does not allege a valid and existing contract at the time of Counterdefendants' alleged interference, the Court will grant Counterdefendants' motion to dismiss count eight of eTreppid's Counterclaim.

### F. Claim and Delivery

        Counterdefendants move to dismiss eTreppid's claim and delivery cause of action, arguing eTreppid alleges Montgomery has the subject computer hard drives, not Counterdefendants.  eTreppid responds that it sufficiently alleged Montgomery transferred

14

possession of some or all of eTreppid's Source Code and confidential information to Counterdefendants. eTreppid also alleged the hard drives and Source Code belong to eTreppid and should be returned to it. According to eTreppid, this sufficiently asserts Counterdefendants have eTreppid's property. Alternatively, eTreppid requests leave to amend to add more specific allegations. Counterdefendants oppose a motion to amend because eTreppid previously has amended its counterclaims and the time for amending pleadings has passed.

The Counterclaim alleges eTreppid owns certain hard drives and other electronic storage media, which Montgomery wrongfully took and onto which he copied eTreppid confidential information, including eTreppid Source Code. (Countercl. at 26.) eTreppid further alleges the FBI seized these hard drives during the search of Montgomery's property, but the FBI returned the hard drives to Montgomery pursuant to this Court's Order. (Id.) According to the Counterclaim,

> Montgomery transferred possession of some or all of the eTreppid Source Code and other eTreppid Confidential Information to Blixseth, Sandoval, Opspring, and Atigeo. The hard drives and the eTreppid Source Code belong to eTreppid and should be immediately returned to eTreppid. All of the data that was stored on those hard drives also belongs to eTreppid and should also be immediately returned to eTreppid, including all copies of the data and the original data itself, and including data stored electronically, in hard copy, or in any other manner.

(Id. at 26-27.)

While not a model of clarity, the allegations sufficiently convey, for notice pleading purposes, that Montgomery detained the hard drives and transferred some or all of the hard drives or other electronic storage media and the data thereon to Counterdefendants. Counterdefendants may obtain through discovery further refinement of what eTreppid property eTreppid contends lies in Counterdefendants' possession for purposes of this claim. The Court will deny Counterdefendants' motion to dismiss this claim.

///

### III. CONCLUSION

IT IS THEREFORE ORDERED that Counterdefendants Edra Blixseth and Opspring, LLC's Motion to Dismiss eTreppid's Counterclaims (Doc. #504) is hereby GRANTED in part and DENIED in part. It is granted in that eTreppid's claim for intentional interference with the contractual relations between eTreppid and Montgomery (count eight of eTreppid's Counterclaim (Doc. #393)) is hereby dismissed as against Counterdefendants Edra Blixseth and Opspring, LLC. The motion is denied in all other respects.

DATED: July 2, 2008.

_____
PHILIP M. PRO
United States District Judge

16