Mark H. Gunderson, Esq. (SBN: 2134)
Catherine A. Reichenberg, Esq. (SBN: 10362)
GUNDERSON LAW FIRM
5345 Kietzke Lane, Suite 200
Reno, Nevada 89511
Telephone: (775) 829-1222
Facsimile: (775) 829-1226

Ellyn S. Garofalo, Esq. (SBN: CA 158795) (admitted *pro hac vice*)
Richard J. Mooney, Esq. (SBN CA 176486) (admitted *pro hac vice*)
LINER YANKELEVITZ
SUNSHINE & REGENSTREIF LLP
1100 Glendon Avenue, 14th Floor
Los Angeles, California 90024-3503
Telephone: (310) 500-3500
Facsimile: (310) 500-3501

Attorneys for Plaintiffs
DENNIS MONTGOMERY and
the MONTGOMERY FAMILY TRUST

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DENNIS MONTGOMERY and the MONTGOMERY FAMILY TRUST,<br><br>Plaintiffs,<br><br>vs.<br><br>ETREPPID TECHNOLOGIES, LLC, WARREN TREPP, and the UNITED STATES DEPARTMENT OF DEFENSE,<br><br>Defendants.<br><br>AND RELATED CASES. | Case No. 3:06-CV-00056-PMP-VPC<br>BASE FILE<br><br>(Consolidated with Case No. 3:06-CV-00145-PMP-VPC)<br><br>**THE MONTGOMERY PARTIES' EMERGENCY OBJECTION TO AND MOTION TO VACATE MAGISTRATE JUDGE'S ORDER SETTING HEARING ON NON PARTY MOTION FOR SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES** |

Case No. 3:06-CV-00056-PMP-VPC

0039641/001/ 39040v06

**OBJECTION TO MAGISTRATE'S ORDER**

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, Dennis Montgomery ("Montgomery") and the Montgomery Family Trust (plaintiffs in the base file matter 3:06-CV-00056-PMP-VPC and defendants in the member case 3:06-CV-00145-PMP-VPC) and Brenda Montgomery (defendant in the member case 3:06-CV-00145-PMP-VPC) (collectively, the "Montgomery Parties") do hereby respectfully object to the Magistrate Judge's July 25, 2008 Order setting an evidentiary hearing on August 21 to take testimony regarding the Motion for Sanctions filed by the Montgomery Parties' former attorney Michael Flynn in the presence of opposing counsel and others. This Objection is based on the grounds that (1) holding such a hearing at the present time is unnecessary, unwarranted, and extremely prejudicial in that it may require the disclosure of attorney-client communications and work product while the underlying litigation is ongoing and has the potential to create a conflict of interest between the Montgomery Parties and their counsel, and (2) even if a hearing were properly held at this time, counsel for all other parties and the Government should be excluded from the hearing.

The brief in support of the objection is attached hereto.

Dated: August 7, 2008                    Respectfully submitted,

                                         LINER YANKELEVITZ
                                         SUNSHINE & REGENSTREIF LLP


                                         By:  _____/s/_____
                                                   Richard J. Mooney

1

Case No.  3:06-CV-00056-PMP-VPC

# BRIEF IN SUPPORT

## I. INTRODUCTION

On April 24, 2008, non-party Michael Flynn filed a Motion for Sanctions in this action against his former clients the Montgomery Parties and the Montgomery Parties' current counsel, seeking more than $300,000 in putative attorneys fees allegedly incurred after his termination as the Montgomery Parties' counsel. *See* Docket No. 545 ("Motion for Sanctions", or "Motion"). That Motion was based entirely on a slough of false and inflammatory allegations regarding confidential information submitted by Flynn in plain violation of the Rules of Professional Conduct, and the Magistrate Judge therefore ordered the papers sealed. The Motion is now fully briefed.

On July 25, the Magistrate Judge issued an order setting an evidentiary hearing on the Motion for August 21. *See* Docket No. 770 (the "July 25 Order"). The July 25 Order directs Dennis Montgomery and his former and current counsel to attend, and further permits counsel for the opposing parties in the underlying case and for the Government to attend and observe. Because holding such an evidentiary hearing is unnecessary, unwarranted, and extremely prejudicial, the Montgomery Parties respectfully object to the July 25 Order request that it be vacated in its entirety. In the alternative, the Montgomery Parties respectfully object to the provision of the order permitting counsel for eTreppid, the other parties, and the Government to observe the hearing, and request that that provision be vacated.

Given the highly prejudicial effect of the July 25 Order, including the threat to the attorney-client privilege and the attorney work product doctrine as well as the potential to create a conflict between attorney and client, the Montgomery Parties and their counsel have no choice but to seek this relief from the Court. Because the hearing is only two weeks away, good cause exists for the Objection to be considered on an emergency basis.

## II. BACKGROUND

The Montgomery Parties' former counsel Michael Flynn on August 21, 2007 filed a motion in this action seeking more than $800,000 in attorneys fees and costs. *See* Docket No. 248 and subsequent related filings. On May 7, 2008, the Magistrate Judge entered an order that granted

approximately $625,000 of the amount requested.  *See* Docket No. 584.  The Montgomery Parties filed an Objection to the May 7 Order on May 27, and that Objection remains pending.

On April 24, 2008, Flynn filed the Motion for Sanctions, which in reality is simply a request for more attorneys fees – including fees already requested and denied in his first fee motion.  In particular, it seeks putative "fees" for time Mr. Flynn alleges that he spent in connection with disputes between the Montgomery Parties and Flynn before the California Superior Court, the San Diego Fee Arbitration Board, and the Massachusetts State Bar, as well as time spent preparing the Motion.  With the Motion for Sanctions, Flynn also filed a Declaration and several other documents containing timelines or exhibits said to support his motion.  *See* Docket Nos. 546-548, 550-57 (collectively, along with Docket No. 545, the "Motion Filings").

The Motion Filings have little if anything to do with the relief requested.  Instead, they constitute an avalanche of scurrilous, unfounded, and false accusations against the Montgomery Parties and the counsel chosen to replace Flynn and are replete with untrue, inflammatory, and confidential information.  They are a malicious attempt to gain personal advantage (more money) by intentionally and very substantially prejudicing his former clients' prospects in the underlying litigation, and are in plain violation of the Nevada Rules of Professional Conduct (the "NRPC").[1]  Given the false and inflammatory allegations in the Motion Filings, the Montgomery Parties sought an order sealing the documents.  Docket No. 566.  The Magistrate Judge granted that request, and further directed that all extant copies of the Motion Filings be treated as "attorneys eyes only" documents under the protective order.  Docket No. 746.

In addition to being in plain violation of the NRPC (and the Rules of Professional Conduct of other jurisdictions in which Flynn practices) and his ethical obligations as former counsel, the Motion is completely without merit.  The Montgomery Parties filed an opposition to the substance

---

[1] For example, Flynn recites purported facts related to Mr. Montgomery's possession of protected information in particular hard drives (Docket No. 545 at 4), related to Mr. Montgomery's decoding of embedded communications (at 17), and related to Flynn's own views regarding certain FBI reports (at 18).  Indeed, he presents an entire timeline of dozens of pages of events including information about various alleged occurrences throughout his representation of the Montgomery Parties.  Docket No. 546.  The associated declaration – running to 57 pages – is similarly replete with supposed information obtained by Flynn during his representation of the Montgomery Parties.  *See generally* Docket No. 547.

2

of the Motion for Sanctions on May 12 (and an errata on May 13), along with two declarations from new counsel (Ms. Klar and Ms. Pham) and a declaration from co-defendant Edra Blixseth. (No Docket No.; filed under seal).  The opposition details at length the reasons that Flynn's motion is not properly entertained while the underlying substantive litigation is continuing. *Id.*  The opposition and associated papers also deny all of the alleged wrongdoing and detail the myriad reasons Flynn is not entitled to an increase in the more than $600,000 in attorneys fees already awarded.  *Id.*[2]

After briefing on the Motion for Sanctions was completed, the Magistrate Judge issued the July 25 Order.  Docket No. 770.  The order directs that an "evidentiary hearing" be held on the Motion "for one day" beginning at 9:00 a.m. on August 21. *Id.*  It limits the hearing to (A) Dennis Montgomery's September 10, 2007 declaration and related matters, and (B) ancillary litigation between the Montgomery Parties and Flynn (in California Superior Court, before a San Diego fee arbitration panel, and before the Massachusetts Bar) and the relationship between that litigation and this Court's September 4, October 4, and October 12 orders. *Id.*  It further directs Mr. Montgomery to appear personally "to testify concerning these matters" and directs Mr. Flynn and two of the Montgomery Parties' current lawyers to appear personally "prepared to address the Court concerning these matters." *Id.*  Finally, the Order acknowledges that the briefing on the matter has been sealed and directs that the hearing will be sealed, but it permits counsel for eTreppid, Warren Trepp, Atiego, Michael Sandoval, and the United States to be present at the hearing. *Id.*

## III.   ARGUMENT

The Montgomery Parties respectfully submit that the July 25 Order should be overruled because an evidentiary hearing at this time is unnecessary and unwarranted in light of the extreme prejudice of such a hearing to the Montgomery Parties.  In the alternative, the Montgomery Parties

---

[2]  Six days prior to filing the Motion for Sanctions, Flynn had filed what he styled a "Motion to Establish Procedures to Comply with Nevada Rules of Professional Conduct 3.3(a)(3) and (b). *See* Docket No. 540 ("Motion for Procedures").  The Motion for Procedures also included a plethora of privileged and confidential information – most if not all of it false or mischaracterized – in plain violation of the NRPC.  The Court ordered the Motion for Procedures to be sealed as well, *see* Docket No. 746; that motion is not part of the July 25 Order or this objection.

1 respectfully submit that the July 25 Order should be overruled to the extent it allows attendance by
2 anyone other than the Montgomery Parties, Mr. Flynn, and the Montgomery Parties' counsel.

      **A.**      **An Evidentiary Hearing Is Unnecessary and Unduly Prejudicial**

4       The August 21 evidentiary hearing is unwarranted for two independent reasons.

      **1.**      **The proposed hearing is premature and unnecessary at this time**

6       There is no reason that the Motion must be resolved immediately, and the prejudice
7 inherent in the proposed hearing counsels for postponement of any hearing until the underlying
8 litigation is resolved.

9       As is clear from the Motion Filings summarized above, the Motion relates to issues purely
10 ancillary to the underlying litigation. The dispute revolves around whether the Montgomery Parties
11 must pay Flynn for time he allegedly spent in three other proceedings and in preparing the Motion
12 for Sanctions, all in late 2007 and 2008. Certainly there is and can be no showing that resolution of
13 the Motion will help move the underlying dispute toward resolution. To the contrary, the Motion
14 has diverted and will continue divert resources away from litigating the merits of the parties'
15 substantive disputes. Further, Flynn has made no showing that postponing resolution of his fee
16 request until the end of this litigation will cause him any prejudice whatever. It is precisely
17 because such motions distract from rather than advance the resolution of the underlying litigation
18 that courts routinely postpone resolution of them until after the underlying litigation is resolved.
19 *See*, *e.g.*, *Ecomares, Inc. v. Ovcharik*, 2007 WL 1933573 (D. Nev. 7/2/07).

20       By contrast, the prejudice to the Montgomery Parties occasioned by holding an evidentiary
21 hearing at this time would be extreme. The testimony likely will focus on the attorney-client
22 relationship between the Montgomery Parties and Mr. Flynn and the attorney-client relationship
23 between the Montgomery Parties and their new counsel. Responses to the questions will almost
24 certainly require divulging attorney-client communications regarding the preparation of the subject
25 declaration and the decisions to file and proceed with the Los Angeles, San Diego, and
26 Massachusetts proceedings. Given that those ancillary proceedings involved in large part disputes
27 about the propriety and efficacy of Flynn's representation, those communications surely will
28 include assessments of the status of the case, the strength of arguments or strategies pursued or

likely to be pursued, and the likelihood of a favorable future outcome. This is critical information squarely within the attorney-client privilege.

Similarly, the evidentiary hearing will almost certainly require divulging former and present counsel's assessments of the facts and evidence assembled during the case; counsel's assessment of applicable law; counsel's consideration of the strategies that were previously employed and might in the future be employed; and counsel's assessment of the merits of the claims and defenses in the litigation (both during and after Flynn's tenure as the Montgomery Parties' counsel). In fact, the hearing may well require divulging counsel's considered views regarding specific rulings made by the Court.

In short, requiring oral testimony under questioning from the Court in which the substantive dispute is pending places the Montgomery Parties and their former counsel in a virtually impossible position. On the one hand, asserting an attorney-client privilege or work product protection in response to questioning from the Court will, quite unfairly, make the Montgomery Parties or their counsel appear evasive or not forthcoming. On the other hand, failure to assert such privilege or protection will – equally unfairly – reveal confidential information about the strengths and weaknesses of the claims and defenses and the strategies implemented or considered in preparing the case for the jury. It may be possible to tread this fine line in written evidentiary submissions, and the Montgomery Parties have attempted to do so in opposing the Motion for Sanctions. But it is certainly impossible in a hearing requiring spontaneous and immediate responses to questioning from the Court.

In addition, there is the possibility of even more significant prejudice to the Montgomery Parties. Specifically, the scheduled hearing has the potential to create a direct conflict of interest between the Montgomery Parties and their chosen counsel of record. The Motion for Sanctions seeks sanctions against *both* the Montgomery Parties and their counsel. Although there is no current conflict in the positions of the two groups based on the written submissions, it is impossible to know what conflicts may arise at the scheduled hearing. Either Mr. Montgomery or his counsel (or both) may be asked questions that could increase or decrease the chances of sanctions being imposed on only *one* or the *other* of the two groups. Depending on the questions, and the various

1  potential avenues for follow up or strategy at the hearing in response to the questions, the conflict
2  might well be insurmountable.  At that point, the Court will have effectively denied the
3  Montgomery Parties' their choice of counsel in the underlying litigation, all because of a hearing
4  that has no reason to proceed.
5       Finally, each of the difficulties discussed above are magnified when former counsel is
6  openly hostile to his former clients and has a demonstrated desire to undermine his former clients'
7  claims and defenses.  Mr. Flynn has made clear that he has no compunction about filing briefs and
8  declarations that intentionally harm his former clients' prospects in the litigation, as long as those
9  filings further his own personal goals.  The prejudicial effect will surely be magnified in a day long
10 evidentiary hearing before the very Court in which the matter is pending, providing Flynn the
11 opportunity to range over a broad swath of privileged and confidential information.[3]
12      In light of these considerations, the Montgomery Parties respectfully submit that resolution
13 of the Motion, to the extent it requires an evidentiary hearing, should be postponed until the
14 underlying litigation is concluded.

15          **2.     Any current resolution should be on the papers alone**

16      Even if there were a reason to resolve the Motion now, there is no need for an evidentiary
17 hearing and the prejudice of any such hearing would significantly outweigh any potential benefit.
18      Very little if any evidence of value to resolution of the Motion is likely to be elicited at the
19 scheduled hearing.  The disputed issues relate to (1) whether Mr. Montgomery intentionally
20 committed perjury in connection with this September 10, 2007 declaration stating that he believed
21 Mr. Flynn to be a California lawyer, and (2) whether the Montgomery Parties and their counsel
22 acted wrongfully in (a) seeking to obtain their client files before the Los Angeles Superior Court,
23 (b) seeking resolution of disputed attorneys' fees issues before a San Diego fee arbitration panel,
24 and (c) informing the Massachusetts State Bar of apparent ethical violations of Mr. Flynn.  On the
25 first issue, both parties have presented significant documentary evidence in support of their

26
27 [3]   The Montgomery Parties' opposition to the motion for sanctions requested that a hearing be set on the motion.  *See* Opp. at 1.  The hearing requested, however, was one for argument by
28 counsel, not for an evidentiary hearing.

1  positions. Mr. Montgomery has already stated under oath that he believed the statements made in
2  the declaration to be true. There is little if anything that would be added by asking him, again,
3  whether he intended to commit perjury. On the second issue, even if Flynn were correct that the
4  proceedings in the other tribunals should not have been maintained, the act of filing or maintaining
5  claims in another tribunal is not a basis for sanctions. *See Grid Systems Corp. v. John Fluke*
6  *Manufacturing Co.*, 41 F.3d 1318, 1320 (9th Cir. 1994). Even if there were a basis for imposing
7  sanctions, the relevant attorneys have submitted declarations and there is little that might be gained
8  from an evidentiary hearing.
9        By contrast, the discussion in section III.A.1 demonstrates the extreme prejudice the
10 Montgomery Parties would suffer if required to proceed with the hearing. Weighing the modest or
11 non-existent benefits of live testimony against this prejudice, there is no comparison. If the Motion
12 truly needs to be resolved forthwith, the Montgomery Parties respectfully request that it be done
13 without the proposed evidentiary hearing.
14       **B.**     **Any Hearing Should Exclude Counsel for eTreppid and the Government**
15       If the Court concludes that an evidentiary hearing should proceed, the Montgomery Parties
16 respectfully submit that counsel for the other parties and the Government absolutely must be
17 excluded from the hearing.
18       The prejudice described in the preceding section will only be magnified by the presence of
19 counsel for eTreppid, Trepp, Atiego, Sandoval, and the Government. It is a cardinal rule of the
20 American adversarial litigation system that parties are not privy to the communications between
21 opposing parties and their lawyers, or to the analyses or strategic views of opposing counsel.
22 Allowing other counsel to attend the hearing will reveal to the Montgomery Parties' litigation
23 opponents the analyses, assessments, and strategic plans of the Montgomery Parties, their former
24 counsel, and their current counsel. It will provide counsel with information about areas to probe in
25 depositions or at trial, and about assessments of the case for use during mediation or settlement
26 discussions. The prejudice caused by providing such information to eTreppid is magnified because
27 *under no circumstances would it be reciprocal*. The fact that only the Montgomery Parties have an
28

attorneys fees dispute with former counsel is not a legitimate reason for the other parties to gain this enormous litigation advantage.[4]

The prejudice is also completely unnecessary.  eTreppid, the other parties, and the Government have no rights at stake in the Motion for Sanctions, which is purely an issue between the Montgomery Parties and their current and former counsel.  The other counsel have no information that would be useful to the Court in adjudicating the Motion.  In short, there is absolutely nothing to gain (and very much to lose) by allowing counsel for adverse parties to attend a hearing focused on attorney-client communications, attorney work product, and a dispute over fees between the Montgomery Parties and their former counsel.

## IV. CONCLUSION

For the foregoing reasons, the Montgomery Parties respectfully request that the Magistrate's July 25 Order be overruled as described above.

Dated:  August 7, 2008                              Respectfully submitted,

LINER YANKELEVITZ
SUNSHINE & REGENSTREIF LLP


By:        /s/
     Richard J. Mooney

     Attorneys for DENNIS MONTGOMERY,
     the MONTGOMERY FAMILY TRUST,
     and Counterdefendants OPSPRING LLC
     and EDRA BLIXSETH

---

[4]  eTreppid purported to "join" the Motion for Sanctions on May 12.  See Docket No. 593.  Such joinder – the true purpose of which is surely an attempt to deny the Montgomery Parties their choice of counsel through revocation of *pro hac vice* admissions – does not provide any reason for eTreppid's counsel to attend any evidentiary hearing that might be held on the matter.

8