1

**UNITED STATES DISTRICT COURT**

2

**DISTRICT OF NEVADA**

3

4   MONTGOMERY, *et al.*,                     )
                                              )        3:06-CV-00056-PMP-VPC
5                   Plaintiffs,               )        BASE FILE
                                              )
6   v.                                        )        3:06-CV-00145-PMP-VPC
                                              )
7   ETREPPID TECHNOLOGIES, LLC,               )
    *et al.*,                                 )        **ORDER**
8                                             )
                    Defendants.               )
9   _____   )
                                              )
10  AND ALL RELATED MATTERS.                  )
    _____   )

11

12          Before the court is Michael Flynn's ("Mr. Flynn") motion to establish procedures to

13  comply with Nevada Rules of Professional Conduct 3.3(a)(3) and (b) (#540).   Defendants

14  eTreppid Technologies L.L.C. and Warren Trepp (collectively "eTreppid") joined in the motion

15  (#585).  Counter-defendant Michael Sandoval ("Sandoval") opposed (#587).  Plaintiffs Dennis

16  Montgomery ("Mr. Montgomery") and the Montgomery Family Trust (collectively "the

17  Montgomery parties") also opposed (#588) and filed a request for judicial notice (#589).  Mr.

18  Flynn replied (#605).  The court has thoroughly reviewed the record and the motions and grants

19  in part Mr. Flynn's motion to establish procedures (#540).

20          **I.  History and Procedural Background**

21          On April 18, 2008, Mr. Flynn filed the present motion, which follows months of

22  contentious filings in this case surrounding Mr. Flynn's withdrawal as counsel for the

23  Montgomery parties.[1]  Mr. Flynn served as lead counsel for the Montgomery parties from the

24  beginning of these consolidated proceedings until September 4, 2007, when the District Court

25  granted his motion to withdraw as counsel (#256).  Mr. Flynn asserts that his withdrawal was

26

27  _____

28          [1] As the court and the parties are well-aware of the facts of this case, the court here sets out facts
    relevant only to the present motion.

precipitated by the unsealing of certain documents in this case in April 2007, which led to his own investigation between April and June 2007 as to the truth of certain material facts that his clients, particularly Mr. Montgomery, told him (#540, pp. 9-11). Mr. Flynn states that even prior to his withdrawal, he believed that he had ethical duties pursuant to the Nevada Rules of Professional Conduct ("NRPC") to remedy certain statements he and his clients made to the court, which he now believes to be false. *Id*. Additionally, subsequent to Mr. Flynn's withdrawal, the Montgomery parties, through their new counsel, submitted a number of declarations and made representations to this court on various issues. *Id*. Mr. Flynn contends that these declarations and representations constitute serious "litigation misconduct," including but not limited to, perjury and fraud upon the court. *Id*. Mr. Flynn further contends that the declarations trigger his ethical duties pursuant to NRPC to disclose information to this court. *Id*. Mr. Flynn requests guidance from the court as to his duties and the procedures he should use to disclose information because NRPC 3.3 and related case precedent fail to set out any procedures an attorney should utilize to comply with the rule. *Id*. at p. 3.

## II. Discussion and Analysis

### A. Law

#### 1. Nevada Rules of Professional Conduct

NRPC 1.9 requires that a lawyer who has formerly represented a client in a matter shall not:

> (1) Use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or

> (2) Reveal information relating to the representation except as these Rules would permit or require with respect to a client.

NRPC 1.9(c). In the present case, Rules 1.6 and 3.3 are implicated in whether the rules "permit or require" the disclosure of client information.

NRPC 1.6 states that lawyers are prohibited from revealing "information relating to the representation of a client," except under certain circumstances. NRPC 1.6(a). A lawyer may reveal client information "to the extent the lawyer reasonably believes necessary:"

(3) To prevent, mitigate, or rectify the consequences of a client's criminal or fraudulent act in the commission of which the lawyer's services have been or are being used, but the lawyer shall, where practicable, first make reasonable effort to persuade the client to take corrective action; ...

(5) To establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, ... or to respond to allegations in any proceeding concerning the lawyer's representation of the client; ...

NRPC 1.6(b).  NRPC 3.3, entitled "Candor Toward the Tribunal," provides that:

(a) A lawyer shall not knowingly:

(1) Make a false statement of fact or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer; ...

(3) Offer evidence that the lawyer knows to be false.  If ... the lawyer, ... or the lawyer's client ... has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal.

NRPC 3.3(a).  NRPC 3.3(b) states:

A lawyer who represents a client in an adjudicative proceeding and who knows that a person intends to engage, is engaging, or has engaged in criminal or fraudulent conduct related to the proceeding shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal.

NRPC 3.3(b).  The NRPC defines "fraud" or "fraudulent" as "conduct that is fraudulent under the substantive or procedural law of the applicable jurisdiction and has a purpose to deceive." NRPC 1.0.  A lawyer's Rule 3.3(a) and (b) duties "continue to the conclusion of the proceeding, and apply even if compliance requires disclosure of information otherwise protected by Rule 1.6." NRPC 3.3(c).

The comments to Rule 3.3 emphasize the importance of truth in the decision-making process and strongly support disclosure where there is a question of a fraud upon the court.[2]  The Comments emphasize a lawyer's "special" duties and obligations as an officer of the court "to avoid conduct that undermines the integrity of the adjudicative process" and "to prevent the trier

---

[2] The NPRC are based on the ABA Model Rules of Professional Conduct ("ABA Rules"); as such, the court is permitted to consult the comments to the ABA Rules for guidance in interpreting and applying the NRPC.  NRPC 1.0A.

1   of fact from being misled by false evidence." ABA Rule 3.3, Comments 2 and 5. Comment 12

2   states that a lawyer's Rule 3.3(b) duty reflects a

> special obligation to protect a tribunal against criminal or
> fraudulent conduct that undermines the integrity of the
> adjudicative process, such as bribing, intimidating, or otherwise
> unlawfully communicating with a witness, juror, court official or
> other participant in the proceeding, unlawfully destroying or
> concealing documents or other evidence or failing to disclose
> information to the tribunal when required to do so.

7    ABA Rule 3.3, Comment 12. ABA Rule 3.3(b) "was amended in 2002 to impose a greater duty

8   upon lawyers to protect courts from fraud." ABA Annotated Model Rules of Professional

9   Conduct, 6th Ed., Rule 3.3 (2007). Comment 11 states that although the disclosure of such

10  information may "result in grave consequences to the client," the alternative – that the lawyer

11  does not disclosure the information and thereby cooperates with the client in deceiving the court

12  – would "subvert the truth-finding process which the adversary system is designed to implement."

13  ABA Rule 3.3, Comment 11.

14                  **2. The Attorney-Client Privilege and the Crime-Fraud Exception**

15          The attorney-client privilege protects confidential communications made by a client to an

16  attorney for the purpose of seeking legal advice, as well as the attorney's advice in response to

17  such disclosures. *In re Grand Jury Subpoena 92-1(SJ)*, 31 F.3d 826, 829 (9th Cir. 1994); *see also*

18  *U.S. v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996). This privilege is the oldest known to the

19  common law, and is also "perhaps, the most sacred of all legally recognized privileges, and its

20  preservation is essential to the just and orderly operation of our legal system." *U.S. v. Bauer*, 132

21  F.3d 504, 510 (9th Cir. 1997). "Its purpose is to encourage full and frank communication

22  between attorneys and their clients and thereby promote broader public interests in the observance

23  of law and administration of justice." *Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981). The party

24  asserting the attorney-client privilege has the burden of establishing the relationship and the

25  privileged nature of the communications. *Weil v. Investment/Indicators, Research and*

26  *Management, Inc.*, 647 F.2d 18, 25 (9th Cir. 1981).

27          Yet, while the attorney-client privilege protects a client's revelations of past conduct, "it

28  cannot be used to shield ongoing or intended future criminal conduct." *Chen*, 99 F.3d at 1501;

*see also Clark v. U.S.*, 289 U.S. 1, 15 (1932) ("A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law.  He must let the truth be told.").  The crime-fraud exception applies to attorney-client communications which "solicit or offer advice for the commission of a crime or fraud."  *In re Grand Jury Subpoena 92-1(SJ)*, 31 F.3d at 829.

The procedure for determining whether the crime-fraud exception applies customarily begins with a court's *in camera* review of the communications at issue.  *See United States v. Zolin*, 491 U.S. 554, 565 (1989) ("*in camera* review may be used to determine whether allegedly privileged attorney-client communications fall within the crime-fraud exception.").  *Zolin* set out a two-part analysis to determine when a court may conduct the initial *in camera* review of allegedly privileged information.  *Chen*, 99 F.3d at 1503.  First, the party opposing the privilege must make "a showing of a factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies."  *Zolin*, 491 U.S. at 572 (citations and quotations omitted).  This first step should "focus only on evidence by the party seeking *in camera* review."  *In re Grand Jury Subpoena 92-1 (SJ)*, 31 F.3d at 829.  After such a showing is made, the court must determine, in its "sound discretion," whether it will conduct an *in camera* review of the materials.  *Zolin*, 491 U.S at 572.  In making this determination, the court should consider the following factors: the amount of material to be reviewed, the relevance of the allegedly privileged materials to the case, and the likelihood that *in camera* review will reveal evidence to establish the applicability of the crime-fraud exception.[3]  *Id.*

Because an *in camera* review "is a much smaller intrusion on the attorney-client privilege than full disclosure," the threshold to establish that *in camera* review is warranted is quite low.  *In re Grand Jury Investigation*, 974 F.2d 1068, 1073 (9th Cir. 1992) (citing *Zolin*, 491 U.S. at

---

[3] The Ninth Circuit has also extended the *Zolin* standard to a situation in which a party seeks review to contest assertions of privilege.  *In re Grand Jury Investigation*, 974 F.2d 1068, 1074 (9th Cir. 1992) ("... the party opposing the privilege need only show a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that the information in the materials is not privileged.").

572) (the burden is "relatively minimal").  The purpose of the low-threshold is to discourage and prevent abuses of the attorney-client privilege.  *Id*.  *In camera* review by the court does not destroy the privileged nature of the contested communications.  *Id*. at 1074.

Once the court conducts the *in camera* review and determines that there is a basis for the crime-fraud exception, any party seeking to outright vitiate or terminate the attorney-client privilege must: (1) "show that 'the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme;'" and (2) "demonstrate that the attorney-client communications for which production is sought are 'sufficiently related to' and were made 'in furtherance of [the] intended, or present, continuing illegality.'"  *In re Grand Jury Proceedings*, 87 F.3d 377, 381 (9th Cir. 1996); *see also In re Napster, Inc. Copyright Litigation*, 479 F.3d 1078, 1094-95 (9th Cir. 2007) (the party seeking outright disclosure of privileged materials or communications must demonstrate, by a preponderance of the evidence, the existence of the crime-fraud exception).  The attorney need not have been aware of the client's motives – the focus is on the *client's* knowledge and intent.  *Napster*, 479 F.3d at 1090.  Nor does the attorney have to have participated, "even unwittingly, in the client's criminal activity" because a communication can be "in furtherance of" a fraud even if the attorney does nothing after the communication to assist the fraud, and even if the communication turns out not to be of any assistance in the fraud.  *In re Grand Jury Proceedings*, 87 F.3d at 382.  Moreover, the crime or fraud need not have succeeded for the exception to apply.  *Napster*, 479 F.3d at 1090.

### B. The Parties' Arguments

Mr. Flynn makes several arguments in his motion to establish procedures (#540).[4]  First, Mr. Flynn argues that he has a duty to take remedial measures, including disclosure to this court pursuant to NRPC 3.3, because the Montgomery parties have filed false material evidence with this court.  *Id*. at pp. 1-2.  Mr. Flynn argues that he has "come to know" that the evidence the Montgomery parties submitted is false, and that his duty to disclose is triggered whenever the

---

[4] Although the court has determined that resolution of many of the issues presented in Mr. Flynn's motion cannot be addressed until after the court has viewed the information *in camera*, the court here sets out each of the parties' positions for purposes of clarity.

- 6 -

1    fraud is discovered, regardless of whether he is still representing the Montgomery parties. *Id*. at

2    p. 2.

3          Mr. Flynn also argues that the Montgomery parties have effected a broad waiver of their

4    attorney-client privilege by suing him for the return of his client files and "accusing him in *four*

5    public forums of unethical, fraudulent, and even criminal conduct." *Id*. at pp. 3-4, 11-12

6    (emphasis in original).[5]   He further argues that a finding of waiver is supported by the

7    Montgomery parties' use of perjured declarations to make these allegations against him, and by

8    the fact that their perjury is material to many of the key issues in this case. *Id*. at p. 4. Mr. Flynn

9    argues that NRPC 1.6(b) codifies the waiver principle and allows him to respond to a client's

10   accusations.   *Id*. at p. 7.   Mr. Flynn contends that should this court determine that the

11   Montgomery parties' have waived their attorney-client privilege, no NRPC 3.3 procedures are

12   necessary because Mr. Flynn is then free to disclose the information, as it is no longer protected

13   by the privilege. *Id*. at p. 12.[6]

14   _____

15       [5] Aside from his waiver argument, Mr. Flynn also argues that the information he has may or may not

16   be subject to the attorney-client privilege for various reasons – the communications may not be protected by
     the privilege in the first instance, or they may be protected communications but subject to the application of

17   exceptions to the privilege, such as the presence of third parties, no intention of confidentiality, or the crime-
     fraud exception.

18       [6] In the present order, the court makes only the initial determination of whether it will allow Mr.

19   Flynn to submit his declaration for *in camera* review, and withholds a decision on the waiver issue at this
     time.  However, the court does address the Montgomery parties' procedural argument that Mr. Flynn's

20   motion is procedurally defective pursuant to Local Rule ("LR") 7-2 of the Local Rules of Civil Practice for
     the District of Nevada (#588, p. 2). LR 7-2 provides that all motions filed in this court "shall be supported

21   by a memorandum of points and authorities," and that the failure to file points and authorities in support of
     a motion "shall constitute a consent to the denial of the motion." LR 7-2(a). The Montgomery parties argue

22   that Mr. Flynn's motion to establish procedures should be denied in its entirety because, with respect to the
     waiver issue, he refers the court to the arguments in his motion for sanctions (#588, p. 2).

23       This LR 7-2 argument stems from the court's denial of the Montgomery parties' April 29, 2008
     emergency motion to seal and strike certain of Mr. Flynn's filings relating to the motion to establish

24   procedures and the motion for sanctions (#562).  On April 30, 2008, this court found that the Montgomery

25   parties' emergency motion contained no "points and authorities," instead consisting only of one sentence
     adopting and incorporating by reference "the [proposed] findings of facts and conclusions of law lodged

26   concurrently herewith and attached hereto for the court's convenience" (#565).  Attached to the emergency
     motion were two proposed orders (#s562 and 563).  Holding that the proposed orders were "not points and

27   authorities, and there is no factual or legal basis for the relief requested," the court denied the emergency
     motion (#565).

28       That situation is clearly distinguishable from the present motion.  In the Montgomery parties'

1    Mr. Flynn states that the procedures he requests apply to Mr. Montgomery's statements

2    to Mr. Flynn during the time Mr. Flynn represented him (the "representation period"), but which

3    implicate the Montgomery parties and their current counsel in litigation misconduct and

4    submission of false evidence after Mr. Flynn withdrew as counsel. *Id*. at p. 4.  He refers to "at

5    least three declarations of Montgomery," filed after his withdrawal, which potentially implicate

6    client confidences he received during the representation period and which trigger his ethical

7    duties. *Id*. at pp. 5, 11-16 (citing Mr. Montgomery's September 10, 2007 declaration (#261), and

8    Mr. Montgomery's two March 10, 2008 declarations (#466 and #467)).  Mr. Flynn also argues

9    that some of the declarations Mr. Montgomery filed while Mr. Flynn was his counsel similarly

10   trigger Mr. Flynn's ethical duties of disclosure. *Id*. at p. 16.

11   eTreppid joins Mr. Flynn's motion to establish procedures, and informs the court that it

12   intends to subpoena the documents Mr. Flynn used to support his allegations (#585).  eTreppid

13   predicts that the Montgomery parties will object to their future subpoena, which will require

14   eTreppid to file a motion to compel. *Id*.  eTreppid argues that its burden on a motion to compel

15   allegedly privileged documents is, pursuant to *Zolin*, "a relatively easy standard to satisfy," and

16   that Mr. Flynn, as a party to the actual communications, likely has a lighter burden in submitting

17   allegedly privileged documents. *Id*.  eTreppid urges the court to grant Mr. Flynn's motion for *in*

18   *camera* review to eliminate the need for eTreppid to file a motion to compel. *Id*.

19   The Montgomery parties oppose Mr. Flynn's motion (#588).  They argue that Mr. Flynn

20   has an ethical duty to his former clients pursuant to NRPC 1.9 not to reveal privileged

21   communications unless permitted by other rules, which rules they contend do not apply here. *Id*.

22   at p. 3.  The Montgomery parties argue that NRPC 3.3(a)(3) is inapplicable because it applies

23   only to evidence a lawyer presented while he represented his client, and that Mr. Flynn has not

24   ───────────────────────────

25   emergency motion, they cited absolutely no law or facts, simply including one sentence referencing a
     proposed order.  In Mr. Flynn's motion to establish procedures, he includes numerous facts to support his

26   motion and additionally sets out the law relevant to the main issue in the motion, *i.e.*, whether he has a Rule
     3.3 duty, and if so, how to comply.  Because the resolution of Mr. Flynn's motion to establish procedures

27   does not require the court to make a determination on the waiver issue, the court rejects the Montgomery
     parties' procedural argument.

28

1  demonstrated that he personally presented evidence or declarations while acting as counsel that

2  he now "knows to be false." *Id*. at pp. 4-5.  The Montgomery parties contend that all of the

3  evidence Mr. Flynn states is "false" was filed after Mr. Flynn withdrew and because Mr. Flynn

4  was no longer acting as counsel, he has no Rule 3.3 duty.  *Id*.

5       The Montgomery parties additionally assert that Mr. Flynn also failed to demonstrate that

6  he has a Rule 3.3(b) duty.  *Id*. at p. 6.  The Montgomery parties contend that for Mr. Flynn to have

7  a Rule 3.3(b) duty, the criminal or fraudulent conduct would have had to have occurred during

8  the representation period.  *Id*.  Because Mr. Flynn has not alleged that any of the criminal or

9  fraudulent conduct occurred while he represented the Montgomery parties, he has failed to

10  demonstrate a duty.  *Id*.  Further, the Montgomery parties argue that the attorney-client privilege

11  cannot be vitiated pursuant to the crime-fraud exception unless a two-part test is met, and Mr.

12  Flynn has failed to meet this standard.[7]  *Id*. at pp. 6-7.  They also contend that Mr. Flynn failed

13  to even allege that some of the post-withdrawal declarations he references are criminal or

14  fraudulent.  *Id*. at p. 7.[8]

15

16       [7] The test the Montgomery parties refer to is the standard a party must meet to entirely vitiate the

17  privilege once the court determines that communications reviewed *in camera* likely meet the crime-fraud
    exception.  *In re Grand Jury Investigation*, 974 F.2d at 1074.  As noted below, this is not at issue yet – in

18  this order the court simply determines whether Mr. Flynn has met the threshold requirements to submit the
    alleged attorney-client communications for *in camera* review.

19       [8] The Montgomery parties additionally argue that the timing of Mr. Flynn's motion demonstrates his

20  bad faith.  On September 4, 2007, the District Court granted Mr. Flynn's motion to withdraw (#256), and on
    March 24, 2008, this court ordered that Mr. Flynn is entitled to collect past due attorneys fees and costs from

21  the Montgomery parties for the time period prior to Mr. Flynn's withdrawal as counsel (#502).  The
    Montgomery parties argue that the fact that Mr. Flynn waited until after the court awarded his attorney fees

22  to fulfill his alleged ethical duties demonstrates Mr. Flynn's improper motive of revenge against his former
    clients, and also indicates that he does not truly have a Rule 3.3 "duty" (#588, p. 6).  As evidence of his bad

23  faith, the Montgomery parties request that this court take judicial notice of an email sent by Mr. Flynn's son
    to the employees of Ms. Blixseth's company, Opspring LLC, calling attention to Mr. Flynn's current motion

24  to establish procedures and the accompanying motion for sanctions (#589).  Mr. Flynn argues that he has no
    improper motive here, and that the required disclosures are actually to his detriment because the disclosures

25  could effectively preclude a judgment in favor of the Montgomery parties, which will force him to file a
    separate lawsuit to collect his attorneys fees (#540, p. 6).  Further, Mr. Flynn points out that April 2008 was

26  a reasonable time to file the present motion because prior to that, he was busy addressing the Montgomery
    parties' allegations in the various forums in which they brought claims against him in order to obtain his

27  client files (#605).  The court's finding is that Mr. Flynn's son's email is irrelevant to whether Mr. Flynn has

28  met the *Zolin* threshold; as such, the court declines to take judicial notice of the email at this time.

1    Mr. Flynn responds that the Montgomery parties have "put the cart before the horse"

2  (#605).  Mr. Flynn asserts that he simply requests that this court establish procedures for his

3  compliance with NRPC 3.3, and that only after these procedures are in place and he has submitted

4  the declaration will the issue of whether the privilege should be terminated be ripe for decision.

5  *Id*. at pp. 1, 6.  Mr. Flynn further argues that the Montgomery parties have misinterpreted NRPC

6  3.3, which he contends does not require that the lawyer actually know the evidence is false when

7  it is offered, but rather requires the lawyer to take remedial measures when he "comes to know"

8  of the falsity of submitted evidence.  *Id*. at p. 3.  Mr. Flynn contends that he has come to know

9  that both evidence he submitted for the Montgomery parties while he was counsel and evidence

10  the Montgomery parties' current counsel submitted for the Montgomery parties after Mr. Flynn

11  withdrew is false, and that the client communications he wishes to disclose to the court all

12  occurred during the representation period.  *Id*.  Mr. Flynn further asserts that the alleged fraud on

13  the court will continue if the court does not order the *in camera* review.  *Id*.  Importantly, he also

14  contends that if he does not submit his declaration to the court, he will not be able to inform the

15  court of certain state secrets that have been revealed to unauthorized persons.  *Id*.

16    Mr. Flynn also responds that he has a duty pursuant to NRPC 3.3(b) because he has

17  alleged that Mr. Montgomery's post-withdrawal declarations are perjured; therefore, the crime-

18  fraud exception applies.  *Id*. at pp. 4-5.  Mr. Flynn asserts that the attorney-client privilege should

19  not be used as a "sword" to commit crimes such as perjury or to perpetrate a fraud upon the court.

20  *Id*. at p. 6.

21          **C. Merits**

22    After reviewing the parties' arguments and the relevant law, the court concludes that *in*

23  *camera* review of Mr. Flynn's declaration is warranted.  This court is deeply concerned about the

24  allegations of a fraud upon the court.  However, since these are extremely serious allegations

25  against the Montgomery parties and their current counsel, the court declines to make any finding

26  of fact or law until it has evaluated the evidence.

27    The parties have not cited any cases which set out the procedure required to comply with

28  a lawyer's Rule 3.3 duties.  The court's own research also has not revealed such a procedure.  As

1    eTreppid points out, the only related procedural test, set out in *Zolin*, involves the crime-fraud

2    exception to the attorney-client privilege and is meant to apply "to situations where a party *not*

3    privy to the communications is attempting to discover them" (#585, pp. 3-4). It appears that no

4    court has applied the *Zolin* standard to the present situation, *i.e.*, as a procedure for complying

5    with NRPC 3.3. However, the court finds the *Zolin* test applicable to the present situation given

6    the similarities between the crime-fraud exception and a Rule 3.3 situation in which it is claimed

7    that false material evidence has been offered to a court. Whether Mr. Flynn's burden in this

8    situation is lighter than the *Zolin* standard need not be answered since the court concludes that

9    it is certainly no more stringent given that Mr. Flynn was a party to the communications.

10       As such, as set out in more detail below, the court concludes that pursuant to the first

11   prong of the *Zolin* test, there has been a threshold showing to support a good-faith belief that *in*

12   *camera* review of the allegedly privileged communications may reveal evidence of a fraud upon

13   this court. In so concluding, the court notes that "some speculation is required under the *Zolin*

14   threshold" because all that is required from the evidentiary showing is that it ***may*** reveal evidence

15   of a crime or fraud. *In re Grand Jury Investigation*, 974 F.2d at 1073 (emphasis added). "A

16   *prima facie* showing of crime-fraud is not required before an *in camera* inspection." *Id*. ("There

17   is an important difference between showing how documents may supply evidence that the crime-

18   fraud exception applies and showing directly that the exception applies. This difference results

19   in a considerably lower threshold for conducting *in camera* review than for fully disclosing

20   documents.").

21       Specifically, the court relies on Mr. Flynn's May 5, 2008 sealed declaration setting out

22   non-privileged facts to support his allegation of an ongoing fraud upon the court (#573 (*sealed*)).

23   Without revealing the specific content of the sealed declaration, the court is especially concerned

24   with the truth of some of Mr. Montgomery's declarations, including those submitted prior to and

25   after Mr. Flynn's withdrawal, with respect to the location and existence of CD1, the key piece of

26   evidence in this case; the possible alteration of evidence prior to its submission to the court; and

27   the truth of Mr. Flynn's representations to this court during the representation period, which were

28   based on facts his clients told him. *Id*. Further support that the *Zolin* threshold test has been met

1  is the court's own comparison of Mr. Montgomery's September 10, 2007 declaration in this case

2  (#261) with Mr. Montgomery's and Mr. Flynn's February 28, 2007 declarations and associated

3  documents in case number 3:06-cv-00263-PMP-VPC (#115 and #114, respectively). Mr. Flynn's

4  April 24, 2008 sealed declaration filed in support of his motion for sanctions, particularly with

5  respect to information concerning CD1, also substantiates the court's finding that the *Zolin*

6  threshold test is sufficiently satisfied (#547 (*sealed*)). Finally, also supportive is the fact that

7  some of the information contained in Mr. Flynn's sealed declarations appears to conflict with the

8  court's observation of Mr. Montgomery's testimony at recent Order to Show Cause hearings.

9        The Montgomery parties themselves also contributed to the court's conclusion. While the

10  Montgomery parties made numerous legal arguments, it is what they failed to do that is telling.

11  Despite the fact that the Montgomery parties had ample opportunity, they did not submit a

12  declaration denying Mr. Flynn's allegations that they have perpetrated a fraud upon the court.

13  Instead, in an attempt to discredit Mr. Flynn, the Montgomery parties submit Ms. Blixseth's

14  declaration to support their view that Mr. Flynn had an improper motive in filing his motion.

15  This attempt to discredit Mr. Flynn does not respond to Mr. Flynn's accusations. The court here

16  is interested in information that refutes these serious claims.

17        In exercising its discretion to order the *in camera* review, the court applied the *Zolin*

18  factors. The court anticipates that the amount of material it will be required to review will not

19  be overly burdensome, especially considering the court's orders below regarding the designations

20  Mr. Flynn must make in his declaration with each disclosure. The court also finds that this

21  information is very relevant to the main issues in this case, particularly concerning key evidence.

22  Finally, based on all of the evidence as well as the court's knowledge of this case, the court

23  concludes that it is fairly likely that the *in camera* review may reveal evidence to establish

24  whether a fraud has been perpetrated upon this court.

25  ///

26  ///

27  ///

28  ///

III. __Conclusion__

Based on the foregoing and for good cause appearing:

**IT IS HEREBY ORDERED** that Mr. Flynn submit his declaration to the court, *in camera*, by **Wednesday, August 27, 2008**.  Mr. Flynn shall include all allegedly privileged communications that relate to any alleged fraud upon the court that were generated during the course of his representation of the Montgomery parties, and which Mr. Flynn reasonably believes require disclosure to the court pursuant to the NRPC or fall under an exception to the attorney-client privilege.

**IT IS FURTHER ORDERED** that in his declaration, Mr. Flynn will inform the court as to each disclosure:

> (1) whether he reasonably believes the communication is protected by the attorney-client privilege in the first instance;

> (2) if it is privileged, whether he reasonably believes the communication is subject to an exception to the attorney-client privilege, which exception, and why and/or pursuant to which rule of professional conduct Mr. Flynn makes the disclosure; and

> (3) how the communication relates to allegedly false evidence submitted to this court.

**IT IS FURTHER ORDERED** that Mr. Flynn shall be particularly careful to exclude any and all attorney-client privileged communications that are clearly not subject to an exception, which concern alleged past or completed crimes or frauds for which the Montgomery parties consulted Mr. Flynn in the first place, *i.e.*, those that would not come within the crime-fraud exception.  *In re Grand Jury Subpoena 92-1(SJ)*, 31 F.3d 826, 831 (9th Cir. 1994).

**IT IS FURTHER ORDERED** that after the court has an opportunity to review Mr. Flynn's declaration *in camera*, the court will make a determination as to whether it believes that Mr. Flynn *may* have a Rule 3.3 duty and/or whether the crime-fraud exception *may* apply to some or all of the communications.  If the court so concludes, any party seeking outright disclosure of the privileged materials must demonstrate by a preponderance of the evidence, the existence of a crime-fraud.  *In re Napster, Inc. Copyright Litigation*, 479 F.3d 1078, 1094-95 (9th Cir. 2007); *see also In re Grand Jury Proceedings*, 87 F.3d 377, 381 (9th Cir. 1996) (a party seeking to

1   vitiate the attorney-client privilege must (1) "show that 'the client was engaged in or planning a

2   criminal or fraudulent scheme when it sought the advice of counsel to further the scheme;'" and

3   (2) "demonstrate that the attorney-client communications for which production is sought are

4   'sufficiently related to' and were made 'in furtherance of [the] intended, or present, continuing

5   illegality.'").  At such time and if the court makes such a determination, the court will provide the

6   Montgomery parties with ample notice and an opportunity to be heard, including the opportunity

7   to present "countervailing evidence."  *See In re Napster, Inc. Copyright Litigation*, 479 F.3d

8   1078, 1093 (9th Cir. 2007) (in civil cases where outright disclosure is requested, a more formal

9   procedure is required, and the party seeking to preserve the privilege has the right to produce

10  countervailing evidence).[9]  Depending on the content of the communications, when they were

11  made, and what they pertain to, the court may order additional briefing on certain issues,

12  including whether the communications are privileged in the first instance, waiver of the attorney-

13  client privilege, the crime-fraud exception, and Mr. Flynn's Rule 3.3 duties.

14         **IT IS FURTHER ORDERED** that the outstanding issues contained in Mr. Flynn's

15  motion to establish procedures (#540) are stayed for further decision until this court has an

16  opportunity to review Mr. Flynn's forthcoming declaration.

17         **IT IS SO ORDERED**.

18         **DATED**: August 12, 2008.

19

20

21   _____

22   **UNITED STATES MAGISTRATE JUDGE**

23

24

25

26   [9] The *Napster* court also held that it may not be necessary in all cases to hold a "live hearing with
     oral argument," and that in appropriate cases, the court may decide the matter upon the submission of papers.
27   *In re Napster, Inc. Copyright Litigation*, 479 F.3d 1078, 1093 (9th Cir. 2007).  Should it come to this point,
     this court will make a decision regarding the need for oral argument at the proper time and after hearing from
28   the parties.