# EXHIBIT 2 TO FLYNN DECLARATION IN SUPPORT OF MOTION TO CERTIFY JUDGMENT

NANCY P. DOUMANIAN, ESQ. – State Bar No. 168925
**DOUMANIAN & ASSOCIATES**
500 North Brand Boulevard, #1660
Glendale, California 91203
Telephone: (818) 500-7010
Facsimile: (818) 500-7011

**FILED**
LOS ANGELES SUPERIOR COURT

**DEC 0 8 2006**
JOHN A. ~~~~~, CLERK

Attorney for Plaintiff, JONATHAN JENKINS

BY RUGENA LOPEZ, DEPUTY

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES-CENTRAL DISTRICT

JONATHAN JENKINS,

Plaintiff,

vs.

LINER, YANKELEVITZ, SUNSHINE AND REGENSTREIF LLP; DEBORAH KLAR; PETER GARRELL; and DOES 1-100, INCLUSIVE,

Defendants.

Case No.:    BC363087

**COMPLAINT FOR DAMAGES**

(1) Wrongful Termination/Retaliatory Discharge of Employment in Violation of Public Policy;
(2) Tortious Interference with Prospective Economic Relations;
(3) Defamation *Per Se* and Defamation *Per Quod*; and
(4) Intentional Infliction of Emotional Distress.

**COMPLAINT FOR DAMAGES - 1**

COMES NOW Plaintiff *JONATHAN JENKINS* and for his causes of action against Defendants *LINER, YANEKELEVITZ, SUNSHINE AND REGENSTREIF LLP, DEBORAH KLAR and PETER GARRELL*, states as follows:

## OVERVIEW OF THE CASE

1. This case involves an attorney employed by Liner Yankelevitz Sunshine and Regenstreif LLP ("LINER"), Jonathan Jenkins, who was wrongfully discharged in a brazen violation of public policy just days after reporting severe ethics violations and questionable billing practices committed by LINER partner, Deborah A. Klar ("Klar") to LINER ethics counsel and the California State Bar. Based on instructions from the State Bar, Jenkins brought a formal complaint against Klar with LINER ethics counsel, Peter Garrell ("Garrell"). Garrell investigated the matter and concluded that LINER needed to alert firm clients regarding Klar's severe and ongoing ethical violations. Accordingly, Garrell instructed Jenkins to prepare a memorandum to the client describing his concerns.

2. Subsequently, LINER realized that the clients at issue had fallen significantly behind in payment of their legal fees to the firm, and that revealing Klar's ethical wrongdoing would jeopardize its ability to collect those fees and subject LINER to a possible professional malpractice claim. Accordingly, a meeting was held between Klar, LINER ethics counsel, and Jenkins in which the firm reversed its former position and demanded that the memorandum not be sent to the client.

3. *One hour later* Jenkins was summoned to LINER ethics counsel's office and terminated, on the spot and without notice. Jenkins was offered a severance package in return for a release of all claims, which he declined.

## COMPLAINT FOR DAMAGES - 2

## GENERAL ALLEGATIONS

4. Plaintiff, **JONATHAN JENKINS** [hereinafter referred to as "JENKINS" or "plaintiff"] is an individual residing in the County of Los Angeles, State of California, and is an attorney duly licensed to practice law in the State of California. This is his complaint against his former employer and individuals or managing agents of his former employer for damages arising out of his employment termination, and other actionable conduct by the defendants. Plaintiff seeks compensatory and punitive damages in this action.

5. Plaintiff sues fictitious Defendants **DOES 1 through 100**, inclusive pursuant to *California Code of Civil Procedure* § 474, because their names and/or capacities are not presently known. Plaintiff will amend the complaint when such facts become known. Plaintiff is informed and believes and based thereon, alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged and that Plaintiff's damages were proximately caused thereby. Moreover, the acts committed by **EMPLOYER** as described herein were duly authorized and directed by its officers, directors and managing agents. Additionally, **EMPLOYER** participated in the acts of its employees and managing agents as described herein, and ratified and accepted the benefits of such wrongful acts.

6. At all times mentioned herein, Defendant **LINER, YANEKLEVITZ, SUNSHINE AND REGENSTREIF LLP**, was a business entity believed to be a California Limited Partnership [hereinafter referred to as "**EMPLOYER**" or "**LINER**"]. At all times relevant, this was plaintiff's **EMPLOYER** and the **EMPLOYER** of **DEBORAH KLAR** and **PETER GARRELL**. The **EMPLOYER** is a law firm operating its principal place of business at 1100 Glendon Avenue, 14th Floor, Los Angeles, California 90024-3503, and is duly authorized to transact business in the County of Los Angeles, State of California. The law firm's practice involves civil litigation, business law, real estate, corporate and other related matters.

**COMPLAINT FOR DAMAGES - 3**

7. At all times relevant, defendant **EMPLOYER** is an entity subject to suit under the *California Fair Employment and Housing Act-- Government Code § 12900, et. seq.,* in that it regularly employs five or more persons.

8. Plaintiff properly and timely complied with the requirements of the *Fair Employment and Housing Act [F.E.H.A.]* and exhausted his administrative remedies against the named defendants prior to the filing of this civil action.

9. At all times relevant, and by **MAY 12, 2006**, defendant **DEBORAH KLAR** [hereinafter "**KLAR**"] an individual, was a senior partner and managing agent of **EMPLOYER**, authorized to oversee personnel management, conduct new and existing client business, handle and oversee associates in litigated matters handled by the firm, review attorney performance, and make policy decisions on behalf of the **EMPLOYER**, and was plaintiff's supervisor at all times referenced herein.

10. At all times relevant, and by **MAY 12, 2006**, defendant **PETER GARRELL** [hereinafter "**GARRELL**"] an individual, was a senior partner and managing agent of **EMPLOYER**, authorized to oversee personnel management, new and existing client business, handle and oversee associates in litigated matters handled by the firm, review attorney performance, and make policy decisions on behalf of the **EMPLOYER**, and was plaintiff's supervisor at all times referenced herein. At all times herein, **GARRELL** also served as the firm's ethics counsel and was the individual designated by **EMPLOYER** to address any concerns or complaints by employees of the firm concerning ethical issues, ethical improprieties and ethical misconduct involving the firm's members, management, employees and clients.

## FACTUAL BACKGROUND

11. **JENKINS** was first hired by **EMPLOYER** as an associate attorney on or about **JANUARY 2005** and remained employed in this capacity until **MAY 12, 2006**, at which time his employment was wrongfully terminated. During the period of

**COMPLAINT FOR DAMAGES - 4**

plaintiff's employment with **EMPLOYER**, he had an outstanding performance record as reflected by praise and compliments he received from managing attorneys, supervising attorneys, fellow attorneys, and clients concerning his work product and work ethic, as well as by performance bonuses received by plaintiff during his employment. Despite his exemplary record, plaintiff was summarily terminated after he complained to **EMPLOYER's** managing agents **GARRELL** and **KLAR** at the firm about, *inter alia*, (1) serious ethical improprieties and fraudulent conduct committed by **KLAR** in regards to the representation of clients of the firm (2) **KLAR's** representation of clients whose interests were adverse to one another in violation of *Rules of Professional Conduct, Rules* 3-300 and 3-310; (3) questionable and/or fraudulent billing practices by **KLAR** and **EMPLOYER** in violation of *California Penal Code* §484, and (4) **KLAR's** and **EMPLOYER'S** pursuit and maintenance of claims and lawsuits that she knew and/or should have known lacked legal or factual merit. The termination was intended to silence plaintiff and ensure that plaintiff would not file a formal complaint with the California State Bar or otherwise communicate these issues to the clients, which intention was made known to **GARRELL** and **KLAR** by plaintiff prior to plaintiff's termination.

12. Jonathan M. Jenkins is an attorney duly licensed to practice law in California. He is a graduate of Yale University and Harvard Law School, and was admitted to the California Bar in 1997. At all times referenced herein, plaintiff was an attorney in good standing with the California State Bar, and has never been the subject of any disciplinary action.

13. In **JANUARY 2005**, plaintiff joined the **LINER** firm as a litigation associate and performed his job in a highly professional and competent manner as evidenced by the fact that in **DECEMBER 2005**, during his year-end review, he was awarded a discretionary year-end performance bonus and consistently received praise for his impressive work performance. Prior to his having voiced concerns regarding ethical

**COMPLAINT FOR DAMAGES - 5**

improprieties by managing members of the firm following which he was terminated, plaintiff had never been the subject of any verbal or written reprimands or other criticisms on any subject by any managing partners or others at the firm.

14. In late 2005, plaintiff was assigned to assist **KLAR** in the handling of several litigated matters involving multiple firm clients [hereinafter the "Actions"].

15. Plaintiff handled various aspects of the Actions for several months without incident, and **KLAR** expressed no dissatisfaction or complaints with the quality and timeliness of plaintiff's work product. However, in early 2006, plaintiff began to suspect that **KLAR** was committing malpractice, violating standards of professional ethics, and violating her fiduciary and professional obligations to her clients in the Actions.

16. In particular, plaintiff believed that **KLAR** was violating, at a minimum: (a) *California Rules of Professional Conduct*, Rule 3-600, which provides that if a member acting on behalf of an organization knows than an actual or apparent agent of the organization acts or intends or refuses to act in a manner that may be a violation of law reasonably imputable to the organization, or in a manner which is likely to result in substantial injury to the organization, the member shall not violate his or her duty of protecting all confidential information, and the member may take such actions as appear to the member to be in the best lawful interests of the organization; (b) *California Rules of Professional Conduct*, Rule 3-310, which provides that a member shall not accept or continue representation of a client where (1) the member has a legal or other professional relationship with a party or witness in the same matter; (2) the member's previous relationship would substantially affect the member's representation; (3) accepting representation of more than one client in a manner in which the interests of the clients actually or potentially conflict; (4) representing a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interests are adverse to the client; (c) *California Rules of Professional Conduct* Rule 3-200, which provides that a member shall not seek,

**COMPLAINT FOR DAMAGES - 6**

accept, or continue employment if the member knows or should know that the objective of such employment is: (1) to bring an action, conduct a defense, assert a position in litigation without probable cause and for the purpose of harassing or maliciously injuring any person; or (2) to present a claim or defense in a litigation that is not warranted under existing law; and (d) *California Rules of Professional Conduct*, Rule 3-110, which states that "[a] member shall not intentionally, recklessly, or repeatedly fail to perform legal services with competence."

17. On multiple occasions beginning in or around **JANUARY 2006**, plaintiff brought his concerns to the attention of **KLAR.** In one of these instances, the concerns were memorialized in an e-mail dated **MARCH 24, 2006**, which plaintiff also forwarded to another **LINER** partner [assignment partner Steven Velkei] who plaintiff is informed forwarded the email communication to other **LINER** partners whose identities are unknown to plaintiff at this time. The subject email memorialized plaintiff's concerns regarding **KLAR** and ethical violations and questionable client billing practices as described herein.

18. **KLAR** told plaintiff on several occasions, including shortly after the **MARCH 24, 2006** e-mail communication, that his concerns were wholly misplaced, that the Actions were meritorious, and that he should not worry about the amount of the clients' mounting legal bills or what was in the best interests of the clients.

19. Meanwhile, plaintiff is informed and believes that the clients had fallen over substantially behind in payment of legal fees to **LINER**, and the clients were expressing satisfaction with Klar's handling of the Actions. Plaintiff is informed and believes, and based thereon contends, that it was at this juncture that **KLAR**, intent on protecting herself in the event of a fee dispute with the client or disclosure of the ethics violations she actively concealed, searched for and located a scapegoat for the ethical improprieties and questionable billing practices she perpetrated, began making unfounded complaints both to the client and other **LINER** partners and

**COMPLAINT FOR DAMAGES - 7**

attorneys about the quality of plaintiff's work product in the Actions. **KLAR** also stated that the client had complained about plaintiff's conduct in the handling of the case – although plaintiff had never so much as met the clients, and all his work product was reviewed by **KLAR** before it was forwarded to the clients.

20. On or about **APRIL 12, 2006**, plaintiff discovered irrefutable evidence that Klar was, in fact, committing malpractice, fraud, and ethics violations and attempting to conceal her misconduct.

21. Plaintiff was faced with a genuine moral and ethical dilemma – commit and perpetrate ethical violations and risk his license to practice law or alert management to the situation and face the possible loss of his job for being perceived as a "complainer" and a nonconformist. Uncertain about the appropriate course of conduct and given fears about the losing his job and retaliation, plaintiff contacted the State Bar Ethics Hotline to seek direction regarding his obligations to the clients. The State Bar representative cited plaintiff to *California Rules of Professional Conduct* Rule 3-600; forwarded to plaintiff a copy of *Los Angeles Bar Ethics Opinion No. 383,* and advised him that refusing to conduct further work on the Actions was not sufficient to satisfy his professional obligations as a member of the State Bar, to the clients. Rather, the State Bar representative advised plaintiff that consistent with *Ethics Opinion No. 383*, he was obligated to (1) bring the ethics issues and billing improprieties to the attention of the individual designated as the "ethics counsel" of the firm or other management level person; and (2) if **LINER** refused to bring the matter to the attention of the client, then plaintiff himself was obligated to approach the clients independently and advise them of the situation. The State Bar representative also requested that the plaintiff file a formal complaint against **KLAR** with the State Bar.

22. In reliance on the directions of the State Bar representative, the same day plaintiff brought his concerns to the attention of **GARRELL** who was designated by the firm

**COMPLAINT FOR DAMAGES - 8**

as its "ethics counsel." The following day, on **APRIL 13, 2006**, plaintiff met with **GARRELL** to discuss the situation in greater detail. Plaintiff advised **GARRELL** that he had contacted the State Bar Hotline and would like to pursue the matter further by way of a formal complaint with the State Bar as well as notify the Client of the problem. **GARRELL** assured and represented to plaintiff that he would conduct an investigation of the matter. **GARRELL** further represented to plaintiff that he would discuss the matter with other managing partners in the firm, including **KLAR** and **LINER's** Chief Financial Officer **CODY CLUFF**.

23. **GARRELL** also informed plaintiff that he concluded that plaintiff had legitimate concerns that needed to be brought to the attention of the clients of the firm. **GARRELL** next instructed plaintiff to prepare a draft of a letter memorandum [hereinafter the "Memorandum"] to the clients which set forth plaintiff's concerns and recommendations in regards to the foregoing situation involving **KLAR** as described herein.

24. In addition, plaintiff is informed and believes that at this time the human resources representative of **LINER**, Jane Irrera, subsequently began an investigation of **KLAR**, including her prior history of retaliating against **LINER** employees who complained about her or any aspect of her work performance, her representation of clients, and her client billing practices.

25. On or about **APRIL 19, 2006**, Plaintiff completed a draft of the requested Memorandum and forwarded it to **GARRELL** for his review and approval. Over the next two weeks, plaintiff made changes to the Memorandum at the direction and request of **GARRELL**. Plaintiff cooperated with **GARRELL's** requested changes to the Memorandum, believing that **GARRELL** had a sincere interest in bringing the situation to the attention of the clients, and that his actions were motivated by a desire to apprise the clients of the true facts of the situation. **GARRELL** requested that plaintiff "frame" the memorandum in such a way as to avoid damaging

**COMPLAINT FOR DAMAGES - 9**

LINER's relationship with the clients. Plaintiff indicated to GARRELL via e-mail communication that he did not wish to bill the clients for the attorney time expended in preparing the Memorandum, as plaintiff believed that the clients should not have to pay for information and circumstances that KLAR should have disclosed to the clients long ago.

26. Plaintiff is informed and believes that the clients continued to fall behind on payment of its legal bills to LINER. Moreover, on MAY 5, 2006, the deposition of KLAR was noticed by the opposing party in the Actions, and was subsequently conducted several days later. This posed enormous problems for LINER since: (1) KLAR was a percipient witness regarding the subject matter of the Actions, and simultaneously represented the clients in the Actions; (2) numerous privilege issues existed, because KLAR had formerly represented the opposing party; (3) there existed information and evidence regarding serious ethical improprieties committed by KLAR; and (4) there existed information and evidence regarding questionable and/or fraudulent billing practices in the Actions undertaken with the knowledge and consent of, and at the direction of KLAR in regards to the Actions.

27. Plaintiff is informed and believes and based thereon contends that at this point LINER, GARRELL and KLAR concluded and decided that sending the Memorandum to the clients would seriously impede LINER's ability to collect unpaid legal fees, and/or lead to a malpractice claim; attorney client fee dispute; or other action against LINER, and that the simplest solution would be to conceal the ethical issues and questionable/fraudulent billing practices, all of which could be effectuated by terminating plaintiff. Accordingly, LINER, KLAR, and GARRELL decided, agreed, colluded and conspired to retaliate against plaintiff for his complaints regarding KLAR and LINER and wrongfully terminated his employment with LINER all of which were in violation of the public policy of this State. LINER, GARRELL and KLAR knew that plaintiff intended to lodge a

**COMPLAINT FOR DAMAGES - 10**

formal complaint with the State Bar in regards to **KLAR**'s conduct, prior to plaintiff's termination.

28. On **MAY 12, 2006, GARRELL** requested that plaintiff attend a 1:30 p.m. meeting in a conference room with **KLAR**. During the meeting, **KLAR** indicated that she was attempting to resolve the Actions, and described various steps she was taking to address the ethics concerns plaintiff had previously raised. **KLAR** indicated that sending the Memorandum to the clients could potentially jeopardize the firm's relationship with the clients. **KLAR** also expressed concerns regarding plaintiff's stated desire to lodge a formal complaint with the State Bar about the situation. Plaintiff asked **GARRELL** if, given **KLAR's** representations, **GARRELL** [in his capacity as "ethics counsel" and a managing partner at **LINER**] was satisfied that the ethical issues could be resolved without sending the Memorandum to the client, and **GARRELL** indicated that he was. Plaintiff was summarily coerced by **KLAR** and **GARRELL** to forego sending the Memorandum to the Client. Plaintiff objected to this directive given that it clearly violated ethics obligations to the clients.

29. Approximately one hour later, **GARRELL** summoned plaintiff into his office and told plaintiff that he was being summarily terminated, effective immediately. **GARRELL** cited to performance problems as the stated reason for plaintiff's termination. Plaintiff was offered a severance package conditioned upon his signing of a release of all claims against **LINER** and its partners and managing agents. Plaintiff declined to sign the subject release.

30. Plaintiff was informed by **GARRELL** that his termination was entirely performance-based [despite the positive performance evaluations and discretionary performance bonus he had received just months earlier while he handled the Actions], and that the decision to terminate him had actually been made "long ago." Plaintiff questioned the honesty and sincerity of these statements given that on **APRIL 20, 2006**, assignment partner Steven Velkei contacted plaintiff and inquired if he was available

**COMPLAINT FOR DAMAGES - 11**

to handle a new client matter at **LINER**. Moreover, plaintiff had never been the subject of any written or verbal concerns, complaints or criticisms about his work performance.

## FIRST CAUSE OF ACTION FOR
## WRONGFUL TERMINATION OF EMPLOYMENT IN VIOLATION
## OF PUBLIC POLICY - WHISTLE BLOWER VIOLATION
### [*CALIFORNIA LABOR CODE §1102.5*]

31. All of the allegations contained in the General Allegations above, are incorporated herein by reference as though fully set forth herein.

32. Embedded in federal and state statutes, cases, and constitutions are fundamental policies for the benefit of the public. The *California Whistleblower Act* was designed to encourage employees to report waste, fraud, abuse of authority, violation of law, or threat to public health, by prohibiting any retribution regarding such reporting. The anti-retaliation *California Labor Code* provision [codified in *California Labor Code* §1102.5] similarly protects employees in general who report legal violations or who refuse to participate in such violations.

33. Defendants' actions as alleged herein in terminating plaintiff's employment in retaliation for his voicing of complaints of serious ethical improprieties committed by **KLAR** (1) were in response to plaintiff's stated intention of reporting **KLAR** to the California State Bar; (2) was intended to thwart plaintiff's stated intention of contacting the clients regarding the ethical situation described herein; (3) and was in responses to plaintiff's refusal to conspire with defendants in violating ethical obligations and perpetuating questionable/fraudulent client billing practices. All of said conduct by defendants violates California's whistle blower statutes which prohibit employers from terminating employees who threaten to expose a violation of law.

**COMPLAINT FOR DAMAGES - 12**

34. Plaintiff contends that he was wrongfully and unlawfully terminated from **LINER** after plaintiff had exercised his rights and initiated contact with the State Bar concerning **KLAR's** activities as described herein.   Plaintiff's employment was terminated by defendants, in substantial part, in retaliation for making complaints about defendant's violations of the *California Rules of Professional Conduct* and questionable/fraudulent client billing practices.      Defendants also terminated plaintiff's employment in order to ensure that plaintiff would not have any further communications with the clients or with any state, federal, and other government agencies about defendant's violations of law, rules and regulations.

35. Defendant **EMPLOYER,** by and through the actions of its managing agents, and employees, directly and indirectly, threatened, coerced, harassed and then discharged plaintiff on **MAY 12, 2006,** terminating his employment with **EMPLOYER.**

36. Said harassment and termination of plaintiff's employment on **MAY 12, 2006** was a violation of public policy, as manifested by the *Code of Professional Conduct*, as the conduct and actions of the defendants as alleged herein violated and abridged plaintiff's opportunity to hold employment and report violations of rules, procedures and statutes without fear of reprisal by the employer.  The reason given for the termination of plaintiff's employment was pretextual and was not grounded in fact.

37. Plaintiff's termination was the direct result of his voicing and formal submission to management of information, evidence and memoranda expressing concerns regarding (1) ethical improprieties and violations relating to the representation of clients whose interests were clearly adverse to one another; (2) fraudulent and/or questionable client billing practices; (3) and pursuit of frivolous claims and defenses by the firm, which complaints were made with the hope and expectation of remedying the situation and effecting a change in the manner in which the Actions were handled by **LINER** and **KLAR.**

**COMPLAINT FOR DAMAGES - 13**

38. As a direct and legal result of defendant **EMPLOYER's** unlawful employment practices as alleged above, plaintiff suffered and continues to suffer economic and non-economic damages to an extent and amount according to proof at the time of trial. Economic damages shall include, but are not limited to, any and all claims for lost wages, benefits, salary increases and income, both past and future. Non-economic damages shall include but are not limited to the fear, humiliation, emotional distress, and mental, or emotional or physical pain and anguish that have been and/or will foreseeably be experienced by plaintiff, all to his damage and detriment, in a sum according to proof at trial.

39. Plaintiff is entitled to any and all compensatory and punitive damages recoverable under California law, as well as attorney's fees as provided by statute.

## SECOND CAUSE OF ACTION FOR

## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS AGAINST KLAR AND GARRELL AND DOES 1-100.

40. All of the allegations set forth above are incorporated herein by reference as though fully set forth herein.

41. At all times relevant herein, plaintiff, and defendant **EMPLOYER** were in an economic relationship that would have resulted in an ongoing economic benefit to plaintiff, that in all probability would increase over time, as plaintiff's job performance and client development were enhanced and improved, and would have matured to fruition, as plaintiff's legal skills and acumen increased and improved over time.

42. Defendants **KLAR** and **GARRELL**, at all times relevant, knew of this economic relationship, and was well aware of its increasingly greater financial potential over time.

**COMPLAINT FOR DAMAGES - 14**

43. Defendants **KLAR** and **GARRELL**, at all times relevant, intended to disrupt this relationship between plaintiff and **EMPLOYER**.

44. Defendants **KLAR** and **GARRELL's** collective conduct, including but not limited to initially encouraging plaintiff to voice complaints regarding ethical improprieties committed by **KLAR**, assuring plaintiff that such complaints would be thoroughly and sincerely investigated; yet then, terminating plaintiff as a result of his having voiced these complaints under the guise of alleged poor work performance shortly after the complaints were made. Defendants' conduct was at all times relevant in violation of plaintiff's civil and constitutional rights, and was otherwise unlawful or improper, and harmful to both plaintiff and **EMPLOYER**.

45. The relationship between plaintiff and **EMPLOYER** was damaged on **JUNE 12, 2006**, when plaintiff was wrongfully terminated, and defendant **KLAR** and **GARRELL** conduct was a substantial factor in causing the harm suffered by plaintiff. Plaintiff is informed and believes that **KLAR** and **GARRELL** recommended and implemented plaintiff's termination from **LINER**.

46. As a direct and legal result of defendant **EMPLOYER's** unlawful employment practices as alleged above, plaintiff suffered and continues to suffer economic and non-economic damages to an extent and amount according to proof at the time of trial. Economic damages shall include, but are not limited to, any and all claims for lost wages, lost benefits and income, both past and future. Non-economic damages shall include but are not limited to the fear, humiliation, emotional distress, and mental, or emotional or physical pain and anguish that have been and/or will foreseeably be experienced by plaintiff, all to his damage and detriment, in a sum according to proof at trial.

47. Plaintiff is entitled to any and all compensatory and punitive damages recoverable under California law.

---

**COMPLAINT FOR DAMAGES - 15**

## THIRD CAUSE OF ACTION FOR

## DEFAMATION *PER SE* AND DEFAMATION *PER QUOD*

## AS AGAINST KLAR AND GARRELL AND DOES 1-100.

48. All of the allegations set forth above are incorporated herein by reference as though fully set forth herein.

49. Defendants, and each of them made the following defamatory statements regarding plaintiff's ability and competency as an attorney to other members, employees and clients of **LINER**, and as elsewhere disseminated and published to persons other than the plaintiff himself:

   (a) Plaintiff was an incompetent attorney;

   (b) Plaintiff was an unethical attorney;

   (c) Plaintiff was an unskilled and ineffective attorney;

   (d) Plaintiff was not a "team player";

   (e) Plaintiff was a "whistleblower".

50. At all times relevant these defamatory statements portrayed plaintiff as an unprofessional, unethical, or incompetent attorney and employee of **LINER**.

51. At all times relevant, these defamatory statements were reasonably understood to be about plaintiff, and at all times relevant, under the facts and circumstances known to all those who may foreseeably read, review, or have actually read, reviewed, or heard these defamatory statements, they would tend to injure plaintiff in his professional occupation, or expose him to ridicule, hatred, contempt, or shame, or to discourage others from associating with him, and severely impede and hamper his ability to secure gainful employment at any other law firm.

52. At all times relevant the aforementioned defamatory statements were false and scurrilous, and were a substantial factor in causing harm to plaintiff.

**COMPLAINT FOR DAMAGES - 16**

53. At all times relevant, defendants either knew the aforementioned defamatory statements were false, or failed to use reasonable care to determine the truth or falsity of the statements.

54. Plaintiff was harmed in his property, business, profession or occupation, and is entitled to any and all compensatory and punitive damages recoverable under California law.

## FOURTH CAUSE OF ACTION FOR

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AS

## AGAINST KLAR, GARRELL, AND DOES 1-100.

55. All of the allegations set forth above are incorporated herein by reference as though fully set forth herein.

56. Plaintiff alleges that the acts, omissions to act, and conduct of defendants, as alleged above, and as authorized or subsequently ratified by defendant **EMPLOYER**, caused plaintiff to suffer severe emotional distress.

57. At all times relevant, the acts, omissions to act, and conduct of the defendants and each of them, directed towards or in relation to the plaintiff were extreme and outrageous and beyond what is tolerated in a civilized society.

58. At all times relevant, defendants and each of them, either intended to cause plaintiff emotional distress, or acted with reckless disregard of the probability that plaintiff would suffer emotional distress.

59. Plaintiff suffered severe emotional distress, and defendants' acts and omissions were a substantial factor in causing plaintiff's damages.

60. Plaintiff is entitled to any and all compensatory and punitive damages recoverable under California law.

**COMPLAINT FOR DAMAGES - 17**

1
2

# PRAYER

3    **WHEREFORE, Plaintiff JONATHAN JENKINS** seeks judgment against Defendants,

4    and each of them, for:

5              (1) All actual consequential and incidental losses, including but not

6              limited to, loss of income and benefits, according to proof, together

7              with prejudgment interest and post-judgment interest;

8              (2) All non-economic or general damages in an amount according to

9              proof;

10             (3) All economic or special damages in an amount according to proof;

11             (4) Punitive damages in amounts sufficient to punish and to deter

12             defendants, and each of them;

          (5) Reasonable attorney's fees, as provided by statute;

13             (6) Costs of suit herein incurred; and

14             (7) Such other and further relief as the Court deems proper.

15
16   DATED: December 5, 2006              *DOUMANIAN & ASSOCIATES*

17
18
19                BY:

20                   NANCY P. DOUMANIAN, ESQ.
                Attorney for Plaintiff,

21                   JONATHAN JENKINS

22
23
24
25

# COMPLAINT FOR DAMAGES - 18