**Michael J. Flynn, Esq.,** Mass. State Bar No.172780
P.O. Box 690, 6125 El Tordo
Rancho Santa Fe, CA 92067; *and*
One Center Plaza, Suite 240
Boston, MA 02129
Tel:   (858) 775-7624; Fax:(858) 759-0711
*Former Counsel, Admitted Pro Hac Vice*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DENNIS MONTGOMERY, and the MONTGOMERY FAMILY TRUST, | 3:06-CV-00056-PMP-VPC **BASE FILE** |
| Plaintiffs, | |
| v. | 3:06-CV-00145-PMP-VPC |
| ETREPPID TECHNOLOGIES, LLC, WARREN TREPP, and the UNITED STATES DEPARTMENT OF DEFENSE, | **MOTION OF MICHAEL FLYNN FOR ORDERS COMPELLING DISCOVERY, AND DEBTOR EXAMINATION** |
| Defendants. | |
| AND ALL RELATED MATTERS. | |

Pursuant to Local Rule IB 1-9, and Rule 69 of the Federal Rules of Civil Procedure, Michael Flynn hereby moves to conduct and compel discovery regarding the Montgomery parties' assets, payments to the Montgomery parties from Edra Blixseth and/or her companies, Blxware and Opspring, the Montgomery parties' ownership or other interest in Blixseth's companies, or its software, and related matters involving the Montgomery parties' ability to pay the judgment in favor of Michael Flynn, (Doc.# 902). At the conclusion of discovery, Mr. Flynn moves for a court-conducted debtor examination. This motion is based on the following points and authorities and all of the pleadings in these cases.

## POINTS AND AUTHORITIES

### I. INTRODUCTION

The Court is familiar with these cases having been involved since their inception. Briefly, attorneys Michael Flynn and Carla DiMare, former counsel to the Montgomery parties, are trying to recover money owed to them by the Montgomery parties *and* Montgomery's "partner" Edra Blixseth—a purported billionaire—now apparently broke, or who is concealing assets/money relating to multiple frauds on banks and lenders, and who has directed, approved and paid for hers and Montgomery's litigation expenses in these cases while directly paying him millions of dollars. On December 17, 2008, Judge Pro entered judgement in favor of Mr. Flynn on his costs and fees in the amount of $628,812.15. (Doc. #902). Mr. Flynn's Motion for Sanctions, now including approximately $417,000 in fees, remains unresolved.

With this motion, Mr. Flynn seeks discovery relating to Blixseth's payments to Montgomery and/or his trust, the Montgomery parties' assets, Montgomery's ownership interest in Blxware and his software, and Montgomery's hiding or concealing assets. Montgomery has received over $5 million dollars from Blixseth since April, 2006. Montgomery has an incestuous financial relationship with Blixseth reflected in her continued payment to him of $100,000 *per month* when all of the available evidence establishes that Montgomery is concealing moneys received from Blixseth, his software is either fraudulent, non-existent, or mis-represented, and Blixseth has known of the evidence relating to the software since at least January, 2007. Montgomery has received this money,

and Blixseth has paid it from monies derived from her extensive frauds on numerous lenders perpetrated with the help of their joint counsel, Deborah Klar

## II  LEGAL STANDARDS

Pursuant to Local Rule IB 1-9 (k), this Court has the authority to "conduct examinations of judgment debtors;" and under section (n) to ([p]reside over proceedings to enforce civil judgments." Under FRCP 69, the Court has the authority to apply and enforce collections proceedings under Nevada law. Pursuant to Nevada law, "the judgment creditor.... may obtain discovery from any person, including the judgment debtor...." Nev. JCRCP 69 (2007).  Thus, the Court has broad discretionary power to order depositions, document production and related discovery after trial and after judgment has entered. *Potter V Federal Home Loan Corp.,* 185 B.R 68 (C.D. Cal., 1995; *Qualcomm, Inc v Broadcom, Corp.* 539 F. Supp. 2d 1214 (S.D.Cal., 2007)

Moreover, here, the Court has retained jurisdiction over the pending sanctions motion. The unusual facts and circumstances of this case, including Montgomery's and the Liner Firm's incessant and brazen violation of Court Orders, documented perjury, and flaunting of the judicial process, compel extensive and broad discovery remedies to enforce the judgment.

## III  FACTS AND ARGUMENT

On December 16, 2008, this Court entered judgment against all three defendants, Dennis Montgomery, Brenda Montgomery and the Montgomery Family Trust in the amount of $628,812.15. (Doc. #902). Mr. Flynn now requests that he be allowed to conduct extensive discovery of the Montgomery parties, Edra Blixseth and others in order to satisfy the judgment.

The Court has scheduled a settlement conference in this matter for January 8, 2009, but there is little likelihood that said conference will be successful because the Liner Firm has, to date, completely refused to comply with the Court's Settlement Conference Order. (Doc.#892; Flynn Dec., doc. #904 ¶25, ). Additionally, there has been a massive two year pattern of fraud involving Blixseth's and Montgomery's lending relationships with multiple banks, based in part on Ms. Klar's procurement and active participation in fraudulent loans, (one of the reasons Klar was fired by the

Liner Firm) which compels the conclusion that the Montgomery parties are either misrepresenting facts to their lawyers, or their lawyers are misrepresenting facts to the Court. Either way, the Montgomery parties are concealing their income and misrepresenting it to the Court. (Flynn Dec. #904 ¶2-23).

The following facts support post-judgment discovery.

**1. The Court knows from the evidentiary hearings that the Montgomery/Blixseth parties and the Liner Firm have combined to circumvent this Court's Orders and misrepresent the truth for 18 months.** As the Court heard in five days of evidentiary hearings on the Trepp parties motions and the Court's OSCs, the Flynn motion for sanctions and evidentiary hearing, the FBI hearing and Mr. Sunshine admission that Montgomery lied under oath in the Klar filed March 10, 2008 declaration," and as reflected in numerous other pleadings and declarations, the Montgomery/Blixseth parties have no respect for the judicial process, this Court, or the truth. Montgomery demonstrated under oath in five days of evidentiary hearings that he will say and do anything to conceal the truth; and that his lawyers will parrot his lies; and both have engaged in conduct designed to protect Edra Blixseth. The firing of Ms. Klar and the appearance of the new Liner lawyers is itself a continuation of the same type of conduct. The Liner Firm was duty bound to withdraw, to cease representing dual, conflicted clients, and to inform the Court of Ms. Klar's misconduct under Rule 3.3 of the Nevada Rules of Professional Conduct and as officers of the court. That failure, coupled with the Liner Firms role in obtaining funds under fraudulent circumstances for Edra Blixseth from multiple lenders in order to perpetuate their two year campaign of misconduct, warrants urgent and extensive court-monitored discovery.

All of this joint misconduct compels the conclusion that Montgomery is hiding assets (perhaps even from his "new" lawyers). Ms. Klar knew exactly what Montgomery received because she and other Liner lawyers drafted the Blxware documents transferring Montgomery's technology and providing for his $100,000 per month income; AND she possessed the companies' records recording Montgomery's receipt of $3.8 million dollars by June 30, 2007. If Montgomery cries poverty in the forthcoming settlement conference the Court should order an immediate deposition and document production pursuant to this motion. .

**2**. <u>The Liner Firm misrepresentations at the November 19, 2008 compel discovery.</u>

Given Montgomery's stated position in Court on November 19, 2008, according to Ms. Garafalo, that Montgomery has <u>not</u> received over $5 million from Blixseth and her companies, (which was incontrovertibly untrue), and given Montgomery's failure to post a bond to obtain "client files," and given the facts recited in the declaration of Mr. Flynn attached to the Motion to Certify the Judgment, (Doc.# 904), there is substantial likelihood that Montgomery has and will be encumbering assets, and/or hiding assets. (*See* doc.# 904, Flynn Dec. ¶4, attaching Montgomery's June 10, 2008 testimony where he testified he was still at that time receiving $100,000 *per month* from Blixseth's companies; and Mr. Flynn's attestation that Montgomery [or his Trust] received 3.8 million dollars from Blixseth's companies between April 2006 and June 30, 2007. This totals over 5 million dollars.)

As the Court has seen and as recited in the attached Flynn declaration, Montgomery, Blixseth and the Liner Firm have engaged in delaying and concealment strategies on every front since the Liner Firm's appearance in these cases; delay in discovery; delay and misrepresentations in the settlement process; refusal to pay fees and costs; and delay and concealment in Blixseth's dealings with defaulted loans. These strategies and tactics compel the conclusion that Montgomery is concealing the $5 million dollars he has received from Blixseth. If the Liner Firm claims lack of funds to satisfy this judgment, extensive and intensive discovery is warranted.

**3. <u>The Trepp settlement process is extremely suspect; and the legitimate intentions of the Liner Firm, Blixseth and Montgomery in pursuing settlement with Trepp and Flynn appear dilatory.</u>** The following very basic facts reveal their lack of honesty with the Court. (a) the Montgomery/Blixseth cabal did not pledge collateral in the Trepp settlement; (b) they did not pay the 1.5 million recited in the Confessions of Judgment as they had promised; (c) they have dragged out the settlement process for 3 months after representing that they intended *"global resolution"* to the Court back in September, and then blamed it in open Court on November 19, 2008 on the undersigned's "hostile pleadings;" (d) they have not filed and made essential disclosures regarding Ms. Klar, her pro hac vice status, and termination from the Firm; (e) based on the fact that they have been concealing it from lenders, presumably, they have also concealed from this Court the multiple frauds

1  perpetrated on multiple lenders recited below.

2        The "hostile pleadings" excuse is baseless and dilatory. The Liner Firm sued Mr. Flynn, lied
3  under oath about him, engaged in fraud with their client to defeat payment of his fees, and repeatedly
4  lied to the Court. Their self-protective settlement charade is just more of the same type of sneaky
5  conduct.  Their excuse is just part of that charade. They are confusing "hostile" with the truthful
6  exposure of their misconduct. Mr. Flynn has sat on the sidelines for three months *knowing* that the
7  Liner Firm's settlement charade was just more of what they have done for 18 months. If they detect
8  a little "hostility" in the objections to the Trepp settlement pleadings, they are projecting their own
9  clients' conduct toward Mr. Flynn.

10        Although they may claim that our jurisprudence is adversarial in nature, there are rules
11  including ethics rules, that compel disclosures and prohibit affirmative misrepresentation of facts.
12  In sum, their collective conduct, right up to the present is evidence of delay, deceit, concealment and
13  disregard for this Court, its time and its pending orders; and it supports the conclusion that they have
14  no intention of paying any settlement amounts, and never did.  The upcoming settlement conference
15  appears to be seriously undermined by failure to comply with the Court Order, (doc.#892). The Liner
16  Firm is, again, playing fast and loose with the Court.

17        **4. <u>Blixseth and Klar have engaged in "circuitous funding" and fraud in Blixseth's
18  lending relationships since June, 2007, continuing to the present</u>.** As recited in the Flynn
19  declaration in very general terms in order to protect the identity of numerous lenders in the midst of
20  intensive investigations, since June, 2007, beginning with the $13 million dollar Western Capital
21  Partners loan (now the subject of a public filing),  Blixseth, with Ms. Klar's participation, has
22  borrowed at least 50 million dollars. These loans are all in default, and the loan funds have not yet
23  been accounted for. Ms. Klar represented Steve Crisman, former CEO of Blxware, in a deposition
24  in which Mr. Crisman honestly admitted that Blxware had no government contracts, while Ms. Klar
25  and another Liner partner were representing to at least one lender that they had a government contract
26  in order to secure an $8 million dollar loan. (Flynn Dec., #904 ¶2-23). Montgomery's receipt of
27  $100,000 dollars *per month* from Blixseth; and prior receipt of $3.8 million dollars, justifies close
28

examination of these transactions involving the Opspring/Blxware, companies that has never had any income; and for Montgomery who has now apparently admitted that he took eTreppid's technology; and in connection with which Blixseth was told as early as January, 2007 that Montgomery's technology was either fraudulent or misrepresented. These facts warrant discovery of Blixseth's and role in Montgomery's receipt of any funds from said loans; and/or any role he may have in channeling said moneys to any other parties.

## REQUESTED DISCOVERY

**1**. **Depositions:**   Dennis Montgomery, Brenda Montgomery, Andras Burgyan (son in law and employee of Blxware), Edra Blixseth,  Jory Russell (bookkeeper), Jack Scalia, (friend), Bill Manak (business associate), Brian Montgomery, (son - trust beneficiary) Steven Montgomery (son- trust beneficiary), (Kathleen Montgomery - (daughter and trust beneficiary). and/or any individual who has been involved in the receipt or disbursement of monies to the Montgomery parties over the amount of five thousand dollars.

**2**   **Document production:**   All books and records of Opspring and Blxware. All books and records of the Montgomery party evidencing all receipts of money from January, 2006 to the present, including but not limited to all bank accounts, foreign, off-shore and domestic. All books and records of any individual or entity to whom the Montgomery parties have sought to conceal the receipt of any monies. Books and records of any banks, casinos, or other entities which have received monies from the Montgomery parties relating to said monies, or which loaned the Montgomery parties any monies.

**3. Debtor Examination**. At the conclusion of discovery, Mr. Flynn respectfully requests a debtor examination before the Court, if necessary for the Court to make findings relating to the credibility of Montgoemry and/or Blixseth involving the location of assets to satisfy the judgment.

**IV   CONCLUSION**

The Court has a complete record to support findings that warrant the foregoing post judgment discovery.

| | | |
|---|---|---|
| 1 | Dated: Dec. 21, 2008 | Respectfully Submitted, |
| 2 | | S/S_____ |
| 3 | | Michael J. Flynn, Esq. |