**Michael J. Flynn, Esq.,** Mass. State Bar No.172780
P.O. Box 690, 6125 El Tordo
Rancho Santa Fe, CA 92067; *and*
One Center Plaza, Suite 240
Boston, MA 02129
Tel:    (858) 775-7624; Fax:(858) 759-0711
*Former Counsel, Admitted Pro Hac Vice*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| DENNIS MONTGOMERY, and the MONTGOMERY FAMILY TRUST,<br><br>    Plaintiffs,<br><br>v.<br><br>ETREPPID TECHNOLOGIES, LLC, WARREN TREPP, and the UNITED STATES DEPARTMENT OF DEFENSE,<br><br>    Defendants.<br><br>AND ALL RELATED MATTERS. | 3:06-CV-00056-PMP-VPC<br>**BASE FILE**<br><br>3:06-CV-00145-PMP-VPC<br><br>**REPLY OF MICHAEL FLYNN TO MOTION FOR ORDERS COMPELLING DISCOVERY, AND DEBTOR EXAMINATION** |

Mr. Flynn submits this Reply memorandum in support of his Motion to Compel post-judgment discovery, (doc.# 908) . Mr. Flynn agrees that the discovery should be conducted in sequential stages in order to determine in the most efficient and economical manner the Montgomery parties' ability to satisfy the judgment; and to verify his claim that he has "no money." However, given the unusual circumstances of this case, *if necessary,* post-judgment discovery should not be circumscribed by inapplicable, abstract limitations, which are not even supported in the cases or authorities cited in the Montgomery's Response.

 In this matter, the claim of "no money" is highly suspect given: (i) Montgomery's receipt of over $5 Million Dollars in two years from Edra Blxseth; (ii) Montgomery's denial to Mr. Flynn of his receipt of a $500,000 payment pursuant to his written contract with Blixseth; (iii) Montgomery's conveyance of his technology to Blixseth; (iv)  Blixseth's payment of his fees to the Liner Firm; (v)

Montgomery's admissions of false statement under oath; (vi) Montgomery's present claim that Blxware and not himself, owns the technology; (vii) Blixseth's continued payment of $100,000 per month to Montgomery (as of June, 2008) when Blxware had never received any income and Blixseth had defaulted on tens of millions of dollars of fraudulent loans. Based on the foregoing, the Court should not issue any orders at this stage *limiting discovery*, but should permit staged, sequential discovery as hereinafter recited.

## I   REQUESTED SEQUENTIAL DISCOVERY IN STAGES

The Montgomery parties claim *through their lawyers* that they have "no money" to satisfy the judgment, notwithstanding Dennis Montgomery's receipt of over $5 Million Dollars from Edra Blixseth and her companies since April, 2006, which, in itself, supports an inference of concealment. <u>Montgomery did NOT provide a sworn declaration to the Court relating to his financial ability to satisfy the judgment.</u> Mr. Flynn respectfully requests "broad" post-judgment sequential discovery in <u>stages</u> in order to establish the truth or falsity of that claim, and the availability of monies to satisfy the judgment. In other words, the document discovery requested in Stage 1 should be "broadly construed" and not limited. The depositions in Stage 2 should be conducted with "broadly construed" relevance latitude; and not hindered by objections and refusal to answer based on relevance, privacy or other such limitations. The requested staged, sequential discovery is as follows:

## II   STAGE ONE - DOCUMENT PRODUCTION WITHIN 10 DAYS OF THE ORDER

**1**. The production from Dennis Montgomery, Brenda Montgomery and the Montgomery Trust (The "Montgomery parties") of all tax returns for the years 2006 through the present, including all schedules, W-2's and 1099's. Such production will establish at least their <u>reported</u> income.

**2**. The production from the Montgomery parties of all of their checkbooks, and checkbook stubs and entries for the years 2006 to the present. Such production will help establish their receipt of monies, whether income, loans, gifts, etc. as well as their expenses and expenditures.

**3.** The production from the Montgomery parties of all of their bank statements, cancelled checks and related banking documents for the years 2006 through the present. Such production will help establish their bank deposits, expenditures, wire transfers, cash withdrawals etc.

**4**. The production from the Montgomery parties of all accounting records, computerized and/or in printed or paper format. Such production will help establish their methodology for maintaining their finances as well as provide a basis for forensic examination of their deposits, receipts and expenditures.

**5.** The production from the Montgomery parties of all financial records received from casinos or any other financial institution subject to the Bank Secrecy Act, for the years 2006 through the present, including but not limited to credit, deposit, or check cashing account records, currency transaction reports, ("CTRC"), W-2G's, chip redemptions, and/or any other records received from any casinos. Such production will help establish cash transactions, cash receipts and cash winnings and losses (if any). If cash receipts from casinos are then deposited into disclosed bank accounts, the funds will be traceable through banking channels. If cash is maintained in cash form, or deposited into undisclosed banks, then the deposits and expenditures method of income verification will assist in arriving at funds available to satisfy the judgment. If funds have been transferred without adequate consideration, then such transfers may be set aside.

**6.** The production from Edra Blixseth, Blxware, and Opsrings, all parties to this litigation, of all financial and accounting records related to the payment of all monies or other consideration to the Montgomery parties, their assignees or designees, for the years 2006 through the present, including but not limited to cancelled checks - including the backs of the checks reflecting deposit sources, W-2's, 1099's, loan agreements, promissory notes, cash receipts, books of account, (computerized and on paper) related to any and all payments to the Montgomery parties. Such production will assist in establishing monies received by the Montgomery parties from the Blixseth parties and assist in the deposits and expenditures method of income verification and monies available to satisfy the judgment.

**III    STAGE TWO - DEPOSITIONS WITHIN 20 DAYS OF THE ORDER**

**1.** The depositions of Dennis Montgomery, Edra Blixseth and Jory Russell on all issues and facts relating to the financial relationships of the Montgomery parties and Edra Blixseth.. Mr. Russell is Ms. Blixseth's bookkeeper. The Court should authorize a subpoenas duces tecum to Mr. Russell and Ms. Blixseth to insure the production of documents requested and ordered in Stage One. Montgomery

will not have the cancelled checks from the Blixseth entities from which he was paid. Said cancelled checks reflecting where they were deposited or cashed are critical to a determination of Montgomery's assets.

## IV  STAGE THREE - Within 45 DAYS OF THE ORDER

**1.** <u>If necessary</u>, the issuance of third party subpoenas for deposition testimony and duces tecum production from any and all individuals or entities having <u>financial</u> knowledge or information relating to the Montgomery parties for the years 2006 through the present, based on information acquired in the first two stages. Of particular concern, are casinos where Montgomery may have engaged in cash transactions, and the issuance of subpoenas to said casinos for the purpose of acquiring documents relating to said transactions, which are required by the Bank Secrecy Act Regulations to be maintained.

## V  ARGUMENT

**1.  The deposits and expenditures verification methods upon which the staged discovery is based are established in law.**  The discovery sought is based upon well-established, and numerous, case precedents stretching over many decades to forensically determine the income, and/or receipt of loans, gifts, etc in a particular period, the use of cash deposits to diminish income in a particular period, and the itemization of expenditures in a particular period. *United States v Riggen*, 51 F.3d 283 (9th Cir 1995) [Use of bank deposits method to establish income.] *Percifield v United States*, 241 F.2 225 (9th Cir. 1957) [use of net worth method, and deposits and expenditures method to verify income]

The requested discovery will establish the Montgomery parties receipt of money, the use of cash transactions to hide or conceal money, and the expenditure of monies to verify if everything they received has been expended. The repetitive involvement of the Montgomery parties in large cash transactions, such as taking his $100,000 per month salary check and cashing it in a casino, raises an inference of cash concealment. The claim that they have "no money" after the receipt of over $5 Million Dollars in *two years* raises an inference of cash concealment absent strong evidence that it has all been expended. The requested discovery will establish whether it has all been expended.

1    The discovery has been requested in stages in order to first examine the relevant financial
2 documents, then examine Dennis Montgomery, Edra Blixseth and her bookkeeper regarding the
3 documents to verify their accuracy, completeness, omissions, etc., and/or explain discrepancies in the
4 documents or between the documents and their testimony. A deposition examination of Montgomery
5 will also disclose if he has made transfers, gifts or loans to third parties which may be set aside.

6    Time is of the essence regarding the first two stages of discovery, because of the potential for
7 loss of records, documents, transfers or concealment of funds, and the opportunity to set aside
8 improper transfers. The third stage will become necessary if there are omissions, discrepancies, or
9 funds traceable to sources which have not been disclosed.

10    **2.    The cases and authorities cited by the Liner Firm support "broad discovery" in**
11 **these matters.** The Liner Firm's citations in their Response to the cases at p. 2, lines 16-20, and to
12 Moore's Federal Practice, and to Wright and Miller support Mr. Flynn's staged, sequential discovery
13 plan. Third party discovery, if necessary, (other than Jory Russell) does not begin until the third stage.
14 Edra Blixseth is a both a named party in these cases, and given the facts, is not a "third party" for
15 purposes of discovering hers and Montgomery's financial relationships. The cases of *In re Surety*
16 *Assoc of Am.,* 388 F.2d 412 (2nd Cir. 1967), *Burak v Scott*, 29 F. Supp 775 (D.D.C . 1939), and *Blaw*
17 *Knox Corp. v AMR Indus.* 130 F.R.D. 400 (E.D. Wis. 1990) cited at p. 3 of the Response all support
18 the principle of "broad discovery" and the facts in those cases bear no resemblance to these matters,
19 the fundamental facts recited herein, or the staged, sequential discovery requested.

20    The discovery requested here is as far from a "fishing expedition" as this Court is from a pond
21 in Siberia. The case of *Caisson v County West Bldg Corp.* 62 F.R.D. 331, 334 (E.D. Pa. 1974), cited
22 at p. 3 of the Response, does not support the positions asserted by Liner. Indeed, it stresses the need
23 for "broad" discovery: **"'The scope of post- judgment discovery is broad, 'the judgment creditor**
24 **must be given the freedom to make a broad inquiry to discover hidden or concealed assets of the**
25 **judgment debtor.'"** This principle was recently re-affirmed in this District by Magistrate-Judge
26 Foley in *1st Technology, LLC v Rational Enterprises,* 2007 U.S. Dist. LEXIS 98051. There, the Court
27 incorporated the foregoing quote from *Caisson* in upholding a third party subpoena (here, we have
28

- 4 -

1  not yet reached that stage - Edra Blixseth being deposed in the second stage is a party), ruling that
2  the subpoena "does not have to relate to the claims or defenses in this lawsuit." *Id at 11-14.*

3  In this case, excepting Jory Russell, we do not even reach the subpoena stage, (Blxware and
4  Opspring are parties) until the third stage. Jory Russell is the bookkeeper and has knowledge of and
5  possession of financial records relating to Blixseth's and her entities' payments to Montgomery. The
6  Court should authorize his deposition testimony with a subpoena *duces tecum* for records relating to
7  Montgomery. The cancelled checks of Opsprings/Blxware are critical to determine where montgomery
8  deposited and/or cashed his $100,000 dollar checks.

9  The Montgomery parties Response is overstated, over-reaching, does not grasp the degree of
10 deceit manifested on this record, and just completely ignores the key issues and facts: (i) where is the
11 $5 Million Dollars? (ii) who owns Montgomery's technology and how? (iii) if the technology was
12 conveyed, under what circumstances and what consideration? (iv) is Blixseth contractually liable for
13 the fee underlying the judgment? (v) are Blixseth and Montgomery concealing assets as part of their
14 joint defrauding of Wachovia Bank based on Montgomery's technology? (vi) if Blixseth is liable for
15 the fees and costs, where did the Wachovia Bank's $8 Million Dollars go?

## **CONCLUSION**

17 Based on the staged, sequential discovery plan recited herein, Mr. Flynn is entitled to "broad"
18 post-judgment discovery; and respectfully requests the adoption of the plan recited herein.

20                                                         Respectfully Submitted.

22  January 22, 2009                        /S/ _____
23                                                         Michael J. Flynn