**Michael J. Flynn, Mass. State Bar No.172780**
P.O. Box 690, 6125 El Tordo
Rancho Santa Fe, CA 92067
Tel:   (858) 775-7624; Fax:  (858) 759-0711
*Admitted Pro Hac Vice*
Former Attorney for the Montgomery parties

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA , RENO

| | |
|---|---|
| DENNIS MONTGOMERY, and the MONTGOMERY FAMILY TRUST,<br><br>    Plaintiffs,<br><br>v.<br><br>ETREPPID TECHNOLOGIES, LLC, WARREN TREPP, and the UNITED STATES DEPARTMENT OF DEFENSE,<br><br>    Defendants.<br><br>AND ALL RELATED MATTERS. | 3:06-CV-00056-PMP-VPC<br>**BASE FILE**<br><br>3:06-CV-00145-PMP-VPC<br>3:06-CV-0263-PMP-VPC<br><br>**REPLY TO MONTGOMERY RESPONSE TO MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND/OR FOR CONTEMPT; AND/OR FOR ACCESS TO SEALED FILINGS** |

   **1**. <u>**The Montgomery / Garofalo statements in emails and the Response are contradictory and false**</u>.

   The Montgomery Response is knowingly false and/or inaccurate by either Montgomery, Ms. Garofalo, or both as will be shown herein and proved in the forthcoming Debtor's exam scheduled by the Court for June 28, 2009. The statements of Ms. Garofalo alone relating to what has been produced are <u>knowingly</u> inaccurate as can be determined from the contents of the produced CD. The Court can see from the email chain attached as Exhibit A to her declaration that she repeatedly changed her position, and Montgomery's story, as to the contents of the CD Montgomery produced when she and Mr. Flynn were emailing back and forth. Mr. Flynn has attached that full email chain *in sequence* to his attached declaration as Exhibits A - G.

1

1   As seen in Flynn Ex. A, Mr. Flynn first raised the issues of records mixed together, missing pages based in sequentially numbered records, missing tax returns and Trust documents. Ms. Garafalo responded about 2 and ½ hours later stating:

"The Montgomery Trust tax returns <u>are included</u> on the CD. They should be in a separate folder marked Montgomery Family Trust. You should also be able to locate the other trust documents on the CD.... <u>You have been provided every document called for in the Order</u> that is in Mr. Montgomery's possession, custody or control. If you are unable to understand, the financial information provided, you may wish to hire a forensic accountant <u>who will find the information complete.</u> If the motion is not withdrawn, we will seek the appropriate sanctions." (Underlining Added) Flynn Ex. B.

Thus, within the 2 and ½ hours, Ms. Garofalo presumably looked on the CD and/or checked with her clients to make the foregoing assertions that the trust tax returns were on the CD, that Mr. Flynn should get an accountant who would agree with her about the records being "complete" and threatening sanctions. In fact, there are no trust tax returns on the CD, there are no trust documents on the CD, there are numerous court-ordered documents not on the CD, and not only was the information NOT "complete" as she said, but the most critical evidence, the identity of who Montgomery wrote checks to, ie where the money went, *was intentionally deleted from the bank statements for every statement for every year*. If Ms. Garofalo had looked at the statements, and/or had asked Montgomery what was on the missing pages sequentially numbered and internal to the bank statements, she would have learned that her foregoing statements were inaccurate when she made them as well as her subsequent statements. The fact that she then changed her position *again* in subsequent emails contradicts her prior assertions.

Next, Mr. Flynn then responded *again* that there were no trust tax returns, that there was a discrepancy in her letter relating to the March, 2008 date, asking where the missing Montgomery Family Trust file was on the CD, and that anyone could see that large portions of statements were missing many pages, and asking if they had been mixed together. Flynn, Ex. C

Ms. Garofalo then said that the March, 2008 date on her letter was a typo, (which may the only thing that may be true) and asked if there were post March 2008, records, in response to which Mr. Flynn said he was still reviewing them, that records were mixed together, and that there were no trust

tax returns (Flynn Ex. D). Ms. Garofalo then stated that "Dennis is reviewing the CD", that "some of the files (including the separate trust file) may have been merged with the attorney's eyes only stamp was (sic) placed on the documents. " Ms. Garofalo then said:

> "With respect to trust tax returns, <u>I misunderstood</u> Dennis. As you know, the trust was never formalized, therefore separate returns were not filed by the trust.... Finally, with respect to missing numbers, there were <u>bank statements belonging to Mr. Montgomery's children</u> which although provided to eTreppid in response to a specific request, were not called for in your production. These documents were removed from a copy of the CD provided to eTreppid. You can confirm the numbers with Mr. Peek. Everything else Montgomery was required to produce, and which he has, including all bank statements **and electronic checks** have been produced." (Bold and Underlining Added) Flynn Ex. E.

Mr. Flynn then responded about (a) the "typo"; (b) challenging Ms. Garofalo's three changes in position on the tax returns; (c) the missing records and the Montgomery's children excuse; (d) Montgomery's history, his receipt of millions of dollars and records relating to where the money went; (e) a stipulation to produce to Mr. Flynn what she produced to the Trepp parties; (f) a stipulation for access to sealed filings; and (g) the production of cancelled checks paid to Montgomery by Opspring / Blxware. (Flynn Ex F). For the record, Mr. Flynn has not spoken to Mr. Peek about any of Montgomery's produced documents.

Within ten minutes to Mr. Flynn's email, Ms. Garofalo responded without addressing the specific requested stipulations or issues, effectively terminating the dialogue, after which Mr. Flynn again requested that she re-check her positions with her clients, which she then rejected. (Flynn Ex. G)

The foregoing emails conclusively establish that Montgomery and Ms. Garofalo repeatedly contradicted themselves about what has and has not been produced just within their own emails.

**2. <u>Montgomery has in fact not complied with the Court Order, and his lawyer has effectively admitted it by acknowledging the missing bank statement pages, yet falsely claiming that they have produced "electronic checks." The "Children's Bank Statements" Claim Appears Fraudulent</u>**

Ms. Garofalo may be correct about the "typo," but the Montgomery response conceals critical

documents ordered to be produced; and the concealed documents appear to be the "electronic checks" which Ms. Garofolo explicitly asserts have been produced. They have not. Contempt findings against Montgomery are warranted for intentionally deleting the electronic checks, and sanctions should be imposed against Ms. Garofalo. The Liner Firm just cannot stop misleading this Court. Moreover, all of the production was made on a CD with records intermixed in electronic form, and the Court is intimately familiar with Montgomery's electronic "issues" - to be kind.

The Blxware PR media release issued after the settlement confessing $5 million dollars in judgments to Warren Trepp suggests that Montgomery admitted to the fabrication of the infamous emails accusing Trepp of bribing Gibbons.

In addition to her emailed statements to Mr. Flynn, Ms. Garofalo's statements to the Court on page 3, lines 3 - 21, in her Response are knowingly inaccurate and/or false. She states therein on line 17 that the electronic records produced show "who was paid." She states in her emails cited above that electronic checks were produced. Both statements are false. *Every one of the produced bank statements for the PMA and related accounts have had the electronic checks deleted.* Multiple examples are attached to the Flynn declaration as Exhibit H under seal. All of them will be marked as exhibits in the forthcoming Debtor's exam.

According to the statements, anyone can access an example of how the statements are compiled on [www.wellsfargo.com/pmatour.](www.wellsfargo.com/pmatour.) That tour reveals that the deleted pages *appear* to be those pages containing images of electronic and other checks routinely provided to a customer. Thus, the deleted Montgomery pages according to the tour, appear to have been intentionally deleted because the sequential numbering has been interrupted on each month's statements. These pages would show the specific amounts paid, and most importantly, <u>to whom they were paid</u>, a key part of the Court's "cancelled checks" Order.

All that information has been intentionally deleted from the bank statements. This specifically violates the Court Order requiring the production of "all their bank statements, cancelled checks, and related banking documents for the years 2006 through the present." (Order at p. 2, LL 16-18, Doc. # 968.) This is a knowing and intentional violation of the Order, evidenced by the missing pages

Case 3:06-cv-00056-PMP-VPC    Document 1075    Filed 06/12/09    Page 5 of 10

1  within the produced statements. Remarkably, Ms. Garofalo claims to have had Montgomery
2  "reviewing" the produced CD *before* she responded both to Mr. Flynn and to the Court, in both cases
3  threatening and seeking sanctions. Assuming *she believed Montgomery* that the missing pages
4  constituted *his children's* bank statements, (which makes no sense whatsoever, *ie* that the childrens
5  would be contained within Montgomery's own statements, or even that she would believe him without
6  checking herself)*,* which she told Mr. Flynn - another form of deception to mislead him, how could
7  she *affirmatively* misrepresent that all electronic checks had been produced unless she specifically
8  addressed that issue by checking the CD herself? There are no electronic checks on the CD showing
9  the payees. If *she* never checked the CD and totally relied upon Montgomery, how could *she* in good
10 faith have done that when *she* kept changing her positions - four times - and claim that *she*
11 "misunderstood" Montgomery. It just is not credible; and creates a compelling inference of intentional
12 mis-statement.

13      Mr. Flynn believes that the truth which will ultimately emerge on these and related issues is
14 that the Liner Firm has remained as Montgomery's counsel throughout this entire Dickensian episode
15 of judicial perversion by them *because Montgomery is now threatening them.* This Court is
16 intimately familiar with their already sanctioned misconduct. ( March 31, 2009 Sanctions Order, Doc.
17 # 985.) Mr. Flynn believes that the truth will ultimately emerge that the Liner Firm is fearful of what
18 Montgomery knows about *their* pervasive misconduct, *before and after* Ms. Klar and Ms. Pham
19 departed, extending substantially beyond the already adjudicated sanctions, which represents the
20 proverbial tip of the litigation misconduct iceberg. It is likely that Montgomery is threatening the
21 Liner Firm with exposure, particularly in connection with feeding Ms. Klar the fruits of his computer
22 hacking into Mr. Flynn's and others computers, and related misconduct after their attempt to isolate
23 Ms. Klar, which explains their continued representation of him. It is likely that Montgomery has
24 threatened them and has informed others of his threats.

25      **3. The eTreppid production should be made available to Mr. Flynn.**

26      It is plain that Edra Blixseth, Opspring, Blxware and Montgomery are all linked at the hip and
27 have each aided and abetted each other in connection with the torts perpetrated on Mr. Flynn, the
28

5

1 litigation misconduct perpetrated on the Court already adjudicated in the sanctions order, (Doc. # 985),
2 and misconduct evidenced in the summer long 2008 evidentiary hearings swept under the settlement
3 rug in confessions of judgment executed by *each* of them. Most importantly, they are plainly
4 financially linked. Edra Blixseth, first through her money given to her company Opspring, agreed to
5 pay Montgomery $3.3 Million Dollars, plus $100,000 dollars per month in exchange for
6 Montgomery's delivery of the software now apparently admittedly stolen from eTreppid.  See
7 Agreement dated April 5, 2006, between Opspring and Montgomery attached hereto as Flynn Ex. I
8 reciting the $3.3 million dollars as "loans."

9     As has emerged over the past two years, these so-called "loans" were just disguised payments
10 for Montgmery to deliver his bogus and stolen software to Blixseth, a plan the evidence now shows
11 was concocted by Blixseth, Montgomery and Sandoval in the summer of 2005, *five months* before
12 Montgomery left eTreppid.  Montgomery *and* Blixseth *and* Sandoval lied to everybody, including
13 Mr. Flynn and the U.S. government, as evidenced in Mr. Flynn's now redacted emails about their
14 entire scheme to steal the technology and to use fake software to defraud the government. Opspring
15 then became Blxware within months after Ms. Blixseth ousted Sandoval for alleged embezzlement
16 and made a new deal wirth Montgomery when Mr. Flynn was withdrawing in June, 2007.

17     The Liner Firm created and prepared the documentation for Blxware and its deal with
18 Montgomery transferring the technology to Blyxware. Mr. Flynn then withdrew upon discovery of
19 the entire Montgomery / Blixseth masquerade aided by this Court's release of the FBI reports on
20 April 9, 2007, and ensuing investigation. Given all of the fraud perpetrated by these companies
21 owned exclusively by Ms. Blixseth, which was done with her money, now implicitly admitted in the
22 confessed judgments, they are her alter egos. The moneys paid to Montgomery at issue here are
23 evidenced in hers and Blxware's records. The eTreppid and Flynn collection issues and facts are
24 intertwined. They each have judgments seeking collection from the same sources. Mr. Flynn should
25 receive the documents produced to eTreppid that relate to Montgomery.

26     Additionally, there is another rapidly emerging common ground connecting the Blixseth /
27 Montgomery and the Liner Firm fraud involving the bogus software, violations of this Court's Orders,
28

and injunctions, and an $8 million dollar bank *loan secured by the bogus software.* These issues impact Mr. Flynn's rights of collection from Montgomery and the Blixseth / Blxware / Liner cabal who have aided and abetted his and hers *fraudulent conveyances* designed to deprive Mr. Flynn and others from recovering their judgments. The Court will hear in the forthcoming Debtor's exam the intertwined and illegal relationships of Montgomery, Edra Blixseth, and the Liner Firm, all bound together by fraud *including bank fraud.* Mr. Flynn expects that the evidence resulting from that exam will result in multiple fraudulent conveyance actions.

As recited in the Wachovia adversary complaint filed on June 9, 2009 in Edra Blixseth's bankruptcy, attached hereto as Flynn Exhibit J, Ms. Blixseth and Blxware, using Montgomery's bogus software, reinforced by Liner Firm misrepresentations and direct involvement, defrauded Wachovia bank of $8 Million Dollars. In March, 2008, Ms. Blixseth, aided and abetted by Montgomery and the Liner Firm, falsified her loan application to obtain the $8 Million Dollar loan. She intentionally lied on application questions denying any pending litigation adversely impacting the loan or the security for the loan. The security was the bogus software, itself a fraud. She affirmatively denied the existence of the pending eTreppid litigation involving the bogus software, including the preliminary injunction, involving Blxware and the bogus technology which effectively destroyed the value of the security for the loan.

In the Liner Firm offices, Steven Yankelevitz, Edra Blixseth and others explicitly represented to the loan officer that they had a $100 million dollar "top secret" contract based on the purported technology. The Liner Firm, which was <u>actually representing Blixseth, Montgomery and Blxware</u> in the eTreppid cases, affirmatively acted on their behalf to secure the loan without disclosing the litigation or that there was a preliminary injunction in place at the time of the loan in March, 2008. Mr. Yankelevitz is listed as the contact person on the UCC filing. Liner and Blixseth, and Montgomery and Opspring / Blxware (which was paying him $100,000 per month and had paid him over $5 million dollars) not only failed to disclose the injunction, also failed to disclose the following within their direct knowledge: that Montgomery, who purportedly created the software, was or had been the subject of an FBI investigation involving the theft of the software by Montgomery which

*they* were then litigating in the eTreppid case ; that the eTreppid litigation alleged that Blixseth had aided and abetted said theft which *they* were defending; that the software involved fraudulent testing and test results, conducted by their client Montgomery, and contained in FBI reports *they* had possession of ; that the FBI reports in their possession stated that Montgomery's claims as to the applications of the software appeared fraudulent; that this Court was in the process of discovery being defended by them relating to the software when the loan was applied for and made; and that before the <u>entire</u> $8 million dollars had been loaned to Blixseth and Blxware, the Nevada District Court had begun issuing orders against Montgomery, while the Liner Firm was representing them!.

In June, 2008, WHILE the Nevada District Court was conducting contempt hearings into the theft and production of the software, as well as the fabricated emails, being defended by Liner, Wachovia made the second $ 3 million dollar payment on the loan. Ms. Blixseth and the Liner Firm took that $3 million dollar payment in June, 2008 knowing that this Court was in the process of ordering Montgomery and Blxware to surrender the technology pledged as security for the loan. The $ 8 million dollar loan remains unaccounted for, but appears to have been almost totally diverted from Blxware by Ms. Blixseth for personal use. The loan fell into default when Ms. Blixseth stopped paying all of her creditors while at the same time receiving about $15 million dollars during the same time frame from other lenders, who have also been defrauded.

Within weeks after she received the $5 million and then the $3 million dollar loans, this Court issued contempt Orders in July, 2008 for the failure of Montgomery and Blyxware to surrender the software and imposing penalties of $2500 per day until surrender. None of these facts were disclosed to Wachovia or other lenders. This Court may recall that Ms. Blixseth knew and attended the hearings involving Montgomery and Blxware in the Nevada District Court "to support Dennis" Montgomery relating to Montgomery's theft of the software, and which then led to all of them confessing $25 million dollars in judgments to eTreppid Technologies. The contempt Order effectively determined without a finding at that time, (which would have come later) that Montgomery had taken the software - aside from legal issues relating to his right to do so. But the confessed judgments in September, 2008 within approximately 60 days of receipt of the second payment on the

1 loan in June, 2008 ($3 million dollars) foreclosed those findings. None of these material facts were
2 disclosed to Wachovia.
3     The Wachovia loan proceeds coupled with tens of millions of dollars of similar frauds are
4 unaccounted for. The forthcoming Debtor exam should expose some of the facts relating to these
5 issues. As a judgment creditor, neither Montgomery or the Liner Firm should be allowed to conceal
6 and hide behind unilateral production to the Trepp parties of documents involving Montgoemry.
7     The same arguments apply to the sealed records relating to the eTreppid filings which are
8 unknown to Mr. Flynn; and which are apparently related to the production of documents and / or the
9 apparent contract with the government. Mr. Flynn is entitled to know what the Trepp parties know.

## CONCLUSION

11 In sum, Mr. Flynn respectfully requests the following relief. That the Court Order:
12 1. The immediate production of all documents previously ordered to be produced pursuant to the
13 Court's #968 Order, including the missing pages from the bank statements; and that the Montgomery
14 parties be held in contempt for failing to comply with the Court's previous Order.
15 2. The immediate production of all financial documents relating to the Montgomery parties that have
16 already been produced to the eTreppid parties.
17 3. The production of all financial documents relating to the Montgomery parties that the Court has
18 ordered to be produced to the eTreppid parties pursuant to its Order dated May 26, 2009, (Doc. #
19 1054).
20 4. The disclosure of and/or access to all sealed filings relating to the government contract referenced
21 in Docket No. 1011; and access to and/or disclosure relating to any payments made pursuant to said
22 contract, or to be made.
23 5. The production of the front and back of all cancelled checks paid to the Montgomery parties by
24 Opspring, Blxware, or any other entity controlled by Edra Blixseth from 2006 to the present.
25 6. For the payment of attorneys fees relating to the preparation and filing of this Motion.

Respectfully submitted,

/S/_____

Dated: June 12, 2009                                           Michael J. Flynn, Esq.

**CERTIFICATE OF SERVICE**

I, Michael J. Flynn, am an attorney admitted pro hac vice in the U.S.D.C. of Reno in the related civil cases, No. 3:06-CV-00056 and 3:06-CV-000145. I am over the age of 18 years and not a party to this action.

I am familiar with the practice for the collection of mail, delivery of hand-deliveries, process of facsimile, the practice of mailing, and e-filing.

On June 12, 2009, I caused the foregoing documents (Motion to Compel and Exhibits), to be e-filed to attorneys of record in this case, and the sealed exhibit to be emailed to Ellyn Garofalo

/S/_____

Attorney Michael Flynn