1  **Michael J. Flynn, Mass. State Bar No.172780**
   P.O. Box 690, 6125 El Tordo
2  Rancho Santa Fe, CA  92067; *and*
   One Boston Place, Suite 240
3  Boston, MA  02109
   Tel:    (858) 775-7624; Fax: (858) 759-0711
4  *Admitted Pro Hac Vice*

5

6                     **UNITED STATES DISTRICT COURT**

7                          **DISTRICT OF NEVADA**

8
   DENNIS MONTGOMERY, and the          )
9  MONTGOMERY FAMILY TRUST,            )        3:06-CV-00056-PMP-VPC
                                       )        **BASE FILE**
10          Plaintiffs,                )
                                       )        3:06-CV-00145-PMP-VPC
11 v.                                  )
                                       )
12 ETREPPID TECHNOLOGIES, LLC,         )    **RESPONSE OF  MICHAEL FLYNN <u>TO</u>**
   WARREN TREPP, and the UNITED        )    **<u>THE OBJECTIONS OF THE MONTGOMERY</u>**
13 STATES DEPARTMENT OF DEFENSE,       )    **<u>PARTIES  RE SANCTIONS</u>**
                                       )    **<u>(DOCKET # 985)</u>**
14          Defendants.                )
   _____ )
15                                     )
   AND ALL RELATED MATTERS.            )
16 _____ )

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS.**

2

3   I.   INTRODUCTION                                                           1

4

5   II.  ARGUMENT                                                               4

6        1.   The Accurate Dates, Facts and Chronology Prove that the "War" Was

7             Started, and Pursued with a Vengeance, by Liner, Montgomery and

8             Edra Blixseth to "Crush" Mr. Flynn.                               4

9             (a)   The Motion to Withdraw - Montgomery Response - Sue Mr. Flynn  7

10            (b)   The Perjured Declaration and the Documents Delivered on

11                  August 8, 2007.                                             7

12            (c)   The Court's Learning Curve.                                 8

13            (d)   Mr. Flynn's Learning Curve.                                 8

14            (e)   Liner's Knowledge of Montgomery's Perjury Was Complete in July, 2007 - No

15                  Learning Curve Was Required to Initiate Its War.            9

16       2.   The Liner Conflicts and Complicity in Montgomery's Perjury  Undercut the

17            Objections They Filed for Montgomery.                            13

18       3.   Montgomery's September 10, 2007 Declaration is Perjured. Judge Cooke's Findings

19            are Detailed, Based on Percipient Evaluation, Conclusive and Dispositive. 16

20       4.   The Sanctions were "Reasonable" and "Sufficiently Itemized."     25

21       5.   The Court did *Not* "Err" by Imposing Sanctions Jointly and Severally.  26

22       6.   Additional Waiver Grounds, Not Cited Above.                      27

23       7.   The Liner Firm's Arguments Relating to "Equity Interests"and Other Denials

24            are False, Misplaced and/or Inapplicable.                        28

25       8.   Attorney Garafalo's Request for a New Judge is Frivolous.        28

26

27  III.  CONCLUSION                                                           30

28

# I. <u>INTRODUCTION</u>

1

2     The Montgomery parties' Objection filed by their omnipresent and conflicted lawyers - the

3 Liner law firm - consists of the same strategic theme for which they have been collectively sanctioned -

4 attack and blame Mr. Flynn for their own misconduct.  In the first sentence of their Objection, they

5 assert that in "or about July 2007, a full scale war erupted" between Mr. Flynn and Mr. Montgomery

6 because Montgomery would not give Flynn an interest in Montgomery's $100 million dollar fantasy

7 technology.  As usual, Montgomery and Liner mislead the Court. They are wrong about *their* dates,

8 *their* chronology, the causes of their "war," and Mr. Flynn's interest in fraudulent technology.  The

9 factual record is clear. Mr. Flynn is the victim of the Montgomery fraud to cheat him and other lawyers

10 out of $630,000 in fees; and the target of the Liner firm's vexatious strategies to "crush him into

11 submission." (Sanctions Order 45:24).

12     Like Montgomery's  al Jazeera, "noise filtered" al Qaida   "target coordinates," which the

13 United States government determined was fraudulent or a scam,  (and technology purportedly used in

14 the <u>war</u> on terror when Edra Blixseth gave the "coordinates"  to Vice-President Cheney in July 2006,

15 and was flatly rejected), and like Montgomery's now admittedly fabricated "bribery emails," and like

16 his now admittedly false March 10, 2008 "FBI Declaration," and his perjured September 10, 2007

17 Declaration, *they* routinely make things up. They point the finger at others - Mr. Flynn and now this

18 Court - to conceal their own misconduct. Their Objection is permeated with bombastic and sarcastic

19 attacks on Mr. Flynn - yet it is Mr. Flynn who has been cheated, and he who complied with the Rules.

20 They did not.  They now want Judge Cooke removed from the case. They give new connotations to the

21 word "outrageous."

22      The legal term "fraud" is descriptive of their collective misconduct.  In order to scoop the $100

23 million dollars in July 2006, when Ms. Blixseth and Montgomery allegedly visited the Vice-President,

24 they fabricated the  "target coordinates" referenced in the Second West Declaration. (Search case #263,

25 doc. # 70). When the government rejected them, Ms. Blixseth initiated a media "war" against "the

26 Republican party" (See emails, sealed, attached to doc.#664,667,683,698).  Their Objections perpetuate

27 their fraud.  It  is permeated with false and/or misleading statements and twisted rhetoric not rising to

28 the level of argument.  They give no transcript or exhibit citations to any of the hearings, declarations

1 or pleadings. In fact, given the true facts as found by Judge Cooke, their Objection is contemptuous.

2 Given their attack upon Judge Cooke requesting removal, it is demonstrative of an arrogance generally

3 associated with some criminal defendants.

4       In Montgomery's and Edra Blixseth's "war," the Liner firm were the joint Chiefs of Staff, Ms.

5 Klar, the General, and Ms. Pham, the Commanding Officer suborning the perjured September 10, 2007

6 Montgomery Declaration. Each and every time they launched a vexatious pleading or false Declaration,

7 it was part of *their* war to attack Mr. Flynn, beginning on August 3, 2007 when they sued him in Los

8 Angeles because he contested *under seal* their right to the client files without posting a bond for the

9 unpaid fees. Their war expanded against this Court in the Spring of 2008 when they repeatedly ignored

10 and violated more court orders requiring discovery. Only when this Court began imposing fines of

11 $2500 per day and the subsequent disappearance of Ms. Klar, was their a tempered shift away from

12 their vexatious arrogance - and then only to shield the Liner firm from liability and damages. The shift

13 in Liner's strategy, blaming Montgomery in the Trepp settlement, itself compels an inference of their

14 manipulative misconduct.

15       What they now call "attorney bickering" is to further cover-up their contemptuous, unrelenting

16 and pervasive misconduct.

17       *Before* they filed their *pro hac* appearances in this Court on August 14, 2007 (Doc. # 233, 234,

18 235) they had the benefit of over *four* months of representing Edra Blixseth in matters relating to

19 Montgomery's technology including the transfer of the technology from Opsprings to Blxware; and

20 they engaged in meetings with Montgomery and formulated their "strategy" for over two months before

21 filing appearances to initiate a war against Mr. Flynn. Ms. Klar even filed a Declaration in July, 2007

22 conditioning withdrawal on the files before she filed an appearance. (Doc. # 210, 213, 214, 220). Their

23 August 3, 2007 "sneak attack" complaint in Los Angeles started their "war" when Mr. Flynn had

24 engaged in no affirmative or aggressive action whatsoever other than to withdraw, and request

25 application of Nevada law *under seal* relating to his fees and files. After filing that complaint, they

26 expanded their war to four separate forums all designed to circumvent Nevada jurisdiction using perjury

27 as their primary weapon.

28       Montgomery and Liner have been collectively sanctioned for "perjury," "contempt," "deceit,"

1   "material misrepresentations," "stunning misrepresentations," "material omissions," "half-truths," and

2   a "vexing pattern" of "litigation misconduct" that the Liner firm "acquiesced to or willingly carried

3   out."  (Order #985, 40:13- 19; 41:1-48:19).  Their Objection is more of the same.

4       The government may have been defrauded of millions of dollars by Montgomery; but except

5   for scrupulous adherence to the law and facts by this Court, as cited in the Sanctions Order, and

6   compliance with the Rules by the withdrawing lawyers, this Court would have been defrauded of its

7   Article III constitutional charge - apply the laws of the U.S. for the purpose of administering justice.

8   The sanctioned parties consistently attempted to obstruct and to undermine the administration of justice

9   by defying Court Orders, filing false and perjured pleadings, and vexatiously employing strategies to

10  carry on their "war." Mr. Flynn and two other lawyers were defrauded of almost $630,000 in fees, and

11  now *two years* of incessant work attempting to fulfill their ethical duties under the Nevada Rules of

12  Professional Conduct, including Rule 3.3, while the Liner firm billed almost $8 million to circumvent

13  the rules and defy Court orders. [1]  Justice mandates the imposed sanctions.

14      Notwithstanding the Liner / Montgomery rhetoric - devoid of fact and law - attacking Judge

15  Cooke, her jurisdiction to decide these issues and facts, her 54 pages of detailed Findings and

16  Conclusions, and Mr. Flynn as their penultimate "target," the only Court to resolve all of these issues

17  is this Court - both the Magistrate Judge, and the Article III Judge.  The facts and circumstances

18  involved herein, not the least of which are the state secrets issues, along with the jurisdictional protocols

19  of 28 U.S.C. §§ 631 *et seq.* mandated that *this* Court - both judges - exclusively control these cases.

20      It is *this* Court and its jurisdiction over the facts giving rise to the sanctions that the Liner /

21  Montgomery cabal sought to defraud, sought to defy, sought to vexatiously multiply its proceedings,

22  and sought to obstruct, through perjury. Throughout these proceedings this Court upheld Judge Cooke's

23

24          [1] Ms. Garofalo and Liner sarcastically belittle Mr. Flynn's "new found interest in the integrity
    of the judicial proceedings [as]ironic" referencing the state secrets privilege and Flynn client files. As
25  stated above, months *before* they appeared, they had the unsealed FBI files including the Second
    Declaration of Michael West exposing the "target coordinate"fraud, all of Montgomery's email files,
26  access to all of the Logar files - almost identical to Flynn's files except for the period pre-dating Flynn's
    appearance on February 7, 2006 at the preliminary injunction hearing.  In July, 2007 they also had Atty
27  DiMare's files. They *knew* Montgomery was a fraud when Flynn did - in late June, 2007.  Thereafter,
    they chose to *use* his fraud to make over $7 million dollars in fees. Flynn chose to withdraw jeopardizing
28  $630,000 in fees to comply with the Rules. See July, 2007 Docket # 's relating to Flynn withdrawal. 203,
    204, 205, 206, 207, 210, 209, 210, 213, 214, 220.  Flynn complied with Rule 3.3. Liner did not.

1  Orders and rulings because it knew from the record that she scrupulously applied the law to the facts
2  in the face of contemptuous misconduct by the Liner firm.   The Liner / Montgomery Objection is
3  *brazen* in its distorted rhetoric; and contemptuous in its underlying themes accusing Judge Cooke of
4  abusing her "inherent powers," failing to make the "requisite findings of the reasonableness" of the
5  Flynn fees, and erroneously imposing "joint and several liability," and seeking her removal (Ob. 2:11-
6  16, 20-21) They accuse Mr. Flynn of being the instrument misleading Judge Cooke. This Court's close
7  attention to these cases over the past two years, and what has transpired, and a careful review of the
8  entire record will compel the conclusion that Judge Cooke's Findings and Sanctions Order must be
9  upheld; and that the sanctions are modest and less than what they deserve.

10                                          **II.  ARGUMENT**

11  **1.        The Accurate Dates, Facts and Chronology Prove that the "War" Was Started, and**

12            **Pursued with a Vengeance, by Liner, Montgomery and Blixseth to "Crush" Mr. Flynn.**

13            Montgomery and Liner  have their baseline chronology wrong on which they hinge their
14  justification to attack Mr. Flynn as the aggressor;  and dishonestly argue that he improperly misled
15  Judge Cooke by accusing Montgomery  of "fraud" and "perjury" and Liner of complicity in his
16  Sanctions Motion. (Ob. 2, 14-16). Most of the sanctioned parties misconduct cited in the Sanctions
17  Order occurred *before* this Court issued  its fee Order on March 24, 2008, (doc. # 540), and was
18  designed to circumvent this Nevada Court's September 4, 2007, October 4, 2007 and October 12, 2007
19  Orders. (Order #985, findings 1-143).

20            The chronology of facts found by Judge Cooke  is precise and important to an analysis of the
21  rhetoric in the Montgomery Objection.  (Order #985, findings "FF" 1-143, p. 41:19-20). This Response
22  will reference the underlying record supporting those Findings in order to further disprove the
23  Objection's primary points.  As recited in the Sanctions Order, until the filing of the Sanctions Motion
24  and Rule 3.3 Motion in mid-April, 2008  the Court did not have all of the facts warranting sanctions.
25  (Order #985, FF #52).  In the fee and file litigation in the Fall of 2007,  Mr. Flynn only filed limited
26  facts, abd then under seal, which he gained from his representation, in order to litigate  the Motion for
27  Fees; and also necessary to defend  against allegations made in the Liner / Montgomery Liner four
28  forum campaign to "crush" Mr. Flynn..

                                                    4

1    At the present, due to the Trepp settlement, the Rule 3.3 Motion became moot, and the summer

2    long 2008 evidentiary hearings relating to the scope of Montgomery's perjury and fraud, and of the

3    Liner Firm's complicity, has never been resolved.  The true facts are that Ms. Pham, Ms. Klar, the Liner

4    firm and Montgomery avoided millions of dollars in sanctions, potential disbarment and even potential

5    indictment by confessing $ 25 million dollars in judgments. That fact speaks for itself and it reflects

6    the magnitude of the penalties they evaded for their appalling misconduct. Their current Objections

7    essentially attempt to cover up the misconduct they concealed by confessing the judgments. This Court

8    should strongly consider attributing subornation charges against Ms. Klar and Ms. Pham and Liner in

9    the context of the perjury findings against Montgomery in the Sanctions Order

10    The Court ultimately decided the Flynn fee motion on March 24, 2008 (doc. # 502).  Throughout

11    these cases, Mr. Flynn, like the Court, was in the middle of a "learning curve," discovering

12    Montgomery's fraud and then Liner's complicity and "stunning misrepresentations" perpetrated with

13    a vengeance and complicity relatively uncommon in civil cases. This is particularly apparent when the

14    attorneys have an unequivocal factual basis to know, as here, that their client was engaged in fraud.

15    The Montgomery technology "fraud" including his seven declarations signed under oath to

16    support his fraud, were *not* first exposed by Mr. Flynn.  On April 9, 2007 this Court unsealed to the

17    lawyers the "Second Declaration of Michael West," (Search Case #263, doc. # 70) along with other

18    FBI reports including those reciting the infamous fake bazooka testing, Montgomery's purchase of

19    "open source code," and Ms. Gray's knowledge that Montgomery never wrote any significant software.

20    (Search case #263, Doc. # 70.) In those reports, the FBI exposed Montgomery's fraud in deceiving the

21    government that his technology was identifying a weapon through software interfacing with a camera,

22    when, in fact, he had the test results "wired" between himself and the keyboard operator.  (Orders, doc.

23    # 142, 147, 159, 162; FBI Reports, doc. # 70 ).

24    Mr. Flynn immediately informed Montgomery and Blixseth, who then sent him to Washington

25    in an effort to keep the matter sealed, based on potential threats to their lives by al Qaida - more fraud.

26    For the weeks after the Court's unsealing exposing the fraud, Mr. Flynn was still trusting (and naive)

27    enough to believe their explanations that it was the Trepp/Gibbons political influence attempting to gain

28    possession of the technology by impugning Montgomery that caused the government to take certain

5

1  positions exposing the al Qaida "target coordinates"; and that their lives were in danger.  Still believing

2  them in late April 2007, Flynn flew to Washington and met with the DOJ asserting the alleged Trepp

3  corruption and threats to their lives. During the same period, at the request of Edra Blixseth, Mr. Flynn

4  wrote multiple drafts of the May 5, 2007 letter to VP Cheney marked under seal in the August 21, 2008

5  evidentiary hearing, and marked as Ex. 1 to Flynn Declaration in support of the Reply to the Motion

6  for Sanctions. The drafts and final version were emailed to Montgomery and Blixseth.  See Flynn

7  invoices for March - June 2007 filed *in camera* in November - December 2007 and not docketed,  in

8  support of the Motion for Fees reciting the weeks of work on this letter and the trip to Washington by

9  Flynn and Carla DiMare.  - part of the $630,000 in fees and costs. See Ex. 1 to Flynn Declaration in

10  support of reply to Motion for sanctions, doc. # 635.

11  The Cheney letter and Washington trip in April - May 2007 were major events - they claimed

12  al Qaida would murder them; and Trepp was stealing the technology.  In April - May 2007, Liner and

13  Klar were representing Edra Blixseth; and had essentially taken over all of her legal affairs, including

14  the filing of a Riverside , California law suit against her ex-husband on May 1, 2007.  The May 5, 2007

15  Cheney letter states on the letterhead: **"ADMITTED ONLY IN MASSACHUSETTS."**  Numerous

16  other letters bearing the same letterhead  admonition were delivered to Klar and Pham on August 8,

17  2007, just three months after the Cheney letter. Ms. Pham and Ms. Klar knew exactly what the

18  letterhead admonition meant months before they filed the perjured declaration.

19  Ms. Pham's contention that Mr. Montgomery allegedly "didn't understand" the difference

20  between "admitted" and licensed," is also contrary to the facts and the law and irrelevant. (Order #985,

21  FF #88-94).  Pham knew. (Id., FF 66-67, 91, 95). Pham and Klar are lawyers. Counsel cannot blindly

22  accept statements that are implausible without investigating or seeking corroboration. *Childs v. State*

23  *Farm Mut. Auto Inc. Co.*, 29 F.3d 1018, 1026 (5th Cir. 1994 ) [interpreting Rule 11]. It is ludicrous on

24  such a material jurisdictional issue supported only by the  perjured declaration they filed, that their

25  client Montgomery "didn't understand" after consulting with them.

26  The Court's April 9, 2007  unsealing accelerated  the "learning curve" experienced by this

27  Court, Mr. Flynn and the government. As of May 21, 2007 when Mr. Flynn  emailed  Blixseth about

28  "controlling" Montgomery, (Blixseth then "fired" Flynn  that night),  it accelerated Blixseth's and

1  Montgomery's learning curve that Flynn was becoming aware of the fraud based on his dealings with

2  the government and subsequent discussions with Montgomery, including Montgomery's pending

3  subpoena to deliver his hard drives containing the "bribery emails" to the Grand Jury.  Mr. Flynn had

4  begun his own investigation resulting in internal discussions  with Montgomery.

5           These discussions ultimately conclusively proved  to Mr. Flynn  that he had a duty to withdraw

6  and duties under Rule 3.3.  The emails, documents  and FBI reports relating to these issues, and the

7  Cheney letter,   and related subjects were in Liner's possession in June 2007, *two* months before they

8  filed appearances. See some of these emails at Docket # 277-284, including the May 21, 2007 email

9  to Blixseth.  They started their war on August 3, 2007 attacking Mr. Flynn  knowing that an almost

10  conclusive  factual basis  existed proving that Montgomery was a perjurer and a fraud, and that his

11  purported technology was a hoax. With this knowledge, they went on a campaign of legal terror.

12           On September 17, 2007, approximately  a month after  their appearances,  the Court unsealed

13  the case, (doc.# 270), along with the aforesaid FBI materials to the public. During the prior month, Mr.

14  Flynn had delivered to them unimpeachable evidence that Montgomery would have to commit perjury

15  for them to use his September 10, 2007 Declaration in order to invoke California jurisdiction.

16           **(a)  <u>The Motion to Withdraw - Montgomery Response - Sue Mr. Flynn</u>**

17           The Montgomery parties and their lawyers attempt to justify their sanctioned conduct by

18  contriving in their Objection yet more fictions to assault Mr. Flynn that are contrary to the established

19  facts. Mr. Flynn  informed  this Court under seal on July 17-31, 2007 - before their "war" started  - in

20  a generic reference without any details or facts in support of his Motion to Withdraw  - which they

21  contested based on the client files - that he had a duty to withdraw under Nevada Rules of Professional

22  Conduct  3.3.  *Three days later*, on August 3, 2007 they started their "war"  by suing Mr. Flynn in Los

23  Angeles based on false statements in their complaint that Flynn falsely led  Montgomery to believe  that

24  he was a California lawyer, *and never informed him that he was only a Massachusetts lawyer.*  If the

25  Liner lawyers had simply gone on line and read some of the pleadings in this case *before* they sued Mr.

26  Flynn, then they would have known that their lawsuit was frivolous and improper.

27           **(b)  <u>The Perjured Declaration and the Documents Delivered on August 8, 2007.</u>** The

28  foregoing lie  turned into perjury in this Court on September 10, 2008 when they filed Montgomery's

7

1  Declaration making the same statements under oath. As of August 8, 2008, a *month before* they filed

2  the perjured declaration in this Court, Ms. Pham, Ms. Klar and Montgomery received conclusive

3  evidence that Montgomery *knew* "throughout the representation" period that Mr. Flynn was not licensed

4  in California. See Reply to Fee Motion, doc. #s 277, 278, 279, 280, 281, 282, 283; Order #985, FF 80-

5  95, and Pham's admission (FF 95 citing Tr. 181 - 182), that she reviewed documents *before* preparing

6  the perjured declaration establishing Montgomery's knowledge that Flynn was not licensed in

7  California. Her testimony on this subject is contradictory and evasive at best. (Order #985, FF 89 - 95).

8        The comprehensive Findings of Fact, docket, declarations, evidentiary hearing and entire record

9  uniformly disprove every "fact" (there are no transcript or exhibit citations), they assert upon which to

10 make their Objections. The bottom line as found by the Court is that they started and perpetuated the

11 "war" on August 3, 2007 by suing Flynn in Los Angeles Superior Court in order to circumvent this

12 court's jurisdiction, while repeatedly violating 28 USC § 1927, and brazenly defying the Court and

13 its Orders. Their vengeance toward Flynn had no bounds then and now. The application of this Court's

14 inherent powers to prevent such manifestly abusive litigation tactics was not only warranted, it was

15 mandatory to stop the Liner firm and Montgomery from making a mockery of our system of justice.

16       **(c)   The Court's Learning Curve.**   The detailed chronology and findings in the Sanctions

17 Order demonstrates a learning curve essential to an analysis of the Order. As the Findings, docket, and

18 emails under seal conclusively establish, (doc. # 277- 283), until Montgomery sued Flynn in the Los

19 Angeles Superior Court on August 3, 2007, all of the prior *three months* of conflicts were *internal* to

20 the parties, *(id),* with no *external eruption,* and there were no issues whatsoever involving Flynn's

21 interest in the now obviously fraudulent technology. (Order #985, p. 9-11, FF  #46-59; e-mails,

22 doc.#277).

23       The dispute arose internally between the parties because of unpaid fees, and disputes over

24 Montgomery's allegations to his attorneys, the parties and the Court. The Court was in the dark. It

25 then evolved to the next stage with the Liner campaign to wage a multi-jurisdictional "war" on Flynn

26 as found by the Court. Even in the fall of 2007, when Liner had caused their "war" to "erupt by

27 attacking Mr. Flynn in four forums across the country, essentially accusing him of criminal conduct,

28  this Court was mostly in the dark. It only surfaced in detail in this Court when Mr. Flynn responded

1   by filing his Motion for Sanctions and Rule 3.3 Motion in mid-April, 2008.

2       **(d) Mr. Flynn's Learning Curve.**  As of April 9, 2007, when this Court unveiled the FBI

3   reports, Mr. Flynn was starting  along the "learning curve" relating to Montgomery's  issues with the

4   truth. He began  conducting  an investigation - independent of Montgomery and Edra Blixseth - which

5   ultimately led to his expressed intent to withdraw in late May - June 2007 as more and more  facts were

6   unearthed.  As the record plainly proves, unpaid fees, Montgomery deceit, and Mr. Flynn's duty to

7   withdraw under Nev. R. Prof. Con. 3.3 led to the withdrawal. See billing records *in camera*  for May -

8   July 2007; see emails under seal as Exhibit 5 to Reply to Fee Motion, docket # 277 and 278 - 283; see

9   Motion to Withdraw, (doc. # 208), and Reply, (doc. # 214 under seal).

10       **(e) Liner's Knowledge of Montgomery's Perjury Was Complete in July 2007 . No**

11   **Learning Curve Was Required to Initiate Its "War."**

12       The Liner Objection filed on behalf of Montgomery  undercuts any vestige of credibility

13   remaining in either them or their clients.  There are  critical dates along *their* "learning  curve," from

14   the inception of their representation in June - July 2007, which conclusively establishes the

15   Montgomery / Liner complicity to defy Court Orders, to file knowingly false, fraudulent and even

16   perjured declarations - not just the September 10, 2007 sanctioned Declaration,  and routinely make

17   false statements in pleadings and in Court hearings. As of July, 2007, they had the benefit of all of

18   Montgomery's files, the Logar Firm's files, and Ms. DiMare's files, including thousands of emails

19   detailing almost every aspect of the cases. The key dates in this chronology  involving specific material

20   facts indisputably in their possession  are:

21   ● April 2007. Liner and Ms. Klar commenced representing Edra Blixseth in all of her legal matters

22   including  litigation involving Ms. Blixseth's ex-husband and her claimed 100 percent ownership of

23   Opspring/Blxware and Montgomery' purported technology.

24   ● June 2007 Montgomery was consulting with Liner and Ms. Klar. Mr. Flynn sent repeated emails to

25   Montgomery expressing his intent to withdraw for unpaid fees and Montgomery's misconduct.

26   ● July 9, 2007. Mr. Flynn files a neutral, generic motion to withdraw.

27   ● July 17 - 31, 2007.  In response to Ms. Klar's declaration and pleadings, Mr. Flynn filed a neutral,

28   generic Response  under seal without  informing  the  Court  of  the  Montgomery misconduct, but

referencing his Rule 3.3 obligations.

● August 3, 2007. Ms. Pham filed the Montgomery complaint against Mr. Flynn in California alleging that Flynn led Montgomery to believe he was a California licensed lawyer; and never informed him that he was "only" licensed in Massachusetts.  Five months before this filing, Montgomery filed his declaration in the search case admitting knowledge of the Flynn bar license facts.

●Before they filed the Los Angeles complaint the Liner lawyers could have easily checked the pleadings in this case on-line, and they would have seen the multitude of pleadings showing their complaint was frivolous and improper.

● August 8, 2007. Liner and Montgomery received indisputable documentary proof that Flynn never led Montgomery to believe he was a California lawyer - in fact they then possessed indisputable evidence *on this Court's dockets* that he explicitly informed Montgomery on February 28, 2007 that he was only licensed in Massachusetts. This docket was hand delivered to Pham and Klar on August 8, 2007 (Sanctions Hearing Ex. 3, 4, 5; Order #985, FF 66, 67, 91, p. 3:3-40:19, 41:6-10).

● August 17, 2007.  Ms. Klar admitted in the withdrawal hearing that she had possession of Montgomery's files and emails. (Order #985, 38:18- 40:19).  Those files and emails contain thousands of emails between Montgomery and Flynn, including those between April 9, 2007 and July 28, 2007 which evidenced Montgomery's proclivity to lie when compared with earlier emails; and contain attachments of documents relating to Montgomery's daily receipt of almost everything in the cases. This admission also proves Liner's possession of the Flynn emails in Evid. Hear Exhibit 5 transmitting Mr. Flynn's February 28, 2007 declaration explicitly stating that Flynn was not licensed in California and only licensed in Massachusetts. They possessed this knowledge weeks *before* they filed the perjured declaration.

● September 4, 2007.  This Court issued its withdrawal Order upholding Nevada law requiring the posting of a bond for unpaid fees in order to obtain client files. The Liner firm knew that this Court had ruled that Nevada law applied to the fees and files; and that to escape Nevada jurisdiction they needed a sworn declaration from Montgomery conferring jurisdiction in California - so they suborned his perjury. (Order #256)

● September 10, 2007. Pham and Klar prepared and secured Montgomery's signature on the perjured

10

1 declaration while in possession of incontrovertible evidence that Montgomery knew that Flynn was

2 "only licensed in Massachusetts." As lawyers reviewing the mountain of documents previously

3 delivered to them by Mr. Flynn, they knew that Montgomery had possession throughout the Flynn

4 representation, including letterheads, that explicitly informed Montgomery of the material facts. As

5 lawyers, they knew that they were suborning perjury. (Doc. # 261)

6 ● October 4, 2007. This Court denied Liner's Motion for Reconsideration ruling that the September

7 4, 2007 Order is "clear and unambiguous." They were invited to file a motion for the files *in this court*

8 under Nevada law. They knew the fees and files were subject to Nevada law; and that Flynn had

9 undertaken representation of Montgomery solely in Nevada under a Nevada *pro hac* admission. (Order,

10 Doc. # 291)

11 ● October 12, 2007. This Court ruled that it had jurisdiction over the fees and files, recited the Court's

12 September 4, 2007 Order, noted the Liner firm's efforts to circumvent it, and ordered the Liner firm to

13 deliver its Order to the judge in Los Angeles presiding over the Liner Writ of Possession Motion

14 scheduled for October 18, 2007. The Court established a briefing and procedural schedule for the fee

15 motion. Liner and Montgomery file no objections. (Order, Doc. # 296)

16 ● October 18, 2007. Klar and Pham repeatedly misrepresented facts to the Los Angeles court hearing

17 their writ of possession. Their misrepresentations are so material and so voluminous, the sanctions

18 Order covers seven pages with Findings (p.25-31), numbers 122 through 140. Rather than repeat these

19 Findings, the Klar / Pham deceit is so manifest from the court transcript cited by Judge Cooke, nothing

20 can be added.

21 ● November 21, 2007. The Los Angeles Superior Court dismissed the Liner / Montgomery case

22 stating: **"The case is before a California court for the transparent purpose of having this court**

23 **countermand the orders of the Nevada District Court. California has no interest in doing so."**

24 Klar and Pham had filed and made all of the same arguments in California they made in their Objection

25 here regarding Mr. Flynn 's contacts with California. That court reviewed these same arguments and

26 alleged facts and effectively concluded that "California had no interest" in Mr. Flynn's involvement in

27 the Nevada cases and its orders in his representation of Montgomery. Judge Cooke highlighted these

28 findings in her Findings of Fact. (FF # 143.)

11

1   ● November - December 2007.  Klar and Pham file and receive numerous *in camera* filings relating

2   to the fee motion, including the fee invoices detailing Mr. Flynn's representation of Montgomery in

3   Nevada; and demonstrating Mr. Flynn's April - June investigation *in detail* relating to Montgomery

4   fraud and deception. They reviewed these bills in July 2007 before they appeared and knew that the

5   objective evidence resulting from the Flynn investigation proved Montgomery's fraud and previous

6   perjury. See in camera fee filings, undocketed.

7   ● March 10, 2008. Liner filed two Montgomery declarations, including the infamous FBI declaration

8   accusing them of stealing and damaging his technology.  Mr. Flynn *knew* it implicated his Rule 3.3

9   duties. The Liner firm knew it was perjured because they had Flynn's and Montgomery's emails and

10   Flynn's bills when he questioned Montgomery between April 9, 2007 and June 24, 2007, particularly

11   emails in late May 2007 relating to Montgomery's subpoena to produce his hard drives to the Grand

12   Jury relating to the "bribery emails."  Only someone participating in the fraud and concealing it would

13   not discern the true facts, and intentionally perpetuate it by filing the March 10, 2008 declaration.  At

14   that point, under the NRPC, Mr. Flynn had a duty to file his Rule 3.3 Motion. Liner was later compelled

15   to admit, on September 5, 2008,  knowing that they and their clients were facing potentially millions

16   of dollars in sanctions,  that the declaration was false and Montgomery was 'mistaken." Their clients

17   confessed $25 million in judgments, while they continued to bill,  rolling up almost $8 million in fees.

18   This Court should modify Judge Cooke's order and impose the additional $200,000 in hourly fees

19   expended by Mr. Flynn and Ms. DiMare sought in the sanctions motion.

20   ● March 24, 2008. Judge Cooke decided the fee motion awarding Mr. Flynn approximately $630,000

21   in fees. The Liner firm and Montgomery did not file any objections to the order. The Liner firm knew

22   then that the Court had rejected their defenses to the fee motion including their jurisdictional defenses.

23   ● April 18 and 24, 2008.  The Motion for Sanctions and Rule 3.3 Motion were filed accompanied by

24   extensive declarations and exhibits The Liner firm learned conclusively that Montgomery was engaged

25   in a  fraud with their other client, Blixseth, and had committed perjury, and that Klar and Pham had

26   suborned it.  The evidence was  indisputable. The subsequent confessions of judgment for $25 million

27   after Liner admitted the falsity of the March 10, 2008 declaration compel, an inference of knowledge

28   on the part of the Liner firm that the previous conduct of its partners, Pham and Klar, was  sanctionable

12

*before* they embarked on the evidentiary hearings and contempt matters in May - August 2008, in which they continued to employ vexatious strategies to "multiply the proceedings."

● May - August 2008.  OSCs issued by the Court for Liner's  continued defiance of Court orders. Evidentiary hearings occur in which evidence accumulates that Liner is continuing to employ vexatious strategies to multiply the proceedings, contemptuously defy orders, and to suborn testimony by Montgomery, later admitted to be false. In July, the Court imposed $2500 per day fines in the face of outright defiance of its Orders.

● September 5, 2008. Notwithstanding Montgomery's sworn testimony in the five days of evidentiary hearings Liner admitted  that the March 10, 2008 declaration of Montgomery is false; and requested a settlement conference.

● September 2008. At the  Trepp settlement conference, Liner's clients, Montgomery, Blixseth and Blxware confess to $25 million in judgments, including $5 million for causing "media damages" to Warren Trepp, notwithstanding Montgomery's previous sworn testimony and multiple declarations.

● January 2009 Flynn settlement conference. The Court has the *in camera* filings. No settlement is reached. The Court later denied Mr. Flynn's Motion for sanctions relating to the settlement issues. (Order, Doc. # 1029)

The Liner firm was in possession of indisputable evidence at all <u>critical</u> dates along this chronology that Montgomery knew Flynn had informed him throughout the representation that he was "only" licensed in California, that the government deemed Montgomery's technology to be fake, and that he had repeatedly lied under oath to this Court with the assistance of Ms. Klar, Ms. Pham and other Liner partners. [2]  Mr. Flynn  filed his Rule 3.3 Motion on April 18, 2008, so as not to prejudice the Court on the Fee Motion; and because Montgomery / Liner had filed four additional plainly false Montgomery Declarations. (Doc. # 540).

---

[2] Ms. Garofalo swears under oath that there are over 600 fraud references in the pleadings. Given the volume of pleadings, declarations, transcripts, the hearings throughout the summer of 2008,  and exhibits, in which Montgomery and his lawyers lied, no less than six false and plainly fraudulent Declarations, and the confession of judgment for $5 million dollars by Montgomery for "media" damages; and $20 million dollars for software related damages - notwithstanding the six false Declarations, and given the Court's Findings of Fact in the Sanctions Order, and subsequent admissions by the Liner firm in the Trepp settlement,  the 600 references may be understated.  Indeed, the magnitude of "fraud" involving and hidden within state secrets matters  may be unprecedented.

**2.** **The Liner Conflicts and Complicity in Montgomery's Perjury Undercut the Objections They Filed for Montgomery.**.

The Liner firm should not have filed the Montgomery Objection. It is a continuation of the "vexing" and "consistent pattern of gamesmanship, misrepresentations, and outright contempt of this court and its orders," of "stunning" and "material misrepresentations" found by the Court in the Order, and violation of the Nevada Rules of Professional Conduct. (Order 37:16-22; 42:3-4) Pursuant to Rule 3.3, they owed the Court a duty to withdraw; and a duty to Montgomery to inform him that they could not continue representation. Prior to the Trepp settlement, they owed duties to the Court on at least *ten* of the critical dates recited above, to comply with Court Orders, refrain from making overtly false statements in the face of incontrovertible evidence, acknowledge their own complicity in Montgomery's fraudulent statements *before and after* making them, and to refrain from continuously pursuing vexatious strategies defying not only multiple Court Orders but multiple warnings over a period of 12 months to cease and desist.

At the present time, and for purposes of filing an Objection for Montgomery, knowing that they have been jointly and severally sanctioned with him, they *know* that any factual representations *they* make on behalf of Montgomery are not credible; and conflicted by their collective misconduct with him. They are also conflicted by the apportioned sanctions. Yet they continue representing him without apparent compensation (according to Montgomery's latest sworn statements, he has no money, no job, and no assets ) in order to conceal their own participation in their joint and several misconduct. Yet they *know* that Montgomery received a total of over $5 million from their other client, Edra Blixseth, which should have been used to pay Mr. Flynn's legal fees and the sanctions. In the process, Liner has billed approximately $8 million in fees to mount an unfounded and vexatious "war."

The Liner firm's filing of the Montgomery parties Objections is conflicted based on the Findings of Fact in the Sanctions Order. (Order # 985). Their joint and several liability with their client for *their* adjudicated unethical conduct should have prohibited them from continued representation.

Their sanctioned violations of the ethical rules encompasses *their* "war" based on a failed strategy of deceit, material misrepresentations, material omissions, manufactured evidence, fraud on the court, and perjury against Mr. Flynn to "crush him into submission." (Sanctions Order ["Order"]

14

at 43:6-9; 44:18 - 48: 7)  As found by Judge Cooke, they have engaged in "stunning misrepresentations of this Court's Orders." (Order 42:3-4).  Their "war" has no place in our jurisprudence.  The sanctions imposed by Judge Cooke are exhaustively supported in the record with clear and convincing evidence; and in these circumstances are mandatory to preserve confidence in our system of justice.  (Order, 47: 11 - 49:17).  The Court should afford little if any weight to representations in their Objections they now make for Montgomery.

In the August 21, 2008 evidentiary hearing, Judge Cooke expended almost ten hours weighing the testimony, credibility and appalling contradictions, evasions, deceptions and excuses of Ms. Pham and Montgomery.  Judge Cooke examined Ms. Pham with detailed and specific questions. A careful review of that record and the exhibits introduced therein, along with the Motion for Sanctions, Reply and accompanying declarations and exhibits, establishes beyond doubt, that this Court must affirm each and every finding and conclusion of Judge Cooke's Sanctions Order.  The collective evidence recited in Judge Cooke's findings, based on hearing the actual testimony of Montgomery and the Liner firm's representative - its partner - Ms. Pham, cannot with any rational analysis, be disputed.

Judge Cooke defined the Liner / Montgomery "war" as "scorched earth litigation tactics that undermines citizens' confidence in our courts and our system of Justice." (Order. # 985, p. 48:3-6.). There is no other logical conclusion.  The Liner effort to blame Mr. Flynn smacks in the face of the Court's findings.  That is what Judge Cooke painstaking concluded after almost *two years* of work.  The record conclusively supports the nationwide judicial effort to curb deceit, manufactured evidence, fraud on the courts, and even perjury, all growing with alarming frequency in this country.  The Montgomery / Liner continued strategy in their Objection provides more evidence for *this* Court to justify the sanctions*, and consider increasing them.*  Montgomery's current sworn status of no job, no income and no assets (doc. # 1084 in connection with pending motions to compel) as a "brilliant" software designer compels a finding that his purported "noise filtering" technology deciphering al Qaida "target coordinates" is a hoax. If it were true, given the money spent in the war on terror, Montgomery would be a billionaire and the DOD would be treating him like Einstein. Blixseth's recently unsealed payments to Montgomery of $600,000 payment in February, 2009 (doc. # 1085-1087) also cast doubt on Montgomery's sworn statements about his current financial status. The payments may also evidence

1    a cover-up of their collective misconduct.

2         The client file issue is a red herring. As seen in the Responses to the Klar and Pham Objections,

3    Montgomery had possession of the client files from Carla DiMare, from the Logar Firm, from the on-

4    line docket and in thousands of emails as Klar admitted in response to a question of Judge Pro on

5    August 17, 2007. (Order, #985, FF # 68, p.38:18-40:19). When the Liner firm was proffering that

6    excuse, Montgomery was in fact not deprived of any defenses, he was not entitled to the Flynn files

7    under Nevada law, he had received over $4 million dollars from Blixseth as of September 2007, he was

8    receiving $100,000 per month as part of his scam - thus able to pay the fees, (Flynn Dec. doc.#904,

9    par.4 and Ex. 1[Montgomery testifies he received $100,00 per month as of June 2008]); and it was

10   imperative for *this* Court to adjudicate all of the issues relating to the fees, files, and sanctions, given

11   the state secrets issues underlying these cases.

12        Montgomery and Liner injected the "inflammatory" issues into these cases by their pattern of

13   abusive litigation tactics as found by Judge Cooke *during the fee motion proceedings* and in their effort

14   to circumvent Nevada law and Court orders on the files. Montgomery and Liner made their own bed

15   of deceit, fraud and patterned misconduct - not Mr. Flynn. The unsealed FBI reports and subsequent

16   government disclosure of Montgomery's al Qaida claims in Agent West's unsealed declaration, the

17   now admittedly false, sworn statements of Montgomery in his March 10, 2008 FBI declarations

18   submitted by Liner knowing his pattern of deceit - that the FBI had stolen and damaged his technology

19   - and the findings of Judge Cooke relating to Montgomery's perjury and Liner's misconduct, all prove

20   that their unrestrained efforts to avoid payment of the fees by relentlessly attacking Mr. Flynn, led the

21   Court to imposing sanctions on motions filed *after* they had engaged in an eight-month "war."

22   Montgomery had millions of dollars to pay the fees - his greed and Liner "scorched earth" strategies

23   were designed to thwart justice.

24   **3.    Montgomery's September 10, 2007 Declaration is Perjured. Judge Cooke's Findings are**

25        **Detailed, Based on Percipient Witness Evaluation, Conclusive and Dispositive**.

26        Judge Cooke observed and evaluated Montgomery under oath at the August 2008 hearing and

27   concluded he was not credible in his denial of the incontrovertible facts and documentary evidence

28   proving perjury. (Order #985, FF # 1-44, 59-67, 80-95, p. 46-48). The Court specifically found that

paragraph seven of Montgomery's declaration stating under oath that Flynn never informed him that Flynn "is only licensed to practice in Massachusetts" was materially false; and that Flynn specifically informed him of this fact on letterheads and in documents he had read, including Flynn's February 28, 2007 declarations; and that Montgomery swore under oath in *his* February 28, 2007 declaration that he had read Flynn's declaration stating this critical fact. (Id., FF #80, 82). The Court found that Montgomery knew that Mr. Flynn was only licensed in Massachusetts and that his testimony about not understanding the difference between "licensed" and "admitted" was "inconsistent and not credible." (Id., FF #86, #85-89). The Court weighed all of the evidence, made detailed Findings and concluded:

> "Finally, the court concludes that Mr. Montgomery's September 2007 declaration contained untrue statements, which he knew were untrue, and that this declaration was filed in bad faith and for the improper purposes of attempting to manipulate these proceedings to gain a tactical advantage, to harass Mr. Flynn, his former counsel, and to subvert orders of this court." (Sanctions Order, 1:25 - 2:3)

Based on the evidence, there is no other conclusion to draw. The proof meets the criminal reasonable doubt standard. The exhibits and testimony of Ms. Pham and Montgomery at the evidentiary hearing, the established and mostly un-rebutted facts in the Motion for Sanctions and Reply - with no declaration from Montgomery, and the totality of evidence support a finding of perjury by not only clear and convincing evidence, but beyond a reasonable doubt. The evidence is the following:

**(a)** The *documentary* proof *repeatedly* submitted to Montgomery's lawyers *before and after* they filed the perjured declaration establishes that Montgomery knew at the beginning of the representation in January - March 2006 that Mr. Flynn was *only* licensed in Massachusetts, had a California residence and then a California partner, and had explicitly discussed the issues relating to his Massachusetts license and California residence with Montgomery: (i) at the beginning of the representation; (ii) at least three times in the presence of others; and (iii) when the government filed a Motion to Disqualify Mr. Flynn from the search case in February, 2007 *based on the specific issues* of a Massachusetts license and a California residence with **NO** license, which Montgomery swore under oath he had read, understood, and opposed. By August 8, 2007, the Liner lawyers had "extensive documentation" from Mr. Flynn which incontrovertibly proved that the California complaint concocted by Klar and Pham just days earlier was a sham. (See Montgomery & Flynn February 28,

1   2007decls., hearing Ex.3, 4, and emails, Ex. 5; Sanctions hearing Ex.3,5,9,15,20,21,23,28,29,30,31,32;

2   Order # 985, FF 66,67,80-95, p. 39:3 - 40:19, 41:6-10; Sanctions Motion, Ex. 7)

3          Montgomery's argument that Mr. Flynn's California connection led him to believe Flynn was

4   a California lawyer, (Obj. 15:20-8), is eviscerated by the admissions in his prior declaration and at the

5   hearing, his inconsistent testimony at the hearing, the irrelevancy of California, and the material

6   significance of the distinction between California and Massachusetts licensure <u>which were directly at</u>

7   <u>issue in *both* declarations.</u>   The material importance lies in the jurisdictional significance to

8   Montgomery and Pham/Klar in order to sue Flynn in California and circumvent Nevada law.  The

9   February 28, 2007 declaration proves Montgomery's explicit knowledge that Flynn was not licensed

10  in California; and that Flynn explicitly informed Montgomery in Flynn's declaration, admittedly read

11  by Montgomery, that he was not licensed in California *five months before Montgomery signed the*

12  *perjured declaration.*  The Court's specific Finding on this disjunctive knowledge supports a finding

13  of perjury. (Order #985, FF#80,  82-83.)  Finding # 82 states:

14          **"The court finds that paragraph seven of Mr. Montgomery's declaration is particularly**
        **important because he attested"[a}t no time did Mr. Flynn ever inform me that he was not**
15      **licensed and is not licensed to practice  in the state of California, <u>or</u> that he is licensed to**
        **practice only in Massachusetts."** (Emphasis added).
16

17          (**b**) Montgomery's February 28, 2007  declaration proves his knowledge beyond doubt of these

18  specific  facts  relating to Flynn's Massachusetts license and NO California license  **five months**

19  **before he  met Ms. Pham and Ms. Klar, and they induced him to sign the perjured declaration**

20  **to circumvent Nevada jurisdiction(** *Id.)*  The documentary evidence of *perjury* herein  not only

21  constitutes proof beyond a reasonable doubt, it  is as conclusive as can be found in criminal cases

22  supporting conviction.  See *e.g., U.S. v. McKenna*,  327 F 3d 830, 838-839 (9th Cir. 2003) [false

23  deposition testimony in civil case sufficient to prove conviction.] Proof of subornation of perjury by

24  the Liner Firm lawyers  also supports sanctions against them. *Mackler Productions v. Turtle Bay*

25  *Apparel, supra*; Flynn Dec. ¶¶ 65-81.

26          (**c**) Among the mountain of documents proving  Montgomery's perjury, and Ms. Klar/Pham's

27  subornation of it, is Mr. Flynn's declaration (Evid, Hear. Ex. 4) filed with Montgomery's February 28,

28  2007 declaration  and emailed to him on February 28, 2007, <u>explicitly informing Montgomery that</u>

18

1   Flynn was only licensed in Massachusetts. ( Emails, Evid. Hearing Ex. 5 ).  That declaration admittedly

2   read by Montgomery (Order # 985 FF # 89 and p 46-48) states:

3       "Both Mr. Stillman and I are licensed attorneys in Massachusetts where the Firm was originally
        based.  Mr. Stillman is licensed to practice in California. Messrs. Sheridan and Tabb, my former
4       partners through 2002, were, like myself, only licensed in Massachusetts.  Mr. Stillman opened
        the West Coast office of the firm in 1992, in conjunction with a highly publicized case which
5       I tried in a four-month jury trial in 1994." (Emphasis supplied; Flynn Dec. Evid. Ex.4).

6       **(d)** The search docket containing this declaration with the language IN CAPITAL LETTERS

7   THAT THE GOVERNMENT WAS  MOVING  TO "PRECLUDE PRO HAC VICE ADMISSION

8   OF MICHAEL JAMES FLYNN"  was hand delivered to Ms. Klar/Pham on **AUGUST 8, 2007**, a

9   month *before* they filed the perjured declaration. (Sanctions hearing Ex. 7 [Aug. 8, 2007 fax]; FF # 66).

10      **(d)**     Notice was given to the Liner Firm on **August 8, 2007** that Montgomery's  then

11  "allegations" in the Los Angeles Superior Court  complaint were false.   On that date, *approximately*

12  *one month before they filed the September 10, 2007 declaration,* Mr. Flynn served the Liner firm and

13  Ms. Pham and Ms. Klar, with the following documents  giving them NOTICE  that the allegations in

14  Montgomery's Complaint that they filed in Los Angeles Superior Court on August 3, 2007,  (which

15  track the foregoing perjured statements in the declaration) were false. (See LA Compl. doc. # 275 -2,

16  Ex. 1; Flynn Dec. in support of Sanction Motion, doc. # 547 ¶ 66-67; documents served on August 8,

17  2007 admitted at Sanction hearing, Ex.7-13).   These documents placed the Liner Firm on notice that

18  no other reasonable conclusion could be drawn except that Montgomery's allegations in the Complaint

19  they  filed on August 3, 2007 in Los Angeles were false.   These documents, (except the search case

20  docket and the a sample of the hundreds of pleadings on file),  are also docketed in this case at docket

21  # 277,  Exhibits 1-2 and 4-5.  Mr. Flynn's emails to Montgomery and to local counsel who were then

22  working with the Liner Firm during the previous two months incontrovertibly  established that

23  Montgomery  had a  pattern of repeatedly lying under oath, and that they had notice of his pattern of

24  lying.  There is just no other rational conclusion except perjury.

25       The documents served on Liner, Ms. Pham and Ms. Klar on August 8, 2007  are:

26  **(i)** Copies of letters  spanning the period of representation  given to Montgomery stating on the

27  letterhead:    "LICENSED   ONLY   IN   MASSACHUSETTS;  or  "ADMITTED   ONLY   IN

28

1   MASSACHUSETTS." (Evid. Hear. Ex. 8). These informed Montgomery that Flynn was "only"
2   licensed and/or admitted in Massachusetts proving that paragraph seven of Montgomery's September
3   10, 2007 declaration is knowingly false; and that Mr. Flynn explicitly held himself out as "only"
4   licensed in Massachusetts.

5   **(ii)** Samples of pleadings given to Montgomery throughout the representation, displaying at the top of
6   the first page of each, *only* a  Massachusetts Bar number for Mr. Flynn. (Evid. Hear. Ex. 9) These
7   pleadings placed Pham and Klar on notice that Mr. Flynn explicitly held himself out as a Massachusetts
8   lawyer and NOT a California lawyer.

9   **(iii)** A transcript of the first hearing attended by Mr. Flynn, with Montgomery sitting right next to him
10  at the counsel table paying rapt attention, of the preliminary injunction hearing on February 7, 2006,
11  just two weeks after he first met Montgomery. The transcript recites local counsel's statements that Mr.
12  Flynn's *pro hac vice* admission would be delivered that day from the Nevada Bar, which had been
13  awaiting Mr. Flynn's certificate of good standing from *Massachusetts.* (Sanction hearing, Ex. 10). The
14  Court specifically found that Montgomery knew or reasonably should have known as of February 7,
15  2006 that Mr. Flynn was a Massachusetts lawyer. ( Order #985, FF # 3-8, 89).

16  **(iv)** Mr. Flynn's *pro hac vice* application *specifically* reciting that Mr. Flynn was only licensed in
17  Massachusetts. (Sanctions hearing, Ex. 11). This placed Klar and Pham on notice in drafting
18  Montgomery's declaration and consulting with him that Flynn was NOT holding himself out as a
19  California lawyer, and *only* holding himself out as a Massachusetts lawyer.

20  **(v)** A complete copy of the *docket in the search case*, (case no. 263), containing the government's
21  Motion to Disqualify Mr. Flynn ( doc. # 110, which was denied as moot at doc. # 122),  based on the
22  *precise issues* recited in the perjured declaration,  to wit, Mr. Flynn *only having a* Massachusetts Bar
23  license, and Boston and California offices, which  were hand delivered  to Ms. Klar/Pham; [3]

24       **(e)** Additional facts and documents  were  given to the Liner Firm again on September 24, 2007
25  that Montgomery's declaration constituted perjury.  The foregoing evidence, plus additional evidence,

26

27       [3] The government plainly filed this Motion as a tit for tat response to Mr. Flynn's support of the
28  Court's  *sua sponte*  OSC to find the government in contempt, which it recited in its Motion.. (Doc. #
    92) The government's Motion was denied as "Moot." (Doc. # 122.)

proving Montgomery's perjury, and Ms. Klar's knowledge of that perjury, were filed with this Court on September 24, 2007 in Mr. Flynn's "Reply" to the Motion for Fees. (Doc. # 277- 281, Exhibits 1 -6.) The additional evidence includes: **(i)** a proposed fee agreement (doc. # 277, Ex. 3) given to Montgomery and discussed with him on February 8, 2006, in the presence of three other lawyers, stating "Only Licensed in Massachusetts." (FF # 9,10,11) **(ii)** Additional emails and drafts of a letter *sent to Montgomery three times in May 2006*, stating "ADMITTED ONLY IN MASSACHUSETTS, which he repeatedly *edited*. The search case docket and the sample of pleadings were the only documents not served again on September 24, 2007.

**(f)** The Liner Firm attempted to "cover up" the perjury evidenced by Montgomery's contradictory February 28, 2007 declaration filed in the search case in a hearing before this Court on November 9, 2007. To put the nail in the coffin regarding Montgomery's perjury, and Ms. Klar's knowledge of it, Ms. Klar tried to cover it up during the week of November 4, 2007, culminating on November 9, 2007 in a "telephonic hearing," (doc. #331), in which the Court unsealed Montgomery's February 28, 2007 declaration, (Doc. # 115 in case # 263), so Mr. Flynn could file it in Los Angeles in reply to Ms. Klar's Opposition to the Motion to Dismiss the LA Complaint. Significantly, throughout the week of November 4, 2007, when her opposition to all of the foregoing evidence (which had also been filed in Los Angeles), was due to be filed, Ms. Klar *opposed the unsealing* of Montgomery's February 28, 2007 declaration filed in the search case, in opposition to the government's Motion to Disqualify Mr. Flynn. Judge Cooke found that the February 28, 2007 declaration proved that Montgomery was lying in his perjured declaration submitted by Ms. Pham and Klar, when he alleged that Mr. Flynn led him to believe "throughout his representation" that he was a California licensed attorney; and that he didn't discover that he was not, until he hired the Liner firm in July 2007.

In his February 28, 2007 Declaration, Montgomery repeatedly swore under oath that he had read and understood the government Motion to disqualify Mr. Flynn *which contained detailed information about Mr. Flynn solely having a Massachusetts license.* (Order #985, FF #39; Gov. Motion, docket # 110 in case # 263). Montgomery said, "[h]aving now read the motion to disqualify my attorney...," ( docket # 115, 2:21), and "[a]s I understand the Motion of the USAO ... to remove Mr. Flynn as my chosen counsel...., (*id.*, 3:3–4), Montgomery then stated that the "recent attempt to

1  disqualify my attorney would gravely damage my constitutional protections." (*Id.*, 8:4-5).   The

2  government's motion to disqualify specifically attacked Mr. Flynn's  Massachusetts license and

3  California residence without a California license, (docket # 110), even though his *pro hac vice*

4  application fully disclosed both *as noted in the October 12, 2007 Order of Judge Cooke in Case No.*

5  *56.*  (Docket # 296).

6       The Liner Firm *knew* from the *search case docket*, In re Search warrant, #3:06-cv-263 -PMP-

7  VPC,  served on them on August 8, 2007*,* that the government Motion to Disqualify Mr. Flynn based

8  in part on his solely having a Massachusetts license was DENIED as moot, (#263 doc. # 122); and that

9  Mr. Flynn's opposition declaration (#263 doc. # 114) fully explained his Massachusetts license and

10  California residence.   Thus,  they  were on NOTICE of the  *specific facts* involving potential perjury

11  a month before they filed the perjured declaration, containing, among other lies: "At  no time did Mr.

12  Flynn <u>ever</u>  inform me that he was not and is not licensed to practice in California, or that he is <u>only</u>

13  licensed to practice in Massachusetts. I <u>only</u> learned of this <u>after</u> I retained new counsel."

14       Montgomery's claim that he *"only"* found out five months later when he met Ms. Klar,  given

15  his prior sworn statements, and the foregoing conclusive documentation, of his knowledge "throughout

16  the representation," can only constitute perjury. Both declarations are executed under oath.  They are

17  materially contradictory. (Order #985, p.  46-48).  Ms. Klar's  opposition to its unsealing in November

18  2007 when Mr. Flynn needed the Montgomery Feb, 28, 2007  Declaration to file in support of his

19  motion to dismiss in Los Angeles reveals an intent to conceal. She knew Montgomery  had lied, and

20  proceeded to try to cover it up.  She repeatedly opposed the DOJ lawyers' efforts, and Mr. Flynn's

21  efforts, to unseal it that week, until the Court did so in the emergency hearing on Nov. 9, 2007; and then

22  she didn't appear in the telephonic emergency hearing - only local counsel appeared who had no basis

23  to oppose the unsealing. (Doc. #331; Order #985, 46:25-47:20). Then, in an extraordinary display of

24  arrogance and bad faith, with the unsealed February 28, 2007 declaration **in hand,** she then submitted

25  irrelevant, ad hominem attacks on Mr. Flynn in her  *in camera* filings on the fees, again without

26  rebutting a single fact dealing with the sanctioned parties knowledge of his perjury.  *(See in camera*

27  filings on fee motion, Oct. 23-Nov. 27, 2007, regarding Flynn's pro hac vice applications in California).

28       **(g)**  The evidence of perjury was served on the Liner Firm <u>SIX</u> Times**.**  In addition to being

docketed and served   in this Court, (doc. # 277, Ex. 1-6), the foregoing documents showing Montgomery's perjury were *also*  filed and/or served on Liner, Pham and Klar  on August 8, 2007; again on September 13, 2007  in opposition to the ex parte motion; again on October 2, 2007 in opposition to the Motion for a Writ of Possession;  again on October 23, 2007 in support of the Motion to dismiss;  again with the San Diego Fee Arbitration Board on September 29, 2007; again with the Massachusetts Bar Counsel on October 30, 2007.  Ms. Klar received copies of them on each occasion. (Doc. # 547-548 Flynn Dec. ¶ 65-81). Thus, she received demonstrable evidence of the perjury  **SIX** times; and **then subsequently** tried to cover it up.

    **(h)**    Montgomery  and his  counsel have  *never*  rebutted any of  these facts  proving Montgomery's knowledge of the bar license facts and his attendant perjury with a declaration from Montgomery.   There is now and never has been any denial in a Montgomery sworn declaration in the face of the foregoing evidence repeatedly delivered to his lawyers beginning on August 8, 2007.  In a civil case, this is an admission. F.R.Evid. 801(d)(2)(B); *U.S. v Geise*, 597 F.2d 1170, 1195-96 (9th Cir. 1979) [admission by silence].  Over the eight months between the filing of the perjured declaration and the filing of the Motion for sanctions, notwithstanding their reliance,  Montgomery and Ms. Pham/Klar  never rebutted a single fact  in any of  the documents or declarations at any time in any forum or in any proceeding proving his knowledge of making false statements under oath. The Liner  firm has repeatedly filed and relied upon  the perjured declaration.

    Montgomery never filed a supplemental declaration in any forum on any of the above cited documents, rebutting any of the documents, the facts contained therein, his possession of them, and/or declarations of the *four* lawyers who have recited specific facts opposing the perjured statements. (Doc. # 277 -281).  This, in itself, is an admission of guilt. See Fed. R. Evid. 801 (d). It also  creates  the inference that Ms. Pham and Ms. Klar  influenced him to commit perjury because further perjured attempts to rebut this evidence,  would compound her complicity and subornation.  Otherwise, they would have filed rebuttals. Again to put the nail in the coffin, even in response to the Motion for Sanctions, *Montgomery did not file a declaration refuting his knowledge.*

    Even at the evidentiary hearing, his testimony was evasive, contradictory, not credible; and consisted of implied admissions by claiming he could not recall material facts when directly confronted

23

with charges of perjury. (Order #985, FF 39-44, 80-89)

**(i)**   Montgomery counsel were required by law to withdraw the perjured declaration and to inform the Court.  The Liner firm's failure to withdraw the perjured declaration, and notify the court of the fraudulent evidence contained therein, as *required* by NRPC 3.3 supports an additional inference of complicity, or subornation in the perjury. Sanctions against the Liner firm are warranted on this basis alone.  Pursuant to Rule 3.3, they were *required* to withdraw the declaration and to notify both courts of its falsity. See *Nix v. Whiteside,* 475 U.S. 157, 168-169 (1986).  They breached this obligation and then perpetuated the *perjury in multiple forums.* They then reinforced it with a malicious attack on Mr. Flynn at the January 22, 2008 hearing on the redaction of his files, in which they made multiple false statements to the Court, while the fee motion, in which they first filed the declaration, was pending. Their failure to withdraw the perjured declaration for the eight month period that the Motion for Fees was pending was a direct violation of Rule 3.3.

In *Nix v. Whiteside,* id. at 168-169, citing Rule 3.3 and the Model Code of Professional Responsibility, it states that these rules do "not merely *authorize* disclosure by counsel of client perjury; they *require* such disclosure." (Italics in original).  The Supreme Court further explicated the obligatory nature of these standards:

> These standards confirm that the legal profession has accepted that an attorney's ethical duty to advance the interests of his client is limited by an equally solemn duty to comply with the law and standards of professional conduct; *it specifically ensures that the client may not use false evidence.* This special duty of an attorney to *prevent* and *disclose* frauds upon the court derives from the recognition that perjury is as much a crime as tampering with witnesses and jurors by way of promises and threats, and undermines the administration of justice. Id., 168-169 (emphasis added).

As found by Judge Cooke, the September 10, 2007 Declaration "directly conflicts" with the Feb 28, 2007 Declaration. (FF 46:12-13).  On August 8, 2007, Ms. Pham read and reviewed the exhibits attached to the removal of the Los Angeles case to federal court, which proved beyond question that Mr. Flynn never led Montgomery to believe he was a California lawyer - in fact just the opposite.  (FF #66-67). The evidence establishes beyond a reasonable doubt that Montgomery was committing perjury when he and Ms. Pham collaborated on his September 10, 2007 Declaration.  Judge Cooke had the benefit of weighing Montgomery's credibility under oath on the specific issue of perjury in connection with the execution of his February 28, 2007 declaration in contrast to his September 10, 2007

24

1 declaration. The Court thereafter made very specific Findings of Fact at Numbers 1-44, 58-67, 80-95

2 and at pages 46-48 of the sanctions Order. The two declarations and the conduct of Montgomery and

3 the Liner lawyers cannot be reconciled. The latter declaration is perjured.

4       In order to shield themselves from liability and damages to the Trepp parties for their rampant

5 litigation misconduct, in September 2008, the Liner firm did admit false sworn statements by

6 Montgomery as "mistakes" and withdrew their sworn charges in Montgomery's March 10, 2008

7 declaration. The evidence therein opposing Montgomery's charges was merely testimonial, without

8 documentation, and comprised a small fraction of the evidence proving falsity as in his September,

9 2007 declaration. On September 5, 2008, in the middle of the hearing which *they requested,* regarding

10 Montgomery's March 10, 2008 declaration accusing the FBI of stealing and damaging his software,

11 (doc. # 467-471), Mr. Sunshine abruptly stood up, admitted Montgomery's statements were false,

12 withdrew the charged FBI thievery, and requested a settlement conference. Montgomery and Blixseth

13 then admitted that Montgomery's emails were fabricated and confessed to a $5million dollar judgment

14 for damaging Warren Trepp in the media; and $20 million dollars for taking the software.

15       In this matter, they are perpetuating and continuing to suborn the perjury, perpetuating their

16 conflicts and complicity in concealing the true facts in order to shield themselves, and perpetuating their

17 violations of the Nevada Rules of Professional Conduct. Given the Sanctions Order, they continue to

18 defy the Court. They continue their pattern of contempt and vexatious misconduct. They should NOT

19 be representing Montgomery in order to carry out their continued vexatious strategies.

20       The Liner Objections filed for Montgomery regarding their complicity in his perjury at pages

21 4-6, 8-10, and 12-17 amount to mere rhetoric. They do not contradict any of the specific Findings of

22 Fact other than making vague, unsupported, ambiguous assertions by Ms. Garofalo who signed the

23 pleading. <u>Indeed, there is not a single transcript citation to any Montgomery or Pham testimony</u>

24 <u>whatsoever, or to a single exhibit, let alone one presenting rebutting evidence</u>. Liner and Ms. Garofalo

25 apparently felt omniscient and immune enough in her perspective of the facts to just fashion her own

26 statements and her own interpretation of Judge Cooke's Findings which she sporadically references.

27 Given the Sanctions Order, the Objection is implicitly contemptuous. Judge Cooke's painstaking and

28 time consuming references to the record in her Findings cannot be displaced by Ms. Garofalo's

1   unsupported, contradictory, self-interested imaginings. The bottom line is that Liner should not have

2   filed the Objections for Montgomery.

3       Putting aside the bombast, the Montgomery / Liner argument on the first 17 pages of their

4   Objection boils down to unsupported, misleading and frequently false, deceitful rhetoric.

5   **4.      The Sanctions were "Reasonable" and "Sufficiently Itemized."**

6       The Liner firm's contention that the fees were not reasonable or sufficiently itemized,

7   misapplies the law. (Obj. 18-19).  Sanctions must be "reasonable" and sufficiently itemized." See *In*

8   *re Yagman*, 796 F.2d 1165, 1184-85; *Hugo Neu-Proler, Co. v. Local 13 Int'l. Longshoremen*, 2000 U.S.

9   App. LEXIS 24825, *6 (9th Cir. 2000) ["What constitutes 'reasonable attorney's fees' is left to the broad

10  discretion of the district court, constrained only by the requirements that attorneys' fees be (1)

11  'reasonable;' (2) limited to fees 'incurred as a direct result of the violation;' and (3) 'limited to what

12  is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated."].

13      Here the Order clearly meets these requirements. First, throughout the Order, it clearly itemizes

14  the sanctioned parties misconduct which unreasonably increased this Nevada litigation.   Next, the

15  monetary sanctions were compensatory and sufficiently itemized.  The Order states that the fees were

16  "associated with the motion for sanctions."  (Order, #985, 51:9-25).  The Order also states that the

17  Court "reviewed all of the papers and ... made certain adjustments." (*Id.*)  The Court reduced the hourly

18  rate requested.  (*Id.*).  The Court also did not award all fees requested, and it reduced costs. (*Id.*).  The

19  Court deducted fees which it did not find were associated with the motion for sanctions, including fees

20  for the "motion to withdraw ..., the retaining lien and similar matters." (*Id.*)

21      The Liner firm cites to *In re Yagman*, 796 F.2d 1165 (9th Cir. 1986).  But in *Yagman* the 9th

22  Circuit criticized a "blanket" award of fees for unspecified conduct, *Yagman* at 1184-85, which is *not*

23  what happened here.  *Yagman* is unhelpful to the Liner' firm's cause because this case is not like

24  *Yagman*.  In *Yagman*, the Court concluded that the district judge did "not determine in any way whether

25  the sanctions award complies with the reasonableness requirement," the court "made no attempt to

26  itemize and quantify the sanctions," and did "not scrutinize" the fees requested, and did not make

27  "specific findings as to the exact misconduct which multiplied the proceedings and the amount of

28  'excess costs, expenses and attorney's fees' occasioned by the misconduct." *Yagman*, 796 F.2d at 1185,

1188.  Here, the facts show that the Court did consider whether the fees and costs were reasonable, scrutinize the fees, and made specific findings. (Order #985, including 1:20-24, 37:4-52:16, findings 88, 101, 111, 112, 116, 126, 133, 137, 139, 140, p. 49:19-52:16).

Finally, Montgomery's ability to pay is a component of Montgomery's deceit and fraud. The record is replete with evidence that Montgomery received over $5 million dollars from Blixseth. See Flynn Dec. doc.# 904, par. 4and Ex. 1. Montgomery testified that as of June 2008, Blxware was still paying him $100,000 per month.  Moreover, Liner and Montgomery did not raise this issue in their opposition to the Motion for sanctions and presented no declarations from Montgomery regarding his finances. It has been waived. Just recently, Montgomery filed a declaration in response to the Trepp parties Motion to Compel  stating he has no money, no assets, no income and no job. Like the perjured declaration, Montgomery's receipt of over $5million dollars will prove to be more deceit. See Exhibit J to Flynn Motion to Compel. (Doc. # 10  )

**5.     The Court did _Not_ "Err" by Imposing Sanctions Jointly and Severally Liable.**

The Liner firm's contention on behalf of Montgomery  that the court erred by imposing sanctions jointly and severally is frivolous. (Obj. 19-20).  The Court correctly found the sanctioned parties, including Montgomery, "jointly and severally" liable.  The Liner firm's attempts to distance itself from its own partners liability by asserting it on behalf of Montgomery magnifies the problem. As discussed in Section 2, the conflicts section, at pages   herein; and  in the Response to the Liner Objections,  so it will not be repeated in full here, sanctions were proper against the Montgomery and the Liner law firm under both § 1927 and the Court's inherent powers; but the continued Liner representation of Montgomery places them in irreconcilable conflicts - they are complicit in Montgomery's perjury - and Montgomery could assert an advice of counsel defense (however weak)  that Pham and Klar instructed him to sign his perjured declaration.

The Court found the Liner firm jointly and severally liable with Montgomery. (Order #985, 52:4-12).  It is discretionary and entirely proper to hold parties  jointly and severally liable for sanctions. _See, e.g.  Univ. Of Nevada v. Tarkanian,_ 110 Nev. 581, 594 (1994) [joint and several fee liability is required whenever joint and several liability is imposed. Rather, we emphasize that the matter of joint is several liability is "purely a discretionary one"];  _Hyde & Drath v. Baker_, 24 F.3d 1162, 1172 (9th Cir.

1  1994) ["we affirm the district court's decision to hold Hyde & Drath jointly and severally liable for the

2  costs and expenses resulting from the failure of the parties to attend the 1991 depositions"]; *Albany v.*

3  *Arcata Ass'n*, 106 Nev. 688, 689 (1990) [district court below imposed sanctions "jointly and

4  severally"—decided on other grounds].

5        Liner's "indivisibility" argument, (Obj. 20) is unintelligible and recognizes the law supporting

6  joint and several liability.  First, the argument is confusing, apparently referencing Flynn when they

7  meant Montgomery. Second, the Court found in painstaking detail that numerous separate acts by all

8  of the sanctioned parties caused the damages awarded in the form of sanctions.

9  **6.**    **Additional Waiver Grounds, Not Cited Above .**

10        (1) The sanctioned parties never objected to the three orders at docket #256, #291, #296,  and

11  therefore their right to now object is waived.  *See Simpson v. Lear Astronics, Corp.*, 77 F.3d 1170, 1174

12  (9th Cir. 1996); *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002).

13        (2) In addition, neither the Liner law firm (or its partners) filed an opposition to the sanctions

14  motion—only the Montgomery parties did—which should waive their rights to protest now.  *See* NV

15  Local Rule 7-2(d) ["the failure of an opposing party to file points and authorities in response to any

16  motion shall constitute consent to granting the motion."] The Liner firm should not be able to bootstrap

17  its Objections into  the Montgomery parties' Objections using them as a tool to shield itself from

18  liability for their collective misconduct with him.

19  **7.**    **The Liner Firm's Arguments Relating to "Equity Interests"and Other Denials are False,**

20          **Misplaced and/or Inapplicable.**

21        The "equity interests" sought before Mr. Flynn's  knowledge of their fraud had sufficiently

22  evolved are irrelevant, and the email they originally referenced in their Response to the Motion for

23  Sanctions was sent partly due to government actions at the time.  They knew there was no signed fee

24  agreement applying California law, and the unsigned draft agreement explicitly stated that Mr. Flynn

25  was only a Massachusetts lawyer and he had to appear on a  Nevada *pro hac vice* admission, which

26  governed the fee and file  issues.  When the "equity interests" were sought Montgomery and Blixseth

27  were  3-4  months behind, and Mr. Flynn did not know he was the victim of a monumental fraud that

28  had been on-going for at least five years. The "learning curve" started after April 9, 2007.  It  was met

1   with non-stop excuses and explanations by Montgomery which served to delay withdrawal and

2   comprehension of the extent of his frauds and deceptions. He and Blixseth claimed al Qaida would

3   murder them. Still believing them, Flynn embarked on a wild goose chase to Washington. Even those

4   explanations fell apart by late, June 2007. (See Reply re Motion for Fees, emails, doc. # 277)

5       The discussed reorganization of Opspring LLC in March - April 2007 resulted from Edra

6   Blixseth firing Michael Sandoval for "embezzlement" on or about March 26, 2007; and the

7   commencement of the Liner firm involvement in the divorce litigation around that time. Mr. Flynn was

8   still being duped. And not paid. Liner's claimed reliance on these distortions and half-truths to

9   minimize Montgomery's perjury is baseless. As the Court found, the *proposed* fee agreement given to

10  Montgomery on Feb. 8, 2006 informed him that Mr. Flynn was "only licensed" in Massachusetts.

11  (Order #985, FF #9-12).

12  **8.    Attorney Garofalo's Request for a New Judge Flounts Standards of Decency.**

13      Citing the infamous *Yagman* case and Judge Real's conflicts with that lawyer, Liner requests

14  appointment of a judge to replace Judge Cooke. That request flounts moral, ethical, legal and plain

15  old standards of human decency. First, based on almost forty years in courtrooms across America, in

16  Mr. Flynn's experience, Judge Cooke should be applauded for her judicious and tempered dealings with

17  the Liner firm, attentiveness to detail, and overall patience in dealing with Ms. Klar and Ms. Pham.

18  Any claim of bias is absurd.. The Court routinely ruled against Mr. Flynn. (See, *e.g.* doc. #1029). In

19  fact, Pham and Klar probably should have been disqualified in late October 2007 for their brazen

20  contempt of this Court's Orders, and referred to the Nevada and California bars before they were able

21  to perpetrate their misconduct and vexatious strategies for another 10 months. Her patience with them

22  was often seemingly contrary to the weight of the pleadings. For example the Trepp parties filed a

23  Motion for Sanctions for Montgomery's perjury in connection with a specific declaration. (Doc.# 343).

24  The Court denied the Motion. (Order, doc. # 521) When the Court rejected that Motion, it appeared that

25  the Liner and Montgomery pattern of fraud, deceit and perjury could not be stopped. But their past

26  success just pushed them further into the contempt proceedings in the summer of 2008, ultimately

27  hanging themselves by their own petard.

28      In forty years of litigating, Mr Flynn has seen much outrageous conduct, corruption, litigation

1   deception, and general impropriety by members of the bar. But Liner's request for a new Judge may

2   take first place on the outrage totem pole.  It is akin to the murderer who has murdered his parents, and

3   then screams for mercy because  he has no parents.  The Liner firm waged an unmerciful  war against

4   Mr. Flynn to "crush him into submission," accusing him of criminal conduct in four different forums,

5   employing non-stop lies, deception, fraud and perjury to cheat him out of his fees and costs while

6   Blixseth paid Montgomery $5 million dollars, and Liner  billed almost $8 million dollars.

7        At the same time,  when Judge Cooke attempted to deal with them and the discovery issues in

8   the Trepp cases, they reacted with impunity and contempt. They now ascribe this "war" to Mr. Flynn

9   and the current environment to "attorney bickering." Should Mr. Flynn have responded to allegations

10  of criminal conduct based on suborned perjury by the Liner firm and being cheated out of $630,000 in

11  fees based on manifest fraud, by not calling it exactly what it is - fraud, deceit and perjury?  If this Court

12  carefully reviews the entire record, the same findings and conclusions made by Judge Cooke will be

13  confirmed - in spades.

14       Given Judge Cooke's judicial temperament in the context of the arrogant contempt of the Liner

15  misconduct  directed at her because she happened to be the Magistrate-Judge assigned to the case with

16  a party whose propensity for perjured declarations is now established in the record, she should be

17  elevated forthwith.  In truth, the sanctions should be twice what she awarded.  Klar and Pham should

18  be indicted for  subornation and  obstruction of justice along with Montgomery for perjury and

19  obstruction. The sanctions are  modest. Judge Cooke was merciful in her Order and the amount of the

20  sanctions. Mr. Flynn should be awarded the entire $360,000 in requested sanctions plus the $40,000

21  in fees for time expended after the Motion for Sanctions was filed.

22       Mr. Flynn hereby respectfully requests that Judge Cooke's Order be modified and increased to

23  reflect the additional time he and Ms. DiMare have had to expend responding to four utterly meritless

24  and contemptuous sets of Objections filled with more half-truths, deceit and frivolous arguments, like

25  Liner's request for a new judge. See *Liteky v, U.S.*, 510 U.S. 540 (1994) [Dissatisfaction with adverse

26  rulings will only suffice to establish judicial bias in the "rarest of circumstances."]; *United States v.*

27  *Reyes*, 313 F.3d 1152, 1159 (9th Cir. 2002); *Hunt v. Pliler*, 384 F.3d 1118, 1126 (9th Cir. 2004).  If the

28  Liner firm's request was granted, particularly in the circumstances of this case, lawyers could lie, cheat,

1  suborn perjury, and when caught, attribute it to "attorney bickering" or a biased judge. It would give

2  firms who routinely use tactics like Liner, a powerful tool to engage in the conduct for which they have

3  been sanctioned. It is a vexatious strategy designed to multiply these proceedings based on a deliberate

4  motive to take advantage of their own wrongdoing. But it is instructive as an implied admission that

5  they need to attack the Court to conceal their own misconduct. Ms. Pham and Ms. Klar should be

6  referred to the U.S. Attorney for subornation of perjury and obstruction of justice.

7  **CONCLUSION**

8  The overwhelming and incontrovertible evidence of the Liner Firm's "transparent" attempt to

9  "countermand" this Court's Orders and jurisdiction and their bad faith tactics *cannot* be reconciled with

10  their Objections, affidavits, or facts showing their knowledge of Montgomery's perjury. It is akin to

11  claiming that *none* of their actions, statements, and pleadings were *intended* to get the fee, file, state

12  secrets issues, the NRPC, and jurisdiction out of this Court and into a California Court - an obvious

13  oxymoron, and improper purpose. That is exactly what they *intended* to do with their writs of

14  possession and relief requested. Their attempt to "wrest jurisdiction away from this court" through a

15  perjured declaration, and "transparent attempt to countermand" its Orders is sanctionable under all

16  sanctioning authority. *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001); *Chambers v. NASCO,* 501 U.S.

17  32, 46, 54 (1991) [sanctions under inherent powers are particularly appropriate for fraud practiced upon

18  the Court]; LR IA 4-1 [court's inherent powers. This Court should also consider further appropriate

19  sanctions.

20  Respectfully Submitted,

21  June 25, 2009                                    /S/_____

22  Michael J. Flynn

23

24

25

26

27

28