1

2

3

4              UNITED STATES DISTRICT COURT

5                    DISTRICT OF NEVADA

6                         * * *
                              )
7    DENNIS MONTGOMERY and the     )
     MONTGOMERY FAMILY TRUST,      )
8                              )
              Plaintiffs,       )        3:06-CV-00056-PMP-VPC
9                              )        BASE FILE
      v.                        )
10                             )
     ETREPPID TECHNOLOGIES, LLC;    )        3:06-CV-00145-PMP-VPC
11   WARREN TREPP; and the UNITED  )
     STATES DEPARTMENT OF DEFENSE, )
12                             )        O R D E R
              Defendants.       )
13   _____ )
                              )
14   AND ALL RELATED MATTERS.       )
     _____ )
15

16          Presently before the Court is the Objections of Liner Grode Stein Yankelevitz

17   Sunshine Regenstreif & Taylor LLP to Order Re: Motion for Sanctions (Doc. #1035) with

18   supporting declaration (Doc. #1036), filed on May 11, 2009.  Interested Party Michael

19   Flynn filed a Response (Doc. #1102) on June 25, 2009.

20          Also before the Court is the Objections of Dennis Montgomery to Order Re:

21   Motion for Sanctions (Doc. #1037) with supporting declaration (Doc. #1038), filed on May

22   11, 2009.  Interested Party Michael Flynn filed a Response (Doc. #1099) on June 25, 2009.

23          Also before the Court is Teri Pham's Objection to Magistrate Judge's Order

24   (Doc. #1040), filed on May 11, 2009.  A supporting letter (Doc. #1050) was filed on May

25   15, 2009, and an errata (Doc. #1051) was filed on May 19, 2009.  Non-Party Deborah Klar

26   filed a Joinder (Doc. #1057) on May 27, 2009.  Interested Party Michael Flynn filed a

Response (Doc. #1098) on June 25, 2009.  Teri Pham filed a Notice of Relevant New Case Law (Doc. #1127) on October 9, 2009.

Also before the Court is the Objections of Non-Party Deborah A. Klar to Findings of Magistrate Judge in Stayed Order Re: Motion for Sanctions (Doc. #1042) with supporting declaration (Doc. #1043), filed on May 11, 2009.  Interested Party Michael Flynn filed a Response (Doc. #1100) on June 25, 2009.  Deborah Klar filed a Notice of Relevant Case Law (Doc. #1128) on October 19, 2009.

**I. BACKGROUND**

This case arises out of a dispute between Dennis Montgomery ("Montgomery") and Warren Trepp ("Trepp") over the ownership of certain computer software codes. During the course of the underlying actions, Montgomery terminated the representation of his counsel, refused to pay his former counsel's attorneys' fees, and sought the return of his client file.  Montgomery obtained new counsel who represented him both in the underlying action and in various efforts to obtain his client file from his former counsel. Montgomery's former counsel ultimately filed a motion for sanctions in this Court against Montgomery and his new counsel for, among other things, their conduct in seeking to obtain the client file in various other forums.  The Magistrate Judge in this action, the Honorable Valerie P. Cooke, held an evidentiary hearing and subsequently awarded sanctions against Montgomery, his new counsel, and new counsels' law firm.  The sanctioned parties object to the sanctions award.

The underlying lawsuits commenced when Trepp filed suit in Nevada state court on January 19, 2006.  (Status Report (Doc. #16 in 3:06-CV-00145-PMP-VPC).)  On January 31, 2006, Montgomery filed suit against Trepp in this Court.  (Compl. (Doc. #1).)[1]

---

[1] Citations are to the base file docket in this case, 3:06-CV-00056-PMP-VPC, unless otherwise indicated.

In the state court action, Montgomery asserted a third party claim against the United States Department of Defense.  (Notice of Removal (Doc. #1 in 3:06-CV-00145-PMP-VPC), Ex. 1.)  The Department of Defense removed the state court action to this Court.  (Notice of Removal (Doc. #1 in 3:06-CV-00145-PMP-VPC).)  The Court subsequently consolidated these two actions.  (Mins. of Proceedings (Doc. #123).)

Prior to removal to this Court, the state court held a preliminary injunction hearing.  (Snyder Decl. (Doc. #33 in 3:06-CV-00145-PMP-VPC), Trans. of Proceedings.) At that hearing, Montgomery was represented by local counsel Ronald Logar ("Logar") and Eric Pulver ("Pulver"), as well as Michael Flynn ("Flynn"), who was appearing pro hac vice.  (Id.; Verified Pet. for Permission to Practice Pro Hac Vice (Doc. #9 in 3:06-CV-00145-PMP-VPC).)  Flynn's pro hac vice petition identified a Massachusetts bar number for Flynn, and listed his address in California.  (Verified Pet. for Permission to Practice Pro Hac Vice (Doc. #9 in 3:06-CV-00145-PMP-VPC).)  At the hearing, which Montgomery attended in person, Logar introduced Flynn to the state court as "a member of the Massachusetts Bar," indicated that Flynn had applied for pro hac vice status, and stated that the Massachusetts bar had sent a certificate of good standing to the Nevada State Bar.  (Id. at 5-6.)  Logar requested the court permit Flynn to appear at the hearing, and the state court permitted it.  (Id.)

Around this same time period, the Federal Bureau of Investigation sought and obtained search warrants to search Montgomery's house and several storage units. (Application & Aff. for Search Warrant (Doc. #1, #4, #6, #8, #10, #12 in 3:06-CV-00263-PMP-VPC).)  Montgomery subsequently filed a motion to unseal the search warrant affidavits and for the return of his property.  (Mot. to (1) Unseal Search Warrant Affs.; (2) For the Return of Property; and (3) For the Segregation and Sealing of All Attorney-Client & Trade Secret Materials Seized (Doc. #21 in 3:06-CV-00263-PMP-VPC).)

///

1    In the search warrant proceedings, the United States moved in February 2007 to

2  strike pleadings filed by Flynn and to preclude Flynn's pro hac vice admission in the case.

3  (Gov't's Mot. to Strike (Doc. #110 in 3:06-CV-00263-PMP-VPC).)  The Government

4  contended that Flynn was admitted proc hac vice only in the related civil suits, not in the

5  search warrant proceedings.  (Id. at 2.)  The Government further contended that Flynn

6  should not be admitted because his pro hac vice petitions in the consolidated civil actions

7  contained what the Government asserted were misleading statements.  (Id.)  Specifically,

8  the Government argued that although the application stated Flynn was licensed only in

9  Massachusetts, Flynn actually maintained a residence and phone number in California, and

10 practiced in California.  (Id. at 2-4.)  The Government included as an exhibit a February 7,

11 2007 letter which Flynn wrote on Montgomery's behalf to certain high ranking government

12 officials.  (Id., Ex. 1.)  On the letterheard beneath Flynn's name it states "admitted only in

13 Massachusetts."  (Id.)

14    Flynn, Logar, and Pulver opposed the motion on Montgomery's behalf.

15 (Montgomery's Opp'n to the Gov't's Mot. to Strike (Doc. #113 in 3:06-CV-00263-PMP-

16 VPC).)  In support of the opposition, Flynn filed a declaration in which he averred that he is

17 a member of the Massachusetts bar, he maintains residences in both Massachusetts and

18 California, and he maintains an office address in Boston, Massachusetts.  (Flynn Decl.

19 (Doc. #114 in 3:06-CV-00263-PMP-VPC) at 1-3.)  Flynn also included two letters he sent

20 in February 2007 on Montgomery's behalf to various government officials which stated

21 beneath his name that he was admitted only in Massachusetts.  (Id., Exs. 1-2.)

22    Montgomery also filed a declaration in support of the opposition, which hereafter

23 will be referred to as the February 2007 Declaration.  (Montgomery Decl. (Doc. #115 in

24 3:06-CV-00263-PMP-VPC).)  Montgomery averred, among other things, that he had read

25 the motion to disqualify Flynn, that he had read letters Flynn had sent on Montgomery's

26 behalf to government officials, that the Government's attempt to remove Flynn "would

gravely damage" his constitutional protections, and that Flynn was Montgomery's counsel of choice due to Flynn's "experience, integrity, and litigation expertise." (Id. at ¶¶ 4, 13-14.)[2]  Montgomery attached as an exhibit to his declaration a March 1, 2006 letter Flynn sent to various government officials on Montgomery's behalf. (Id., Ex. 1.)  The letterhead states beneath Flynn's name, "only admitted in Massachusetts." (Id.)

This Court denied the motion to strike Flynn's filings in the search warrant proceedings.  (Order (Doc. #122 in 3:06-CV-00263-PMP-VPC).)  The Court also ordered the entire search warrant proceedings, which up to this point had been sealed, to be unsealed subject to objections by the United States regarding the states secret privilege and objections by the parties to the civil action regarding trade secrets or other privileges.  (Id.) The Court set forth a procedure by which the United States would complete review and redaction of the privileged material in the search warrant proceedings, after which the parties to the civil cases would have access to the redacted materials.  (Order (Doc. #147 in 3:06-CV00056-PMP-VPC).)  The parties then would have a certain period of time within which to review the materials and assert any objections to the unsealing of any unredacted materials.  (Id.)

Montgomery filed an objection to the Government's decision not to redact certain information which Montgomery contended was protected by the states secret privilege. (Montgomery's Opp'n to the Gov't's Designations of State Secrets & Classified Information in the Search Warrant Case File (Doc. #168).)  At a hearing on the parties' various objections, Flynn proposed submitting a declaration signed by Montgomery under oath which stated, among other things, that an attached exhibit was a true and correct copy of an email.  (Mins. of Proceedings (Doc. #188).)  The Court permitted the Trepp parties

---

[2]  The February 2007 Declaration contains two paragraphs numbered "13" and "14." The Court refers to paragraphs 13 and 14 contained on page 8 of the Declaration.

and the Government to review the declaration and file any objections thereto.  (Mins. of

Proceedings (Doc. #188).)  The Government determined that Montgomery's declaration

contained material subject to the states secrets privilege and the related protective order

entered in the case, and provided redactions thereto.  (United States' Notice of Filing (Doc.

#197).)  The Trepp parties also filed an objection, claiming that the email which

Montgomery averred was a "true and accurate copy" of the original was fabricated.  (Defs.

eTreppid Tech., LLC & Warren Trepp's Notice of Obj. to the Public Filing of a Fabricated

Document by Dennis Montgomery (Doc. #198).)

On July 9, 2007, Flynn and out-of-state co-counsel Carla DiMare[3] ("DiMare")

moved to withdraw as Montgomery's attorneys.  (Ex Parte Mot. to Withdraw as Counsel for

Montgomery (Doc. #204).)  Flynn and DiMare gave as grounds for their withdrawal that

Montgomery breached an obligation for payment of fees and engaged in conduct that made

continued representation unreasonably difficult.  (Id.)

In response to Flynn's motion to withdraw, the United States requested Flynn's

withdrawal be subject to various conditions related to the protection of states secrets

privileged materials that may be contained in Flynn's client files.  (United States' Response

to Ex Parte Mot. to Withdraw as Counsel for Montgomery (Doc. #209).)  Montgomery,

through Logar and Pulver, indicated he did not oppose Flynn's motion to withdraw, and he

already had retained the law firm of Liner Yankelevitz Sunshine & Regenstrief LLP ("Liner

Firm") to substitute into the case.  (Pls.' Reply to Michael J. Flynn's & Carla A. DiMare's

Mot. to Withdraw & the United States' Response Thereto (Doc. #213).)  Montgomery

opposed the Government's efforts to place as conditions upon Flynn's withdrawal a

governmental review of the client file because such a review would intrude on attorney-

client privileged materials.  (Id.)  Montgomery also made reference to Nevada and

---

[3] DiMare was admitted pro hac vice in this Court on February 6, 2007.  (Order (Doc. #113).)

6

1   California professional rules of conduct which he contended would require Flynn to turn

2   over the client file to Montgomery.  (Id.)  Montgomery supported this filing with a

3   declaration from Deborah Klar ("Klar"), a partner of the Liner Firm.  (Id., Klar Decl.)  Klar

4   averred that the Liner Firm was ready, willing, and able to substitute into the case upon

5   receipt of the client file from Flynn.  (Id.)  Klar requested the Court reject the Government's

6   requested conditions on Flynn's withdrawal and "require Mr. Flynn and Ms. DiMare to turn

7   over all client files in their possession."  (Id.)

8           On July 31, the Court set an August 17 date for hearing Flynn's motion to

9   withdraw.  (Min. Order (Doc. #223).)  On August 1, Montgomery filed a notice with the

10  Court indicating that Flynn and DiMare had been terminated as counsel of record.  (Notice

11  of Termination of Counsel (Doc. #227).)

12          On August 3, Klar and another partner of the Liner Firm, Teri Pham ("Pham"),

13  filed a Complaint in Los Angeles Superior Court on Montgomery's behalf against Flynn

14  (the "LA Action").  (Request for Judicial Notice (Doc. #262), Ex. 1.)  The Complaint

15  alleged that Flynn led Montgomery to believe that Flynn was licensed to practice law in

16  California, and that "[t]hroughout the course of his representation, Flynn held himself out to

17  [Montgomery] as a California lawyer."  (Id.)  The Complaint further alleged that Flynn

18  refused to return the client file and that Flynn has "threatened to disclose, and has disclosed

19  confidential and privileged attorney-client communications to others."  (Id.)  The Complaint

20  sought as relief a preliminary injunction requiring Flynn to return the client file and

21  enjoining Flynn from disclosing privileged communications to any third party.  (Id.)

22          On August 6, Flynn removed the LA Action to the United States District Court

23  for the Central District of California and sought transfer to this Court.  (Request for Judicial

24  Notice (Doc. #275), Ex. 2.)  Two days later, Flynn lodged a number of exhibits regarding

25  his representation of Montgomery which he contended demonstrated he consistently

26  represented himself as an attorney licensed only in Massachusetts.  (Tr. (Doc. #873) at

1    217).)

2           On August 14, the Liner Firm entered an appearance in the action on

3    Montgomery's behalf, subject to the approval of a pro hac vice application.  (Notice of

4    Assoc. of Counsel (Doc. #236).)  That same date, Liner Firm partners Klar and Pham filed

5    petitions for pro hac vice admission, and the Court granted the petitions.  (Verified Pets.

6    (Doc. #233, #234); Orders (Doc. #237, #239).)

7           Also on that same date, Flynn filed a declaration in this Court referencing the LA

8    Action and attaching as an exhibit Flynn's motion to dismiss that action against him.

9    (Flynn Decl. (Doc. #240).)  In the motion to dismiss in the LA Action, Flynn identified

10   various statements in the LA Action Complaint which he contended were false, specifically

11   with respect to Montgomery's knowledge about Flynn's status as admitted to practice only

12   in Massachusetts.  (Id., Ex. 1.)

13          On August 17, Flynn and DiMare filed in this action notices of liens and/or

14   retaining liens for unpaid fees and costs.  (Notices (Doc. #243, #245.)  Flynn asserted over

15   $600,000 in unpaid fees.  (Id.)

16          That same date, the Court held a hearing on Flynn's motion to withdraw as

17   Montgomery's counsel in this action.  (Mins. of Proceedings (Doc. #247).)  At the hearing,

18   the undersigned indicated the Court was aware of the LA Action, but indicated the Court

19   did not have "the details of that and don't know to the extent to which I have to."  (Tr. of

20   Hrg. (Doc. #267) at 4-5.)  Klar advised the Court that Montgomery had a pending suit in

21   California regarding turnover of the client file.  (Id. at 12.)  Klar stated that Montgomery

22   understood Flynn was California counsel, and that under both California and Massachusetts

23   law, there is no authority for a retaining lien.  (Id.)  As to the scope of documents which

24   Klar was seeking, Klar indicated Montgomery gave Flynn original documents which had

25   not been returned.  (Id. at 19.)  However, Klar had access to local counsel's file, which

26   consisted of pleadings and exhibits filed with the Court.  (Id. at 19-20.)  Additionally, Flynn

1   indicated that much of the representation was performed via emails between Flynn and

2   Montgomery, many of which were copied to Logar and Pulver.  (Id. at 20-21.)  Flynn

3   estimated that he had maybe one or two original documents of Montgomery's.  (Id. at 22.)

4   When the Court questioned Klar about the emails, Klar responded that she did have access

5   to Montgomery's emails.  (Id. at 23-24.)

6           At the hearing, the Court questioned Flynn regarding the fee and file dispute and

7   whether the Court should--

8           more appropriately simply leave that issue to the court in California
            that's addressing the lawsuit between counsel, including, I would
9           imagine, fees and with some secure knowledge that while it may not
            constitute a bond, it's a forum, in which your fee interests and
10          Montgomery's position on the matter can be vindicated.  Why do we
            need to tie this litigation up with regard to a fee dispute, if that fee
11          dispute is encompassed in the relationship of attorney/client as
            encompassed in the California litigation?

12

13   (Id. at 25.)  Flynn responded by noting, among other things, that the LA Action did not

14   involve a fee dispute.  (Id. at 27.)  Rather, the action only sought injunctive relief for return

15   of the file and to enjoin Flynn from disclosing privileged materials.  (Id. at 27-28.)  The

16   Court took the matter under submission.  (Mins. of Proceedings (Doc. #247).)

17          On August 21, Flynn filed a motion for attorneys' fees and costs in this Court,

18   seeking the outstanding fees and costs owed to Flynn and DiMare for their work in the

19   underlying action.  (Mot. for Attorney Fees & Costs (Doc. #248).)  On August 31,

20   Montgomery filed an objection to Flynn's notice of lien, asserting the parties' attorney-

21   client relationship was governed by California law which does not permit retaining liens,

22   the amount of fees requested was unreasonable, an action already was pending in the Los

23   Angeles Superior Court regarding the attorney-client relationship between the parties, Flynn

24   was licensed to practice only in Massachusetts which does not allow retaining liens, and

25   even under Nevada law Flynn was not entitled to a retaining lien because he voluntarily

26   withdrew.  (Notice of Obj. to Notice of Lien (Doc. #254).)

On August 22, the United States District Court for the Central District of California denied Montgomery's motion to transfer the case to this Court, and ordered the action remanded to the Los Angeles Superior Court.  (Request for Judicial Notice (Doc. #262), Ex. 3.)  The court remanded for lack of diversity jurisdiction, finding Flynn failed to establish more than $75,000 was at stake with respect to the requested injunctive relief.  (Id.)

On September 4, the undersigned issued an order granting Flynn's motion to withdraw.  (Order (Doc. #256).)  In the Order, the Court noted that the Government sought to condition Flynn's withdrawal on four conditions in relation to protection of state secrets privileged material potentially residing in Flynn's files.  (Id.)  The Court also noted the dispute between Flynn and Montgomery's new counsel over the turnover of the client file.  (Id.)  The Court granted the motion to withdraw subject to two of the Government's requested conditions, but denied the Government's other two requested conditions.  (Id.)  As for the client file dispute, the Court stated:

> to the extent the Montgomery Plaintiffs seek to condition the withdrawal of Flynn and DiMare on Flynn and DiMare surrendering their complete "client file" to new counsel of record for Plaintiffs (Doc. #213), said precondition is rejected by the Court.  In this regard, the record before the Court does not support a finding that Flynn and DiMare have withdrawn "voluntary" [sic] as counsel for Montgomery Plaintiffs, In the Matter of Kaufman, 93 Nev. 452, 567 P.3d 957 (1977), nor does it appear on the record before the Court that Flynn and DiMare should be compelled to surrender their files to new counsel of record.  Figliuzzi v. Fed. Dist. Court, 111 Nev. 338, 890 P.2d 798 (1995).

(Id.)

On September 7, Montgomery filed an application for arbitration of the fee dispute with the San Diego County Bar Association.  (Request for Judicial Notice (Doc. #262), Ex. 2.)  The application is signed by Montgomery and indicates he will be represented by Klar and Pham of the Liner Firm.  (Id.)  In the statement of facts section, Montgomery asserted that Flynn held himself out as a California attorney throughout the

1  representation.  (Id.)

2          On September 10, Klar and Pham filed on Montgomery's behalf an opposition to

3  Flynn's motion for attorneys' fees in this action.  (The Montgomery Parties' Opp'n to

4  Michael J. Flynn's Mot. for Attorneys Fees & Costs (Doc. #261).)  In support, Klar and

5  Pham attached a declaration by Montgomery, hereinafter referred to as the September 2007

6  Declaration.  (Id., Montgomery Decl.)  In the September 2007 Declaration, Montgomery

7  made the following statements:

8          • "Mr. Flynn led me to believe at that time and throughout the course of his

9  representation that he was a California attorney, and I believed that I was engaging a

10  California lawyer to represent me.  Specifically, he told me he had a law firm, Flynn &

11  Stillman, in California, and I met with him at his offices in Cardiff, California."  (Id. at ¶ 3.)

12          • "[a]ll of the papers he filed with the Court listed a California address."  (Id. at

13  ¶ 6.)

14          • "At no time did Mr. Flynn ever inform me that he was not and is not licensed to

15  practice in the State of California, or that he is licensed to practice only in Massachusetts.  I

16  only learned of this after I retained new counsel."  (Id. at ¶ 7.)

17          On September 12, Klar and Pham, on Montgomery's behalf, filed an ex parte

18  application for writ of possession in the LA Action.  (Request for Judicial Notice (Doc.

19  #597, Ex. 2.)  Montgomery requested that court to "enter an immediate routine turnover

20  order and Writ of Possession."  (Id. at 2.)  On September 13, the Los Angeles Superior

21  Court heard Montgomery's ex parte application for writ of possession in chambers.  (Exs. to

22  Flynn Decl. (Doc. #548), Ex. 3.)  Montgomery withdrew the ex parte application and

23  subsequently noticed the motion for hearing, which was set for October 18.  (Id., Request

24  for Judicial Notice (Doc. #597), Ex. 4, Ex. 7 at 3.)

25          On September 18, Klar and Pham filed on Montgomery's behalf an emergency

26  request for clarification of this Court's September 4 Order.  (Emergency Ex Parte

Application for Clarification of Order (Doc. #274).)  Montgomery referenced the LA Action and stated that Flynn was asserting the position in the LA Action that this Court already had adjudicated the issue of the disposition of Montgomery's client file.  (Id.) Montgomery argued the Court had made no such ruling and the parties had not briefed the issue, including which state law would apply to the dispute.  (Id.)  Montgomery requested the opportunity to brief the issue in the event the Court intended to adjudicate the issue. (Id.)

On that same date, in the LA Action, Pham submitted a memorandum of points and authorities in support of Montgomery's Application for Writ of Possession.  (Request for Judicial Notice (Doc. #275), Ex. 4.)  Pham filed a declaration similar to the September 2007 Declaration in support.  (Id., Montgomery Decl.)

On September 25, Montgomery filed a request for an investigation of Flynn with the Massachusetts State Bar.  (Request for Judicial Notice (Doc. #597), Ex. 13.)  In the request for investigation, Montgomery stated that "[a]t all times during the representation, Flynn led the Montgomery Parties to believe that he was authorized to practice law in California."  (Id.)

On October 4, the undersigned denied Montgomery's motion for clarification of the September 4 Order.  (Order (Doc. #291).)  The Court stated that the prior order was "clear and unambiguous, dealing solely with the matter then before the Court as to whether to condition Flynn's withdrawal as an attorney in this matter on the return of Montgomery's client file."  (Id.)  The Court further noted that Montgomery "has not moved in this Court for return of his client files under Nevada or any other applicable law.  The Court's denial of Montgomery's Motion for Clarification therefore is without prejudice to file a fully briefed motion for return of the file, including any argument that law other than Nevada's applies to such an inquiry."  (Id.)

///

1    On October 12, the Magistrate Judge entered an order regarding Flynn's motion

2  for attorneys' fees.  (Order (Doc. #296).)  In that Order, the Magistrate Judge referenced the

3  LA Action and, in a footnote, stated that "in the face of the District Court's September 4,

4  2007 order that Flynn and DiMare would not be compelled to surrender their files to new

5  counsel of record . . ., Montgomery has continued to pursue another forum to adjudicate the

6  fee dispute, namely California.  In his California Superior Court action, Montgomery seeks

7  relief that is contrary to the District Court's order."  (Id. at 3 n.3.)  In a separate footnote,

8  the Magistrate Judge acknowledged that Montgomery's new counsel had indicated

9  Montgomery had or would file complaints with the California and/or Massachusetts State

10  Bars.  (Id. at 5 n.5.)  The Magistrate Judge stated, "[t]he court takes no position on the

11  propriety of such potential complaints.  By this order, this court only takes jurisdiction over

12  the attorney's fees and client file dispute."  (Id.)

13    The Magistrate Judge granted Flynn's motion for attorneys' fees to the extent that

14  the Court would determine the amount of fees due, but the Court would not order

15  Montgomery to pay the fees at that juncture.  (Id.)  As to the retaining lien issue, the

16  Magistrate Judge noted that Montgomery never had filed a motion with this Court for return

17  of his files, and the Court therefore could not order Flynn to return the files absent a motion

18  by the client and presentation of adequate security or bond for the payment of the fees.  (Id.)

19    In conclusion, the Magistrate Judge stated that she had jurisdiction to adjudicate

20  the amount of attorneys' fees due to Flynn and set forth a procedure by which she would

21  make that determination.  (Id.)  With respect to the retaining lien, the Magistrate Judge

22  stated "the court concludes that should Montgomery desire the client files currently in

23  Flynn's possession, Montgomery must file a motion requesting the return of the files and

24  post adequate security or bond."  (Id.)  The Magistrate Judge further ordered that

25  Montgomery's counsel "shall deliver, either via facsimile or hand delivery, a copy of this

26  order to the chambers of the presiding judge" in the LA Action prior to the scheduled

1    October 18 hearing in that action.  (Id.)

2          Pham and Klar thereafter attended the October 18 hearing in the LA Action.  (Tr.

3    (Doc. #323).)  As directed by the Magistrate Judge, Pham and Klar provided the Magistrate

4    Judge's October 12 order to the presiding judge in the LA Action.  (Notice of Lodging

5    USDC Nevada Order of Oct. 12, 2007).)  At the hearing, Pham stated the Los Angeles

6    Superior Court was "the only court with jurisdiction to decide whether or not the files

7    should get turned over because the files are located here in California," and "[o]nly this

8    court could order the files to get turned over because the files are located here in

9    California."  (Tr. (Doc. #323) at 5-6.)  Pham also stated that the only issue before the

10   Magistrate Judge in this action was the attorneys' fee dispute, "it's not with respect to

11   possession of the files."  (Id. at 9.)  Later in the hearing, after DiMare referenced footnote 5

12   of the Magistrate Judge's October 12 order, Pham stated that she was "not contentesting

13   that [the Nevada District Court] has jurisdiction, we're simply saying we believe this court

14   also has jurisdiction, it is concurrent jurisdiction."  (Id. at 12-13.)

15         Klar also attended the hearing and suggested government counsel's appearance at

16   the hearing was to get "another bite at the apple and to try to circumvent [this Court's]

17   order."  (Id. at 8.)  Klar stated government counsel was at the hearing "to muddy the waters

18   and to somewhat intimidate Your Honor to refrain in giving us the relief that we believe

19   Mr. Montgomery and Mrs. Montgomery and the Montgomery Trust is entitled to."  (Id.)

20   The Los Angeles Superior Court denied Montgomery's motion for writ of possession,

21   finding that Montgomery had not met his burden of establishing he was entitled to

22   possession of the client file.  (Id. at 13.)

23         On October 31, the Massachusetts State Bar closed Montgomery's bar complaint.

24   (Exs. to Flynn Decl. (Doc. #548), Ex. 5.)  In its letter, the Bar stated that Montgomery "did

25   not mention in [his] complaint that the United States District Court, District of Nevada,

26   entered detailed and comprehensive orders with respect to the transmission of the file.

1   Attorney Flynn was admitted pro hac vice in the Nevada Court and as such, in connection

2   with that proceeding, is subject to the standards of professional conduct as adopted by the

3   Nevada Supreme Court."  (Id. at 1.)  The Bar also noted that the client file may contain state

4   secrets, and that this Court had maintained jurisdiction over such issues.  (Id.)

5        On November 9, the Magistrate Judge held a hearing to discuss with the parties

6   the fact that although the Court previously had ordered the unredacted materials in the

7   search warrant proceedings be unsealed, Montgomery's February 2007 Declaration

8   inadvertently never was unsealed.  (Order (Doc. #270); Mins. of Proceedings (Doc. #331).)

9   The Magistrate Judge ordered the declaration be unsealed.  (Id.)

10       On November 1, the Los Angeles Superior Court dismissed the LA Action.  (Exs.

11  to Flynn Decl. (Doc. #548), Ex. 1.)  In dismissing the action, the presiding judge stated:

12          California is only involved in this matter due to an unsubstantiated
            allegation by the plaintiff that defendant misrepresented to him that
13          defendant was licensed to practice in California.  This case is before a
            California court for the transparent purpose of having this court
14          countermand the orders of the Nevada District Court.  California has
            no interest in doing so.
15

16  (Id. at 3.)  Approximately two weeks later, the San Diego Bar Association dismissed

17  without prejudice the request for arbitration of the fee dispute.  (Exs. to Flynn Decl. (Doc.

18  #548), Ex. 4.)  The Bar Association stated that based on the orders of this Court and the Los

19  Angeles Superior Court, "it is clear that the US District for Nevada has taken control of the

20  entire case filed by . . . Montgomery including the issue of attorney fees and costs."  (Id.)

21       On March 24, 2008, the Magistrate Judge entered an order granting Flynn's

22  motion for attorneys' fees and costs in the amount of $557,522.18.  (Order (Doc. #502).)

23  On April 24, Flynn moved for sanctions pursuant to 28 U.S.C. § 1927 and/or the Court's

24  inherent power against the Montgomery parties and "their counsel of record, Deborah Klar

25  and her firm, Liner Yankelevitz Sunshine & Regenstreif, LLP."  (Mot. for Sanctions (Doc.

26  #545) at 1.)  Among other things, Flynn argued that Montgomery and his counsel

15

1  vexatiously multiplied the proceedings by attempting to circumvent this Court's Orders

2  regarding the client files by filing actions or complaints in three different forums and using

3  the September 2007 Declaration, which Flynn asserted was perjured.  (Id. at 2.)  Flynn also

4  contended that Montgomery and his counsel misrepresented this Court's orders at the

5  October 18 hearing before the Los Angeles Superior Court.  (Id. at 3.)  Flynn requested over

6  $200,000 in attorney's fees for the period of August 1, 2007 through December 5, 2007,

7  and he requested "the revocation of Ms. Klar's pro hac vice admission in these cases."  (Id.

8  at 24.)  Montgomery opposed the motion, and included declarations from Pham and Klar.

9  (Opp'n to Mot. for Sanctions Filed by Attorney Michael J. Flynn (Doc. #601); Pham Decl.

10 (Doc. #599); Klar Decl. (Doc. #600).)

11          The Magistrate Judge set an evidentiary hearing related to the motion for

12 sanctions and indicated the evidentiary hearing would address only the September 2007

13 Declaration and the Montgomery parties' litigation against Flynn in the LA Action, the San

14 Diego fee arbitration, and the Massachusetts Bar complaint.  (Order (Doc. #770).)  The

15 order required Montgomery to "appear in person and to testify concerning these matters."

16 (Id.)  The order also stated that Flynn, Klar, and Pham "shall attend the hearing in person

17 and shall be prepared to address the court concerning these matters."  (Id.)  The Magistrate

18 Judge held a sealed evidentiary hearing on August 21, at which Montgomery and Pham

19 testified under oath.  (Mins. of Proceedings (Doc. #826).)  Klar was present but did not

20 testify.  (Id.)

21          Montgomery and Trepp subsequently settled the underlying lawsuit.  (Mins. of

22 Proceedings (Doc. #856).)  After Montgomery defaulted on a payment required under the

23 settlement agreement, judgments by confession were entered against the Montgomery

24 parties and other parties in the litigation.  (Judgment (Doc. #897, #898).)  The Court also

25 entered judgment on the award of attorneys' fees to Flynn.  (Judgment (Doc. #902).)

26 Subsequent efforts at settling the Flynn fee dispute were unsuccessful.  (Mins of

1    Proceedings (Doc. #933).)  On February 19, 2009, the Court entered an order dismissing all

2    claims and counterclaims in the underlying action.  (Order (Doc. #962).)  However, the

3    Court retained jurisdiction over, among other things, Flynn's motion for sanctions.  (Id.)

4            On March 31, 2009, the Magistrate Judge entered a 54-page order granting

5    Flynn's motion for sanctions under 28 U.S.C. § 1927 and the Court's inherent power.

6    (Order (Doc. #985).)  The Magistrate Judge sanctioned Montgomery for perjuring himself

7    in the September 2007 Declaration regarding his knowledge about Flynn's admission status,

8    and that he signed the declaration "in bad faith, vexatiously, wantonly, and for oppressive

9    reasons." (Id. at 49.)  The Magistrate Judge also sanctioned Klar and Pham, finding that

10   Klar and Pham "acted in bad faith or conduct tantamount to bad faith with the intention to

11   undermine this court's orders for the improper purpose of obtaining a more favorable forum

12   for resolution of the fee dispute and the turnover of the client files." (Id. at 37.)  The

13   Magistrate Judge also sanctioned the Liner Firm, concluding that it allowed Klar to operate

14   "unchecked and unquestioned," and the Firm "acquiesced to or willingly carried out Ms.

15   Klar's litigation strategy." (Id. at 48.)

16           Based on her findings, the Magistrate Judge awarded Flynn and DiMare

17   attorneys' fees in the amount of $201,990 and costs in the amount of $2,421.  (Id. at 51-52.)

18   The Magistrate Judge apportioned the sanctions as follows: Klar 50%, Montgomery 30%,

19   Pham 10%, and the Liner Firm 10%, and imposed joint and several liability among the

20   sanctioned parties.  (Id. at 52.)

21           The Magistrate Judge also imposed non-monetary sanctions on Klar, Pham, and

22   Montgomery.  The Magistrate Judge ordered that the Clerk of Court send a copy of the

23   sanctions order to the Nevada and California State Bars; that Klar and Pham be prohibited

24   from applying for pro hac vice admission to this Court for five years, after which time they

25   may apply but must attach a copy of the sanctions order along with a declaration identifying

26   all the legal ethics courses they have completed in the interim; that the Court would publish

1   the sanctions order as a form of public reprimand; and that Klar and Pham must perform

2   200 and 100 hours of pro bono legal services, respectively.  (<u>Id.</u> at 52-53.)  As to

3   Montgomery, the Magistrate Judge ordered that a copy of the sanctions order be sent to the

4   United States Attorney's Office.  (<u>Id.</u> at 53.)

5          The Magistrate Judge indicated that pursuant to Local Rule IB 3-1(a), any party

6   could object to the sanctions order.  (<u>Id.</u> at 54.)  The Magistrate Judge therefore stayed the

7   sanction order's effect until after the undersigned issued a final order with respect to any

8   objections.  (<u>Id.</u>)  The Liner Firm, Klar, Pham, and Montgomery subsequently filed

9   objections to the sanctions order.

10         Prior to this Court resolving the objections to the sanctions order, Dennis and

11  Brenda Montgomery filed a Notice of Filing of Voluntary Petition Under Chapter 7 of the

12  Bankruptcy Code and of Automatic Stay (Doc. #1104).  Flynn moved in the bankruptcy

13  proceedings for relief from the automatic stay for this Court to rule upon the objections to

14  the Magistrate Judge's sanctions order.  (Status Report Re: Montgomery Bankruptcy (Doc.

15  #1143).)  On January 8, 2010, the United States Bankruptcy Court for the Central District of

16  California granted Flynn's motion, effective as of December 31, 2009.  (<u>Id.</u>, Ex. A.)  The

17  stay having been lifted, the Court now will address the various objections to the sanctions

18  order.

19  **II.  LEGAL STANDARD**

20         Magistrate judges statutorily are authorized to resolve "pretrial matter[s]" subject

21  to review by district judges under a clearly erroneous or contrary to law standard.  28 U.S.C.

22  § 636(b)(1)(A).  Excluded from this grant of authority are dispositive motions, such as

23  motions "for injunctive relief, for judgment on the pleadings, for summary judgment, to

24  dismiss or quash an indictment or information . . ., to suppress evidence in a criminal case,

25  to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim

26  upon which relief can be granted, . . . to involuntarily dismiss an action," and analogous

motions.  Id.; United States v. Rivera-Guerrero, 377 F.3d 1064, 1067-68 (9th Cir. 2004).

Dispositive motions may be submitted to a magistrate judge for a report and

recommendation, which the district court then reviews de novo.  28 U.S.C. § 636(b)(1)(B).

Thus, nondispositive pretrial matters are governed by § 636(b)(1)(A) and are

subject to the clearly erroneous or contrary to law standard of review, while dispositive

matters are governed by § 636(b)(1)(B) and are subject to de novo review.  Gomez v.

United States, 490 U.S. 858, 873-74 (1989); see also Fed. R. Civ. P. 72(a).  Which standard

of review applies is determined by whether the motion's effect properly is characterized as

"dispositive or non-dispositive of a claim or defense of a party."  Rivera-Guerrero, 377 F.3d

at 1068 (quotation omitted).

The United States Court of Appeals for the Ninth Circuit has not addressed

specifically whether a magistrate judge's order sanctioning a party or counsel under 28

U.S.C. § 1927 or the Court's inherent power is dispositive or non-dispositive.  However, the

Ninth Circuit has determined that sanctions under Federal Rules of Civil Procedure 11 and

37 are non-dispositive and thus fall under § 636(b)(1)(A).  See Grimes v. City & County of

San Francisco, 951 F.2d 236, 240 (9th Cir. 1991) (Rule 37); Maisonville v. F2 Am., Inc.,

902 F.2d 746, 747-48 (9th Cir. 1990) (Rule 11).  The Ninth Circuit has analogized sanctions

under § 1927 and its inherent power to Rule 11 or Rule 37 sanctions.  See Stanley v.

Woodford, 449 F.3d 1060, 1064 (9th Cir. 2006) (stating "the policies undergirding Rule

37(a) sanctions are not relevantly different from those justifying sanctions under § 1927 or a

court's inherent powers"); Grimes, 951 F.2d at 240 (indicating there is "no material

distinctions between Rule 11 sanctions and Rule 37 [discovery] sanctions" (quotation

omitted)); Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1412 n.4 (9th Cir. 1990)

("Although this case involves only a Rule 37 default, we have held that dismissal sanctions

under Rule 37 and a court's inherent powers are similar.").  Sanctions under § 1927 or the

///

Court's inherent power therefore are non-dispositive,[4] and subject to the clearly erroneous or contrary to law standard of review.[5]

"A finding is clearly erroneous when although there is evidence to support it, the reviewing body on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. Ressam, 593 F.3d 1095, 1118 (9th Cir. 2010) (quotation omitted). This Court may not substitute its judgment for that of the Magistrate Judge. Grimes, 951 F.2d at 241.

## III. DISCUSSION

The Court has inherent power to sanction counsel or a party who acts "in bad faith, vexatiously, wantonly, or for oppressive reasons." Leon v. IDX Sys. Corp., 464 F.3d 951, 961 (9th Cir. 2006) (quotation omitted). A court must exercise its inherent powers "'with restraint and discretion,'" and must make a specific finding of bad faith before sanctioning under its inherent powers. Yagman v. Republic Ins., 987 F.2d 622, 628 (9th Cir. 1993) (quoting Chambers v. Nasco, 501 U.S. 32, 44 (1991)); Fink v. Gomez, 239 F.3d 989, 992-93 (9th Cir. 2001). Bad faith "includes a broad range of willful improper conduct," including "delaying or disrupting the litigation or . . . hampering enforcement of a court order." Fink, 239 F.3d at 992 (quotation omitted); Leon, 464 F.3d at 961. "Sanctions are available for a variety of types of willful actions, including recklessness when combined

---

[4] To the extent a sanction imposed is case dispositive, such as striking an answer or entering a default, then the sanctions order would be dispositive, and would be subject to de novo review.

[5] Other circuits have disagreed or are undecided as to the appropriate standard of review for a magistrate judge's award of sanctions. See Kiobel v. Millson, 592 F.3d 78, 86 (2d Cir. 2010) (declining to decide the issue, but in three separate concurring opinions expressing the view that the de novo standard applied, the clearly erroneous or contrary to law standard applied, or that Congress or the Supreme Court ought to make the standard clear); Retired Chicago Police Ass'n v. City of Chicago, 76 F.3d 856, 869 (7th Cir. 1996) (holding "a sanctions request is a dispositive matter capable of being referred to a magistrate judge only under § 636(b)(1)(B) or § 636(b)(3), where the district judge must review the magistrate judge's report and recommendations de novo"); Bennett v. Gen. Caster Serv. of N. Gordon Co., Inc., 976 F.2d 995, 998 (6th Cir. 1992) (same).

1  with an additional factor such as frivolousness, harassment, or an improper purpose." <u>Fink</u>,

2  239 F.3d at 994.  Indeed, the Court may exercise its inherent power to sanction a party or

3  attorney who acts for an improper purpose even if the sanctioned act "consists of making a

4  truthful statement or a non-frivolous argument or objection." <u>Gomez v. Vernon</u>, 255 F.3d

5  1118, 1134 (9th Cir. 2001) (quotation omitted).  Whether to impose sanctions under the

6  Court's inherent power lies within the Court's discretion.  <u>Id.</u>

7        In addition to inherent powers, the Court may sanction an attorney under 28

8  U.S.C. § 1927 for unreasonably and vexatiously prolonging the proceedings.  To impose

9  sanctions under § 1927, the Court must make a finding that counsel acted with subjective

10  bad faith.  <u>B.K.B. v. Maui Police Dep't</u>, 276 F.3d 1091, 1107 (9th Cir. 2002);

11   <u>Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.</u>, 210 F.3d 1112, 1118 (9th Cir.

12  2000).  The standard is met when "an attorney knowingly or recklessly raises a frivolous

13  argument, or argues a meritorious claim for the purpose of harassing an opponent." <u>B.K.B.</u>,

14  276 F.3d at 1107 (quotation and emphasis omitted).  Whether to impose sanctions under

15  § 1927 lies within the Court's discretion.  <u>In re Keegan Mgmt. Co., Sec. Litig.</u>, 78 F.3d 431,

16  435 (9th Cir. 1996).

17        **A.  Liner Firm**

18        The Liner Firm contends the Magistrate Judge sanctioned it only under § 1927,

19  and § 1927 provides for sanctions only against an attorney, not a law firm.  Flynn responds

20  that the Magistrate Judge intended to sanction the Liner Firm under both the Court's

21  inherent power and § 1927, and indicated in the order that the Firm acted in bad faith.

22  Flynn also argues sanctions may be awarded against a law firm under § 1927.

23        Although the sanctions order generally referenced both § 1927 and the Court's

24  inherent powers, the sanctions order imposed sanctions against the Liner Firm only pursuant

25  to § 1927.  (Order (Doc. #982) at 48 (stating "sanctions against the Liner Firm are

26  warranted pursuant to 28 U.S.C. § 1927").)  The sanctions order referenced both the Court's

inherent power and § 1927 when grouping the sanctioned parties together.  For example, page one

of the order states that the "court concludes that the conduct of the Liner firm and its attorneys, Ms.

Klar and Ms. Pham, was willfully reckless, intended to harass, done for an improper purpose, and

was suffused with bad faith."  (Id. at 1.)  On page 51, the order stated: "[b]ased on the foregoing,

the court finds that pursuant to its inherent powers and 28 U.S.C. § 1927, the following sanctions

shall issue."[6]  (Id. at 51.)  The order then itemized the sanctions against all of the sanctioned parties,

including the Liner Firm.  (Id. at 51-53.)  However, in the order's discussion specifically related to

the Liner Firm, the order cited only § 1927 and did not make an explicit finding of bad faith on the

Firm's part.  To the extent the Magistrate Judge intended to sanction the Liner Firm under the

Court's inherent power, the sanctions order does not make that intention clear.

Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of
> the United States or any Territory thereof who so multiplies the
> proceedings in any case unreasonably and vexatiously may be required
> by the court to satisfy personally the excess costs, expenses, and
> attorneys' fees reasonably incurred because of such conduct.

Some Circuit Courts of Appeal have permitted § 1927 sanctions against a law firm, but

have done so without analyzing whether such sanctions are permissible under the statutory

language.  See Jensen v. Phillips Screw Co., 546 F.3d 59, 61-69 (1st Cir. 2008); LaPrade v.

Kidder Peabody & Co., Inc., 146 F.3d 899, 904-07 (D.C. Cir. 1998); Avirgan v. Hull, 932

F.2d 1572, 1582 (11th Cir. 1991); Baker Indus., Inc. v. Cerberus Ltd., 764 F.2d 204, 208-09

(3d Cir. 1985).  In contrast, the Sixth and Seventh Circuits have indicated that § 1927

sanctions are not awardable against a law firm based on the statute's plain language.  See

Rentz v. Dynasty Apparel Indus., Inc., 556 F.3d 389, 396 n.6 (6th Cir. 2009); Claiborne v.

---

[6] This sentence could not mean the Magistrate Judge intended to sanction all of the parties under both sources of authority, as Montgomery is a party and thus is not sanctionable under § 1927. F.T.C. v. Alaska Land Leasing, Inc., 799 F.2d 507, 510 (9th Cir. 1986) (stating § 1927 "does not authorize recovery from a party").

Wisdom, 414 F.3d 715, 722-23 (7th Cir. 2005).  The United States Court of Appeals for the

Ninth Circuit has not decided whether a law firm, as opposed to an individual attorney, may

be sanctioned under § 1927, although it has indicated § 1927 sanctions were not permissible

against a non-profit organization that varyingly described itself as a representative of the

plaintiffs, an employer of the plaintiffs' lawyers, and as the entity directing the litigation.

Lockary v. Kayfetz, 974 F.2d 1166, 1168-70 (9th Cir. 1992) (stating the district court

recognized it did not have the power to sanction the non-profit entity under § 1927).

When construing a statute, the Court begins with the statute's plain language.

Moreno-Morante v. Gonzales, 490 F.3d 1172, 1175 (9th Cir. 2007).  If the language is

unambiguous, the Court's inquiry is complete.  Alvarado v. Cajun Operating Co., 588 F.3d

1261, 1268 (9th Cir. 2009.)

Section 1927 by its plain terms applies only to an "attorney or other person

admitted to conduct cases in any court of the United States."  A law firm is not an attorney.

Nor is it a person admitted to conduct cases in federal courts.  "Individual lawyers, not

firms, are admitted to practice before both the state courts and the federal courts."

Claiborne, 414 F.3d at 723.  Further, the statute requires the sanctioned person to "satisfy

personally" the costs and expenses incurred as a result of the sanctionable conduct.

The conclusion that § 1927 does not apply to law firms is supported by the

United States Supreme Court's analysis of whether a prior version of Federal Rule of Civil

Procedure 11 applied to law firms.  In Pavelic & LeFlore v. Marvel Entertainment Group,

the Supreme Court held that Rule 11's plain language permitted the imposition of sanctions

on "the person who signed" the paper at issue.  493 U.S. 120, 123 (1989).  Because the Rule

required an attorney or unrepresented party to sign the paper in his or her "individual

name," the Supreme Court concluded that the signature requirement, and the consequences

attached thereto, ran to the individual attorney and not to his or her law firm.  Id. at 123-24.

Following this decision, Rule 11 was amended to allow sanctions against law firms.  See

Fed. R. Civ. P. 11(c)(1) ("If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."); see also Fed. R. Bankr. P. 9011(c) (listing law firms among persons or entities that may be sanctioned).

The Court therefore concludes § 1927 sanctions may not be imposed against a law firm. The Magistrate Judge's order imposing such sanctions thus is contrary to law. In re Keegan Mgmt. Co., Sec. Litig., 78 F.3d at 435 ("For a sanction to be validly imposed, the conduct in question must be sanctionable under the authority relied on." (quotation omitted)). The Liner Firm's objection to the sanctions order is affirmed, and the sanctions order as to the Liner Firm is reversed without prejudice to any further proceedings consistent with this Order with respect to Flynn's motion for sanctions.[7]

**B. Montgomery**

Montgomery argues the sanctions against him are based on perceived differences in his two declarations, but there is insufficient evidence to support a finding that the September 2007 Declaration was made in bad faith. Montgomery argues his two declarations do not contradict each other because the February Declaration does not mention anything about where Flynn was licensed. Even if the declarations are inconsistent, Montgomery contends the evidence adduced at the evidentiary hearing demonstrated Montgomery did not understand what it meant to be licensed or admitted in a certain jurisdiction and the significance of that in relation to practicing law in a particular state. Montgomery further argues his September 2007 Declaration does not amount to perjury because the record does not disclose what Montgomery meant by referring to Flynn

---

[7] Because the Court affirms the Liner Firm's objections on this basis, the Court need not address the Liner Firm's other objections.

as a "California lawyer" and in any event, the statements were not material.  Montgomery also argues he cannot be sanctioned for conduct occurring outside the proceedings in this Court, the Magistrate Judge failed to assess the reasonableness of Flynn's fees, and she should not have made liability joint and several.  Finally, Montgomery requests that in the event any further proceedings are necessary, the Court assign a different Magistrate Judge.

Flynn responds that there is clear and convincing evidence that the September 2007 Declaration is perjured, as evidenced by the exhibits on file which show Montgomery knew Flynn was licensed only in Massachusetts based on various documents in the record. Flynn further argues that because Montgomery did not raise below his inability to pay, that argument is waived.  As to joint and several liability, Flynn contends it is appropriate because Montgomery, Klar, and Pham were jointly engaged in the misconduct at issue. Finally, Flynn argues the request for a new judge is unsupported, as the Magistrate Judge has been unbiased in this action, ruling against Flynn on several occasions, and Flynn contends she could have sanctioned the objecting parties even more than she did.  Flynn requests the Court modify the sanctions award to include fees expended in having to respond to the various objections to the Sanctions.

### 1.  The September 2007 Declaration

Under the federal perjury statute, a person commits perjury when he "willfully subscribes as true any material matter which he does not believe to be true" in a declaration signed under penalty of perjury.  18 U.S.C.A. § 1621.  A declarant's statement under oath or affirmation violates this statute if he makes a false statement concerning a material matter "with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory."  United States v. Dunnigan, 507 U.S. 87, 94 (1993).

The Magistrate Judge's finding that Montgomery perjured himself is not clearly erroneous or contrary to law.  Montgomery filed the September 2007 Declaration under penalty of perjury.  Montgomery's statements in the September 2007 Declaration regarding

Flynn's representations to Montgomery about Flynn's status as a California attorney were material because Montgomery was attempting to convince this Court, and other forums, that the file and fee disputes should be heard somewhere other than in this District. The September 2007 Declaration was filed in support of Montgomery's opposition to Flynn's motion for attorneys' fees. In that motion, Montgomery argued that California, not Nevada, was the proper forum to resolve the fee dispute and cited the September 2007 Declaration in support. (The Montgomery Parties' Opp'n to Michael J. Flynn's Mot. for Attorneys Fees & Costs (Doc. #261) at 2-5.)

The Magistrate Judge held an evidentiary hearing in this matter at which Montgomery testified. In the sanctions order, she made an adverse credibility finding against Montgomery regarding his understanding of the words "admitted" or "licensed." (Order (Doc. #985).) The Magistrate Judge concluded Montgomery knew or should have know what that meant because he attended the preliminary injunction hearing in state court at which Flynn's admission and ability to practice in front of the Nevada state court was discussed in front of Montgomery. (Id. at 18.) Even if Montgomery was not aware then, he certainly was by February 2007, when the United States attempted to disqualify Flynn based on the fact that Flynn was licensed only in Massachusetts, but allegedly was practicing in California. (Id. at 19.)

These findings are not clearly erroneous or contrary to law. The Magistrate Judge presided over the evidentiary hearing and thus had an opportunity to observe Montgomery's demeanor while testifying. She thus uniquely was situated to evaluate Montgomery's credibility. Moreover, the adverse credibility finding has ample support in the record. Montgomery attended the preliminary injunction hearing and was present while local counsel introduced Flynn to the state court as a member of the Massachusetts Bar, indicated that Flynn had applied for pro hac vice status, and stated that the Massachusetts Bar had sent a certificate of good standing to the Nevada State Bar.

Further, Montgomery was aware of and participated in opposing the Government's efforts to disqualify Flynn on the very basis that Flynn's pro hac vice application contained misstatements because Flynn was licensed only in Massachusetts, but was residing and practicing in California.  In his February 2007 Declaration, Montgomery averred that he had read both the motion to disqualify Flynn, and letters which Flynn had sent to high ranking officials on Montgomery's behalf.  The Government's motion stated that Flynn was licensed only in Massachusetts.  One of the referenced letters was attached as an exhibit to Montgomery's own declaration.  On the letterhead it states beneath Flynn's name "only admitted in Massachusetts."

At the sealed evidentiary hearing on the motion for sanctions, Montgomery testified that he "probably" read Flynn's declaration in February 2008 in which Flynn stated that he was licensed only in Massachusetts.  (Sealed Tr. (Doc. #873) at 26.)  Montgomery subsequently stated that he did not know whether he read it at the time.  (Id. at 26-27.)  When questioned about reading the Government's motion to disqualify in which the Government raised the issue that Flynn had only a Massachusetts license and not a California license, Montgomery stated "What's that mean to me?  That didn't mean to me that you couldn't practice in California."  (Id. at 29.)  Montgomery further testified that he did not know what the term "licensed" meant, and he "assumed" Flynn could practice in California, even though Flynn did not represent Montgomery in any California courts at any time during the representation.  (Id. at 40.)  When questioned regarding whether, in their first meeting, Flynn advised Montgomery that Flynn was licensed in Massachusetts, Montgomery responded "[w]hether [Flynn] said [he was] licensed in Massachusetts, didn't mean to me that [Flynn wasn't] in California."  (Id. at 42.)

When asked whether it was his position that he never saw Flynn's letterhead that stated "admitted only in Massachusetts," Montgomery stated, "[n]o.  That is not my testimony."  (Id. at 49-50.)  When asked directly whether he had ever seen any letters

1   stating "admitted only in Massachusetts," Montgomery answered, "Yes." (Id. at 50.)

2   Montgomery's counsel offered to stipulate that Montgomery had received letters with the

3   letterhead on it. (Id. at 87, 101-02.)  Montgomery also stated that he "must have seen"

4   Flynn's Massachusetts bar number next to Flynn's name on numerous pleadings on file in

5   this Court. (Id. at 129.)

6          The course of the proceedings, Montgomery's February 2007 Declaration, and

7   his testimony at the evidentiary hearing support the Magistrate Judge's adverse credibility

8   finding against Montgomery regarding his professed lack of knowledge as to the meaning

9   of "admitted" or "licensed." Montgomery is not an unsophisticated individual, and even if

10  he had no understanding regarding what these terms meant prior to this litigation, the

11  evidence shows he knew what it meant by the time he filed the February 2007 Declaration

12  in support of his opposition to the Government's motion to disqualify.  The Magistrate

13  Judge's conclusion that Montgomery therefore perjured himself in the September 2007

14  Declaration when he averred that Flynn led him to believe throughout the course of

15  representation that Flynn was a California attorney, that at no time did Flynn ever inform

16  Montgomery that Flynn was licensed to practice only in Massachusetts, and that

17  Montgomery learned of Flynn's status only this after he retained new counsel is neither

18  clearly erroneous nor contrary to law.  Perjury is sufficient grounds for a bad faith finding to

19  support a sanction under the Court's inherent power.  Whitney Bros. Co. v. Sprafkin, 60

20  F.3d 8, 14 (1st Cir. 1995).

21                        2.  Joint and Several Liability

22          A court may hold sanctioned parties jointly and severally liable.  Hyde & Drath v.

23  Baker, 24 F.3d 1162, 1172 (9th Cir. 1994).  Pursuant to general tort law, joint and several

24  liability is appropriate when the independent tortious conduct of each of two or more

25  persons is a legal cause of a single and indivisible harm to the injured party.  Restatement

26  (Third) of Torts § A18 (2000).  That the Court may apportion fault "does not render an

                                             28

indivisible injury 'divisible' for purposes of the joint and several liability rule." <u>Rudelson</u>
<u>v. U.S.</u>, 602 F.2d 1326, 1332 n.2 (9th Cir. 1979) (quotation omitted).  Joint and several
liability as between a client and his or her attorney may be appropriate where the client
willfully participates in the sanctionable conduct.  <u>See</u> <u>Avirgan v. Hull</u>, 125 F.R.D. 189,
190-91 (S.D. Fla. 1989).

The Magistrate Judge's decision to make the award joint and several is not
clearly erroneous or contrary to law.  Although Montgomery's Declaration was not filed in
this Court until September 2007, the "facts" therein were the foundation for the efforts to
pursue the fee and file disputes in three other forums.  The Complaint in the LA Action, the
petition for arbitration of the fee, and the Massachusetts Bar complaint all referenced
Montgomery's assertion that Flynn held himself out to Montgomery as a California lawyer
throughout Flynn's representation of Montgomery.  The harm to Flynn was indivisible,
even if the Magistrate Judge found the relative fault as between Montgomery and his
attorneys was capable of being apportioned.

### 3.  Power to Sanction for Conduct Outside Court Proceedings

Contrary to Montgomery's position, the Court has inherent power to sanction a
party's misconduct occurring outside the Court's proceedings so long as the sanctionable
conduct has a "nexus with the conduct of the litigation before the court."  <u>United States v.</u>
<u>Wunsch</u>, 84 F.3d 1110, 1115-16 (9th Cir. 1996) (holding that court had inherent power to
sanction attorney who had appeared in case and sent sexist letter to opposing counsel
following his disqualification from the case but concluding no sanction was authorized
under cited local rules); <u>see also</u> <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 57 (1991)
("Chambers challenges the District Court's imposition of sanctions for conduct before other
tribunals, including the FCC, the Court of Appeals, and this Court, asserting that a court
may sanction only conduct occurring in its presence.  Our cases are to the contrary,
however.").  For example, the Court may invoke its inherent power to sanction conduct

occurring before a federal agency.  See Gadda v. Ashcroft, 377 F.3d 934, 947 (9th Cir.

2004) ("We hold that we also have inherent authority respecting the suspension and

disbarment of attorneys who perform incompetently in federal immigration proceedings.");

In re Pacific Land Sales, Inc., 187 B.R. 302, 312 (9th Cir. BAP 1995) (stating a court "may

hold a party in contempt for actions performed before the FCC").  The Court also may

sanction conduct in related state court proceedings.  Western Sys., Inc. v. Ulloa, 958 F.2d

864, 873 (9th Cir. 1992).

Montgomery's reliance on Atchison, Topeka and Santa Fe Railway Company v.

Hercules Inc. is misplaced.  In that case, the Ninth Circuit held that a district court may not

use its inherent power to dismiss a separate action not pending before it where the Federal

Rules of Civil Procedure specifically granted the litigant the right to proceed in the separate

action.  146 F.3d 1071, 1074 (9th Cir. 1998).  As the Magistrate Judge did not dismiss or

attempt to dismiss any separate action as a sanction under the Court's inherent power,

Hercules Inc. is inapplicable.

### 4.  Reasonableness of Fees

Where a sanction is appropriate, the amount of the sanction award must be

reasonable.  Matter of Yagman, 796 F.2d 1165, 1184 (9th Cir. 1986).  "This is particularly

so where, as here, the amount of the sanction is based upon the attorney's fees claimed by

the other party."  Id.  The Court should avoid issuing a lump-sum sanctions award based on

different sources of authority to sanction and covering a host of misconduct over a period of

time.  Id.  Rather, the sanctions award must be "quantifiable with some precision and

properly itemized in terms of the perceived misconduct and the sanctioning authority."  Id.

"When the sanctions award is based upon attorney's fees and related expenses, an

essential part of determining the reasonableness of the award is inquiring into the

reasonableness of the claimed fees."  Id. at 1184-85.  The Court "must make some

evaluation of the fee breakdown submitted by counsel" to determine not the actual fees and

1    expenses incurred, but what amount of fees and expenses are reasonable.  <u>Id.</u>  at 1185.

2    Additionally, the Court should consider the sanctioned party's ability to pay to determine

3    the award's reasonableness.  <u>Id.</u>  However, "the sanctioned party has the burden to produce

4    evidence of inability to pay."  <u>Gaskell v. Weir</u>, 10 F.3d 626, 629 (9th Cir. 1993).  Failure to

5    present such evidence or raise the issue below waives the argument regarding inability to

6    pay.  <u>Fed. Election Comm'n. v. Toledano</u>, 317 F.3d 939, 949 (9th Cir. 2002).

7           The sanction here was measured with reference to Flynn's attorneys' fees and

8    costs.  The Magistrate Judge reviewed Flynn's submissions and made several adjustments

9    from Flynn's requested amount.  First, the Magistrate Judge lowered Flynn's requested

10    hourly rates.  (Order (Doc. #985) at 51.)  Second, she reviewed Flynn's time entries "line-

11    by-line" and declined to award fees for work on the fee application that resulted in a

12    separate award of attorney's fees in March 2008 or for work performed on a separate

13    motion Flynn filed under Rule 3.3 of the Nevada Rules of Professional Conduct.  (<u>Id.</u>)

14    Third, the Magistrate Judge deducted time for entries that were vague or duplicative.  (<u>Id.</u>)

15           The sanctions award is sufficiently itemized, as the Magistrate Judge limited the

16    sanction to the tasks reflected in Flynn's time sheets related only to defense of the various

17    different proceedings Montgomery initiated against Flynn.  She specifically deducted time

18    that was, or might be, related to other matters.  The Magistrate Judge also reviewed the

19    reasonableness of the fees, reducing the rate Flynn and DiMare sought for their services,

20    deducting any vague or duplicative entries, and conducting a "line-by-line" review of

21    Flynn's time entries.  The sanctions award is not a blanket, lump-sum award and it

22    adequately ties the fees incurred as result of the sanctionable conduct.

23           As to Montgomery's ability to pay, Montgomery did not present any evidence on

24    his inability to pay, despite the fact that Flynn requested even more in fees than the

25    Magistrate Judge awarded.  Montgomery therefore has waived the argument by failing to

26    present evidence or raise the argument before the Magistrate Judge.  The Court therefore

1    will affirm the sanctions award against Montgomery.  The Court denies Flynn's request for

2    fees in responding to the objections to the Magistrate Judge's sanctions order.

3                    4.  Reassign

4            "Absent personal bias, remand to a new judge is warranted only in rare

5    circumstances."  United States v. Rapal, 146 F.3d 661, 666 (9th Cir. 1998).  To determine

6    whether reassignment is warranted, the Court must consider:

7            (1) whether the original judge would reasonably be expected upon
             remand to have substantial difficulty in putting out of his or her mind
8            previously-expressed views or findings determined to be erroneous or
             based on evidence that must be rejected, (2) whether reassignment is
9            advisable to preserve the appearance of justice, and (3) whether
             reassignment would entail waste and duplication out of proportion to
10           any gain in preserving the appearance of fairness.

11   Hunt v. Pliler, 384 F.3d 1118, 1126 (9th Cir. 2004) (quotation omitted).  "The first two of

12   these factors are of equal importance, and a finding of one of them would support a remand

13   to a different judge."  Id. (quotation omitted).

14           As an initial matter, Montgomery's request for reassignment is largely moot.  The

15   underlying case has settled and the sanctions proceedings as to Montgomery are now

16   complete.  Consequently, it is unclear whether Montgomery will be a participant in any

17   further proceedings before the Magistrate Judge.  In any event, there is no evidence the

18   Magistrate Judge would have any difficulty putting out of her mind previously expressed

19   views on any pertinent matters.  Reassignment is not necessary to preserve the appearance

20   of justice, and reassignment would result in waste and duplication substantially

21   disproportionate to any perceived gain in preserving the appearance of fairness.  The

22   Magistrate Judge has expended considerable time and effort on these matters, presided over

23   the evidentiary hearing, and has intimate familiarity with the facts related to this matter.

24   The Court therefore denies Montgomery's request for reassignment at this time.

25   ///

26   ///

**C. Pham**

Pham argues the sanctions order violates her due process rights because Pham was not on notice that she personally might be subject to sanctions. Flynn responds that Pham had adequate notice and an opportunity to be heard, as he mentioned her by name in his motion for sanctions, requested her pro hac vice admission be revoked, and described her conduct in the motion and supporting declaration. Flynn also argues Pham had an opportunity to be heard because she filed a declaration in support of the Montgomery parties' opposition to Flynn's motion for sanctions, she testified at the hearing, and she filed an offer of proof in support of her objections.

Prior to imposing sanctions, a Court must provide the party or attorney facing potential sanctions notice and an opportunity to be heard. Lasar v. Ford Motor Co., 399 F.3d 1101, 1109-10 (9th Cir. 2005); see also Roadway Exp., Inc. v. Piper, 447 U.S. 752, 767 (1980). The Court must give notice as to the potential sanctions, the particular alleged misconduct, and "the particular disciplinary authority under which the court is planning to proceed." In re DeVille, 361 F.3d 539, 548 (9th Cir. 2004); Cole v. U.S. Dist. Ct. For Dist. of Idaho, 366 F.3d 813, 822 (9th Cir. 2004); see also Mendez v. County of San Bernardino, 540 F.3d 1109, 1132 (9th Cir. 2008) ("To the extent the district court was focused on punishing [counsel] for his trial misbehavior, it was incumbent on the court to give him fair notice of that personal exposure and obligation to appear in person.").

"These minimal procedural requirements give an attorney an opportunity to argue that his actions were an acceptable means of representing his client, to present mitigating circumstances, or to apologize to the court for his conduct." Lasar, 399 F.3d at 1110. Further, the procedural requirements ensure that the attorney has an opportunity to prepare a defense and explain his or her questionable conduct, that the judge will consider the propriety and severity of the sanction in light of the attorney's explanation of his or her conduct, and that "the facts supporting the sanction will appear in the record, facilitating

appellate review."  <u>Tom Growney Equip., Inc. v. Shelley Irr. Dev., Inc.</u>, 834 F.2d 833, 836 (9th Cir. 1987).  The Court need not hold an evidentiary hearing, however, as the opportunity to brief the issue will suffice to comply with due process.  <u>Lasar</u>, 399 F.3d at 1112; <u>Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.</u>, 210 F.3d 1112, 1118 (9th Cir. 2000).

The Magistrate Judge's sanctions order is contrary to law because the Magistrate Judge did not provide adequate notice to Pham prior to imposing the sanctions in this matter.  Flynn's motion for sanctions did not explicitly seek sanctions against Pham.  Flynn's motion sometimes referenced Montgomery's counsel in the plural, and discussed some of the actions Pham took.  However, Flynn specifically requested sanctions against the Montgomery parties "and their counsel of record, Deborah Klar and her firm."  (Mot. for Sanctions (Doc. #545) at 1.)

More importantly, the Magistrate Judge's order setting the evidentiary hearing did not advise Pham she may be subject to sanctions personally.  The order setting the evidentiary hearing stated that the hearing would address only two matters, Montgomery's September 2007 Declaration and matters related thereto, and the Montgomery parties' litigation against Flynn in the various other forums.  (Order (Doc. #770).)  The order setting the hearing thus was narrower than Flynn's requested sanctions as set forth in his motion, as he sought sanctions related to other alleged misconduct.  Even if Flynn's motion could be read to seek sanctions against Pham, the Magistrate Judge narrowed the scope of Flynn's motion and was not considering the full panoply of misconduct or relief set forth in Flynn's motion.  Consequently, Flynn's motion alone could not have put Pham on notice that she personally might be sanctioned.

The order setting the hearing also stated the following:

4.  Dennis Montgomery shall appear in person to testify concerning these matters.
5.  Michael Flynn, Esq., Deborah Klar, Esq., and Terri Pham, Esq.

1     shall attend the hearing in person and shall be prepared to address the
2     court concerning these matters.

3   (Id.)  Although Pham's attendance at the hearing was required, the order does not make

4   clear that Pham would be required to show cause why she would not be personally

5   sanctioned or what sanctions she might face.  By grouping Pham with Flynn, the party

6   seeking sanctions, the order setting the hearing did not give Pham adequate notice that she

7   personally was facing the possibility of sanctions.

8          The text of this order is in contrast to another order to show cause in this case

9   issued by the Magistrate Judge which made it clear the attorney, as well as her clients, was

10  facing sanctions.  On July 24, 2008, the Magistrate Judge entered an order setting a hearing

11  "to show cause as to why the Montgomery parties and Deborah A. Klar, counsel for the

12  Montgomery parties, should not be held in contempt" for failure to comply with one of the

13  Court's discovery-related orders.  (Order (Doc. #769).)

14         The magnitude and scope of the sanctions issued supports this conclusion.  The

15  sanctions order makes Pham jointly and severally liable for over $200,000 in fees and costs,

16  and revokes her pro hac vice application, which is the relief referred to in Flynn's motion

17  for sanctions.  However, the sanctions order also bars her from seeking pro hac vice

18  admission in this Court for five years, publishes the order as a public reprimand, refers

19  Pham to the Nevada and California Bars, and orders Pham to perform 100 hours of

20  community service.  The order setting the hearing in this matter did not adequately advise

21  Pham she would be subject to these considerable sanctions.

22         Flynn argues that Pham's due process rights were not violated because she

23  provided an offer of proof to this Court along with her objection to the Magistrate Judge's

24  order, and hence she has been afforded an opportunity to be heard.  However, Pham's offer

25  of proof was provided after the Magistrate Judge made her findings.  Pham did not have the

26  opportunity to provide this material to the Magistrate Judge, who was the fact finder in this

matter.  The undersigned is reviewing the Magistrate Judge's findings on a clearly

erroneous or contrary to law standard.  Pham's provision of materials after the fact does not

cure the pre-deprivation due process violation.  The Court therefore will sustain Pham's

objections to the Magistrate Judge's sanctions order, without prejudice to any further

proceedings consistent with this Order with respect to Flynn's motion for sanctions.[8]

### D.  Klar

Klar argues she was not afforded procedural due process protections for the

punitive sanctions set forth in the sanctions order.  Flynn responds that Klar received notice

of the charges against her, including the possible revocation of her pro hac vice admission,

as set forth in Flynn's motion for sanctions.

The Magistrate Judge's sanctions order is contrary to law because the Magistrate

Judge did not provide adequate notice to Klar prior to imposing the sanctions in this matter.

Flynn's motion for sanctions explicitly sought sanctions against Klar.  However, as

discussed above, the Magistrate Judge's order setting the evidentiary hearing was narrower

than Flynn's requested sanctions as set forth in his motion, as he sought sanctions related to

other alleged misconduct.  The Magistrate Judge narrowed the scope of Flynn's motion and

was not considering the full panoply of misconduct or relief set forth in Flynn's motion.

Consequently, Flynn's motion alone did not suffice to put Klar on notice as to the sanctions

the Magistrate Judge was considering.

As with Pham, although Klar's attendance at the hearing was required, the order

does not make clear that Klar would be required to show cause why she should not be

personally sanctioned or what sanctions she might face.  By grouping Klar with Flynn, the

party seeking sanctions, the order setting the hearing did not give Klar adequate notice that

---

[8]  Because the Court affirms Pham's objections on this basis, the Court need not address
Pham's other objections.

she personally was facing the possibility of sanctions.  Unlike the Magistrate Judge's July 24, 2008 order setting a hearing "to show cause as to why the Montgomery parties and Deborah A. Klar, counsel for the Montgomery parties, should not be held in contempt," the order setting the evidentiary hearing on Flynn's motion for sanctions did not adequately place Klar on notice that she personally may be subject to sanctions.

As discussed above, the magnitude and scope of the sanctions issued supports this conclusion.  The sanctions order makes Klar jointly and severally liable for over $200,000 in fees and costs and revokes her pro hac vice application, which is the relief referred to in Flynn's motion for sanctions.  But the sanctions order also bars her from seeking pro hac vice admission in this Court for five years, publishes the order as a public reprimand, refers Klar to the Nevada and California Bars, and orders her to perform 200 hours of community service.  The order setting the hearing in this matter did not adequately advise Klar she would be subject to these considerable sanctions.

Moreover, the sanctions order appears to consider Klar's conduct beyond the two subjects mentioned in the order setting the hearing.  The sanctions order stated that Klar's misconduct "did not occur in a vacuum; instead it was part of a vexing pattern of conduct throughout her tenure as lead counsel until she was replaced in July 2008."  (Order (Doc. #985) at 44.)  The sanctions order noted that Klar "continued to invite sanctions against her clients and herself," and discussed subsequent orders of this Court regarding Klar and the Montgomery parties' failure to abide by this Court's orders, ultimately resulting in sanctions against Montgomery in the amount of $2,500 per day.  (Id. at 44-45.)  The Magistrate Judge may have recounted these events as further support for her findings as to Klar's bad faith in relation to the two areas of inquiry in the order setting the evidentiary hearing.  However, it is unclear whether the Magistrate Judge was limiting her use of Klar's subsequent conduct as evidence of her earlier bad faith or as further sanctionable conduct.  The Court therefore will sustain Klar's objections to the Magistrate Judge's sanctions order, without prejudice to

1   any further proceedings consistent with this Order with respect to Flynn's motion for

2   sanctions.[9]

3   **IV. CONCLUSION**

4           IT IS THEREFORE ORDERED that the Objections of Liner Grode Stein

5   Yankelevitz Sunshine Regenstreif & Taylor LLP to Order Re: Motion for Sanctions (Doc.

6   #1035) with supporting declaration (Doc. #1036) are SUSTAINED without prejudice to any

7   further proceedings consistent with this Order with respect to Flynn's motion for sanctions.

8           IT IS FURTHER ORDERED that the Objections of Dennis Montgomery to

9   Order Re: Motion for Sanctions (Doc. #1037) are hereby OVERRULED.

10          IT IS FURTHER ORDERED that Teri Pham's Objection to Magistrate Judge's

11  Order (Doc. #1040) are hereby SUSTAINED without prejudice to any further proceedings

12  consistent with this Order with respect to Flynn's motion for sanctions.

13          IT IS FURTHER ORDERED that the Objections of Non-Party Deborah A. Klar

14  to Findings of Magistrate Judge in Stayed Order Re: Motion for Sanctions (Doc. #1042) are

15  hereby SUSTAINED without prejudice to any further proceedings consistent with this

16  Order with respect to Flynn's motion for sanctions.

17

18  DATED:  April 5, 2010

19                                          _____

20                                          PHILIP M. PRO
                                            United States District Judge

21

22

23

24

25

26          [9] Because the Court affirms Klar's objections on this basis, the Court need not address Klar's
    other objections.

38