John Frankovich, NV Bar No. 667
Leigh Goddard, NV Bar No. 6315
Debbie Leonard, NV Bar No. 8260
McDonald Carano Wilson LLP
100 West Liberty Street, 10th Floor
Reno, NV 89501
775-788-2000
775-788-2020 (fax)
jfrankovich@mcdonaldcarano.com
lgoddard@mcdonaldcarano.com
dleonard@mcdonaldcarano.com

Attorneys for Appellant Teri Pham

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| DENNIS MONTGOMERY, et al., | 3:06-CV-00056-PMP (VPC)-BASE |
| Plaintiffs, | 3:06-CV-00145-PMP (VPC) |
| v. | **NOTICE OF APPEAL** |
| ETREPPID TECHNOLOGIES, LLC, et al., | |
| Defendants. | |

Notice is hereby given that Teri Pham hereby appeals to the United States Court of Appeal for the Ninth Circuit from an Order on Teri Pham's Objection to Magistrate Judge's Order (Doc. No. 1150), entered in this action on the 5th day of April 2010.

Dated: April 23, 2010.

McDonald Carano Wilson LLP

John Frankovich
Leigh Goddard
Debbie Leonard

Attorneys for Teri Pham

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of McDONALD CARANO WILSON LLP and that on April 23, 2010, pursuant to FRAP 25, I caused to be delivered via electronic transmission, a file-stamped copy of NOTICE OF APPEAL TO UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT, addressed to the individuals listed below at their last known email addresses as follows:

Michael J. Flynn
Flynn & Stillman
P.O. Box 690, 6125 El Tordo
Rancho Santa Fe, CA 92067; and
mjfbb@msn.com

Ellyn S. Garofalo
Liner Yakelevitz Sunshine & Regenstreif,
1100 Glendon Avenue
Los Angeles, CA 90024
egarofalo@linerlaw.com

Trustee of the Bankruptcy Estate of
Montgomery
Jason M. Rund
c/o Thomas H. Casey
The Law Office of Thomas H. Casey, Inc.
22342 Avenida Empresa Suite 260
Rancho Santa Margarita, CA 92688
msilva@tomcaseylaw.com

Timothy Ryan O'Reilly
O'Reilly Law group
325 S. Maryland Parkway
Las Vegas, NV 89101
tor@oreillylawgroup.com

Dennis Kennedy
Bailey Kennedy
8984 Spanish Ridge Avenue
Las Vegas, NV 89148
dkennedy@baileykennedy.com

Carla DiMare
Law Offices of Carla DiMare
P.o. Box 1668
Rancho Santa Fe, CA 92067
cdimare@worldnet.att.net

Gary R. Goodheart
Jones Vargas
3773 Howard Hughes Parkway
3rd Floor South
Las Vegas, NV 89109
grg@jonesvargas.com

Amanda J. Cowley
Jones Vargas
3773 Howard Hughes Parkway
3rd Floor South
Las Vegas, NV 89109
acowley@jonesvargas.com

Bradley Scott Schrager
Jones Vargas
3773 Howard Hughes Parkway
3rd Floor South
Las Vegas, NV 89109
bschrager@jonesvargas.com

Pamela Miller

1  John Frankovich, NV Bar No. 667
   Leigh Goddard, NV Bar No. 6315
2  Debbie Leonard, NV Bar No. 8260
   McDonald Carano Wilson LLP
3  100 West Liberty Street, 10th Floor
   Reno, NV 89501
4  775-788-2000
   775-788-2020 (fax)
5  jfrankovich@mcdonaldcarano.com
   lgoddard@mcdonaldcarano.com
6  dleonard@mcdonaldcarano.com

7  Attorneys for Appellant Teri Pham

8

9              UNITED STATES DISTRICT COURT

10             DISTRICT OF NEVADA

11

12  DENNIS MONTGOMERY, et al.,        )   **3:06-CV-00056-PMP (VPC)-BASE**
                                      )   3:06-CV-00145-PMP (VPC)
13            Plaintiffs,             )
                                      )   **REPRESENTATION STATEMENT**
14  v.                                )
                                      )
15  ETREPPID TECHNOLOGIES, LLC, et al.,  )
                                      )
16            Defendants.             )
                                      )
17  _____   )

18             **REPRESENTATION STATEMENT**

19      The undersigned represents TERI PHAM, appellant in this matter, and no other party.

20  Following is a service list that shows all of the parties to the action and identifies their counsel by

21  name, firm, address, and telephone number (FRAP 12(b); Circuit Rule 3-2(b)).

22             **COUNSEL OF RECORD**

23  PARTIES                          REPRESENTED BY

24  Appellant:                       John Frankovich
    TERI PHAM                        McDonald Carano Wilson LLP
25                                   100 West Liberty Street, 10th Floor
                                     Reno, NV 89501
26                                   775-788-2000
                                     775-788-2020 (fax)
27                                   jfrankovich@mcdonaldcarano.com

28

Leigh Goddard
McDonald Carano Wilson LLP
100 West Liberty Street, 10th Floor
Reno, NV 89501
775-788-2000
775-788-2020 (fax)
lgoddard@mcdonaldcarano.com

Debbie Leonard
McDonald Carano Wilson LLP
100 West Liberty Street, 10th Floor
Reno, NV 89501
775-788-2000
775-788-2020 (fax)
dleonard@mcdonaldcarano.com

Plaintiff/Counter-defendant:
DENNIS MONTGOMERY

Trustee of the Bankruptcy Estate of
Montgomery
Jason M. Rund
c/o Thomas H. Casey
The Law Office of Thomas H. Casey, Inc.
22342 Avenida Empresa Suite 260
Rancho Santa Margarita, CA 92688
949-766-8787
949-766-9896 (fax)
msilva@tomcaseylaw.com

Timothy Ryan O'Reilly
O'Reilly Law Group
325 S. Maryland Parkway
Las Vegas, NV 89101
702-382-2500
702-384-6266 (fax)
tor@oreillylawgroup.com

Plaintiff/Counter-defendant:
MONTGOMERY FAMILY TRUST

Dennis L. Kennedy
Bailey Kennedy
8984 Spanish Ridge Ave.
Las Vegas, NV 89148-1302
702-562-8820
702-562-8821 (fax)
dkennedy@baileykennedy.com

Interested Party:
MICHAEL J. FLYNN

Carla DiMare
Law Offices of Carla DiMare
P.O. Box 1668
Rancho Santa Fe, CA 92067
858-775-0707
858-756-2859 (fax)
cdimare@worldnet.att.net

1    Michael James Flynn
     Flynn & Stillman
2    P.O Box 690, 6125 El Tordo
     Rancho Santa Fe, CA 92067
3    858-775-7624
     858-759-0711 (fax)
4    mjfbb@msn.com

5    DEBORAH A. KLAR    Gary R. Goodheart
                        Jones Vargas
6                       3773 Howard Hughes Pkwy.
                        3rd Floor South
7                       Las Vegas, NV 89109
                        702-862-3300
8                       702-737-7705 (fax)
                        grg@jonesvargas.com

9                       Amanda J. Cowley
                        Jones Vargas
10                      3773 Howard Hughes Pkwy.
                        3rd Floor South
11                      Las Vegas, NV 89109
12                      702-862-3300
                        702-737-7705 (fax)
13                      acowley@jonesvargas.com

14                      Bradley Scott Schrager
                        Jones Vargas
15                      3773 Howard Hughes Pkwy.
                        3rd Floor South
16                      Las Vegas, NV 89109
                        702-862-3300
17                      702-737-7705 (fax)
                        bschrager@jonesvargas.com

18
     LINER GRODE STEIN YANKELEVITZ    Ellyn S. Garofalo
19   SUNSHINE REGENSTREIF            Liner Yankelevitz Sunshine & Regenstreif
     & TAYLOR LLP                    LLP
20                                   1100 Glendon Avenue
                                     Los Angeles, CA 90024-3503
21                                   310-500-3500
                                     310-500-3501 (fax)
22                                   egarofalo@linerlaw.com

Dated:  April 23, 2010.

23                   McDonald Carano Wilson LLP

24

25                   _John Frankovich_
                     John Frankovich
26                   Leigh Goddard
                     Debbie Leonard

27                   Attorneys for Teri Pham

28

                              3

**Form 6. Civil Appeals Docketing Statement**

| USCA DOCKET # (IF KNOWN) |
|---|
|  |

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
## CIVIL APPEALS DOCKETING STATEMENT

PLEASE ATTACH ADDITIONAL PAGES IF NECESSARY.

| TITLE IN FULL:<br><br>DENNIS MONTGOMERY, et. al.,<br><br>   Plaintiffs,<br><br>v.<br><br>ETREPPID TECHNOLOGIES, LLC, et. al.,<br><br>   Defendants. | DISTRICT: Nevada    JUDGE: Philip M. Pro |
|---|---|
|  | DISTRICT COURT NUMBER: 3:06-cv-0056-PMP-VPC |
|  | DATE NOTICE OF APPEAL FILED: 04/23/10    IS THIS A CROSS-APPEAL? ☐ YES |
|  | IF THIS MATTER HAS BEEN BEFORE THIS COURT PREVIOUSLY, PLEASE PROVIDE THE DOCKET NUMBER AND CITATION (IF ANY):<br>None. |

**BRIEF DESCRIPTION OF ACTION AND RESULT BELOW:**
Please see attached page for description of action and result below.

**PRINCIPAL ISSUES PROPOSED TO BE RAISED ON APPEAL:**
Please see attached page for principal issues proposed to be raised on appeal.

**PLEASE IDENTIFY ANY OTHER LEGAL PROCEEDING THAT MAY HAVE A BEARING ON THIS CASE (INCLUDE PENDING DISTRICT COURT POST-JUDGMENT MOTIONS):**
Chapter 7 Bankruptcy Petition of Dennis Montgomery and Brenda Montgomery, United States Bankruptcy Court, Central District of California, Riverside, Case No. 09-24322 (stay lifted for the disposition of Magistrate Judge's sanction order); Motion to Conform Order of Magistrate Judge to Order of District Judge and Amended Motion for Sanctions by Interested Party Michael J. Flynn, Case No. 3:06-cv-0056-PMP-VPC.

**DOES THIS APPEAL INVOLVE ANY OF THE FOLLOWING:**
☐ Possibility of settlement
☐ Likelihood that intervening precedent will control outcome of appeal
☐ Likelihood of a motion to expedite or to stay the appeal, or other procedural matters (specify)

☐ Any other information relevant to the inclusion of this case in the Mediation Program

☐ Possibility parties would stipulate to binding award by Appellate Commissioner in lieu of submission to judges.

| LOWER COURT INFORMATION | | | Page 2 of 2 |
|---|---|---|---|
| JURISDICTION | | DISTRICT COURT DISPOSITION | |
| FEDERAL | APPELLATE | TYPE OF JUDGMENT / ORDER APPEALED | RELIEF |
| ☒ FEDERAL QUESTION<br><br>☐ DIVERSITY<br><br>☐ OTHER (SPECIFY) | ☐ FINAL DECISION OF DISTRICT COURT<br><br>☒ INTERLOCUTORY DECISION APPEALABLE AS OF RIGHT<br><br>☐ INTERLOCUTORY ORDER CERTIFIED BY DISTRICT JUDGE (SPECIFY):<br><br><br>☐ OTHER (SPECIFY): | ☐ DEFAULT JUDGMENT<br>☐ DISMISSAL / JURISDICTION<br>☐ DISMISSAL / MERITS<br>☐ SUMMARY JUDGMENT<br>☐ JUDGMENT / COURT DECISION<br>☐ JUDGMENT / JURY VERDICT<br>☐ DECLARATORY JUDGMENT<br>☐ JUDGMENT AS A MATTER OF LAW<br>☒ OTHER (SPECIFY):<br>Order regarding Magistrate Judge Order regarding contempt sanctions. | ☐ DAMAGES:<br>   SOUGHT $_____<br>   AWARDED $_____<br>☐ INJUNCTIONS:<br>   ☐ PRELIMINARY<br>   ☐ PERMANENT<br>   ☐ GRANTED<br>   ☐ DENIED<br><br>☐ ATTORNEY FEES:<br>   SOUGHT $_____<br>   AWARDED $_____<br>   ☐ PENDING<br><br>☐ COSTS: $_____ |

## CERTIFICATION OF COUNSEL

**I CERTIFY THAT:**

1. COPIES OF ORDER / JUDGMENT APPEALED FROM ARE ATTACHED.
2. A CURRENT SERVICE LIST OR REPRESENTATION STATEMENT WITH TELEPHONE AND FAX NUMBERS IS ATTACHED ( SEE 9TH CIR. RULE 3-2
3. A COPY OF THIS CIVIL APPEALS DOCKETING STATEMENT WAS SERVED IN COMPLIANCE WITH FRAP 25.
4. I UNDERSTAND THAT FAILURE TO COMPLY WITH THESE FILING REQUIREMENTS MAY RESULT IN SANCTIONS, INCLUDING DISMISSAL OF THIS APPEAL.

_John Frankovich_
Signature

_23 April 10_
Date

## COUNSEL WHO COMPLETED THIS FORM

NAME: John Frankovich; Leigh Goddard; Debbie Leonard

FIRM: **McDonald Carano Wilson LLP**

ADDRESS: 100 West Liberty Street, 10th Floor, Reno NV 89501

E-MAIL: jfrankovich@mcdonaldcarano.com; lgoddard@mcdonaldcarano.com; dleonard@mcdonaldcarano.com

TELEPHONE: (775) 788-2000

FAX: **(775) 788-2020**

**\* THIS DOCUMENT SHOULD BE FILED IN THE DISTRICT COURT WITH THE NOTICE OF APPEAL\***
**\* IF FILED LATE, IT SHOULD BE FILED DIRECTLY WITH THE U.S. COURT OF APPEALS\***

**ATTACHMENT TO CIVIL APPEALS DOCKETING STATEMENT**
**Dennis Montgomery et al. v. ETreppid Technologies, LLC et al.**
**District of Nevada Case No. 3:06-cv-0056-PMP-VPC**

**BRIEF DESCRIPTION OF ACTION AND RESULT BELOW:**

This appeal arises out of an Objection to a Magistrate Judge's Order, entered after final judgment, which imposed contempt sanctions against Appellant, including holding Appellant Teri Pham ("Pham") personally jointly and severally liable for more than $200,000 in attorneys' fees, ordering Pham to do 100 hours of community service, and suspending her from practicing in the United State District Court, District of Nevada for five years.  In its ruling on the Objection, the District Court erroneously held that the Magistrate Judge's imposition of contempt sanctions was a non-dispositive order, under 28 U.S.C. § 636(b)(1)(A), rather than a dispositive matter that could only be heard in the first instance by the Magistrate Judge through Pham's consent.  Although the District Court sustained Pham's Objection on due process grounds, the District Court's Order was without prejudice to further proceedings before the Magistrate Judge on the contempt sanction issue.  In other words, the case was remanded for further contempt proceedings before the Magistrate Judge which the Magistrate Judge has no authority to consider absent Pham's consent.  This appeal is taken under the collateral order doctrine.  *Cohen v. Beneficial Indus. Loan Co.,* 337 U.S. 541, 546 (1949).

**PRINCIPAL ISSUES PROPOSED TO BE RAISED ON APPEAL:**

Did the District Court err in holding that the Magistrate Judge's Order imposing contempt sanctions against Pham was a non-dispositive matter under 28 U.S.C. § 636(b)(1)(A), or are such contempt orders considered dispositive and governed by § 636(b)(1)(B) such that the Magistrate Judge had no authority to consider and dispose of such matters absent Pham's consent to the Magistrate Judge's jurisdiction?

Did the District Court err in holding that the Magistrate Judge's Order entered after final judgment was a non-dispositive matter under 28 U.S.C. § 636(b)(1)(A)?

Did the District Court err in remanding the matter back to the Magistrate Judge to hold further contempt proceedings when the Magistrate Judge has no authority to consider such matters absent Pham's consent to the Magistrate Judge's jurisdiction?



UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

DENNIS MONTGOMERY and the
MONTGOMERY FAMILY TRUST,

         Plaintiffs,

v.

ETREPPID TECHNOLOGIES, LLC;
WARREN TREPP; and the UNITED
STATES DEPARTMENT OF DEFENSE,

         Defendants.

AND ALL RELATED MATTERS.

3:06-CV-00056-PMP-VPC
BASE FILE

3:06-CV-00145-PMP-VPC

O R D E R

Presently before the Court is the Objections of Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor LLP to Order Re: Motion for Sanctions (Doc. #1035) with supporting declaration (Doc. #1036), filed on May 11, 2009.  Interested Party Michael Flynn filed a Response (Doc. #1102) on June 25, 2009.

Also before the Court is the Objections of Dennis Montgomery to Order Re: Motion for Sanctions (Doc. #1037) with supporting declaration (Doc. #1038), filed on May 11, 2009.  Interested Party Michael Flynn filed a Response (Doc. #1099) on June 25, 2009.

Also before the Court is Teri Pham's Objection to Magistrate Judge's Order (Doc. #1040), filed on May 11, 2009.  A supporting letter (Doc. #1050) was filed on May 15, 2009, and an errata (Doc. #1051) was filed on May 19, 2009.  Non-Party Deborah Klar filed a Joinder (Doc. #1057) on May 27, 2009.  Interested Party Michael Flynn filed a

1    Response (Doc. #1098) on June 25, 2009.  Teri Pham filed a Notice of Relevant New Case

2    Law (Doc. #1127) on October 9, 2009.

3          Also before the Court is the Objections of Non-Party Deborah A. Klar to

4    Findings of Magistrate Judge in Stayed Order Re: Motion for Sanctions (Doc. #1042) with

5    supporting declaration (Doc. #1043), filed on May 11, 2009.  Interested Party Michael

6    Flynn filed a Response (Doc. #1100) on June 25, 2009.  Deborah Klar filed a Notice of

7    Relevant Case Law (Doc. #1128) on October 19, 2009.

8    **I. BACKGROUND**

9          This case arises out of a dispute between Dennis Montgomery ("Montgomery")

10   and Warren Trepp ("Trepp") over the ownership of certain computer software codes.

11   During the course of the underlying actions, Montgomery terminated the representation of

12   his counsel, refused to pay his former counsel's attorneys' fees, and sought the return of his

13   client file.  Montgomery obtained new counsel who represented him both in the underlying

14   action and in various efforts to obtain his client file from his former counsel.

15   Montgomery's former counsel ultimately filed a motion for sanctions in this Court against

16   Montgomery and his new counsel for, among other things, their conduct in seeking to

17   obtain the client file in various other forums.  The Magistrate Judge in this action, the

18   Honorable Valerie P. Cooke, held an evidentiary hearing and subsequently awarded

19   sanctions against Montgomery, his new counsel, and new counsels' law firm.  The

20   sanctioned parties object to the sanctions award.

21          The underlying lawsuits commenced when Trepp filed suit in Nevada state court

22   on January 19, 2006.  (Status Report (Doc. #16 in 3:06-CV-00145-PMP-VPC).)  On

23   January 31, 2006, Montgomery filed suit against Trepp in this Court.  (Compl. (Doc. #1).)[1]

24

25

         [1] Citations are to the base file docket in this case, 3:06-CV-00056-PMP-VPC, unless otherwise

26   indicated.

1   In the state court action, Montgomery asserted a third party claim against the United States

2   Department of Defense. (Notice of Removal (Doc. #1 in 3:06-CV-00145-PMP-VPC), Ex.

3   1.) The Department of Defense removed the state court action to this Court. (Notice of

4   Removal (Doc. #1 in 3:06-CV-00145-PMP-VPC).) The Court subsequently consolidated

5   these two actions. (Mins. of Proceedings (Doc. #123).)

6            Prior to removal to this Court, the state court held a preliminary injunction

7   hearing. (Snyder Decl. (Doc. #33 in 3:06-CV-00145-PMP-VPC), Trans. of Proceedings.)

8   At that hearing, Montgomery was represented by local counsel Ronald Logar ("Logar") and

9   Eric Pulver ("Pulver"), as well as Michael Flynn ("Flynn"), who was appearing pro hac

10  vice. (Id.; Verified Pet. for Permission to Practice Pro Hac Vice (Doc. #9 in 3:06-CV-

11  00145-PMP-VPC).) Flynn's pro hac vice petition identified a Massachusetts bar number

12  for Flynn, and listed his address in California. (Verified Pet. for Permission to Practice Pro

13  Hac Vice (Doc. #9 in 3:06-CV-00145-PMP-VPC).) At the hearing, which Montgomery

14  attended in person, Logar introduced Flynn to the state court as "a member of the

15  Massachusetts Bar," indicated that Flynn had applied for pro hac vice status, and stated that

16  the Massachusetts bar had sent a certificate of good standing to the Nevada State Bar. (Id.

17  at 5-6.) Logar requested the court permit Flynn to appear at the hearing, and the state court

18  permitted it. (Id.)

19           Around this same time period, the Federal Bureau of Investigation sought and

20  obtained search warrants to search Montgomery's house and several storage units.

21  (Application & Aff. for Search Warrant (Doc. #1, #4, #6, #8, #10, #12 in 3:06-CV-00263-

22  PMP-VPC).) Montgomery subsequently filed a motion to unseal the search warrant

23  affidavits and for the return of his property. (Mot. to (1) Unseal Search Warrant Affs.; (2)

24  For the Return of Property; and (3) For the Segregation and Sealing of All Attorney-Client

25  & Trade Secret Materials Seized (Doc. #21 in 3:06-CV-00263-PMP-VPC).)

26  ///

3

1    In the search warrant proceedings, the United States moved in February 2007 to

2 strike pleadings filed by Flynn and to preclude Flynn's pro hac vice admission in the case.

3 (Gov't's Mot. to Strike (Doc. #110 in 3:06-CV-00263-PMP-VPC).)  The Government

4 contended that Flynn was admitted proc hac vice only in the related civil suits, not in the

5 search warrant proceedings.  (Id. at 2.)  The Government further contended that Flynn

6 should not be admitted because his pro hac vice petitions in the consolidated civil actions

7 contained what the Government asserted were misleading statements.  (Id.)  Specifically,

8 the Government argued that although the application stated Flynn was licensed only in

9 Massachusetts, Flynn actually maintained a residence and phone number in California, and

10 practiced in California.  (Id. at 2-4.)  The Government included as an exhibit a February 7,

11 2007 letter which Flynn wrote on Montgomery's behalf to certain high ranking government

12 officials.  (Id., Ex. 1.)  On the letterheard beneath Flynn's name it states "admitted only in

13 Massachusetts."  (Id.)

14    Flynn, Logar, and Pulver opposed the motion on Montgomery's behalf.

15 (Montgomery's Opp'n to the Gov't Mot. to Strike (Doc. #113 in 3:06-CV-00263-PMP-

16 VPC).)  In support of the opposition, Flynn filed a declaration in which he averred that he is

17 a member of the Massachusetts bar, he maintains residences in both Massachusetts and

18 California, and he maintains an office address in Boston, Massachusetts.  (Flynn Decl.

19 (Doc. #114 in 3:06-CV-00263-PMP-VPC) at 1-3.)  Flynn also included two letters he sent

20 in February 2007 on Montgomery's behalf to various government officials which stated

21 beneath his name that he was admitted only in Massachusetts.  (Id., Exs. 1-2.)

22    Montgomery also filed a declaration in support of the opposition, which hereafter

23 will be referred to as the February 2007 Declaration.  (Montgomery Decl. (Doc. #115 in

24 3:06-CV-00263-PMP-VPC).)  Montgomery averred, among other things, that he had read

25 the motion to disqualify Flynn, that he had read letters Flynn had sent on Montgomery's

26 behalf to government officials, that the Government's attempt to remove Flynn "would

1  gravely damage" his constitutional protections, and that Flynn was Montgomery's counsel

2  of choice due to Flynn's "experience, integrity, and litigation expertise." (Id. at ¶¶ 4, 13-

3  14.)[2] Montgomery attached as an exhibit to his declaration a March 1, 2006 letter Flynn

4  sent to various government officials on Montgomery's behalf. (Id., Ex. 1.) The letterhead

5  states beneath Flynn's name, "only admitted in Massachusetts." (Id.)

6         This Court denied the motion to strike Flynn's filings in the search warrant

7  proceedings. (Order (Doc. #122 in 3:06-CV-00263-PMP-VPC).) The Court also ordered

8  the entire search warrant proceedings, which up to this point had been sealed, to be

9  unsealed subject to objections by the United States regarding the states secret privilege and

10 objections by the parties to the civil action regarding trade secrets or other privileges. (Id.)

11 The Court set forth a procedure by which the United States would complete review and

12 redaction of the privileged material in the search warrant proceedings, after which the

13 parties to the civil cases would have access to the redacted materials. (Order (Doc. #147 in

14 3:06-CV00056-PMP-VPC).) The parties then would have a certain period of time within

15 which to review the materials and assert any objections to the unsealing of any unredacted

16 materials. (Id.)

17        Montgomery filed an objection to the Government's decision not to redact certain

18 information which Montgomery contended was protected by the states secret privilege.

19 (Montgomery's Opp'n to the Gov't's Designations of State Secrets & Classified

20 Information in the Search Warrant Case File (Doc. #168).) At a hearing on the parties'

21 various objections, Flynn proposed submitting a declaration signed by Montgomery under

22 oath which stated, among other things, that an attached exhibit was a true and correct copy

23 of an email. (Mins. of Proceedings (Doc. #188).) The Court permitted the Trepp parties

24

25  ───────────────

2  The February 2007 Declaration contains two paragraphs numbered "13" and "14." The Court

26 refers to paragraphs 13 and 14 contained on page 8 of the Declaration.

1   and the Government to review the declaration and file any objections thereto.  (Mins. of

2   Proceedings (Doc. #188).)  The Government determined that Montgomery's declaration

3   contained material subject to the states secrets privilege and the related protective order

4   entered in the case, and provided redactions thereto.  (United States' Notice of Filing (Doc.

5   #197).)  The Trepp parties also filed an objection, claiming that the email which

6   Montgomery averred was a "true and accurate copy" of the original was fabricated.  (Defs.

7   eTreppid Tech., LLC & Warren Trepp's Notice of Obj. to the Public Filing of a Fabricated

8   Document by Dennis Montgomery (Doc. #198).)

9           On July 9, 2007, Flynn and out-of-state co-counsel Carla DiMare[3] ("DiMare")

10   moved to withdraw as Montgomery's attorneys.  (Ex Parte Mot. to Withdraw as Counsel for

11   Montgomery (Doc. #204).)  Flynn and DiMare gave as grounds for their withdrawal that

12   Montgomery breached an obligation for payment of fees and engaged in conduct that made

13   continued representation unreasonably difficult.  (Id.)

14           In response to Flynn's motion to withdraw, the United States requested Flynn's

15   withdrawal be subject to various conditions related to the protection of states secrets

16   privileged materials that may be contained in Flynn's client files.  (United States' Response

17   to Ex Parte Mot. to Withdraw as Counsel for Montgomery (Doc. #209).)  Montgomery,

18   through Logar and Pulver, indicated he did not oppose Flynn's motion to withdraw, and he

19   already had retained the law firm of Liner Yankelevitz Sunshine & Regenstrief LLP ("Liner

20   Firm") to substitute into the case.  (Pls.' Reply to Michael J. Flynn's & Carla A. DiMare's

21   Mot. to Withdraw & the United States' Response Thereto (Doc. #213).)  Montgomery

22   opposed the Government's efforts to place as conditions upon Flynn's withdrawal a

23   governmental review of the client file because such a review would intrude on attorney-

24   client privileged materials.  (Id.)  Montgomery also made reference to Nevada and

25

26       [3] DiMare was admitted pro hac vice in this Court on February 6, 2007.  (Order (Doc. #113).)

1   California professional rules of conduct which he contended would require Flynn to turn

2   over the client file to Montgomery.  (Id.)  Montgomery supported this filing with a

3   declaration from Deborah Klar ("Klar"), a partner of the Liner Firm.  (Id., Klar Decl.)  Klar

4   averred that the Liner Firm was ready, willing, and able to substitute into the case upon

5   receipt of the client file from Flynn.  (Id.)  Klar requested the Court reject the Government's

6   requested conditions on Flynn's withdrawal and "require Mr. Flynn and Ms. DiMare to turn

7   over all client files in their possession."  (Id.)

8         On July 31, the Court set an August 17 date for hearing Flynn's motion to

9   withdraw.  (Min. Order (Doc. #223).)  On August 1, Montgomery filed a notice with the

10  Court indicating that Flynn and DiMare had been terminated as counsel of record.  (Notice

11  of Termination of Counsel (Doc. #227).)

12        On August 3, Klar and another partner of the Liner Firm, Teri Pham ("Pham"),

13  filed a Complaint in Los Angeles Superior Court on Montgomery's behalf against Flynn

14  (the "LA Action").  (Request for Judicial Notice (Doc. #262), Ex. 1.)  The Complaint

15  alleged that Flynn led Montgomery to believe that Flynn was licensed to practice law in

16  California, and that "[t]hroughout the course of his representation, Flynn held himself out to

17  [Montgomery] as a California lawyer."  (Id.)  The Complaint further alleged that Flynn

18  refused to return the client file and that Flynn has "threatened to disclose, and has disclosed

19  confidential and privileged attorney-client communications to others."  (Id.)  The Complaint

20  sought as relief a preliminary injunction requiring Flynn to return the client file and

21  enjoining Flynn from disclosing privileged communications to any third party.  (Id.)

22        On August 6, Flynn removed the LA Action to the United States District Court

23  for the Central District of California and sought transfer to this Court.  (Request for Judicial

24  Notice (Doc. #275), Ex. 2.)  Two days later, Flynn lodged a number of exhibits regarding

25  his representation of Montgomery which he contended demonstrated he consistently

26  represented himself as an attorney licensed only in Massachusetts.  (Tr. (Doc. #873) at

1   217).)

2         On August 14, the Liner Firm entered an appearance in the action on

3   Montgomery's behalf, subject to the approval of a pro hac vice application. (Notice of

4   Assoc. of Counsel (Doc. #236).) That same date, Liner Firm partners Klar and Pham filed

5   petitions for pro hac vice admission, and the Court granted the petitions. (Verified Pets.

6   (Doc. #233, #234); Orders (Doc. #237, #239).)

7         Also on that same date, Flynn filed a declaration in this Court referencing the LA

8   Action and attaching as an exhibit Flynn's motion to dismiss that action against him.

9   (Flynn Decl. (Doc. #240).) In the motion to dismiss in the LA Action, Flynn identified

10   various statements in the LA Action Complaint which he contended were false, specifically

11   with respect to Montgomery's knowledge about Flynn's status as admitted to practice only

12   in Massachusetts. (Id., Ex. 1.)

13         On August 17, Flynn and DiMare filed in this action notices of liens and/or

14   retaining liens for unpaid fees and costs. (Notices (Doc. #243, #245.) Flynn asserted over

15   $600,000 in unpaid fees. (Id.)

16         That same date, the Court held a hearing on Flynn's motion to withdraw as

17   Montgomery's counsel in this action. (Mins. of Proceedings (Doc. #247).) At the hearing,

18   the undersigned indicated the Court was aware of the LA Action, but indicated the Court

19   did not have "the details of that and don't know to the extent to which I have to." (Tr. of

20   Hrg. (Doc. #267) at 4-5.) Klar advised the Court that Montgomery had a pending suit in

21   California regarding turnover of the client file. (Id. at 12.) Klar stated that Montgomery

22   understood Flynn was California counsel, and that under both California and Massachusetts

23   law, there is no authority for a retaining lien. (Id.) As to the scope of documents which

24   Klar was seeking, Klar indicated Montgomery gave Flynn original documents which had

25   not been returned. (Id. at 19.) However, Klar had access to local counsel's file, which

26   consisted of pleadings and exhibits filed with the Court. (Id. at 19-20.) Additionally, Flynn

1  indicated that much of the representation was performed via emails between Flynn and

2  Montgomery, many of which were copied to Logar and Pulver. (Id. at 20-21.) Flynn

3  estimated that he had maybe one or two original documents of Montgomery's. (Id. at 22.)

4  When the Court questioned Klar about the emails, Klar responded that she did have access

5  to Montgomery's emails. (Id. at 23-24.)

6          At the hearing, the Court questioned Flynn regarding the fee and file dispute and

7  whether the Court should--

8          more appropriately simply leave that issue to the court in California
           that's addressing the lawsuit between counsel, including, I would
9          imagine, fees and with some secure knowledge that while it may not
           constitute a bond, it's a forum, in which your fee interests and
10         Montgomery's position on the matter can be vindicated. Why do we
           need to tie this litigation up with regard to a fee dispute, if that fee
11         dispute is encompassed in the relationship of attorney/client as
           encompassed in the California litigation?

12

13  (Id. at 25.) Flynn responded by noting, among other things, that the LA Action did not

14  involve a fee dispute. (Id. at 27.) Rather, the action only sought injunctive relief for return

15  of the file and to enjoin Flynn from disclosing privileged materials. (Id. at 27-28.) The

16  Court took the matter under submission. (Mins. of Proceedings (Doc. #247).)

17          On August 21, Flynn filed a motion for attorneys' fees and costs in this Court,

18  seeking the outstanding fees and costs owed to Flynn and DiMare for their work in the

19  underlying action. (Mot. for Attorney Fees & Costs (Doc. #248).) On August 31,

20  Montgomery filed an objection to Flynn's notice of lien, asserting the parties' attorney-

21  client relationship was governed by California law which does not permit retaining liens,

22  the amount of fees requested was unreasonable, an action already was pending in the Los

23  Angeles Superior Court regarding the attorney-client relationship between the parties, Flynn

24  was licensed to practice only in Massachusetts which does not allow retaining liens, and

25  even under Nevada law Flynn was not entitled to a retaining lien because he voluntarily

26  withdrew. (Notice of Obj. to Notice of Lien (Doc. #254).)

1        On August 22, the United States District Court for the Central District of

2   California denied Montgomery's motion to transfer the case to this Court, and ordered the

3   action remanded to the Los Angeles Superior Court.  (Request for Judicial Notice (Doc.

4   #262), Ex. 3.)  The court remanded for lack of diversity jurisdiction, finding Flynn failed to

5   establish more than $75,000 was at stake with respect to the requested injunctive relief.

6   (Id.)

7        On September 4, the undersigned issued an order granting Flynn's motion to

8   withdraw.  (Order (Doc. #256).)  In the Order, the Court noted that the Government sought

9   to condition Flynn's withdrawal on four conditions in relation to protection of state secrets

10  privileged material potentially residing in Flynn's files.  (Id.)  The Court also noted the

11  dispute between Flynn and Montgomery's new counsel over the turnover of the client file.

12  (Id.)  The Court granted the motion to withdraw subject to two of the Government's

13  requested conditions, but denied the Government's other two requested conditions.  (Id.)

14  As for the client file dispute, the Court stated:

15            to the extent the Montgomery Plaintiffs seek to condition the
             withdrawal of Flynn and DiMare on Flynn and DiMare surrendering
16           their complete "client file" to new counsel of record for Plaintiffs
             (Doc. #213), said precondition is rejected by the Court.  In this regard,
17           the record before the Court does not support a finding that Flynn and
             DiMare have withdrawn "voluntary" [sic] as counsel for Montgomery
18           Plaintiffs, In the Matter of Kaufman, 93 Nev. 452, 567 P.3d 957
             (1977), nor does it appear on the record before the Court that Flynn
19           and DiMare should be compelled to surrender their files to new
             counsel of record.  Figliuzzi v. Fed. Dist. Court, 111 Nev. 338, 890
20           P.2d 798 (1995).

21  (Id.)

22        On September 7, Montgomery filed an application for arbitration of the fee

23  dispute with the San Diego County Bar Association.  (Request for Judicial Notice (Doc.

24  #262), Ex. 2.)  The application is signed by Montgomery and indicates he will be

25  represented by Klar and Pham of the Liner Firm.  (Id.)  In the statement of facts section,

26  Montgomery asserted that Flynn held himself out as a California attorney throughout the

1   representation. (Id.)

2          On September 10, Klar and Pham filed on Montgomery's behalf an opposition to

3   Flynn's motion for attorneys' fees in this action. (The Montgomery Parties' Opp'n to

4   Michael J. Flynn's Mot. for Attorneys Fees & Costs (Doc. #261).) In support, Klar and

5   Pham attached a declaration by Montgomery, hereinafter referred to as the September 2007

6   Declaration. (Id., Montgomery Decl.) In the September 2007 Declaration, Montgomery

7   made the following statements:

8          • "Mr. Flynn led me to believe at that time and throughout the course of his

9   representation that he was a California attorney, and I believed that I was engaging a

10  California lawyer to represent me. Specifically, he told me he had a law firm, Flynn &

11  Stillman, in California, and I met with him at his offices in Cardiff, California." (Id. at ¶ 3.)

12         • "[a]ll of the papers he filed with the Court listed a California address." (Id. at

13  ¶ 6.)

14         • "At no time did Mr. Flynn ever inform me that he was not and is not licensed to

15  practice in the State of California, or that he is licensed to practice only in Massachusetts. I

16  only learned of this after I retained new counsel." (Id. at ¶ 7.)

17         On September 12, Klar and Pham, on Montgomery's behalf, filed an ex parte

18  application for writ of possession in the LA Action. (Request for Judicial Notice (Doc.

19  #597, Ex. 2.) Montgomery requested that court to "enter an immediate routine turnover

20  order and Writ of Possession." (Id. at 2.) On September 13, the Los Angeles Superior

21  Court heard Montgomery's ex parte application for writ of possession in chambers. (Exs. to

22  Flynn Decl. (Doc. #548), Ex. 3.) Montgomery withdrew the ex parte application and

23  subsequently noticed the motion for hearing, which was set for October 18. (Id., Request

24  for Judicial Notice (Doc. #597), Ex. 4, Ex. 7 at 3.)

25         On September 18, Klar and Pham filed on Montgomery's behalf an emergency

26  request for clarification of this Court's September 4 Order. (Emergency Ex Parte

1   Application for Clarification of Order (Doc. #274).)  Montgomery referenced the LA

2   Action and stated that Flynn was asserting the position in the LA Action that this Court

3   already had adjudicated the issue of the disposition of Montgomery's client file.  (Id.)

4   Montgomery argued the Court had made no such ruling and the parties had not briefed the

5   issue, including which state law would apply to the dispute.  (Id.)  Montgomery requested

6   the opportunity to brief the issue in the event the Court intended to adjudicate the issue.

7   (Id.)

8         On that same date, in the LA Action, Pham submitted a memorandum of points

9   and authorities in support of Montgomery's Application for Writ of Possession.  (Request

10   for Judicial Notice (Doc. #275), Ex. 4.)  Pham filed a declaration similar to the September

11   2007 Declaration in support.  (Id., Montgomery Decl.)

12         On September 25, Montgomery filed a request for an investigation of Flynn with

13   the Massachusetts State Bar.  (Request for Judicial Notice (Doc. #597), Ex. 13.)  In the

14   request for investigation, Montgomery stated that "[a]t all times during the representation,

15   Flynn led the Montgomery Parties to believe that he was authorized to practice law in

16   California."  (Id.)

17         On October 4, the undersigned denied Montgomery's motion for clarification of

18   the September 4 Order.  (Order (Doc. #291).)  The Court stated that the prior order was

19   "clear and unambiguous, dealing solely with the matter then before the Court as to whether

20   to condition Flynn's withdrawal as an attorney in this matter on the return of Montgomery's

21   client file."  (Id.)  The Court further noted that Montgomery "has not moved in this Court

22   for return of his client files under Nevada or any other applicable law.  The Court's denial

23   of Montgomery's Motion for Clarification therefore is without prejudice to file a fully

24   briefed motion for return of the file, including any argument that law other than Nevada's

25   applies to such an inquiry."  (Id.)

26   ///

1          On October 12, the Magistrate Judge entered an order regarding Flynn's motion

2   for attorneys' fees. (Order (Doc. #296).)  In that Order, the Magistrate Judge referenced the

3   LA Action and, in a footnote, stated that "in the face of the District Court's September 4,

4   2007 order that Flynn and DiMare would not be compelled to surrender their files to new

5   counsel of record . . ., Montgomery has continued to pursue another forum to adjudicate the

6   fee dispute, namely California.  In his California Superior Court action, Montgomery seeks

7   relief that is contrary to the District Court's order." (Id. at 3 n.3.)  In a separate footnote,

8   the Magistrate Judge acknowledged that Montgomery's new counsel had indicated

9   Montgomery had or would file complaints with the California and/or Massachusetts State

10  Bars. (Id. at 5 n.5.)  The Magistrate Judge stated, "[t]he court takes no position on the

11  propriety of such potential complaints.  By this order, this court only takes jurisdiction over

12  the attorney's fees and client file dispute." (Id.)

13          The Magistrate Judge granted Flynn's motion for attorneys' fees to the extent that

14  the Court would determine the amount of fees due, but the Court would not order

15  Montgomery to pay the fees at that juncture. (Id.)  As to the retaining lien issue, the

16  Magistrate Judge noted that Montgomery never had filed a motion with this Court for return

17  of his files, and the Court therefore could not order Flynn to return the files absent a motion

18  by the client and presentation of adequate security or bond for the payment of the fees. (Id.)

19          In conclusion, the Magistrate Judge stated that she had jurisdiction to adjudicate

20  the amount of attorneys' fees due to Flynn and set forth a procedure by which she would

21  make that determination. (Id.)  With respect to the retaining lien, the Magistrate Judge

22  stated "the court concludes that should Montgomery desire the client files currently in

23  Flynn's possession, Montgomery must file a motion requesting the return of the files and

24  post adequate security or bond." (Id.)  The Magistrate Judge further ordered that

25  Montgomery's counsel "shall deliver, either via facsimile or hand delivery, a copy of this

26  order to the chambers of the presiding judge" in the LA Action prior to the scheduled

1   October 18 hearing in that action. (Id.)

2         Pham and Klar thereafter attended the October 18 hearing in the LA Action. (Tr.

3   (Doc. #323).) As directed by the Magistrate Judge, Pham and Klar provided the Magistrate

4   Judge's October 12 order to the presiding judge in the LA Action. (Notice of Lodging

5   USDC Nevada Order of Oct. 12, 2007).) At the hearing, Pham stated the Los Angeles

6   Superior Court was "the only court with jurisdiction to decide whether or not the files

7   should get turned over because the files are located here in California," and "[o]nly this

8   court could order the files to get turned over because the files are located here in

9   California." (Tr. (Doc. #323) at 5-6.) Pham also stated that the only issue before the

10   Magistrate Judge in this action was the attorneys' fee dispute, "it's not with respect to

11   possession of the files." (Id. at 9.) Later in the hearing, after DiMare referenced footnote 5

12   of the Magistrate Judge's October 12 order, Pham stated that she was "not contentesting

13   that [the Nevada District Court] has jurisdiction, we're simply saying we believe this court

14   also has jurisdiction, it is concurrent jurisdiction." (Id. at 12-13.)

15         Klar also attended the hearing and suggested government counsel's appearance at

16   the hearing was to get "another bite at the apple and to try to circumvent [this Court's]

17   order." (Id. at 8.) Klar stated government counsel was at the hearing "to muddy the waters

18   and to somewhat intimidate Your Honor to refrain in giving us the relief that we believe

19   Mr. Montgomery and Mrs. Montgomery and the Montgomery Trust is entitled to." (Id.)

20   The Los Angeles Superior Court denied Montgomery's motion for writ of possession,

21   finding that Montgomery had not met his burden of establishing he was entitled to

22   possession of the client file. (Id. at 13.)

23         On October 31, the Massachusetts State Bar closed Montgomery's bar complaint.

24   (Exs. to Flynn Decl. (Doc. #548), Ex. 5.) In its letter, the Bar stated that Montgomery "did

25   not mention in [his] complaint that the United States District Court, District of Nevada,

26   entered detailed and comprehensive orders with respect to the transmission of the file.

1   Attorney Flynn was admitted pro hac vice in the Nevada Court and as such, in connection

2   with that proceeding, is subject to the standards of professional conduct as adopted by the

3   Nevada Supreme Court." (Id. at 1.)  The Bar also noted that the client file may contain state

4   secrets, and that this Court had maintained jurisdiction over such issues. (Id.)

5          On November 9, the Magistrate Judge held a hearing to discuss with the parties

6   the fact that although the Court previously had ordered the unredacted materials in the

7   search warrant proceedings be unsealed, Montgomery's February 2007 Declaration

8   inadvertently never was unsealed. (Order (Doc. #270); Mins. of Proceedings (Doc. #331).)

9   The Magistrate Judge ordered the declaration be unsealed. (Id.)

10         On November 1, the Los Angeles Superior Court dismissed the LA Action. (Exs.

11   to Flynn Decl. (Doc. #548), Ex. 1.)  In dismissing the action, the presiding judge stated:

12             California is only involved in this matter due to an unsubstantiated
              allegation by the plaintiff that defendant misrepresented to him that
13             defendant was licensed to practice in California.  This case is before a
              California court for the transparent purpose of having this court
14             countermand the orders of the Nevada District Court.  California has
              no interest in doing so.
15

16   (Id. at 3.)  Approximately two weeks later, the San Diego Bar Association dismissed

17   without prejudice the request for arbitration of the fee dispute. (Exs. to Flynn Decl. (Doc.

18   #548), Ex. 4.)  The Bar Association stated that based on the orders of this Court and the Los

19   Angeles Superior Court, "it is clear that the US District for Nevada has taken control of the

20   entire case filed by . . . Montgomery including the issue of attorney fees and costs." (Id.)

21         On March 24, 2008, the Magistrate Judge entered an order granting Flynn's

22   motion for attorneys' fees and costs in the amount of $557,522.18. (Order (Doc. #502).)

23   On April 24, Flynn moved for sanctions pursuant to 28 U.S.C. § 1927 and/or the Court's

24   inherent power against the Montgomery parties and "their counsel of record, Deborah Klar

25   and her firm, Liner Yankelevitz Sunshine & Regenstreif, LLP." (Mot. for Sanctions (Doc.

26   #545) at 1.)  Among other things, Flynn argued that Montgomery and his counsel

1  vexatiously multiplied the proceedings by attempting to circumvent this Court's Orders

2  regarding the client files by filing actions or complaints in three different forums and using

3  the September 2007 Declaration, which Flynn asserted was perjured. (Id. at 2.) Flynn also

4  contended that Montgomery and his counsel misrepresented this Court's orders at the

5  October 18 hearing before the Los Angeles Superior Court. (Id. at 3.) Flynn requested over

6  $200,000 in attorney's fees for the period of August 1, 2007 through December 5, 2007,

7  and he requested "the revocation of Ms. Klar's pro hac vice admission in these cases." (Id.

8  at 24.) Montgomery opposed the motion, and included declarations from Pham and Klar.

9  (Opp'n to Mot. for Sanctions Filed by Attorney Michael J. Flynn (Doc. #601); Pham Decl.

10  (Doc. #599); Klar Decl. (Doc. #600).)

11         The Magistrate Judge set an evidentiary hearing related to the motion for

12  sanctions and indicated the evidentiary hearing would address only the September 2007

13  Declaration and the Montgomery parties' litigation against Flynn in the LA Action, the San

14  Diego fee arbitration, and the Massachusetts Bar complaint. (Order (Doc. #770).) The

15  order required Montgomery to "appear in person and to testify concerning these matters."

16  (Id.) The order also stated that Flynn, Klar, and Pham "shall attend the hearing in person

17  and shall be prepared to address the court concerning these matters." (Id.) The Magistrate

18  Judge held a sealed evidentiary hearing on August 21, at which Montgomery and Pham

19  testified under oath. (Mins. of Proceedings (Doc. #826).) Klar was present but did not

20  testify. (Id.)

21         Montgomery and Trepp subsequently settled the underlying lawsuit. (Mins. of

22  Proceedings (Doc. #856).) After Montgomery defaulted on a payment required under the

23  settlement agreement, judgments by confession were entered against the Montgomery

24  parties and other parties in the litigation. (Judgment (Doc. #897, #898).) The Court also

25  entered judgment on the award of attorneys' fees to Flynn. (Judgment (Doc. #902).)

26  Subsequent efforts at settling the Flynn fee dispute were unsuccessful. (Mins of

1   Proceedings (Doc. #933).)  On February 19, 2009, the Court entered an order dismissing all

2   claims and counterclaims in the underlying action.  (Order (Doc. #962).)  However, the

3   Court retained jurisdiction over, among other things, Flynn's motion for sanctions.  (Id.)

4        On March 31, 2009, the Magistrate Judge entered a 54-page order granting

5   Flynn's motion for sanctions under 28 U.S.C. § 1927 and the Court's inherent power.

6   (Order (Doc. #985).)  The Magistrate Judge sanctioned Montgomery for perjuring himself

7   in the September 2007 Declaration regarding his knowledge about Flynn's admission status,

8   and that he signed the declaration "in bad faith, vexatiously, wantonly, and for oppressive

9   reasons." (Id. at 49.)  The Magistrate Judge also sanctioned Klar and Pham, finding that

10  Klar and Pham "acted in bad faith or conduct tantamount to bad faith with the intention to

11  undermine this court's orders for the improper purpose of obtaining a more favorable forum

12  for resolution of the fee dispute and the turnover of the client files." (Id. at 37.)  The

13  Magistrate Judge also sanctioned the Liner Firm, concluding that it allowed Klar to operate

14  "unchecked and unquestioned," and the Firm "acquiesced to or willingly carried out Ms.

15  Klar's litigation strategy." (Id. at 48.)

16       Based on her findings, the Magistrate Judge awarded Flynn and DiMare

17  attorneys' fees in the amount of $201,990 and costs in the amount of $2,421.  (Id. at 51-52.)

18  The Magistrate Judge apportioned the sanctions as follows: Klar 50%, Montgomery 30%,

19  Pham 10%, and the Liner Firm 10%, and imposed joint and several liability among the

20  sanctioned parties.  (Id. at 52.)

21       The Magistrate Judge also imposed non-monetary sanctions on Klar, Pham, and

22  Montgomery.  The Magistrate Judge ordered that the Clerk of Court send a copy of the

23  sanctions order to the Nevada and California State Bars; that Klar and Pham be prohibited

24  from applying for pro hac vice admission to this Court for five years, after which time they

25  may apply but must attach a copy of the sanctions order along with a declaration identifying

26  all the legal ethics courses they have completed in the interim; that the Court would publish

1  the sanctions order as a form of public reprimand; and that Klar and Pham must perform

2  200 and 100 hours of pro bono legal services, respectively. (Id. at 52-53.) As to

3  Montgomery, the Magistrate Judge ordered that a copy of the sanctions order be sent to the

4  United States Attorney's Office. (Id. at 53.)

5          The Magistrate Judge indicated that pursuant to Local Rule IB 3-1(a), any party

6  could object to the sanctions order. (Id. at 54.) The Magistrate Judge therefore stayed the

7  sanction order's effect until after the undersigned issued a final order with respect to any

8  objections. (Id.) The Liner Firm, Klar, Pham, and Montgomery subsequently filed

9  objections to the sanctions order.

10          Prior to this Court resolving the objections to the sanctions order, Dennis and

11  Brenda Montgomery filed a Notice of Filing of Voluntary Petition Under Chapter 7 of the

12  Bankruptcy Code and of Automatic Stay (Doc. #1104). Flynn moved in the bankruptcy

13  proceedings for relief from the automatic stay for this Court to rule upon the objections to

14  the Magistrate Judge's sanctions order. (Status Report Re: Montgomery Bankruptcy (Doc.

15  #1143).) On January 8, 2010, the United States Bankruptcy Court for the Central District of

16  California granted Flynn's motion, effective as of December 31, 2009. (Id., Ex. A.) The

17  stay having been lifted, the Court now will address the various objections to the sanctions

18  order.

19  **II. LEGAL STANDARD**

20          Magistrate judges statutorily are authorized to resolve "pretrial matter[s]" subject

21  to review by district judges under a clearly erroneous or contrary to law standard. 28 U.S.C.

22  § 636(b)(1)(A). Excluded from this grant of authority are dispositive motions, such as

23  motions "for injunctive relief, for judgment on the pleadings, for summary judgment, to

24  dismiss or quash an indictment or information . . ., to suppress evidence in a criminal case,

25  to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim

26  upon which relief can be granted, . . . to involuntarily dismiss an action," and analogous

1 motions. Id.; United States v. Rivera-Guerrero, 377 F.3d 1064, 1067-68 (9th Cir. 2004).

2 Dispositive motions may be submitted to a magistrate judge for a report and

3 recommendation, which the district court then reviews de novo. 28 U.S.C. § 636(b)(1)(B).

4        Thus, nondispositive pretrial matters are governed by § 636(b)(1)(A) and are

5 subject to the clearly erroneous or contrary to law standard of review, while dispositive

6 matters are governed by § 636(b)(1)(B) and are subject to de novo review. Gomez v.

7 United States, 490 U.S. 858, 873-74 (1989); see also Fed. R. Civ. P. 72(a). Which standard

8 of review applies is determined by whether the motion's effect properly is characterized as

9 "dispositive or non-dispositive of a claim or defense of a party." Rivera-Guerrero, 377 F.3d

10 at 1068 (quotation omitted).

11        The United States Court of Appeals for the Ninth Circuit has not addressed

12 specifically whether a magistrate judge's order sanctioning a party or counsel under 28

13 U.S.C. § 1927 or the Court's inherent power is dispositive or non-dispositive. However, the

14 Ninth Circuit has determined that sanctions under Federal Rules of Civil Procedure 11 and

15 37 are non-dispositive and thus fall under § 636(b)(1)(A). See Grimes v. City & County of

16 San Francisco, 951 F.2d 236, 240 (9th Cir. 1991) (Rule 37); Maisonville v. F2 Am., Inc.,

17 902 F.2d 746, 747-48 (9th Cir. 1990) (Rule 11). The Ninth Circuit has analogized sanctions

18 under § 1927 and its inherent power to Rule 11 or Rule 37 sanctions. See Stanley v.

19 Woodford, 449 F.3d 1060, 1064 (9th Cir. 2006) (stating "the policies undergirding Rule

20 37(a) sanctions are not relevantly different from those justifying sanctions under § 1927 or a

21 court's inherent powers"); Grimes, 951 F.2d at 240 (indicating there is "no material

22 distinctions between Rule 11 sanctions and Rule 37 [discovery] sanctions" (quotation

23 omitted)); Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1412 n.4 (9th Cir. 1990)

24 ("Although this case involves only a Rule 37 default, we have held that dismissal sanctions

25 under Rule 37 and a court's inherent powers are similar."). Sanctions under § 1927 or the

26 ///

1   Court's inherent power therefore are non-dispositive,[4] and subject to the clearly erroneous

2   or contrary to law standard of review.[5]

3           "A finding is clearly erroneous when although there is evidence to support it, the

4   reviewing body on the entire evidence is left with the definite and firm conviction that a

5   mistake has been committed." United States v. Ressam, 593 F.3d 1095, 1118 (9th Cir.

6   2010) (quotation omitted).  This Court may not substitute its judgment for that of the

7   Magistrate Judge.  Grimes, 951 F.2d at 241.

8   **III. DISCUSSION**

9           The Court has inherent power to sanction counsel or a party who acts "in bad

10  faith, vexatiously, wantonly, or for oppressive reasons."  Leon v. IDX Sys. Corp., 464 F.3d

11  951, 961 (9th Cir. 2006) (quotation omitted).  A court must exercise its inherent powers

12  "'with restraint and discretion,'" and must make a specific finding of bad faith before

13  sanctioning under its inherent powers.  Yagman v. Republic Ins., 987 F.2d 622, 628 (9th

14  Cir. 1993) (quoting Chambers v. Nasco, 501 U.S. 32, 44 (1991)); Fink v. Gomez, 239 F.3d

15  989, 992-93 (9th Cir. 2001).  Bad faith "includes a broad range of willful improper

16  conduct," including "delaying or disrupting the litigation or . . . hampering enforcement of a

17  court order."  Fink, 239 F.3d at 992 (quotation omitted); Leon, 464 F.3d at 961.  "Sanctions

18  are available for a variety of types of willful actions, including recklessness when combined

---

20     [4] To the extent a sanction imposed is case dispositive, such as striking an answer or entering
a default, then the sanctions order would be dispositive, and would be subject to de novo review.

22     [5] Other circuits have disagreed or are undecided as to the appropriate standard of review for
a magistrate judge's award of sanctions.  See Kiobel v. Millson, 592 F.3d 78, 86 (2d Cir. 2010)
(declining to decide the issue, but in three separate concurring opinions expressing the view that the
de novo standard applied, the clearly erroneous or contrary to law standard applied, or that Congress
or the Supreme Court ought to make the standard clear); Retired Chicago Police Ass'n v. City of
Chicago, 76 F.3d 856, 869 (7th Cir. 1996) (holding "a sanctions request is a dispositive matter capable
of being referred to a magistrate judge only under § 636(b)(1)(B) or § 636(b)(3), where the district
judge must review the magistrate judge's report and recommendations de novo"); Bennett v. Gen.
Caster Serv. of N. Gordon Co., Inc., 976 F.2d 995, 998 (6th Cir. 1992) (same).

1   with an additional factor such as frivolousness, harassment, or an improper purpose." <u>Fink</u>,

2   239 F.3d at 994.  Indeed, the Court may exercise its inherent power to sanction a party or

3   attorney who acts for an improper purpose even if the sanctioned act "consists of making a

4   truthful statement or a non-frivolous argument or objection." <u>Gomez v. Vernon</u>, 255 F.3d

5   1118, 1134 (9th Cir. 2001) (quotation omitted).  Whether to impose sanctions under the

6   Court's inherent power lies within the Court's discretion.  <u>Id.</u>

7        In addition to inherent powers, the Court may sanction an attorney under 28

8   U.S.C. § 1927 for unreasonably and vexatiously prolonging the proceedings.  To impose

9   sanctions under § 1927, the Court must make a finding that counsel acted with subjective

10  bad faith.  <u>B.K.B. v. Maui Police Dep't</u>, 276 F.3d 1091, 1107 (9th Cir. 2002);

11  <u>Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.</u>, 210 F.3d 1112, 1118 (9th Cir.

12  2000).  The standard is met when "an attorney knowingly or recklessly raises a frivolous

13  argument, or argues a meritorious claim for the purpose of harassing an opponent." <u>B.K.B.</u>,

14  276 F.3d at 1107 (quotation and emphasis omitted).  Whether to impose sanctions under

15  § 1927 lies within the Court's discretion.  <u>In re Keegan Mgmt. Co., Sec. Litig.</u>, 78 F.3d 431,

16  435 (9th Cir. 1996).

17        **A. Liner Firm**

18        The Liner Firm contends the Magistrate Judge sanctioned it only under § 1927,

19  and § 1927 provides for sanctions only against an attorney, not a law firm.  Flynn responds

20  that the Magistrate Judge intended to sanction the Liner Firm under both the Court's

21  inherent power and § 1927, and indicated in the order that the Firm acted in bad faith.

22  Flynn also argues sanctions may be awarded against a law firm under § 1927.

23        Although the sanctions order generally referenced both § 1927 and the Court's

24  inherent powers, the sanctions order imposed sanctions against the Liner Firm only pursuant

25  to § 1927.  (Order (Doc. #982) at 48 (stating "sanctions against the Liner Firm are

26  warranted pursuant to 28 U.S.C. § 1927").)  The sanctions order referenced both the Court's

1   inherent power and § 1927 when grouping the sanctioned parties together.  For example, page one

2   of the order states that the "court concludes that the conduct of the Liner firm and its attorneys, Ms.

3   Klar and Ms. Pham, was willfully reckless, intended to harass, done for an improper purpose, and

4   was suffused with bad faith."  (Id. at 1.)  On page 51, the order stated: "[b]ased on the foregoing,

5   the court finds that pursuant to its inherent powers and 28 U.S.C. § 1927, the following sanctions

6   shall issue."[6]  (Id. at 51.)  The order then itemized the sanctions against all of the sanctioned parties,

7   including the Liner Firm.  (Id. at 51-53.)  However, in the order's discussion specifically related to

8   the Liner Firm, the order cited only § 1927 and did not make an explicit finding of bad faith on the

9   Firm's part.  To the extent the Magistrate Judge intended to sanction the Liner Firm under the

10  Court's inherent power, the sanctions order does not make that intention clear.

11          Section 1927 provides:

12          Any attorney or other person admitted to conduct cases in any court of
            the United States or any Territory thereof who so multiplies the
13          proceedings in any case unreasonably and vexatiously may be required
            by the court to satisfy personally the excess costs, expenses, and
14          attorneys' fees reasonably incurred because of such conduct.

15  Some Circuit Courts of Appeal have permitted § 1927 sanctions against a law firm, but

16  have done so without analyzing whether such sanctions are permissible under the statutory

17  language.  See Jensen v. Phillips Screw Co., 546 F.3d 59, 61-69 (1st Cir. 2008); LaPrade v.

18  Kidder Peabody & Co., Inc., 146 F.3d 899, 904-07 (D.C. Cir. 1998); Avirgan v. Hull, 932

19  F.2d 1572, 1582 (11th Cir. 1991); Baker Indus., Inc. v. Cerberus Ltd., 764 F.2d 204, 208-09

20  (3d Cir. 1985).  In contrast, the Sixth and Seventh Circuits have indicated that § 1927

21  sanctions are not awardable against a law firm based on the statute's plain language.  See

22  Rentz v. Dynasty Apparel Indus., Inc., 556 F.3d 389, 396 n.6 (6th Cir. 2009); Claiborne v.

23

24  _____

25          [6] This sentence could not mean the Magistrate Judge intended to sanction all of the parties
    under both sources of authority, as Montgomery is a party and thus is not sanctionable under § 1927.
26  F.T.C. v. Alaska Land Leasing, Inc., 799 F.2d 507, 510 (9th Cir. 1986) (stating § 1927 "does not
    authorize recovery from a party").

1    Wisdom, 414 F.3d 715, 722-23 (7th Cir. 2005).  The United States Court of Appeals for the

2    Ninth Circuit has not decided whether a law firm, as opposed to an individual attorney, may

3    be sanctioned under § 1927, although it has indicated § 1927 sanctions were not permissible

4    against a non-profit organization that varyingly described itself as a representative of the

5    plaintiffs, an employer of the plaintiffs' lawyers, and as the entity directing the litigation.

6    Lockary v. Kayfetz, 974 F.2d 1166, 1168-70 (9th Cir. 1992) (stating the district court

7    recognized it did not have the power to sanction the non-profit entity under § 1927).

8            When construing a statute, the Court begins with the statute's plain language.

9    Moreno-Morante v. Gonzales, 490 F.3d 1172, 1175 (9th Cir. 2007).  If the language is

10   unambiguous, the Court's inquiry is complete.  Alvarado v. Cajun Operating Co., 588 F.3d

11   1261, 1268 (9th Cir. 2009.)

12           Section 1927 by its plain terms applies only to an "attorney or other person

13   admitted to conduct cases in any court of the United States."  A law firm is not an attorney.

14   Nor is it a person admitted to conduct cases in federal courts.  "Individual lawyers, not

15   firms, are admitted to practice before both the state courts and the federal courts."

16   Claiborne, 414 F.3d at 723.  Further, the statute requires the sanctioned person to "satisfy

17   personally" the costs and expenses incurred as a result of the sanctionable conduct.

18           The conclusion that § 1927 does not apply to law firms is supported by the

19   United States Supreme Court's analysis of whether a prior version of Federal Rule of Civil

20   Procedure 11 applied to law firms.  In Pavelic & LeFlore v. Marvel Entertainment Group,

21   the Supreme Court held that Rule 11's plain language permitted the imposition of sanctions

22   on "the person who signed" the paper at issue.  493 U.S. 120, 123 (1989).  Because the Rule

23   required an attorney or unrepresented party to sign the paper in his or her "individual

24   name," the Supreme Court concluded that the signature requirement, and the consequences

25   attached thereto, ran to the individual attorney and not to his or her law firm.  Id. at 123-24.

26   Following this decision, Rule 11 was amended to allow sanctions against law firms.  See

                                                    23

1   Fed. R. Civ. P. 11(c)(1) ("If, after notice and a reasonable opportunity to respond, the court

2   determines that Rule 11(b) has been violated, the court may impose an appropriate sanction

3   on any attorney, law firm, or party that violated the rule or is responsible for the

4   violation."); see also Fed. R. Bankr. P. 9011(c) (listing law firms among persons or entities

5   that may be sanctioned).

6         The Court therefore concludes § 1927 sanctions may not be imposed against a

7   law firm. The Magistrate Judge's order imposing such sanctions thus is contrary to law. In

8   re Keegan Mgmt. Co., Sec. Litig., 78 F.3d at 435 ("For a sanction to be validly imposed, the

9   conduct in question must be sanctionable under the authority relied on." (quotation

10  omitted)). The Liner Firm's objection to the sanctions order is affirmed, and the sanctions

11  order as to the Liner Firm is reversed without prejudice to any further proceedings

12  consistent with this Order with respect to Flynn's motion for sanctions.[7]

13  **B. Montgomery**

14        Montgomery argues the sanctions against him are based on perceived differences

15  in his two declarations, but there is insufficient evidence to support a finding that the

16  September 2007 Declaration was made in bad faith. Montgomery argues his two

17  declarations do not contradict each other because the February Declaration does not

18  mention anything about where Flynn was licensed. Even if the declarations are

19  inconsistent, Montgomery contends the evidence adduced at the evidentiary hearing

20  demonstrated Montgomery did not understand what it meant to be licensed or admitted in a

21  certain jurisdiction and the significance of that in relation to practicing law in a particular

22  state. Montgomery further argues his September 2007 Declaration does not amount to

23  perjury because the record does not disclose what Montgomery meant by referring to Flynn

24

25

26        [7] Because the Court affirms the Liner Firm's objections on this basis, the Court need not
address the Liner Firm's other objections.

1   as a "California lawyer" and in any event, the statements were not material.  Montgomery

2   also argues he cannot be sanctioned for conduct occurring outside the proceedings in this

3   Court, the Magistrate Judge failed to assess the reasonableness of Flynn's fees, and she

4   should not have made liability joint and several.  Finally, Montgomery requests that in the

5   event any further proceedings are necessary, the Court assign a different Magistrate Judge.

6          Flynn responds that there is clear and convincing evidence that the September

7   2007 Declaration is perjured, as evidenced by the exhibits on file which show Montgomery

8   knew Flynn was licensed only in Massachusetts based on various documents in the record.

9   Flynn further argues that because Montgomery did not raise below his inability to pay, that

10  argument is waived.  As to joint and several liability, Flynn contends it is appropriate

11  because Montgomery, Klar, and Pham were jointly engaged in the misconduct at issue.

12  Finally, Flynn argues the request for a new judge is unsupported, as the Magistrate Judge

13  has been unbiased in this action, ruling against Flynn on several occasions, and Flynn

14  contends she could have sanctioned the objecting parties even more than she did.  Flynn

15  requests the Court modify the sanctions award to include fees expended in having to

16  respond to the various objections to the Sanctions.

17                 1.  The September 2007 Declaration

18         Under the federal perjury statute, a person commits perjury when he "willfully

19  subscribes as true any material matter which he does not believe to be true" in a declaration

20  signed under penalty of perjury.  18 U.S.C.A. § 1621.  A declarant's statement under oath or

21  affirmation violates this statute if he makes a false statement concerning a material matter

22  "with the willful intent to provide false testimony, rather than as a result of confusion,

23  mistake, or faulty memory."  United States v. Dunnigan, 507 U.S. 87, 94 (1993).

24         The Magistrate Judge's finding that Montgomery perjured himself is not clearly

25  erroneous or contrary to law.  Montgomery filed the September 2007 Declaration under

26  penalty of perjury.  Montgomery's statements in the September 2007 Declaration regarding

1   Flynn's representations to Montgomery about Flynn's status as a California attorney were

2   material because Montgomery was attempting to convince this Court, and other forums, that

3   the file and fee disputes should be heard somewhere other than in this District.  The

4   September 2007 Declaration was filed in support of Montgomery's opposition to Flynn's

5   motion for attorneys' fees.  In that motion, Montgomery argued that California, not Nevada,

6   was the proper forum to resolve the fee dispute and cited the September 2007 Declaration in

7   support.  (The Montgomery Parties' Opp'n to Michael J. Flynn's Mot. for Attorneys Fees &

8   Costs (Doc. #261) at 2-5.)

9            The Magistrate Judge held an evidentiary hearing in this matter at which

10  Montgomery testified.  In the sanctions order, she made an adverse credibility finding

11  against Montgomery regarding his understanding of the words "admitted" or "licensed."

12  (Order (Doc. #985).)  The Magistrate Judge concluded Montgomery knew or should have

13  know what that meant because he attended the preliminary injunction hearing in state court

14  at which Flynn's admission and ability to practice in front of the Nevada state court was

15  discussed in front of Montgomery.  (Id. at 18.)  Even if Montgomery was not aware then, he

16  certainly was by February 2007, when the United States attempted to disqualify Flynn based

17  on the fact that Flynn was licensed only in Massachusetts, but allegedly was practicing in

18  California.  (Id. at 19.)

19           These findings are not clearly erroneous or contrary to law.  The Magistrate

20  Judge presided over the evidentiary hearing and thus had an opportunity to observe

21  Montgomery's demeanor while testifying.  She thus uniquely was situated to evaluate

22  Montgomery's credibility.  Moreover, the adverse credibility finding has ample support in

23  the record.  Montgomery attended the preliminary injunction hearing and was present while

24  local counsel introduced Flynn to the state court as a member of the Massachusetts Bar,

25  indicated that Flynn had applied for pro hac vice status, and stated that the Massachusetts

26  Bar had sent a certificate of good standing to the Nevada State Bar.

1   Further, Montgomery was aware of and participated in opposing the

2   Government's efforts to disqualify Flynn on the very basis that Flynn's pro hac vice

3   application contained misstatements because Flynn was licensed only in Massachusetts, but

4   was residing and practicing in California.  In his February 2007 Declaration, Montgomery

5   averred that he had read both the motion to disqualify Flynn, and letters which Flynn had

6   sent to high ranking officials on Montgomery's behalf.  The Government's motion stated

7   that Flynn was licensed only in Massachusetts.  One of the referenced letters was attached

8   as an exhibit to Montgomery's own declaration.  On the letterhead it states beneath Flynn's

9   name "only admitted in Massachusetts."

10   At the sealed evidentiary hearing on the motion for sanctions, Montgomery

11   testified that he "probably" read Flynn's declaration in February 2008 in which Flynn stated

12   that he was licensed only in Massachusetts.  (Sealed Tr. (Doc. #873) at 26.)  Montgomery

13   subsequently stated that he did not know whether he read it at the time.  (Id. at 26-27.)

14   When questioned about reading the Government's motion to disqualify in which the

15   Government raised the issue that Flynn had only a Massachusetts license and not a

16   California license, Montgomery stated "What's that mean to me?  That didn't mean to me

17   that you couldn't practice in California."  (Id. at 29.)  Montgomery further testified that he

18   did not know what the term "licensed" meant, and he "assumed" Flynn could practice in

19   California, even though Flynn did not represent Montgomery in any California courts at any

20   time during the representation.  (Id. at 40.)  When questioned regarding whether, in their

21   first meeting, Flynn advised Montgomery that Flynn was licensed in Massachusetts,

22   Montgomery responded "[w]hether [Flynn] said [he was] licensed in Massachusetts, didn't

23   mean to me that [Flynn wasn't] in California."  (Id. at 42.)

24   When asked whether it was his position that he never saw Flynn's letterhead that

25   stated "admitted only in Massachusetts," Montgomery stated, "[n]o.  That is not my

26   testimony."  (Id. at 49-50.)  When asked directly whether he had ever seen any letters

1  stating "admitted only in Massachusetts," Montgomery answered, "Yes." (Id. at 50.)

2  Montgomery's counsel offered to stipulate that Montgomery had received letters with the

3  letterhead on it. (Id. at 87, 101-02.)  Montgomery also stated that he "must have seen"

4  Flynn's Massachusetts bar number next to Flynn's name on numerous pleadings on file in

5  this Court. (Id. at 129.)

6         The course of the proceedings, Montgomery's February 2007 Declaration, and

7  his testimony at the evidentiary hearing support the Magistrate Judge's adverse credibility

8  finding against Montgomery regarding his professed lack of knowledge as to the meaning

9  of "admitted" or "licensed."  Montgomery is not an unsophisticated individual, and even if

10  he had no understanding regarding what these terms meant prior to this litigation, the

11  evidence shows he knew what it meant by the time he filed the February 2007 Declaration

12  in support of his opposition to the Government's motion to disqualify.  The Magistrate

13  Judge's conclusion that Montgomery therefore perjured himself in the September 2007

14  Declaration when he averred that Flynn led him to believe throughout the course of

15  representation that Flynn was a California attorney, that at no time did Flynn ever inform

16  Montgomery that Flynn was licensed to practice only in Massachusetts, and that

17  Montgomery learned of Flynn's status only this after he retained new counsel is neither

18  clearly erroneous nor contrary to law.  Perjury is sufficient grounds for a bad faith finding to

19  support a sanction under the Court's inherent power. Whitney Bros. Co. v. Sprafkin, 60

20  F.3d 8, 14 (1st Cir. 1995).

21              2.  Joint and Several Liability

22         A court may hold sanctioned parties jointly and severally liable. Hyde & Drath v.

23  Baker, 24 F.3d 1162, 1172 (9th Cir. 1994).  Pursuant to general tort law, joint and several

24  liability is appropriate when the independent tortious conduct of each of two or more

25  persons is a legal cause of a single and indivisible harm to the injured party.  Restatement

26  (Third) of Torts § A18 (2000).  That the Court may apportion fault "does not render an

1  indivisible injury 'divisible' for purposes of the joint and several liability rule." <u>Rudelson</u>

2  <u>v. U.S.</u>, 602 F.2d 1326, 1332 n.2 (9th Cir. 1979) (quotation omitted). Joint and several

3  liability as between a client and his or her attorney may be appropriate where the client

4  willfully participates in the sanctionable conduct. <u>See</u> <u>Avirgan v. Hull</u>, 125 F.R.D. 189,

5  190-91 (S.D. Fla. 1989).

6          The Magistrate Judge's decision to make the award joint and several is not

7  clearly erroneous or contrary to law. Although Montgomery's Declaration was not filed in

8  this Court until September 2007, the "facts" therein were the foundation for the efforts to

9  pursue the fee and file disputes in three other forums. The Complaint in the LA Action, the

10 petition for arbitration of the fee, and the Massachusetts Bar complaint all referenced

11 Montgomery's assertion that Flynn held himself out to Montgomery as a California lawyer

12 throughout Flynn's representation of Montgomery. The harm to Flynn was indivisible,

13 even if the Magistrate Judge found the relative fault as between Montgomery and his

14 attorneys was capable of being apportioned.

15          3. Power to Sanction for Conduct Outside Court Proceedings

16          Contrary to Montgomery's position, the Court has inherent power to sanction a

17 party's misconduct occurring outside the Court's proceedings so long as the sanctionable

18 conduct has a "nexus with the conduct of the litigation before the court." <u>United States v.</u>

19 <u>Wunsch</u>, 84 F.3d 1110, 1115-16 (9th Cir. 1996) (holding that court had inherent power to

20 sanction attorney who had appeared in case and sent sexist letter to opposing counsel

21 following his disqualification from the case but concluding no sanction was authorized

22 under cited local rules); <u>see also</u> <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 57 (1991)

23 ("Chambers challenges the District Court's imposition of sanctions for conduct before other

24 tribunals, including the FCC, the Court of Appeals, and this Court, asserting that a court

25 may sanction only conduct occurring in its presence. Our cases are to the contrary,

26 however."). For example, the Court may invoke its inherent power to sanction conduct

1   occurring before a federal agency.  See Gadda v. Ashcroft, 377 F.3d 934, 947 (9th Cir.

2   2004) ("We hold that we also have inherent authority respecting the suspension and

3   disbarment of attorneys who perform incompetently in federal immigration proceedings.");

4   In re Pacific Land Sales, Inc., 187 B.R. 302, 312 (9th Cir. BAP 1995) (stating a court "may

5   hold a party in contempt for actions performed before the FCC").  The Court also may

6   sanction conduct in related state court proceedings.  Western Sys., Inc. v. Ulloa, 958 F.2d

7   864, 873 (9th Cir. 1992).

8          Montgomery's reliance on Atchison, Topeka and Santa Fe Railway Company v.

9   Hercules Inc. is misplaced.  In that case, the Ninth Circuit held that a district court may not

10  use its inherent power to dismiss a separate action not pending before it where the Federal

11  Rules of Civil Procedure specifically granted the litigant the right to proceed in the separate

12  action.  146 F.3d 1071, 1074 (9th Cir. 1998).  As the Magistrate Judge did not dismiss or

13  attempt to dismiss any separate action as a sanction under the Court's inherent power,

14  Hercules Inc. is inapplicable.

15                    4.  Reasonableness of Fees

16         Where a sanction is appropriate, the amount of the sanction award must be

17  reasonable.  Matter of Yagman, 796 F.2d 1165, 1184 (9th Cir. 1986).  "This is particularly

18  so where, as here, the amount of the sanction is based upon the attorney's fees claimed by

19  the other party."  Id.  The Court should avoid issuing a lump-sum sanctions award based on

20  different sources of authority to sanction and covering a host of misconduct over a period of

21  time.  Id.  Rather, the sanctions award must be "quantifiable with some precision and

22  properly itemized in terms of the perceived misconduct and the sanctioning authority."  Id.

23         "When the sanctions award is based upon attorney's fees and related expenses, an

24  essential part of determining the reasonableness of the award is inquiring into the

25  reasonableness of the claimed fees."  Id. at 1184-85.  The Court "must make some

26  evaluation of the fee breakdown submitted by counsel" to determine not the actual fees and

1   expenses incurred, but what amount of fees and expenses are reasonable. Id. at 1185.

2   Additionally, the Court should consider the sanctioned party's ability to pay to determine

3   the award's reasonableness. Id. However, "the sanctioned party has the burden to produce

4   evidence of inability to pay." Gaskell v. Weir, 10 F.3d 626, 629 (9th Cir. 1993). Failure to

5   present such evidence or raise the issue below waives the argument regarding inability to

6   pay. Fed. Election Comm'n. v. Toledano, 317 F.3d 939, 949 (9th Cir. 2002).

7          The sanction here was measured with reference to Flynn's attorneys' fees and

8   costs. The Magistrate Judge reviewed Flynn's submissions and made several adjustments

9   from Flynn's requested amount. First, the Magistrate Judge lowered Flynn's requested

10  hourly rates. (Order (Doc. #985) at 51.) Second, she reviewed Flynn's time entries "line-

11  by-line" and declined to award fees for work on the fee application that resulted in a

12  separate award of attorney's fees in March 2008 or for work performed on a separate

13  motion Flynn filed under Rule 3.3 of the Nevada Rules of Professional Conduct. (Id.)

14  Third, the Magistrate Judge deducted time for entries that were vague or duplicative. (Id.)

15         The sanctions award is sufficiently itemized, as the Magistrate Judge limited the

16  sanction to the tasks reflected in Flynn's time sheets related only to defense of the various

17  different proceedings Montgomery initiated against Flynn. She specifically deducted time

18  that was, or might be, related to other matters. The Magistrate Judge also reviewed the

19  reasonableness of the fees, reducing the rate Flynn and DiMare sought for their services,

20  deducting any vague or duplicative entries, and conducting a "line-by-line" review of

21  Flynn's time entries. The sanctions award is not a blanket, lump-sum award and it

22  adequately ties the fees incurred as result of the sanctionable conduct.

23         As to Montgomery's ability to pay, Montgomery did not present any evidence on

24  his inability to pay, despite the fact that Flynn requested even more in fees than the

25  Magistrate Judge awarded. Montgomery therefore has waived the argument by failing to

26  present evidence or raise the argument before the Magistrate Judge. The Court therefore

1 will affirm the sanctions award against Montgomery.  The Court denies Flynn's request for

2 fees in responding to the objections to the Magistrate Judge's sanctions order.

3        <u>4.  Reassign</u>

4    "Absent personal bias, remand to a new judge is warranted only in rare

5 circumstances."  <u>United States v. Rapal</u>, 146 F.3d 661, 666 (9th Cir. 1998).  To determine

6 whether reassignment is warranted, the Court must consider:

7     (1) whether the original judge would reasonably be expected upon
      remand to have substantial difficulty in putting out of his or her mind
8     previously-expressed views or findings determined to be erroneous or
      based on evidence that must be rejected, (2) whether reassignment is
9     advisable to preserve the appearance of justice, and (3) whether
      reassignment would entail waste and duplication out of proportion to
10     any gain in preserving the appearance of fairness.

11 <u>Hunt v. Pliler</u>, 384 F.3d 1118, 1126 (9th Cir. 2004) (quotation omitted).  "The first two of

12 these factors are of equal importance, and a finding of one of them would support a remand

13 to a different judge."  <u>Id.</u> (quotation omitted).

14    As an initial matter, Montgomery's request for reassignment is largely moot.  The

15 underlying case has settled and the sanctions proceedings as to Montgomery are now

16 complete.  Consequently, it is unclear whether Montgomery will be a participant in any

17 further proceedings before the Magistrate Judge.  In any event, there is no evidence the

18 Magistrate Judge would have any difficulty putting out of her mind previously expressed

19 views on any pertinent matters.  Reassignment is not necessary to preserve the appearance

20 of justice, and reassignment would result in waste and duplication substantially

21 disproportionate to any perceived gain in preserving the appearance of fairness.  The

22 Magistrate Judge has expended considerable time and effort on these matters, presided over

23 the evidentiary hearing, and has intimate familiarity with the facts related to this matter.

24 The Court therefore denies Montgomery's request for reassignment at this time.

25 ///

26 ///

1       **C. Pham**

2               Pham argues the sanctions order violates her due process rights because Pham

3       was not on notice that she personally might be subject to sanctions. Flynn responds that

4       Pham had adequate notice and an opportunity to be heard, as he mentioned her by name in

5       his motion for sanctions, requested her pro hac vice admission be revoked, and described

6       her conduct in the motion and supporting declaration. Flynn also argues Pham had an

7       opportunity to be heard because she filed a declaration in support of the Montgomery

8       parties' opposition to Flynn's motion for sanctions, she testified at the hearing, and she filed

9       an offer of proof in support of her objections.

10              Prior to imposing sanctions, a Court must provide the party or attorney facing

11      potential sanctions notice and an opportunity to be heard. Lasar v. Ford Motor Co., 399

12      F.3d 1101, 1109-10 (9th Cir. 2005); see also Roadway Exp., Inc. v. Piper, 447 U.S. 752,

13      767 (1980). The Court must give notice as to the potential sanctions, the particular alleged

14      misconduct, and "the particular disciplinary authority under which the court is planning to

15      proceed." In re DeVille, 361 F.3d 539, 548 (9th Cir. 2004); Cole v. U.S. Dist. Ct. For Dist.

16      of Idaho, 366 F.3d 813, 822 (9th Cir. 2004); see also Mendez v. County of San Bernardino,

17      540 F.3d 1109, 1132 (9th Cir. 2008) ("To the extent the district court was focused on

18      punishing [counsel] for his trial misbehavior, it was incumbent on the court to give him fair

19      notice of that personal exposure and obligation to appear in person.").

20              "These minimal procedural requirements give an attorney an opportunity to argue

21      that his actions were an acceptable means of representing his client, to present mitigating

22      circumstances, or to apologize to the court for his conduct." Lasar, 399 F.3d at 1110.

23      Further, the procedural requirements ensure that the attorney has an opportunity to prepare a

24      defense and explain his or her questionable conduct, that the judge will consider the

25      propriety and severity of the sanction in light of the attorney's explanation of his or her

26      conduct, and that "the facts supporting the sanction will appear in the record, facilitating

1    appellate review." <u>Tom Growney Equip., Inc. v. Shelley Irr. Dev., Inc.</u>, 834 F.2d 833, 836

2    (9th Cir. 1987). The Court need not hold an evidentiary hearing, however, as the

3    opportunity to brief the issue will suffice to comply with due process. <u>Lasar</u>, 399 F.3d at

4    1112; <u>Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.</u>, 210 F.3d 1112, 1118 (9th Cir.

5    2000).

6           The Magistrate Judge's sanctions order is contrary to law because the Magistrate

7    Judge did not provide adequate notice to Pham prior to imposing the sanctions in this

8    matter. Flynn's motion for sanctions did not explicitly seek sanctions against Pham.

9    Flynn's motion sometimes referenced Montgomery's counsel in the plural, and discussed

10   some of the actions Pham took. However, Flynn specifically requested sanctions against

11   the Montgomery parties "and their counsel of record, Deborah Klar and her firm." (Mot.

12   for Sanctions (Doc. #545) at 1.)

13          More importantly, the Magistrate Judge's order setting the evidentiary hearing

14   did not advise Pham she may be subject to sanctions personally. The order setting the

15   evidentiary hearing stated that the hearing would address only two matters, Montgomery's

16   September 2007 Declaration and matters related thereto, and the Montgomery parties'

17   litigation against Flynn in the various other forums. (Order (Doc. #770).) The order setting

18   the hearing thus was narrower than Flynn's requested sanctions as set forth in his motion, as

19   he sought sanctions related to other alleged misconduct. Even if Flynn's motion could be

20   read to seek sanctions against Pham, the Magistrate Judge narrowed the scope of Flynn's

21   motion and was not considering the full panoply of misconduct or relief set forth in Flynn's

22   motion. Consequently, Flynn's motion alone could not have put Pham on notice that she

23   personally might be sanctioned.

24          The order setting the hearing also stated the following:

25          4. Dennis Montgomery shall appear in person to testify concerning
            these matters.
26          5. Michael Flynn, Esq., Deborah Klar, Esq., and Terri Pham, Esq.

1      shall attend the hearing in person and shall be prepared to address the
       court concerning these matters.
2

3      (Id.)  Although Pham's attendance at the hearing was required, the order does not make

4      clear that Pham would be required to show cause why she would not be personally

5      sanctioned or what sanctions she might face.  By grouping Pham with Flynn, the party

6      seeking sanctions, the order setting the hearing did not give Pham adequate notice that she

7      personally was facing the possibility of sanctions.

8              The text of this order is in contrast to another order to show cause in this case

9      issued by the Magistrate Judge which made it clear the attorney, as well as her clients, was

10     facing sanctions.  On July 24, 2008, the Magistrate Judge entered an order setting a hearing

11     "to show cause as to why the Montgomery parties and Deborah A. Klar, counsel for the

12     Montgomery parties, should not be held in contempt" for failure to comply with one of the

13     Court's discovery-related orders.  (Order (Doc. #769).)

14             The magnitude and scope of the sanctions issued supports this conclusion.  The

15     sanctions order makes Pham jointly and severally liable for over $200,000 in fees and costs,

16     and revokes her pro hac vice application, which is the relief referred to in Flynn's motion

17     for sanctions.  However, the sanctions order also bars her from seeking pro hac vice

18     admission in this Court for five years, publishes the order as a public reprimand, refers

19     Pham to the Nevada and California Bars, and orders Pham to perform 100 hours of

20     community service.  The order setting the hearing in this matter did not adequately advise

21     Pham she would be subject to these considerable sanctions.

22             Flynn argues that Pham's due process rights were not violated because she

23     provided an offer of proof to this Court along with her objection to the Magistrate Judge's

24     order, and hence she has been afforded an opportunity to be heard.  However, Pham's offer

25     of proof was provided after the Magistrate Judge made her findings.  Pham did not have the

26     opportunity to provide this material to the Magistrate Judge, who was the fact finder in this

1  matter.  The undersigned is reviewing the Magistrate Judge's findings on a clearly

2  erroneous or contrary to law standard.  Pham's provision of materials after the fact does not

3  cure the pre-deprivation due process violation.  The Court therefore will sustain Pham's

4  objections to the Magistrate Judge's sanctions order, without prejudice to any further

5  proceedings consistent with this Order with respect to Flynn's motion for sanctions.[8]

6       **D. Klar**

7         Klar argues she was not afforded procedural due process protections for the

8  punitive sanctions set forth in the sanctions order.  Flynn responds that Klar received notice

9  of the charges against her, including the possible revocation of her pro hac vice admission,

10  as set forth in Flynn's motion for sanctions.

11         The Magistrate Judge's sanctions order is contrary to law because the Magistrate

12  Judge did not provide adequate notice to Klar prior to imposing the sanctions in this matter.

13  Flynn's motion for sanctions explicitly sought sanctions against Klar.  However, as

14  discussed above, the Magistrate Judge's order setting the evidentiary hearing was narrower

15  than Flynn's requested sanctions as set forth in his motion, as he sought sanctions related to

16  other alleged misconduct.  The Magistrate Judge narrowed the scope of Flynn's motion and

17  was not considering the full panoply of misconduct or relief set forth in Flynn's motion.

18  Consequently, Flynn's motion alone did not suffice to put Klar on notice as to the sanctions

19  the Magistrate Judge was considering.

20         As with Pham, although Klar's attendance at the hearing was required, the order

21  does not make clear that Klar would be required to show cause why she should not be

22  personally sanctioned or what sanctions she might face.  By grouping Klar with Flynn, the

23  party seeking sanctions, the order setting the hearing did not give Klar adequate notice that

24

25                     ————————————

26       [8]  Because the Court affirms Pham's objections on this basis, the Court need not address Pham's other objections.

1  she personally was facing the possibility of sanctions.  Unlike the Magistrate Judge's July

2  24, 2008 order setting a hearing "to show cause as to why the Montgomery parties and

3  Deborah A. Klar, counsel for the Montgomery parties, should not be held in contempt," the

4  order setting the evidentiary hearing on Flynn's motion for sanctions did not adequately

5  place Klar on notice that she personally may be subject to sanctions.

6       As discussed above, the magnitude and scope of the sanctions issued supports

7  this conclusion.  The sanctions order makes Klar jointly and severally liable for over

8  $200,000 in fees and costs and revokes her pro hac vice application, which is the relief

9  referred to in Flynn's motion for sanctions.  But the sanctions order also bars her from

10  seeking pro hac vice admission in this Court for five years, publishes the order as a public

11  reprimand, refers Klar to the Nevada and California Bars, and orders her to perform 200

12  hours of community service.  The order setting the hearing in this matter did not adequately

13  advise Klar she would be subject to these considerable sanctions.

14       Moreover, the sanctions order appears to consider Klar's conduct beyond the two

15  subjects mentioned in the order setting the hearing.  The sanctions order stated that Klar's

16  misconduct "did not occur in a vacuum; instead it was part of a vexing pattern of conduct

17  throughout her tenure as lead counsel until she was replaced in July 2008." (Order (Doc.

18  #985) at 44.)  The sanctions order noted that Klar "continued to invite sanctions against her

19  clients and herself," and discussed subsequent orders of this Court regarding Klar and the

20  Montgomery parties' failure to abide by this Court's orders, ultimately resulting in sanctions

21  against Montgomery in the amount of $2,500 per day.  (Id. at 44-45.)  The Magistrate Judge

22  may have recounted these events as further support for her findings as to Klar's bad faith in

23  relation to the two areas of inquiry in the order setting the evidentiary hearing.  However, it

24  is unclear whether the Magistrate Judge was limiting her use of Klar's subsequent conduct

25  as evidence of her earlier bad faith or as further sanctionable conduct.  The Court therefore

26  will sustain Klar's objections to the Magistrate Judge's sanctions order, without prejudice to

1   any further proceedings consistent with this Order with respect to Flynn's motion for

2   sanctions.[9]

3   **IV. CONCLUSION**

4        IT IS THEREFORE ORDERED that the Objections of Liner Grode Stein

5   Yankelevitz Sunshine Regenstreif & Taylor LLP to Order Re: Motion for Sanctions (Doc.

6   #1035) with supporting declaration (Doc. #1036) are SUSTAINED without prejudice to any

7   further proceedings consistent with this Order with respect to Flynn's motion for sanctions.

8        IT IS FURTHER ORDERED that the Objections of Dennis Montgomery to

9   Order Re: Motion for Sanctions (Doc. #1037) are hereby OVERRULED.

10       IT IS FURTHER ORDERED that Teri Pham's Objection to Magistrate Judge's

11  Order (Doc. #1040) are hereby SUSTAINED without prejudice to any further proceedings

12  consistent with this Order with respect to Flynn's motion for sanctions.

13       IT IS FURTHER ORDERED that the Objections of Non-Party Deborah A. Klar

14  to Findings of Magistrate Judge in Stayed Order Re: Motion for Sanctions (Doc. #1042) are

15  hereby SUSTAINED without prejudice to any further proceedings consistent with this

16  Order with respect to Flynn's motion for sanctions.

17

18  DATED: April 5, 2010

19                                               

20                          PHILIP M. PRO
                    United States District Judge

21

22

23

24

25  ———————————

26     [9] Because the Court affirms Klar's objections on this basis, the Court need not address Klar's
other objections.