1  **Michael J. Flynn, Mass. State Bar No.172780**
   P.O. Box 690, 6125 El Tordo
2  Rancho Santa Fe, CA  92067; *and*
   One Center Plaza, Suite 240
3  Boston, MA  02108
   Tel.:  (858) 775-7624; Fax:  (858) 759-0711
4  *Admitted Pro Hac Vice*

5  **Carla DiMare, Esq.**, MA State Bar No. 553432; CA 182906
   LAW OFFICE OF CARLA DIMARE
6  P.O. Box 1668
   Rancho Santa Fe, CA 92067
7  Tel: (858) 775-0707; Fax: (858) 756-2859
   *Admitted Pro Hac Vice*

8

9                    **UNITED STATES DISTRICT COURT**

10                       **DISTRICT OF NEVADA**

11

12  DENNIS MONTGOMERY, and the            )
    MONTGOMERY FAMILY TRUST,              )        3:06-CV-00056-PMP-VPC
13                                        )        **BASE FILE**
            Plaintiffs,                   )
14                                        )        3:06-CV-00145-PMP-VPC
    v.                                    )
15                                        )
    ETREPPID   TECHNOLOGIES,   LLC,)      **REPLY OF MICHAEL FLYNN TO THE**
16  WARREN TREPP, and the UNITED STATES)  **OBJECTIONS OF LINER GRODE STEIN**
    DEPARTMENT OF DEFENSE,                )  **YAKELEVITZ SUNSHINE REGENSTREIF**
17                                        )  **& TAYLOR TO MR. FLYNN'S REQUEST**
            Defendants.                   )  **TO CONFORM ORDER #985 TO ORDER**
18  _____  )  **#1150.**
                                          )
19  AND ALL RELATED MATTERS.              )
    _____  )

20

21  **I.     SUMMARY OF THE ARGUMENT**

22          The Liner Grode Stein Yankelevitz Sunshine Regensteif & Taylor, LLP ("Liner")  Opposition

23  to Mr. Flynn's Request to conform Judge Cooke's Order re: Motion for Sanctions, docket #985

24  ("Sanctions Order"), to Judge Pro's Order on that Order, docket #1150 ("District Order"), is factually

25  incorrect, legally unsupported, and without merit.  Mr. Flynn's motion to conform (dockets #1151 &

26  1152) should be granted.  The crux of the issue here is that the District Court wants it made clear that

27  the if the Sanctions Order intended to sanction Liner under the Court's inherent powers then it must

28
                                            1

1   be made clearer.

2       The Liner firm committed deliberate discovery abuse.  They should not be permitted to escape

3   punishment on a technicality that the law and the District Order allow to be corrected, particularly since

4   (a) the findings of "bad faith" by Liner are completed and were not disturbed upon the District Court's

5   review; (b) the Sanctions order clearly intended to sanction Liner under the Court's inherent powers;

6   (c) the District Order surely permitted such a clarification since it states that there may be "further

7   proceedings;" and (d) not making this clarification would allow a guilty Los Angeles law firm to escape

8   punishment for their substantial misconduct.

9       Liner's current and self-determined allegation that the most that they did wrong was

10  "negligently supervise" two errant lawyers, Ms. Klar and Pham, is incontrovertibly untrue and cannot

11  be reconciled with the Sanctions Order. (Id.).  For over eight months Liner systematically financed

12  comprehensive attempts to subvert Nevada laws and Orders, aided in the subornation of perjury, billed

13  millions of dollars while violating the law, and then (arrogantly) tried to blame the judge.  Emails show

14  that *three* named partners, along with Klar and Pham, were billing astounding amounts on Edra

15  Blixseth's cases, namely Liner, Grode, and Yankelevitz, while Klar and Pham were engaging in

16  egregious litigation misconduct in Nevada, which vexatiously increased this Court's work.

17      Now that Liner has been caught, they strenuously attempt to evade or escape punishment on

18  a technicality and further mock our justice system.  Only when they knew they were caught, after more

19  than a year of misconduct, did senior partners remove Klar and Pham, and then only to have their

20  clients confess $26.5 million dollars in judgments, which has never been paid, in order to conceal the

21  misconduct they implemented in active collusion with their clients.  In reality, that appears to be how

22  the Liner firm conducts business (although hopefully the Sanctions Order has been a reminder that it

23  is not worth it).  In addition to failing to cite any law whatsoever to support their opposition, as a

24  matter of public policy and to uphold the integrity of the rule of law, they should not escape

25  punishment.  Under these circumstances, including a finding of "complicity" in drafting a perjured

26  declaration, to let Liner escape punishment would be unjust to Nevada's federal court.

27  ///

28

2

## II.    ARGUMENT

### A.    Liner's Contention That There Was No Finding of "Bad Faith," or That the Record Does Not Support Such a Finding, is Incontrovertibly Incorrect

The Sanctions Order states that Liner acted in bad faith <u>and</u> it is replete with findings of fact showing Liner's bad faith, as detailed below.  So Liner's contention that there were "no" findings that they acted in "bad faith" is <u>untrue</u>. (Liner memo, 1:27-2:8, 7:15).

The first page of the Sanctions Order states,

"[t]he court concludes that the conduct of *the Liner firm* and its attorneys ... was willfully reckless, intended to harass, done for an improper purpose and was *suffused with bad faith.*" (Order #985, 1:20-2:4; *see also* 45:10-13, 48:8-20, 50:12-27 [emphasis added]).

The Order also states that "[t]he Liner firm also bears responsibility for what occurred in this proceeding," and "[t]he Court finds that *the Liner firm acquiesced to or willingly carried out Ms. Klar's litigation strategy.*" (Id., 48:8-20 [emphasis added]).  Liner acted through its partners Deborah Klar and Teri Pham and other lawyers who also acted in bad faith.  Liner provided the resources, the money, and they billed  millions of dollars  in a short time to perpetrate *their misconduct on behalf of and in collusion with their clients.*

Amongst other things the Court found that

"the conduct of Ms. Klar and Ms. Pham epitomizes the scorched earth litigation tactics that undermines citizen's confidence in our courts and our system of justice.  The court cannot allow attorneys who practice before it to operate as hired bounty hunters who—are with extensive resources—take it upon themselves to manipulate the legal system with impunity."

The Court also found that Mr. Montgomery committed "perjury," and that Liner lawyers, "Ms. Klar and Ms. Pham filed this perjured declaration in [this] Court and in California Superior Court." (Order #985, p.  43, 47, 48, 49).

Contrary to Liner's position, the Sanctions Order was found to be not erroneous and the perjury findings were impliedly upheld as to it and directly upheld as to Montgomery.  The joint and several liability findings and conclusions were not disturbed.  Thus, the thrust of the District Judge's Order is that the only clarification needed is to unequivocally state that the Liner firm has been sanctioned pursuant tot he Court's inherent powers.

///

3

1    The Sanctions Order also found that collectively, Liner, Ms. Klar and Pham, and Dennis and Brenda

2    Montgomery and the Montgomery Family Trust ("Montgomery"), (collectively "the sanctioned

3    parties"), acted "in bad faith or conduct tantamount to bad faith with the intention to undermine this

4    Court's orders for the improper purpose of obtaining a more favorable forum ... Ms. Klar and Ms.

5    Pham willfully abused the judicial process in this court ...  they did so to delay or disrupt this litigation

6    to gain a tactical advantage ...Ms. Klar and Ms. Pham... multiplied these proceedings, and they did so

7    unreasonably and vexatiously ... Even if Ms. Klar's and Ms. Pham's conduct was not totally frivolous,

8    the court finds they were motivated by vindictiveness and bad faith. ... Ms. Klar and Ms. Pham acted

9    recklessly and with an improper intent ...Ms. Klar and Ms. Pham knew, or upon reasonable inquiry

10   should have known, that during Mr. Flynn's representation of Mr. Montgomery ... there was no reason

11   whatsoever for Mr. Montgomery to concern himself with the state in which Mr. Flynn was admitted

12   to practice law [because] ... were both duly admitted pro hac vice ... Even more disturbing, as events

13   unfolded and this court issued orders that were contrary to Ms. Klar's litigation strategy, she and Ms.

14   Pham engaged in a continuous pattern of contempt of this Court. .... Every single court or bar entity

15   that ultimately considered Ms. Klar and Ms. Pham's campaign to divest this court of jurisdiction over

16   these matters  . . .  concluded that they were wrong  . . .  [t]he conduct of Ms. Klar and Ms. Pham

17   epitomizes the scorched earth litigation tactics that undermines citizens' confidence in our courts and

18   our system of justice," etcetera. (*See, e.g.,* Order #985, 1:20-24, 37:4-52:16, findings 88, 101, 111,

19   112, 116, 126, 133, 137, 139, 140).   Liner was responsible for the aforementioned misdeeds of their

20   lawyers. (Order #985, p. 48, 50).

21         Liner's contention that attorney Pham did not know that she could be sanctioned is factually

22   dishonest.  It's all over the record.  (Flynn Response to Objections of Ms. Pham, doc. #1098, §III.D)

23   The opening paragraph of the sanctions motion explicitly recites that sanctions are sought against

24   Montgomery's "counsel of record."

25         Like the technicality with Liner, the technicality regarding Ms. Pham and Ms. Klar should

26   also be corrected now to avoid a possible appellate remand.  Ms. Pham and Ms. Klar committed

27   egregious attorney misconduct---Pham indisputably and repeatedly lied to different Judges---and no

28

4

1    amount of Pham's shrill defiance or wasteful appeals will ever change those facts.  Their current

2    appeals appear to be merely delaying tactics - more of what this Court has observed to be their

3    modus operandi.

4        The Sanctions Order found that Liner's partners deliberately violated "three orders" at

5    docket #291, 256, and 296. (Order #985, finding 140).  The Order also found that Liner's partners

6    and lawyers attempted to "undermine the effect of the United States protective order" regarding

7    military and states secrets, and the Courts work on the protective order had been ongoing since

8    approximately September 2006. (*See* docket #83-2 [Negroponte decl.]; Order #985,  findings 139,

9    47, 50, 56, 71, 75 122, 134).  Liner is responsible for their lawyers, which the Court recognized

10   when it considered Liner's history of misconduct. (Order #985, p. 38, 44-45, 1:20-2:4, 48:8-20,

11   50:12-27).   Liner's contention that the findings against Liner were "sparse" is simply contrary to

12   the Sanctions Order. .

13       Accordingly, the Sanctions Order is "suffused" with evidence of Liner's bad faith, and it

14   specifically found "bad faith" on Liner's part. (Order #985, 1:20-2:4, see also 45:10-13, 48:8-20,

15   50:12-27).  These findings are supported by the record and were not disturbed by the District

16   Order.  (*Supra* Order  #985, including 1:20-25 37:4-48:7, 49:26-50:11, 52:4-16, findings 88, 101,

17   111, 112, 116, 126, 133, 137, 139, 140.).[1]

18   **B.    Liner's Contention That Sanctions Were ONLY Imposed Under 28 U.S.C.**

19   **§1927, is Incorrect—In Three Locations it is Quite Clear That Liner was Being**

20   **Sanctioned "Pursuant to the Court's Inherent Powers," And it is Clear That**

21   **the District Order Simply Wants That Issue Clarified**

22       There is  no dispute that a law firm can be sanctioned under a Court's inherent powers.

23   *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-54, 115 L. Ed. 2d 27, 111 S. Ct. 2123 (1991).  The

24   decision to award sanctions is a matter within the court's sound discretion. See *Dahl v. City of*

25   *Huntington Beach*, 84 F.3d 363, 367 (9th Cir. 1996); *Wages v. Internal Revenue Service*, 915 F.2d

26

27       [1]  Mr. Flynn notes that Liner's papers to the District Court, asking to review the Sanctions Order
     at docket #985, were replete with misrepresentations, half truths, twisted rhetoric, and untruths, so their
28   continued misconduct magnifies the need to affirm the Sanctions Order against the Liner firm.

1230, 1235 (9th Cir.), cert. denied, 498 U.S. 1096, 111 S. Ct. 986, 112 L. Ed. 2d 1071 (1991); *Erickson v. Newmar Corp.*, 87 F.3d 298, 303 (9th Cir. 1996). "For a sanction to be validly imposed, the conduct in question must be sanctionable under the authority relied on." *Cunningham v. County of Los Angeles*, 879 F.2d 481, 490 (9th Cir. 1988) (internal quotations omitted), *cert. denied*, 493 U.S. 1035, 110 S. Ct. 757, 107 L. Ed. 2d 773 (1990). It is the imperative duty of any lawyer or party to respectfully yield to the rulings of the court. *See Chapman v. Pacific Tel. & Tel. Co.* 613 F.2d 193, 197 (9th Cir. 1979), citing *Maness v. Meyers*, 419 U.S. 449, 95 S. Ct. 584, 42 L. Ed. 2d 574 (1975); *see also Hawk v. Sup. Ct.* (1974) 42 CA3d 108, 126-27]).

In this case and on this issue, it appears that the District Order simply wants it made clear that the Sanctions Order is sanctioning Liner under the Court's "inherent powers." (District Order, doc. #1150, 22:9-10).

Liner's contention that the District Order "rejected" that Liner was sanctioned under the Court's inherent powers is untrue. The District Order said it wasn't clear. In particular, it states, "To the extent the Magistrate Judge intended to sanction the Liner Firm under the Court's inherent power, the sanctions order does not make that intention clear. (District Order, doc. #1150, 22:9-10). This is another example of Liner cherry-picking and leaving out obvious facts.

The District Order surely permits this clarification because it specifically states that with regard to Liner, there may be "further proceedings," and twice it permits "further proceedings." (Id., 38:3-16). Also, the intent to sanction Liner under the court's "inherent power" was evidenced by the following, at least, so this is **not** a "retroactive ruling," as Liner erroneously purports in their effort to escape punishment. (Liner memo, 4:18-20). We know that was the intent of the Sanctions Order from the very clear words used, including:

•First, the necessary findings of "bad faith" by Liner are in the Order. (Order, doc. #985; *supra* § II. A). They are set forth above, so they will not be repeated.

•Second, the Sanction Order specifically states in *three places* that Liner is to be sanctioned "**pursuant to [the Court'] inherent powers**." (Doc. #985, 49:18-51:8 [emphasis added], 52:4-

12, 54:2-3). [2]   However, once it was not made clear.  (Doc. #985 48:16-19).

•Third, the Sanctions Order set forth the applicable law to sanction Liner under the Court's inherent authority.  (Doc. #985, 32:18-33:22).

Liner has cited nothing to support their contention that the Sanctions Order can not be clarified.  As a matter of law, (doc. #985), they engaged in bad faith litigation, and now they are disingenuously trying to disown their lawyers, escape liability, blame the judge and simultaneously justify their clearly sanctionable conduct.  This proceeding is <u>not</u>  the place to litigate issues between Liner and its  lawyers, which issues are  not before this Court, (and Mr. Flynn believes is the subject of separate ongoing litigation).   Issues of attorney client privilege and more would infect and unnecessarily expand this sanction proceeding.  There is no evidence in this record that Liner was not responsible for its lawyers—in fact, the evidence is to the contrary.  (*Supra*, §II.A).

In short, since the Sanctions Order stated that it was sanctioning Liner under the court's inherent powers, and since the District Order permits clarification, the Sanctions Order should be clarified.

### C.  <u>Liner's Allegation That Mr. Flynn's Motion is a Reconsideration is Nonsense</u>

The motion is a motion to conform.  It is not called a reconsideration, it does not ask the Court to reverse itself—just the opposite, and it never argues any where that there are new facts that must be considered.  The Liner argument is frivolous.

## III.   CONCLUSION

The Liner firm's misconduct is the type of conduct that is undermining  the legal profession. The Liner firm vexatiously multiplied the proceedings and enabled their agents, primarily Pham and Klar, to run amok  making, *inter alia,* "stunning misrepresentations" and aiding and

---

[2]   <u>The three locations where it is clear that Liner was being sanctioned pursuant to the Court's</u> <u>inherent powers are as follows:</u> (1) section IV of docket #985, entitled "Sanctions," specifically discusses Liner's misconduct, and then it specifically states, "Based upon the foregoing [which, again, included Liner's misconduct] the court finds that **pursuant to its inherent powers** and 28 U.S.C. § 1927, the following sanctions should issue," and it goes on to sanction Liner.  (Doc. #985, 49:18-51:8, 52:4-12 [emphasis added]). (2)  On page 52:4-12, the Sanctions Order again specifically states that the Liner firm is being sanctioned "pursuant to the court's inherent power." (Doc. #985, 52:4-12).  (3) on page 54:2-3, again, the Sanction Order specifically states that sanctions were granted "pursuant to 28 U.S.C. §1927 and or **pursuant to the inherent power of the court**."  (Doc. #985, 54:2-3).

abetting "perjury," while Liner raked in millions in legal fees in a short time.  One would hope that in light of the Sanctions Order and the District Court's review of it that the Liner firm would express some remorse for their misconduct or explain how they intend to prevent this from happening again.  But, instead, they have continued to twist the record and present half truths, without any shame for their current attempts to evade punishment on technicalities that can be corrected.  The Sanctions Order is substantively correct and any procedural deficiency should be clarified so that it is clear that sanctions were against the Liner firm under the Court's inherent powers for Liner's bad faith conduct.

Respectfully Submitted,

/S/_____
Michael J. Flynn, Esq.

LAW OFFICE OF CARLA DIMARE
Carla DiMare, Esq.

# CERTIFICATE OF SERVICE

Pursuant to NRCP 5(b), I certify that I am an employee of LOGAR PULVER, and that on the 6th day of May 2010, I

☐  deposited for mailing in the U.S. Mail, with sufficient postage affixed thereto

☐  sent via Federal Express or other overnight delivery service

☐  delivered via facsimile machine to fax number:

☐  personally delivered

☐  caused to be delivered via Reno-Carson Messenger Service

✓  served through the CM/ECF electronic notification system

the foregoing document addressed to:

> David R. Grundy, Esq.
> Alice Campos, Esq.
> Joy R. Graber, Esq.
> 6005 Plumas Street
> Reno, NV 89519

and

> Daniel T. Hayward, Esq.
> Laxalt & Nomura
> 9600 Gateway Drive
> Reno, NV 89521

/s/_____
ZACHARY DRAPER
Legal Assistant to Logar Pulver

9

1   **Michael J. Flynn, Mass. State Bar No.172780**
    P.O. Box 690, 6125 El Tordo
2   Rancho Santa Fe, CA  92067; *and*
    One Center Plaza, Suite 240
3   Boston, MA  02108
    Tel.:  (858) 775-7624; Fax:  (858) 759-0711
4   *Admitted Pro Hac Vice*

5   **Carla DiMare, Esq.**, MA State Bar No. 553432; CA 182906
    LAW OFFICE OF CARLA DIMARE
6   P.O. Box 1668
    Rancho Santa Fe, CA 92067
7   Tel.: (858) 775-0707; Fax: (858) 756-2859
    *Admitted Pro Hac Vice*

8

9                    **UNITED STATES DISTRICT COURT**

10                      **DISTRICT OF NEVADA**

11

12   DENNIS MONTGOMERY, and the          )
     MONTGOMERY FAMILY TRUST,            )        3:06-CV-00056-PMP-VPC
13                                       )        **BASE FILE**
              Plaintiffs,                )
14                                       )        3:06-CV-00145-PMP-VPC
     v.                                  )
15                                       )
     ETREPPID   TECHNOLOGIES,   LLC,)   **REPLY OF MICHAEL FLYNN TO THE**
16   WARREN TREPP, and the UNITED STATES )  **OBJECTIONS OF LINER GRODE STEIN**
     DEPARTMENT OF DEFENSE,              )  **YAKELEVITZ SUNSHINE REGENSTREIF**
17                                       )  **& TAYLOR TO MR. FLYNN'S REQUEST**
              Defendants.                )  **TO CONFORM ORDER #985 TO ORDER**
18   _____)  **#1150.**
                                         )
19   AND ALL RELATED MATTERS.            )
     _____)

20

21

22   **I.      SUMMARY OF THE ARGUMENT**

23           The Liner Grode Stein Yankelevitz Sunshine Regensteif & Taylor, LLP ("Liner")  Opposition

24   to Mr. Flynn's Request to conform Judge Cooke's Order re: Motion for Sanctions, docket #985

25   ("Sanctions Order"), to Judge Pro's Order on that Order, docket #1150 ("District Order"), is factually

26   incorrect, legally unsupported, and without merit.  Mr. Flynn's motion to conform (dockets #1151 &

27   1152) should be granted.  The crux of the issue here is that the District Court wants it made clear that

28   the if the Sanctions Order intended to sanction Liner under the Court's inherent powers then it must

                                         1

be made clearer.

The Liner firm committed deliberate discovery abuse. They should not be permitted to escape punishment on a technicality that the law and the District Order allow to be corrected, particularly since (a) the findings of "bad faith" by Liner are completed and were not disturbed upon the District Court's review; (b) the Sanctions order clearly intended to sanction Liner under the Court's inherent powers; (c) the District Order surely permitted such a clarification since it states that there may be "further proceedings;" and (d) not making this clarification would allow a guilty Los Angeles law firm to escape punishment for their substantial misconduct.

Liner's current and self-determined allegation that the most that they did wrong was "negligently supervise" two errant lawyers, Ms. Klar and Pham, is incontrovertibly untrue and cannot be reconciled with the Sanctions Order. (Id.). For over eight months Liner systematically financed comprehensive attempts to subvert Nevada laws and Orders, aided in the subornation of perjury, billed millions of dollars while violating the law, and then (arrogantly) tried to blame the judge. Emails show that *three* named partners, along with Klar and Pham, were billing astounding amounts on Edra Blixseth's cases, namely Liner, Grode, and Yankelevitz, while Klar and Pham were engaging in egregious litigation misconduct in Nevada, which vexatiously increased this Court's work.

Now that Liner has been caught, they strenuously attempt to evade or escape punishment on a technicality and further mock our justice system. Only when they knew they were caught, after more than a year of misconduct, did senior partners remove Klar and Pham, and then only to have their clients confess $26.5 million dollars in judgments, which has never been paid, in order to conceal the misconduct they implemented in active collusion with their clients. In reality, that appears to be how the Liner firm conducts business (although hopefully the Sanctions Order has been a reminder that it is not worth it). In addition to failing to cite any law whatsoever to support their opposition, as a matter of public policy and to uphold the integrity of the rule of law, they should not escape punishment. Under these circumstances, including a finding of "complicity" in drafting a perjured declaration, to let Liner escape punishment would be unjust to Nevada's federal court.

///

2

## II.    ARGUMENT

### A.    Liner's Contention That There Was No Finding of "Bad Faith," or That the Record Does Not Support Such a Finding, is Incontrovertibly Incorrect

The Sanctions Order states that Liner acted in bad faith <u>and</u> it is replete with findings of fact showing Liner's bad faith, as detailed below.  So Liner's contention that there were "no" findings that they acted in "bad faith" is <u>untrue</u>. (Liner memo, 1:27-2:8, 7:15).

The first page of the Sanctions Order states,

> "[t]he court concludes that the conduct of *the Liner firm* and its attorneys ... was willfully reckless, intended to harass, done for an improper purpose and was *suffused with bad faith.*" (Order #985, 1:20-2:4; *see also* 45:10-13, 48:8-20, 50:12-27 [emphasis added]).

The Order also states that "[t]he Liner firm also bears responsibility for what occurred in this proceeding," and "[t]he Court finds that *the Liner firm acquiesced to or willingly carried out Ms. Klar's litigation strategy.*" (Id., 48:8-20 [emphasis added]).  Liner acted through its partners Deborah Klar and Teri Pham and other lawyers who also acted in bad faith.  Liner provided the resources, the money, and they billed  millions of dollars  in a short time to perpetrate *their misconduct on behalf of and in collusion with their clients.*

Amongst other things the Court found that

> "the conduct of Ms. Klar and Ms. Pham epitomizes the scorched earth litigation tactics that undermines citizen's confidence in our courts and our system of justice.  The court cannot allow attorneys who practice before it to operate as hired bounty hunters who—are with extensive resources—take it upon themselves to manipulate the legal system with impunity."

The Court also found that Mr. Montgomery committed "perjury," and that Liner lawyers, "Ms. Klar and Ms. Pham filed this perjured declaration in [this] Court and in California Superior Court." (Order #985, p.  43, 47, 48, 49).

Contrary to Liner's position, the Sanctions Order was found to be not erroneous and the perjury findings were impliedly upheld as to it and directly upheld as to Montgomery.  The joint and several liability findings and conclusions were not disturbed.  Thus, the thrust of the District Judge's Order is that the only clarification needed is to unequivocally state that the Liner firm has been sanctioned pursuant tot he Court's inherent powers.

///

3

1    The Sanctions Order also found that collectively, Liner, Ms. Klar and Pham, and Dennis and Brenda

2    Montgomery and the Montgomery Family Trust ("Montgomery"), (collectively "the sanctioned

3    parties"), acted "in bad faith or conduct tantamount to bad faith with the intention to undermine this

4    Court's orders for the improper purpose of obtaining a more favorable forum ... Ms. Klar and Ms.

5    Pham willfully abused the judicial process in this court ...  they did so to delay or disrupt this litigation

6    to gain a tactical advantage ...Ms. Klar and Ms. Pham... multiplied these proceedings, and they did so

7    unreasonably and vexatiously ... Even if Ms. Klar's and Ms. Pham's conduct was not totally frivolous,

8    the court finds they were motivated by vindictiveness and bad faith. ... Ms. Klar and Ms. Pham acted

9    recklessly and with an improper intent ...Ms. Klar and Ms. Pham knew, or upon reasonable inquiry

10   should have known, that during Mr. Flynn's representation of Mr. Montgomery ... there was no reason

11   whatsoever for Mr. Montgomery to concern himself with the state in which Mr. Flynn was admitted

12   to practice law [because] ... were both duly admitted pro hac vice ... Even more disturbing, as events

13   unfolded and this court issued orders that were contrary to Ms. Klar's litigation strategy, she and Ms.

14   Pham engaged in a continuous pattern of contempt of this Court. .... Every single court or bar entity

15   that ultimately considered Ms. Klar and Ms. Pham's campaign to divest this court of jurisdiction over

16   these matters  . . .  concluded that they were wrong  . . .  [t]he conduct of Ms. Klar and Ms. Pham

17   epitomizes the scorched earth litigation tactics that undermines citizens' confidence in our courts and

18   our system of justice," etcetera.  (*See, e.g.,* Order #985, 1:20-24, 37:4-52:16, findings 88, 101, 111,

19   112, 116, 126, 133, 137, 139, 140).   Liner was responsible for the aforementioned misdeeds of their

20   lawyers.  (Order #985, p. 48, 50).

21         Liner's contention that attorney Pham did not know that she could be sanctioned is factually

22   dishonest.  It's all over the record.  (Flynn Response to Objections of Ms. Pham, doc. #1098, §III.D)

23   The opening paragraph of the sanctions motion explicitly recites that sanctions are sought against

24   Montgomery's "counsel of record."

25         Like the technicality with Liner, the technicality regarding Ms. Pham and Ms. Klar should

26   also be corrected now to avoid a possible appellate remand.  Ms. Pham and Ms. Klar committed

27   egregious attorney misconduct---Pham indisputably and repeatedly lied to different Judges---and no

28

4

1   amount of Pham's shrill defiance or wasteful appeals will ever change those facts.  Their current

2   appeals appear to be merely delaying tactics - more of what this Court has observed to be their

3   modus operandi.

4        The Sanctions Order found that Liner's partners deliberately violated "three orders" at

5   docket #291, 256, and 296. (Order #985, finding 140).  The Order also found that Liner's partners

6   and lawyers attempted to "undermine the effect of the United States protective order" regarding

7   military and states secrets, and the Courts work on the protective order had been ongoing since

8   approximately September 2006. (*See* docket #83-2 [Negroponte decl.]; Order #985,  findings 139,

9   47, 50, 56, 71, 75 122, 134).  Liner is responsible for their lawyers, which the Court recognized

10  when it considered Liner's history of misconduct. (Order #985, p. 38, 44-45, 1:20-2:4, 48:8-20,

11  50:12-27).   Liner's contention that the findings against Liner were "sparse" is simply contrary to

12  the Sanctions Order. .

13       Accordingly, the Sanctions Order is "suffused" with evidence of Liner's bad faith, and it

14  specifically found "bad faith" on Liner's part. (Order #985, 1:20-2:4, see also 45:10-13, 48:8-20,

15  50:12-27).  These findings are supported by the record and were not disturbed by the District

16  Order.  (*Supra* Order  #985, including 1:20-25 37:4-48:7, 49:26-50:11, 52:4-16, findings 88, 101,

17  111, 112, 116, 126, 133, 137, 139, 140.).[1]

18       **B.      Liner's Contention That Sanctions Were ONLY Imposed Under 28 U.S.C.**

19       **§1927, is Incorrect—In Three Locations it is Quite Clear That Liner was Being**

20       **Sanctioned "Pursuant to the Court's Inherent Powers," And it is Clear That**

21       **the District Order Simply Wants That Issue Clarified**

22       There is  no dispute that a law firm can be sanctioned under a Court's inherent powers.

23  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-54, 115 L. Ed. 2d 27, 111 S. Ct. 2123 (1991).  The

24  decision to award sanctions is a matter within the court's sound discretion. See *Dahl v. City of*

25  *Huntington Beach*, 84 F.3d 363, 367 (9th Cir. 1996); *Wages v. Internal Revenue Service*, 915 F.2d

26  _____

27       [1]  Mr. Flynn notes that Liner's papers to the District Court, asking to review the Sanctions Order
     at docket #985, were replete with misrepresentations, half truths, twisted rhetoric, and untruths, so their
28   continued misconduct magnifies the need to affirm the Sanctions Order against the Liner firm.

1230, 1235 (9th Cir.), cert. denied, 498 U.S. 1096, 111 S. Ct. 986, 112 L. Ed. 2d 1071 (1991); *Erickson v. Newmar Corp.*, 87 F.3d 298, 303 (9th Cir. 1996). "For a sanction to be validly imposed, the conduct in question must be sanctionable under the authority relied on." *Cunningham v. County of Los Angeles*, 879 F.2d 481, 490 (9th Cir. 1988) (internal quotations omitted), *cert. denied*, 493 U.S. 1035, 110 S. Ct. 757, 107 L. Ed. 2d 773 (1990). It is the imperative duty of any lawyer or party to respectfully yield to the rulings of the court. *See Chapman v. Pacific Tel. & Tel. Co.* 613 F.2d 193, 197 (9th Cir. 1979), citing *Maness v. Meyers*, 419 U.S. 449, 95 S. Ct. 584, 42 L. Ed. 2d 574 (1975); *see also Hawk v. Sup. Ct.* (1974) 42 CA3d 108, 126-27]).

In this case and on this issue, it appears that the District Order simply wants it made clear that the Sanctions Order is sanctioning Liner under the Court's "inherent powers." (District Order, doc. #1150, 22:9-10).

Liner's contention that the District Order "rejected" that Liner was sanctioned under the Court's inherent powers is untrue. The District Order said it wasn't clear. In particular, it states, "To the extent the Magistrate Judge intended to sanction the Liner Firm under the Court's inherent power, the sanctions order does not make that intention clear. (District Order, doc. #1150, 22:9-10). This is another example of Liner cherry-picking and leaving out obvious facts.

The District Order surely permits this clarification because it specifically states that with regard to Liner, there may be "further proceedings," and twice it permits "further proceedings." (Id., 38:3-16). Also, the intent to sanction Liner under the court's "inherent power" was evidenced by the following, at least, so this is **not** a "retroactive ruling," as Liner erroneously purports in their effort to escape punishment. (Liner memo, 4:18-20). We know that was the intent of the Sanctions Order from the very clear words used, including:

•First, the necessary findings of "bad faith" by Liner are in the Order. (Order, doc. #985; *supra* § II. A). They are set forth above, so they will not be repeated.

•Second, the Sanction Order specifically states in *three places* that Liner is to be sanctioned "**pursuant to [the Court'] inherent powers**." (Doc. #985, 49:18-51:8 [emphasis added], 52:4-

6

1   12, 54:2-3). [2]   However, once it was not made clear.  (Doc. #985 48:16-19).

2       •Third, the Sanctions Order set forth the applicable law to sanction Liner under the Court's

3   inherent authority.  (Doc. #985, 32:18-33:22).

4       Liner has cited nothing to support their contention that the Sanctions Order can not be

5   clarified.  As a matter of law, (doc. #985), they engaged in bad faith litigation, and now they are

6   disingenuously trying to disown their lawyers, escape liability, blame the judge and simultaneously

7   justify their clearly sanctionable conduct.  This proceeding is <u>not</u>  the place to litigate issues

8   between Liner and its  lawyers, which issues are  not before this Court, (and Mr. Flynn believes is

9   the subject of separate ongoing litigation).   Issues of attorney client privilege and more would

10  infect and unnecessarily expand this sanction proceeding.  There is no evidence in this record that

11  Liner was not responsible for its lawyers—in fact, the evidence is to the contrary.  (*Supra*, §II.A).

12      In short, since the Sanctions Order stated that it was sanctioning Liner under the court's

13  inherent powers, and since the District Order permits clarification, the Sanctions Order should be

14  clarified.

15         **C.  <u>Liner's Allegation That Mr. Flynn's Motion is a Reconsideration is Nonsense</u>**

16      The motion is a motion to conform.  It is not called a reconsideration, it does not ask the

17  Court to reverse itself—just the opposite, and it never argues any where that there are new facts

18  that must be considered.  The Liner argument is frivolous.

19  **III.    CONCLUSION**

20       The Liner firm's misconduct is the type of conduct that is undermining  the legal

21  profession. The Liner firm vexatiously multiplied the proceedings and enabled their agents, primarily

22  Pham and Klar, to run amok  making, *inter alia,* "stunning misrepresentations" and aiding and

23  ─────────────────

24      [2]   <u>The three locations where it is clear that Liner was being sanctioned pursuant to the Court's</u>
    <u>inherent powers are as follows</u>: (1) section IV of docket #985, entitled "Sanctions," specifically discusses

25  Liner's misconduct, and then it  specifically states, "Based upon the foregoing [which, again, included
    Liner's misconduct] the court finds that **pursuant to its inherent powers** and 28 U.S.C. § 1927, the

26  following sanctions should issue," and it goes on to sanction Liner.  (Doc. #985, 49:18-51:8, 52:4-12
    [emphasis added]).  (2)  On page 52:4-12, the Sanctions Order again specifically states that the Liner firm

27  is being sanctioned "pursuant to the court's inherent power."  (Doc. #985, 52:4-12).  (3) on page 54:2-3,
    again, the Sanction Order specifically states that sanctions were granted "pursuant to 28 U.S.C. §1927

28  and or **pursuant to the inherent power of the court**."  (Doc. #985, 54:2-3).

                                                  7

abetting "perjury," while Liner raked in millions in legal fees in a short time.  One would hope that in light of the Sanctions Order and the District Court's review of it that the Liner firm would express some remorse for their misconduct or explain how they intend to prevent this from happening again.  But, instead, they have continued to twist the record and present half truths, without any shame for their current attempts to evade punishment on technicalities that can be corrected.  The Sanctions Order is substantively correct and any procedural deficiency should be clarified so that it is clear that sanctions were against the Liner firm under the Court's inherent powers for Liner's bad faith conduct.

Respectfully Submitted,

/S/_____
Michael J. Flynn, Esq.

LAW OFFICE OF CARLA DIMARE
Carla DiMare, Esq.

## CERTIFICATE OF SERVICE

Pursuant to NRCP 5(b), I certify that I am an employee of LOGAR PULVER, and that on the 6th day of May 2010, I

☐     deposited for mailing in the U.S. Mail, with sufficient postage affixed thereto

☐     sent via Federal Express or other overnight delivery service

☐     delivered via facsimile machine to fax number:

☐     personally delivered

☐     caused to be delivered via Reno-Carson Messenger Service

✓     served through the CM/ECF electronic notification system

the foregoing document addressed to:

>       David R. Grundy, Esq.
>       Alice Campos, Esq.
>       Joy R. Graber, Esq.
>       6005 Plumas Street
>       Reno, NV 89519

and

>       Daniel T. Hayward, Esq.
>       Laxalt & Nomura
>       9600 Gateway Drive
>       Reno, NV 89521

/s/_____
ZACHARY DRAPER
Legal Assistant to Logar Pulver

9