BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Director

JAMES R. POWERS
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20005
Email: James.R.Powers@usdoj.gov
Telephone: (202) 353-0543

*Attorneys for the United States of America*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| DENNIS MONTGOMERY, *et al.* | Case No: 3:06-cv-00056-MMD-CSD |
| | and |
| Plaintiffs, | No. 3:06-cv-145-MMD-VPC |
| | |
| v. | |
| | |
| ETREPPID TECHNOLOGIES, L.L.C., *et al.*, | UNITED STATES' MEMORANDUM IN OPPOSITION TO MOTION TO INTERVENE AND TO LIFT PROTECTIVE ORDER |
| | |
| Defendants. | |

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

BACKGROUND ......................................................................................................... 1

I.      This Litigation and the State Secrets Protective Order ................................... 1

II.     Lindell's Intervention and D.C. Defamation Litigation.................................... 3

ARGUMENT .............................................................................................................. 4

I.      THE COURT SHOULD DENY THE MOTION BECAUSE LINDELL LACKS
        STANDING TO INTERVENE. ......................................................................... 5

II.     THE COURT SHOULD DENY THE MOTION TO INTERVENE FOR
        FAILURE TO MEET THE REQUIREMENTS FOR PERMISSIVE
        INTERVENTION OR INTERVENTION OF RIGHT......................................... 7

        A.      Lindell Fails to Establish a Basis for Permissive Intervention. ............... 7

        B.      Lindell Cannot Intervene of Right. ......................................................... 9

III.    IF THE COURT PERMITS INTERVENTION, IT SHOULD DENY LINDELL'S
        MOTION TO LIFT THE PROTECTIVE ORDER. ......................................... 10

        A.      Lindell Has Not Established The Relevance of Information Subject to the
                Protective Order. .................................................................................. 10

        B.      No Good Cause Exists to Lift or Modify the Protective Order. ........... 12

CONCLUSION......................................................................................................... 13

## <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Aptheker v. Sec'y of State,*
   378 U.S. 500 (1964) ................................................................................ 12

*Beckman Indus. Inc., v. Int'l. Ins. Co.,*
   966 F.2d 470 (9th Cir. 1992) ................................................................ 8, 10

*Blum v. Merrill Lynch Pierce Fenner & Smith Inc.,*
   712 F.3d 1349 (9th Cir. 2013) ......................................................... 7, 8, 10

*Bond v. Utreras,*
   585 F.3d 1061 (7th Cir. 2009) .................................................................. 6

*Diamond v. Charles,*
   476 U.S. 54 (1986) .................................................................................... 5

*Foltz v. State Farm Mutual Auto. Ins. Co.,*
   331 F.3d 1122 (9th Cir. 2003) ...................................................... 11, 12, 13

*Haig v. Agee,*
   453 U.S. 280 (1981) ................................................................................ 12

*In re Alexander Grant & Co. Litig.,*
   820 F.2d 352 (11th Cir. 1987) ................................................................ 10

*In re Midland Nat. Life Ins. Co. Annuity Sales Pracs. Litig.,*
   686 F.3d 1115 (9th Cir. 2012) ................................................................ 10

*Kalbers v. U.S. Dep't of Justice,*
   22 F.4th 816 (9th Cir. 2021) ............................................................... 9, 10

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) .................................................................................. 5

*Mohamed v. Jeppesen Dataplan, Inc.,*
   614 F.3d 1070 (9th Cir. 2010) ................................................................ 13

*Perry v. Schwarzenegger,*
   630 F.3d 898 (9th Cir. 2011) .................................................................... 5

*Roman v. Mayorkas,*
   No. EDCV2000768TJHPVC, 2021 WL 6103180 (C.D. Cal. Oct. 15, 2021) ............................ 8

*San Jose Mercury News, Inc. v. U.S. Dist. Ct.-N. Dist. (San Jose),*
   187 F.3d 1096 (9th Cir. 1999) ................................................................ 10

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)................................................................ 5

*Steel Co., v. Citizens for a Better Env't.*,
  523 U.S. 83 (1998).................................................................. 5

*Town of Chester, N.Y. v. Laroe Estates, Inc.*,
  137 S. Ct. 1645 (2017)........................................................... 5

*United States v. Reynolds*,
  345 U.S. 1 (1953)........................................................... 12, 13

*United States v. Zubaydah*,
  142 S. Ct. 959 (2022)............................................................ 13

**INTRODUCTION**

Proposed-intervenor Michael Lindell has been sued in the District of Columbia for alleged defamation based on statements he made about the administration of the 2020 presidential election and his contentions that various forms of fraud and other malfeasance were perpetrated using the voting machines of a company called Dominion.  Lindell has determined that it is necessary to intervene in this long-dismissed litigation in Nevada as part of his defense against the defamation claims he faces in D.C. in order to obtain relief from a protective order entered in this case pursuant to the state secrets privilege.  *See* Mot. to Intervene and to Lift Protective Order, ECF No. 1216.

 Lindell seeks this relief despite the fact that: he is not subject to the protective order entered in this case and that protective order does not apply to any litigation but the above-captioned cases in which it was entered; he has not alleged that the protective order has actually prevented him from obtaining any information he needs; no party or prior party to this litigation is a party to the defamation lawsuit; and neither this litigation nor the United States' motion for protective order have anything at all to do with voting, elections administration, or Dominion.  On this last point, a simple look at the calendar shows that Lindell's motion is meritless: the United States sought the challenged protective order over 16 years ago and this lawsuit has been dismissed for over a decade, long predating the events in 2020 giving rise to the defamation litigation that ostensibly provides a basis for Lindell's intervention.  For numerous reasons—jurisdictional, procedural, and substantive—the Court should deny Lindell's motion, as he has failed to establish any right to intervene or to obtain relief lifting the protective order entered at ECF No. 253.

**BACKGROUND**

**I.     This Litigation and the State Secrets Protective Order**

This litigation is comprised of two related actions, Civil Action No. 06-00056 (hereinafter referred to as the "Federal Case") and Civil Action No. 06-00145 (hereinafter referred to as the "Removed Case"), both filed in 2006.[1]  In a complaint originally filed in state court, eTreppid

---

[1] Each citation to the "Federal Case" or "Removed Case" are to the docket of Civil Action No. 06-00056 or No. 06-00145 respectively.  Citations to the docket that do not specifically reference one of these two identifiers are to the docket of the Federal Case.

Technologies, Inc., asserted claims to protect and recover trade secrets from Dennis Montgomery. Removed Case 3d Am. Complaint ¶ 63 *et seq.*, ECF No. 93.  Montgomery, a former employee, officer, and director of eTreppid, filed a counter-complaint as well as a federal court action, alleging that eTreppid had infringed his copyright interests.  Montgomery claimed that he is an inventor and software developer who developed certain software for which he was granted copyrights that he contributed in establishing eTreppid.  Removed Case Counter-complaint ¶¶ 8–10, ECF No. 1-2; Federal Case 1st Am. Complaint ¶¶ 8–10, ECF No. 7.  The dispute between Montgomery and eTreppid largely stemmed from the issue of the extent to which Montgomery retained the sole interest in derivative works based on the copyrighted technology.  *See generally* Removed Case Counter-complaint ¶¶ 11–14; Federal Case 1st Am. Compl. ¶¶ 8–20.

Montgomery also asserted a claim in these lawsuits against the U.S. Department of Defense ("DoD").  *See* Removed Case Counter-complaint ¶¶ 22–27; Federal Case 1st Am. Compl. ¶¶ 68–74.  This claim arose from a Classified Information Nondisclosure Agreement that Montgomery executed with the Defense Security Service, an agency within DoD, on September 16, 2003.  *See* Montgomery Nondisclosure Agreement, Ex. 2, United States' Mot. for Protective Order, ECF No. 83-3.  Specifically, Montgomery alleged that he was prevented from disclosing information necessary to his claims and defenses as to eTreppid because of the Nondisclosure Agreement. Removed Case Counter-complaint ¶¶ 22–27; Federal Case 1st Am. Compl. ¶¶ 68–74. Montgomery therefore sought a declaration from the Court that disclosure of information he wished to use in the litigation would not violate his Nondisclosure Agreement with the United States.  *Id.*

DoD filed motions to dismiss as to Montgomery's claims against the agency for lack of subject matter jurisdiction.[2]  While those motions were pending, on September 25, 2006, the United States moved for the entry of a protective order based on an assertion of the state secrets privilege by Director of National Intelligence John Negroponte.  ECF No. 83-1, 83-2.  The DNI's declaration established that disclosure of certain information at issue in the litigation reasonably

---

[2] DoD's motions to dismiss were later granted.  ECF No. 177.

could be expected to cause serious, and in some cases exceptionally grave, damage to national security.  Negroponte Decl. ¶ 12.  The United States' motion was also supported by a classified declaration submitted for the Court's *ex parte*, *in camera* review.  *Id.* ¶ 2.

The Court entered the requested protective order on August 29, 2007, excluding from "discovery or disclosure" information relating to two categories of information: (1) "the existence or non-existence of any actual or proposed relationship" between the parties and any U.S. intelligence agency and (2) any "actual or proposed intelligence agency interest in, application of or use of any technology, software or source code owned or claimed by the Parties."  Protective Order ¶¶ 2, 3, ECF No. 253.  The Protective Order, however, exempted from its coverage discovery regarding "[t]he computer source code, software, programs, or technical specifications relating to any technology owned or claimed by any of the Parties," as well as any "actual or potential commercial or government applications of" this technology, so long as it did not relate to the aforementioned categories concerning U.S. intelligence agencies.  *Id.* ¶ 4(c), (e).  The Protective Order's prohibitions applied only to "discovery or disclosure . . . during all proceedings in these actions," *i.e.* the above-captioned consolidated cases.  *Id.* ¶ 1.  Thus, by its terms, the Protective Order applied only to the parties to this litigation, only to discovery or disclosure within this litigation, and only to certain information regarding alleged activities or interests of the United States Government.

The litigation has since been resolved in full.  The claims of Montgomery, eTreppid, and related parties were resolved by settlement and dismissed with prejudice on February 19, 2009.  *See* Order ¶¶ 1, 2, ECF No. 962.  The Court retained jurisdiction to resolve motions related to sanctions by Montgomery's former counsel, to enforce the United States' Protective Order, and to enforce the Parties' settlement agreement.  *See id.* ¶ 3.  The motions for sanctions were later resolved and judgment entered as to them on July 8, 2010.  ECF No. 1171.

## II.   Lindell's Intervention and D.C. Defamation Litigation

Michael Lindell, an entrepreneur and salesman of pillows, has now moved to intervene in this litigation for the purpose of lifting the United States' Protective Order.  Lindell's intervention

is based on a defamation lawsuit filed against him in the District of Columbia by Dominion, a company that "provides local election officials with tools they can use to run elections." Lindell Decl. Ex. A ¶ 157, ECF No. 1216-1 (Compl., *US Dominion, Inc. v. My Pillow, Inc.*, No. 1:21-cv-00445 (D.D.C.) (hereinafter "Defamation Compl." or "defamation litigation"). Dominion's claims are rooted in numerous statements by Lindell in the wake of the 2020 presidential election, in which Lindell claimed that Dominion voting technology was exploited in various ways to alter votes and election results to the detriment of former-President Trump. *Id.* ¶¶ 164, 165. According to Dominion, Lindell's assertions generally centered on the alleged failure and/or exploitation of certain "algorithms" in Dominion voting machines. *See id.*

Lindell claims that he possesses certain "Data" obtained from Montgomery, which he seeks to use in defending himself in the defamation litigation. Lindell Decl. ¶ 6. Specifically, Lindell contends that this "Data compris[es] internet transmissions sent during the 2020 election that were collected by technology developed and previously licensed by Dennis Montgomery." *Id.* ¶ 7. But Lindell asserts that this data may be covered by the Protective Order and, therefore, relief in this Court is necessary. *Id.* ¶ 9. In order to obtain relief lifting the Protective Order, Lindell seeks to intervene in this litigation on one of two bases—permissive intervention pursuant to Rule 24(b)(1)(B) and intervention of right pursuant to Rule 24(a)(2). Mot. at 3–8.

**ARGUMENT**

Lindell's motion should be denied for at least three reasons. First, the Court lacks jurisdiction to provide any of the relief Lindell seeks because he lacks standing to pursue it. Second, Lindell has failed to meet the requirements to intervene on either a permissive basis, pursuant to Rule 24(b)(1)(B), or of right, pursuant to Rule 24(a)(2). And third, even if there were jurisdiction and even if intervention were appropriate, Lindell has failed to establish a right to lifting the protective order entered in this litigation; the information subject to the order is utterly irrelevant to the defamation litigation and the United States has significant reliance interests in the order, which was issued on the basis of the state secrets privilege.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**I.   THE COURT SHOULD DENY THE MOTION BECAUSE LINDELL LACKS STANDING TO INTERVENE.**

Lindell's motion should be denied first and foremost because he lacks standing to pursue it.  Parties invoking federal jurisdiction bear the burden of establishing the three elements that constitute the "irreducible constitutional minimum of standing," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)—namely, that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted). Standing is necessary for parties to establish the existence of an Article III case or controversy and, thus, to invoke the jurisdiction of the federal courts.  *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103–04 (1998).

The standing requirement separately applies to intervenors in at least two circumstances. First, during pending litigation, an intervenor that "seeks additional relief beyond that which the plaintiff requests" must demonstrate standing.  *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017) ("For all relief sought, there must be a litigant with standing, whether that litigant joins the lawsuit as a plaintiff, a coplaintiff, or an intervenor of right.").  And second, an intervenor must also demonstrate standing where it seeks to continue litigation to which no party has any pending claim.  *See Diamond v. Charles*, 476 U.S. 54, 68 (1986) ("[A]n intervenor's right to continue a suit in the absence of the party on whose side intervention was permitted is contingent upon a showing by the intervenor that he fulfills the requirements of Art. III."); *see also Perry v. Schwarzenegger*, 630 F.3d 898, 906 (9th Cir. 2011) (explaining that although "[i]n general, an applicant for intervention need not establish Article III standing to intervene," standing is required where the intervenor seeks to appeal a judgment entered against a party in that party's absence).

Consistent with these principles, numerous courts of appeals have held that "an intervenor must establish standing to challenge a protective order after the case has been dismissed." *Bond v. Utreras*, 585 F.3d 1061, 1071–72 (7th Cir. 2009) (citing cases from the First, Third, and Fifth Circuits).  That is the scenario presented by this case.  The claims of all Plaintiffs and Defendants

5

were resolved by settlement and dismissed with prejudice on February 19, 2009.  *See* Order ¶¶ 1, 2, ECF No. 962.  Lindell must accordingly demonstrate standing to pursue this otherwise dormant litigation.

But here, Lindell cannot establish any of the elements of Article III standing.  To begin, Lindell has not articulated any cognizable injury.  Lindell claims that his injury arises from his understanding that the information he obtained from Montgomery "may be covered by the Protective Order."  Mot. at 2.  But the Protective Order does not bind Lindell in any way as he is not a party to this litigation.  Nor does the Protective Order apply to any litigation but the above-captioned cases.  Protective Order ¶ 1 (Order's prohibitions applied only to "discovery or disclosure . . . during all proceedings in these actions," *i.e.* the above-captioned consolidated cases).  The Protective Order is thus doubly irrelevant to any actions Lindell might take in the defamation litigation.  Moreover, it does not appear that Lindell has actually been prevented from obtaining any information he requires by virtue of the protective order.  Instead, Lindell simply says that he is unable to *use* the information he has already obtained.  Lindell Decl. ¶¶ 6, 9, 10 (stating that Lindell has "agreed to acquire ownership from Montgomery" of "Data" for use in his defense but that he is "concerned that the Protective Order . . . prohibits the use or disclosure of the Data").  That is wrong; the Protective Order does not bind Lindell.

Nor has Lindell shown that the Protective Order governs the kind of information that Lindell says he needs for his defense in the defamation litigation such that any injury would be traceable to the Order.  The Protective Order specifically exempts from its coverage information regarding "[t]he computer source code, software, programs, or technical specifications relating to any technology owned or claimed by any of the Parties," as well as any "actual or potential commercial or government applications of" this technology.  Protective Order ¶ 4(c), (e).  But that is the only kind of information that Lindell has specifically indicated he needs.  Lindell contends that he wishes to rely on "internet transmissions sent during the 2020 election that were collected by technology developed . . . by Dennis Montgomery."  Lindell Decl. ¶ 7.  The express terms of the Protective Order present no barrier to the use of such information.

1    The Protective Order also does not injure Lindell on the basis of its effect on Montgomery.

2    Although Montgomery is subject to the Protective Order as a prior party to this litigation, that

3    makes no difference here because, again, the Order only governs the conduct of the above-

4    captioned proceedings, not unrelated litigation involving none of the same parties.  To be clear,

5    the Government does not mean to disclaim that Montgomery could be under some other

6    nondisclosure obligation, such as a nondisclosure agreement with the United States.  *See, e.g.*,

7    Montgomery Nondisclosure Agreement, ECF No. 83-3.  Nor does the Government concede that

8    discovery directed to the United States in relation to the defamation litigation would be appropriate

9    or that the United States would not be entitled to seek protection against discovery or disclosure

10   in that litigation.  The point is simply that the Protective Order entered in *this* case from which

11   Lindell seeks relief has no relevant effect on the defamation litigation or his ability to obtain or

12   use any information he needs therein.  The motion should therefore be denied for lack of standing.

13   **II.    THE COURT SHOULD DENY THE MOTION TO INTERVENE FOR FAILURE
        TO MEET THE REQUIREMENTS FOR PERMISSIVE INTERVENTION OR
14      INTERVENTION OF RIGHT.**

15       **A.    Lindell Fails to Establish a Basis for Permissive Intervention.**

16       Permissive intervention under rule 24(b) generally requires "(1) an independent ground for

17   jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's

18   claim or defense and the main action."  *Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*, 712

19   F.3d 1349, 1353 (9th Cir. 2013).  At minimum, Lindell has failed to satisfy the third prong of this

20   test, a common question of law and fact.

21       To be sure, a permissive intervenor seeking to lift or modify a protective order based on

22   collateral litigation does not face a high burden in establishing a "common question of law and

23   fact between the movant's claim or defense and the main action."  *See Beckman Indus., Inc. v. Int'l

24   Ins. Co.*, 966 F.2d 470, 473–74 (9th Cir. 1992).  This is because they are not attempting to litigate

25   any claim on the merits in the proceeding to which they intervene.  *See id.*  Nonetheless, the

26   absence of a high burden is not the absence of any burden at all.  For example, in *Beckman*, the

     Ninth Circuit affirmed the granting of permissive intervention in a case seeking modification of a

protective order on the basis of collateral litigation.  *Id.* at 471–72.  The collateral litigation involved the same defendant insurance company as the dormant case in which intervention was sought and it concerned interpretation of an insurance policy issued by that defendant.  *Id.*  The Ninth Circuit affirmed the district court's conclusion that the "importance of access to documents prepared for similar litigation involving the same parties satisfied the commonality requirement." *Id.* at 474 (emphasis added) (further explaining that the "issue of interpretation of the policy supplies a sufficiently strong nexus between the district court action and the state actions").  Thus, the lesson of the Ninth Circuit's *Beckman* decision is that a court evaluating a motion for limited intervention to modify a protective order based on collateral litigation should evaluate the relationship between the two litigations in assessing the "common question of law and fact."  *See also Roman v. Mayorkas*, No. EDCV2000768TJHPVC, 2021 WL 6103180, at *2 (C.D. Cal. Oct. 15, 2021) ("The common question of law and fact requirement is satisfied where the proposed intervenor is engaged in similar litigation involving the same parties, and, there is 'a sufficiently strong nexus between the action in which the prospective intervenor seeks to intervene and the parallel action.'" (quoting *Beckman*, 966 F.2d at 474)).

Here, Lindell has failed to show *any* relationship between the defamation litigation and this case.  None of the current or former parties to this litigation are party to the defamation litigation. The claims concern various statements about election administration made in and around the year 2020, not anything to do with legal rights or responsibilities of Montgomery or his former business partner during the mid-2000s.  *See generally* Defamation Compl.  There is simply nothing in the motion to intervene that would show any relationship at all between this litigation and the defamation litigation adequate to show the existence of a "common question of law and fact."

Lindell hardly argues otherwise.  His sole support for the existence of this element is that "there is a common question of law and fact between the grounds that considerations that justified the entry of the Protective Order originally, and whether those grounds still justify any restrictions of the Protective Order upon the Data."  Mot. at 5.  It appears that Lindell is arguing that there is a common question of law and fact between the Government's original motion for a protective

order and his current motion to lift that protective order.  That is beside the point.  Under *Beckman*, Lindell must show some kind of relationship between the defamation litigation and this litigation to be permitted to intervene.  He has not done so.

**B.    Lindell Cannot Intervene of Right.**

The Court should also deny Lindell's request for intervention of right.  The Ninth Circuit's test for intervention of right

> requires a prospective intervenor to show that: (1) its motion is timely; (2) it has a significantly protectable interest relating to . . . the subject of the action; (3) it is so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) its interest is inadequately represented by the parties to the action.

*Kalbers v. U.S. Dep't of Justice*, 22 F.4th 816, 822 (9th Cir. 2021).

Lindell fails to meet, at minimum, the second and third elements of this test.  Lindell has not shown *any* interest at all in the subject of this litigation, let alone a "significantly protectable interest."  Put simply, Lindell has nothing to do with the business and copyright dispute among these parties that arose and was resolved well over a decade ago.

Lindell contends that his interest in litigating the protective order entered in this case allows him to largely sidestep the requirement to show a significantly protectable interest, asserting that this is met where a non-party "intervene[s] in an action for the purpose of litigating the substance of a protective order."  Mot. at 7.  This is an erroneously expansive articulation of even the permissive intervention standard as discussed above.  And in any event, it has nothing to do with the standard for intervention of right, which requires a relationship between the movant's interests and the claims in the lawsuit to which intervention is sought.  *See Kalbers*, 22 F.4th at 827 (explaining that "a proposed intervenor has a significant protectable interest in an action if (1) it asserts an interest that is protected under some law, and (2) there is a relationship between its legally protected interest and the plaintiff's claims" (citation omitted)).  Indeed, the cases Lindell cites for his erroneously expansive standard either involved permissive intervention, *see In re Alexander Grant & Co. Litig.*, 820 F.2d 352 (11th Cir. 1987), or did not involve any appeal of a motion to intervene at all, *In re Midland Nat. Life Ins. Co. Annuity Sales Pracs. Litig.*, 686 F.3d

1115 (9th Cir. 2012) (noting motion to intervene was granted but not that any party appealed that decision).  Lindell must show a significantly protectable interest in *this* litigation and he has failed to do so.

Nor would disposition of this action "impair or impede" Lindell's ability to protect his interests.  To begin, this lawsuit has long since been resolved on the merits.  And even if Lindell could show that the protective order provides a hook appropriate to this prong of the intervention inquiry, Lindell is not bound by the protective order for multiple reasons.  *See supra* Argument Part I.

Ultimately, Lindell's attempt to invoke intervention of right is an ill fit for a party seeking a limited purpose intervention to litigate the scope of a protective order.  The Ninth Circuit accordingly holds that *permissive* intervention is the appropriate vehicle for "[n]onparties seeking access to a judicial record in a civil case."  *San Jose Mercury News, Inc. v. U.S. Dist. Ct.--N. Dist. (San Jose)*, 187 F.3d 1096, 1100 (9th Cir. 1999).  Indeed, the leading Ninth Circuit cases on limited purpose intervention to litigate a protective order involved permissive intervention, not intervention of right.  *Beckman*, 966 F.2d at 471; *Blum*, 712 F.3d at 1353.  The motion to intervene of right should be denied.

## III.    IF THE COURT PERMITS INTERVENTION, IT SHOULD DENY LINDELL'S MOTION TO LIFT THE PROTECTIVE ORDER.

### A.    Lindell Has Not Established The Relevance of Information Subject to the Protective Order.

A collateral litigant seeking to obtain information properly subject to a protective order "must demonstrate the relevance of the protected discovery to the collateral proceedings and its general discoverability therein."  *Foltz v. State Farm Mutual Auto. Ins. Co.*, 331 F.3d 1122, 1132 (9th Cir. 2003).  A court asked to modify a protective order "should satisfy itself that the protected discovery is sufficiently relevant to the collateral litigation that a substantial amount of duplicative discovery will be avoided by modifying the protective order."  *Id.*  This relevance determination "hinges on the degree of overlap in facts, parties, and issues between the suit covered by the protective order and the collateral proceedings."  *Id.* (citation omitted).

10

Lindell contends that he must use information subject to the Protective Order to "defend the reasonability and veracity of his statements regarding the 2020 election at issue in the D.C. Litigation." Mot. at 9. Lindell appears to be referencing the Complaint's allegations of defamation with respect to numerous statements by Lindell, all of which allege election and/or voter fraud in the 2020 presidential election through Dominion's voting machines. *See* Defamation Compl. ¶ 165. Lindell asserts that these "statements were based on information received from Montgomery." Mot. at 9.

Lindell's assertions fail to meet the Ninth Circuit's test for relevance for at least three reasons. First, the Protective Order in this litigation was entered over 15 years ago, pursuant to an assertion of the state secrets privilege over 16 years ago. Just simply looking at a calendar shows that the Order had nothing to do with the 2020 election or alleged fraud therein. Second, neither the Protective Order nor the supporting materials submitted by the United States in seeking it had anything to do with voting, elections administration, or voting machines, whether manufactured by Dominion or any other entity.[3] And third, Lindell has not explained what the two categories of information that *are* subject to the Protective Order have to do with the defamation litigation. The closest Lindell comes on this score are statements that Montgomery has information related to purported "illegal US government surveillance programs" using Montgomery's technology that involved the surveillance of, among many others, voting machines manufactured by Dominion. Mot. at 3; Montgomery Decl. ¶ 38, ECF No. 1216-2. But even on its own terms, this baseless claim provides no support to Lindell. That is because Lindell has not explained what these farfetched allegations of surveillance have to do with his contentions that votes in the 2020 election were manipulated by anyone, let alone the United States Government.

In any event, Lindell certainly has not explained how "a substantial amount of duplicative discovery" in the defamation litigation "will be avoided by modifying the protective order" in this case. *See Foltz*, 331 F.3d at 1132. To the contrary, Lindell asserts that he already has the

---

[3] The Government is willing to make the previously submitted Classified Declaration available for the Court's review *ex parte* and *in camera*, should the Court believe it necessary to review the declaration to conclude that the information here is irrelevant to the defamation litigation.

1   information he seeks.  *See* Lindell Decl. ¶¶ 6, 9, 10.  He only asks for relief from the Court because

2   of his erroneous understanding that the protective order binds his conduct in the defamation

3   litigation.

4        **B.      No Good Cause Exists to Lift or Modify the Protective Order.**

5        Even where relevance is established, the Court "must weigh the countervailing reliance

6   interest of the party opposing modification" of a protective order.  *Foltz*, 331 F.3d at 1133.  Those

7   reliance interests are at their zenith in the context of the state secrets privilege, which exists to

8   exclude from litigation information where "there is a reasonable danger that compulsion of the

9   evidence will expose . . . matters which, in the interest of national security, should not be divulged."

10  *United States v. Reynolds*, 345 U.S. 1, 6–7, 10 (1953) (describing this privilege as "well established

11  in the law of evidence").  "It is 'obvious and unarguable' that no governmental interest is more

12  compelling than the security of the Nation."  *Haig v. Agee*, 453 U.S. 280, 307–09 (1981) (quoting

13  *Aptheker v. Sec'y of State*, 378 U.S. 500, 509 (1964)).  And the state secrets privilege is absolute

14  in its effect, requiring exclusion of evidence against even the most compelling showing of need by

15  a litigant.  *United States v. Zubaydah*, 142 S. Ct. 959, 967 (2022) ("[I]n all events, 'even the most

16  compelling necessity cannot overcome the claim of privilege if the court is ultimately satisfied that

17  military secrets are at stake." (quoting *Reynolds*, 345 U.S. at 11)).

18      The reliance interests of the United States in the Protective Order foreclose Lindell's

19  request to lift the Order.  Indeed, this is demonstrated by the effect of the Court's decision to uphold

20  the state secrets privilege assertion here.  Unlike an ordinary protective order limiting the persons

21  to whom protected information may be disclosed, a protective order entered pursuant to the state

22  secrets privilege causes "the evidence [to be] completely removed from the case."  *Mohamed v.*

23  *Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1082 (9th Cir. 2010) (citation omitted); *see also id.* at

24  1079 ("A successful assertion of privilege under *Reynolds* will remove the privileged evidence

25  from the litigation.").  Thus, this is far from a case where the Court is only being asked to permit

26  an additional party to view and use evidence already available to the other parties to the case.

    *Compare Foltz*, 331 F.3d at 1133 (approvingly quoting statement that a "legitimate interest" in

1  "continued secrecy as against the public at large can be accommodated by placing the collateral

2  litigants under the same restrictions on use and disclosure contained in the original protective

3  order" (citation omitted)), *with Mohamed*, 614 F.3d at 1082 (successful invocation of state secrets

4  privilege "completely remove[s]" the information from the case).

5        Lindell contests the United States' reliance interests on two grounds: that the protective

6  order is "stale" and that it conceals constitutional violations.  Mot. at 9–10.  Neither assertion has

7  merit.  As to the age of the protective order, Lindell cites no authority for the proposition that a

8  state secrets protective order necessarily becomes obsolete with the passage of time.  At minimum,

9  the United States is entitled to the protection of its reliance interests in a state secrets protective

10  order against the claims of parties that have demonstrated no necessity in having them lifted and

11  no relationship to the litigation in which they were entered.  And Lindell's contention that the

12  Protective Order in this case was entered to conceal violations of constitutional rights is baseless.

13  The unrebutted evidence before the Court is that the Protective Order was sought (and granted) to

14  protect "intelligence sources and methods," the disclosure of which could cause harm to national

15  security.  Negroponte Decl. ¶ 12.  Lindell's speculations to the contrary are inadequate to support

16  his claim for relief.[4]

17  <center>**CONCLUSION**</center>

18        For the foregoing reasons, the motion to intervene and to lift the protective order should be

19  denied.

20        Respectfully submitted this 6th day of October, 2022.

21
22                            BRIAN M. BOYNTON
                          Principal Deputy Assistant Attorney General

23                            ANTHONY J. COPPOLINO
                          Deputy Director

24                            */s/ James R. Powers*

25  ---

[4] The Court should reject Lindell's motion for the many reasons set forth above.  If the Court

26  nonetheless concludes that Lindell is entitled to some relief on the current record, the Court should permit the United States an additional 60 days in which to consider additional steps to protect its interests.

<center>13</center>

JAMES R. POWERS
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice

*Attorneys for the United States of America*

## CERTIFICATE OF SERVICE

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 1100 L Street, NW, Washington, DC 20005. I am not a party to the above-entitled action. On the date set forth below, I caused service of the foregoing document through the Court's electronic filing and notice system (CM/ECF), and by sending a copy of same via ECF notice upon:

| | |
|---|---|
| Edmond "Buddy" Miller, Esq. | Reid H. Weingarten, Esq. |
| Bar No. 3116 | Brian M. Heberlig, Esq. |
| STEPTOE & JOHNSON LLP | Robert A. Ayers, Esq. |
| 1610 Montclair Avenue, Suite C | STEPTOE & JOHNSON LLP |
| Reno, NV 89509 | 1330 Connecticut Avenue, N.W. Washington, |
| bmiller@buddyrnillerlaw.com | D.C. 20036-1795 rweingarten@steptoe.com |
| | bheberlig@steptoe.com rayers@steptoe.com |
| *Attorney for ETREPPID TECHNOLOGIES,* | |
| *L.L.C. and WARREN TREPP* | |

| | |
|---|---|
| Dennis L. Kennedy, Esq. | Carlotta P. Wells, Esq. Senior Trial |
| Bailey Kennedy | Counsel Federal Programs Branch Civil |
| 8984 Spanish Ridge Avenue Las Vegas, | Division – Room 7150 |
| Nevada 89148-1302 | U.S. Department of Justice 20 |
| dkennedv@baileykennedv.com | Massachusetts Ave., NW |
| | P.O. Box 883 |
| | Washington, DC 20044 |
| | Carlotta.Wells@usdoj.gov |

J. Stephen Peek, Esq.
HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, NV 89511
speek@hollandhart.com

| | |
|---|---|
| Raphael O. Gomez, Esq. Senior | Roland Tellis, Esq. Marshall B. |
| Trial Counsel Federal Programs | Grossman, Esq. Bingham McCutchen |
| Branch Civil Division – Room | LLP The Water Garden |
| 6144 | 1620 26th Street, 4th Floor, North Tower |
| U.S. Department of Justice 20 | Santa Monica, CA 90404 |
| Massachusetts Ave., N.W. | rolland.tellis@bingham.com |
| P.O. Box 883 | marshall.grossman@bingham.com |
| Washington, DC 20044 | |
| Raphael.Gomez@usdoj.gov | |

15

Robert E. Rohde, Esq. Gregory
G. Schwartz, Esq. Rohde & Van
Kampen
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154
brohde@rohdelaw.com
gschwartz@rohdelaw.com

Ronald J. Logar, Esq.
Law Office of Logar & Pulver, PC
225 S. Arlington Avenue, Suite A
Reno, Nevada 89501
Zachary@logarpulver.com

Amanda J. Cowley, Esq. Bradley
Scott Schrager, Esq. Gary R.
Goodheart, Esq.
Jones Vargas
3773 Howard Hughes Parkway
Third Floor South
Las Vegas, Nevada 89169
acowley@jonesvargas.com
bschrager@jonesvargas.com
grg@jonesvargas.com

Bridget Robb Peck, Esq.
Lewis and Roca, LLP
50 W. Liberty Street, Suite 410
Reno, Nevada 89501
bpeck@lrlaw.com

Michael James Flynn, Esq.
Flynn & Stillman
P.O. Box 690
Rancho Santa Fe, CA
mjfbb@msn.com

Debbie Leonard, Esq.
Leigh T. Goddard, Esq.
John J. Frankovich, Esq.
McDonald Carano Wilson LLP
P.O. Box 2670
Reno, Nevada 89505-2670
dleonard@mcdonaldcarano.com
lgoddard@mcdonaldcarano.com
jfrankovich@mcdonaldcarano.com

Ellyn S. Garofalo, Esq.
Liner Yankelevitz Sunshine &
Regenstreif LLP
1100 Glendon Avenue
Los Angeles, California 90024-3503
egarofalo@linerlaw.com

Thomas H. Casey, Esq.
The Law Office of Thomas H. Casey, Inc.
22342 Avenida Empresa, Suite 260
Rancho Santa Margarita, California 92688
msilva@tomcaseylaw.com

Timothy Ryan O'Reilly, Esq.
O'Reilly Law Group
325 S. Maryland Parkway Las
Vegas, Nevada 89101
tor@oreillylawgroup.com

16

and by US Mail on:

The Montgomery Family Trust 6          Blxware LLC
Toscana Way W.                         600 106th Avenue NE, Suite 210
Rancho Mirage, CA 92770                Bellevue, WA 98004-5045


Offspring LLC                          Dennis Montgomery
600 106th Avenue NE, Suite 210         6 Toscana Way W.
Bellevue, WA 98004-5045                Rancho Mirage, CA 92770




    I declare under penalty of perjury that the foregoing is true and correct.

    Dated this 6th day of October, 2022.


                        */s/James Powers*
                        James R. Powers

17