1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**MOT**
SIGAL CHATTAH, ESQ.
Nevada State Bar No.: 8264
CHATTAH LAW GROUP
5875 S. Rainbow Blvd. #204
Las Vegas, Nevada 89118
Tel: (702) 360-6200
Fax:(702) 643-6292
Chattahlaw@gmail.com
Attorneys for Defendants

PATRICK M. MCSWEENEY, ESQ
*Pro hac vice application pending*
McSWEENEY, CYNKAR & KACHOUROFF, PLLC
3358 John Tree Hill Road
Powhatan, Virginia 23139
Tel. (804) 937-0895
Fax (703) 365-9593
patrick@mck-lawyers.com

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | | |
|---|---|---|
| DENNIS MONTGOMERY *et al.,* | ) | Case No. 3:06-cv-00056-MMD-CSD |
| | ) | and |
| Plaintiffs, | ) | Case No. 3:06-cv-145-MMD-VPC |
| | ) | |
| v. | ) | **DENNIS MONTOGOMERY'S MOTION** |
| | ) | **TO RESTRICT APPLICATION OF** |
| ETREPPID TECHNOLOGIES, LLC, *et al.,* | ) | **THE STATE SECRETS PRIVILEGE** |
| | ) | **THE PROTECTIVE ORDER, AND THE** |
| Defendants. | ) | **CLASSIFIED INFORMATION** |
| | ) | **NONDISCLOSURE AGREEMENT** |

Plaintiff Dennis Montgomery ("Montgomery") moves the Court for an Order restricting

and prohibiting the application of the state secrets privilege, the privilege established by 50

U.S.C. § 403-1(i)(1), the protective order entered on August 29, 2007, and the Classified

Information Nondisclosure Agreement between Montgomery and the Defense Security Service

to prevent the production by Montgomery of information requested by a subpoena issued by Proposed Intervenor Michael J. Lindell and the disclosure of information concerning the surveillance by the United States Government of its citizens, private businesses, and non-profit entities. The grounds for this Motion are set forth in the accompanying Memorandum of Points and Authorities and any oral argument this Court may entertain at the time of hearing.

Respectfully submitted this 14th November, 2022.

**CHATTAH LAW GROUP**

_/s/ Sigal Chattah_
SIGAL CHATTAH, ESQ.
Nevada Bar No.:8264
CHATTAH LAW GROUP
5875 S. Rainbow Blvd., Suite 204
Las Vegas, Nevada 89118
Tel: (702) 360-6200
Fax:(702) 643-6292
Attorney for Plaintiff

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Plaintiff Dennis Montgomery ("Montgomery") submits this Memorandum in support of his Motion to Restrict Application of the State Secrets Privilege Pursuant to 50 U.S.C. § 403-1(i)(1),[1] the Protective Order Entered on August 29, 2007, and the Classified Information Nondisclosure Agreement Executed by Montgomery.

On August 20, 2022, Michael J. Lindell ("Lindell") moved to intervene in this proceeding, which was terminated by the February 19, 2009, Order that retained the Court's jurisdiction to enforce the protective order entered on the motion of the United States. Doc. 962. Montgomery has moved for an order restricting the Government's ability to invoke the various means he has asserted in the past to block his disclosure of information that would embarrass or incriminate the Government officials or agents, allow him to defend against claims asserted by the Internal Revenue Service, and permit him to use his intellectual property. The stated purpose of Lindell's motion is to lift the protective order so that he may use information collected by Montgomery about which the Department of Justice ("the Department") has asserted cannot be disclosed because of the protective order. The Government has previously acknowledged in this case—and the Court has found—that Montgomery did not possess classified information. Doc. 1216-2, Ex. 06.

Montgomery has received a subpoena ("Subpoena") from Lindell, arising out of a defamation action styled *US Dominion, Inc. v. My Pillow, Inc.*, No. 1:21-cv-00445 (D.D.C.). A

---

[1] The privilege established by 50 U.S.C. § 403-1(i)(1) will be referred to herein jointly with the common law state secrets privilege as "the state secrets privilege."

copy of the Subpoena is attached as Ex. A. Montgomery must choose between complying with the Subpoena, which would, in the view of the Department, constitute a violation of the state secrets privilege, the protective order, and the classified information nondisclosure agreement or defy the Subpoena and suffer the consequences of doing so. Ex. B attached ¶ 18. He contends that, in the circumstances of this case, the Government should be prohibited from invoking the state secrets privilege, the protective order, or his classified information nondisclosure agreement under the equitable doctrine of outrageous government conduct. *See United States v. Russell,* 411 U.S.423, 431-32 (1973); *Greene v. United States*, 454 F.2d 783, 786-87 (9th Cir. 1971). Under that doctrine, the Government may not block Montgomery from disclosing information that may embarrass or incriminate governmental officials or otherwise prevent disclosures of governmental misconduct. The circumstances of this case establish an extreme example of governmental abuse of power. The declaration of Dennis L. Montgomery attached to this memorandum as Exhibit B, which supplements his previously filed declaration (Doc. 1216-2), sets forth the factual bases for Montgomery's request for relief.

The memorandum filed by the United States in opposition to Lindell's motion (Doc. 1232) argues that Lindell has no standing to seek the relief he requests, that Lindell fails to satisfy the requirements of F.R.Civ.P. 24 in order to justify his intervention either on a permissive or of-right basis, and that Lindell has not established a basis for lifting the protective order because the information subject to the protective is irrelevant to the defamation litigation in which Lindell would introduce the information covered by the protective order. The Government's first two objections to Lindell's motion, which are based on the requirements of standing and Rule 24, do not apply to Montgomery. Regarding the third objection, Montgomery demonstrates in his declaration (Exhibit A) that the information that Lindell seeks to introduce in

his defense against the defamation claim in *US Dominion, Inc. v. My Pillow, Inc.*, No. 1:21-cv-00445 (D.D.C.) is material to the issues in that litigation.

## LEGAL ARGUMENT

## A.    MONTGOMERY'S STANDING CANNOT BE DISPUTED

As an original plaintiff in this proceeding, as the individual expressly bound by the protective order and the NDA, and as a member of Blxware, LLC, a Delaware limited liability company, which is the current owner of the technology in question, Montgomery has standing to seek the relief he requests. Unless the Court grants Montgomery the relief that he requests in his Motion, he will spend substantial time, resources, focus and energy to resolve the conflict between the requirements of the Subpoena and the insistence of the Department that he is bound not to disclose the information compelled by the Subpoena in its view of the state secrets privilege and the requirements of the protective order and his classified information nondisclosure agreement. Because he perceives no alternative other than to seek relief from this Court to restrict the invocation of those requirements, he is also asking in his Motion that the Government be restricted from invoking those requirements as it has done for almost 16 years to justify its refusal to return the property owned by Montgomery that the Government has taken possession of and refuses to return the property. The Government had threatened to arrest Montgomery if he disclosed information about its improper seizures and refusals to return his property or filed an action to recover his property. Ex, B attached ¶¶ 4, 5, 7, 8. For almost 15 years until it relented in 2021, the Government had also claimed that the protective order and the state secrets privilege prevented Montgomery from filing an action to recover damages for the violation of his constitutional rights by the raids of his residence and storage units in 2006.  Doc. 1216-2 Ex. 11 attached thereto

B.  **THE COURT HAS JURISDICTION OVER MATTERS RELATED TO THE STATE SECRETS PRIVILEGE AND ENFORCEMENT OF THE PROTECTIVE ORDER**

Jurisdiction has been retained by this Court over "the terms of the United States Protective Order compliance with the United States Protective Orders (Doc. # 252, # 253)." Doc. 962. *See* Stipulation, Doc. 866. The Court may grant the relief requested by Montgomery in the accompanying Motion pursuant to that retained jurisdiction.

C.  **THE RELIEF REQUESTED SHOULD BE GRANTED UNDER THE DOCTRINE OF OUTRAGEOUS GOVERNMENT CONDUCT**

The information that the Government has prevented Montgomery from disclosing includes information that is the subject of the Subpoena served on Montgomery. Ex. B attached ¶ 17. Allowing the Government to continue invoking the state secrets privilege, the protective order, and the classified information nondisclosure agreement would violate the doctrine of outrageous government conduct. *See Russell*, 411 U.S. at 431-32.

**1. The information that Montgomery has been compelled to produce pursuant to the Subpoena is covered by the protective order and the state secrets privilege according to the Government**

Montgomery's declaration (Exhibit B) states that the information he has been compelled to produce pursuant to the Subpoena served on him bi proposed Intervenor Lindell includes information concerning the technology that he provided the United States under contract as described in Doc. 1216-2 ¶¶ 9-12. It is that same technology that enabled him to collect the data that is sought by the Subpoena. Ex. B attached ¶ 18. The Government has taken the position that the sources and methods that produced the technology are covered by the state secrets privilege and the protective order. *Id.* Unless the relief sought by Montgomery or Lindell is granted, the data that Lindell maintains is essential to his defense in the defamation action in the District of Columbia cannot be accessed and introduced in the defamation action because the technology

necessary to provide the data may be blocked by the state secrets privilege, the protective order, and, potentially, the nondisclosure agreement.

### 2. The Government's widespread and longstanding electronic surveillance of United States citizens and its treatment of Montgomery have been outrageous

The sharply divided Court in *United States v. Zubaydah,* 142 S. Ct. 959 (2022) revisited the test established in *Reynolds*, 411 U.S. at 431-32, to determine whether a claim of the state secrets privilege is appropriate in the circumstances of a particular case. Writing for the Court, Justice Breyer, joined by Chief Justice Roberts, concluded that a court must first determine whether the circumstances are appropriate for the invocation of the privilege. 142 S. Ct. at 967. In concurring, Justices Kavanaugh and Barrett argued that a court must accept the Government's assertion of the privilege based on the Government's representation that there is "a reasonable possibility" that state secrets are involved. *Id.* at 982. Justice Thomas filed a concurring opinion, joined by Justice Alito, concluding that *Reynolds* established a two-step framework for deciding how far the court should probe in satisfying itself that the privilege claim is appropriate in the circumstances and that Justice Breyer's opinion had adopted an erroneous "reason-first" test that requires a court to determine as a first step whether the Government has a valid reason for asserting the privilege. *Id.* at 976-77.

Under the Thomas-Alito approach, a court does not undertake a probe of the evidentiary basis for the privilege assertion as a first step, but only in the second step if the person seeking disclosure presents a need for the information. *Id.* at 976-78. Justice Kagan filed an opinion concurring in part and dissenting in part. *Id.* at 983-85. She argued that the case should be remanded to allow Zubaydah to pursue his claim that he was tortured but did not address the issues raised about the proper framework for determining whether the privilege claim is appropriate. *Id.* at 984. Justice Gorsuch dissented, joined by Justice Sotomayor, arguing that

Zubaydah's interrogation occurred "two decades ago" and that no state secret was involved any longer. *Id.* at 985. He noted that the district court and the court of appeals agreed. *Id.* He also noted that the privilege had been misused by the Government, even in the seminal *Reynolds* case, to hide official misconduct. *Id.* at 993. When a court harbors doubt about the validity of a privilege claim, Justice Gorsuch argued that it "must probe further and examine the bases for the government's assertions *in camera.*" *Id.* at 995.

In *Zubaydah,* six Justices appeared to endorse a framework for determining whether a state secrets privilege claim should be honored that requires, at a minimum, that a court examine the bases for the claim after the person seeking disclosure establishes a plausible need for the information. Justices Thomas and Alito are more deferential to the Government and would accept the assertion of the privilege on the basis of the supporting affidavit without *in camera* review. Under the Court's prevailing rule, then, Montgomery would be entitled by his showing of need to disclose information compelled by the Subpoena and to alert appropriate officials about the illegal surveillance upon an *in camera review* by this Court of the information that the Government seeks to block from disclosure.

The assertion of the privilege in this case was made 16 years ago when the Government filed its motion for a protective order. This raises reasonable doubt about whether the information covered by the protective order containing anything that would now constitute a state secret. The stronger inference is that the Government would be attempting to hide embarrassing or incriminating information by blocking its disclosure at this time.

Here, the U. S. Department of Justice ("the Department") has employed the state secrets privilege, the protective order, and the nondisclosure agreement to prevent scrutiny of the Government's misconduct. By prohibiting Montgomery from disclosing information that he

collected using the technology that he developed and licensed to the Government, the

Department has enabled federal agencies that have engaged in unlawful surveillance of

American citizens to avoid accountability for their misconduct. *See Klayman v. Obama*, 957

F.Supp.2d 1, 29 (D.C. 2013), *vacated and remanded*, 800 F.3d 559 (D.C. Cir. 2015). The Court

of Appeals vacated the preliminary injunction granted below, concluding that the Klayman

plaintiffs lacked standing. Circuit Judge Brown, however, offered the following observation

about the merits of the plaintiffs' claim:

> In his opinion below, Judge Leon eloquently explains how these facts are nonetheless sufficient to draw the inference that "the NSA has collected and analyzed [plaintiffs'] telephony metadata and will continue to operate the program consistent with FISC opinions and orders." *Klayman v. Obama,* 957 F.Supp.2d 1, 29 (D.D.C. 2013). In particular, Judge Leon infers from the government's efforts to "create a *comprehensive* metadata database" that "the NSA *must* have collected metadata from Verizon Wireless, the single largest wireless carrier in the United States, as well as AT & T and Sprint, the second and third largest carriers." *Id.* at 27.

> As [District Judge] Leon makes plain, plaintiffs have set forth significant evidence about the NSA's bulk-telephony metadata program. As a result, this case 0is readily distinguishable from cases like *Tooley v. Napolitano*, 586 F.3d 1006 (D.C. Cir. 2009), in which allegations of unlawful surveillance were dismissed as "patently insubstantial."

*Id.* at 563. In 2015, Montgomery submitted 47 hard drives of evidence to the Department

showing the Government's unlawful surveillance and other misconduct in its use of the

technology that he developed. He was interviewed about that evidence for more than three hours

by a Department lawyer and two FBI agents on December 3, 2015. *See* Ex. B attached at ¶ 13;

August 2022 Montgomery Decl. at ¶¶ 33-38 (Doc. 1216-2).

The Government's unlawful surveillance of U.S. citizens and its treatment of

Montgomery have combined to provide compelling justification for the relief sought by

Montgomery's motion based on the doctrine of outrageous government conduct. *See United*

*States v. Russell*, 411 U.S. at 431-32; *Greene*, 454 F.2d at 786-87. The Court may exercise its

equitable jurisdiction to prevent or remedy injustice. *See Holland v. Knight*, 560 U.S. 650-51 (2010). The *Russell* doctrine is based on the principle that governmental conduct that violates fundamental fairness and is "shocking to the universal sense of justice mandated by the Due Process Clause" must be invalidated. 411 U.S. at 431-32. Typically, the doctrine has been applied in situations involving prosecutions and convictions. *E.g., United States v. Fernandez*, 388 F.3d 1199 (9th Cir.2004); *United States v. Gurolla*, 333 F.3d 944 (9th Cir. 2003). But the doctrine's rationale that governmental actions that violates fundamental fairness and "shocks the conscience" are invalid applies to cases other than those involving prosecution or conviction. *See, e.g., Kovacic v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 724 F.3d 687, 699-700 (6th Cir. 2013) (removal of children without judicial authorization violates due process); *Gardiner v. A. H. Robins Co., Inc.,* 747 F.2d 719, 722 (8th Cir.1984) ("[I]ntimidation of private citizens who are not parties to proceedings…is antithetical to out notions of fundamental fairness and proper functioning of our judicial system.").

The Government's unlawful surveillance program alone would justify the Court's prohibition of the application of the state secrets privilege and the protective order to Montgomery's disclosure of information related to that program. The Department allowed Montgomery to produce the 47 hard drives to it in 2015 without raising the potential coverage of either the privilege or the protective order. The Department has not taken any action on the evidence produced by Montgomery. The extraordinary invasion by the Government of the constitutional rights of millions of U.S. citizens is an independent justification for the Court's application of the outrageous government conduct doctrine to prohibit the Government's invocation of the state secrets privilege, the protective order, or the nondisclosure agreement to

prevent appropriate officials and the public from being informed about the illegal surveillance program.

The Government's failure to demonstrate that Montgomery possesses any classified information provides an independent basis for the Court to prohibit the Government from invoking the classified information nondisclosure agreement that Montgomery executed with the Defense Security Services. Magistrate Judge Cooke found, and the Government conceded, that no classified information was included in the items seized in the unconstitutional raid on Montgomery's residence and storage units in 2006. Doc. 1216-2 ¶ 17.

The outrageous treatment of Montgomery is yet further grounds for granting the relief he seeks. The application of the outrageous government conduct doctrine is confined to extreme cases. This is such a case. As detailed in his attached declaration (Exhibit A), the Government:

(1)      Raided Montgomery's Reno residence on March 1, 2006, with eight armed FBI agents, an agent of the Drug Enforcement Administration, and an agent of the Internal Revenue Service, during which they handcuffed Montgomery to a tree and detained and threatened his family, seized property and documents, pursuant to a warrant that was obtained by misleading the magistrate that Montgomery was in possession of classified information and property owned by eTreppid Technologies, LLC (Ex. B attached  ¶ 3; Doc. 1216-2 ¶¶ 15-18;

(2)      Raided Montgomery's storage units in Reno on March 3, 2006, and seized property and documents pursuant to a warrant that was obtained by representing erroneously to the magistrate that there was classified information and property owned by eTreppid there (Doc. 1216-2 ¶ 16);

(3)      Refused to comply with an order of the Magistrate Judge requiring the Government to return the property seized, and asserted the state secrets privilege to justify its noncompliance (Doc. 1216-2 ¶ 17 and Ex. 6 attached thereto);

(4)     Raided the law offices of Montgomery's attorneys, Flynn & Stillman, in 2008 without a warrant and seized attorney-client and other documents including Montgomery's intellectual property, none of which the Government has returned (Ex. B attached ¶ 20;

(5)     Raided the law offices of Montgomery's attorneys, the Liner law firm in Los Angeles, without a warrant in 2010 and seized attorney-client and other documents including Montgomery's intellectual property, none of which the Government has returned (Ex. B attached ¶ 21; Doc.1216-2 ¶ 25);

(6)     Seizing, classifying, and refusing to return the unredacted billing records of Montgomery's attorneys by relying on the state secrets privilege Ex. B attached ¶ 9);

(7)     Repeatedly threatened Montgomery with arrest and prosecution if he disclosed information that the Government contended was protected by the state secrets privilege and the protective order (Ex. B attached ¶¶ 4, 5, 7, 8);

(8)     Upon a threat of arrest and prosecution, a Department lawyer insisted that Montgomery assert his privilege against self-incrimination in response to questions about matters related subjects that the Government contended were protected from disclosure by the state secrets privilege in a deposition during his bankruptcy proceedings (Ex. B attached ¶ 9);

(9)     Prevented Montgomery's False Claims Act claim from advancing in this Court in *United States ex rel. Montgomery v, Trepp* in 2007 by invoking the state secrets privilege (Ex. B attached ¶ 10);

(10)    Interfered with Montgomery's efforts to engage the inspectors general of several federal agencies in investigating the Government's illegal surveillance program by invoking the state secrets privilege to block access by the inspectors general to the information relevant to the Special Access Programs or technology that Montgomery was involved in (Ex. B attached ¶ 16);

(11)     Agreed to allow Montgomery to provide the Department with 47 hard drives of
information collected by the Government using technology that Montgomery had developed
which reflected decades of electronic surveillance of United States citizens and commercial
entities by the Government, and to interview Montgomery for more than three hours about the
information on the hard drives, but took no action to curtail the surveillance program and
declined to return the hard drives (Ex. B attached ¶ 14; Doc. 1216-2 ¶¶ 34-36);

(12)     Prevented Montgomery from having access to information that he needed to defend
himself against claims made by the Internal Revenue Service (Ex. B attached ¶¶ 22, 23);

(13)     Threatened him for 15 years with arrest and prosecution to prevent him from filing a civil
against the Government agents who displayed callous disregard of his constitutional rights  in the
March 2006 raids on is residence and storage units in Reno, which Magistrate Judge Cooke had
ruled were unconstitutional searches and seizures (Ex. _ attached ¶ 4, 5, 7, 8; Doc. 1216-2 ¶ 17
and Ex. 6 attached thereto); and

(14)     Denied him access to his intellectual property and the ability to use that property to
generate revenue and thereby forced him into bankruptcy (Ex. B attached ¶ 23; Doc. 1216-2 ¶
26).

The foregoing establishes justification for the entry of the Order requested by
Montgomery.

## CONCLUSION

The Court should enter an Order restricting and prohibiting the Government from
invoking the state secrets privilege, the protective orders, the privilege pursuant to 50 U.S.C. §
403-1(i)(1), and the classified information nondisclosure agreement executed by Montgomery to
prevent him from disclosing information that he is compelled to produce to comply with the

Lindell Subpoena and information that relates to surveillance of U.S. citizens, private businesses, and non-profit organizations.

Respectfully submitted this 14th November, 2022.

**CHATTAH LAW GROUP**

_/s/ Sigal Chattah_
SIGAL CHATTAH, ESQ.
Nevada Bar No.:8264
CHATTAH LAW GROUP
5875 S. Rainbow Blvd., Suite 204
Las Vegas, Nevada 89118
Tel: (702) 360-6200
Fax:(702) 643-6292
Attorney for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that service of the foregoing Motion was served on the 14th day of November, 2022 via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

_/s/ S. Chattah_
An employee of the Chattah Law Group