**NOT**
SIGAL CHATTAH, ESQ.
Nevada Bar No.: 8264
CHATTAH LAW GROUP
5875 S. Rainbow Blvd #204
Las Vegas, Nevada 89118
Tel: (702) 360-6200
Fax:(702) 643-6292
Chattahlaw@gmail.com
Attorney for Plaintiff

PATRICK M. MCSWEENEY, ESQ.
*Pro hac vice application pending*
MCSWEENEY, CYNKAR & KACHOUROFF, PLLC
3358 John Tree Hill Road
Powhatan, Virginia 23139
Tel. (804) 937-0895
Fax (703) 365-9593
patrick@mck-lawyers.com

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| DENNIS MONTGOMERY *et al.*, | Case No. 3:06-cv-00056-MMD-CSD |
| Plaintiffs, | and |
| | Case No. 3:06-cv-145-MMD-VPC |
| v. | |
| ETREPPID TECHNOLOGIES, LLC, *et al.*, | |
| Defendants. | |

**PLAINTIFF'S SUPPLEMENTAL DECLARATION TO PLAINTIFF'S MOTION TO RESTRICT APPLICATION OF THE STATE SECRETS PRIVILEGE THE PROTECTIVE ORDER, AND THE CLASSIFIED INFORMATION NONDISCLOSURE AGREEMENT**

YOU AND EACH OF YOU, WILL PLEASE TAKE NOTICE of the foregoing SUPPLEMENTAL DECLARATION to be considered with PLAINTIFF'S MOTION TO

RESTRICT APPLICATION OF THE STATE SECRETS PRIVILEGE, THE PROTECTIVE ORDER, AND THE CLASSIFIED INFORMATION NONDISCLOSURE AGREEMENT.

DATED this __15th__ day of November, 2022

**CHATTAH LAW GROUP**

/s/ Sigal Chattah
SIGAL CHATTAH, ESQ.
Nevada Bar No.:8264
CHATTAH LAW GROUP
5875 S. Rainbow Blvd., Suite 204
Las Vegas, Nevada 89118
Tel: (702) 360-6200
Fax:(702) 643-6292
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby Certify that on the __15th__ day of November, 2022 I caused the foregoing SUPPLEMENTAL DECLARATION to be electronically served to all registered Parties.

_/s/ Sigal Chattah_
An Agent of Chattah Law Group

## DECLARATION OF DENNIS MONTGOMERY

I, Dennis Montgomery, state the following pursuant to 28 U.S.C. § 1746:

1.  Another declaration that I prepared and signed was submitted as Exhibit B to Intervenor Lindell's Memorandum in Support of Motion to Intervene and to Lift Protective Order (ECF No, 1216-2). In this proceeding. I have prepared and signed this declaration to provide additional facts in support of my Motion to Restrict the Application of the State Secrets Privilege, the Protective Order, and a Classified Information Nondisclosure Agreement filed in this case.

2.  In response to a motion filed by the Department of Justice ("the Department") in 2006 on behalf of the Director of National Intelligence, the Court entered protective orders prohibiting me from disclosing certain information, which is described in the protective orders and thereby enforce the state secrets privilege asserted by the Director of National Intelligence (No. 3:06-cv-00056, Doc. 252 & 253).

3.  As my previous declaration referenced (Doc. 1216-2 ¶¶ 15-18), eight FBI agents, an agent of the Internal Revenue Service, and an agent of the Drug Enforcement Agency executed a search and seizure warrant on March 1, 2006, at my residence in Reno, Nevada, with firearms drawn, handcuffed me to a tree, detained and threatened my family, and seized a massive amount of property, which has never been fully returned to me despite a ruling by the U. S. District Court that the actions of the agents were conducted with callous disregard for the constitutional rights of my wife and me and a ruling that I was entitled to the return of all property seized. The US Government contended that it was not required to return all of that property because it was covered by the state secrets privilege.

4. Since the entry of the protective orders, attorneys representing the Department have asserted the right and authority to prevent me from disclosing information in other litigation and in other situations based on the state secrets privilege.

5. The Department's attorneys have asserted shifting and often contradictory justifications for preventing me from disclosing information related to the technology that I have developed, and information collected by me using that technology.

6. In January 2006, the complaint in *Hepting v. AT&T* was filed in U.S. District Court for the Northern District of California alleging that AT & T had permitted and assisted the National Security Agency in unlawfully monitoring the communications of AT & T customers, businesses, and third parties. Aware of my efforts to expose the unlawful domestic surveillance, the Electronic Frontier Foundation ("EFF"), which was the driving force behind the litigation, contacted me to request information about the domestic surveillance program, which I provided to EFF. The Government raided my Reno residence six days after I provided the information to EFF, as described in paragraph 3, above. An amended complaint was then filed in the *Hepting* litigation that included information that I had provided to EFF. The Department moved to dismiss the complaint based on the state secrets privilege, which the District Court denied. The Department appealed to the Ninth Circuit, which dismissed the case based on the enactment of the FISA Amendment Act that retroactively immunized AT & T.

7. As for other examples of the Department's assertion of the state secrets privilege, Raphael O. Gomez and Carlotta P. Wells, attorneys in the Federal Programs Branch of the Department's Civil Division, have expressly and specifically asserted the state secrets privilege in communications with me in demanding that I not disclose information that they deemed

covered by the state secrets privilege and protective order in such other situations that were unrelated to the litigation described in paragraph 2, above.

8. Before and during my November 18, 2010, deposition in bankruptcy proceedings in off-the-record communications with me, Ms. Wells directed me to assert the privilege against self-incrimination and refuse to provide information in response to questions that related to subjects that she insisted were covered by the state secrets privilege. She threatened me that I would be arrested if I did not follow her directions. She stated on the record that "paragraphs 2 and 3 of the United States protective order which is Document 253, District of Nevada Caes File 30656" applied to any information that might be disclosed in that deposition, including the last names of two other Government personnel who accompanied her to the deposition.

9. Before another deposition in my bankruptcy proceedings, Mr. Gomez directed me not to provide information if questioned about matters that he insisted were covered by the state secrets privilege. Mr. Gomez ordered the testimony to be terminated during that deposition, seized exhibits reflecting my attorneys' billing records related to a government contract in which I had been involved, and took possession of the transcript of the deposition.

10. In 2007, the Department prevented my False Claims Act claim in *United States ex rel. Montgomery v. Trepp et al.* from advancing in this Court by invoking the state secrets privilege.

11. In 2006, I provided to the Electronic Frontier Foundation information generated in my development of the technical ability to be used by the Government to access electronic transmissions in the fight against international terrorists and information about the use of such technology to conduct surveillance of U.S. citizens and private entities, which information was used in the class action against AT & T filed in the U,S, District Court for the Northern District of California and which information was a portion of the information in that litigation that the

Department attempted to block based on the state secrets privilege by filing a motion to dismiss the complaint in that case.

12. At a 2008 meeting at the District of Columbia office of Jack Kemp attended by Ms. Wells, Mr. Kemp, and me, Ms. Wells declared to Mr. Kemp: "Dennis will be under the state secrets privilege until he dies."

13. In 2021, I filed a *Bivens* action for damages against agents of the Government, including the Department and the Internal Revenue Service, for the flagrant violation of my rights guaranteed by the Fourth Amendment. *Dennis Montgomery et al v. West et al.*, No. 3:21-cv-00128-MMD-WCC (D. Nev.). The Department filed a motion to dismiss on behalf of the defendants in that action arguing, *inter alia*, that "litigation of this claim potentially involves information subject to the state secrets privilege" and "litigation of Plaintiffs' claim would ultimately implicate the protective order and [the state secrets] privilege." Doc. 28 (filed 10/08/21) at 13.

14. As discussed in Doc. 1216-2 ¶ 35, I was interviewed on December 3, 2015, for more than three hours by Deborah Curtis, a Department attorney, and two agents of the Federal Bureau of Investigation at the FBI's District of Columbia headquarters. During that interview, Ms. Curtis acknowledged that I was allowed during the interview to discuss matters that the Department deemed protected by the state secrets privilege. But at the conclusion of that interview, she made the statement: "When you leave this room, the state secrets privilege will be on you."

15. Information in my possession or that I can relate from memory includes information that the Department has asserted the state secrets privilege to protect from disclosure and which would reveal misconduct by agencies of the United States involving surveillance of citizens of the United States and other actions that violate 18 U.S.C. § 1809. As shown in the

correspondence between the Department and my former attorney attached to this declaration as Exhibit 1, I have provided that information to the Department in 47 hard drives of data.

16. I have attempted for several years to alert then-President Barack Obama, then-Vice President Joe Biden, numerous members of Congress, the Inspector General of the Office of the Intelligence Community, the Central Intelligence Agency, the Department of Justice, the Department of Defense, the Department of Homeland Security, the Department of the Treasury, the Department of State, the U.S. Air Force, and the Defense Intelligence Agency about the decades-long illegal domestic surveillance, but none has acted on my complaints.

17. On October 24, 2022, I was served by counsel for My Pillow, Inc. with a subpoena ("Subpoena") to produce documents, information, or objects or to permit inspection of premises in a civil action (*US Dominion, Inc. et al. v. My Pillow, Inc.,* Case No. 1:21-cv-00445 (D.D.C.)). The Subpoena compels production of information that the Department has contended is covered by the state secrets privilege and the protective order. The Department's position has been and, I must assume, continues to be that the sources and methods that were used to develop the technology used to collect the information cannot be disclosed. I am confronted with the choice of refusing to comply with the Subpoena or violating the protective orders and the state secrets privilege as the Department has construed the protective orders and repeatedly asserted the state secrets privilege. A copy of the Subpoena is attached as Exhibit 2. I am currently negotiating with Mr. Lindell concerning how I will respond to his subpoena.

18. I conveyed my ownership of the technology described in the protective orders to Blxware, a company owned exclusively by me until I conveyed a majority interest to Michael J. Lindell in 2021, while retaining a minority interest. The technology described in the protective

orders, which technology I had licensed to agencies of the United States, enabled the collection of data that has been sought by the Subpoena issued to me.

19. I am confronted with the choice of refusing to comply with the Subpoena with the consequences that are likely to follow or violating the state secrets privilege, the protective order, and the classified information nondisclosure agreement that I executed with the Defense Security Service.

20. Asserting the state secrets privilege as a justification, the Government has not returned the property it seized without a warrant from my lawyers at Flynn & Stillman in 2008, including my intellectual property and attorney-client communications.

21. Asserting the state secrets privilege as a justification, the Government has not returned the property it seized without a warrant from my lawyers at the Liner law firm in Los Angeles in 2008, including my intellectual property and attorney-client communications.

22. Over the last 16 years, the U.S. Government has destroyed, seized, stolen, hijacked, or failed to return thousands of disk drives or electronic media which I own that contained my intellectual property. The Government claims it is still reviewing material to see if information on the electronic media is covered by the state secrets privilege.

23. The Government's seizure and refusal to allow me access to my intellectual property has deprived me of the opportunity to generate income and thereby forced me into bankruptcy,

24. I am personally aware that the U.S. Government has conducted and continues to conduct extensive electronic surveillance of millions of U.S. citizens, private companies, and non-profit entities.

25. I fear that, without relief granted to me by a federal court, the Department will act on its repeated threats to arrest me and prosecute me for violating the protective orders and the state secrets privilege.

I certify under penalty of perjury that the foregoing statements are true and correct based upon my personal knowledge.

Dated: November 15, 2022
Naples, Florida

_____
Dennis Montgomery

7