BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Director

JAMES R. POWERS
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20005
Email: James.R.Powers@usdoj.gov
Telephone: (202) 353-0543

*Attorneys for the United States of America*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| DENNIS MONTGOMERY, *et al.* | Case No: 3:06-cv-00056-MMD-CSD and No. 3:06-cv-145-MMD-VPC |
| Plaintiffs, | |
| v. | |
| ETREPPID TECHNOLOGIES, L.L.C., *et al.*, | UNITED STATES' MEMORANDUM IN OPPOSITION TO DENNIS MONTGOMERY'S MOTION FILED AT ECF NO. 1236 |
| Defendants. | |

**INTRODUCTION**

In this long-since dismissed litigation involving essentially a business dispute, Plaintiff Dennis Montgomery has filed a motion arising from a subpoena issued to him by proposed-intervenor Michael Lindell. ECF No. 1236 ("Pl.'s Mot."). That subpoena was issued not from this Court or in relation to this litigation. *See* Ex. A, Pl.'s Mot., ECF No. 1236-1 ("Lindell Subpoena"). Instead, it comes from the U.S. District Court for the District of Columbia and calls for compliance within the Middle District of Florida. It arises from a defamation suit pending in the District of Columbia, which alleges Lindell has defamed US Dominion Inc., a voting machine manufacturer and service provider, based on Lindell's statements following the 2020 presidential election. Based on this subpoena, Montgomery's motion seeks an injunction from this Court directed against the United States Government, specifically an order "prohibiting the application" by the Government of four different laws and documents to Montgomery's proposed response to the subpoena:

    (1) the common law state secrets privilege,

    (2) the Director of National Intelligence's ("DNI") statutory privilege regarding intelligence sources and methods, 50 U.S.C. § 3024(i)(1),[1]

    (3) the Protective Order entered in this litigation on August 29, 2007, ECF No. 253, and

    (4) Montgomery's Classified Information Nondisclosure Agreement with the Defense Security Service, an agency within the U.S. Department of Defense ("DoD"), ECF No. 83-3.

Pl.'s Mot. at 3.

Montgomery's motion should be denied for numerous reasons. First, as to the motion's request for injunctive relief against hypothetical future attempts by the United States Government to pursue rights or relief it may have under these provisions, multiple foundational defects doom the request. This Court does not have jurisdiction to consider this subpoena-related dispute, which

---

[1] Montgomery's motion cites 50 U.S.C. § 403(i)(1), which is the prior numbering of this statutory privilege belonging to the DNI. This statutory privilege now resides at section 3024, as cited above.

can only be brought, if at all, in the District where compliance has been subpoenaed, the Middle District of Florida, or in certain circumstances the court from which the subpoena issued, the District for the District of Columbia.  Moreover, Montgomery lacks standing to seek the requested injunctive relief as he cannot establish any actual or imminent injury supporting the Court's jurisdiction.  And in any event, there is no procedural or substantive basis for seeking the kind of relief that Montgomery now requests; no claims are pending in this litigation and Montgomery invokes no basis for post-judgment relief that would support his request.

Insofar as Montgomery more modestly seeks only to lift or modify the Protective Order entered in this case, Montgomery has failed to establish any basis for that relief either.  Put very simply, the Protective Order entered in this case has nothing to do with the defamation litigation against Lindell: the Protective Order does not apply to any litigation but the above-captioned cases in which it was entered; no party or prior party to this litigation is a party to the defamation lawsuit; and neither this litigation nor the United States' motion for protective order have anything at all to do with voting, elections administration, or Dominion.  Nor does Montgomery's litany of far-fetched and inflammatory allegations about the Government raise any other basis for relief.  Accordingly, Montgomery fails to establish any grounds under the law of this Circuit for lifting or modifying the Protective Order.

Montgomery's motion should be denied.

## BACKGROUND

### I.     This Litigation and the State Secrets Protective Order

This litigation is comprised of two related actions, Civil Action No. 06-00056 (hereinafter referred to as the "Federal Case") and Civil Action No. 06-00145 (hereinafter referred to as the "Removed Case"), both filed in 2006.[2]  In a complaint originally filed in state court, eTreppid Technologies, Inc., asserted claims to protect and recover trade secrets from Dennis Montgomery.  Removed Case 3d Am. Complaint ¶ 63 *et seq.*, ECF No. 93.  Montgomery, a former employee,

---

[2] Each citation to the "Federal Case" or "Removed Case" are to the docket of Civil Action No. 06-00056 or No. 06-00145 respectively.  Citations to the docket that do not specifically reference one of these two identifiers are to the docket of the Federal Case.

officer, and director of eTreppid, filed a counter-complaint as well as a federal court action, alleging that eTreppid had infringed his copyright interests. Montgomery claimed that he is an inventor and software developer who developed certain software for which he was granted copyrights that he contributed in establishing eTreppid. Removed Case Counter-complaint ¶¶ 8–10, ECF No. 1-2; Federal Case 1st Am. Complaint ¶¶ 8–10, ECF No. 7. The dispute between Montgomery and eTreppid largely stemmed from the issue of the extent to which Montgomery retained the sole interest in derivative works based on the copyrighted technology. *See generally* Removed Case Counter-complaint ¶¶ 11–14; Federal Case 1st Am. Compl. ¶¶ 8–20.

Montgomery also asserted a claim in these lawsuits against DoD. *See* Removed Case Counter-complaint ¶¶ 22–27; Federal Case 1st Am. Compl. ¶¶ 68–74. This claim arose from Montgomery's Classified Information Nondisclosure Agreement executed with the Defense Security Service, an agency within DoD, on September 16, 2003. *See* Montgomery Nondisclosure Agreement, Ex. 2, United States' Mot. for Protective Order, ECF No. 83-3. Specifically, Montgomery alleged that he was prevented from disclosing information necessary to his claims and defenses as to eTreppid because of the Nondisclosure Agreement. Removed Case Counter-complaint ¶¶ 22–27; Federal Case 1st Am. Compl. ¶¶ 68–74. Montgomery therefore sought a declaration from the Court that disclosure of information he wished to use in the litigation would not violate his Nondisclosure Agreement with the United States. *Id.* DoD filed motions to dismiss as to Montgomery's claims against the agency for lack of subject matter jurisdiction. The Court later granted DoD's motion to dismiss, holding that Montgomery had not carried his "burden of establishing a waiver of sovereign immunity . . . to support jurisdiction" for his declaratory judgment claim. ECF No. 177 at 6.

While DoD's motions to dismiss were pending, on September 25, 2006, the United States moved, ECF No. 83-1, for the entry of a protective order based on an assertion of the state secrets privilege by the DNI, *see* Declaration and Formal Claim of State Secrets and Statutory Privileges by John D. Negroponte, Director of National Intelligence, ECF No. 83-2 ("Negroponte Decl."). The DNI's declaration established that disclosure of certain information at issue in the litigation

4

reasonably could be expected to cause serious, and in some cases exceptionally grave, damage to national security. Negroponte Decl. ¶ 12. The United States' motion was also supported by a classified declaration submitted for the Court's *ex parte, in camera* review. *Id.* ¶ 2.

The Court entered the requested protective order on August 29, 2007, excluding from "discovery or disclosure" information relating to two categories of information: (1) "the existence or non-existence of any actual or proposed relationship" between the parties and any U.S. intelligence agency and (2) any "actual or proposed intelligence agency interest in, application of or use of any technology, software or source code owned or claimed by the Parties." Protective Order ¶¶ 2, 3, ECF No. 253. The Protective Order, however, exempted from its coverage discovery regarding "[t]he computer source code, software, programs, or technical specifications relating to any technology owned or claimed by any of the Parties." *Id.* ¶ 4(c). The Protective Order also exempts from its coverage any "actual or potential commercial or government applications of" this technology, so long as it did not relate to the aforementioned categories concerning U.S. intelligence agencies. *Id.* ¶ 4 (e). The Protective Order's prohibitions applied only to "discovery or disclosure . . . during all proceedings in these actions," *i.e.* the above-captioned consolidated cases. *Id.* ¶ 1. Thus, by its terms, the Protective Order applied only to discovery or disclosure within this litigation and only to certain information regarding alleged activities or interests of the United States Government.

The litigation has since been resolved in full. The claims of Montgomery, eTreppid, and related parties were resolved by settlement and dismissed with prejudice on February 19, 2009. *See* Order ¶¶ 1, 2, ECF No. 962. The Court retained jurisdiction to resolve motions related to sanctions by Montgomery's former counsel, to enforce the United States' Protective Order, and to enforce the Parties' settlement agreement. *See id.* ¶ 3. The motions for sanctions were later resolved and judgment entered as to them on July 8, 2010. ECF No. 1171.

## II. The D.C. Defamation Litigation

Montgomery's current motion is prompted by a defamation lawsuit filed against Michael Lindell in the District of Columbia brought by Dominion, a company that "provides local election

officials with tools they can use to run elections." Lindell Decl. Ex. A ¶ 157, ECF No. 1216-1 (Compl., *US Dominion, Inc. v. My Pillow, Inc.*, No. 1:21-cv-00445 (D.D.C.) (hereinafter "Defamation Compl." or "defamation litigation"). Dominion's claims are rooted in numerous statements by Lindell in the wake of the 2020 presidential election, in which Lindell claimed that Dominion voting technology was exploited in various ways to alter votes and election results to the detriment of former-President Trump. *Id.* ¶¶ 164, 165. According to Dominion, Lindell's assertions generally centered on the alleged failure and/or exploitation of certain "algorithms" in Dominion voting machines. *See id.*

Lindell has claimed that he possesses certain "Data" obtained from Montgomery, which he seeks to use in defending himself in the defamation litigation. Lindell Decl. ¶ 6, ECF No. 1216-1. Specifically, Lindell contends that this "Data compris[es] internet transmissions sent during the 2020 election that were collected by technology developed and previously licensed by Dennis Montgomery." *Id.* ¶ 7. But Lindell asserts that this data may be covered by the Protective Order. *Id.* ¶ 9.

In seeking relief here, Montgomery has provided precious little description of the information he believes responsive to the Subpoena but covered by the Court's Protective Order or otherwise protected from disclosure. At most, Montgomery says obliquely that he is "aware that the U.S. Government has conducted and continues to conduct extensive electronic surveillance of millions of U.S. citizens, private companies, and non-profit entities." Ex. B, Pl.'s Mot., Montgomery Decl. ¶ 22, ECF No. 1236-1 ("Montgomery Decl."). Montgomery nowhere explains what this allegation, or for that matter this closed lawsuit, has to do with the 2020 election, alteration of vote totals, manipulation of voting machines, or anything regarding elections administration.

# ARGUMENT

## I. THE COURT SHOULD DENY MONTGOMERY'S REQUEST FOR INJUNCTIVE RELIEF.

Montgomery's motion does not make clear what relief it seeks or the grounds for that relief. For example, at no point does Montgomery invoke any statute or rule as a basis for seeking relief from this Court in this closed case,[3] nor does he indicate the precise form he wishes that relief to take, i.e., a declaration or injunction. Nonetheless, in response to a subpoena issued to him in another action, it appears that Montgomery seeks from this Court an injunction against future attempts by the Government to invoke any rights or relief it may have under one of four auspices: the common law state secrets privilege, the DNI's statutory privilege regarding intelligence sources and methods, the Protective Order entered in this litigation on August 29, 2007, ECF No. 253, and Montgomery's Classified Information Nondisclosure Agreement with the Defense Security Service. *See* Pl.'s Mot. at 4 (asserting that "the Government should be prohibited from invoking" these grounds to "block Montgomery from disclosing information"). Montgomery's request for an order "prohibit[ing]" the Government from taking certain unspecified actions appears, therefore, to be a request for injunctive relief against the United States. *See Garland v. Aleman Gonzalez*, 142 S. Ct. 2057, 2064 (2022) (explaining that an injunction is a "judicial order that tells someone what to do or not to do" and that to enjoin something "ordinarily means" to, *inter alia*, "require a person to perform, . . . or to abstain or desist from, some act" (citations omitted)). Numerous jurisdictional and procedural flaws fatally undermine this request for injunctive relief against the United States.

**1.** First, this Court lacks jurisdiction over this subpoena-related dispute because the Federal Rules of Civil Procedure prescribe the sole venues for such disputes, none of which is this Court. Montgomery's motion fundamentally seeks protection in relation to his response to a third-party subpoena issued under Federal Rule of Civil Procedure 45. *See* Mot. at 4 (explaining that

---

[3] Montgomery repeatedly invokes an asserted doctrine of outrageous governmental conduct. As discussed elsewhere in this brief, that asserted doctrine is entirely inapposite and provides no support for Montgomery's motion.

his right to relief arises from the need to, and possible consequences of, "complying with the Subpoena"). But Rule 45 provides that disputes regarding third-party subpoenas are to be resolved in the "court for the district where compliance is required." Fed. R. Civ. P. 45(d)(3). Although the court that *issued* the subpoena may also hear disputes, it may do so *only* if the court of compliance transfers the matter to that venue. Fed. R. Civ. P. 45(f).

Here, the Lindell subpoena calls for compliance in Naples, Florida, i.e., the Middle District of Florida. *See* Lindell Subpoena. And the subpoena was issued under the auspices of the District Court for the District of Columbia. Rule 45 provides, therefore, that Montgomery's first resort in litigating his response to this subpoena must be to the Middle District of Florida. And in no event may he pursue litigation about the subpoena in this Court, which is a total stranger to the defamation litigation and the subpoena itself. Accordingly, this Court lacks jurisdiction to consider Montgomery's claim. *See Agincourt Gaming, LLC v. Zynga, Inc.*, No. 2:14-CV-0708-RFB-NJK, 2014 WL 4079555, at *3 (D. Nev. Aug. 15, 2014) ("Under the current version of the Rule, when a motion to quash a subpoena is filed in a court other than the court where compliance is required, that court lacks jurisdiction to resolve the motion."). All of the concerns Montgomery raises about his response to the Lindell subpoena in the Dominion case can be addressed in a court with proper jurisdiction over the matter.[4]

**2.** Second, assuming arguendo that this Court had jurisdiction under the Federal Rules to resolve the subpoena dispute in the Dominion lawsuit, this Court would still lack subject matter jurisdiction as to Montgomery's request because he lacks standing to pursue it. Parties invoking federal jurisdiction bear the burden of establishing the three elements that constitute the "irreducible constitutional minimum of standing," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)—namely, that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial

---

[4] For example, if the Government were to seek an order to protect information in connection with the Lindell subpoena, any such action would be subject to review by a court with proper jurisdiction. There is no basis for this Court to exercise jurisdiction in this dismissed case based on the erroneous theory that its 2007 protective order governs a subpoena in another case that purportedly implicates the same information.

decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted). Standing is necessary for parties to establish the existence of an Article III case or controversy and, thus, to invoke the jurisdiction of the federal courts. *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103–04 (1998).

Two aspects of the standing inquiry are particularly relevant here. First, where standing is premised on an injury that has not yet occurred, a plaintiff must show that the injury is "imminent" or "*certainly impending* to constitute injury in fact." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis in original). Second, because "standing is not dispensed in gross," "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (quoting *Davis v. Federal Election Comm'n*, 554 U.S. 724, 734 (2008)).

Applying these principles, Montgomery fails to establish standing to seek the broad injunctive relief he is pursuing against the United States because he fails to show any cognizable injury in fact. Montgomery's injury appears premised on his contention that the Government may take adverse actions against him if he reveals certain information in response to the Lindell subpoena in the Dominion litigation. *E.g.*, Pl.'s Mot. at 5. But Montgomery has failed to show that any such injury is "*certainly impending*" as he must to establish injury in fact. *Clapper*, 568 U.S. at 409. It is not enough that such future injury could be "*possible*" or even that there is an "objectively reasonable likelihood" that it would occur. *See id.* at 409–10.

Here, Montgomery can point to nothing indicating that the United States has sought to prevent him from producing information in response to the Lindell subpoena in the Dominion lawsuit. The premise of his motion is that, based on actions taken by the Government in this case over 15 years ago, the United States may take some adverse action against him for disclosing information in response to the Dominion subpoena that he claims is covered by the protective order in this case or his prior nondisclosure agreement. But Montgomery can do no more than speculate that (1) some piece of information he may disclose pursuant to the Lindell subpoena would be in violation of the law, (2) the Government would subsequently take adverse action against him as a

9

result, and (3) the action the Government would take would be pursuant to one of the particular sources of law about which Montgomery seeks an injunction. This "highly attenuated chain of possibilities[] does not satisfy the requirement that threatened injury must be certainly impending" because it presents no more than a "speculative fear" of injury. *See id.* at 410–11 (rejecting standing based on "speculative fear" that the government would intercept communications of the plaintiffs and that this interception would be pursuant to the particular legal authority at issue in the case). And Montgomery's various allegations about statements by particular Government attorneys do not render his alleged injury any less speculative. *See* Montgomery Decl. ¶¶ 5–9, 11. Even accepting Montgomery's allegations as true for the sake of argument,[5] none demonstrate a "*certainly impending*" action by the Government against him, let alone a threat of prosecution in connection with his response to the Lindell subpoena in the Dominion case.

Finally, insofar as Montgomery instead contends that his injury arises from the subpoena itself, such as the burdens of responding to the subpoena, that injury is not traceable to the United States. *See Spokeo*, 578 U.S. at 338 (for standing, injury must be "fairly traceable to the challenged conduct of *the defendant*" (emphasis added)). The Government did not serve the subpoena and has nothing to do with it. Montgomery's dispute would be with Lindell, if anyone. Accordingly, even that asserted injury cannot support a claim against the United States.

In sum, Montgomery cannot demonstrate standing to seek injunctive relief against hypothetical future actions by the United States to prevent him from disclosing unspecified information in response to the Lindell subpoena in the Dominion case, based only on his speculative fear of adverse future consequences.

---

[5] Montgomery makes various allegations concerning numerous past litigation matters, including allegations of statements purportedly by Department of Justice attorneys. The Government does not concede the accuracy of these allegations but, as set forth herein, even engaging with them for the limited purpose of responding to this motion, none of them concern any impending threat with respect to the subpoena at issue in the Dominion litigation. And, as set forth herein, any dispute about his testimony in that case would be addressed by a court with jurisdiction over that subpoena.

**3.** Montgomery also raises no procedurally or substantively appropriate basis to seek injunctive relief in this long-since dismissed litigation that, even at its conclusion, contained no extant claims against the United States for any kind of relief, let alone relief like Montgomery now seeks. Two provisions of the Federal Rules contemplate post-judgment relief, Rules 59(e) and 60, but both involve alteration of or relief from existing judgments and orders. Here, in contrast, Montgomery seeks to raise an entirely new claim, namely a claim for equitable relief from potential action by the Government of no relevance to this previous business dispute between Montgomery and his former partner. If Montgomery wishes to seek that relief from this Court—which he cannot for the reasons discussed above and perhaps others beyond the scope of this response—he must, at minimum, commence a civil action in the ordinary course by filing a complaint which identifies the basis for a distinct and proper cause of action. Fed. R. Civ. P. 3. Filing a motion in an unrelated litigation to which he was once a party is not sufficient.

Indeed, the circumstances of this case's resolution further undermine Montgomery's attempt to reopen and expand the proceedings. This litigation concluded when the claims of Montgomery, eTreppid, and related parties were resolved by *settlement* and dismissed with prejudice on February 19, 2009. *See* Order ¶¶ 1, 2, ECF No. 962. Although the Court retained jurisdiction to enforce the United States' Protective Order, as Montgomery points out, Pl.'s Mot. at 6, it certainly did not claim to retain jurisdiction over future possible claims that might be brought by the parties to the case with no relation to protective order enforcement. Montgomery cannot circumvent the settlement and stipulated dismissal of this case by unilaterally reopening proceedings to litigate irrelevant purported grievances with the Government that he claims exist as a result of a subpoena in another case.

Montgomery nonetheless contends that he is entitled to relief because of a doctrine of "outrageous government conduct." Pl.'s Mot. at 9–10. Montgomery here points to a rarely satisfied *defense* to *criminal prosecution*, which may be invoked by criminal defendants in the "extreme case[] in which the government's conduct violates fundamental fairness and is shocking to the universal sense of justice mandated by the Due Process Clause of the Fifth Amendment."

*United States v. Fernandez*, 388 F.3d 1199, 1238 (9th Cir. 2004). Montgomery does not explain how this doctrine would apply outside of that limited criminal context to the claim for injunctive relief he makes now. But even accepting for the sake of argument that this doctrine provides some right to affirmative relief, it avails Montgomery nothing because it simply reinforces that Montgomery is seeking to bring new claims of no relationship to this lawsuit. At no point has Montgomery pursued Fifth Amendment claims against the United States in this litigation. He may not *de facto* plead new Fifth Amendment claims against the Government in this post-judgment posture.

## II. THE COURT SHOULD DENY MONTGOMERY'S MOTION INSOFAR AS IT SEEKS TO MODIFY OR LIFT THE PROTECTIVE ORDER.

Insofar as Montgomery's motion simply asks the Court to lift or modify the Protective Order, the motion should be denied. Like Lindell, Montgomery has failed to meet the Ninth Circuit's test for lifting or modifying a protective order.

### A. Montgomery Has Not Established The Relevance of Information Subject to the Protective Order.

A motion to modify or lift a protective order based on collateral litigation "must demonstrate the relevance of the protected discovery to the collateral proceedings and its general discoverability therein." *Foltz v. State Farm Mutual Auto. Ins. Co.*, 331 F.3d 1122, 1132 (9th Cir. 2003). A court asked to modify a protective order "should satisfy itself that the protected discovery is sufficiently relevant to the collateral litigation that a substantial amount of duplicative discovery will be avoided by modifying the protective order." *Id.* This relevance determination "hinges on the degree of overlap in facts, parties, and issues between the suit covered by the protective order and the collateral proceedings." *Id.* (citation omitted).

Montgomery says little about the connection between the information subject to the Protective Order and the defamation litigation. At most, he obliquely references his alleged awareness of governmental surveillance. Montgomery Decl. ¶ 22. For his part, Lindell has contended that he must use information subject to the Protective Order to "defend the reasonability and veracity of his statements regarding the 2020 election at issue in the D.C. Litigation." Lindell

Mot. at 9, ECF No. 1216. Lindell appears to be referencing the Complaint's allegations of defamation with respect to numerous statements by Lindell, all of which allege election and/or voter fraud in the 2020 presidential election through Dominion's voting machines. *See* Defamation Compl. ¶ 165. Lindell asserts that these "statements were based on information received from Montgomery." Lindell Mot. at 9.

Montgomery and Lindell's assertions fail to meet the Ninth Circuit's test for relevance for at least three reasons. First, the Protective Order in this litigation was entered over 15 years ago, pursuant to an assertion of the state secrets privilege over 16 years ago. Just simply looking at a calendar shows that the Order had nothing to do with the 2020 election or alleged fraud therein. Second, neither the Protective Order nor the supporting materials submitted by the United States in seeking it had anything to do with voting, elections administration, or voting machines, whether manufactured by Dominion or any other entity.[6] And third, allegations that the matters at issue in this case in 2007 have anything to do with the 2020 election or Dominion voting machines are entirely conjectural and unfounded. Montgomery has offered no basis to believe that the two categories of information that *are* subject to the Protective Order have anything to do with the defamation litigation. The closest Lindell and Montgomery come on this score are statements that Montgomery has information related to purported "illegal US government surveillance programs" using Montgomery's technology that involved the surveillance of, among many others, voting machines manufactured by Dominion. Lindell Mot. at 3; Montgomery Decl. in support of Lindell Mot. ¶ 38, ECF No. 1216-2. But even on its own terms, this baseless claim provides no support to Montgomery. That is because Montgomery has not explained what these farfetched allegations of surveillance have to do with Lindell's contentions that votes in the 2020 election were manipulated by anyone, let alone the United States Government.

---

[6] The Government is willing to make the previously submitted Classified Declaration available for the Court's review *ex parte* and *in camera*, should the Court believe it necessary to review the declaration to conclude that the information here is irrelevant to the defamation litigation.

**B.      No Good Cause Exists to Lift or Modify the Protective Order.**

Even where relevance is established, the Court "must weigh the countervailing reliance interest of the party opposing modification" of a protective order. *Foltz*, 331 F.3d at 1133. Those reliance interests are at their zenith in the context of the state secrets privilege, which exists to exclude from litigation information where "there is a reasonable danger that compulsion of the evidence will expose . . . matters which, in the interest of national security, should not be divulged." *United States v. Reynolds*, 345 U.S. 1, 6–7, 10 (1953) (describing this privilege as "well established in the law of evidence"). "It is 'obvious and unarguable' that no governmental interest is more compelling than the security of the Nation." *Haig v. Agee*, 453 U.S. 280, 307–09 (1981) (quoting *Aptheker v. Sec'y of State*, 378 U.S. 500, 509 (1964)). And the state secrets privilege is absolute in its effect, requiring exclusion of evidence against even the most compelling showing of need by a litigant. *United States v. Zubaydah*, 142 S. Ct. 959, 967 (2022) ("[I]n all events, 'even the most compelling necessity cannot overcome the claim of privilege if the court is ultimately satisfied that military secrets are at stake.' (quoting *Reynolds*, 345 U.S. at 11)).[7]

The reliance interests of the United States in the Protective Order foreclose Montgomery's request to lift the Order. Indeed, this is demonstrated by the effect of the Court's decision to uphold the state secrets privilege assertion here. Unlike an ordinary protective order limiting the persons to whom protected information may be disclosed, a protective order entered pursuant to the state secrets privilege causes "the evidence [to be] completely removed from the case." *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1082 (9th Cir. 2010) (citation omitted); *see also id.* at 1079 ("A successful assertion of privilege under *Reynolds* will remove the privileged evidence

---

[7] Montgomery's motion contains an extended discussion of the *Zubaydah* case. Pl.'s Mot. at 7–8. But Montgomery's attempt to rely on *Zubaydah* misses the mark. That case concerned review of a state secrets privilege assertion by the government in opposition to a subpoena seeking to obtain information for use in a foreign criminal case. 142 S. Ct. at 963, 965–66. Here, Montgomery seeks to *lift* an assertion upheld by this Court in a now-dismissed case because of the underlying information's alleged potential relevance to a different case before another federal court. *Zubaydah* has little to say about that idiosyncratic scenario. At most for present purposes, the Court's decision in *Zubaybah* underscores the deference due privilege assertions to protect intelligence sources and methods. *See id.* at 967.

14

from the litigation."). Thus, this is far from a case where the Court is only being asked to permit an additional party to view and use evidence already available to the other parties to the case. *Compare Foltz*, 331 F.3d at 1133 (approvingly quoting statement that a "legitimate interest" in "continued secrecy as against the public at large can be accommodated by placing the collateral litigants under the same restrictions on use and disclosure contained in the original protective order" (citation omitted)), *with Mohamed*, 614 F.3d at 1082 (successful invocation of state secrets privilege "completely remove[s]" the information from the case).

Montgomery contests the United States' reliance interests primarily on the ground that the protective order conceals violations of law. Pl.'s Mot. at 8–10 . This allegation is baseless. The unrebutted evidence before the Court is that the Protective Order was sought (and granted) to protect "intelligence sources and methods," the disclosure of which could cause harm to national security. Negroponte Decl. ¶ 12. Montgomery's speculations and allegations to the contrary are inadequate to support his claim for relief.[8]

## CONCLUSION

For the foregoing reasons, Montgomery's motion should be denied.

Respectfully submitted this 5th day of December, 2022.

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Director

*/s/ James R. Powers*
JAMES R. POWERS
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice

*Attorneys for the United States of America*

---

[8] The Court should reject Montgomery's motion for the many reasons set forth above. If the Court nonetheless concludes that Montgomery is entitled to some relief on the current record, the Court should permit the United States an additional 60 days in which to consider additional steps to protect its interests.