UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DENNIS MONTGOMERY, et al.,<br><br>  Plaintiffs<br><br>v.<br><br>ETREPPID TECHNOLOGIES, LLC, et al.,<br><br>  Defendants | Case Nos.: 3:06-cv-00056-MMD-CSD<br>              3:06-cv-00145-MMD-VPC<br><br>**Report & Recommendation of<br>United States Magistrate Judge**<br><br>Re: ECF No. 1216 |

This Report and Recommendation is made to the Honorable Miranda M. Du, Chief United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is a motion to intervene filed by non-party Michael J. Lindell. (ECF Nos. 1216, 1216-1, 1216-2.) The United States filed a response. (ECF No. 1232.) Lindell filed a reply. (ECF No. 1235.)

After a thorough review, it is recommended that Lindell's motion to intervene be denied.

**I. BACKGROUND**

This litigation involves two related cases, case 3:06-cv-00056-MMD-CSD (the Federal Action), and case 3:06-cv-00145-MMD-VPC (the Removed Action). In the Removed Action, eTreppid Technologies, Inc., asserted claims to protect and recover trade secrets from Dennis Montgomery. (*See* Third Am. Compl., ECF No. 93 in 3:06-cv-00145-MMD-VPC.) Montgomery, who was a former employee, officer, and director of eTreppid, filed counterclaims against eTreppid, and its majority shareholder, Warren Trepp, asserting that Montgomery was the owner of certain copyrights and derivative works he contributed in establishing eTreppid. (ECF No. 1-2 in 3:06-cv-00145-MMD-VPC.) He also included a claim for declaratory relief

against the United States Department of Defense (DoD) regarding his obligations under a non-disclosure agreement and accounting for profits from eTreppid's use of the source code. (ECF No. 1-2.)

Montgomery also filed the Federal Action, asserting copyright infringement, misappropriation of trade secrets and related claims against eTreppid and Trepp. (ECF No. 1 in 3:06-cv-00056-MMD-CSD.) Montgomery then filed an amended complaint in the Federal Action that included a claim against the DoD, including copyright infringement (counts one and two), an accounting of profits derived from the source code (count four), conversion of the source code (count nine) and declaratory relief regarding Montgomery's non-disclosure agreement with the DoD (count ten). (ECF No. 7 in 3:06-cv-00056-MMD-CSD.)

Montgomery's claims against the United States largely related to a Classified Information Nondisclosure Agreement (NDA) Montgomery executed with the Defense Security Service, an agency within DoD, in September of 2003. (*Id.*; *see also* ECF No. 83-3 in 3:06-cv-00056-MMD-CSD.) Montgomery alleged he was prevented from disclosing information necessary to his claims and defenses as to eTreppid because of the NDA. He sought a declaration from the court that disclosure of the information he wanted to use in the litigation would not violate the NDA.

DoD filed motions to dismiss Montgomery's claims for lack of subject matter jurisdiction, which were later granted. (ECF No. 56, in 3:06-cv-000056-MMD-CSD, and ECF No. 39 in 3:06-cv-00145-PMP-VPC, order at ECF No. 177 in 3:06-cv-00056-MMD-CSD.) While the motions were pending, the United States moved for entry of a protective order based on assertion of the state secrets privilege by Director of National Intelligence (DNI) John Negroponte. (ECF No. 83 in 3:06-cv-00056-MMD-CSD.) The DNI asserted that disclosure of

1  certain of the information at issue could reasonably be expected to cause serious, and even grave,
2  damage to national security.
3         On March 15, 2007, the Federal Action and the Removed Action were consolidated.
4  (ECF No. 123 in 3:06-cv-00056-MMD-CSD.)
5         The court entered DoD's requested protective order on August 29, 2007. (ECF Nos. 252,
6  253.) The order found that certain information may or may not be relevant to the claims was
7  subject to the state secrets privilege, and such information should not be subject to discovery or
8  disclosure by any of the parties during all proceedings in these actions, and should be excluded
9  from evidence at trial. The order excluded from discovery or disclosure two categories of
10 information, including: (1) "the existence or non-existence of any actual or proposed
11 relationship" between the parties and any U.S. intelligence agency and (2) any "actual or
12 proposed intelligence agency interest in, application of or use of any technology, software or
13 source code owned or claimed by the Parties." (ECF No. 196 in 3:06-cv-00056-MMD-CSD.)
14        The protective order exempted from its coverage discovery of certain information,
15 including "[t]he computer source code, software, programs, or technical specifications relating to
16 any technology owned or claimed by any of the Parties," as well as any "actual or potential
17 commercial or government applications of" this technology, so long as it did not relate to the
18 aforementioned categories concerning U.S. intelligence agencies. The protective order applied to
19 "discovery or disclosure … during all proceedings in these" two actions. (*Id.*)
20        The Federal and Removed Actions were resolved in full by settlement, and were
21 dismissed with prejudice on February 19, 2009. (ECF No. 962 in 3:06-cv-00056-MMD-CSD.)
22 The court retained jurisdiction over the terms of the protective order. (*Id.*)
23

Non-party and proposed intervenor Lindell has been sued in the United States District Court for the District of Columbia, for defamation based on alleged statements he made about the administration of the 2020 presidential election and his contentions that various forms of fraud were perpetrated using the voting machines of a company called Dominion. *See US Dominion, Inc. v. My Pillow, Inc.*, case 1:21-cv-00445 (D. D.C.).

Lindell argues that he should be granted leave to intervene in this action both permissively, under Rule 24(b)(1)(B), and as of right under Rule 24(a)(2).

Lindell seeks to have the protective order in this action lifted so he may use data obtained from Montgomery to defend himself against claims asserted in defamation litigation. He argues the data he seeks to use in his defense may be covered by the protective order issued in this litigation. He asserts that he made the statements at issue in the *Dominion* case relying in part on information he received from Montgomery.

He seeks to use testimony and evidence concerning Montgomery's background and his work for U.S. intelligence agencies, and information from Montgomery himself, to defend against the defamation action. He states that the information he relied on is comprised of internet transmissions sent during the 2020 election that were collected by technology Montgomery developed and previously licensed to the United States. Lindell claims that Montgomery's data shows that voting machine manufacturers and their employees were hacked, as well as information related to illegal United States surveillance programs Montgomery worked in. Lindell claims he agreed to acquire ownership rights to Montgomery's data; however, the protective order entered in this case prohibits the use or disclosure of information related to Montgomery's work for or relationship with United States' intelligence agencies.

1       The United States opposes Lindell's motion, arguing Lindell lacks standing to intervene and he has not established a basis for either permissive or as of right intervention under Federal Rule of Civil Procedure 24. The United States further argues that if intervention is allowed, then good cause does not exist to lift or modify the protective order. (ECF No. 1232.)

      After this motion was fully briefed, Montgomery filed a motion to restrict the application of the state secrets privilege, the protective order, and the NDA. (ECF No. 1236.) The court has recommended denial of that motion in a separate report and recommendation.

## II. DISCUSSION

### A. Intervention under Rule 24

As is relevant here, a court *must* allow intervention if the person seeking intervention "claims an interest relating to the property or transaction that is the subject of the actin, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(1)-(2).

In addition, a court *may* allow intervention if the person seeking to intervene "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In determining whether to allow permissive intervention, the court must determine whether intervention "will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

### B. Standing

As a preliminary matter, the United States argues that Lindell must demonstrate he has Article III standing to intervene in this long-closed litigation.

1    "Article III of the Constitution limits the exercise of judicial power to 'Cases' and
2 'Controversies.'" *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 438 (2017) (citing
3 Article III, § 2, cl. 1). "If a dispute is not a proper case or controversy, the courts have no
4 business deciding it, or expounding the law in the course of doing so." *Id*. (citation and quotation
5 marks omitted). "'Standing to sue is a doctrine rooted in the traditional understanding of a case
6 or controversy.'" *Id*. (quoting *Spokeo, Inc. v. Robins,* 578 U.S. 330, 338 (2016)). To have
7 standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the
8 challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial
9 decision." *Spokeo,* 578 U.S. at 338 (citations omitted).

10   In *Laroe,* the Supreme Court held that a person seeking to intervene as of right under
11 Rule 24(a)(2) "must meet the requirements of Article III if the intervenor wishes to pursue relief
12 not requested by a plaintiff." 581 U.S. at 435. "For all relief sought, there must be a litigant with
13 standing, whether that litigant joins the lawsuit as a plaintiff, a coplaintiff, or an intervenor of
14 right." *Id*. at 439. "Thus, at the least, an intervenor of right must demonstrate Article III standing
15 when it seeks additional relief beyond that which the plaintiff requests." *Id*.; *see also Cal. Dep't*
16 *of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1085 (9th Cir. 2022)
17 (intervenors seeking relief broader or different than existing parties must have standing, but those
18 that seek the same relief sought by at least one existing party need not do so).

19   *Laroe* did not address whether Article III standing is required for permissive intervention.
20 Nor did it address the scenario of intervention by a person seeking to intervene in a settled case
21 for the limited purpose of lifting or modifying a protective order. Moreover, while Lindell seeks
22 to intervene both as of right and permissively, courts have generally held that the procedure for a
23 non-party to challenge a protective order is through permissive intervention. *See Beckman*

6

*Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992); *see also United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990); *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 783 (1st Cir. 1988); *Meyer Goldberg, Inc. of Lorain v. Fisher Foods*, 823 F.2d 159, 162 (6th Cir. 1987); *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 294 (2d Cir. 1979); *In re Beef Industry Antitrust Litig.*, 589 F.2d 786, 789 (5th Cir. 1979).

The Seventh Circuit addressed the interplay between Article III standing and Rule 24(b) permissive intervention in a case where permissive intervention was sought by a journalist after a case was settled in order to challenge a protective order that was entered in the case concerning citizen complaints against police officers. *Bond v. Utreas,* 585 F.3d 1061 (7th Cir. 2009). The court commented: "Intervention to challenge a protective order *after* a case has been dismissed interferes even more fundamentally: It revives a concluded case for the purpose of entertaining an outsider's claim of interest in the proceeds of the parties' discovery process." *Id*. at 1071. The Seventh Circuit concluded that the language of Rule 24(b) requiring that the court consider whether intervention will unduly delay or prejudice the adjudication of the original parties' rights "suggests that intervention postjudgment—which necessarily disturbs the final adjudication of the parties' rights—should generally be disfavored." *Id*. at 1071.

The Seventh Circuit held that "when a third party seeks intervention under Rule 24(b) for the purpose of challenging a protective order in a case or controversy that is no longer live—as when the case has been dismissed and none of the original parties has sought this relief postjudgment—the intervenor must meet the standing requirements of Article III in addition to Rule 24(b)'s requirements for permissive intervention." *Id*.

Under *Bond*, the court must first determine whether Lindell is seeking relief that one of the original parties has sought postjudgment, so that he may "piggyback" on their standing, and

if he may not, the court must then address whether Lindell has demonstrated independent standing to request this relief.

Through the time Lindell's motion to intervene was completely briefed, no party to this action had sought to lift or modify the protective order entered in this action. Instead, it was only *after* the United States filed its response to Lindell's motion raising the standing argument, and more than fifteen years after the protective order was entered, that Montgomery filed a motion to restrict application of the protective order. The fact that Montgomery did not seek to lift or modify the protective order until this point makes the position he now takes relative to the protective order appear contrived. In any event, the court has issued a recommendation that Montgomery's motion be denied. Therefore, the court finds Lindell must independently demonstrate Article III standing to pursue this relief.

As the United States points out, the protective order was entered in this case to "protect the classification, confidentiality, and the rights to information and documents developed and disclosed in connection *with this litigation*, and to facilitate discovery by and among the parties to *this action* and from third parties." (ECF No. 253 at 1.) The protective order provides that the information subject to the state secrets privilege "shall not be subject to discovery or disclosure by any of the Parties during all proceedings *in these actions* and shall be excluded from evidence at trial." (*Id*. at 2.) It goes on to preclude discovery or the use in trial of certain information in *this litigation*. (*Id*. at 2-5.) Lindell is not a party to this litigation, and the protective order does not apply to any other litigation. Therefore, it is not the protective order entered in this case that would preclude Lindell from introducing the information he seeks to utilize in his defense in the defamation action. Lindell provides nothing more than speculation that he will somehow be precluded from presenting this information because of the protective order in this litigation. In

sum, Lindell has not demonstrated an injury in fact that is traceable to protective order entered in this litigation.

Notwithstanding these findings, there may be other reasons that Montgomery is precluded from disclosing the information Lindell seeks to introduce in his defamation action, such as the NDA between Montgomery and the government. The NDA is between Montgomery and the government, is separate from the protective order entered by the court in this litigation, and the court has no authority to lift or modify the NDA.

For these reasons, Lindell's motion to intervene should be denied.

### III. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **DENYING** Lindell's motion to intervene (ECF No. 1216).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: May 15, 2023

_____
Craig S. Denney
United States Magistrate Judge