UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DENNIS MONTGOMERY, et al.,<br><br>　　Plaintiffs<br><br>v.<br><br>ETREPPID TECHNOLOGIES, LLC, et al.,<br><br>　　Defendants | Case No.: 3:06-cv-00056-MMD-CSD<br>　　　　　　3:06-cv-00145-MMD-VPC<br><br>**Report & Recommendation of<br>United States Magistrate Judge**<br><br>Re: ECF No. 1236 |

　　This Report and Recommendation is made to the Honorable Miranda M. Du, Chief United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

　　Before the court is Dennis Montgomery's motion to restrict application of the state secrets privilege, the protective order, and the classified information nondisclosure agreement. (ECF Nos. 1236, 1236-1, 1236-2, 1237, 1238.) The United States filed a response. (ECF No. 1243.) Montgomery filed a reply. (ECF No. 1251.)

　　After a thorough review, it is recommended that Montgomery's motion be denied.

**I. BACKGROUND**

　　This litigation involves two related cases, case 3:06-cv-00056-MMD-CSD (the Federal Action), and case 3:06-cv-00145-MMD-VPC (the Removed Action). In the Removed Action, eTreppid Technologies, Inc., asserted claims to protect and recover trade secrets from Dennis Montgomery. (*See* Third Am. Compl., ECF No. 93 in 3:06-cv-00145-MMD-VPC.) Montgomery, who was a former employee, officer, and director of eTreppid, filed counterclaims against eTreppid, and its majority shareholder, Warren Trepp, asserting that Montgomery was the owner of certain copyrights and derivative works he contributed in establishing eTreppid.

(ECF No. 1-2 in 3:06-cv-00145-MMD-VPC.) He also included a claim for declaratory relief against the United States Department of Defense (DoD) regarding his obligations under a non-disclosure agreement and accounting for profits from eTreppid's use of the source code. (ECF No. 1-2.)

Montgomery also filed the Federal Action, asserting copyright infringement, misappropriation of trade secrets and related claims against eTreppid and Trepp. (ECF No. 1 in 3:06-cv-00056-MMD-CSD.) In his amended complaint in the Federal Action, he included claims against the DoD, including copyright infringement (counts one and two), an accounting of profits derived from the source code (count four), conversion of the source code (count nine) and declaratory relief regarding Montgomery's non-disclosure agreement with the DoD (count ten). (ECF No. 7 in 3:06-cv-00056-MMD-CSD.)

Montgomery's claims against the United States related largely to a Classified Information Nondisclosure Agreement (NDA) Montgomery executed with the Defense Security Service, an agency within DoD, in September 2003. (*Id.*; *see also* ECF No. 83-3 in 3:06-cv-00056-MMD-CSD.) Montgomery alleged he was prevented from disclosing information necessary to his claims and defenses as to eTreppid because of the NDA. He sought a declaration from the court that disclosure of the information he wanted to use in the litigation would not violate the NDA.

DoD filed motions to dismiss Montgomery's claims for lack of subject matter jurisdiction, which were later granted. (ECF No. 56, in 3:06-cv-000056-MMD-CSD, and ECF No. 39 in 3:06-cv-00145-PMP-VPC, order at ECF No. 177 in 3:06-cv-00056-MMD-CSD.) While the motions were pending, the United States moved for entry of a protective order based on assertion of the state secrets privilege by Director of National Intelligence (DNI) John Negroponte. (ECF No. 83 in 3:06-cv-00056-MMD-CSD.) The DNI asserted that disclosure of

certain of the information at issue could reasonably be expected to cause serious, and even grave, damage to national security.

On March 15, 2007, the Federal Action and the Removed Action were consolidated. (ECF No. 123 in 3:06-cv-00056-MMD-CSD.)

The court entered DoD's requested protected order on August 29, 2007. (ECF No. 252.) The order found that certain information that may or may not be relevant to the claims was subject to the state secrets privilege, and such information should not be subject to discovery or disclosure by any of the parties during all proceedings in these actions, and should be excluded from evidence at trial. The order excluded from discovery or disclosure two categories of information, including: (1) "the existence or non-existence of any actual or proposed relationship" between the parties and any U.S. intelligence agency and (2) any "actual or proposed intelligence agency interest in, application of or use of any technology, software or source code owned or claimed by the Parties." (ECF No. 196 in 3:06-cv-00056-MMD-CSD.)

The protective order exempted from its coverage discovery of certain information, including "[t]he computer source code, software, programs, or technical specifications relating to any technology owned or claimed by any of the Parties," as well as any "actual or potential commercial or government applications of" this technology, so long as it did not relate to the aforementioned categories concerning U.S. intelligence agencies. The protective order applied to "discovery or disclosure … during all proceedings in these" two actions. (*Id.*)

The Federal and Removed Actions were resolved in full by settlement, and were dismissed with prejudice on February 19, 2009. (ECF No. 962 in 3:06-cv-00056-MMD-CSD.) The court retained jurisdiction over the terms of the protective order. (*Id.*)

More than thirteen years after dismissal of the actions with prejudice, non-party Michael J. Lindell filed a motion to intervene in this action for the limited purpose of obtaining an order lifting the protective order entered in this case. Lindell has been sued in the United States District Court for the District of Columbia, for defamation based on alleged statements he made about the administration of the 2020 presidential election and his contentions that various forms of fraud were perpetrated using the voting machines of a company called Dominion. *See US Dominion, Inc. v. My Pillow, Inc.*, case 1:21-cv-00445 (D. D.C.).

Lindell seeks to have the protective order in this action lifted so he may use data obtained from Montgomery to defend himself against claims asserted in defamation litigation. He argues the data he seeks to use in his defense may be covered by the protective order issued in this litigation. He asserts that he made the statements at issue in the *Dominion* case relying in part on information he received from Montgomery.

He seeks to use testimony and evidence concerning Montgomery's background and his work for U.S. intelligence agencies, and information from Montgomery himself, to defend against the defamation action. He asserts that the information he relied on is comprised of internet transmissions sent during the 2020 election that were collected by technology Montgomery developed and previously licensed to the United States. Lindell claims that Montgomery's data shows that voting machine manufacturers and their employees were hacked, as well as information related to illegal United States surveillance programs Montgomery worked in. Lindell claims he agreed to acquire ownership rights to Montgomery's data; however, the protective order entered in this case prohibits the use or disclosure of information related to Montgomery's work for or relationship with United States' intelligence agencies.

1    The United States opposes that motion, arguing Lindell lacks standing to intervene, and he has not established a basis for either permissive or as of right intervention under Federal Rule of Civil Procedure 24. The United States further argues that if intervention is allowed, then good cause does not exist to lift or modify the protective order. (ECF No. 1232.)

   After Lindell's motion was fully briefed, more than 13 years after this action was dismissed with prejudice, and over 15 years after the protective order was entered, Montgomery filed this motion. Montgomery asserts that he has been served by Lindell's counsel with a subpoena to produce documents in connection with the defamation action. Montgomery claims that the subpoena requests documents that include information concerning the technology he provided the United States that enabled him to collect the data sought by the subpoena. He contends that the United States takes the position that the sources and methods that produced the technology are covered by the state secrets privilege and the protective order. He argues that unless the relief sought is granted, the data Lindell needs for his defense in the defamation action cannot be accessed.

   Additionally, Montgomery argues that allowing the government to continue to invoke the state secrets privilege, the protective order, and the NDA such that Montgomery cannot disclose information that is responsive to the subpoena violates the doctrine of outrageous government conduct.

   As such, Montgomery asks the court to enter an order restricting and prohibiting the United States from invoking the state secrets privilege, the protective order, the privilege under 50 U.S.C. § 403-1(i)(1), and the NDA to prevent him from disclosing information he is compelled to produce to comply with the Lindell subpoena and information that relates to

surveillance of United States citizens, private businesses, and non-profit organizations. (ECF No. 1236.)

## II. DISCUSSION

First, insofar as Montgomery seeks relief related to his obligation to respond to the Lindell subpoena, the court lacks jurisdiction over that dispute. If the subpoena requires disclosure of claimed privileged or other protected matter, Montgomery is required to seek relief in the court for the district where compliance is required. Fed. R. Civ. P. 45(d)(3)(A)(iii). Here, the subpoena indicates compliance is required in Naples, Florida; therefore, this dispute must be raised in the Middle District of Florida. Alternatively, Montgomery might seek transfer of the dispute to the issuing court—the District of Columbia. Fed. R. Civ. P. 45(f).

Second, Montgomery argues he is entitled to the relief sought under the outrageous government conduct doctrine. He relies on *United States v. Russell*, 411 U.S. 423 (1973), and *Greene v. United States*, 454 F.2d 783 (9th Cir. 1971).[1] This doctrine involves government conduct that violates "fundamental fairness" and is "shocking to the universal sense of justice. Mandated by the Due Process Clause of the Fifth Amendment." *Russell*, 411 U.S. at 432 (citation and quotation marks omitted). In *Russell*, the Supreme Court acknowledged that it "may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." The Court found, however, that the facts presented in *Russell* were "distinctly not of that breed." *Id*.

Insofar as Montgomery relies on *Greene,* its probable abrogation was noted in *United States v. Haas,* 141 F.3d 1181 (9th Cir. 1998). *Haas* explained that *Greene* was decided *before*

---

[1] Montgomery erroneously refers to the case as *United States v. Greene*.

*Russell*, and "may be an entrapment rather than an outrageous government conduct case" and "does not reflect the current law of the circuit on outrageous government conduct." *Haas*, 141 F.3d at *1.

Importantly, to the extent the outrageous government conduct doctrine exits, it is applied with respect to criminal prosecutions and not in civil cases (with the possible exception of a habeas petition). This is a civil action that has been closed for over thirteen years, and not a criminal prosecution or habeas petition. Therefore, the outrageous government conduct doctrine does not provide a basis to grant Montgomery's requested relief.

Third, the court did retain jurisdiction over the terms of the protective order; however, Montgomery has not set forth good cause for lifting or modifying the protective order. At best, Montgomery offers speculation and conjecture that he may possibly face some type of action by the government if he produces information in response to Lindell's subpoena.

Fourth, to the extent Montgomery is seeking injunctive relief in the form of an order prohibiting the United States from engaging in certain activity, he provides no authority (apart from lifting or modifying the protective order, addressed *supra*) for the court to order such relief in a case that has been closed for over 13 years.

Finally, the court should exercise its discretion to deny Montgomery's request for oral argument under Local Rule 78-1 (ECF No. 1237).

### III. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **DENYING** Montgomery's motion (ECF No. 1236) and **DENYING** Montgomery's request for oral argument (ECF No. 1237).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: May 15, 2023

_____
Craig S. Denney
United States Magistrate Judge